UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, STEPHANIE KINGREY, and SANDRA McCOLLUM, individually and as heirs at law to the Estate of LARRY GENE McCOLLUM, <br> PLAINTIFFS <br><br> v. <br><br> BRAD LIVINGSTON, JEFF PRINGLE, and the TEXAS DEPARTMENT OF CRIMINAL JUSTICE. <br> DEFENDANTS | § § § § § § § § § § § § § § § | CIVIL ACTION NO. <br> 3:12-cv-02037 |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH DEPOSITION OF BRAD LIVINGSTON**

Plaintiffs respectfully ask the Court to deny Defendant Brad Livingston's motion to quash and motion for a protective order, and argue:

1. Livingston's motion for a protective order should be denied because he is not entitled to qualified immunity.

    a. By raising qualified immunity in a 12(c) motion, Defendant is arguing the pleadings do not allege a violation of the constitution and/or the constitutional right was not clearly established when Mr. McCollum died. *See Bishop v. Arcuri*, 674 F.3d 456, 460-61 (5th Cir. 2012).

    b. The latter can be dispelled quickly: it is beyond question that when Mr. McCollum died, the courts had established without any ambiguity putting a prisoner in temperatures threatening heat stroke was unconstitutional. *Blackmon v. Kukua*, 758 F.Supp.2d 398, 413-14 (S.D. Tex. 2010) (collecting cases).

    c. For the former, alleging a violation, Plaintiff's complaint alleges Livingston violated the Eighth Amendment. There are two elements to show prison conditions violated the Eighth Amendment: objective danger, and the defendant's subjective awareness of the danger. *Blackmon v. Garza*, 484 Fed.Appx. 866, 869 (5th Cir. 2012) (unpublished).

    d. Livingston concedes the objective element – danger. But he argues he was not subjectively aware of the danger. Plaintiffs' complaint, however describes his subjective awareness in detail, satisfying controlling case law on deliberate indifference in the Fifth Circuit. *Blackmon*, 484 Fed.Appx. at 873.

    e. The pleadings robustly allege Defendant violated the Eighth Amendment, and the law was clearly established. Therefore, qualified immunity should be denied.

2. Further, under traditional standards for a protective order, Livingston cannot show sufficient burden to justify quashing his deposition, either.

    a. The controlling standard requires him to show "extraordinary circumstances." *Campos v. Webb County Tex.*, --- F.Supp.2d ----, 2012 WL 6742327 *3 (S.D.Tex. 2012) (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 650 (5th Cir.1979)).

    b. There's nothing extraordinary about deposing a party-opponent.

For these reasons, those more fully developed in the attached Brief in Support, Plaintiffs request Defendant's motion be denied.

DATED: February 12, 2013.

Respectfully submitted,

The Edwards Law Firm
The Bremond Houston House
706 Guadalupe
Austin, Texas 78701
    Tel.   512-623-7727
    Fax.  512-623-7729

By   /s/ Jeff Edwards
JEFF EDWARDS
State Bar No. 24014406
Lead Counsel

Scott Medlock
State Bar No. 24044783
Brian McGiverin
State Bar No. 24067760
James C. Harrington
State Bar No. 09048500

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
(512) 474-5073 [phone]
(512) 474-0726 [fax]

Eliot Shavin
State Bar No. 18138200
2600 State Street
Dallas, Texas 75204
214-522-2010 (telephone)
214-720-9594 (fax)
Local Counsel

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Northern District of Texas.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, STEPHANIE KINGREY, and SANDRA McCOLLUM, individually and as heirs at law to the Estate of LARRY GENE McCOLLUM, <br> PLAINTIFFS | § § § § § § | |
| v. | § § | CIVIL ACTION NO. 3:12-cv-02037 |
| BRAD LIVINGSTON, JEFF PRINGLE, and the TEXAS DEPARTMENT OF CRIMINAL JUSTICE. <br> DEFENDANTS | § § § § § | |

**BRIEF IN SUPPORT OF PLAINTIFFS'
RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Larry McCollum died a tragic, pointless, and preventable death caused by exposure to extreme heat in the Hutchins State Jail, where Defendants knew prisoners were routinely exposed to heat indexes exceeding 130 degrees. His surviving family members respectfully file this brief in support of their response to Defendant Brad Livingston's motion seeking protection from a deposition. Livingston is sued in his individual capacity for knowingly exposing prisoners to the brutal heat that killed Mr. McCollum.

SUMMARY

Livingston is liable for Mr. McCollum's death because he was aware that the lethal heat was a serious, system-wide danger in Texas prisons, and because he was deliberately indifferent to that danger. Livingston cannot claim qualified immunity because his actions were clearly unconstitutional at the time Mr. McCollum was killed.

4

Plaintiffs must be allowed to take Livingston's deposition. Plaintiffs' complaint robustly describes Livingston's personal knowledge, but they need to gather admissible evidence through discovery. Deposing Livingston is essential and preventing his deposition would be an abuse of discretion.

Therefore, the Court should deny Livingston qualified immunity, deny his request for a protective order, and permit Plaintiffs to take his deposition.

QUALIFIED IMMUNITY IS IRRELEVANT TO LIVINGSTON'S TESTIMONY

Even if Livingston were entitled to qualified immunity, Plaintiffs would still be entitled to take his deposition because he is a fact witness who can testify about executive actions taken by TDCJ. In addition to their Section 1983 claims, the Plaintiffs have also brought claims under the Americans with Disabilities Act and Rehabilitation Act. Qualified immunity is not a defense to an ADA or Rehabilitation Act suit because it only shields individual government employees. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The ADA does not create a cause of action against individuals – only the government entity itself. *Joseph v. Port of New Orleans*, 2002 U.S. Dist. LEXIS 4133, *40 (E.D. La. 2002). Resolution of the qualified immunity issue is thus irrelevant to Plaintiffs' ADA and Rehabilitation Act claims.

Livingston likely has knowledge of TDCJ policies and practices, including executive-level decisions about installation of air conditioning in the prisons. Livingston's signature, for example, approved TDCJ's policy on extreme temperatures. *Exhibit 1*, TDCJ Extreme Temperatures Policy, p. 8. Likewise, Livingston represents TDCJ at meetings of the Texas Board of Criminal Justice, which approves major capital expenditures. As he concedes, his background is in finance ("he is an accountant," Livingston's FRCP 12(c) Motion, Doc. 19, p. 9.). He likely has unique knowledge about the feasibility of cooling prison temperatures.

## DEFENDANT IS NOT ENTITLED TO QUALIFIED IMMUNITY

A. The 12(c) motion standard looks to the facts alleged in the pleadings

Moreover, the Court should deny Defendant's Rule 12(c) motion for qualified immunity because it cannot be granted unless the pleadings are deficient on their face. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

The standard of review for a Rule 12(c) motion is the same standard used for a 12(b)(6) motion to dismiss for failure to state a claim. *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010). "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Id*. at 544 (citation omitted).

Motions to dismiss for failure to state a claim "are viewed with disfavor and [are] rarely granted." *Parker v. Am. Airlines, Inc.*, 516 F. Supp. 2d 632, 634 (N.D. Tex. 2007) (citing *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)). When reviewing a motion to dismiss, Courts are required to accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Lindquist v. City of Pasadena*, 525 F.3d 383, 386 (5th Cir. 2008) (internal quotation marks and citations omitted). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotations and citations omitted).

The pleadings overwhelmingly show Livingston violated Mr. McCollum's constitutional right to be free from substantial risk of serious harm, which was clearly established law at the time of his death. *Bishop v. Arcuri*, 674 F.3d 456, 460-61 (5th Cir. 2012) (describing two-element standard for qualified immunity).

B. <u>The pleadings show Livingston violated a clearly-defined constitutional right, so he cannot claim qualified immunity.</u>

Larry McCollum died at age fifty-eight, while serving a twelve month sentence for forgery. Plaintiffs' Complaint, Doc. 1, para. 18. When he arrived at the Hutchins State Jail, officers told him and other new prisoners: "Welcome to Hell." Plaintiffs' Complaint, Doc. 1, para. 20. Mr. McCollum died just a few days later when the jail's heat index rose above 130 degrees Fahrenheit. Plaintiffs' Complaint, Doc. 1, para. 42. He suffered a seizure after midnight, which was later diagnosed as "heat shock." Plaintiffs' Complaint, Doc. 1, para. 43. He fell from his bunk at around 3:00 a.m., and was taken to the emergency room at Parkland Hospital. *Id*. When he got there, his body temperature was 109.4. Plaintiffs' Complaint, Doc. 1, para. 44. The extreme heat caused multi-system organ failure. He slipped into a coma and died. Plaintiffs' Complaint, Doc. 1, para. 45. An autopsy concluded he died of hyperthermia, due to being "in a hot environment without air conditioning." Plaintiffs' Complaint, Doc. 1, para. 46.

Livingston is liable under the Eighth Amendment for Mr. McCollum's death because:

1) Mr. McCollum was killed by prison conditions that threatened substantial risk of serious harm to prisoners; and

2) Livingston was aware of the danger but recklessly disregarded it.

*Blackmon v. Garza*, 484 Fed.Appx. 866, 869 (5th Cir. 2012) (unpublished) (the test for Eighth Amendment liability has an objective element and a subjective element). It is not necessary to show Livingston predicted Mr. McCollum, in particular, would fall prey the heat; only that he was aware the heat was a widespread danger. *Farmer v. Brennan*, 511 U.S. 825, 843-44 (1994).[1]

---

[1] Livingston's protestations he "did not know Larry McCollum" are irrelevant. Livingston's Motion for Protective Order, Doc. 20, p. 7 n.1. The Supreme Court has long acknowledged: "If, for example, prison officials were aware that inmate rape was so common and uncontrolled that some potential victims dared not sleep but instead . . . would leave their beds and spend the night clinging to the bars nearest the guards' station, it would obviously be irrelevant to liability that the officials could not guess beforehand precisely who would attack whom." *Farmer*, 511 U.S. at 843-44. Livingston knew the prisons he administered routinely exposed inmates to dangerously high temperatures.

7

The Eighth Amendment prohibits the prison system from housing inmates in conditions that threaten the substantial risk of serious harm – for instance, temperatures threatening heat stroke. *Blackmon*, 484 Fed.Appx. at 869.  The Fifth Circuit has repeatedly found high temperatures unconstitutional (*id.* 869-70), in opinions published long before Mr. McCollum entered the Hutchins Unit.  *See Blackmon v. Kukua*, 758 F.Supp.2d 398, 413-14 (S.D. Tex. 2010) (collecting cases showing the right was clearly established).

Plaintiffs will prove Livingston was aware of brutal heat in Texas prisons by showing it was obvious; a jury may infer he was aware of obvious facts. *Blackmon*, 484 Fed.Appx. at 873 (*citing Gates*, 376 F.3d. at 340).  In a similar case, the Fifth Circuit explained:

> [The Warden] testified that she was aware that the summer heat was "intense." Moreover, the evidence set out at trial indicated that Defendants had received training making them aware of the potential dangers of heat to prisoners. The training highlighted the particular risks to prisoners such as [the plaintiff]—an older inmate taking medications with a diuretic effect.  Thus, the obvious nature of the risks to [the Plaintiff] would further support a jury finding that Defendants were deliberately indifferent to the risks to [the plaintiff's] health.

*Blackmon*, 484 Fed.Appx. at 873. TDCJ officials at the Hutchins State Jail recorded heat indexes of 150 the week before Mr. McCollum's heat stroke. *Exhibit 2*, TDCJ Temperature Log, July 19, 2011. Throughout Texas, citizens experienced extreme temperatures the day Mr. McCollum collapsed.[2]

The threat to Mr. McCollum was no less obvious.  System-wide, eight other people in TDCJ's custody died from heat-related causes in 2011, mirroring numbers from preceding summers.  Plaintiffs' Complaint, Doc. 1, para. 49. Extreme heat in the Hutchins State Jail was (and is) long-standing, well-documented, and expressly noted by prison officials. And these extreme temperatures were not confined to a single prison facility – Plaintiffs allege they exist in prisons around the state. *Id*. para. 57 ("Livingston … knew TDCJ policy and practice prohibited

---

[2] National Weather Service data recorded the day before Mr. McCollum collapsed, for example, shows temperatures near the prison exceeded 102. *Exhibit 3*, Temperature Data for Dallas, Texas, July 21, 2011.

air-conditioning in most areas where prisoners live"). The jury may infer Livingston was aware of the number of fatalities racked up year after year due to TDCJ's decision to expose prisoners to this obvious hazard.

Livingston was also aware TDCJ held many inmates suffering from hypertension, including Mr. McCollum, who are especially vulnerable to heat. *See Blackmon*, 484 Fed.Appx. at 871 ("[The inmate] was on medication for high blood pressure, which functioned as a diuretic and had the potential to make the high temperatures in the [prison] dorm even more dangerous to [him] than to other prisoners. This court has acknowledged that medications can impact a prisoner's ability to contend with extreme heat"). But even though TDCJ has 56 prison units that offer some air-conditioned inmate housing, to which especially-vulnerable inmates could be transferred, Livingston refused to make any effort to protect them.

Finally, Livingston approved specific policies that threatened serious harm:

1) He approved policies that made no accommodation for prisoners during periods of extreme temperatures (including policies and practices prohibiting Mr. McCollum from having a drinking cup for cool water, and a fan) (Plaintiffs' Complaint, Doc 1, paras. 61-67); and

2) He failed to provide air conditioning in the Hutchins State Jail (Plaintiffs' Complaint, Doc 1, paras. 57-60);

3) He did not adequately train the personnel at the Hutchins State Jail (Plaintiffs' Complaint, Doc 1, paras. 29-36).

Livingston should be denied qualified immunity because the pleadings clearly demonstrate his liability. He was aware heat in the prisons was extraordinarily dangerous; he knew housing prisoners in dangerous heat was unconstitutional; but he did it anyway.

## STANDARD FOR GRANTING DEFENDANT A PROTECTIVE ORDER:
### "EXTRAORDINARY CIRCUMSTANCES"

Livingston, without qualified immunity, is just another person arguing he is too busy to be part of the judicial process. Livingston is a party sued in his individual capacity,[3] and as a party, he must satisfy a higher burden to quash his deposition than a mere witness. "A party seeking to quash a deposition in its entirety has a heavy burden…. The standard in the Fifth Circuit is 'extraordinary circumstances.'" *E.E.O.C. v. Greater Metroplex Interiors, Inc*, 2009 WL 412934*1 (N.D.Tex. 2009) (Kaplan, J.). "Due to the high burden parties must meet in substantiating alleged 'extraordinary circumstances,' courts will rarely grant a protective order that completely prohibits a deposition." *Campos v. Webb County Tex.*, --- F.Supp.2d ----, 2012 WL 6742327 *3 (S.D.Tex. 2012) (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 650 (5th Cir.1979)). Likewise, "a party seeking a protective order to prevent or postpone a deposition must show good cause and the specific need for protection." *Staton Holdings, Inc. v. Russell Athletic, Inc.*, 2010 U.S. Dist. LEXIS 34251, *6 (N.D. Tex. Apr. 7, 2010) (Fitzwater, J.) (overruling magistrate's recommendation to enter protective order quashing C.E.O.'s deposition).[4] Livingston bears the burden of showing the deposition would result in "annoyance, embarrassment, oppression or undue burden or expense." *Id*. Livingston fails to carry this burden.

Livingston cannot show extraordinary circumstances justify a protective order. He will be deposed less than a mile from his office.[5] Further, evidence of his personal knowledge is key

---

[3] As opposed to merely being sued in his official capacity, which would mean nothing more than suing TDCJ itself. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). In official capacity suits, it may not be appropriate to depose high-ranking officials like Livingston.

[4] Livingston cites to the magistrate's recommendation which was overruled. See Doc. 21, p. 6 (citing *Staton Holdings, Inc. v. Russell Athletic, Inc.*, 2010 U.S. LEXIS 4017 (N.D. Tex. Jan. 19, 2010).

[5] Google Maps: http://goo.gl/maps/6eLdR  *See* Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources

10

to his liability. *See infra*. Under similar circumstances, courts have permitted the deposition of the Governor of Illinois (*Bagley v. Blagojevich*, 486 F. Supp. 2d 786 (C.D. Ill. 2007) (suit alleging governor personally ordered firing of mid-level correctional officers)), the Governor of Puerto Rico (*Prisma Zona Exploratoria De Puerto Rico, Inc. v. Calderon*, 154 F.Supp.2d 245 (D.Puerto Rico 2001) (free speech retaliation suit)), the mayor of Atlanta (*Atlanta Journal and Constitution v. City of Atlanta Dept. of Aviation*, 175 F.R.D. 347 (N.D.Ga. 1997) (suit regarding free speech implications of placement of news racks at Hartsfield International Airport)), and CEOs of multinational corporations (*Conti v. American Axle and Mfg., Inc.*, 326 Fed.Appx. 900 (6th Cir. 2009); *Morales v. E.D. Etnyre & Co.*, 229 F.R.D. 661 (D.N.M. 2005)). Even the President of the United States must give his deposition from time to time. *See Clinton v. Jones*, 520 U.S. 681, 705 (1997), *affirming* 72 F.3d 1354, 1358 (8th Cir. 1996) ("[T]he President, like all other government officials, is subject to the same laws that apply to all other members of our society. As the Supreme Court has observed, 'Our system of jurisprudence rests on the assumption that all individuals, whatever their position in government, are subject to federal law'").[6]

The cases Livingston cites are unpersuasive. *In re Office of Inspector General*, 933 F.2d 276 (5th Cir. 1991), for example, is not a suit for damages against an executive officer. It is a "subpoena enforcement action," where the Fifth Circuit's concern was "transform[ing] subpoena enforcement proceedings into exhaustive inquisitions into the practices of the regulatory agencies." *Id*. at 278. In contrast, here Livingston is sued in his individual capacity for damages.

---

whose accuracy cannot reasonably be questioned."). Moreover, Plaintiffs are willing to accommodate Mr. Livingston – Plaintiffs would agree to depose him in his own office should he prefer.

[6] President Clinton is not the only Commander in Chief to appear for a deposition. Presidents Jimmy Carter, and Gerald Ford also gave depositions. *See Jones v. Clinton*, 72 F.3d 1354, 1366 (8th Cir. 1996). Presidents who testified before committees of Congress under threat of subpoena include Thomas Jefferson, Abraham Lincoln, James Monroe, and Ulysses S. Grant. *Id*.

While "little, if any discovery" is needed to enforce a subpoena, extensive discovery is typically required in a civil rights action for damages. *Id.*[7] Conversely, "Federal courts have permitted the depositions of high level executives when conduct and knowledge at the highest corporate levels of the defendant are relevant in the case." *Kimberly-Clark Corp. v. Cont'l Cas. Co.*, 2006 U.S. Dist. LEXIS 86469, *5 (N.D. Tex. 2006) (Fitzwater, J.) (refusing to quash deposition of multi-national corporation's C.E.O. in contract dispute). This Court has allowed depositions of high level executives not only to discover their personal knowledge but also to "test his answers in light of other evidence … obtained through discovery" and to "challenge [other witnesses'] credibility at trial." *Id.* at *11.

Livingston is also not a non-party witness, as in *Hernandez v. Tex. Dep't of Aging & Disability Servs.*, 2011 U.S. Dist. LEXIS 145308 (W.D. Tex. Dec. 16, 2011) (quashing deposition of Governor Rick Perry in a suit concerning conditions at a Department of Aging and Disability Services facility) or *In re United States*, 985 F.2d 510 (11th Cir. 1993) (quashing deposition of Food and Drug Administration commissioner in FDA enforcement action). He is a party sued for damages.

Livingston argues he is "not a doctor," "[h]e is an accountant." Livingston's FRCP 12(c) Motion, Doc. 19, p. 9. This is not true. Though his background may be in finance instead of corrections, he assumed a position where he is ultimately responsible for the welfare of over 150,000 prisoners of the State of Texas. His signature appears on the TDCJ policies relevant to this case. Exhibit 1, TDCJ Extreme Temperatures Policy, p. 8. When a state legislator wrote him about the extreme temperatures in Texas prisons, Livingston personally responded. Exhibit 4, Letter from Brad Livingston to Rep. Sylvester Turner. As Livingston's brief notes, "[d]epositions of high ranking officials may be permitted where the official has first-hand

---

[7] Other cases Livingston cites also seek injunctive remedies, not damages. *See United States v. Morgan*, 313 U.S. 409, 413 (1941) (suit to enjoin decision by Secretary of Agriculture).

knowledge related to the claim being litigated." *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007).

Mr. McCollum and eight other men died in prisons around the state during the summer of 2011 due to extreme conditions Livingston was aware of and did nothing about. As the director of a prison system, Livingston is responsible for those deaths, no matter his personal background.

## CONCLUSION

Livingston is liable for Mr. McCollum's death, and cannot claim qualified immunity. It is essential to depose him for the sake of trial, and there is no "extraordinary circumstance" to justify denying the opportunity to depose him. Therefore, the Court should deny Defendant's motion and allow Plaintiffs to move forward with his deposition.

DATED: February 12, 2013.

    Respectfully submitted,

    The Edwards Law Firm
    The Bremond Houston House
    706 Guadalupe
    Austin, Texas 78701
        Tel.    512-623-7727
        Fax.   512-623-7729

    By    /s/ Jeff Edwards
    JEFF EDWARDS
    State Bar No. 24014406
    Lead Counsel

    Scott Medlock
    State Bar No. 24044783
    Brian McGiverin
    State Bar No. 24067760
    James C. Harrington
    State Bar No. 09048500

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
(512) 474-5073 [phone]
(512) 474-0726 [fax]

Eliot Shavin
State Bar No. 18138200
2600 State Street
Dallas, Texas 75204
214-522-2010 (telephone)
214-720-9594 (fax)
Local Counsel

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Northern District of Texas.