UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, STEPHANIE KINGREY, and SANDRA McCOLLUM, individually and as heirs at law to the Estate of LARRY GENE McCOLLUM, <br> PLAINTIFFS <br><br> v. <br><br> BRAD LIVINGSTON, JEFF PRINGLE, RICHARD CLARK, KAREN TATE, SANDREA SANDERS, ROBERT EASON, the UNIVERSITY OF TEXAS MEDICAL BRANCH and the TEXAS DEPARTMENT OF CRIMINAL JUSTICE. <br> DEFENDANTS | § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. <br> 3:12-cv-02037 |

**PLAINTIFFS' REPLY TO MOTION TO COMPEL DISCOVERY RESPONSES**

Plaintiffs file this reply and ask the Court to compel Defendant Texas Department of Criminal Justice to supplement its responses to two Interrogatories and one Request for Production,[1] sent November 1, 2012.

ARGUMENT AND AUTHORITIES

Plaintiff Stephen McCollum's Interrogatories 2 and 4 requested information about heat injuries system-wide in TDCJ. Defendant only responded with information for one prison.

1. *Evidence of Other Deaths and Injuries is Relevant*

Sadly, a TDCJ prisoner dying from heat-related illnesses is not a new problem. As far back as 1999, courts noted prisoners dying from extreme temperatures in TDCJ facilities. "Regarding heat-related illness, [the prisoners' expert] found that three of the 16 people who

---

[1] The parties are negotiating an agreed, HIPAA-compliant, protective order to produce the medical and architectural documents responsive to Plaintiffs' request for production. Pending the outcome of these good-faith negotiations, Plaintiffs ask the Court to stay resolution of these issues only. When an agreed order is entered, Plaintiffs will notify the Court this portion of the motion is moot.

became ill because of heat had died." *Ruiz v. Johnson*, 37 F.Supp.2d 855, 904 (S.D. Tex. 1999) *reversed on other grounds at* 178 F.3d 385 (5th Cir. 1999).[2]

Despite these earlier findings, Plaintiffs anticipate TDCJ will argue the ten prisoners who died from heat-related causes in the summer of 2011 were an aberration. These documents will establish deaths are long-standing and tolerated by upper-level prison officials – not an unfortunate, one-off event. Likewise, though Livingston denies knowledge of specific heat-related illnesses, production of these documents will help show who did know prisoners were dying from the extreme temperatures in prison, and when they knew it. Moreover, Plaintiffs have a claim for punitive damages in this case – if the evidence shows Livingston, Eason or others knew about previous deaths and did nothing, they acted "with callous and reckless indifference to the safety or rights of others" warranting an award of punitive damages. Fifth Cir. Pattern Jury Instruction 15.13 (2006). On the other hand, if Livingston is not an appropriate party (as he repeatedly argues), these documents will help Plaintiffs identify the officials who are.

Finally, the scope of Plaintiffs' request is appropriate. TDCJ officials have known about heat-related deaths, thanks to the *Ruiz* litigation, since at least 1999. In the mid-1990s, TDCJ began building several new prisons, including the Hutchins State Jail.[3] Plaintiffs expect TDCJ will argue retro-fitting the prisons to bring down the extreme indoor temperatures is cost prohibitive. If TDCJ officials were aware before the new construction began that people were dying, however, TDCJ officials were deliberately indifferent in designing prisons without air

---

[2] The heat-related findings in *Ruiz* were made after Dr. Jeffrey Metzner visited TDCJ facilities and reviewed documents in late 1997 or early 1998. *Ruiz*, 37 F.Supp.2d at 867. Thus, prisoners have been dying from heat-related causes in TDCJ's prisons for at least 15 years.

[3] The Hutchins State Jail began operations in April 1995. *See* TDCJ Unit Directory: Hutchins, *at* http://tdcj.state.tx.us/unit_directory/hj.html (last visited April 15, 2013).

conditioning where the indoor heat index could reach 130. And while Livingston may not have been involved in these decisions, the documents will help Plaintiffs determine who was.[4]

2. *Production of All Heat-Related Injury Documents is Not Burdensome*

If TDCJ did not already track heat-related injuries, production of these documents could be burdensome. But documents TDCJ already produced show an internal code tracks "type of injury," and includes the category "heat exhaustion/heat cramps/heat stroke." From these documents, TDCJ appears to internally track these injuries, greatly diminishing the burden of finding the records. *See* Doc. 34, Ex. D, Texas Department of Criminal Justice Risk Management Incident Reporting System: Complete Incident Report.

Likewise, the website[5] TDCJ cites in its response shows how narrow Plaintiffs' request really is. The website does show there were 4,642 employee workplace injuries in the past year. But the website shows more than that. The data breaks out the types of injuries, and the number of injuries of each type. The "category definitions" page[6] shows injuries caused by "contact with temperature extremes" and "weather related extremes such as heat exhaustion" are classified as "other."[7] Only 526 employee injuries from the last year fall in the "other" category. Of those injuries, only 214 occurred during the summer months (June, July and August), or an average of

---

[4] The scope of the request actually shows Plaintiffs are not "build[ing] a potential client list." Doc. 42, p. 7. The statute of limitations for a personal injury action is Texas is two years. *See* Tex. Civ. Prac. & Rem. Code, § 16.003. Plaintiffs seek older documents where any claim would be time barred. Moreover, the cause of a prisoner's death is already public information, and readily available to any Texan who requests it. *See* Tex. Code Crim. Proc. § 49.18(b); Tex. Gov't Code § 552.029(8) (public information includes "basic information regarding the death of an inmate in custody"). If Plaintiffs were simply trying to find additional wrongful death cases, they would not need discovery to do so. Instead, the documents will show the extent of TDCJ officials' knowledge about the problem.

[5] Texas Department of Criminal Justice, Administrative Review and Risk Management Division: Risk Management Statistics, http://www.tdcj.state.tx.us/divisions/arrm/arrm_rev_stan_rm_statistics.html (last visited April 15, 2013).

[6] Texas Department of Criminal Justice, Administrative Review and Risk Management Division: Risk Management Definititions, http://www.tdcj.state.tx.us/divisions/arrm/arrm_definitions.html (last visited April 15, 2013).

[7] Injuries classified as "other" include "Any occurrence not falling into another category, such as bodily reaction to drugs or medication, poison ivy, contact with electrical currents such as electrical shock, contact with temperature extremes, over-exposure of environmental hazards such as radiation, pre-existing medical conditions, weather related extremes such as heat exhaustion, frostbite, and other similar incidents." *Id*.

71.33 injuries per month. During the rest of the year, there were 34.67 "other" injuries in an average month. Assuming the non-heat-related "other" injuries remain constant throughout the year, there would be approximately 36.67 heat-related injuries each summer month, or approximately 110 each summer. Production of these records would not be overly burdensome.[8]

The website data also suggests the burden of producing the prisoner injury data would be slight. The data displays "total offender injuries" for each month, totaling 12,034 injuries last year. On average, 932.11 prisoners are injured during the non-summer months. In June, July and August the average number spikes to an average of 1,215. Again assuming the non-heat-related injuries remain constant, there would be fewer than 1,000 documents generated each year.

Likewise, TDCJ does not need to comb through data to find the cause of death. TDCJ already knows the cause of death for every inmate who passes away in custody. Texas Code of Criminal Procedure § 49.18(b) requires TDCJ to "file a written report of the cause of death with the attorney general no later than the 30th day after the date on which the … incarcerated person died." The Office of the Attorney General's reporting form requires correctional facilities to enter the "medical cause of death."[9]

## CONCLUSION

Plaintiffs respectfully ask the Court to order TDCJ to supplement the responses described above.

DATED: April 18, 2013.

---

[8] The records produced at Doc. 34, Ex. D appear to be a representative sample. Each record would be approximately three pages.

[9] Office of the Attorney General, *Custodial Death Report,* available at https://www.oag.state.tx.us/AG_Publications/pdfs/custodial_death.pdf (last visited April 15, 2013).


Respectfully submitted,

The Edwards Law Firm
The Bremond Houston House
706 Guadalupe
Austin, Texas 78701
    Tel.    512-623-7727
    Fax.   512-623-7729

By    /s/ Jeff Edwards
JEFF EDWARDS
State Bar No. 24014406
Lead Counsel

Scott Medlock
State Bar No. 24044783
Brian McGiverin
State Bar No. 24067760
James C. Harrington
State Bar No. 09048500

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
(512) 474-5073 [phone]
(512) 474-0726 [fax]

Eliot Shavin
State Bar No. 18138200
2600 State Street
Dallas, Texas 75204
214-522-2010 (telephone)
214-720-9594 (fax)
Local Counsel

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Northern District of Texas.