UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, STEPHANIE KINGREY, and SANDRA McCOLLUM, individually and as heirs at law to the Estate of LARRY GENE McCOLLUM, § § § § | | |
| PLAINTIFFS § | | |
| § | | |
| v. § | CIVIL ACTION NO. | |
| § | 3:12-cv-02037 | |
| § | | |
| BRAD LIVINGSTON, JEFF PRINGLE, RICHARD CLARK, KAREN TATE, SANDREA SANDERS, ROBERT EASON, the UNIVERSITY OF TEXAS MEDICAL BRANCH and the TEXAS DEPARTMENT OF CRIMINAL JUSTICE. § § § § § § | | |
| DEFENDANTS § | | |
| § | | |

**PLAINTIFFS' EMERGENCY SECOND MOTION TO COMPEL DISCOVERY RESPONSES**

Plaintiffs respectfully submit this motion to compel discovery responses from Defendant TDCJ. Plaintiffs sought a resolution with Defendant (Exhibit A), but were unsuccessful, making judicial intervention necessary.

Plaintiffs ask the Court to:

1. Overrule Defendant's objections;

2. Grant Plaintiffs' motion, pursuant to Fed. R. Civ. Proc. 37(a)(3)(B)(iii)-(iv); and

3. Award Plaintiffs' attorneys fees incurred while drafting this motion. Fed. R. Civ. Proc. 37(a)(5).

In accordance with Local Rule 7.1(d), a brief setting forth Plaintiffs' contentions of fact and law has been filed concurrently with this motion.

DATED: May 15, 2013.

Respectfully submitted,

The Edwards Law Firm
The Bremond Houston House
706 Guadalupe
Austin, Texas 78701
    Tel.    512-623-7727
    Fax.   512-623-7729

By    /s/ Jeff Edwards
JEFF EDWARDS
State Bar No. 24014406
Lead Counsel

Scott Medlock
State Bar No. 24044783
Brian McGiverin
State Bar No. 24067760
James C. Harrington
State Bar No. 09048500

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
(512) 474-5073 [phone]
(512) 474-0726 [fax]

Eliot Shavin
State Bar No. 18138200
2600 State Street
Dallas, Texas 75204
214-522-2010 (telephone)
214-720-9594 (fax)
Local Counsel

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

    By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Northern District of Texas.

## **CERTIFICATE OF CONFERENCE**

By my signature above, I certify that I conferred with counsel for Defendants, Bruce Garcia, by letter dated May 10, 2013, and subsequently by email, to attempt to resolve this issue. Defendants are opposed to this motion. The parties were unable to agree to the relevance of these discovery requests.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, STEPHANIE KINGREY, and SANDRA McCOLLUM, individually and as heirs at law to the Estate of LARRY GENE McCOLLUM,<br>　　　　　　　　　　PLAINTIFFS<br><br>v.<br><br>BRAD LIVINGSTON, JEFF PRINGLE, RICHARD CLARK, KAREN TATE, SANDREA SANDERS, ROBERT EASON, the UNIVERSITY OF TEXAS MEDICAL BRANCH and the TEXAS DEPARTMENT OF CRIMINAL JUSTICE.<br>　　　　　　　　　　DEFENDANTS | § § § § § § § § § § § § § § § § § | CIVIL ACTION NO.<br>3:12-cv-02037 |

**BRIEF IN SUPPORT OF PLAINTIFFS' EMERGENCY SECOND MOTION TO COMPEL DISCOVERY RESPONSES**

Plaintiffs ask the Court to compel Defendant Texas Department of Criminal Justice to supplement its responses to one Request for Production, sent April 2, 2013.

FACTS

This case concerns the Texas Department of Criminal Justice and University of Texas Medical Branch's long-standing policies and procedures that expose prisoners to indoor heat indexes exceeding 130 degrees. Larry McCollum, Plaintiffs' decedent, died of heat stroke in July 2011 at Defendants' prison, the Hutchins Unit, where his housing unit was not air conditioned and prison administrators knew heat indexes reached dangerous levels. TDCJ and UTMB policies caused Mr. McCollum to endure brutally hot temperatures when he was denied an intake physical that would have identified he suffered from disabilities that required accommodations to protect him from the extreme heat.

Unfortunately, Mr. McCollum is not the only man to suffer and die under these extreme conditions. Plaintiffs have identified thirteen other TDCJ prisoners whose autopsies list

4

"hyperthermia," or heat stroke, as the cause of death in the past six years. *See* Exhibits B-N (autopsies of deceased prisoners). The chart below shows each prisoner in the past six summers who died of hyperthermia. Plaintiffs requested the records related to these men's deaths.

| Name | Age | TDCJ Unit | Date of Death | Body Temp. | Facts from Autopsy |
|---|---|---|---|---|---|
| James Shriver | 47 | Byrd | Aug. 8, 2007 | Unk. | History of hypertension, prescribed psychotropics |
| Dionicio Robles | 54 | Byrd | Aug. 13, 2007 | Unk. | Prescribed psychotropics, incarcerated less than one month |
| Kelly Marcus | 36 | Connally | Aug. 12, 2011 | Unk. | Prescribed diuretic, found 3:30 am |
| Alexander Togonidze | 44 | Michael | Aug. 8, 2011 | 106+ | Diabetic, prescribed psychotropics, previously complained of heat-related illnesses, collapsed 8:00 am |
| Charles Cook | 53 | Hodge | Aug. 8, 2011 | 107.9 | Developmentally disabled, prescribed psychotropics, found unresponsive at 3:00 am |
| Michael Martone | 57 | Huntsville | Aug. 8, 2011 | 106.5 | Prescribed psychotropics, |
| Robert Webb | 50 | Hodge | Aug. 4, 2011 | Unk. | Developmentally disabled, prescribed psychotropics, found unresponsive at 3:30 am |
| Thomas Meyers | 46 | Coffield | Aug. 3, 2011 | 105.6 | History of hypertension, prescribed psychotropics |
| Larry McCollum | 58 | Hutchins | July 28, 2011 | 109.4 | Diabetic, prescribed diuretic, found 2:00 am, died 1 week after arrival |
| Kenneth Wayne James | 52 | Gurney | Aug. 13, 2011 | 108 | Prescribed diuretic, died 3 days after arrival |
| Douglas Hudson | 62 | Gurney | July 25, 2011 | 105 | History of hypertension, prescribed medication "known to interfere with heat dissipation," died 5 days after arrival |
| Daniel Alvarado | 44 | Huntsville | Aug. 20, 2011 | 105.2 | HIV+, prescribed psychotropics, found unresponsive at 9:20 am |
| Rodney Adams | 45 | Gurney | Aug. 3, 2012 | 109.9 | Prescribed psychotropics, died 1 day after arrival |

5

All these men share common factors with Mr. McCollum – such as taking prescription drugs that increase the risk of heat stroke, recently arriving in the prison system without being acclimated to the heat, collapsing in the middle of the night and going unnoticed, and suffering from medical conditions aggravated by extreme temperatures. While the autopsy reports (which were obtained through Texas Public Information Act requests, TEX. GOV'T CODE Chp. 552) provide some detail about how these men died, they do not reveal the detailed information about TDCJ's practices and customs that the internal investigations will show.[1]

Thus, to establish TDCJ officials were deliberately indifferent to the conditions that caused Mr. McCollum's death, Plaintiffs sent a targeted request for production for the "Emergency Action Center Reports, Administrative Review[s] and any [Office of the Inspector General] Investigations" related to these men's deaths. *See* Exhibit O (Defendant's Responses to Plaintiff Stephen McCollum's Fourth Set of Requests for Production). Defendants objected to this request, and refused to produce any of the requested documents.

ARGUMENT AND AUTHORITIES

Plaintiffs' claims for personal liability against Livingston and Eason are based in part on their personal, long-term knowledge of heat injury and death throughout the Texas prison system. These requests for production go directly to the merits of those claims. *See Blackmon v. Garza*, 484 Fed.Appx. 866, 873 (5th Cir. 2012) (unpublished). Livingston denies personal knowledge of "any specific [prisoner's] heat related injuries." Exhibit P Defendant Brad Livingston's Responses to Interrogatories, Interrogatory 2, p. 3. And Eason testified TDCJ was doing a "wonderful job" preventing heat-related injuries and deaths. Exhibit Q, Deposition of Eason, p. 110:12-23. But these death records will help show high-level TDCJ officials, including

---

[1] The records Plaintiffs request here are exempt from the Public Information Act. TEX. GOV'T CODE § 552.134.

Eason and Livingston, were on notice that extreme temperatures in the prisons were lethal, and TDCJ's prevention measures were grossly inadequate.[2]

The requests also follow the spirit of the Court's February 14, 2013 order, granting a protective order preventing Livingston's deposition "without prejudice to Plaintiffs seeking leave of Court to take Defendant Livingston's deposition if Plaintiffs are unable to obtain the information sought by using other avenues and modes of discovery." (Doc 28). This written discovery seems to be what the court intended as a substitute for Livingston's deposition.

Defendants' objections, "*overly broad, undue burden, not calculated to lead to the discovery of admissible evidence and not reasonably limited in time or scope*," are too general. "The party resisting discovery must show specifically how each [request] is not relevant or how each [request] is overly broad, burdensome or oppressive." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (internal quotation omitted); *accord Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D.Tex.–Dallas, 2005). "A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request." *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D.Tex.–Dallas, 2006); *accord Enron Corp. Savings Plan v. Hewitt Associates, L.L.C.*, 258 F.R.D. 149, 159 (S.D. Tex. 2009).

TDCJ does not explain how these requests are burdensome, or provide any proof of the burden. If the documents exist, the burden of producing them seems very minor. And Eason testified these documents are routinely created following a prisoner's death.[3]

---

[2] Eason testified, for example, that he reviewed administrative reviews for all heat-related prisoner deaths. Exhibit Q, Deposition of Eason, 339:21-340:1. These records would rebut his claims TDCJ was doing a "wonderful job."

[3] Eason testified that unless a prisoner dies under the care of a physician, an administrative review and Emergency Action Center report are created. *See* Exhibit Q, Deposition of Eason, 19:2-20:15.

7

Of course, the documents *are* limited in time and scope. They request specific documents about the deaths of a limited number of prisoners who are known to have died of hyperthermia. They are not so remote in time to be unrelated to Mr. McCollum's death.

The objections to the relevance of the request are similarly inadequate. "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party. Unless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed." *Brady*, 238 F.R.D. at 437 (internal quotes and citations omitted). These other prisoners died of the same cause, within a few years (or even a few days) of Mr. McCollum. Many of them died in the same TDCJ regional subdivision – the region that Eason supervises.[4]

The history of heat-deaths and injuries in TDCJ is important evidence Defendants were on notice of the danger that killed Mr. McCollum. *Blackmon*, 484 Fed.Appx. at 873. Illustratively, other courts have compelled defendants to produce confidential settlement agreements for purposes of punitive damages (*Merrill*, 227 F.R.D. at 478) and documentation of previously-filed lawsuits as evidence of habit and routine. *McLeod*, 894 F.2d at 1484. Evidence of other deaths is analogous.

Defendants object the deaths occurred after Mr. McCollum passed away.[5] Save one,[6] all the prisoners died almost contemporaneously (within a few weeks during the summer of 2011), and would establish TDCJ and UTMB's deadly policies and practices.

---

[4] Eason directs TDCJ's "Region II" facilities. Alexander Togonidze, Charles Cook, Robert Webb, Thomas Meyers, Kenneth Wayne James, Douglas Hudson, and Rodney Adams died in facilities Eason supervises. *See* Exhibits B-N; Texas Department of Criminal Justice Unit Directory: Region II Director's Office, *available at*: http://www.tdcj.state.tx.us/unit_directory/reg2.html (last visited May 9, 2013).

[5] Initially, this is not true. Two prisoners, James Shriver and Dionicio Robles, died almost four years before Mr. McCollum's untimely passing, and would have put Livingston and Eason on notice of the consequences of extreme temperatures. Defendants have agreed, however, to produce the records of Mr. Shriver and Mr. Robles.

8

The evidence of the deaths that followed Mr. McCollum's passing are relevant. First, the evidence confirms Plaintiffs' allegations TDCJ's prisons act according to a practice or custom known to Livingston and Eason. Courts in the Fifth Circuit admit evidence of post-injury conduct by prison officials to determine whether they acted with deliberate indifference. *See*, *e.g.*, *Payne v. Collins*, 986 F.Supp. 1036, 1058 (E.D. Tex. 1997) (overruling objection to relevance of prison investigation "because it was instigated by events subsequent to the attacks on [plaintiff]") (citing *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991)). In *Payne*, the trial court admitted an administrative review conducted by TDCJ that "assessed all aspects of the [prison] after a number of inmates attacked some [officers] and a prisoner was found dead." *Payne*, 986 F.Supp. at 1050). The report was completed months after a prisoner was beaten to death at the prison by other inmates, and discussed other assaults occurring after the death. *See id*. n. 32. The Fifth Circuit approved admitting this type of evidence to establish liability of correctional facilities at trial. *Shepherd v. Dallas Co.*, 591 F.3d 445, 457 (5th Cir. 2009) (admitting report into evidence showing jail's "specific incidents of failure to provide adequate medical care that occurred shortly before, during, *and shortly after* the period of [the prisoner's] detention") (emphasis added). These documents showing how other men died are relevant.

## CONCLUSION

Plaintiffs respectfully ask the Court to order TDCJ to produce the responsive documents.

---

[6] Rodney Adams died in the summer of 2012, while the other prisoners died in 2011.

## ATTORNEYS FEES

If the Court grants this motion, Plaintiffs request the Court also order the Defendants to pay the attorneys' fees that were incurred to draft it. Fed. R. Civ. Proc. 37(a)(5). Those fees are as follows:

Scott Medlock        2.5 hours x $350/hour =        $875.00

DATED: May 15, 2013.

Respectfully submitted,

The Edwards Law Firm
The Bremond Houston House
706 Guadalupe
Austin, Texas 78701
  Tel. 512-623-7727
  Fax. 512-623-7729

By /s/ Jeff Edwards
JEFF EDWARDS
State Bar No. 24014406
Lead Counsel

Scott Medlock
State Bar No. 24044783
Brian McGiverin
State Bar No. 24067760
James C. Harrington
State Bar No. 09048500

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
(512) 474-5073 [phone]
(512) 474-0726 [fax]

Eliot Shavin
State Bar No. 18138200
2600 State Street
Dallas, Texas 75204
214-522-2010 (telephone)
214-720-9594 (fax)
Local Counsel

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

  By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Northern District of Texas.