UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, STEPHANIE KINGREY, and SANDRA McCOLLUM, individually and as heirs at law to the Estate of LARRY GENE McCOLLUM, <br> PLAINTIFFS | § § § § § § | |
| v. | § § | CIVIL ACTION NO. <br> 3:12-cv-02037 |
| BRAD LIVINGSTON, JEFF PRINGLE, RICHARD CLARK, KAREN TATE, SANDREA SANDERS, ROBERT EASON, the UNIVERSITY OF TEXAS MEDICAL BRANCH and the TEXAS DEPARTMENT OF CRIMINAL JUSTICE. <br> DEFENDANTS | § § § § § § § § | |

**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT UNIVERSITY OF TEXAS MEDICAL BRANCH'S MOTION TO DISMISS UNDER RULE 12(c)**

The Court should deny Defendant UTMB's Motion to Dismiss for three reasons: 1) the Amended Complaint alleges the elements of the claim with ample factual support; 2) sole proximate cause is not required for Plaintiffs' Americans with Disability Act claims; and, 3) Plaintiffs have adequately plead sole causation for their Rehabilitation Act claims because UTMB's failure to provide reasonable accommodations for the deceased's disabilities is the required act of discrimination, regardless of whether that discrimination was the sole cause of his death.

**SUMMARY OF RESPONSE**

Plaintiffs, the surviving family of Larry McCollum, allege in their Amended Complaint (Doc. 39-2) that the University of Texas Medical Branch (UTMB) failed to accommodate his disabilities causing his untimely death. UTMB's failure to accommodate Mr. McCollum's disabilities resulted in him being housed in a brutally hot, non-air-conditioned prison dormitory

where apparent temperatures[1] of 130 degrees caused him to suffer a heat stroke and die. If not for his heat-sensitive disabilities – hypertension and diabetes – Mr. McCollum would certainly have suffered in these extreme temperatures, but he likely would not have died.

As Plaintiffs' Amended Complaint adequately alleges the elements of a claim under the Americans with Disabilities Act and Rehabilitation Act, the Court should deny UTMB's motion to dismiss (Doc. 55).

## FACTS

UTMB is the medical provider at the Hutchins Unit, a Texas Department of Criminal Justice prison outside Dallas. The prison's inmate dormitories are not air conditioned, and prison authorities make no attempt to cool them. As a result, the apparent temperatures indoors routinely exceed 130 degrees, and even reached 150 degrees during the week Mr. McCollum was imprisoned there. (*Id*. para. 42). UTMB officials at the highest levels *know* these extreme temperatures put prisoners at risk of injury and death. (*Id*. para. 91).

Mr. McCollum was fifty-eight, and lived with two serious disabilities – diabetes and hypertension. (Doc. 39-2, para. 23). Diabetes made his body more susceptible to heat stroke because it diminished his body's ability to sweat, and impaired his circulation. (*Id*. para. 30-31). UTMB policies identify diabetes as a condition that affects heat tolerance, making prisoners more susceptible to heat-related injury or death. (*Id*. para. 33). Similarly, hypertension and the drugs required to treat it also make prisoners vulnerable to heat stroke. Here, to treat his hypertension, a physician's assistant employed by UTMB prescribed Mr. McCollum a diuretic, hydrochlorothiazide (HCTZ). (*Id*., para. 39). Diuretics put the body at even greater risk of heat stroke by removing water from the blood, causing dehydration. (*Id*. para. 40). Thus, UTMB

---

[1] Apparent temperature is also called the "heat index" – the combination of heat and humidity that reflects what the body actually "feels."

policy prohibits prisoners taking diuretics from "work[ing] or recreat[ing] where the apparent air temperature is 95 [degrees] or higher." (*Id*. para. 26).

Even though UTMB's highest ranking officials know about these dangers, and their policies identify the hazard, UTMB does not require housing prisoners with these heat-sensitive disabilities in safe conditions. (*Id*. para. 84-85). The policies only address work and recreation, not housing. This is disability discrimination. For example, while UTMB requires TDCJ to house prisoners who use wheelchairs in wheelchair-accessible facilities, UTMB has no corresponding policy to ensure prisoners who are at increased risk of heat-related death receive housing accommodations for their disabilities, even though it could easily do so. (*Id*. para. 89).

Arguably even worse, Mr. McCollum was victimized by a deadly loophole in UTMB's policies that discriminates against people with hypertension and diabetes. Namely, that no intake physical is performed for seven to ten days. Because of this, Mr. McCollum did not receive *any* accommodations for his disability.

More particularly, when Mr. McCollum arrived at the prison, UTMB (through a nurse) learned he was taking medications for hypertension and suffered from diabetes. (*Id*. para. 38). Not only did this not result in any accommodation by UTMB for Mr. McCollum's identified heat-sensitive disabilities, a physician's assistant ignored his vulnerabilities to extreme heat by changing his prescription from a safe drug to a dangerous diuretic without ever meeting or talking with Mr. McCollum. (*Id*. paras. 38-39).

Thus, despite knowing Mr. McCollum was in danger, UTMB put no restrictions on his housing assignments and intentionally left him in danger. (*Id*. para. 87-88). Even though UTMB's own policies identify people with Mr. McCollum's disabilities as those most likely to suffer or die due to exposure to extreme temperatures, UTMB's employees failed to place him in safe housing, failed to get him a physical, and provided him no accommodations.

During periods of extreme temperatures, this discrimination is deadly. Prisoners arrive at the brutally hot Hutchins Unit from county jails where state law requires air conditioning. (*Id*. para. 82). Because their bodies are not acclimated to the extreme temperatures, they are at much greater risk of heat-related death – a risk that is well known to UTMB, but that UTMB medical providers and policymakers simply disregard. (*Id*. para. 87).

Finally, UTMB fails to staff the Hutchins Unit's infirmary around the clock – even though it is home to more than 2,200 men, many of whom have serious disabilities like diabetes and hypertension that make them more vulnerable to heat stroke. (*Id*. para. 54). Again, this discriminates against those most vulnerable to the extreme heat, and who cannot protect themselves.

As a consequence, shortly after 2:00 a.m. on the morning of July 22, 2011, less than a week after he arrived at the prison, and *before* he received the vital intake physical, Mr. McCollum began convulsing in his bed, and seizing from a heat stroke. (*Id*. para. 56). When he finally arrived at the hospital, after unconscionable delay due to UTMB's decision not to provide medical staff at the prison at night, his body temperature was 109.4 degrees, and the oppressive heat had caused him to suffer multi-system organ failure. (*Id*. para. 68). He died a few days later at age 58.

## STANDARD OF REVIEW

The standard of review for a Rule 12(c) motion is the same as a 12(b)(6) motion to dismiss for failure to state a claim. *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010). "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Id*. at 544 (citation omitted).

Motions to dismiss for failure to state a claim "are viewed with disfavor and [are] rarely granted." *Parker v. Am. Airlines, Inc.*, 516 F. Supp. 2d 632, 634 (N.D. Tex. 2007) (citing *Kaiser*

*Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)). When reviewing a motion to dismiss, Courts are required to accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Lindquist v. City of Pasadena*, 525 F.3d 383, 386 (5th Cir. 2008) (internal quotation marks and citations omitted). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotations and citations omitted).

Moreover, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), simply states that a party's complaint must be plausible on its face, must do more than offer labels and conclusions, and must offer some factual basis in support of his claim. Plaintiffs easily satisfy this standard.

## ARGUMENT AND AUTHORITIES

I.   *Plaintiffs Plead a Claim for Relief Under the ADA and Rehabilitation Act*

To allege a claim under the ADA and Rehabilitation Act, a plaintiff must plead: (1) that he is a qualified individual within the meaning of the acts; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability. *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 428 (5th Cir. 1997). Plaintiffs' complaint meets this standard.

(1) *Mr. McCollum Suffered from a Disability*

UTMB's motion does not contest Mr. McCollum was a qualified individual with a disability – diabetes and hypertension.

5

(2) *Prison is a "Service or Program" for ADA and RA Purposes*

Writing for a unanimous Supreme Court, Justice Scalia explained confinement in a jail or prison is a program or service for ADA/Rehabilitation Act purposes.

> [Defendant prison system] argue[s] that the words 'eligibility' and 'participation' [in the ADA and Rehabilitation Act] imply voluntariness on the part of an applicant who seeks a benefit from the State, and thus do not connote prisoners who are being held against their will. This is wrong. … While 'eligible' individuals 'participate' voluntarily in many programs, services and activities, there are others for which they are 'eligible' in which 'participation' is mandatory. A drug addict convicted of drug possession, for example, might, as part of his sentence, be required to 'participate' in a drug treatment program for which only addicts are 'eligible.'

*Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 211 (1998).

When a person has a disability, the ADA/Rehabilitation Act requires public entities to provide a "reasonable accommodation" to assist them in accessing public programs and services. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004). "Discrimination" under the ADA and Rehabilitation Act "differs from discrimination in the constitutional sense because the ADA and Rehabilitation Act statutes contain their own definitions of discrimination." *McCoy v. Texas Dep't of Criminal Justice*, 2006 U.S. Dist. LEXIS 55403, *22 (S.D. Tex. 2006) (citing *Melton*, 391 F.3d at 672). The Court in *McCoy* explained a failure to make reasonable accommodations in the prison context constitutes "discrimination" under the ADA and Rehabilitation Act because "failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of an accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners." *Id*. (citing *United States v. Georgia*, 546 U.S. 151 (2006)).

Moreover, the Supreme Court has expressly held the denial of medical care to individuals with disabilities, here, an intake physical, can form the basis of a valid the ADA and Rehabilitation Act. *Georgia*, 546 U.S. at 157.

Because Mr. McCollum was not provided reasonable accommodations, namely, safe housing given his disabilities, he could not participate in the prison's programs and died – undoubtedly suffering more "pain and punishment" than other able-bodied prisoners at the Hutchins Unit.

The Rehabilitation Act follows the same standards, adding only the requirement that the entity also receive federal funding, as the complaint alleges UTMB does. (Amd. Complaint para. 18). *See* 42 U.S.C. § 12133 ("The remedies, procedures, and rights set forth in section 505 of the Rehabilitation Act of 1973 shall be the remedies, procedures and rights this title provides to any person alleging discrimination on the basis of disability in violation of [Title II of the ADA]"); 29 U.S.C. § 794(a) (2006). Courts interpret the ADA and Rehabilitation Act under the same body of law. *See*, *e.g.*, *Bennett-Nelson v. Louisiana Board of Regents*, 431 F.3d 448, 455 (5th Cir. 2005). Thus, Plaintiffs have satisfied the elements of a Rehabilitation Act claim as well.

(3) *Mr. McCollum was Excluded from Prison Programs <u>Because</u> of his Disabilities*

Finally, the complaint plainly alleges Mr. McCollum was excluded from prison programs and activities. He died because UTMB failed to accommodate his disabilities by placing him in safe housing. Prisoners without disabilities like hypertension and diabetes are far more likely to only suffer in the extreme heat, but avoid life-threatening injuries or death. (Doc. 39-2, para. 30-34, diabetics at greater risk of heat stroke; para. 26-28, hypertensives at greater risk). Thus, UTMB discriminated against Mr. McCollum by denying him an intake physical and by placing him in the same brutal conditions as able-bodied prisoners, even though those conditions put Mr. McCollum at much greater risk of death. Thus, the discrimination against Mr. McCollum is because of his disabilities, and Plaintiffs' ADA/Rehabilitation Act claim is plausible and well pled.

II.     *The ADA Does Not Require "Sole" Causation*

Even if UTMB's motion articulated the correct legal standards, and it does not, it must be denied as to Plaintiffs' ADA claims because the ADA has a *different* causation standard from the Rehabilitation Act standard.

Title II of the ADA, contrary to UTMB's motion, does not require the plaintiff to suffer discrimination "solely by reason of her or his disability." Only the Rehabilitation Act requires a showing of discrimination "solely by reason of disability." *Compare* Title II, Americans with Disabilities Act, 42 U.S.C. §12132 ("no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.") *with* Rehabilitation Act, 29 U.S.C. §794 ("No otherwise qualified individual with a disability … shall, *solely by reason of her or his disability*, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance"). Under the ADA, "discrimination need not be the sole reason for the exclusion of or denial of benefits to the plaintiff." *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). *See also Purvis v. Tex. A&M Univ.*, 2011 U.S. Dist. LEXIS 129086, *15 (S.D. Tex. Nov. 8, 2011) ("under Title II of the ADA, discrimination need not be the sole reason for the exclusion of or denial of benefits to the plaintiff").

The Fifth Circuit squarely addressed this issue in *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 503 (5th Cir. 2002). There, the Fifth Circuit concluded the district court erred by instructing the jury in a Rehabilitation Act case that it could find for the plaintiff in an employment disability discrimination case if disability was a "motivating factor" in an adverse employment decision. The Fifth Circuit stated "it is clear that the jury charge stated … was a proper ADA charge," but reversed the district court's decision because the language of the

8

Rehabilitation Act is different. 304 F.3d at 504. Only the Rehabilitation Act, not the ADA, requires discrimination "solely" by reason of disability. Thus, Plaintiffs' ADA claims may not be dismissed on this basis.

### III.  UTMB's Refusal to Accommodate Mr. McCollum was the Sole Cause of the Discrimination He Suffered

Had Mr. McCollum not suffered from hypertension and diabetes, he likely would have survived the brutal temperatures at the Hutchins Unit. UTMB's failure to accommodate his disability – to provide him an intake physical, safe housing, and on-site medical treatment – denied him the ability to participate in programs and services at the Hutchins Unit, and ultimately resulted in his death. Denying Mr. McCollum the accommodations was the illegal act of discrimination, regardless of any other contributory causes of the injury he ultimately suffered. The Rehabilitation Act only requires a plaintiff be excluded from a program or service "solely by reason of his disability" – not that the illegal discrimination be the sole cause of any ultimate injury.

The Amended Complaint alleges UTMB discriminated against Mr. McCollum because it failed to provide him accommodations to assure he was not housed in the brutally hot parts of the prison. Had UTMB (1) timely performed an intake physical to assign Mr. McCollum proper housing; (2) immediately required accommodations for prisoners who self-reported heat-sensitive disabilities at triage; or (3) provided 24-hour medical care at facilities where prisoners suffering heat-sensitive disabilities were housed, then Mr. McCollum would likely be alive today. Each of these failures to accommodate Mr. McCollum solely denied him access to a benefit or service provided to non-disabled prisoners.

Moreover, the issue of sole causation is not relevant in this case. *Delano-Pyle v. Victoria Co.*, 302 F.3d 567, 575-76 (5th Cir. 2002) is instructive. There, a driver with severe hearing

disabilities rear-ended another motorist. When the police arrived at the accident, the officer found prescription painkillers in the driver's car, but failed to provide him with a sign-language interpreter during field sobriety tests. As a result, the driver failed the sobriety tests and was taken to jail for driving while intoxicated. The Fifth Circuit upheld a jury verdict against the police department because its officer intentionally failed to provide an accommodation to the driver. Though the driver could have been arrested and taken to jail based on either the collision or the discovery of the painkillers, the department was liable because denying him the accommodation by itself was discriminatory.

As the Fifth Circuit explains, when the plaintiff was denied an accommodation the "sole" causation requirement is irrelevant.

> [T]here is no question that the complaint claims the [defendant's] failure to provide the demanded accommodations is the sole cause of the alleged denial of benefits to the plaintiffs. That is to say, the plaintiffs claim that they were excluded from participation in [programs and services] precisely to the extent that they were not accommodated … The question here is not whether or to what extent the plaintiffs suffer a disability under the ADA; nor is the question whether the denial of the accommodation to that disability was caused solely or only in part by the animus of the defendants. The question is whether the failure to accommodate the disability violates the ADA; and the existence of a violation depends on whether under both the Rehabilitation Act and the ADA, the demanded accommodation is in fact reasonable and therefore required. If the accommodation is required the defendants are liable simply by denying it.

*Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 455 (5th Cir. 2005) (hearing-impaired students denied accommodations for classes). Because Plaintiffs pled Mr. McCollum was denied a reasonable accommodation, they meet the "sole" causation standard.

For these reasons, "sole" causation only becomes relevant where the defendant takes an adverse action against the plaintiff – where there is a mixed motive for excluding a person with a disability, which is not the case here. For example, in *Maples v. Univ. of Tex. Med. Branch*, 2013 U.S. App. LEXIS 8535 (5th Cir. Apr. 26, 2013) (unpublished), summary judgment was entered

against a student with a disability who did not receive accommodations for her learning disorder, but who also failed to complete required assignments (for reasons unrelated to her disability). The Fifth Circuit determined the failure to accommodate her was not the *sole* cause of her expulsion – her failure to complete required class work also played a role. *Compare Prejean v. Cypress-Fairbanks Indep. Sch. Dist.*, 97 Fed. Appx. 480, 483 (5th Cir. May 11, 2004) (unpublished) (summary judgment for employer when employee failed to present evidence showing termination for "any reason other than [his] declining job performance") *with O'Neil v. Tex. Dep't of Crim. Justice*, 804 F.Supp.2d 532, 538 (N.D. Tex. 2011) (denying summary judgment to prison medical care provider that failed to provide inmate with multiple accommodations for asthma). This case is similar to *Bennett-Nelson* and *O'Neil*, where disabled plaintiffs were denied accommodations by state agencies, and nothing like *Maples* and *Prejean* as Mr. McCollum had no ability to protect himself from the extreme heat without accommodations from UTMB.

### IV. The ADA and Rehabilitation Act Do Not Require Discriminatory Animus to Award Damages

Under the ADA and Rehabilitation Act, when a governmental entity knows a person needs an accommodation, and then fails to provide the accommodation, a person with disabilities has been intentionally discriminated against and is entitled to compensatory damages. *Delano-Pyle v. Victoria Co.*, 302 F.3d 567, 575-76 (5th Cir. 2002). A plaintiff does not need to show discriminatory animus. *See*, *e.g.*, *Taylor v. Richmond State Supported Living Ctr.*, 2012 U.S. Dist. LEXIS 170190, *14 (S.D. Tex. Nov. 30, 2012) (unpublished). The reason for denying the accommodation is irrelevant. Thus, UTMB's reason for denying the accommodation to Mr. McCollum is irrelevant.

Tellingly, UTMB improperly relies on *Guardians Association v. Civil Service Commission of New York*, 463 U.S. 582 (1983), which is easily distinguishable because it is not an ADA or Rehabilitation Act case. It is a Title VI race-based discrimination case involving disparate impact in hiring allegations. The judgment of the Court turned on the "absen[ce] [of] clear congressional intent or guidance" in defining "discrimination" to include disparate impact claims. *Guardians Assoc.*, 463 U.S. at 598 (White, J.). But as the Fifth Circuit explained in *Melton*, the ADA and Rehabilitation Act define "discrimination" differently than Title VI. 391 F.3d at 672.[2] Thus, under the ADA and Rehabilitation Act, it is well settled knowingly excluding a person with a disability from a program or service is "discrimination" triggering liability.[3]

V.     *Plaintiffs Are Entitled to Declaratory Relief*

Plaintiffs also seek declaratory relief that three UTMB policies and practices violate the ADA and Rehabilitation Act: (1) UTMB fails to timely perform intake physicals to assign prisoners with heat-sensitive disabilities to proper housing; (2) UTMB fails to immediately provide accommodations for prisoners who self-report heat-sensitive disabilities at triage; and (3) UTMB fails to provide 24-hour medical care at facilities where prisoners suffering heat-sensitive disabilities are housed. Accordingly, UTMB's argument that Plaintiffs fail to identify a policy to satisfy the requirements of declaratory relief is simply not true.

Of course, UTMB's argument is also a red herring, as a policy is not required to establish ADA and Rehabilitation Act liability.

---

[2] *Compare* Title VI, 42 U.S.C. §2000d ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.") *with* ADA, 42 U.S.C. §12132 ("no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.").

[3] Moreover, the issue of intent, which has been pled by Plaintiffs, is *always* a fact issue to be determined by the jury. *See*, *e.g.*, *First Interstate Bank of Arizona v. Interfund Corp.*, 924 F.2d 588, 595 (5th Cir. 1991) (intent is question of fact for the jury). It is also well settled that fact and circumstantial evidence can establish intent. *Delano-Pyle*, 302 F.3d at 575.

## CONCLUSION

For the foregoing reasons, the Court should deny UTMB's motion to dismiss in its entirety.

DATED: June 28, 2013.

                              Respectfully submitted,

                              The Edwards Law Firm
                              The Bremond Houston House
                              706 Guadalupe
                              Austin, Texas 78701
                                        Tel.    512-623-7727
                                        Fax.   512-623-7729

                              By     /s/ Jeff Edwards
                              JEFF EDWARDS
                              State Bar No. 24014406
                              Lead Counsel

                              Scott Medlock
                              State Bar No. 24044783
                              Brian McGiverin
                              State Bar No. 24067760
                              James C. Harrington
                              State Bar No. 09048500

                              TEXAS CIVIL RIGHTS PROJECT
                              1405 Montopolis Drive
                              Austin, TX 78741
                              (512) 474-5073 [phone]
                              (512) 474-0726 [fax]

                              Eliot Shavin
                              State Bar No. 18138200
                              2600 State Street
                              Dallas, Texas 75204
                              214-522-2010 (telephone)
                              214-720-9594 (fax)
                              Local Counsel

                              ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

  By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Northern District of Texas.

            By /s/ Jeff Edwards
            JEFF EDWARDS