IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


STEPHEN McCOLLUM, STEPHANIE
KINGREY, and SANDRA McCOLLUM,
individually and as heirs to the Estate of
LARRY GENE McCOLLUM,

        Plaintiffs,

v.                                                                    Civil Action No. 3:12-CV-02037-L-BK

BRAD LIVINGSTON, JEFF PRINGLE,
RICHARD CLARK, KAREN TATE,
SANDREA SANDERS, ROBERT EASON,
the UNIVERSITY OF TEXAS MEDICAL
BRANCH and the TEXAS DEPARTMENT
OF CRIMINAL JUSTICE,

        Defendants,

## ORDER

Pursuant to the District Court's *Order of Reference* filed May 16, 2013 (Doc. 51),

Plaintiffs' *Emergency Second Motion to Compel Discovery Responses* (Doc. 50) has been

referred to the undersigned for determination.  For the reasons that follow, the motion is

**GRANTED IN PART.**

## BACKGROUND

Plaintiffs, the surviving wife and children of Larry Gene McCollum, seek declaratory,

injunctive, and monetary relief from Defendants, TDCJ officials, for the death of McCollum,

which occurred at the Hutchins State Jail in Dallas, Texas.  (Doc. 43 at 12).  McCollum suffered

from hypertension and reported a history of diabetes to the University of Texas Medical Branch

(UTMB).  *Id.* at 5.  UTMB makes housing recommendations to TDCJ based on prisoners'

medical conditions.  *Id.* at 4.  McCollum was housed in a dormitory area within the Hutchins

1

State Jail that was not air conditioned.  *Id.* at 8.  He was prescribed hydrochlorothiazide, a

diuretic, shortly after his arrival at the Hutchins facility.  *Id.* at 7.  Diuretics remove water from

the blood to decrease blood pressure, thereby increasing the risk of heat stroke due to the

resulting dehydration and electrolyte imbalance.  *Id.* at 7–8.  The temperature exceeded 100

degrees Fahrenheit in Dallas for the 25 consecutive days immediately preceding McCollum's

death.  *Id.* at 5.  After slipping into a coma, McCollum died of hyperthermia, according to the

autopsy.  Id. at 13.  The autopsy also concluded that McCollum was "predisposed to developing

hyperthermia due to morbid obesity and treatment with a diuretic (hydrochlorothiazide) for

hypertension."  *Id.*

## APPLICABLE LAW

According to Federal Rule of Civil Procedure 37(a), a party may move for an order

compelling disclosure or discovery.  FED. R. CIV. P. 37(a).  In particular, a motion to compel a

discovery response may be made if a party fails to permit inspection under Rule 34.  FED. R. CIV.

P. 37(a)(3)(B)(iv).  Federal Rule of Civil Procedure 26(b)(1) states, unless limited by the court,

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

claim or defense . . . .  For good cause, the court may order discovery of any matter relevant to

the subject matter involved in the action."  FED. R. CIV. P. 26(b)(1).  Relevance has been broadly

defined to include "any matter that bears on, or that reasonably could lead to other matter that

could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437

U.S. 340, 351 (1978).

## ANALYSIS

Plaintiffs seek records -- namely Emergency Action Center reports, administrative

reviews, and Office of the Inspector General investigations relating to the deaths of thirteen

prisoners of the TDCJ over the past six years. (Doc. 50 at 6). Plaintiffs contend that autopsy

reports they acquired under the Public Information Act[1] reveal that these men died of

hyperthermia (or heat stroke) while incarcerated in TDCJ housing units. *Id.* at 5. Plaintiffs

argue that the requested documents will reveal Defendants' deliberate indifference to the

conditions that led to McCollum's death. *Id.* at 6-7. Defendants counter that production of

information regarding heat-related deaths that occurred after McCollum's death and in different

TDJC units is overly broad, not limited in time or scope, and not relevant to the question of

whether the Defendants could have inferred that a substantial risk of serious harm existed prior

to McCollum's death. (Doc. 53 at 5-6, 9).

The Court concludes that documents regarding subsequent heat-related deaths of TDCJ

prisoners are relevant to Plaintiffs' claim that Defendants were deliberately indifferent to the

conditions that caused McCollum's death. Liability stems from a prison official's knowledge

and disregard for an excessive risk to an inmate's health or safety; awareness of facts from which

an inference could be drawn that a substantial risk of serious harm exists; and the official's

drawing of that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Documents regarding

the deaths of thirteen TDCJ inmates within a narrowly-defined period of time are relevant to

Plaintiffs' claims that Defendants had knowledge of the potential danger of prisoners being

housed in extreme temperatures in non-air conditioned facilities. These documents could be

relevant to demonstrate Defendants' policies and practices prior to, and immediately after,

McCollum's death.

Courts in this circuit have previously found relevant documents reporting prison

conditions for a period following a harmful or deadly incident. *See Shepherd v. Dallas County*,

591 F.3d 445, 457 (5th Cir. 2009) (affirming the lower court's decision in refusing to exclude at

---

[1] TEX. GOV'T CODE Ch. 552.

trial a report by the Department of Justice made in 2006, following the plaintiff's stroke in

January 2004); *Payne v. Collins*, 986 F. Supp. 1036, 1058 (E.D. Tex. 1997) (overruling an

objection by prison officials asserting that an Operational Review Report was not relevant

because it was created following events subsequent to the attack on the plaintiff).

The requested documents in this case principally correspond to the month immediately

following McCollum's death.  Five of the inmates died within two weeks of McCollum's death,

four of whom were housed in a unit directed by Defendant Eason.  (Doc. 50 at 5, 8).  Despite

Defendants' arguments to the contrary, Plaintiffs persuasively and rightly aver that the

production of underlying, individual data should be admissible when a compilation of said data

would otherwise be permitted.  (Doc. 56 at 2).

The requests are narrowly tailored to thirteen inmates with stories similar to McCollum.[2]

Eight of the thirteen prisoners (including McCollum) were housed in TDCJ's "Region II"

facilities, units directed by Eason.  (Doc. 50 at 8, n. 4).  All thirteen prisoners were prescribed

medication at the time of their deaths, ranging from psychotropic drugs to diuretics.  *Id.* at 5.

Three had a history of hypertension, and five died less than one month after admittance to their

housing units.  *Id.*  These similarities suggest a pattern of behavior by the Defendants that could

be relevant to the issue of deliberate indifference.  Also, data from multiple TDCJ facilities could

be relevant to the question of whether an institution-wide trend or pattern existed.

Furthermore, Plaintiffs rightly assert that the requested documents would be easily

attainable, for, as Eason stated in his deposition, a prisoner death from a heat-related illness

would likely be followed by an administrative review and/or report by the Emergency Action

Center.  (Doc. 50-5 at 5-6, Exhibit Q, Deposition of Eason, 339:21- 40:6).  This Court has

---

[2] Defendants have agreed to provide information regarding two of these thirteen inmates already—the two men who died prior to McCollum.  (Doc. 50 at 8, n. 5).

previously concluded that documentation of a 23-year history of heat-related injuries in TDCJ, including a reasonable period after McCollum's death, was relevant to the issue of deliberate indifference, and granted Plaintiffs' motion to compel the production of the same.  (Doc. 58 at 3).  Logically, assembling reports and investigations spanning only six years and limited to thirteen named inmates would be significantly less burdensome.

Accordingly, Plaintiffs' motion to compel discovery responses, specifically, the request for detailed records of the heat-related deaths of thirteen inmates of TDCJ, is **GRANTED**. Defendants are **ORDERED** to fully respond **on or before August 14, 2013**.

*Attorneys' Fees*

Federal Rule of Civil Procedure 37(a)(5) requires the non-movant and/or his or her attorney to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees, if a motion to compel is granted.  FED. R. CIV. P. 37 (a)(5)(A).  However, there are three exceptions to this rule: filing of the motion before a good faith attempt to obtain disclosure or discovery without court action; substantially justified nondisclosure, response, or objection; or other circumstances which would make an award of expenses unjust.  *Id.*  As in the previous Order to Compel Discovery (Doc. 58 at 5–6), the Court does not believe that Defendants' objections were substantially unjustified based on the Court's findings and determination of the relative merits of the parties' positions.  FED. R. CIV. P. 37 (a)(5)(A)(ii). Thus, Plaintiffs' request for attorneys' fees is **DENIED**.

SIGNED July 24, 2013.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE