UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, STEPHANIE KINGREY, and SANDRA McCOLLUM, individually and as heirs at law to the Estate of LARRY GENE McCOLLUM, <br> PLAINTIFFS <br><br> v. <br><br> BRAD LIVINGSTON, JEFF PRINGLE, RICHARD CLARK, KAREN TATE, SANDREA SANDERS, ROBERT EASON, the UNIVERSITY OF TEXAS MEDICAL BRANCH and the TEXAS DEPARTMENT OF CRIMINAL JUSTICE. <br> DEFENDANTS | § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. <br> 3:12-cv-02037 |

**PLAINTIFF'S OPPOSED MOTION TO COMPEL DEPOSITION OF UNIVERSITY OF TEXAS MEDICAL BRANCH AND OWEN MURRAY, M.D.**

Larry McCollum died a tragic, pointless, and preventable death from exposure to extreme heat in the Hutchins State Jail. His surviving family members respectfully file this motion to compel the Federal Rule of Civil Procedure 30(b)(6) deposition of Defendant University of Texas Medical Branch, and Owen Murray, M.D., executive vice president of UTMB's Correctional Managed Care program.

SUMMARY

UTMB is the medical provider for most Texas Department of Criminal Justice prisons, including the Hutchins State Jail. Plaintiffs' Amended Complaint alleges UTMB violated McCollum's rights under the Americans with Disabilities Act and Rehabilitation Act when it failed to provide him accommodations to protect him from the extreme heat in TDCJ's un-air-conditioned prisons. McCollum suffered from diabetes and hypertension, disabilities that UTMB's own policies recognize put him at increased risk of heat-related injury or death. Tragically, when indoor temperatures soared over 100 degrees, McCollum suffered a heat stroke

and died because UTMB failed to require or even recommend TDCJ provide him with safe housing.

## FACTS

Fourteen men have died of heat stroke in TDCJ prisons where UTMB provided medical care in past 6 years.

| Name | Age | Unit | Date of Death | Body Temp. | TDCJ Region | Facts |
|---|---|---|---|---|---|---|
| James Shriver | 47 | Byrd | Aug. 8, 2007 | Unk. | I | History of hypertension, prescribed psychotropics |
| Dionicio Robles | 54 | Byrd | Aug. 13, 2007 | Unk. | I | Prescribed psychotropics, incarcerated less than one month |
| Douglas Hudson | 62 | Gurney | July 25, 2011 | 105 | II | History of hypertension, prescribed medication "known to interfere with heat dissipation," died 5 days after arrival |
| Larry McCollum | 58 | Hutchins | July 28, 2011 | 109.4 | II | Diabetic, prescribed diuretic, found 2:00 am, died 1 week after arrival |
| Thomas Meyers | 46 | Coffield | Aug. 3, 2011 | 105.6 | II | History of hypertension, prescribed psychotropics |
| Robert Webb | 50 | Hodge | Aug. 4, 2011 | Unk. | II | Developmentally disabled, prescribed psychotropics, found unresponsive at 3:30 a.m. |
| Alexander Togonidze | 44 | Michael | Aug. 8, 2011 | 106+ | II | Diabetic, prescribed psychotropics, previously complained of heat-related illnesses, collapsed 8:00 a.m. |
| Charles Cook | 53 | Hodge | Aug. 8, 2011 | 107.9 | II | Developmentally disabled, prescribed psychotropics |
| Michael Martone | 57 | Huntsville | Aug. 8, 2011 | 106.5 | I | Prescribed psychotropics |
| Kelly Marcus | 36 | Connally | Aug. 12, 2011 | Unk. | IV | Prescribed diuretic, found at 3:30 a.m. |
| Kenneth Wayne James | 52 | Gurney | Aug. 13, 2011 | 108 | II | Prescribed diuretic, died 3 days after arrival |
| Daniel Alvarado | 44 | Huntsville | Aug. 20, 2011 | 105.2 | I | HIV+, prescribed psychotropics, found unresponsive at 9:20 am |
| Rodney Adams | 45 | Gurney | Aug. 3, 2012 | 109.9 | II | Prescribed psychotropics, died 1 day after arrival |
| Albert Hinojosa | 44 | Garza West | Aug. 27, 2012 | Unk. | IV | Died at transfer facility, found shortly after midnight |

UTMB is responsible for identifying prisoners who need housing accommodations. For example, if a prisoner used a wheelchair, UTMB would tell TDCJ not to house that inmate in a facility with architectural barriers. Likewise, if UTMB told prison officials that inmate needs air conditioning prison officials at Hutchins would take steps to get the inmate to air conditioning.[1] Despite UTMB's policies recognizing extreme heat posed special dangers for prisoners with disabilities like McCollum's (or taking medications to treat those disabilities), UTMB made no accommodations to protect those prisoners' lives, even though UTMB's physician's assistant who prescribed a dangerous diuretic to McCollum at the prison testified diabetes makes one more susceptible to "the dangers of extreme heat."[2]

Dr. Murray supervises UTMB's prison health care program. Among other duties, Murray "oversees program development, quality assurance, outcomes management, the pharmaceutical formulary, disease management guidelines, offender correspondence, peer review, litigation coordination, financial management, business development, continuing medical education, and staff recruitment and development."[3] He would have extensive knowledge of UTMB's policies and procedures.

Plaintiffs originally noticed UTMB's Rule 30(b)(6) witness for deposition on July 8, 2013.[4] UTMB cancelled the deposition, and now refuses to produce any witness, including Dr. Murray, for depositions until the Court decides the motion to dismiss it has filed.

ARGUMENT AND AUTHORITIES

Federal Rule of Civil Procedure 30(b)(6) allows a party to depose "a governmental agency" by "designating one or more officers, directors, or managing agents" and "set out the

---

[1] Ex. 1, at 115, 30 (b)(6) Deposition of Jeffrey Pringle, TDCJ 30 (b)(6) representative as to the Hutchins State Jail facility.
[2] Ex. 2, Deposition of Babbili, 84:12-15.
[3] University of Texas Medical Branch, *UTMB Experts Guide: Owen Murray, D.O., MBA*, *available at* http://www.utmb.edu/experts/profile26.aspx
[4] Ex. 3, Notice of Deposition of University of Texas Medical Branch.

matters on which each person will testify." Likewise, under Rule 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Courts construe discovery rules liberally to serve the purposes of discovery: providing the parties with information essential to the proper litigation of all relevant facts, eliminating surprise, and promoting settlement. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Further, as a party to the suit, UTMB must satisfy a higher burden than a non-party witness to avoid a deposition. "A party seeking to quash a deposition … has a heavy burden of demonstrating 'good cause' and 'a specific need for protection.' The standard in the Fifth Circuit is 'extraordinary circumstances.'" *E.E.O.C. v. Greater Metroplex Interiors, Inc*, 2009 WL 412934*1 (N.D. Tex. 2009) (Kaplan, J.) (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979).  Defendants do not come close to meeting this standard.

### A. UTMB Cannot Show "Extraordinary Circumstances" Necessary to Stop Depositions

As a party to the lawsuit, UTMB must show "extraordinary circumstances" to stop its deposition. *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979). Courts rarely find this heavy is met. *See, e.g., Campos v. Webb County, Tex.*, 288 F.R.D. 134 (S.D.Tex. 2012) (physician's statement that deposition would be detrimental insufficient for finding of "extraordinary circumstances"); *Bucher v. Richardson Hosp. Authority*, 160 F.R.D. 88 (N.D.Tex. 1994) (finding possible trauma to sexual assault victim did not rise to level of "extraordinary circumstances"); *Southwest Bell Telephone, L.P. v. UTEX Communications Corp.*, 2009 WL 8541000, *3 (W.D. Tex. 2009) (Pitman, M.J.) (finding taking deponent's deposition twice, once as a Rule 30(b)(6) witness and once as a fact witness, did not rise to level of "extraordinary circumstances" when depositions focused on different topics). In examining whether a party has demonstrated "extraordinary circumstances," courts look to actual evidence of the burden or harm to the deponent. Conclusory statements are not enough. *Campos*, 288 F.R.D. 137. To quash the

deposition, UTMB would need to produce evidence of a specific burden that would create an "extraordinary circumstance."

Of equal significance, UTMB has provided no authority supporting – presumably because none exists – its choice to refuse to provide testimony until its motion is decided.

### B. Topics Are Relevant and Time is of the Essence.

The topics Plaintiffs seek to depose UTMB and Dr. Murray about are plainly relevant. For example, they seek testimony about McCollum's death, UTMB policies about heat and temperature, training related to heat provided to UTMB employees, and UTMB staffing levels at the prison where McCollum died.[5]

Plaintiffs should not be forced to wait until UTMB designates its trial experts or until the Court resolves UTMB's pending Motion to Dismiss under Rule 12 to present witnesses for deposition. Plaintiffs' deadline to designate expert witnesses is October 5, 2013. Any further delay prejudices Plaintiffs' ability to identify necessary experts and prepare expert reports. Plaintiff's Rule 30(b)(6) notice merely requires production of UTMB's representatives - fact witnesses.

The lack of accommodations on UTMB's part is all the more shocking in light of Defendant Warden Pringle's testimony on behalf of TDCJ that TDCJ takes absolutely no responsibility for its officers knowing the warning signs for heat stroke,[6] that Hutchins employees and inmates complain about the heat in the summer,[7] and that if UTMB requested steps be taken to move an inmate to an air conditioned unit, TDCJ officer at Hutchins would get the inmate to an air conditioned unit.[8]

---

[5] Ex. 3, Deposition Notice.
[6] Ex. 1, Pringle 30 (b)(6) deposition at 44-45.
[7] Ex. 1, Pringle 30 (b)(6) deposition at 46.
[8] Ex. 1, Pringle 30 (b)(6) deposition, at 115.

Likewise, Murray clearly has knowledge relevant to Plaintiffs' claims. He likely helped formulate policies about coping with the extreme temperatures in TDCJ's prisons, and the care UTMB provides to prisoners in light of TDCJ's admissions.

## ATTORNEYS FEES

As counsel conferred with UTMB before filing this motion and informed them that their refusal to provide deponents relevant and necessary to Plaintiffs' case lacked legal justification, Plaintiffs request the Court also order the Defendants to pay the attorneys' fees that were incurred to draft it. Fed. R. Civ. Proc. 37(a)(5). Those fees are as follows:

| | | |
|---|---|---|
| Scott Medlock | 1.5 hours x $350/hour = | $525.00 |
| Jeff Edwards | 2 hours x $450/hour = | $900.00 |

## CONCLUSION

Because UTMB's 30(b)(6) witness and Dr. Murray are essential fact witnesses, the Court should compel them to appear for deposition.

DATED: August 23, 2013

>Respectfully submitted,
>
>The Edwards Law Firm
>The Haehnel Building
>1101 E. 11th Street
>Austin, Texas 78702
>>Tel.    512-623-7727
>>Fax.   512-623-7729
>
>By    /s/ Jeff Edwards
>JEFF EDWARDS
>State Bar No. 24014406
>Lead Counsel
>
>Scott Medlock
>State Bar No. 24044783
>Brian McGiverin
>State Bar No. 24067760
>James C. Harrington
>State Bar No. 09048500
>
>TEXAS CIVIL RIGHTS PROJECT
>1405 Montopolis Drive
>Austin, TX 78741
>(512) 474-5073 [phone]
>(512) 474-0726 [fax]
>Eliot Shavin
>State Bar No. 18138200
>2600 State Street
>Dallas, Texas 75204
>214-522-2010 (telephone)
>214-720-9594 (fax)
>Local Counsel
>
>ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Northern District of Texas.

7

## **CERTIFICATE OF CONFERENCE**

By my signature above, I certify that I conferred with Kim Coogan, counsel for the UTMB defendants, about this matter. Ms. Coogan will not produce Murray or a Rule 30(b)(6) witness for deposition until the Court has ruled on UTMB's pending motion to dismiss, but agreed that that noticing them and forcing her to move to for protection from the notice was unnecessary. It is the intent of the parties to resolve this dispute through this motion to compel.