IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN McCULLOM, *et al.*, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 3:12-CV-02037 |
| BRAD LIVINGSTON, *et al.*, | § | |
| *Defendants*. | § | |

**DEFENDANT UNIVERSITY OF TEXAS MEDICAL BRANCH'S
RESPONSE TO PLAINTIFFS' MOTION TO COMPEL**

Comes now defendant, the University of Texas Medical Branch, by and through its attorney, the Attorney General for the State of Texas, and files this Response To Plaintiffs' Motion To Compel. Defendant shows the following:

**I.**

**FACTS**

Larry McCollum died while incarcerated at the Texas Department of Criminal Justice's Hutchins State Jail (TDCJ). His survivors allege that the lack of air conditioning at the jail caused or contributed to his death. Plaintiffs also allege, but defendant contests, that he suffered from diabetes, and that his diabetes and hypertension contributed to his vulnerability to the heat while incarcerated. Finally, plaintiffs allege that Defendant University of Texas Medical Branch (UTMB) violated McCollum's right to an accommodation under the Americans With Disabilities Act (ADA) and Rehabilitation Act (RA).

Mr. McCollum arrived at the Hutchins state jail from the McLennan county jail on or about July 15, 2011. By policy, when a new inmate arrives at the prison, TDCJ has seven days to issue the new inmate an identification card which will be used for commissary, dispensing of medications, meals served, and participation in various programs as well as other security

1

requirements. See Exhibit 1, page 46, #M, Offender Orientation Handbook. Similarly, UTMB has seven days to perform a comprehensive medical evaluation. See Exhibit 2, Correctional Managed Health Care policy number E-34.1. This comprehensive evaluation includes personal and medical baseline data; medical, mental health and dental histories; physical, mental and dental health assessments and needed diagnostic procedures; screening for communicable diseases and pregnancy; provision of inoculations; requests for free world medical records; mental health testing and evaluation; creation of HSM 18 (classification/housing document); medications, appointments and referrals scheduled as appropriate, based on the results of the health appraisals. This process of initiating a new offender into the system begins as soon as he steps off of the bus. In fact, prior to the comprehensive evaluation described above, a nurse meets with the offender in person and determines if he has any immediate medical needs or medications. See Exhibit 3, deposition of Andy Babbili, If the inmate has any immediate or emergency needs prior to the completion of this process, he need only make an appointment to see a health care provider.

In this case, while in the county jail, McCollum was prescribed Clonidine for his high blood pressure. See Exhibit 4, Texas Uniform Health Status Update. Inmates are *not* allowed to keep most medications, like Clonidine, on their person. Therefore, upon arrival at TDCJ, McCollum was seen by a nurse, who noted his Clonidine prescription in a hand written medical record, since McCollum was not yet "in the system". See Exhibit 5, nurse's note of July 15, 2011. That nurse's note was forwarded to Dr. Babbili, a physician's assistant, who determined that Clonidine is not a medication in UTMB's formulary. Dr. Babbili changed the prescription from Clonidine to another high blood pressure medication, hydrochlotothiazide, HCTZ, which

was available to UTMB. See Exhibit 5. Mr. McCollum was then issued a medical pass to pick up the medication at a pill window on a daily basis. See Exhibit 5.

The evidence thus far indicates that McCollum never picked up and took his HCTZ medication. See Exhibit 6, UTMB medication compliance record. Mr. McCollum died before UTMB performed the comprehensive evaluation described above. Because he never received his comprehensive evaluation, he was never seen by a physician or physician's assistant, and all of the things which would have been done for him as part of the evaluation were not done, including a physical exam and completion of an HSM form, which would have been used by co-defendant TDCJ to determine his housing and work assignments. See Exhibit 7, CMC policy number A-08.4.

## II.

## PROCEDURAL HISTORY

Plaintiffs filed suit in June 2012 [Dkt. 1] against co-defendant TDCJ only. On information and belief, plaintiffs and TDCJ mediated the case and entered into a mediation agreement. Apparently, the mediation agreement, if any, did not cause the case against TDCJ to be dismissed.

Plaintiffs amended their complaint adding UTMB as a defendant on April 5, 2013. [Dkt. 43]. Plaintiffs' only claims against UTMB are that UTMB failed to provide McCollum with an accommodation under the ADA and RA. UTMB filed its Answer on May 7, 2013 [Dkt. 49] and it's Motion To Dismiss under FRCP 12(c) on May 30, 2013. [Dkt. 55]. In its motion to dismiss, UTMB complained that plaintiffs have failed to allege that McCollum was denied the benefit of any identified program, service or benefit, or was otherwise discriminated against under the ADA or RA. Further, although seeking declaratory relief from UTMB, plaintiffs failed to

3

identify any policy of UTMB which they allege is in violation of the ADA or RA. Plaintiffs filed a response to the motion to dismiss [Dkt. 65], UTMB filed a reply [70] and plaintiffs filed a sur-reply [73]. The motion to dismiss is currently pending before this court.

## III.

## DISCOVERY

While its motion to dismiss has been pending, UTMB has participated in discovery with plaintiffs. First, UTMB presented for deposition Dr. Ananda (Andy) Babbili, the physician's assistant who changed the medication for Mr. McCollum. Further, UTMB produced all of its policies and procedures related to treatment of incoming inmates, and to medical care and training of staff relevant to health care in hot temperatures, like those in the prisons. A list of documents produced to plaintiffs by UTMB is attached as Exhibit 8. UTMB also answered three sets of interrogatories, requests for production and requests for admission from plaintiffs.

Plaintiffs then propounded a FRCP 30(b)(6) notice of deposition upon UTMB covering 26 topics. Contrary to the claims in their motion, plaintiffs never filed a deposition notice for Dr. Owen Murray, UTMB's Vice President of Offender Care Services. Defendant filed its Objections To Plaintiffs' Notice of Deposition on June 24, 2013. [Dkt. 64]. UTMB now incorporates by reference those objections in document 64. Defendant's primary objection to presenting 30(b)(6) witnesses prior to a ruling on the 12(c) motion [Dkt. 55] is that defendant still has not been told what accommodation McCollum sought, or what accommodation plaintiffs believe McCollum needed, but did not seek, and should have been provided. As a result, defendant re-urges it's objections to plaintiffs' 30(b)(c) depositions notice [Dkt. 64] and prays for a ruling on those objections at this time.

## IV.

## 30(b)(6) WITNESSES

Plaintiffs contend that Dr. Murray should be produced in response to their 30(b)(6) deposition notice. However, the plaintiffs do not choose whom they think is best suited for a 30(b)(6) representative. That responsibility lies with the agency being deposed. FRCP 30(b)(6) provides that "[t]he named organization must then designate one or more officers, directors or managing agents, or designate other persons *who consent to testify on its behalf…*". . (Emphasis added). Murray may or may not be best suited as a representative on any given topic on the list of 26. Procedurally, plaintiffs may either request his deposition based on his knowledge of specified relevant facts, or may send a 30(b)(6) notice requesting appropriate witnesses for certain relevant topics. It is not proper, however, to send a 30(b)(6) notice and then demand that a certain Apex level representative be provided for deposition.

WHEREFORE PREMISES CONSIDERED, defendant UTMB prays that plaintiffs' motion to compel the deposition of Dr. Owen Murray be denied.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for
Defense Litigation

KAREN D. MATLOCK
Assistant Attorney General
Chief, Law Enforcement Defense Division

/s/KIM COOGAN
KIM COOGAN

5

Assistant Attorney General
State Bar No. 00783867
P. O. Box 12548, Capitol Station
Austin, Texas  78711
(512) 463-2080/Fax (512) 495-9139

**ATTORNEYS FOR DEFENDANT**
**UNIVERSITY OF TEXAS MEDICAL BRANCH**

### NOTICE OF ELECTRONIC FILING

I, KIM COOGAN, Assistant Attorney General of Texas, certify that I have electronically submitted for filing **Defendant University of Texas Medical Branch's Response to Plaintiff's Motion to Compel** to the Court, on September 13, 2013 in the Northern District of Texas, Dallas Division.

/s/ KIM COOGAN
**KIM COOGAN**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, KIM COOGAN, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Defendant University of Texas Medical Branch's Response to Plaintiff's Motion to Compel** has been served by placing same in the United States Mail on this the 13th day of September, 2013, addressed to:

Jeff Edwards
The Edwards Law Firm
1101 E. 11th Street
Austin, Texas  78702

Scott Medlock
Texas Civil Rights Project
1405 Montopolis Drive
Austin, Texas  78741

| | |
|---|---|
| Bruce R. Garcia<br>Office of the Attorney General<br>P. O. Box 12548, Capitol Station<br>Austin, Texas  78711 | *Via Hand-Delivery* |
| Jonathan Stone<br>Office of the Attorney General<br>P. O. Box 12548, Capitol Station<br>Austin, Texas  78711 | *Via Hand-Delivery* |
| Demetri Anastasiadis<br>Office of the Attorney General<br>P. O. Box 12548, Capitol Station<br>Austin, Texas  78711 | *Via Hand-Delivery* |

/s/KIM COOGAN
KIM COOGAN
Assistant Attorney General