IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, *et al.*, | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:12-CV-02037 |
| | § | |
| BRAD LIVINGSTON, *et al.*, | § | |
|     *Defendants*. | § | JURY |

**BRAD LIVINGSTON'S REPLY TO PLAINTIFFS' RESPONSE TO
HIS MOTION TO DISMISS ON THE BASIS OF QUALIFIED IMMUNITY**

TO THE HONORABLE UNITED STATES MAGISTRATE JUDGE RENEE HARRIS:

Defendant Brad Livingston files the following Reply to Plaintiffs' Response to his Motion to Dismiss:

**I.    Plaintiffs' Response to Livingston's Motion to Dismiss Fails to Allege Livingston's Personal Involvement, and, like the Amended Complaint, Attempts to Disguise a Respondeat Superior Theory of Liability as a Constitutional Violation**

As in the Amended Complaint, Plaintiffs seek to premise TDCJ Director Livingston's liability on the basis that he knew that Texas gets hot in the summer and he should have done something about it. ("Plaintiffs will prove Livingston was aware of brutal heat in Texas prisons...") Response, p. 7. The essence of Plaintiffs' Amended Complaint against Livingston is that Texas summers are hot and Livingston should have had a policy requiring air conditioning. The Amended Complaint also attempts to impose liability on TDCJ Director Livingston by alleging acts and omissions of those at the Hutchins Unit that viewed Plaintiff, were personally involved responding to McCollum's medical and other needs and allegedly failed to do acts constitutionally required to maintain him in a healthy state.

Plaintiffs attempt to premise Livingston's liability on alleged acts and omissions of persons that had personal involvement in his care and treatment and responded or failed to respond properly. ("... it took officers almost an hour to call an ambulance to take him to Parkland Hospital.") *Id*.

Plaintiffs also claim that the lack of air conditioning in Texas prisons is a basis for Constitutional liability even though no court has ever so held, citing statutory requirements regulating Texas jails: **(**Response, p. 8)

> ...Livingston knew the vast majority of TDCJ prisons, including the Hutchins State Jail, were not air conditioned. Even though state law requires county jails to keep indoor temperatures between 65 and 85 degrees, indoor temperatures in the state prisons routinely soar over 100 degrees every summer.

Plaintiffs do not allege that the law applicable to county jails apply to state prisons. Even if Plaintiffs made an allegation that state law was violated, violation of state laws, rules or regulation does not support a finding of a constitutional violation. *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012 (1984); ("...officials sued for violation of constitutional rights, do not forfeit their immunity by violating some other statute or regulation.")

**II.    One Hour Delay in Getting Decedent to a Hospital**

Repeating the allegations in the Amended Complaint, Plaintiffs next attempt to premise liability on the alleged hour long delay in getting decedent treated by medical and correctional staff at the scene: (Response, pp.8-9)

> Livingston was intimately involved in the decision to end 24-hour medical care at the Hutchins State Jail, which caused the fatal hour-long delay in obtaining treatment for Mr. McCollum.

Attributing omissions of on the scene personnel to the Director of one of the largest agencies in Texas with 112 prison units is a pure vicarious liability issue. Plaintiffs attempt to dance around this issue by alleging that the delay was caused by the absence of 24 hour medical care. However, there is no constitutional requirement that a correctional facility have on site medical care. As Plaintiffs admit, inmates at Hutchins had access to medical staff at a local hospital. People in the free world do not usually have a doctor living in their home to respond to heat symptoms or any other disease. Instead, they rely on the 911 system and the existence of local medical facilities on a

day to day basis. People in the free world do not always live next door to a hospital. Plaintiffs cite no clearly established law that requires a medical unit to be housed within a prison. *Dixon v. Howe*, 44 Fed.Appx. 274, 2002 WL 1891419 *1 (9th Cir. 2002) ["Dixon failed to present evidence to refute defendants' contention that the delay he experienced was comparable to that typical in the medical community."].

### III. Plaintiffs Continue to Rely on Broad, Conclusory, Non Specific Allegations Devoid of Personal Involvement as a Basis to Overcome Qualified Immunity

Plaintiffs next attempt to base liability on vague allegations that something should have been done by Livingston and that something was done after suit was filed: Response, p. 11)

> But despite all these previous deaths, no life-saving changes were made before McCollum arrived at the Hutchins State Jail. In fact, only after suit was filed did TDCJ make significant changes at the Hutchins Unit with regards to the extreme heat and identifying particularly vulnerable individuals.

Plaintiffs, aside from air conditioning, do not state what "life-saving changes" Livingston was constitutionally required to have made prior to McCollum arriving at Hutchins State Jail.

From 1972 to 1999, District Judge William Wayne Justice litigated TDCJ prison conditions and authored numerous opinions including the 89 page opinion in *Ruiz v. Johnson*, 37 F.Supp.2d 855 (S.D.Tex.,1999). He did not find a constitutional right to air conditioning in Texas prisons. Neither has any other Court within the Fifth Circuit. *Blackmon v. Kukua, et al*, 758 F.Supp.2d 398 (S.D.Tex.,2010). The Amended Complaint alleges as unconstitutional the very methods approved by the Fifth Circuit in *Gates v. Cook*, 376 F.3d 323,339-40 (5th Cir. 2004) and relied on by defendant Livingston as within the ambit of that permitted by clearly established law. *Gates v. Cook*, 376 F.3d 323,339-40 (5th Cir. 2004). Therein, the district court entered numerous injunctions, including one that "direct[ed] [the prison officials] to provide fans, ice water, and daily showers when the heat index is 90 degrees or above, or alternatively to make such provisions during

3

the months of May through September." The Fifth Circuit affirmed this injunction. Also see *Valigura v. Mendoza*, 265 Fed.Appx. 232, 235 (5th Cir. 2008) (finding the necessity of remedial measures, such as fans, ice water, and showers to mitigate extreme heat, if appropriately employed, constitutionally sufficient and making no finding that air conditioning is constitutionally required). *Woods v. Edwards*, 51 F.3d 577 (5th Cir.1995) ( mere allegations of high temperatures in a lockdown cell could not support a claim that an inmate was subjected to cruel and unusual punishment).

Cases compiled from all federal circuits *in Rights of Prisoners § 3:56 Temperature and ventilation,* Michael B. Mushlin (4th ed. October 2012) do not disclose one case finding a constitutional right of a prisoner to air conditioning.

Plaintiffs also claim that after suit was filed, "TDCJ make significant changes", but does not specify what these changes were or state that they were constitutionally required. Changes made after an alleged liability causing event do not show liability before the event:

> **Rule 407. Subsequent Remedial Measures**:
> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
> negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction.

### IV. Plaintiffs' Contention That Livingston Knew Inmates With Certain Medical Conditions Were More Susceptible to Heat

Plaintiffs Response repeatedly conflates Livingston's alleged general knowledge of a heightened health risk for medically compromised inmates with a Constitutional violation. Response, p. 12 ("Livingston also knew that TDCJ imprisoned many people over the age of 40, or suffering from hypertension and diabetes, like McCollum, who are especially vulnerable to heat."). The Response, as does the Amended Complaint, refuses to acknowledge that mere knowledge of a risk is not sufficient to establish a violation of clearly established law as to a particular act or

4

omission of a defendant. It must also specify and demonstrate that the alleged acts or omissions of the Livingston violated the Constitution and were not within the ambit of qualified immunity. Instead, Plaintiffs rely on vague allegations that Livingston should have installed more air conditioning. Response, pp. 12-13 ("But even though TDCJ has 56 prison units that offer some air-conditioned inmate housing, where especially-vulnerable inmates could easily be transferred, Livingston refused to make any effort to protect them or issue any policy direction in that regard.")

The phrase "refused to make an effort to protect them or issue any policy direction in that regard" is of the vague and conclusory variety that Court have declared as failing to overcome qualified immunity. Conclusory statements that cast blame devoid of any underlying facts or showing personal involvement do not overcome qualified immunity. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009). The closest Plaintiffs come is by implying that Livingston should have transferred McCollum to a cooler unit. However, they do not, and cannot allege that Livingston was duty tasked, as TDCJ director, with reviewing inmate files and making decisions as to what unit they should be placed or transferred to or review medical charts and make decisions consistent with inmate medical needs. Nor do they allege that he had the medical expertise to make any decisions as to inmate care based on an inmate's medical history. The top administrator of a huge stage agency cannot be held liable for not responding with specific decisions based on the medical history of an inmate or a group of inmates. *Hayes v. Snyder,* 546 F.3d 516, 527 (7th Cir.2008) (reiterating "the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care").

V.     **Plaintiffs' Attempt to Hinge Liability on Policies**

On page 14, Plaintiffs allege as to Livingston that "e). He took no steps to house prisoners with medical conditions complicated by high temperatures in air-conditioned areas." As noted, non-

medical officials may rely on the judgment and decisions of a facility's medical personnel on questions of inmate medical care. *Hayes v. Snyder, supra*.

The first part of Plaintiffs' allegation also includes that Livingston "took no steps to house prisoners with medical conditions" to cooler areas. This is not a factual allegation but a legal conclusion masquerading as a factual assertion. The Court is required to assume pleaded facts as true, but not legal conclusions. *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 556 U.S. 662, 664 (" A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth.").

The specific "steps" alleged to have been constitutionally required, are not mentioned. The generality of the allegation fails to defeat qualified immunity:

> if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of Harlow...It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violated that right.

*Anderson v. Creighton*, 483 U.S. 639-40(1987).

Plaintiffs also assert as to Livingston that "a). He approved policies that made no accommodation for prisoners during periods of extreme temperatures (including policies and practices prohibiting McCollum from having a fan, or even a drinking cup for cool water);" Response, p.13. This claim lacks plausibility:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

> *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S.Ct. 1955

*Ashcroft v. Iqbal,* at 678

The inference that Plaintiffs ask the Court to make is that Livingston had a policy that prohibited TDCJ inmates from having a cup and that without a cup, McCollum and other inmates, simply could not access water. Plaintiffs are in essence alleging that no inmate at TDCJ could drink or access water because they were all, by policy, denied a drinking cup. Of course, if this were true, the TDCJ inmate population would be zero (0) because all of the 152,303 inmates would have died of dehydration.[1] This is contradicted by the Amended Complaint, paragraph 99, where other defendants are blamed for not providing sufficient water as required by TDCJ policy:

> Pringle and Sanders, failed to provide or ensure adequate additional drinking water was provided to prisoners. Officers only brought one large jug per fifty-eight prisoners to the prisoner living areas three times a day. The jugs did not contain enough water for each prisoner to drink enough to protect them from the heat, and were frequently filled with lukewarm water in July 2011. According to Director Eason, the provision of water was to occur as much as possible and should not have been so limited.

Paragraph 99, Amended Complaint admits that water was brought to living areas three times a day, but does not allege that inmates could not access that water, despite the allegation that according to policy, no inmate was issued a cup. Instead, it is alleged that the jugs did not contain enough water and that this insufficiency was not based on any TDCJ policy but on the failure to follow policy by Hutchins staff. ("According to Director Eason, the provision of water was to occur as much as possible and should not have been so limited.").

---

[1] http://www.tdcj.state.tx.us/documents/Statistical_Report_FY2012.pdf
Even a healthy person can be expected to survive no more than 3 days without water. http://www.livescience.com/32320-how-long-can-a-person-survive-without-water.html

The lack of plausibility of this allegation is also demonstrated in the Amended Complaint, paragraph 37, alleging that McCollum arrived on Hutchins on July 15, 2011 and paragraph 55, alleging that he died on July 22, 2011. Plaintiffs, contradicting paragraph 99 of the Amended Complaint, are in essence alleging that Livingston's "no cup" policy prevented inmates, including McCollum from accessing the water that was delivered three times a day to the inmate living areas and that between July 15, 2011 and July 22, 2011, a period of one week, McCollum was deprived of water by Livingston's alleged "no cup" policy.

It strains credulity and plausibility to allege that a person in poor medical condition, diabetic and taking a diuretic (Amended Complaint, paragraph 41) survived one week without water, not to mention the rest of the 152,203 TDCJ inmates subject to the "no cup" policy.

VI. **Plaintiffs' Response Proposes a Strict Liability Rule on a TDCJ Director for a Weather Related Death That of Ill Inmates Alleged to Not Have Been Properly Cared for by Hutchins Staff During the Onset of Extreme Weather.**

It is undisputed that the summer of 2011 broke historical heat records. Amended Complaint, paragraph 21.[2] Plaintiffs' response, in a conclusory fashion, states that Livingston "...condoned the conditions bringing McCollum to the verge of death" and even attempt to hold Livingston constitutionally responsible for the 2011 heat wave:

> Though the individual officers who delayed providing McCollum emergency medical treatment for an hour certainly contributed to his untimely death, they were not the ones who made the decisions that exposed McCollum to the hazardous temperatures in the first place. ***Had the temperatures in the Hutchins State Jail been safe,*** there would not have been a medical emergency for the officers to treat with deliberate indifference. (*emphasis added*)

**(**Response, p. 14)

---

[2] "21. On the day Mr. McCollum died, the Dallas area had endured 25 consecutive days where the temperature exceeded 100 degrees Fahrenheit."
http://www.weather.com/outlook/weather-news/news/articles/2011-heat-superlatives_2011-07-15: " One of the hottest summers in decades scorched areas from the Southern Plains to the Southeast, at times reaching into the East and Midwest, as well. Numerous all-time record highs have fallen by the wayside since late May, some of which have stood since the "Dust Bowl" of the mid 1930s!"

If air conditioning of prisons had been constitutionally required, and Livingston was alleged to have directed to keep the thermostat at prisons at 100 degrees despite its availability, a claim for violation of clearly established law might be plausible. Under the circumstances presented, the alleged inadequate practices and responses of Hutchins medical and correctional staff to the extreme temperatures of the summer of 2011 are not sufficient to overcome a TDCJ Director's qualified immunity.

## CONCLUSION

The Amended Complaint alternates between seeking vicarious liability for the alleged acts and omissions of Hutchins medical and corrections staff to asserting the failure to have policies that are not constitutionally required. It seeks to premise liability by attributing to the administrative head of TDCJ a duty to know the medical history of an inmate and substitute his medical judgment on housing assignments, treatment and response to medical distress. It suggests a constitutional duty to provide air conditioned prisons and on site medical facilities. None of the allegations specify personal involvement by the TDCJ Director that demonstrate that his conduct violated clearly established law that a similarly situated prison administrator would have been on notice of. *Carty v. Rodriguez,* 470 Fed.Appx. 234, 239 (5th Cir.2012). ("The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.' ")

In the only opinion within the Fifth Circuit addressing a TDCJ Director's liability for a heat related death, it was held that Director Livingston is entitled to qualified immunity. *Blackmon v. Kukua, et al*, 758 F.Supp.2d 398, 411 (S.D.Tex.,2010):

> The summary judgment evidence does not show, however, that Defendant Brad Livingston, Executive Director of the TDCJ, knew about Blackmon's complaints, let alone that he took any action with

respect to them. The Fifth Circuit has held that supervisory officials are not liable under §1983 unless "there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298, 303-304(5th Cir. 1987) (citing *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir. 1985)). Supervisory liability can also result if supervisory officials implement a policy so deficient that the policy "itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation." *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978)).

Under these standards, Plaintiff cannot support an individual claim against Executive Director Livingston based simply on the fact that Blackmon filed grievances with officials at Garza East and that those officials failed to act. *See*, *Kidd v. Livingston*, 2010 WL 2208247, (E.D.Tex., May 26, 2010) ("The fact that [defendants] did not take the action on [plaintiff's] grievances which [plaintiff] thought appropriate does not show that a constitutional violation took place. Nor does every letter or grievance written by an inmate to the Executive Director of TDCJ or the Director of the Correctional Institutions Division of TDCJ give rise to personal liability on the part of that official if the letter is not acted upon in the manner which the inmate believes appropriate.")

It is fundamentally unfair to suggest that qualified immunity of the top official of an agency housing 152, 203 inmates is defeated by his alleged failure to not have in place policies that are not constitutionally required, or on the basis that a record breaking hot summer was allegedly not adequately responded to by Hutchins correctional and medical staff. This is especially true where the only Fifth Circuit precedent has held that TDCJ Director Livingston, a named defendant, does not have sufficient personal involvement in the day to day operations of a prison unit to overcome qualified immunity.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

>DAVID C. MATTAX
>Deputy Attorney General for Defense Litigation
>
>KAREN D. MATLOCK
>Assistant Attorney General
>Chief, Law Enforcement Defense Division
>
>/s/ Demetri Anastasiadis
>DEMETRI ANASTASIADIS
>Assistant Attorney General
>Attorney-In-Charge
>State Bar No. 01164480
>
>Law Enforcement Defense Division
>P. O. Box 12548, Capitol Station
>Austin, Texas 78711
>(512) 463-2080 / (512) 495-9139 (fax)
>
>**ATTORNEYS FOR DEFENDANT**
>**BRAD LIVINGSTON**

## NOTICE OF ELECTRONIC FILING

I, DEMETRI ANASTASIADIS, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing **Defendant Brad Livingston's Reply to Plaintiffs' Response to His Motion to Dismiss on the Basis of Qualified Immunity**, in accordance with the Electronic Case Files system of the Northern District of Texas, on this the 9th day of October, 2013.

>/s/ Demetri Anastasiadis
>DEMETRI ANASTASIADIS
>Assistant Attorney General

## CERTIFICATE OF SERVICE

I, DEMETRI ANASTASIADIS, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Defendant Brad Livingston's Reply to Plaintiffs' Response to His Motion to Dismiss on the Basis of Qualified Immunity**, has been served electronically via the Electronic Case Files system of the Northern District of Texas, on this the 9th day of October, 2013, addressed to:

Jeff Edwards
EDWARDS LAW
The Haehnel Building
1101 East 11th Street
Austin, Texas  78702
jeff@edwards-law.com
*Attorney for Plaintiffs Stephen McCollum*
*Stephanie Kingrey, and Sandra McCollum*

James Harrington
Brian McGiverin
Scott Medlock
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas  78741
jch@mail.utexas.edu
brian@texascivilrightsproject.org
scott@texascivilrightsproject.org
*Attorneys for Plaintiffs Stephen McCollum*
*Stephanie Kingrey, and Sandra McCollum*

Eliot D Shavin
SMU LEGAL CLINIC
2600 State Street
Dallas, Texas  75204
eshavin@sbcglobal.net
*Attorney for Plaintiffs Stephen McCollum*
*Stephanie Kingrey, and Sandra McCollum*

Bruce R Garcia
Johnathan Stone
Assistant Attorney Generals
Office of the Attorney General of Texas
Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin, Texas  78711
bruce.garcia@texasattorneygeneral.gov
johnathan.stone@texasattorneygeneral.gov
*Attorneys for Defendants Texas Department of Criminal Justice, Richard Clark, Robert Eason, Jeff Pringle, Sandrea Sanders, and Karen Tate*

Kim Coogan
Erika Hime
Lacey Mase
Assistant Attorney Generals
Office of the Attorney General of Texas
Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin, Texas  78711
kim.coogan@texasattorneygeneral.gov
erika.hime@texasattorneygeneral.gov
lacey.mase@texasattorneygeneral.gov
*Attorneys for Defendant
University of Texas Medical Branch*

        /s/ Demetri Anastasiadis
        DEMETRI ANASTASIADIS
        Assistant Attorney General