IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, *et al.*, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:12-CV-02037 |
| | § | |
| BRAD LIVINGSTON, *et al.*, | § | |
| *Defendants*. | § | *JURY* |

**DEFENDANT BRAD LIVINGSTON'S AMENDED MOTION TO DISMISS
ON THE BASIS OF QUALIFIED IMMUNITY**

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Defense Litigation

KAREN D. MATLOCK
Chief, Law Enforcement Defense Division

DEMETRI ANASTASIADIS*
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
[Tel.] (512) 463-2080
[Fax] (512) 495-9139

**ATTORNEYS FOR DEFENDANTS**

_____

***Attorney of Record***

# TABLE OF CONTENTS

**Page**

Table of Contents.................................................... ii

Index of Authorities ........................................... *passim*

Constitution, Statutes and Codes, Rules...................................... viii

I.   Allegations Against Livingston in Amended Complaint........................... 1

II.   Livingston Is Entitled to Dismissal on the Basis of Immunity. ..................... 3

III.   Alleged Unconstitutional Policies. ............................................. 8

IV.   Eleventh Amendment Immunity. ............................................ 14

V.   Standing and Article III Jurisdiction. ........................................ 19

VI.   Equitable Relief under Texas Law........................................... 23

VII.   Objection to Discovery. .................................................. 24

Conclusion.................................................................. 25

Notice of Electronic Filing.................................................... 26

Certificate of Service. ....................................................... 27

## INDEX OF AUTHORITIES

**Cases**                                                    **Page**

*Allstate Ins. Co. v. Abbott,*
495 F.3d 151, 159 (5th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Anderson v. Creighton,*
483 U.S. 639-40(1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Armstrong v. Turner Industries, Inc.,*
141 F.3d 554, 563 (5th Cir.1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11

*Ashcroft v. al-Kidd,*
131 S. Ct. 2074 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ashcroft v. Mattis,*
431 U.S. 171 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Backe v. LeBlanc,*
691 F.3d 645, 648 (5th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Baker v. Putnal,*
75 F.3d 190, 195 (5th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bennett v. City of Slidell,*
728 F.2d 762, 767 (5th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Blackburn v. City of Marshall,*
42 F.3d 925, 931 (5th Cir. 1995).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 555 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*Bell Atlantic v. Twombly,*
127 S. Ct. 1955, 1964 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Blackmon v. Garza,*
484 Fed. Appx. 866 (5th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Blackmon v. Kukua, et al,*
758 F.Supp.2d 398 (S.D.Tex.,2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 10

*Board of County Comm'r v. Brown,.*
    520 U.S. 397, 405 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Brewer v. Hill,*
    453 F. Supp. 67 (N.D. Tex. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Brown v. Edwards,*
    721 F.2d 1442 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*City of Los Angeles v. Lyons,*
    461 U.S. 95, 112-113, 105-106 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17, 18, 22

*City of Los Angeles v. Lyons,*
    103 S. Ct. 1660, 1665, 1669 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Cozzo v. Tangipahoa Parish Council–President Gov't,*
    279 F.3d 273, 280 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 23

*Dixon v. Howe,*
    44 Fed.Appx. 274, 2002 WL 1891419 *1 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . .  5

*Duvall v. Dallas County,*
    Tex., 631 F.3d 203, 209 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Elk Grove Unified School Dist. v. Newdow,*
    542 U.S.1, 124 S.Ct. 2301, 2308 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Ex Parte* Young,
    209 U.S. 123 (1908). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Florance v. Buchmeyer,*
    500 F.Supp.2d 618, 640-41 (N.D. Tex. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gates v. Cook,*
    376 F.3d 323,339-40 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*Golden v. Zwickler,*
    394 U.S. 103, 109 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hathaway v. Bazany,*
    507 F.3d 312, 319 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hayes v. Snyder,*
    546 F.3d 516, 527 (7th Cir.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Helton v. Clements,*
    787 F.2d 1016, 1017 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Honig v. Doe,*
    484 U.S. 305, 318 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hurst v. Tex. Dept. of Assist. & Rehab. Serv.,*
    482 F.3d 809 (5th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*James v. Gonzalez,*
    2008 WL 4692412 (S. D. Tex. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Jolly v. Klein,*
    923 F.Supp. 931, 943 (S.D. Tex. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Koch v. Texas General Land Office,*
    273 S.W.3d 451 (Tex. App.—Austin,  2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Lee v. Young,*
    533 F.3d 505, 511 (7th Cir.2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lewis v. Continental Bank Corp.,*
    110 S.Ct. 1249, 1255 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Loya v. TDC,*
    878 F.2d 860 (5th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19, 24

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). . . . . . . . . . . . . . . . . 15

*Lujan v. Defenders of Wildlife,*
    112 S.Ct. 2130, 2136 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Martinez v. TDCJ,*
    300 F.3d 567 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 23

*McCarthy ex. rel. Travis v. Hawkins,*
    381 F.3d 407 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 23

*McClendon v. City of Columbia,*
    305 F.3d 314, 323 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Miles v. State of California,*
    320 F.3d 986 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Miller v. Graham,*
    447 F. App'x 549, 551 (5th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mitchell v. Forsyth,*
    472 U.S. 511, 526–27, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985). . . . . . . . . 13

*Morgan v. Swanson,*
    659 F.3d 359, 372 (5th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Murphy v. Kellar,*
    950 F.2d 290, 292 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Nelson v. University of Texas at Dallas,*
    461 F.Supp.2d 504, 508 (N.D. Tex. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Okpalobi v. Foster,*
    244 F.3d 405, 421, 423,425-426 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20

*Operation Rescue-National v. Planned Parenthood of Houston and Southwest Texas, Inc.,*
    937 S.W.2d 60, 71-72 (Tex. App. — Houston [14ᵗʰ Dist.] 1996). . . . . . . . . . . . . . . . . . . 24

*O'Shea v. Littleton,*
    414 U.S. 488 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 22

*Papasan v. Allain,*
    478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). . . . . . . . . . . . . . . . . .   11

*Pearson v. Callahan,*
    555 U.S. 223, 129 S.Ct. 808 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Plumley v. Landmark Chevrolet, Inc.,*
    122 F.3d 308, 312 (5th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,*
    506 U.S. at 139, 144, 146, 113 S.Ct. at 689 (1993). . . . . . . . . . . . . . . . . . . . . . . . 15, 23, 24

*Rizzo v. Goode,*
    423 U.S. 362 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Ruiz v. Johnson,*
    37 F. Supp.2d 855 (S.D.Tex.,1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

*Ruiz v. Johnson,*
    178 F.3d 385 (5ᵗʰ Cir.1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 15, 16

*Saucier v. Katz,*
    533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). . . . . . . . . . . . . . . . . . . . . . 11

*Schultea v. Wood,*
    47 F.3d 1427, 1433-1434 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Society of Separationists, Inc., v. Herman,*
    959 F.2d 1283, 1286 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Spencer v. Kemna*,
    523 U.S.1, 7, 118 S. Ct. 978 (1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*State of Cal. v. Campbell*,
    138 F.3d 784 (9th Cir. 1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*St. Paul Fire & Mar. Ins. Co. v. Texas Workers' Comp. Comm'n.*
    945 S.W.2d 886, 888-89 (Tex. App. —Austin 1997, no writ). . . . . . . . . . . . . . . . 24

*Sylvester v. Cain*,
    311 F. App'x 733, 735 (5th Cir., Feb. 20, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Texas Ass'n of Business v. Texas Air Control Board*,
    852 S.W.2d 440, 444 (Tex. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Texas Dept. Of Public Safety v. Moore*,
    985 S.W.2d 149, 153 (Tex. App. —Austin 1998, no pet.). . . . . . . . . . . . . . . . . . . 23

*Thompson v. City of Starkville, Miss.*,
    901 F.2d 456, 469 n.13 (5th Cir. 1990)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Town of Palm Valley v. Johnson*,
    87 S.W.3d 110, 111 (Tex. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

*TNRCC v. IT-Davy*,
    74 S.W.3d 849, 855 (Tex. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Valigura v. Mendoza*,
    265 Fed.Appx. 232, 235 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 7

*Walker v. Texas Office of Atty. Gen.*,
    217 F.Supp.2d 776 (E.D. Tex. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Wallace v. Texas Tech Univ.*,
    80 F.3d 1042, 1047, n.3 (5th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Waller v. Collier*,
    2008 WL 4623354 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Warnock v. Pecos County, Texas*,
    88 F.3d 342, 343 (5th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Wicks v.Mississippi State Employment Services*,
    41 F.3d 991, 994 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Will v. Mich. Dept. Of State Police*,
    490 U.S. 58, 70-71,109 S. Ct 2304 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Will v. Michigan Department of State Police*,
  109 S. Ct. 2304 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

*Woods v. Edwards*,
  51 F.3d 577 (5th Cir.1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Younger v. Harris*,
  401 U.S. 37 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## **Constitution**

United States Constitution Art III. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 22

Texas Constitution Art 4, Sec. 22. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## **Statutes, Codes, and Rules**

20 U.S.C. §1681, et. seq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

28 U.S.C. §1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

42 U.S.C.  §1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

42 U.S.C. §1988(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

42 U.S.C.§2000 bb, et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

42 U.S.C. §2000 cc, et seq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

42 U.S.C. §2000 d, et seq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

TEX. CIV. PRAC. & REM. CODE Chapter 37. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

TEX. CIV. PRAC. & REM. CODE §37.003. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

TEX. CIV. PRAC. & REM. CODE §65.011. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fed. R. Civ. Proc. §12(b)6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

Fed. R. Civ. Proc §12(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **STEPHEN McCOLLUM,** *et al.*, | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:12-CV-02037** |
| | § | |
| **BRAD LIVINGSTON,** *et al.*, | § | |
| *Defendants.* | § | *JURY* |

**DEFENDANT BRAD LIVINGSTON'S AMENDED MOTION TO DISMISS
ON THE BASIS OF QUALIFIED IMMUNITY**

TO THE HONORABLE UNITED STATES MAGISTRATE JUDGE RENEE HARRIS TOLIVER:

Defendant Brad Livingston files the following Amended Motion to Dismiss on the basis of

Qualified Immunity pursuant to Fed. R. Civ. Proc. 12(b)6) or in the alternative, move for judgment

on the pleadings.  Fed. R. Civ. Proc 12(c)

## I.    ALLEGATIONS AGAINST LIVINGSTON IN AMENDED COMPLAINT

Plaintiffs sue TDCJ Director Brad Livingston under 42 U.S.C. 1983 claiming he is liable for

the death of Larry McCollom at the Hutchins State Jail In Dallas, Texas on July 22, 2011.  Plaintiffs

do not allege that TDCJ Director Livingston had any knowledge of decedent McCollom's

circumstances   prior to his death.  They do not allege that Livingston had personal involvement in

his medical treatment, supervision**,** classification, assignment, any more that the Director of TDCJ

is personally involved with any of the other 152,303 inmates in TDCJ custody.[1]

Plaintiffs' attempt to hold TDCJ Director Livingston liable on the following bases:

> Livingston, was aware of a heat wave Dallas was experiencing in July 2011.
> (Amended Complaint, Paragraph 22).

---

[1]      http://www.tdcj.state.tx.us/documents/Statistical_Report_FY2012.pdf

"Defendants" knew, prior to Mr.McCollum's death, that hypertension increases a person's susceptibility to heat stress. (Paragraph 28) [2]
"Defendants failed to provide Mr. McCollom adequate shelter from this extreme heat." (Paragraph 44).

Livingston was aware that "... many TDCJ prisoners live with diabetes and hypertension, and are housed in non-air-conditioned TDCJ facilities, including the Hutchins State Jail." (Paragraph 45)

"Defendants took no steps to reduce the heat levels inside the housing dorms. They did not bring in cooling devices and they did not move prisoners with disabilities rendering them dangerously susceptible to extreme heat – like Mr. McCollum – to airconditioned portions of the prison."  Paragraph 49.

Livingston made a decision to not have medical staff at Hutchins State Jail after 6:00PM and that , "... for a prisoner to receive immediate medical attention they would have to be transported to a hospital by ambulance." (Paragraph 54).

"An informal TDCJ policy, approved and ratified by Pringle, Eason, and Director Livingston, possibly, UTMB, treats seizures as a minor event not requiring immediate medical attention."  (Paragraph 67)

"...Defendants knew subjecting prisoners, like Mr. McCollum, to the obvious risk of prolonged exposure to high ambient temperatures and humidity, posed a life-threatening health risk. Yet, rather than seek to have the housing areas cooled by air conditioning, or to make sure inmates with medical conditions such as diabetes or hypertension were housed in air conditioned units, these officials chose to subject all inmates to dangerous, extreme heat..." (Paragraph 74)

"...Livingston,... took no steps to remedy this despite knowing and informing their employees that extreme heat could and would cause serious injury or death....Livingston... knew "victims of prolonged or high heat can develop heat cramps or heat exhaustion."  (Paragraphs 76-77)

Other TDCJ inmates have died of heat-related causes in the summer of 2011. Livingston knew or should have known of these other deaths.  (Paragraph 79)

---

2       Simply " 'lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct' "fails " 'to satisfy [the] minimum standard' that 'a complaint give each defendant fair notice of what the plaintiffs claim is and the ground upon which it rests".  *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596, 605 (6th Cir.2012). *Atuahene v. City of Hartford*, 10 Fed. Appx. 33 (2nd Cir.2001). Supervisory officials at the top levels of an agency are not liable for the acts or failure to act of other officials. *Oliver v. Scott*, 276 F. 3d 736, 742 (5th Cir. 2002).

Livingston took no actions to cool TDCJ prisons, refused to air condition inmate living areas and refused to move sick inmates to air conditioned areas causing McCollum's death. (Paragraph 82-83)

"Livingston...took no steps to house prisoners with known medical conditions complicated by heat, such as those suffering from diabetes, hypertension or prescribed diuretics, in locations that were air conditioned." (Paragraph 93)

"Defendants chose not to provide prisoners, like Mr. McCollum, these opportunities to cool off in an air conditioned environment at the Hutchins facility...Nor...notify McCollum or any other prisoner when they arrived that they could request to spend time in aid conditioned parts of the prison." (Paragraph 98)

Pursuant to TDCJ policy, known to Livingston, McCollum was not provided a cup when he entered Hutchins State Jail on July 15, 2011. (Paragraphs 37, 100)

Livingston prohibited McCollum from owning a person fan. (Paragraph 101)

Livingston did not provide reasonable accommodations for McCollom whose disability made him more susceptible to heat stroke and failed to take reasonable steps to protect the health and safety of prisoners with hypertension or diabetes during periods of extreme temperatures. (Paragraph 104-107)

"At the time of Mr. McCollum's death, the law was clearly established that temperatures exceeding 90 degrees Fahrenheit are cruel and unusual, and create unconstitutional conditions of confinement. Thus, Livingston, Eason, and Pringle are not entitled to qualified immunity." (Paragraph 108)

Livingston, knew about and ratified the decision to delay prisoners access to medical care, knew about and ratified an informal TDCJ policy of failing to provide immediate medical attention to non-responsive prisoners suffering seizures at prisons where there was no available medical, staff and failed to adequately train and supervise Clark, Tate and Sanders. Their failure and refusal to instruct officers who find unresponsive inmates suffering convulsions to immediately seek emergency medical treatment proximately caused Mr. McCollum's death.(Paragraphs 123-125) (Clark, Tate & Sanders are identified as a correctional officer, sergeant and lieutenant at Hutchins State Jail (Paragraphs 15-17)

## II.    LIVINGSTON IS ENTITLED TO DISMISSAL ON THE BASIS OF IMMUNITY

Plaintiffs do not allege that TDCJ Director Livingston was an employee of the Hutchins State

Jail at any time before or during July 22, 2011, that his TDCJ duties required him to deliver "cooling

devices" to the Hutchins State Jail, to be aware of every medical condition that an inmate might have at that facility or to move prisoners of that facility in a manner consistent with their medical status. The allegations fail to specify sufficient personal involvement of TDCJ Director Livingston to defeat qualified immunity. The claims may be categorized as follows:

> 1.  Livingston failed to air condition the Hutchins Unit. (Paragraphs 45, 49, 74, 82, 83, 93, 98)

This claim sets forth no violation of clearly established law because courts within the Fifth Circuit have not held that there is a Constitutional right to an air conditioned prison. *Blackmon v. Garza,* 484 Fed. Appx. 866 (5th Cir. 2012), footnote 6:

> FN6. We also note that, like the *Gates* court*, (Gates v Cook,* 376 F.3d 323(5th Cir. 2004)) do not suggest that air conditioning is mandatory to meet the requirements of the Eighth Amendment.

Despite litigation on prison conditions in a class action suit that resulted in a federal court virtually in control of the Texas Prison System for a period of 27 years, Judge William Wayne Justice, in a 89 page opinion, did not order that prison units be equipped with nor find a constitutional right to air conditioning in Texas prisons. *Ruiz v. Johnson,* 37 F. Supp.2d 855 (S.D.Tex.,1999) reversed *Ruiz v. Johnson*, 178 F.3d 385 (5th Cir.1999). Neither has any other Court within the Fifth Circuit. *Blackmon v. Kukua, et al*, 758 F.Supp.2d 398 (S.D.Tex.,2010); *Gates v. Cook*, 376 F.3d 323,339-40 (5th Cir. 2004). (The district court entered numerous injunctions, that did not include air conditioning but did include one that "direct[ed] [the prison officials] to provide fans, ice water, and daily showers when the heat index is 90 degrees or above, or alternatively to make such provisions during the months of May through September." The Fifth Circuit affirmed this injunction.); *Valigura v. Mendoza*, 265 Fed.Appx. 232, 235 (5th Cir. 2008) (finding measures, such as fans, ice water, and showers to mitigate extreme heat, if appropriately employed, constitutionally sufficient and making no finding that air conditioning is constitutionally required).

*Woods v. Edwards*, 51 F.3d 577 (5th Cir.1995) ( mere allegations of high temperatures in a lockdown cell could not support a claim that an inmate was subjected to cruel and unusual punishment).

Cases compiled from other federal circuits *in Rights of Prisoners § 3:56 Temperature and ventilation,* Michael B. Mushlin (4th ed. October 2012) do not disclose one case finding a constitutional right of a prisoner to air conditioning.

> 2.      Livingston did not assign, transfer, house or otherwise place McCollum in a cooler facility consistent with his medical condition and failed to provide 24 hour onsite medical care at the Hutchins Unit.   Paragraphs 45, 49, 54,67, 74, 82, 83, 93, 104-107, 123-125.

Clearly established law does not assign constitutional liability to the top prison security administrator for failing to diagnose, assign, house or treat inmates in accordance with their medical conditions.   *Lee v. Young,* 533 F.3d 505, 511 (7th Cir.2008); ("[I]n determining the best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals."); *Hayes v. Snyder,* 546 F.3d 516, 527 (7th Cir.2008) (reiterating "the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care").

The provision of on site prison medical care is not constitutionally required.   *Dixon v. Howe*, 44 Fed.Appx. 274, 2002 WL 1891419 *1 (9th Cir. 2002) ("Dixon failed to present evidence to refute defendants' contention that the delay he experienced was comparable to that typical in the medical community.").

> 3.      Livingston failed to ensure that inmates had cups and fans. Paragraphs 37, 100, 101.

A claim of Constitutional liability of the Director of a large prison agency based on the theory that he has a duty to provide sundry items to inmates at a particular unit as if he was a correctional officer do not defeat qualified immunity.   Imputing knowledge of a condition and the needs of a specific inmate at the Hutchins Unit and claiming that a TDCJ Director who fails to take appropriate

action in response to those needs loses qualified immunity is not supported by precedent.

Similar claims alleging TDCJ Director Livingston to be liable for heat related injury to a TDCJ inmate were brought against Livingston in *Blackmon v. Kukua, et al*,758 F.Supp.2d 398(S.D. Tex. 2010).  (Opinion attached, **Appendix 1**).   The Complaint therein alleged that Livingston violated Blackmon's rights under the Eighth and Fourteenth amendments by knowingly subjecting him to inhumane levels of heat during his time in East Garza and by acting with deliberate indifference to Blackmon's health and safety.  Blackmon contended that from May to October the indoor temperature at Garza East routinely exceeded 90 degrees Fahrenheit.

Blackmon alleged that "the administration building, control pickets, and other areas where prison employees worked were all air conditioned. (*Id*. at 27, 50-56.)  The windows in the dorm were sealed shut."  Opinion, p. 3.  Blackmon alleged the absence of air conditioning and personal fans:

> The main ventilation in the East Garza dorms came from air handlers that brought in air from outside and circulated it through the dorms, but provided no conditioned air. (Id. at 42.)  Each air handler served two dorms.  (*Id*. at 39.)  Garza East inmates were not permitted to have personal fans because there were not enough electrical outlets in the dorm for the inmates to use.  There was no water fountain in the dorm.  Ice water was made available three times daily (though the water may have run out on some occasions). (*Id.* at 22.)  Offenders were also served iced water and/or beverage at all three meals in the offender dining room. (D.E. 141, Ex. H (Frances affidavit) at 2).  But, according to Blackmon, thirsty prisoners were often forced to drink from one of the restroom sinks.  (D.E. 142, Ex. A (Blackmon Decl.) at ¶19.)  There were eight sinks for up to 54 prisoners, but many were often broken.  (Opinion, p. 3)

Blackmon also alleged that due to his medical condition, the heat exacted a higher toll on his health than on an inmate without his medical condition, that Livingston did not take action to limit his exposure and that he suffered a constitutional injury for which Livingston is liable:

> Blackmon contends that prolonged exposure to high temperatures and humidity threatened the physical and mental health of inmates at Garza East. (D.E. 120 at 4-5.)  Blackmon himself suffers from hypertension for which he takes medication. (D.E. 142, Ex. A (Blackmon affidavit), ¶ 25.)  He contends that his age and medical condition put him at acute risk of heat stroke, and that his blood pressure rose and his vision dimmed and became blurry as a result of the heat. (*Id*. at ¶¶ 27-29.)Blackmon

further contends that Defendants were well aware of these conditions and did nothing to alleviate them, even after Blackmon wrote several grievances to Defendants regarding the heat conditions and the broken sinks.  (Opinion, pp.3-4)

In analyzing Livingston's Motion for Summary Judgment, the Court found that extreme heat can be the basis of an 8th Amendment violation and that there was a genuine issue of material fact as to whether the conditions Blackmon complained of constituted cruel and unusual punishment citing *Valigura v. Mendoza*, 265 Fed.Appx. 232, 235 (5th Cir. 2008):

> "[w]e have held that temperatures consistently in the nineties without remedial measures, such as fans, ice water, and showers, sufficiently increase the probability of death and serious illness so as to violate the Eighth Amendment."
>
> ...
>
> the Court finds Blackmon has succeeded in raising a genuine issue of fact as to whether the conditions in the C-8 Dorm constituted an "extreme deprivation of any 'minimal civilized measure of life's necessities.'" *Gates*, 376 F.3d at 332. Blackmon has provided sufficient evidence of the extreme temperatures he suffered in the C-8 Dorm. (Opinion, pp.12-13)

In analyzing which defendants had been shown to be deliberately indifferent to his health and safety because they had knowledge of the complained of conditions, found "...that Defendants Warden Kukua, Assistant Warden E. Garza, Maintenance Supervisor M. Garza, and Captain Latorre all had knowledge of Blackmon's complaints."  Opinion, p. 17

As to Director Brad Livingston, the Court found that he did not know about Blackmon's complaints nor did it find that he had sufficient personal involvement such that his qualified immunity would be defeated had he known:  Opinion, pp. 17-18.[3]

> The summary judgment evidence does not show, however, that Defendant Brad Livingston, Executive Director of the TDCJ, knew about Blackmon's complaints, let alone that he took any action with respect to them. The Fifth Circuit has held that supervisory officials are not liable under §1983 unless "there exists either (1) his

---

[3]     Similarly, Plaintiffs in the case at bar have made no allegation that Larry McCollom or any other person, notified Livingston of his alleged medical condition, that he was experiencing any medical problem related to the allegations made in the Amended Complaint or that any action was requested or medically necessary to preserve his health.

personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987) (citing *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir. 1985)). Supervisory liability can also result if supervisory officials implement a policy so deficient that the policy "itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation." *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978)).

Under these standards, Plaintiff cannot support an individual claim against Executive Director Livingston based simply on the fact that Blackmon filed grievances with officials at Garza East and that those officials failed to act. See *Kidd v. Livingston*, 2010 U.S. Dist. LEXIS 52554, *6-7 (E.D. Tex. May 26, 2010) ("The fact that [defendants] did not take the action on [plaintiff's] grievances which [plaintiff] thought appropriate does not show that a constitutional violation took place. Nor does every letter or grievance written by an inmate to the Executive Director of TDCJ or the Director of the Correctional Institutions Division of TDCJ give rise to personal liability on the part of that official if the letter is not acted upon in the manner which the inmate believes appropriate.") As such, Defendants' motion for summary judgment with respect to Livingston is granted.  (Opinion pp. 17-18)

For the reasons discussed above, Defendants Latorre, M. Garza, and Livingston are entitled to qualified immunity to the extent that they could be found liable under the Eighth Amendment at all. (Opinion p. 23)

That TDCJ Director Livingston's qualified immunity may be defeated because he did not ensure that McCollom had a cup and a fan is not supported by clearly established law.

## III.    ALLEGED UNCONSTITUTIONAL POLICIES

Plaintiffs suggest that Livingston had a Constitutional duty to cause all 111 TDCJ[4] prisons to be furnished with central air conditioning.  Plaintiffs premise appears to be that a TDCJ Director has a Constitutional duty at each of the 111 prison units, to issue of fans, transfer inmates to an air conditioned cell, cellblock or prison unit, to be aware of the medical needs of each inmate and to intervene with the appropriate medical care of each of the 152,303[5] inmates depending on their

---

[4]      http://www.tdcj.state.tx.us/unit_directory/index.html

[5]      http://www.tdcj.state.tx.us/documents/Statistical_Report_FY2012.pdf

medical needs on any particular day or hour of the day.  In making such conclusory allegations, the Amended Complaint disregards that a TDCJ Director cannot physically be present at any of the 111 units to supervise their daily operations, housing assignments or medical care, that he is not qualified to medically diagnose or treat inmates and that there exists an extensive infrastructure and staff trained and equipped and designed to deal with these issues.  The Hutchins State Jail, accredited by the American Correction Association since 2007[6], has a maximum capacity of 2,276 inmates.  The allegation  that a TDCJ Director, as an administrative head of an ACA accredited prison unit, violates the Constitution by not ensuring that all 152,303 inmates are provided with air conditioning at each of 111 prison units is a conclusion of law that is not clearly established in the Fifth Circuit.

Courts are required to accept factual allegations as true but not conclusions of law.  Recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009).  Mere conclusory allegations will not survive a motion to dismiss. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995); *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1964 (2007).

An attempt to attribute personal liability and overcome the qualified immunity of the Chief Executive of  of TDCJ, an agency that incarcerates 152,303 inmates, must do more than allege that if a different policy had been in place, Plaintiffs' decedent would not have been injured.

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion.  First, the Court should identify and disregard conclusory allegations for they are "not entitled to the assumption of truth."*Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief."   Allegations that a defendant violated a person's

---

[6]      http://www.tdcj.state.tx.us/unit_directory/hj.html

constitutional rights, when that defendant had no knowledge of and was not personally involved in any of the events that allegedly harmed Plaintiff, must be disregarded. ( "...if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of Harlow...It should not be surprising, therefore, that  our cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violated that right.")  *Anderson v. Creighton*, 483 U.S. 639-40(1987).

A fair reading of the Amended Complaint indicates numerous medical professionals and TDCJ security staff that had personal involvement with McCollom between his arrival at the Hutchins State Jail on July 15, 2011 and his death on July 22, 2011.  To permit a case to go forward against a TDCJ Director on the basis of decisions made by medical professionals and correctional staff on the scene directly and personally involved in the treatment and care of one of 152, 303 inmates, where he had no previous knowledge of the needs and circumstances and had no personal involvement in any of the decisions made during the 1 week period prior to his death, is not supported by clearly established law and contradicted by *Blackmon v. Kukua, et al*.  Qualified immunity may not be compromised on the basis of respondeat superior, especially when the on the scene officials alleged to be personally involved in the treatment and care of Plaintiffs' decedent are medical professionals and the defendant security administrator is not.

Plaintiffs' claims against Livingston  assert no facts demonstrating personal involvement in any of the matters complained about and are insufficient to state a claim for relief, entitling this defendant to a dismissal, as a matter of law.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) and *Pearson v. Callahan* 555 U.S. 223, 129 S.Ct. 808 (2009) require a claim

against a public official to assert facts demonstrating that immunity is inapplicable.  A court  must

decide (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional

right, and (2) whether that right was "clearly established" at the time of the defendant's alleged

misconduct.  *Saucier*, 533 U.S. at 201; *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173

L.Ed.2d 868 (2009) (explaining that claims must offer more than naked assertions devoid of further

factual enhancement, and quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557, 127 S.Ct.

1955, 167 L.Ed.2d 929 (2007)); *Twombly,* 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 265,

286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)) (requiring more than "labels and conclusions" or "a

formulaic recitation of the elements" in the complaint); In accord is *Morgan v. Swanson,* 659 F.3d

359, 372 (5th Cir. 2011):

> ...the Supreme Court has held that generalizations and abstract propositions are not
> capable of clearly establishing the law. The Supreme Court recently—and
> forcefully—underscored this point in *Ashcroft v. al-Kidd,* where it noted, with some
> exasperation, that it has "repeatedly told courts ... not to define clearly established
> law at a high level of generality."[FN30]  This rule is eminently sensible, of course, as
> the Court has explained:
>
> FN30. *Id.* (citations omitted); *See also Brosseau v. Haugen,* 543 U.S. 194, 198, 125
> S.Ct. 596, 160 L.Ed.2d 583 (2004) (holding that the clearly-established inquiry "must
> be undertaken in light of the specific context of the case, not as a broad general proposition").
>
> [T]he right to due process of law is quite clearly established by the Due Process
> Clause, and thus there is a sense in which any action that violates that Clause ...
> violates a clearly established right.... But if the test of "clearly established law" were
> to be applied at this level of generality, it would bear no relationship to the "objective
> legal reasonableness" that is the touchstone of [qualified immunity]."[FN31]
>
> FN31. *See Anderson,* 483 U.S. at 639, 107 S.Ct. 3034.
>
> Although the Supreme Court has repeatedly admonished courts not to define clearly
> established law at a high level of generality, this does not mean that "a case directly
> on point" is required. Rather, "existing precedent must have placed the statutory or
> constitutional question *beyond debate."* The *sine qua non* of the clearly-established
> inquiry is "fair warning." Thus, we must ask "not only whether courts have
> recognized the *existence* of a particular constitutional right, but also ... whether that
> right has been defined with sufficient clarity to enable a reasonable official to assess
> the lawfulness of his conduct."

The Amended Complaint consists of opinion, general, conclusory allegations of unspecified misconduct, devoid of factual allegations showing personal involvement in the treatment of Larry McCollum between July 15, 2011 and the date of death, July 22, 2011.  It fails to overcome a security administrator's qualified immunity from suit or to set out conduct in violation of clearly established law.  Despite Plaintiff's generality littered pleading, the requirement for specificity is so well established as to have been described as having reached a level of Supreme Court exasperation. ("The Supreme Court recently — and forcefully — underscored this point in *Ashcroft v. al-Kidd,* 131 S. Ct. 2074 (2011), where it noted, with some exasperation, that it has 'repeatedly told courts ... not to define clearly established law at a high level of generality.'") *Morgan v. Swanson,* 659 F.3d 359, 372.

A plaintiff may not rely on conclusory assertions and must allege specific conduct and actions giving rise to an alleged Constitutional violation. *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996). Plaintiff must "support [her] claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts." *Florance v. Buchmeyer*, 500 F.Supp.2d 618, 640-41 (N.D. Tex. 2007) (quoting *Schultea v. Wood*, 47 F.3d 1427, 1433-1434 (5th Cir. 1995.  Moreover, "the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F.Supp. 931, 943 (S.D. Tex. 1996)  (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992).  For a civil rights pleading to survive dismissal, it must chart "... a factual path to the defeat of the defendant's immunity, free of conclusions." *Schultea*, 47 F.3d at 1430.

Once a defendant has invoked the defense of qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). A district court must find "that the plaintiff's pleadings assert facts which,

if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012); *Wicks v.Mississippi State Employment Services*, 41 F.3d 991, 994 (5th Cir. 1995).

The Supreme Court has held, "[q]ualified immunity is an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009). Because immunity is "effectively lost if a case is erroneously permitted to go to trial," a denial of qualified immunity may be immediately appealed. *Mitchell v. Forsyth*, 472 U.S. 511, 526–27, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985). Courts have applied *Mitchell* to trial court discovery orders that effectively deprive public officials of an immunity from suit. *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994–95 (5th Cir.1995):

> One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive, *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir.1986). Consequently, this court has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense. As we explained in *Wicks*, *supra*, a district court must first find "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity."

The Fifth Circuit has explained that "conclusory allegations and unsubstantiated assertions" are not sufficient to overcome the qualified immunity defense. *Miller v. Graham*, 447 F. App'x 549, 551 (5th Cir. 2011) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007); *Sylvester v. Cain*, 311 F. App'x 733, 735 (5th Cir., Feb. 20, 2009) (citing *Thompson v. City of Starkville, Miss.*, 901 F.2d 456, 469 n.13 (5th Cir. 1990)).

Plaintiff's conclusory allegations speculating that policies of the TDCJ Director violated the U.S. Constitution are insufficient to overcome TDCJ Director Livingston's qualified immunity or to demonstrate the violation of clearly established law by reference to specific facts. For supervisory liability to attach, where the supervisory connection between a TDCJ Director and the defendant

corrections staff, whose conduct is sought to be attributed to the Director, is separated by a chain of command that includes Sergeants, Lieutenants, Captains, Majors and Assistant or Deputy Directors, specific personal involvement of the chief TDCJ Administrator in a violation of Plaintiff's Constitutional rights must be shown. Plaintiff must be able to show a specific policy or custom implemented by the Director that was the moving force behind the constitutional violation. *Duvall v. Dallas County, Tex.*, 631 F.3d 203, 209 (5th Cir. 2011). Plaintiffs must identify the policy, connect the policy to the supervisory defendant and show that her injury was incurred because of the implementation of that administrator's specific policy. *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984). Plaintiffs must establish that the TDCJ Director, as administrator/policy maker, through deliberate conduct was "the moving force behind the injury" alleged and must establish a direct causal link between his action in formulating and implementing a specific policy that resulted in the deprivation of a federally protected right. *Board of County Comm'r v. Brown*, 520 U.S. 397, 405 (1997). Because the claims made do not satisfy this threshold, Livingston is entitled to dismissal on the basis of qualified immunity.

## IV.    ELEVENTH AMENDMENT IMMUNITY

On page 25, paragraph C, Plaintiffs ask the Court to "Remedy ongoing violations of law and the Constitution by granting declaratory and injunctive relief, as set out in this Complaint;"

This request for equitable relief fails to state a claim against Director Livingston as it has not alleged that absent such action, they will again be subjected to future violations of federal law. Plaintiffs have not shown that the damages action they have brought against defendants is not a sufficient remedy at law for the harm alleged to have been incurred. A failure to make these showings is a failure to establish a case or controversy sufficient to give the federal court jurisdiction over Livingston. Such is tantamount to asking the Court for an advisory opinion barred by the

Eleventh Amendment and Article III, U.S. Constitution.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 112-113 (1983);" *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. at 146, 113 S.Ct. at 689 (1993); *Okpalobi*, 244 F.3d at 425-426, *citing* *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412, reh'g denied, 391 F.3d 676 ; (5th Cir. 2004); *Okpalobi v. Foster*, 244 F.3d 405, 421, 423 (5th Cir. 2001); *Cozzo v. Tangipahoa Parish Council–President Gov't*, 279 F.3d 273, 280 (5th Cir. 2002).  A federal  suit against an official in his official capacity or a suit against a state agency are both barred by the Eleventh Amendment to the U. S. Constitution absent allegations supporting an exception.  *Martinez v. TDCJ*, 300 F.3d 567 (5th Cir. 2002); *Will v. Mich. Dept. Of State Police*, 490 U.S. 58, 70-71,109 S. Ct 2304 (1989).  *Ruiz v. Johnson*, 178 F.3d 385 (5th Cir. 1999).

The Amended Complaint fails to state a claim overcoming Eleventh Amendment immunity as it does not set out the elements of the exception created by the *Ex Parte Young*[7] doctrine.  These include irreparable harm, inadequacy of the remedy at law and a showing of likelihood that plaintiffs will be subjected to future violations of federal law if injunctive or declaratory relief is not granted.[8]

A suit brought by a 42 U.S.C. § 1983 plaintiff against a person in his individual capacity, arising out of the same incident seeking to recover damages has been deemed an adequate remedy at law precluding a claim for equitable relief.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 112-113 (1983).  Plaintiffs have failed to show that the remedy at law for damages and attorneys' fees is an inadequate remedy. Plaintiffs have also failed to show the likelihood that they will be subjected to losing an inmate relative allegedly due to a hot Texas summer, absent the granting of equitable relief.

A suit for injunctive and/or declaratory relief is properly brought against the agency official

---

[7]         209 U.S. 123 (1908)

[8]         Denial of Eleventh Amendment immunity has been held subject to interlocutory review. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. at 146, 113 S.Ct. at 689 (1993); *State of Cal. v. Campbell,* 138 F.3d 784 (9th Cir. 1998); *Loya v. TDC,* 878 F.2d 860 (5th Cir. 1989).

that has the authority to implement any court directive, usually the chief administrator of the agency

that allegedly engaged in the unconstitutional conduct in order to prevent future conduct that is likely

to harm Plaintiff in a similar manner.  *Ruiz v. Johnson*, 178 F.3d 385 (5th Cir. 1999) (Director of the

Institutional Division of TDCJ); *O'Shea v. Littleton*, 414 U.S. 488 (1974);  *Rizzo v. Goode*, 423 U.S.

362 (1976); *Younger v. Harris*, 401 U.S. 37 (1971); *Ex Parte* Young, 209 U.S. 123 (1908).  *Nelson*

*v. University of Texas at Dallas*, 461 F.Supp.2d 504, 508 (N.D. Tex. 2006):

> "Under *Ex Parte* Young, 'a federal court, consistent with the Eleventh Amendment,
> may enjoin *state officials* to conform their future conduct to the requirements of
> federal law.'"  *McCarthy v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004).
>
> ...
>
> However, *Ex Parte* Young's exception to the Eleventh Amendment is limited.  As
> the Supreme Court explained, the exception applies only when (1) the suit is
> against a *state official* and (2) the plaintiff seeks only prospective injunctive relief
> (3) in order to end a "continuing violation of federal law."  *Seminole Tribe of*
> *Florida v. Florida*, 517 U.S. 44, 73, 116 S.Ct. 1114, 134 L.Ed. 2d 252 (1996).
>
> ...
>
> In determining whether a plaintiff alleges a continuing federal law violation, a court
> should look to the right at issue.  Here the right allegedly was violated in a one-time
> event: *Nelson*'s termination. "Mere conjecture is insufficient to transform a one-time
> even into a continuing governmental practice..." *Debauche v. Trani*, 191 F.3d 499,
> 505 (4th Cir. 1999).  Thus, *Nelson* fails to meet his *Ex Parte* Young burden, and his
> claims *against Daniel in his official capacity* are barred by the Eleventh Amendment.
> 461 F.Supp. 2d at 510 (*italics added for emphasis*).

The *Ex Parte Young* exception to Eleventh Amendment immunity applies when a plaintiff

has set out a legal basis for injunctive relief directed to a government official to ensure future

compliance with federal law.  In the case at bar, Plaintiffs have not alleged a likelihood that they will

be harmed in the future.  A suit in equity must be supported by a showing that there is a substantial

likelihood that plaintiff's constitutional rights will be violated in the future.  They have not alleged,

that they will be subjected to irreparable harm by this defendant absent the grant of federal equitable

relief. Nor have they shown that a damage claim against any government official that has actually

engaged in unconstitutional conduct is an inadequate legal remedy.  Equitable relief is not available

absent a showing of inadequacy of a remedy at law, irreparable harm and a substantial likelihood that plaintiff will be subjected to future continuing deprivation of legal rights by the target of the equitable relief.  This  court therefore lacks Article III jurisdiction to award such relief as plaintiffs lacks standing.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-106, 111 (1983):

> The equitable remedy is unavailable absent a showing or irreparable injury, a requirement that cannot be met where is no showing of any real or immediate threat that the plaintiff will be wronged again-a likelihood of substantial and immediate irreparable injury." *O'Shea v. Littleton*, 414 U.S., at 502, 94 S. Ct., at 679.  The speculative nature of *Lyons*' claim of future injury requires a finding that this prerequisite of equitable relief has not been fulfilled.  Nor will the injury that *Lyons* allegedly suffered in 1976 go unrecompensed; for that injury, he has an adequate remedy at law....The legality of the violence to which *Lyons* claims he was once subjected is at issue in his suit for damages and can be determined there.

The United States Supreme Court has held that "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief...if unaccompanied by any continuing, present adverse effects."  The Supreme Court has noted that the basis for injunctive relief depends on "whether there is a real or immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).  The Court rejecting  speculation that sometime in the future, a possibility existed that Plaintiffs might be subjected to future violations of federal law:

> [Plaintiffs] have failed, moreover, to establish the basic requisites of the issuance of equitable relief in these circumstances-the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law.   We have already canvassed the necessarily conjectural nature of the threatened injury to which [plaintiffs] are allegedly subjected. (414 U.S. 502)

*Rizzo v. Goode*, 423 U.S. 362, 372 (1976) held that past violations by police officers was, alone, an insufficient basis for future equitable relief.  Where the plaintiff is no longer in a position to be subjected to future federal violations, there is not "sufficient immediacy and reality" to permit equitable relief.  *Golden v. Zwickler*, 394 U.S. 103, 109 (1969) (*Zwickler* was no longer a congressman and it was "most unlikely" that he could again be convicted of violating an

unconstitutional statute prohibiting anonymous handbills pertaining to an election campaign).

In *Ashcroft v. Mattis*, 431 U.S. 171 (1977), the father of a boy, who had been killed by police use of allegedly unconstitutional deadly force, sought equitable relief because he had another son who might also, in the future, be killed by officers' use of excessive force.  The court ruled that "such speculation is insufficient to establish the existence of a present, live controversy."  431 U.S. 172-73.  In another use of force case, plaintiff alleged that, pursuant to City policy, he had been illegally choked by police and sued for damages and equitable relief.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-106 (1983).  Plaintiff's complaint alleged "that the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force."  The Court held this allegation insufficient:

> In order to establish an actual controversy in this case, *Lyons* would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning, or, (2) that the City ordered or authorized police officers to act in such manner.

*Lyon*s' complaint alleged that in choking him without provocation, the officers were carrying out official policies of the City.  The court observed that "This is not equivalent to the unbelievable assertion that the City either orders of authorizes application of the chokeholds where there is no resistance or other provocation."  It ruled that plaintiff's allegations did not give him standing to pursue injunctive relief:

> ...to have a case or controversy with the City that could sustain Count V, *Lyons* would have to credibly allege that he faced a realistic threat  from the future application of the City's policy...the necessity that *Lyons* demonstrate that he, himself, will not only again be stopped by the police but will be choked without any provocation.  461. U.S. 106.
> The equitable remedy is unavailable absent a showing or irreparable injury, a requirement that cannot be met where is no showing of any real or immediate threat that the plaintiff will be wronged again-a 'likelihood of substantial and immediate

irreparable injury." *O'Shea v. Littleton*, 414 U.S., at 502, 94 S. Ct., at 679.  The speculative nature of *Lyons'* claim of future injury requires a finding that this prerequisite of equitable relief has not been fulfilled. Nor will the injury that *Lyons* allegedly suffered in 1976 go unrecompensed; for that injury, he has an adequate remedy at law....The legality of the violence to which *Lyons* claims he was once subjected is at issue in his suit for damages and can be determined there.

...

We decline the invitation to slight the preconditions for equitable relief; for as we have held, recognition of the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in the administration of the states' criminal laws in the absence of irreparable injury which is both great and immediate...If *Lyons* has suffered an injury barred by the Federal Constitution, he has a remedy for damages under 1983. (461 U.S. 111-113)

## V.        STANDING AND ARTICLE III JURISDICTION

Absent a showing of the likelihood of future continuing violations of law, irreparable harm and the inadequacy of a legal remedy, the Eleventh Amendment  bars a claim against a state agency in federal court or against an official in his official capacity.  *Will v. Michigan Department of State Police*, 109 S. Ct. 2304 (1989); *Loya v. TDC*, 878 F.2d 860 (5th Cir. 1989);  Texas Constitution, Art. 4, Sect.22; *Walker v. Texas Office of Atty. Gen*., 217 F.Supp.2d 776 (E.D. Tex. 2002) (Office of the Attorney General is an arm of the state entitled to sovereign immunity); *Brewer v. Hill,* 453 F. Supp. 67 (N.D. Tex. 1978); Absent a plaintiff's standing to bring injunctive or declaratory relief, a federal court lacks subject matter jurisdiction under Article III-U.S. Constitution, to proceed against a state official or state agency due to the absence of a justiciable case or controversy.  Even if the Eleventh Amendment did not independently bar plaintiffs' claim, the allegations in the Amended Complaint are insufficient to confer subject matter jurisdiction to this Court under Article III.  In the absence of allegations of a pattern and practice of illegal conduct *and* a realistic showing of irreparable harm-that plaintiff is likely to be subjected to future violation of legal rights-there is no standing to seek injunctive relief and therefore no Article III case or controversy.  A suit against a state officer in his official capacity for injunctive relief is not barred by the Eleventh Amendment to the United States

19

Constitution only if a plaintiff has standing.  *Okpalobi v. Foster,* 244 F.3d 405, 425-426 (5th Cir. 2001); *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 159 (5th Cir. 2007); *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 124 S.Ct. 2301, 2308 (2004) ("The plaintiff must show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress".).  Under Article III of the U.S. Constitution, a federal court may only adjudicate a live, ongoing case or controversy.  *Lujan v. Defenders of Wildlife*, 112 S.Ct. 2130, 2136 (1992).  A party seeking injunctive relief bears the burden of showing that it must be "likely" as opposed to merely "speculative" that any injury he has suffered will be "redressed by a favorable decision." *Lujan*, 112 S.Ct. 2136-2138; ("past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ...if unaccompanied by any continuing, present adverse effects.").  *Wallace v. Texas Tech Univ*., 80 F.3d 1042, 1047, n.3 (5th Cir. 1996) ("...the only prospective injunctive relief that *Wallace* requested against Dickey was a permanent injunction prohibiting him from pursuing unconstitutional policies in the future.  Jurisdiction over a plaintiff's claims for future relief is appropriate only if a reasonable likelihood exists that the plaintiff will again be subjected to the allegedly unconstitutional actions.").  A litigant must show that there is a substantial likelihood that he will again suffer the type of constitutional deprivations in the future that he complains occurred in the past-excessive force in restraining him while in the custody of TYC.  *Honig v. Doe*, 484 U.S. 305, 318 (1988); *Spencer v. Kemna*, 523 U.S.1, 7, 118 S. Ct. 978 (1998) ("This case or controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate....The parties must continue to have a "personal stake in the outcome" of the lawsuit.").  No case or controversy sufficient to confer standing was found to exist where "...there is no 'reasonable expectation' that Continental will suffer the same wrong again-unless, of course, it intends to establish an uninsured ISB, which does not appear on this record." *Lewis v. Continental Bank Corp*., 110 S.Ct. 1249, 1255 (1990).

Declaratory and injunctive relief are barred for lack of standing unless the plaintiff can show "...a likelihood of future violations of their rights by the defendant, not simply future effects from past violations." *Armstrong v. Turner Industries, Inc.*, 141 F.3d 554, 563 (5th Cir.1998):

> *Armstrong*...does not assert any likelihood that he will be subjected to a similar violation in the future. He has not indicated that he plans to seek employment with *Turner* again, nor does he purport to represent a specific class of individuals that is in danger of discrimination from *Turner*. Consequently, *Armstrong's* allegations are clearly insufficient under well-established law to support standing to seek an injunction. Although *Armstrong* did ask for declaratory relief, we note that for the same reason he lacks standing to procure injunctive relief he likewise has no standing to seek declaratory relief...

Federal courts have required a showing of a probability that a plaintiff will be subjected to future injury of the type complained of in the past for a litigant to have standing to seek prospective relief. *City of Los Angeles v. Lyons*, 103 S. Ct. 1660, 1665 (1983) ("past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief."):

> That *Lyons* may have been illegally choked by police on October 26, 1976, while presumably affording *Lyons* standing to claim damages against the individual officers and perhaps the City, does  nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part. 103 S. Ct. 1667

*Lyons*' claim for equitable relief was held barred because he made no showing in his complaint that he was realistically threatened by a repetition of alleged past use of excessive force. The Court characterized as "speculative" that *Lyons* might again experience injury as a result of this allegedly unconstitutional practice of the *City of Los Angeles*, 103 S.Ct. 1669.

In *Brown v. Edwards*, 721 F.2d 1442 (5th Cir. 1984), *Brown* alleged a Mississippi policy caused his arrest in violation of the Fourteenth Amendment, United States Constitution because such policy provided a monetary incentive to constables for making an arrest. *Brown*, 721 F.2d at 1444-1445. *Citing Lyons*, the Fifth Circuit rejected *Brown's* claims for declaratory and injunctive relief

21

because "Brown also fails to 'establish any real and immediate threat' that he will again be injured

in such a way. Thus, he lacks standing to seek injunctive or declaratory relief." *Brown*, 721 F.2d

at 1447. In accord is *Plumley v. Landmark Chevrolet, Inc*., 122 F.3d 308, 312 (5th Cir. 1997):

> Appellant seeks an injunction based on a past wrong. The Supreme Court held in *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660, 1669, 75 L.Ed. 2d 675 (1983), that a plaintiff seeking injunctive relief based on an alleged past wrong must show that there is a real or immediate threat that he will be wronged again. Appellant cannot meet this threshold....Appellant also requests declaratory relief; however, to obtain it she must show that an actual case or controversy under the ADA exists. *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997). Again, Appellant cannot meet this threshold.

> Also see, *O'Shea v. Littleton*, 414 U.S. 488 (1974) (plaintiffs had no standing to seek an

injunction in their claim based solely on the allegation that they had, in the past, been subjected to

discriminatory enforcement of the criminal law). Summarizing the likelihood of future harm

requirement is *Society of Separationists, Inc., v. Herman*, 959 F.2d 1283, 1286 (5th Cir. 1992):

> The probability that plaintiff would ever again be subject to revocation proceedings before this judge was extremely remote. Similar cases are legion (citing *Brown v. Edwards*)...We must not shrink from our duty to decide a controversy, but that duty includes faithful obedience to the limits of our mandate. It is beyond our mandate to issue prospective relief every time a state actor arguably infringes a constitutional right. As the Supreme Court said in *Lyons*, "in exercising their equitable powers federal courts must recognize 'the special delicacy of the adjustment to be preserved between federal power and State administration of its own law."

Absent allegations of irreparable harm and the inadequacy of a remedy at law, a suit against

an official in his official capacity for declaratory or injunctive relief is barred by Article III standing

requirements and the Eleventh Amendment to the United States Constitution. *Lyons*, *supra*, *Miles*

*v. State of California*, 320 F.3d 986 (9th Cir. 2003); *Will v. Michigan Dept. Of State Police*, 109

S.Ct 2304 (1989). Neither a state agency or officials in an official capacity may be sued for equitable

relief since a damages suit to compensate plaintiff for the harm suffered has been held an adequate

remedy at law. *City of Los Angeles v. Lyons*, 461 U.S. 95, 112-113 (1983). *Hurst v. Tex. Dept. of*

*Assist. & Rehab. Serv.,* 482 F.3d 809 (5th Cir. 2007); *James v. Gonzalez*, 2008 WL 4692412 (S. D.

Tex. 2008) (summarizing Fifth Circuit and U.S. Supreme Court authority); *Martinez v. TDCJ*, 300 F.3d 567, 574 (5th Cir. 2002); *Waller v. Collier*, 2008 WL 4623354 (5th Cir. 2008); *Warnock v. Pecos County, Texas*, 88 F.3d 342, 343 (5th Cir. 1996) (Eleventh Amendment deprives court of jurisdiction over a state agency and over officials sued in their official capacity). *Puerto Rico Acqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S.139, 144(1993); *McCarthy ex. rel. Travis v. Hawkins*, 381 F.3d 407 (5th Cir. 2004), rehearing denied 391 F3d. 676; *Cozzo v. Tangipahoa Parich Council President*, 279 F.3d 273, 280-81 (5th Cir. 2003) (When a state agency is the named defendant, the Eleventh Amendment bars suit for money damages and equitable relief).

## VI.   EQUITABLE RELIEF UNDER TEXAS LAW

Plaintiffs are similarly not entitled to damages or equitable relief under Texas law.  State officials and state agencies sued in their official capacity have sovereign immunity from suits based on 42 U.S.C. § 1983 absent an applicable exception.

Texas law tracks federal law on this issue and similarly states that an allegation of past misconduct alone is not a substitute for the existence of a justiciable controversy nor does it authorize a state court to issue an advisory opinion. *Texas Dept. Of Public Safety v. Moore*, 985 S.W.2d 149, 153 (Tex. App. —Austin 1998, no pet.) ("A justiciable controversy must be distinguished from an advisory opinion, which is prohibited under both the Texas and federal constitutions.  A judgment under the UDJA [Ch. 37 TEX. CIV. PRAC. & REM. CODE.  Declaratory Judgments] depends on a finding that the issues are not hypothetical or contingent, and the questions presented must resolve an actual controversy.").  The absence in a statute of the express prerequisites of equitable relief does not negate such requirements. *Town of Palm Valley v. Johnson*, 87 S.W.3d 110, 111 (Tex. 2001) ("Although...65.011(1) [TEX. CIV. PRAC. & REM. CODE. - Injunction] does not expressly make the lack of an adequate legal remedy a prerequisite for injunctive relief, this requirement of equity continues.  The statute does not permit injunctive relief without the showing

of irreparable harm otherwise required by equity."). Conjectural or speculative events will not support a claim for injunctive relief as such claim is not justiciable under either Texas injunction statutes or the Uniform Declaratory Judgment Act [65.011, 37. 003 TEX. CIV. PRAC. & REM. CODE.]. *St. Paul Fire & Mar. Ins. Co. v. Texas Workers' Comp. Comm'n.* 945 S.W.2d 886, 888-89 (Tex. App. —Austin 1997, no writ). To be entitled to injunctive relief, plaintiffs "...must show that harm is imminent. They must also establish that this imminent harm will be irreparable if the injunction is not issued." In accord are *Operation Rescue-National v. Planned Parenthood of Houston and Southwest Texas, Inc.*, 937 S.W.2d 60, 71-72 (Tex. App. — Houston [14th Dist.] 1996), aff'd as modified, 975 S.W.2d 546 (Tex. 1998). "The UDJA [Ch. 37 TEX. CIV. PRAC. & REM. CODE.] is 'merely a procedural device for deciding cases already within the court's jurisdiction.' *Texas Ass'n of Business v. Texas Air Control Board*, 852 S.W.2d 440, 444 (Tex. 1993). The UDJA does not extend a court's jurisdiction, and a litigant's request for declaratory relief does not alter a suit's underlying nature." *Koch v. Texas General Land Office*, 273 S.W.3d 451 (Tex. App.—Austin, 2008) citing *TNRCC v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). The Amended Complaint makes no allegation supporting equitable relief under Texas law.

### VII.    OBJECTION TO DISCOVERY

TDCJ Director Brad Livingston objects to discovery and Rule 26 disclosure, as claims made against him in the Amended Complaint are barred by Eleventh Amendment and qualified immunity. Subjecting  this defendant to pretrial proceedings is reviewable on appeal under the collateral order doctrine. *Loya v. TDC*, 878 F.2d 860 (5th Cir. 1989), *Puerto Rico Acqueduct & Sewer Authority v. Metcalf & Eddy, Inc.* 506 U.S. 139, 143 (1993) and *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986) (Failure to rule on or denial of immunity motion is an appealable decision within the meaning of 28 U.S.C. § 1291; entitlement to immunity includes right to be free from the burden of pretrial matters and trial).

**CONCLUSION**

The vague and conclusory allegations in the Amended Complaint, absent allegations of conduct within the general scope of this defendant's employment, absent a showing of personal involvement, fail to state a federal claim or overcome a public official's qualified immunity. The U.S. Supreme Court and Fifth Circuit Court of Appeals have repeatedly rejected the substitution of nefarious sounding conclusory legalese for facts in a Complaint purporting to allege a violation of a clearly established Constitutional right. Plaintiffs have similarly failed to allege an inadequate remedy at law or that they will likely be damaged by future violations of federal law sufficient to support granting of equitable relief.

Accordingly, TDCJ Director  Livingston requests dismissal of the Amended Complaint as to him together with reasonable attorneys' fees in the amount of $1000.00 at the rate of $100.00 per hour for the 10 hours expended researching and preparing this Motion. 42 U.S.C. 1988(b);[9]

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Defense Litigation

---

[9]

(b) Attorney's fees In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C. 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C. 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C. 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

KAREN D. MATLOCK
Assistant Attorney General
Chief, Law Enforcement Defense Division

/s/ Demetri Anastasiadis
DEMETRI ANASTASIADIS
Assistant Attorney General
Attorney-In-Charge
State Bar No. 01164480

Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin, Texas  78711
(512) 463-2080 / (512) 495-9139 (fax)

**ATTORNEYS FOR DEFENDANT
BRAD LIVINGSTON**

## NOTICE OF ELECTRONIC FILING

I, DEMETRI ANASTASIADIS, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing **Defendant Livingston's Amended Motion to Dismiss on the Basis of Qualified Immunity,** in accordance with the Electronic Case Files system of the Northern District of Texas, on this the 25th day of October, 2013.

/s/ Demetri Anastasiadis
DEMETRI ANASTASIADIS
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, DEMETRI ANASTASIADIS, Assistant Attorney General of Texas, do hereby certify that

a true and correct copy of the above and foregoing **Defendant Livingston's Amended Motion to**

**Dismiss on the Basis of Qualified Immunity,** has been served electronically via the Electronic Case

File system of the Northern District of Texas, on this the 25th day of October, 2013, addressed to:

Jeff Edwards
EDWARDS LAW
The Haehnel Building
1101 East 11th Street
Austin, Texas  78702
jeff@edwards-law.com
*Attorney for Plaintiffs Stephen McCollum*
*Stephanie Kingrey, and Sandra McCollum*


James Harrington
Brian McGiverin
Scott Medlock
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas  78741
jch@mail.utexas.edu
brian@texascivilrightsproject.org
scott@texascivilrightsproject.org
*Attorneys for Plaintiffs Stephen McCollum*
*Stephanie Kingrey, and Sandra McCollum*

Eliot D Shavin
SMU LEGAL CLINIC
2600 State Street
Dallas, Texas  75204
eshavin@sbcglobal.net
*Attorney for Plaintiffs Stephen McCollum*
*Stephanie Kingrey, and Sandra McCollum*

Bruce R Garcia
Jonathon Stone
Assistant Attorney Generals
Office of the Attorney General of Texas
Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin, Texas  78711
bruce.garcia@texasattorneygeneral.gov
jonathon.stone@texasattorneygeneral.gov
*Attorneys for Defendants Texas Department of*
*Criminal Justice, Richard Clark, Robert Eason, Jeff Pringle,*
*Sandrea Sanders, and Karen Tate*

Kim Coogan
Erika Hime
Lacey Mase
Assistant Attorney Generals
Office of the Attorney General of Texas
Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin, Texas  78711
kim.coogan@texasattorneygeneral.gov
erika.hime@texasattorneygeneral.gov
lacey.mase@texasattorneygeneral.gov
*Attorneys for Defendant*
*University of Texas Medical Branch*

/s/ Demetri Anastasiadis
DEMETRI ANASTASIADIS
Assistant Attorney General