IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, *et al.*, § | | |
| *Plaintiff*, § | | |
| § | | |
| v. § | CIVIL ACTION NO. 3:12-CV-02037 | |
| § | | |
| BRAD LIVINGSTON, *et al.*, § | | |
| *Defendants.* § | JURY | |

**BRAD LIVINGSTON'S REPLY TO PLAINTIFFS' RESPONSE TO
HIS AMENDED MOTION TO DISMISS ON THE BASIS OF QUALIFIED IMMUNITY**

TO THE HONORABLE UNITED STATES MAGISTRATE JUDGE RENEE HARRIS:

Defendant Brad Livingston files the following Reply to Plaintiffs' Response to his Amended Motion to Dismiss:

**I.   There Is No Clearly Established Constitutional Right to an Air Conditioned Prison.**

As in the Amended Complaint, Plaintiffs' Response (Doc. 93) premises a violation of clearly established law by TDCJ Director Livingston's liability on the basis that he did not air condition the prisons or transfer inmates with certain medical conditions to an air conditioned housing assignment. ("As the executive director of TDCJ, Livingston is one of the few people in the agency who had the ability and authority to approve cooling inmate living areas." Response, p. 7.) Plaintiffs' Amended Complaint against Livingston repeatedly claims that Livingston should have air conditioned the 111 prison units[1] or transferred inmates with medical conditions to an air conditioned area. (Paragraph 43: "...TDCJ housed Mr. McCollum in a dormitory area with over 50 men, that was not air conditioned."; Paragraph 45: "...TDCJ prisoners live with diabetes and hypertension, and are housed in non-air-conditioned TDCJ facilities, including the Hutchins State Jail."; Paragraph 49: "They did

---

[1] http://www.tdcj.state.tx.us/documents/Statistical_Report_FY2012.pdf

not bring in cooling devices and they did no move prisoners with disabilities rendering them dangerously susceptible to extreme heat – like Mr. McCollum – to air conditioned portions of the prison."; Paragraph 74: "...rather than seek to have the housing areas cooled by air conditioning, or to make sure inmates with medical conditions such as diabetes or hypertension were housed in air conditioned units, these officials chose to subject all inmates to dangerous, extreme heat..." Paragraph 75 "...the prisons are not air conditioned."; Paragraph 82: "...Livingston and Eason's failure to cool these areas or move sick inmates in grave danger into air-conditioned areas, also was a cause of McCollum's death."; Paragraph 83:  "...Approving air conditioning in TDCJ prisons would require action at the highest levels of the agency, including authorization and approval from Livingston, approval he has to date refused to provide.";  Paragraph 86: "...ten people died from hypertension in non-air conditioned housing units..."; Paragraph 90: "...TDCJ prisoners live with hypertension and diabetes, and are housed in non-air-conditioned TDCJ facilities..."); Paragraph 93: "...Livingston, Eason, Owen and Pringle took no steps to house prisoners with known medical conditions complicated by heat, such as those suffering from diabetes, hypertension or prescribed diuretics, in locations that were air conditioned."; Paragraph 94: "...Air conditioning in homes and other buildings markedly reduces danger from the heat."; Paragraph 95: "...several areas where TDCJ employees work at the Hutchins State Jail, including Pringle's office, are air conditioned." Paragraph 98:  "Defendants chose not to provide prisoners, like Mr. McCollum, these opportunities to cool off in an air conditioned environment at the Hutchins facility."

There is no clearly established Constitutional right to an air conditioned prison. *Blackmon v. Garza,* 484 Fed. Appx. 866 (5th Cir. 2012), fn. 6:

> FN6. We also note that, like the *Gates* court, [ *Gates v. Cook*, 376 F.3d 323,339-40 (5th Cir. 2004)] do not suggest that air conditioning is mandatory to meet the requirements of the Eighth Amendment.

**II.    There Is No Clearly Established Constitutional Duty Owed by the Director of TDCJ to Personally Make Medical Housing Assignments or Medical Policy on How Any Specific Inmate Should Be Treated, Housed or Otherwise Medically Provided for as Those Judgments Are Prudently and Legally Delegated to UTMB Medical Professionals.**

Plaintiffs' Response claims that a TDCJ Director has a Constitutional duty to assign and transfer inmates to air conditioned housing areas based on their medical condition. "...even though TDCJ has 56 prison units that offer some air-conditioned inmate housing, where especially-vulnerable inmates could easily be transferred, Livingston refused to make any effort to protect them or issue any policy direction in that regard." Response, p. 13; "c).  He approved TDCJ policies that make no accommodations for housing people with medical conditions (like hypertension and diabetes) known to cause medical emergencies and death during periods of extreme temperature;. e). He took no steps to house prisoners with medical conditions complicated by high temperatures in air-conditioned areas." Response, p. 14;

Clearly established law permits prison security administrators to defer to the decisions of medical professionals with regard to the diagnosis, treatment and care of inmates. *Lee v. Young,* 533 F.3d 505, 511 (7th Cir.2008) ("[I]n determining the best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals."). *Hayes v. Snyder,* 546 F. 3d 516, 527 (7th Cir.2008) (reiterating "the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care").  Why Plaintiffs' counsel would waste the Court's time on this patently frivolous claim is a mystery given their own admissions that medical housing

assignments at TDCJ are not made by the Director but by UTMB medical professionals:[2]

> "***UTMB is empowered and obligated to restrict an inmate's housing when his or her serious medical condition requires it.*** In fact, the UTMB policies Murray approved and implemented require TDCJ to house prisoners who use wheelchairs in wheelchair-accessible facilities. But UTMB has no corresponding policy to ensure prisoners who are at increased risk of heat-related death receive housing accommodations for their serious medical conditions, even though it could easily do so and death from heat stroke is the consequence."[3] (*emphasis added*)

38. Soon after his arrival, a UTMB nurse performed what was apparently a triage of Mr. McCollum and other newly arrived prisoners. Mr. McCollum told the nurse he suffered from diabetes, and was taking a prescription medication, Clonidine, for hypertension. Importantly, Clonidine is not a diuretic.[4]

---

[2] The Court may take judicial notice of matters of public record relevant to the issues before it pursuant to RULE 201. JUDICIAL NOTICE OF ADJUDICATIVE FACTS

   (a) SCOPE. This rule governs judicial notice of an adjudicative fact only, not a legislative fact.

   (b) KINDS OF FACTS THAT MAY BE JUDICIALLY NOTICED. The court may judicially notice a fact that is not subject to reasonable dispute because it:

   (1) is generally known within the trial court's territorial jurisdiction; or

   (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

   c) TAKING NOTICE. The court:

   (1) may take judicial notice on its own; or

   (2) must take judicial notice if a party requests it and the court is supplied with the necessary information.

   (d) TIMING. The court may take judicial notice at any stage of the proceeding

[3] Plaintiffs' Response to Dr. Murray's Motion to Dismiss in *Webb v. Livingston et. al.* Case Number: 6:13-cv-00711-JDL, Document Number: 37 filed 10/30/2013, Eastern District of Texas, Tyler Division.

[4] Amended Complaint, paragraph 34.

39. In light of these conditions, the nurse referred Mr. McCollum to the physician's assistant at the prison, Babbili. Without examining or questioning him, Babbili noted his hypertension, and changed his prescription from Clonidine to hydrochlorothiazide (HCTZ), a diuretic, to treat his hypertension. Mr. McCollum took the HCTZ regularly during his incarceration.[5]

41. Though Babbili knew taking hydrochlorothiazide was dangerous in the extreme temperatures Mr. McCollum would be living in, he prescribed the drug anyway. Babbili knew of, and disregarded, the serious risks associated with prescribing a diuretic to a person, like Mr.McCollum, who would be forced to live in extreme temperatures. Mr. McCollum likely would have lived had Babbili continued his prescription for Clonidine, which is not a life-threatening diuretic. Babbili's conduct wantonly disregarded the serious risk to Mr. McCollum's health posed by prescribing hydrochlorothiazide.[6]

85. UTMB policy states "it is the responsibility of [the prison] medical staff to provide guidelines to assist the facility administration in the determination of safe and healthful *work* conditions.[7]

89  ...when UTMB performs the physical, medical staff make mandatory housing recommendations for prisoners. UTMB, among other things, can prohibit prisoners with certain medical conditions from working in prison jobs where they would be exposed to high temperatures. For a prisoner with a chronic leg injury, for example, UTMB may prohibit TDCJ from assigning that prisoner to a top bunk. The form UTMB staff complete, which Director Murray and other staff was familiar with, can also require prisoners be housed: 1) in "single level" facilities or on the ground floor (for prisoner using wheelchairs, for example); 2) with prisoners who have similar medical conditions; or 3) in a single cell.[8]

90. UTMB officials, including Murray and Babbili, were aware many TDCJ prisoners live with hypertension and diabetes, and are housed in non-air-conditioned TDCJ facilities, including the Hutchins Unit. ***These housing decisions are made by TDCJ, based on medical recommendations made by UTMB.*** [9] (*emphasis added*)

---

[5]     Id. Paragraph 39

[6]     Id. Paragraph 41

[7]     Id. Paragraph 85

[8]     Id. Paragraph 89

[9]     Id. Paragraph 90

> 92.   For example, UTMB policy prohibits prisoners taking certain drugs, including hydrochlorothiazide, from "work[ing] or recreat[ing] in environments where the apparent air temperature is 95 [degrees] or higher." Though prisoners taking hydrochlorothiazide are prohibited from "recreating" in areas where the temperature exceeds 95 degrees, **_Babbili made no recommendation to house Mr. McCollum safely._** (emphasis added)

Plaintiffs' pleadings admit that UTMB medical professionals have been prudently assigned the task of making medical housing recommendations to TDCJ. The law is clearly established that TDCJ administrators may rely on the judgments of medical professionals and may not be held vicariously liable for such decision. The claim against Livingston alleging that he should have transferred McCollum to an air conditioned housing does not defeat his qualified immunity.

### III.   One Hour Delay in Getting Decedent to a Hospital/failure to Provide on Site Medical Care.

Plaintiffs' Response attempts to premise Livingston's liability on the alleged hour long delay in getting decedent transferred to a medical facility by medical and correctional staff at the scene and due to the lack of 24 hour medical care at the Hutchins Unit: (Response, pp.8-9)

> Livingston was intimately involved in the decision to end 24-hour medical care at the Hutchins State Jail, which caused the fatal hour-long delay in obtaining treatment for Mr. McCollum.

Attributing omissions of on the scene personnel to the Director of one of the largest agencies in Texas with 112 prison units is a pure vicarious liability issue. Plaintiffs attempt to dance around this issue by alleging that the delay was caused by the absence of 24 hour medical care. However, there is no constitutional requirement that a correctional facility have on site medical care. As Plaintiffs admit, inmates at Hutchins had access to medical staff at a local hospital. People in the free world do not usually have a doctor living in their home to respond to heat symptoms or any other disease. Instead, they rely on the 911 system and the existence of local medical facilities on a day to day basis. People in the free world do not always live next door to a hospital. Plaintiffs cite

6

no clearly established law that requires a medical unit to be housed within a prison. *Dixon v. Howe*, 44 Fed.Appx. 274, 2002 WL 1891419 *1 (9th Cir. 2002) ["Dixon failed to present evidence to refute defendants' contention that the delay he experienced was comparable to that typical in the medical community."].

**IV.     Plaintiffs' Claim That Livingston Is Liable for Not Giving Mccollum Enough Water**

Page 13, paragraph 2 (a), Response, claims that Livingston had a policy prohibiting "...prohibiting McCollum from having a fan, or even a drinking cup for cool water." This allegation is absurdly "implausible" within the meaning of: *Ashcroft v. Iqbal*, 556 U.S. 662, 678 129 S. Ct. 1937, 1949 (2009) and contradicted by the Amended Complaint. (Doc. 39-2):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

As Plaintiffs admit, water was available to the Hutchins Unit and the extent of its distribution was managed by Hutchins Unit staff, and not the TDCJ Director:

> 99.     Hutchins facility officials, including Pringle and Sanders, failed to provide or ensure adequate additional drinking water was provided to prisoners. Officers only brought one large jug per fifty-eight prisoners to the prisoner living areas three times a day. The jugs did not contain enough water for each prisoner to drink enough to protect them from the heat, and were frequently filled with lukewarm water in July 2011. According to Director Eason, the provision of water was to occur as much as possible and should not have been so limited.
>
> (Amended Complaint, paragraph 99)

Despite Plaintiffs' attempt to hinge Constitutional liability on the TDCJ Director's failure to micro manage Hutchins Unit staff decisions and attempting to attribute fault to him for actions of subordinate TDCJ security and medical staff, it is not clearly established that the Director of the largest prison system in the U.S. *Texas*[10] has a duty to personally attend to the needs of each of the 152, 302 inmates [11] in TDCJ custody. Even according to Plaintiffs in paragraph 99, water availability "should not have been so limited." TDCJ Director Livingston is not vicariously liable for the conduct of Hutchins Unit officials. *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 381(5th Cir.2005) (Supervisory officials cannot be held liable under § 1983 for the actions of subordinates based on vicarious/ respondeat superior liability.

Paragraph 99, admits that water was brought to living areas three times a day, and does not allege that inmates could not access that water, despite the allegation that according to policy, no inmate was issued a cup. Instead, it is alleged that the jugs did not contain enough water and that this insufficiency was not based on any TDCJ policy but on the failure to follow policy by Hutchins staff. ("According to Director Eason, the provision of water was to occur as much as possible and should not have been so limited.").

The lack of plausibility of this allegation is also demonstrated in the Amended Complaint, paragraph 37, alleging that McCollum arrived on Hutchins on July 15, 2011 and paragraph 55, alleging that he died on July 22, 2011. Plaintiffs are in essence alleging that Livingston's "no cup" policy prevented inmates, including McCollum from accessing the water that was delivered three times a day to the inmate living areas and that between July 15, 2011 and July 22, 2011, a period of one week,

---

[10] *California's Prison Population Eclipsed By Texas.* http://www.huffingtonpost.com/2012/06/13/california-prison-popualation_n_1594926.html

[11] TDCJ had 111 units and an inmate population of 152,303 as of August 31, 2012. TDCJ Statistical Report, p. 1 http://www.tdcj.state.tx.us/documents/Statistical_Report_FY2012.pdf; TDCJ http://www.tdcj.state.tx.us/unit_directory/index.html

McCollum was deprived of water by Livingston's alleged "no cup" policy. It is not plausible to allege that a person in poor medical condition, diabetic and taking a diuretic (Amended Complaint, paragraph 41) survived one week without water, not to mention the rest of the 152,203 TDCJ inmates subject to the "no cup" policy.

## CONCLUSION

It is undisputed that the summer of 2011 broke historical heat records.[12] Amended Complaint, paragraph 21 ("On the day Mr. McCollum died, the Dallas area had endured 25 consecutive days where the temperature exceeded 100 degrees Fahrenheit.") The Amended Complaint alternates between seeking vicarious liability for the acts of Hutchins medical and corrections staff to asserting the failure to micro manage with policies that are not constitutionally required. It premises liability by attributing to the administrative head of TDCJ a duty to know the medical history of an inmate and substitute his medical judgment on housing assignments, treatment and response to medical distress. It suggests a constitutional duty to provide air conditioned prisons and on site medical facilities. None of the allegations specify personal involvement by the TDCJ Director that demonstrate that his conduct violated clearly established law that a similarly situated prison administrator would have been on notice of. *Carty v. Rodriguez,* 470 Fed.Appx. 234, 239 (5th Cir.2012). ("The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.' ")

---

[12] http://www.weather.com/outlook/weather-news/news/articles/2011-heat-superlatives_2011-07-15: " One of the hottest summers in decades scorched areas from the Southern Plains to the Southeast, at times reaching into the East and Midwest, as well. Numerous all-time record highs have fallen by the wayside since late May, some of which have stood since the "Dust Bowl" of the mid 1930s!"

In the only opinion within the Fifth Circuit addressing a TDCJ Director's liability for a heat related death, it was held that Director Livingston is entitled to qualified immunity. *Blackmon v. Kukua, et al*, 758 F.Supp.2d 398, 411 (S.D.Tex.,2010):

> The summary judgment evidence does not show, however, that Defendant Brad Livingston, Executive Director of the TDCJ, knew about Blackmon's complaints, let alone that he took any action with respect to them. The Fifth Circuit has held that supervisory officials are not liable under §1983 unless "there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298, 303-304(5th Cir. 1987) (citing *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir. 1985)). Supervisory liability can also result if supervisory officials implement a policy so deficient that the policy "itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation." *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978)).
>
> Under these standards, Plaintiff cannot support an individual claim against Executive Director Livingston based simply on the fact that Blackmon filed grievances with officials at Garza East and that those officials failed to act. *See*, *Kidd v. Livingston*, 2010 WL 2208247, (E.D.Tex., May 26, 2010) ("The fact that [defendants] did not take the action on [plaintiff's] grievances which [plaintiff] thought appropriate does not show that a constitutional violation took place. Nor does every letter or grievance written by an inmate to the Executive Director of TDCJ or the Director of the Correctional Institutions Division of TDCJ give rise to personal liability on the part of that official if the letter is not acted upon in the manner which the inmate believes appropriate.")

It is fundamentally unfair to claim that the top official of an agency housing 152, 203 inmates loses immunity by an alleged failure to have policies that are not constitutionally required on the basis that a record breaking hot summer was allegedly not adequately responded to by Hutchins correctional and medical staff. This is especially true where Fifth Circuit precedent has held that TDCJ Director Livingston does not have sufficient personal involvement in the day to day operations of a prison unit to overcome qualified immunity. ("Latorre, M. Garza, and Livingston are entitled to qualified immunity to the extent that they could be found liable under the Eighth Amendment at all.")

        Respectfully submitted,

        GREG ABBOTT
        Attorney General of Texas

        DAVID C. MATTAX
        Deputy Attorney General for Defense Litigation

        KAREN D. MATLOCK
        Assistant Attorney General
        Chief, Law Enforcement Defense Division

        /s/ Demetri Anastasiadis
        DEMETRI ANASTASIADIS
        Assistant Attorney General
        Attorney-In-Charge
        State Bar No. 01164480

        Law Enforcement Defense Division
        P. O. Box 12548, Capitol Station
        Austin, Texas  78711
        (512) 463-2080 / (512) 495-9139 (fax)

        **ATTORNEYS FOR DEFENDANT**
        **BRAD LIVINGSTON**

## NOTICE OF ELECTRONIC FILING

I, DEMETRI ANASTASIADIS, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing **Defendant Brad Livingston's Reply to Plaintiffs' Response to His Amended Motion to Dismiss on the Basis of Qualified Immunity**, in accordance with the Electronic Case Files system of the Northern District of Texas, on this the 5th day of November, 2013.

        /s/ Demetri Anastasiadis
        DEMETRI ANASTASIADIS
        Assistant Attorney General

## CERTIFICATE OF SERVICE

I, DEMETRI ANASTASIADIS, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Defendant Brad Livingston's Reply to Plaintiffs' Response to His Amended Motion to Dismiss on the Basis of Qualified Immunity**, has been served electronically *via* the Electronic Case Files system of the Northern District of Texas, on this the 5th day of November, 2013, addressed to:

Jeff Edwards
Scott Medlock
EDWARDS LAW
The Haehnel Building
1101 East 11th Street
Austin, Texas  78702
jeff@edwards-law.com
scott@edwards-law.com
*Attorneys for Plaintiffs Stephen McCollum*
*Stephanie Kingrey, and Sandra McCollum*

Brian R. McGiverin
James C. Harrington
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas  78741
brian@texascivilrightsproject.org
*Attorneys for Plaintiffs Stephen McCollum*
*Stephanie Kingrey, and Sandra McCollum*

Eliot D Shavin
SMU LEGAL CLINIC
2600 State Street
Dallas, Texas  75204
eshavin@sbcglobal.net
*Attorney for Plaintiffs Stephen McCollum*
*Stephanie Kingrey, and Sandra McCollum*

Bruce R Garcia
Johnathan D. Stone
Assistant Attorney Generals
Office of the Attorney General of Texas
Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin, Texas  78711
bruce.garcia@texasattorneygeneral.gov
johnathan.stone@texasattorneygeneral.gov
*Attorneys for Defendants Texas Department of Criminal Justice, Richard Clark, Robert Eason, Jeff Pringle, Sandrea Sanders, and Karen Tate*

Kim Coogan
Erika Hime
Lacey Mase
Assistant Attorney Generals
Office of the Attorney General of Texas
Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin, Texas  78711
kim.coogan@texasattorneygeneral.gov
erika.hime@texasattorneygeneral.gov
lacey.mase@texasattorneygeneral.gov
*Attorneys for Defendant
University of Texas Medical Branch*

/s/ Demetri Anastasiadis
DEMETRI ANASTASIADIS
Assistant Attorney General