# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **STEPHEN McCOLLUM**, *et al.*, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 3:12-CV-02037** |
| | § | |
| **BRAD LIVINGSTON**, *et al.*, | § | |
| *Defendants.* | § | *JURY* |


## DEFENDANT BRAD LIVINGSTON'S RESPONSE TO MOTION TO COMPEL


GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Defense Litigation

KAREN D. MATLOCK
Chief, Law Enforcement Defense Division

DEMETRI ANASTASIADIS*
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas  78711
[Tel.] (512) 463-2080
[Fax] (512) 495-9139


**ATTORNEYS FOR DEFENDANTS**
_____

**\*Attorney of Record**

# TABLE OF CONTENTS

**Page**

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii, iii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii, iv, v

Statutes and Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Summary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      Motion to Compel's Introductory Diatribe. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        a.    No Constitutional Right to Air Conditioned Prisons. . . . . . . . . . . . . . . . . . . . . . . 2

        b.    Decisions Based on Medical Needs of Inmates, Such as Special Housing, May Be Delegated by Security Administrators to Medically Trained Professionals Without Forfeiting Immunity as Plaintiffs Admit Occurred in this Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        c.    Plaintiffs Admit That Medical Staff Were Delegated the Authority to Make Housing Decisions Based on Medical Need. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.     Plaintiffs Are Not Permitted to Take an Official's Deposition Prior to Resolution of His Immunity. . . . . . 5

III.    Motion to Compel Claim That They Are Unable to Get Responses from Livingston Through Written Discovery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.     Motion to Compel's Claim That Livingston May Be Deposed So That He Can Be Asked If He Could Have "Climate Controlled" the Hutchins Unit, If He " Had Personal Knowledge of the Extreme Temperatures Inside the Prisons."  If He Had "Knowledge of the Dangers Posed by Extreme Temperatures Inside the Prisons' Housing Areas." or Had Knowledge of a Letter from or to a State Representative. (Motion to Compel, p. 4-6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

V.      Motion to Compel's Claim of a Need to Depose Livingston on the Issue of the Lack of 24-Hour Onsite Medical Care at the Hutchins Unit.  (Motion to Compel, P.5-6). . . . . . . . . . . . . . . . . . . . . . . . . 15

VI.     Motion to Compel's Claim That Livingston must Be Deposed Because of His Policy That "Protects Prisoners Forced to Perform Convict Labor, but Not Prisoners with Heat-sensitive Medical Conditions Housed in Extreme Temperatures" (Motion to Compel, P. 7). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VII.    Motion to Compel Claim That Livingston May Be Deposed Even If He Is Immune from Suit Because He Is a Witness with Personal Knowledge.  (Motion to Compel, P. 8). . . . . . . . . . . . . . . . . . . . . . . . . 17

VIII.   Motion to Compel's Claims That Presidents Have Been Deposed and Therefore, Presumably, the Court Should Disregard Clearly Established Law That Does Not Permit the Taking of TDCJ Director Livingston's Deposition in this Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IX.     Motion to Compel's Claim That They Need to Depose Livingston So They Can Ask Him and about TDCJ Policies for Heat Sensitive Inmates. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

X.    The Cases Cited in the Motion to Compel Do Not Support That Livingston Should Be Deposed and Are Distinguishable and Irrelevant to the Issue of Whether Livingston Should be Deposed. . . . . . . . . . . . . . 21

XI.   Motion to Compel's Claim That Livingston Should Be Deposed Because Jimmy Carter and Gerald Ford Gave Depositions and Thomas Jefferson, Abraham Lincoln, James Monroe, and Ulysses S. Grant Testified Before Committees of Congress (Motion to Compel, p. 9). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Notice of Electronic Filing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## INDEX OF AUTHORITIES

<u>**Cases**</u>                                                                                          <u>**Page**</u>

*Ashcroft v. Iqbal*,
      556 U.S. 662, 677, 129 S. Ct. 1937, 1949-50 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14, 25

*Atlanta Journal and Constitution v. City of Atlanta Dept. of Aviation*,
      175 F.R.D. 347 (N.D. Ga. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Bagley v. Blagojevich*,
      486 F. Supp. 2d 786 (C.D. Ill. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Baine v. Gen. Motors Corp.*,
      141 F.R.D. 332, 335 (M.D.Ala.1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Bennett v. Reed*,
      534 F. Supp. 83, 87. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Blackmon v. Garza,*
      484 Fed. Appx. 866 (5th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

*Blackmon v. Kukua, et al,*
      758 F.Supp.2d 398 (S.D.Tex.,2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Bogan v. City of Boston*,
      489 F.3d 417, 423 (1st Cir.2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Brown v. Texas A & M Univ.,*
      804 F.2d 327, 333 (5th Cir.1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 18

*Church of Scientology of Boston v. IRS*,
      138 F.R.D. 9, 12 (D.Mass.1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Clinton v. Jones,*
      520 U.S. 681, 705 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Cmty. Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.,*
    96 F.R.D. 619, 621 (D.D.C.1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Conti v. American Axle and Mfg., Inc.,*
    326 Fed.Appx. 900, 906 (6th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Crawford–El v.. Britton,*
    523 U.S. 574, 598 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 17

*Crown Cent. Petroleum Corp. v. Garcia,*
    904 S.W.2d 125 (Tex. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Durmer v. O'Carroll,*
    991 F.2d 64, 69 (3d Cir.1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Edgerly v. City and Cnty of San Francisco,*
    599 F.3d 946, 961–62 (9th Cir.2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Estate of Davis ex rel. McCully v. City of North Richland Hills,*
    406 F.3d 375, 381(5th Cir.2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Fantone v. Herbik,*
    2013 WL 2564429 (3rd Cir.2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Fleming v. Tunica County Mississippi,*
    497 Fed.Appx. 381, 389 (5th Cir.2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 18

*Gates v. Cook,*
    376, 528, F.3d 323 (5th Cir.2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11, 14

*Gauthier v. Union Pacific R. Co.,*
    2008 WL 2467016 ( E.D.Tex., June 18, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Harlow v. Fitzgerald,*
    457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 17

*Hayes v. Snyder,*
    546 F.3d 516, 527 (7th Cir.2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Lee v. Rushing,*
    2013 WL 2462247 (5th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 17

*Lee v. Young,*
    533 F.3d 505, 511 (7th Cir.2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Lindsey v. McGinnis,*
    1994 WL 162610 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Morales v. E.D. Etnyre & Co.,*
    229 F.R.D. 661 (D.N.M. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Moyle v. Liberty Mut. Retirement Ben. Plan*,
    2012 WL 5373421 S.D. Cal.,2012. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Obata v. Harrington*,
    2013 WL 1442481 (D.Hawai'i,2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Or. State Univ. Student Alliance v. Ray*,
    699 F.3d 1053, 1070 (9th Cir.2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ourts v. Cummins*,
    825 F.2d 1276, 1277 (8th Cir.1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Parker v. Amos*,
    2011 WL 3568836 *3 (W.D.Va.2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Prisma Zona Exploratoria De Puerto Rico, Inc. v. Calderon*,
    154 F.Supp.2d 245 (D. Puerto Rico 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Robinson v. Conner*,
    2012 WL 2358955 *5*(M.D. Alabama 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Salter v. Upjohn Co.*,
    593 F.2d 649, 651 (5th Cir.1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Starr v. Baca*,
    F.3d 1191, 1196 (9th Cir.2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Michigan*,
    680 F.2d 928 (W.D. Mich. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Valigura v. Mendoza*,
    265 Fed. App'x. 232 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wicks v. Mississippi State Employment Services*,
41 F.3d 991, 994 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17

*Williams v. Limetone Cnty.*,
    198 F. App'x 893, 897 (11th Cir.2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## Statutes and Rules

42 U.S.C. §1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 14, 15, 17

Fed. R. Civ. Proc. §11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed.R.Civ.P. 26(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fed. R. Civ. Proc. §30(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

Fed. R. App. Proc. 28(a)(8)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **STEPHANIE McCOLLUM,** *et al.*, | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:12-CV-02037** |
| | § | |
| **BRAD LIVINGSTON,** *et al.*, | § | |
| *Defendants.* | § | *JURY* |

**DEFENDANT BRAD LIVINGSTON'S RESPONSE TO MOTION TO COMPEL**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant, Brad Livingston responds to Plaintiff's Motion to Compel his deposition (Doc. 103) as follows:

**SUMMARY**

Plaintiffs file a Motion to Compel based on arguments that have no merit and ask this Court to disregard both the facts and the law by ordering that Brad Livingston be deposed. As has and will be shown, U.S. and Fifth Circuit precedent hold that no discovery should be permitted until the Court has resolved the immunity issue. Livingston's pending Motion to Dismiss on the basis of immunity, has not been decided. Absent a ruling that the Amended Complaint alleges facts-not meaningless legal conclusions and speculative opinions/diatribe-that defeat immunity, no discovery should be allowed, let alone Livingston's deposition.

Moreover, Plaintiffs have received from Livingston responses to requests for admissions, interrogatories and requests for production, have deposed numerous witnesses and received hundreds if not thousands of pages related to the deaths of inmates from heat related causes. Their claim that they need more discovery from Livingston, despite federal precedent holding otherwise and the extensive discovery they have already received, is frivolous sanctionable under FED. R. CIV. PROC. 11, brought in bad faith and appears to be an attempt to harass and inconvenience Livingston, perhaps in the hope that if they waste enough of his and the taxpayers' money and time, a monetary settlement can be coerced from him before their suit is dismissed.

I.      **Motion to Compel's Introductory Diatribe**

The Motion to Compel begins with the same conclusory jargon diatribe/jury argument claims that have no support in clearly established law found in the Amended Complaint.  It appears that the assertions are an emotional appeal designed to persuade the Court that neither the facts or the law matter-that all that need be shown is that an inmate died and that in hindsight, counsel is clever enough to have come up with various courses of action that defendants might have taken that may have prevented McCollum's death.  However, catchy phrases devoid of facts do not overcome immunity.  ("Livingston is sued...for knowingly exposing prisoners to the brutal heat that killed McCollum....Livingston, made the deliberate choice to imprison people like McCollum–with particular vulnerability to extreme heat...Though Livingston knows prisoners suffer (or even die) from these conditions every summer, he took, and continues to take, no reasonable action to protect them from death...he knew that the lethal heat endured by prisoners as a serious, system-wide danger in Texas prisons...he was deliberately indifferent to that danger...they have taken no steps to cool the indoor temperatures, or at least provide safe housing to prisoners with heat-sensitive medical conditions, like McCollum" (Motion to Compel, p. 1-2)[1]  In the rare instances where Plaintiffs reference a fact instead of conclusory jargon, the absence of a Constitutional claim is apparent:

> Livingston is one of the few people in the agency who had the ability and authority to approve cooling inmate living areas.
>
> ...
>
> Though high-ranking TDCJ officials have long known that extreme temperatures indoors put inmates at risk–especially prisoners like McCollum, who suffered from hypertension, obesity, and diabetes–they have taken no steps to cool the indoor temperatures, or at least provide safe housing to prisoners with heat-sensitive medical conditions, like McCollum.  (Motion to Compel, p. 2)

a.      **No Constitutional Right to Air Conditioned Prisons**.

*Blackmon v. Garza,* 484 Fed. Appx. 866 (5th Cir. 2012) FN6.  (We also note that, like the *Gates* court, [*Gates v. Cook,* 376 F.3d 323(5th Cir. 2004)] do not suggest that air conditioning is mandatory to meet the requirements of the Eighth Amendment.

---

[1]      "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we **1950 "are not bound to accept as true a legal conclusion couched as a factual allegation"; *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949-1950, 173 L.Ed.2d 868 (2009).

b.     **Decisions Based on Medical Needs of Inmates, Such as Special Housing, May Be Delegated by Security Administrators to Medically Trained Professionals Without Forfeiting Immunity as Plaintiffs Admit Occurred in this Case.**

*Lee v. Young*, 533 F.3d 505, 511 (7th Cir.2008) ("[I]n determining the best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals."). *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir.2008) (reiterating "the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care").

Prison security administrators may rely on the decisions made by medical staff without losing their qualified immunity. *Fantone v. Herbik,* 2013 WL 2564429 (3rd Cir.2013) (State prison administrators who handled inmate's grievances were not deliberately indifferent to his serious medical needs, in violation of Eighth Amendment, where administrators had no responsibility or authority to treat inmates medically, and had no reason to believe that prison doctors were either mistreating or not treating inmate.)*; Lee v. Rushing*, 2013 WL 2462247 (5th Cir. 2013) (Sheriff was not liable under §1983 for deliberate indifference to prisoner's serious medical need based on prisoner's claim that sheriff was aware of prisoner's scalp condition and failed to ensure timely care, in alleged violation of Eighth Amendment; prisoner failed to allege any personal involvement by sheriff in his treatment, medical complaints were monitored by the jail's medical personnel, and there was no evidence indicating that sheriff personally ignored prisoner's medical complaints or denied prisoner treatment.); *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir.1993). Warden and Commissioner for Corrections, neither of whom were physicians, could not be considered deliberately indifferent to prisoner's medical needs simply because they failed to respond directly to medical complaints of prisoner).[2]

---

[2]     Plaintiffs do not allege that these defendants interfered with decisions of medical staff nor that they were personally aware of any special medical needs that McCollum might have had that would suggest a duty to intervene in his behalf or to second guess the decisions of TDCJ Hutchins Unit medical staff.  These defendants are not alleged to have  medical training, qualification and education to make decisions on what medical condition an inmate has, the degree and seriousness of the condition and at what point it would be medically required that a particular inmate be housed or treated differently than an inmate without such medical condition or an inmate with a less severe form of the same condition.  It is not even alleged that these defendants had any knowledge concerning McCollum's  medical needs or the response made to such needs by TDCJ Hutchins Unit medical staff.

**c.     Plaintiffs Admit That Medical Staff Were Delegated the Authority to Make Housing Decisions Based on Medical Need.**

>    **89.     ...medical staff make mandatory housing recommendations for prisoners. UTMB, among other things, can prohibit prisoners with certain medical conditions from working in prison jobs where they would be exposed to high temperatures. For a prisoner with a chronic leg injury, for example, UTMB may prohibit TDCJ from assigning that prisoner to a top bunk.[3]**

>    **46.     UTMB makes mandatory housing recommendations to TDCJ for some prisoners with disabilities[4]**

Plaintiffs have admitted that UTMB has the authority to place inmates in housing determined to be necessary to their health, while claiming that UTMB did not exercise that authority prudently:[5]

>    **63.     Similarly, after the two men died in 2007, Dr. Murray instituted no changes to UTMB's intake and housing practices, and continued to leave vulnerable prisoners at risk of heat stroke system-wide.**

>    **82.     ...UTMB providers at all prisons, including the Hodge Unit, continued to house inmates vulnerable to the heat in dangerously hot temperatures during the summer months without any housing restrictions.[6]**

>    **89.     Despite these ten deaths in 2011, Dr. Murray and UTMB continued to house vulnerable inmates in extremely hot temperatures without any protections.[7]**

>    **104.     ...UTMB providers at all prisons, including the Garza West Unit, continued to house inmates vulnerable to the heat in  dangerously hot temperatures during the summer months without any housing restrictions.  Dr. Murray, and the practices and policies for which he is responsible, (including not placing housing restrictions on inmates vulnerable to the heat, not providing intake physicals for inmates when they first arrive for extended periods of time despite the dangers they face, not providing medical care on site from 6:00 p.m. to 9:00 a.m. despite knowing**

---

[3]     Paragraph 89, First Amended Complaint, Doc. 39-2, *McCollum v. Livingston, et al.*

[4]     Amended Complaint, paragraph 46**,** *Kevin Webb, et al., v. Brad Livingston, et Al.*, Eastern District of Texas, Tyler Division Civil Action No. 6:13-cv-711-LED-JDL Doc. 10

[5]     UTMB's acts and omissions cannot make Stephens, Livingston or Thaler vicariously liable or strip them of their immunity. *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 381(5th Cir.2005) (Supervisory officials cannot be held liable under § 1983 for the actions of subordinates based on vicarious/respondeat superior liability;)

[6]     Amended Complaint, paragraphs 63, 82. *Kevin Webb, et al., v. Brad Livingston, et al.*, USDC-Eastern District of Texas, Tyler Division Civil Action No. 6:13-cv-711-LED-JDL (Doc. 10)

[7]     Complaint (Doc. 1) paragraph 89, *Ramona Hinojosa v. Brad Livingston, et al.,* Civil Action No. 2:13-cv-319 in the USDC - Southern District of Texas Corpus Christi Division filed October 15, 2013.

the dangers extremely hot conditions present, having licensed vocational nurses providing treatment when they are not competent to do so, and inadequately training staff to recognize the signs of heat stroke and the immediate need for treatment), is deliberately indifferent to inmates vulnerable to heat generally and to the decedents in this case specifically.  UTMB is empowered and obligated to restrict an inmate's housing when his or her serious medical condition requires it.[8]

63.    Similarly, Dr. Murray and UTMB have formulated work policies designed to minimize possible heat exhaustion and heat stroke among inmates. However, despite knowing that medically vulnerable inmates spend most of their time inside, and despite knowing that indoor temperatures at the Gurney Unit and other transfer facilities routinely exceed 100 degrees in the summer, Dr. Murray has not instituted any practice or policy concerning safely housing inmates known to be especially vulnerable to the heat. [9]

64.    UTMB makes mandatory housing recommendations to TDCJ for some prisoners with disabilities – a prisoner using a wheelchair, for example, could not be assigned to a top bunk.  But UTMB and TDCJ policies do not contemplate special housing for prisoners with heat-sensitive disabilities. [10]

70.    Similarly, after the two men died in 2007, Dr. Murray instituted no changes to UTMB's intake and housing practices, and continued to leave vulnerable prisoners at risk of heat stroke system-wide.[11]

## II.    Plaintiffs Are Not Permitted to Take an Official's Deposition Prior to Resolution of His Immunity.

Supreme Court precedent states that, to avoid unnecessary exposure to burdensome discovery, the preferred practice is for the government officials to move to dismiss the action based on qualified immunity before discovery is ordered. *Crawford–El v. Britton,* 523 U.S. 574, 598 (1998) ("...if the defendant does plead the immunity defense, the district court should resolve that threshold question before permitting discovery."); *Harlow* v. *Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982) ("Until this threshold immunity question is  resolved, discovery should

---

[8]    Plaintiffs' Response to Dr. Murray's Motion to Dismiss in *Webb v. Livingston et. al.,* USDC- Eastern District of Texas*,* Civil Action No.: 6:13-cv-00711-JDL, Document Number: 37, filed 10/30/2013).

[9]    *Adams, et. al. v. Livingston et al.*, USDC - Eastern District of Texas, Civil Action No. 6:13-CV-00712, Amended Complaint,  Doc Number 8:  paragraphs 63, 64.

[10]    *Adams, et. al. v. Livingston et al.*, USDC - Eastern District of Texas, Civil Action No. 6:13-CV-00712, Amended Complaint,  Doc Number 8:  paragraphs 63, 64.

[11]    *Martone v. Livingston, et al*., USDC - Southern District of Texas, Corpus Christi Division, Civil Action No. 3-13-cv-283, Complaint, Doc. 1, paragraph 70.

not be allowed."). The Fifth Circuit has ruled that **_no_** discovery should be allowed prior to the Court ruling that the Plaintiff's pleadings defeat immunity. _Wicks v. Mississippi State Employment Services_, 41 F.3d 991, 994 (5th Cir. 1995) ("Discovery under Lion Boulos, however, must not proceed until the district court first finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity."); _Brown v. Texas A & M Univ._, 804 F.2d 327, 333 (5th Cir.1986) ("[T]he issue of qualified immunity is a threshold question, and '[u]ntil this threshold immunity question is resolved, discovery should not be allowed.' "). _Fleming v. Tunica County Mississippi_, 497 Fed.Appx. 381, 389 (5th Cir.2012) (Opinion at page 7)

> the complaint must 'state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity.'
>
> ...
>
> ("[A]llowing broadly-worded complaints, ... which leaves to traditional pretrial depositions, interrogatories, and requests for admission the development of the real facts underlying the claim, effectively eviscerates important functions and protections of official immunity."). Fleming's amended complaint does no more than recite various legal theories upon which a jailer may be liable for unlawful detention under this court's precedents. His pleadings' failure to allege the specific factual underpinnings of these legal conclusions is fatal in the face of the individual defendants' assertions of qualified immunity.

### III.   Motion to Compel Claim That They Are Unable to Get Responses from Livingston Through Written Discovery.

*"It is the humble petition of the camel, who only asks that he may put his nose into the traveler's tent. It is so pitiful, so modest, that we must needs relent and grant it. Thereafter, the camel is entirely inside the tent and refuses to leave." Arab fable, circa 1878.*

> On page 4, Motion to Compel, it is stated:
> ...Plaintiffs have served additional interrogatories on Livingston, and deposed other high-ranking policymakers at TDCJ, but were unable to get answers to critical questions.

Plaintiffs do not explain why they were unable to get answers from Livingston by submitting interrogatories and requests for admission. Brad Livingston is a named defendant in 30 lawsuits.[12] He is the Chief Executive Security Administrator of the largest prison system in the United States. _California's Prison Population Eclipsed_

---

[12]   **Exhibit 1**-TDCJ Office of General Counsel Spreadsheet.

*By Texas*[13] ("California now has fewer than 136,000 state inmates, eclipsed by about 154,000 in Texas.").[14]  TDCJ is the largest state agency in the State of Texas with approximately one billion dollars in payroll costs, 40,000 employees and 152,303 inmates to potentially generate litigation, administering 111 prison units and jails, the parole system, as well as funding, training, and certain oversight of community supervision.[15]  The intrusive potential for harassing depositions that the U.S. Supreme Court and Fifth Circuit Court of Appeals direct district courts to avoid, is the basis for those Courts' rulings disallowing any discovery until the district court has concluded that sufficient facts have been pled to defeat an official's qualified immunity.  The potential disruption to the performance of the duties of TDCJ Executive Director (Livingston) and the Directors of the Correctional Institutions Division (Thaler and Stephens) would be vast were the district courts to refuse to follow the appellate courts' holdings and determine that discovery should be allowed before the immunity issue was resolved.  It is particularly unnecessary to require depositions in this case.  Plaintiffs have taken the depositions of TDCJ Correctional Institutions Division Directors Stephens and Thaler, along with numerous other defendants and witnesses and have obtained hundreds of pages of discovery in interrogatories, requests for admissions and requests for production from Livingston, well beyond that limited to the qualified immunity issue.

---

[13] http://www.huffingtonpost.com/2012/06/13/california-prison-popualation_n_1594926.html

[14]      TDCJ had 111 units and  an inmate population of 152,303 as of August 31, 2012. TDCJ Statistical Report, p. 1 http://www.tdcj.state.tx.us/documents/Statistical_Report_FY2012.pdf; TDCJ http://www.tdcj.state.tx.us/unit_directory/index.html

[15]      http://www.tdcj.state.tx.us/mediasvc/definitions/index.html; http://www.tdcj.state.tx.us/divisions/finance/finance_payroll.html

Plaintiffs have submitted to Livingston and TDCJ the following attached interrogatories, requests for admission and requests for production to which he has responded on his own behalf as well as TDCJ's behalf:

Page

Exhibit 1:      TDCJ Office of General Counsel spread sheet      1-3

Exhibit 2:      Defendant Brad Livingston's Responses to Plaintiff Stephen      4-9
McCollum's First Set of Requests for Production and Interrogatories

Exhibit 3:      Defendant Brad Livingston's Responses to Plaintiff Sandra McCollum's      10-20
First Set of Requests for Admission, Requests for Production
and Interrogatories

Exhibit 4:      Defendant Texas Department of Criminal Justice's Responses to Plaintiffs'      21-34
First Set of Requests for Production, Request for Admissions and
Interrogatories" dated December 2012

Exhibit 5:      Defendant Texas Department of Criminal Justice's Responses to Plaintiff      35-52
Stephen McCollum's Second Request for Production, Interrogatories, and
Admissions dated February 2013

Exhibit 6:      Defendant Texas Department of Criminal Justice's Responses to Plaintiff      53-57
Sandra McCollum's Fifth Set of Requests for Production and Admissions
dated July 2013

Exhibit 7:      Brad Livingston's Responses to Interrogatories in *Webb v. Livingston*      58-65

Exhibit 8:      Brad Livingston's Responses to Interrogatories in *Togonidze v. Livingston*      66-72

Exhibit 9:      Brad Livingston's Responses to Interrogatories in *Adams v. Livingston*      73-79

Exhibit 10:      William Stephens Deposition Transcript (150 pages-3hours)      80-118

Exhibit 11:      Rick Thaler Deposition Transcript (265 pages-7 hours      119-187

The Motion to Compel's claim that they "...were unable to get answers to critical questions" as to Livingston are ludicrous.  Plaintiffs submitted interrogatories and to Livingston and he responded:

**Defendant Brad Livingston's Responses to Plaintiff Stephen McCollum's First Set of Requests for Production and Interrogatories.[16]**

1.   Identify all steps you took to protect Larry McCollum from heat index temperatures in the Hutchins Unit in excess of 90 degrees.

---

[16]    **Appendix 1** attached

**RESPONSE.   I did not know Larry McCollum**.

2.   Identify all hear related in injuries (refer to definition paragraph R) to inmates in Texas Department of Criminal Justice Facilities at any TDCJ unit you were aware of during your employment with TDCJ.

**RESPONSE**:   **...I cannot recall any specific offenders illnesses**.

3.   Identify all heat-related injuries to employees of the Texas Department of Criminal Justice working at Texas Department of Criminal Justice facilities at any TDCJ unit during the term of your employment, including but not limited to, injuries where employees filed workers compensation claims.

**RESPONSE**:   **...I cannot recall any specific officers illnesses and the heat as a specific cause.**

**Defendant Brad Livingston's Responses to Plaintiff Sandra McCollum's First Set of Requests for Admission, Requests for Production and Interrogatories**

1.   Identify all steps you took to protect inmates in TDCJ facilities from heat indexes above 90 degrees from January 1, 2007.

**RESPONSE**:   **OBJECTION, Over broad and not reasonably limited in scope or time. For steps taken to protect inmates at the Hutchins State Jail from heat indexes above 90 degrees from January 1, 2009 to present see documents previously produced in accordance with Plaintiffs' previous requests for production and deposition testimony of Warden Jeff Pringle. See, also heat safety training and circulars produced in response to Plaintiff Stephen McCollum's First Request for Production to TDCJ, numbers 3-5.**

**Subject to the previous answers and without waiving all previous objections, the agency takes the following  measures.  Each year in April, the agency has mandatory heat precaution training for all staff and offenders.  Each shift supervisor was instructed to discuss heat awareness and warning signs at shift turn outs during the summer months.  Heat awareness, warning signs, and hydration memos were placed throughout the facility for staff and offenders.  Shower temperatures were lowered and showers times were extended.  Water coolers with ice were placed in the dormsduring summer months.  Water is made available during meal times. Staff was instructed that offenders identified or requested relief from the heat were allowed to sit in cooler areas. Work shifts are reduced or cancelled and offenders are allowed to wear less clothing in the housing areas. Allowing fans in all custody levels, permitting offenders to purchase a fan if they do not have one, and ensuring a program is in place allowing the permanent issue of a fan to an offender who is indigent with priority to offenders with significant medical needs that are negatively impacted by the heat.  Air flow and fresh air exchange is increased to assist in the movement of air.  The procedures are reviewed continually by TDCJ staff.**

2.  Identify all people you discussed heat, high temperatures, heat indexes, or air conditioning in inmate housing areas in TDCJ facilities with from January 1, 2007 to the present.

**RESPONSE:  Objection, over broad as to time. From 2009 topresent I have had periodic discussions concerning high temperatures in inmate housing areas in TDCJ facilities with Jeff Baldwin, Rick Thaler, Jerry McGinty, Jackie Edwards, Oscar Mendoza, Dr. Lanette Linthicum and Bryan Collier.**

4.  Identify all people who authored, developed, consulted on, conferred about or otherwise contributed to drafting Administrative Directive AD-10.64 (rev. 5) (Sept. 19, 2006): Temperature Extremes in the TDCJ Workplace (Bates Nos. TDCJ – RFP #3 – 6-13).

**RESPONSE:  I have no personal knowledge of who authored, developed, consulted on, conferred about or contributed to drafting Administrative Directive AD-10.64 (rev. 5). The Administrative Directive would have been proposed by a division and staffed through all TDCJ division heads in accordance with Executive Directive 01.21 (rev. 4) April 19, 2002, entitled "TDCJ Policies and Procedures System." After review, and resolution of any concerns from division heads, the Administrative Directive would have been staffed through the Deputy Director at the time, Ed Owens, for his or my signature.**

5.  Identify all people who authored, developed, consulted on, conferred about or otherwise contributed to drafting Correctional Managed Health Care Policy Manual B-15.2 (Revised 11/07).

**RESPONSE:  I have no personal knowledge of who drafted Correctional Managed Health Care Policy Manual B-15.2 (Revised 11/07).**

6.  Describe in detail the process for making capital improvements at prisons (including installation of air conditioning). A response to this interrogatory requires a detailed description of how capital improvements are approved, including whose approval is required before capital improvements are made.  For purposes of this interrogatory, "capital improvements" includes any new construction, and any additions to existing structures beyond normal maintenance and repair.

**RESPONSE:  Objection, over broad in scope.  See, attached Executive Directive 10.06 (rev. 4), February 27, 2004, entitled, "Construction, Maintenance, Renovation, or Alteration of TDCJ Facilities."**

7.  Describe in detail any process for making sure conditions in TDCJ facilities satisfy constitutional minimums.

**RESPONSE:  Objection overbroad and undue burden, vague as to the term "constitutional minimums," not reasonably limited in scope or time, and not calculated to lead to the discovery of admissible evidence.  Without further clarification from plaintiff regarding what "conditions" they are referring to, defendant cannot answer this interrogatory.**

8. Identify any changes made to TDCJ operations related to heat or extreme temperatures after *Gates v. Cook*, 528 F.3d 323 (5th Cir. 2004).[17] (*sic*)

**RESPONSE: OBJECTION, vague. The interrogatory does not specify if TDCJ made changes pursuant to *Gates v. Cook* or simply made changes after 2004. The interrogatory does not specify how *Gates v. Cook* would require changes to be made in TDCJ operations. Subject to and without waiving, TDCJ annually reviews agency practices related to heat and extreme temperatures. See, training, circulars, and policies produced pursuant to Plaintiffs' previous requests for production. One of the approved injunctions in *Gates v. Cook*, to provide fans, ice water, and daily showers in Mississippi prisons, were already in place when I became Executive Director in 2004.**

9. Identify any changes made to TDCJ operations related to heat or extreme temperatures after *Valigura v. Mendoza*, 265 Fed. App'x. 232 (5th Cir. 2008).

**RESPONSE: OBJECTION, vague in regards to "after." The interrogatory does not specify if TDCJ made changes pursuant to *Valigura v. Mendoza* or simply after 2008. The interrogatory also fails to specify what changes, if any, *Valigura v. Mendoza* required TDCJ to make. Plaintiffs should clarify how *Valigura v. Mendoza*, 265 Fed. App'x. 232 (5th Cir. 2008), an unpublished per curiam decision of the Fifth Circuit to affirm the lower court's denial of TDCJ employees' motion for summary judgment, should impact TDCJ operations, particularly in light of the facts that the *Valigura v. Mendoza* Fifth Circuit decision did not specify any changes to be made to TDCJ operations, and the TDCJ employee defendants subsequently won their case at trial. Subject to and without waiving, TDCJ annually reviews agency practices related to heat and extreme temperatures. See, training, circulars, and policies produced pursuant to Plaintiffs' previous requests for production. No changes to TDCJ operations were made pursuant to the Fifth Circuit opinion in *Valigura v. Mendoza*, 265 Fed. App'x. 232 (5th Cir. 2008).**

10. Identify any changes made to TDCJ operations related to heat or extreme temperatures after *Blackmon v. Kukua*, No. 11-40316 (5th Cir. July 30, 2012).

**RESPONSE: OBJECTION, vague in regards to "after." The interrogatory does not specify if TDCJ made changes pursuant to *Blackmon v. Kukua* or simply after 2008. The interrogatory also fails to specify what changes, if any, *Blackmon v. Kukua* required TDCJ to make. Furthermore, the Fifth Circuit in *Blackmon v. Kukua*, a *per curiam* unpublished decision to reverse and remand a the lower court's awarding of a directed verdict to TDCJ employee defendants, specifically did not suggest that the remedial measures required by the *Gates* court are insufficient to address the risks of high heat and humidity, or, in *dictum*, that air conditioning is mandatory to meet the requirements of the *Eighth Amendment*. To the contrary, the Fifth Circuit merely held that there was a factual dispute between plaintiffs and defendants that the *Gates* remedial measures were fully implemented**

---

[17] *Gates v. Cook*, 376 F.3d 323,339-40 (5th Cir. 2004) is the correct cite.

which created an issue of fact that ought to have been decided by a jury, and not by a judge with a directed verdict.

Subject to and without waiving, TDCJ annually reviews agency practices related to heat and extreme temperatures.  See, training, circulars, and policies produced pursuant to Plaintiffs' previous requests for production.  No changes to TDCJ operations were made pursuant to the Fifth Circuit opinion in *Blackmon v. Kukua*, No. 11-40316 (5th Cir. July 30, 2012).

11.     Describe in detail how your signature arrived on the bottom of Administrative Directive AD-10.64 (rev. 5) (Sept. 19, 2006): Temperature Extremes in the TDCJ Workplace (Bates Nos. TDCJ – RFP #3 – 6-13).

RESPONSE:   The Administrative Directive would have been presented to me in accordance with Executive Directive 01.21 (rev. 4) April 19, 2002, entitled "TDCJ Policies and Procedures System."  It is TDCJ policy that the Executive Director or Deputy Executive Director will be the signature authority for all Administrative Directives.

TDCJ has 149 Administrative Directives and 41 Executive Directives which bear either my or the Deputy Director's signature.  For perspective, in 2006 alone I signed 42 other Administrative Directives and Executive Directives.

12.     Identify who was the director of the TDCJ Institutional Division for past 10 years.

RESPONSE:  The TDCJ Institutional Division has not existed since 2003, when it was merged with the Operations Division, Private Facilities Division, and the State Jail Division to create the Correctional Institutions Division.  The current director of the TDCJ Correctional Institutions Division is Rick Thaler.  He has been the director since 2009.

13.     Identify all TDCJ policies that protect prisoners from heat in housing areas.

RESPONSE:  OBJECTION, overly broad, as to subject and undu burden as plaintiff as repeatedly requested and obtained this information.  Subject to and without waiving:

For steps taken to protect inmates at the Hutchins State Jail from heat housing areas at the Hutchins State Jail housing areas see documents previously produced in accordance with Plaintiff Stephen McCollum's First Request for Production to Defendant Texas Department of Criminal Justice, number 3-5, and Warden Pringle's deposition.

Plaintiffs have taken  depositions of TDCJ/UTMB staff in heat related prison death claim for *McCollom v. Livingston*, *et al.*, USDC-Northern District of Texas, Dallas Division, Civil Action No. 3-12-cv-02037:

> TDCJ-CID (Retired) Director Rick Thaler; [18]
>
> TDCJ-CID Director William Stephens (current); [19]
>
> TDCJ designated air conditioning witness Thomas L. Vian;
>
> TDCJ Warden Jeffery Pringle;
>
> TDCJ Region 2 maintenance manager Kim Ray Farguson;
>
> TDCJ Sergeant Karen Sue Tate;
>
> TDCJ Correctional Officer Richard J. Clark;
>
> TDCJ Lieutenant Sandrea Yvonne Sanders;
>
> TDCJ Regional Director Robert Eason;
>
> UTMB Doctor Ananda D. Babbili;
>
> UTMB Doctor Owen Murray;
>
> UTMB Doctor Glenda Adams.

More extensive  discovery  can be  reviewed by the Court in **Exhibits 2-11 attached**, which includes interrogatory responses of Thaler, Stephens and Livingston in *Webb v. Livingston, et al.*, Case No. 6:13-cv-00711-JDL, Doc. 49, p. 3 (USDC - E. Dist. Tex. – Tyler, Nov. 6, 2013).  TDCJ security administrators-Thaler, Livingston and Stephens-have provided extensive discovery that is substantively the same regardless of which TDCJ unit a death occurred because these defendants have no personal involvement in the supervision and medical treatment of inmates at any TDCJ unit.

IV.     **Motion to Compel's Claim That Livingston May Be Deposed So That He Can Be Asked If He Could Have "Climate Controlled" the Hutchins Unit, If He " Had Personal Knowledge of the Extreme Temperatures Inside the Prisons."  If He Had "Knowledge of the Dangers Posed by Extreme Temperatures Inside the Prisons' Housing Areas." or Had Knowledge of a Letter from or to a State Representative. (Motion to Compel, p. 4-6)**

Plaintiffs could have asked these questions in interrogatories but chose not to.  Whether Livingston could or should have made the Hutchins Unit "climate controlled", in other words air conditioned, is not relevant to his

---

[18]     150 pages, 3 hours in duration. **Exhibit 10**.

[19]     265 pages, 7 hours duration. **Exhibit 11.**

immunity.  There is no clearly established duty to air condition Texas prisons.  *Blackmon v. Garza,* 484 Fed. Appx. 866 (5th Cir. 2012), footnote 6 ("We also note that, like the *Gates* court, [*Gates v. Cook,* 376 F.3d 323 (5th Cir.2004)] we do not suggest that air conditioning is mandatory to meet the requirements of the Eighth Amendment."). Livingston's knowledge of temperatures is not relevant to his immunity.  As TDCJ Director over the largest prison system in the United States,[20] the largest state agency in Texas,[21] in charge of 111 prisons, 152, 303[22] inmates, and 40,000 employees,[23] he had no clearly established Constitutional duty to monitor, treat, assign housing to, transfer, supervise, care for, be aware of the medical history of, or respond to the medical needs of any particular inmate.

Moreover, knowledge is insufficient to establish the liability of a high ranking prison official when the conduct complained of are those of subordinate staff. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

> ...respondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument. Respondent's conception of "supervisory liability" is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents. In a § 1983 suit or a Bivens action—where masters do not answer for the torts of their servants—the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose Bivens liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

---

[20]    *California's Prison Population Eclipsed By Texas* ("California now has fewer than 136,000 state inmates, eclipsed by about 154,000 in Texas.") .http://www.huffingtonpost.com/2012/06/13/california-prison-popualation_n_1594926.html

[21]http://www.tdcj.state.tx.us/mediasvc/definitions/index.html

[22]    TDCJ had 111 units and  an inmate population of 152,303 as of August 31, 2012. TDCJ Statistical Report, p. 1 http://www.tdcj.state.tx.us/documents/Statistical_Report_FY2012.pdf; TDCJ http://www.tdcj.state.tx.us/unit_directory/index.html

[23]    The Payroll Processing Department issues salary payments for approximately 40,000 employees, which is in excess of $1,000,000,000.00 annually. http://www.tdcj.state.tx.us/divisions/finance/finance_payroll.html

**V.      Motion to Compel's Claim of a Need to Depose Livingston on the Issue of the Lack of 24-Hour Onsite Medical Care at the Hutchins Unit.  (Motion to Compel, P.5-6)**

Plaintiffs could have submitted interrogatories on this issue but chose not to.  The question is irrelevant to Livingston's immunity as there is no clearly established Constitutional right to on site prison medical facilities.

*Lindsey v. McGinnis*, 1994 WL 162610 (6th Cir. 1994) (Prisoner claimed unconstitutional delay in treatment due to defendants not providing 24 hour on site medical treatment):

> Lindsey's reliance on *United States v. Michigan*, 680 F.2d 928 (W.D. Mich. 1987) is misplaced. The court in that case did not order the facilities involved or LCF to provide 24-hour on-site physician services.

*Obata v. Harrington,* 2013 WL 1442481 (D.Hawai'i,2013): (pp.3-4):

> Plaintiff alleges that WCF's lack of an onsite, twenty-four hour emergency facility violates his rights under the Eighth Amendment.
> ...

> **1.      Lack of a Twenty-Four Hour Emergency Care Facility**.
>
>         Plaintiff fails to allege facts showing that WCF's lack of a twenty-four hour emergency care facility violated his constitutional rights. The Constitution requires prison officials to provide timely and adequate medical (and dental) care to prisoners. It does not require that every prison and jail have medical staff on duty twenty-four hours a day.  *See, Bennett v. Reed*, 534 F. Supp. 83, 87 (E.D. N.C. 1981)(absence of availability to qualified nurse on twenty-four hour duty does not violate prisoner's constitutional rights); *Williams v. Limetone Cnty.,* 198 F. App'x 893, 897 (11th Cir.2006)(absence of twenty-four hour medical staff on duty did not violate the prisoner's constitutional rights); *Robinson v. Conner*, 2012 WL 2358955 *5*(M.D. Alabama 2012) ( prison's lack of twenty-four hour emergency infirmary, without more, fails to state a claim); *Parker v. Amos,* 2011 WL 3568836 *3 (W.D.Va.2011)(holding that jails and prisons are not required to provide twenty-four hour emergency care facilities).  *4 Notwithstanding WCF's alleged lack of a twenty-four hour infirmary, Plaintiff fails to allege sufficient facts showing that (1) he required emergency medical care for a serious physical condition, (2) prison officials were aware of his serious need, and (3) nonetheless, refused or were unable to transport him to an emergency care facility outside of the prison with deliberate indifference to his health and safety.  As such, Plaintiff fails to state a claim and this claim is DISMISSED.

> **2.      Claims Against Warden Harrington**.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior. Iqbal,* 556 U.S. at 676 Rather, each government official may only be held liable for his or her own misconduct. A defendant may be held liable as a supervisor under 1983 if either (1) he or she was personally

involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the Constitutional violation. *Starr v. Baca,* F.3d 1191, 1196 (9th Cir.2011). In general, a plaintiff "must allege that every government defendant—supervisor or subordinate—acts with the state of mind required by the underlying constitutional provision. *Or. State Univ. Student Alliance v. Ray,* 699 F.3d 1053, 1070 (9th Cir.2012). Conversely, where there is no evidence that the supervisor was personally involved or connected to the alleged violation, the supervisor may not be held liable.  *See, Edgerly v. City and Cnty of San Francisco,* Plaintiff fails to establish that Warden Harrington was personally involved or otherwise responsible for the alleged delay or denial of medical care to Plaintiff. Plaintiff simply claims in conclusory terms that he was in pain on August 4, 2012, and that Warden Harrington knew that WCF lacked an onsite, twenty-four hour emergency facility.  As explained above, even if Harrington was aware that WCF lacked a twenty-four hour infirmary, that does not equate to Harrington's deliberate indifference to Plaintiff's need for emergency medical care on August 4, 2012.  Plaintiff does not allege that Harrington was aware of Plaintiff's need for emergency care, or that Harrington instituted policies or procedures that denied medical services to prisoners who became ill overnight WCF. That is, that Harrington denied WCF staff the authority to transport Plaintiff or any other prisoner to an outside emergency medical facility if the need arose. An individual's "general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Ourts v. Cummins,* 825 F.2d 1276, 1277 (8th Cir.1987). Plaintiff's allegations against Warden Harrington fail to state a cognizable constitutional claim and are DISMISSED.

**VI.   Motion to Compel's Claim That Livingston must Be Deposed Because of His Policy That "Protects Prisoners Forced to Perform Convict Labor, but Not Prisoners with Heat-sensitive Medical Conditions Housed in Extreme Temperatures" (Motion to Compel, p. 7)**

This part of the Motion to Compel is based on a fabrication of the facts and an ignorance of the law.  As has been shown in pages 4-6, Plaintiffs' pleadings admit that TDCJ has a system in place to assign housing based on medical needs if a medical professional at UTMB or TDCJ determines a medical necessity:

> **89.   ..medical staff make mandatory housing recommendations for prisoners. UTMB, among other things, can prohibit prisoners with certain medical conditions from working in prison jobs where they would be exposed to high temperatures. For a prisoner with a chronic leg injury, for example, UTMB may prohibit TDCJ from assigning that prisoner to a top bunk.[24]**

> **46.   UTMB makes mandatory housing recommendations to TDCJ for some prisoners with disabilities[25]**

---

[24]   Paragraph 89, First Amended Complaint, Doc. 39-2, *McCollum v. Livingston, et al.,*

[25]   Amended Complaint, paragraph 46, *Kevin Webb, et al., v. Brad Livingston, et al.*, USDC -Eastern District of Texas, Tyler Division Civil Action No. 6:13-cv-711-LED-JDL (Doc. 10)

As has also been shown, prison security administrators are neither vicariously liable for the acts or omissions of medical professionals nor constitutionally required to have policies in place that would dictate to them the proper medical response, housing assignment, treatment modality or any other conduct or omission they engage in the course of diagnosis and treatment of inmates with specific medical conditions. (supra at pp. 3-4).  *Lee v. Rushing*, 2013 WL 2462247 (5th Cir. 2013) (Sheriff was not liable under §1983 for deliberate indifference to prisoner's serious medical need based on prisoner's claim that sheriff was aware of prisoner's scalp condition and failed to ensure timely care, in alleged violation of Eighth Amendment; prisoner failed to allege any personal involvement by sheriff in his treatment, medical complaints were monitored by the jail's medical personnel, and there was no evidence indicating that sheriff personally ignored prisoner's medical complaints or denied prisoner treatment.)

**VII.    Motion to Compel Claim That Livingston May Be Deposed Even If He Is Immune from Suit Because He Is a Witness with Personal Knowledge.  (Motion to Compel, p. 8)**

In the first place, the Livingston's interrogatory and admissions responses, the 265 page deposition of Thaler and the 150 page deposition of Stephens demonstrate that Livingston has no relevant personal knowledge as to the treatment, care, needs or circumstances of Larry McCollum prior to his death.  (**Exhibits 2-11 attached**)

In the second place, the U.S. Supreme Court and the Fifth Circuit Court of Appeals have both ruled that no discovery at all is permitted against a public official until the district court has  determined that a Constitutional claim overcoming immunity has been set out in the Complaint.

Supreme Court precedent states that, to avoid unnecessary exposure to burdensome discovery, the preferred practice is for the government officials to move to dismiss the action based on qualified immunity before discovery is ordered.  *Crawford–El v.. Britton,* 523 U.S. 574, 598 (1998) ("...if the defendant does plead the immunity defense, the district court should resolve that threshold question before permitting discovery.");  *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982) ("Until this threshold immunity question is  resolved, discovery should not be allowed.").  The Fifth Circuit has ruled that ***no*** discovery should be allowed prior to the Court ruling that the Plaintiff's pleadings defeat immunity.  *Wicks v. Mississippi State Employment Services*, 41 F.3d 991, 994 (5th Cir. 1995) ("Discovery under Lion Boulos, however, must not proceed until the district court first finds that the plaintiff's

pleadings assert facts which, if true, would overcome the defense of qualified immunity.")*; Brown v. Texas A & M Univ.,* 804 F.2d 327, 333 (5th Cir.1986) ("[T]he issue of qualified immunity is a threshold question, and '[u]ntil this threshold immunity question is resolved, discovery should not be allowed.' "). *Fleming v. Tunica County Mississippi*, 497 Fed.Appx. 381, 389 (5th Cir.2012) (Opinion at page 7)

> the complaint must 'state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity.'
>
> ...
>
> ("[A]llowing broadly-worded complaints, ... which leaves to traditional pretrial depositions, interrogatories, and requests for admission the development of the real facts underlying the claim, effectively eviscerates important functions and protections of official immunity."). Fleming's amended complaint does no more than recite various legal theories upon which a jailer may be liable for unlawful detention under this court's precedents.  His pleadings' failure to allege the specific factual underpinnings of these legal conclusions is fatal in the face of the individual defendants' assertions of qualified immunity.

In the third place, Plaintiffs have already taken a day long deposition of William Stephens, TDCJ Correctional Institutions Division Director (CID) (150 pages, 3 hours), Rick Thaler, TDCJ Correctional Institutions Division Director (CID) (265 pages, 7 hours), and dozens of interrogatory and requests for admissions responses from Brad Livingston. **(Exhibits 2-11)**  Plaintiffs do not explain why they need additional discovery  or why they did not ask the questions they deem relevant in the interrogatories that Livingston has already responded to.

In the fourth place, Plaintiffs may still, consistent with the Court's ruling, are free to obtain discovery from Livingston in every manner but depositions, including requests for admissions, requests for production and interrogatories provided they comply with the Federal Rules of Civil Procedure.

In the fifth place, Plaintiffs may obtain discovery from TDCJ on any aspect relevant to this litigation by requiring them to designate a knowledgeable deposition witness pursuant to Fed. R. Civ. Proc. 30(b)(6).

In the sixth place, if Livingston was not a defendant in this case but just a witness, as the Motion to Dismiss claims, as the highest ranking TDCJ employee, he would be entitled to file and ask the Court to consider prohibiting

his deposition under the apex rule.  *Crown Cent. Petroleum Corp. v. Garcia*, 904 S.W.2d 125 (Tex. 1995); *In re Alcatel USA, Inc.*, 11 S.W.3d 173 (Tex. 2000); *Moyle v. Liberty Mut. Retirement Ben. Plan*, 2012 WL 5373421 S.D. Cal.,2012.  (When a party seeks to take the deposition of an official at the highest level or "apex" of a corporation a stricter standard applies to the party seeking discovery, and the court may exercise its authority under the federal rules to limit discovery.  Fed.R.Civ.P. 26(b)(1)); *Gauthier v. Union Pacific R. Co.*,2008 WL 2467016 (E.D.Tex., June 18, 2008) (Plaintiffs are required to seek less burdensome means of discovery before deposing executives.)

**VIII.   Motion to Compel's Claims That Presidents Have Been Deposed and Therefore the Court Should Disregard Clearly Established Law That Does Not Permit the Taking of TDCJ Director Livingston's Deposition Under The Circumstances Of this Case.**

The Motion to Compel invites the Court to disregard clearly established law on immunity, the fact that Plaintiffs are unable to show why Livingston's deposition is necessary, why the interrogatories, requests for admissions and requests for production have not been sufficient to answer the issues in this case and  that they have stated no valid claim against Livingston that would defeat qualified immunity because other high ranking officials, including presidents, have been deposed.  (Motion to Compel, pp. 8-9).

In the first place, the Motion to Compel makes no showing that satisfies this Court's prior ruling:

> Document Number: 29:    ELECTRONIC ORDER granting [21] Motion to Quash Defendant Livingston's Motion to Quash is GRANTED without prejudice to Plaintiffs seeking leave of Court to take Defendant Livingston's deposition ***if Plaintiffs are unable to obtain the information sought by using other avenues and modes of discovery***. (Ordered by Magistrate Judge Renee Harris Toliver on 2/14/2013).

> Document Number: 28:    ELECTRONIC ORDER granting [20] Motion for Protective Order Defendant Livingston's Motion for Protective Order is GRANTED without prejudice to Plaintiffs seeking leave of Court to take Defendant Livingston's deposition ***if Plaintiffs are unable to obtain the information sought by using other avenues and modes of discovery.*** (Ordered by Magistrate Judge Renee Harris Toliver on 2/14/2013). (*emphasis added*)

The Motion to Compel does not even attempt to explain why Plaintiffs were "unable to obtain the information sought by using other avenues and modes of discovery."  Plaintiffs have now gotten responses to

numerous sets of interrogatories and requests for admissions in several heat related prison death cases including this one. **(Exhibits 2-11)** This Court did not rule that Plaintiffs can request leave of court to take Livingston's deposition solely due to the passage of time since the Court issued its order granting Livingston protection from the taking of his deposition. The Court specifically ruled that Plaintiffs must make a showing that they were "unable to obtain the information sought by using other avenues and modes of discovery". Does the Motion to Compel even attempt to explain why Plaintiffs could not have directed interrogatories to Livingston "to obtain the information sought"? It does not. Plaintiffs have not even attempted to comply with this Court's clear requirement for seeking leave of court to obtain Livingston's deposition.

In the second place, whether other high ranking officials have been deposed under different circumstances than are present in this case is not relevant. It does not follow that because President Clinton has been deposed in a case where he personally was shown to have deposited a semen stain on a young female White House intern or personally sexually harassed other women, that thereafter, no public official may ever again suggest that clearly established law prohibits the taking of his deposition under the circumstances of his case.

### IX. Motion to Compel's Claim That They Need to Depose Livingston So They Can Ask Him and about TDCJ Policies for Heat Sensitive Inmates.

The Motion to Compel claims a need to depose Livingston about TDCJ policies regarding inmates that are vulnerable to heat due to a medical condition. References are made that when an official has knowledge of relevant facts, that official may be deposed. (Motion to Compel, pp. 7-9) However, Livingston is not the only TDCJ employee that is familiar with these policies. Under Fed. R. Civ. Proc. 30(b)(6), a party may notice an organization to designate a person for deposition that is knowledgeable regarding a relevant area. The "apex" doctrine forbids the taking of the deposition of the highest level of organizational management unless the proponent demonstrates that the information is not obtainable from any other source. The Motion to Compel has made no demonstration and moreover, has had an opportunity to ask Livingston about such policies in interrogatories and requests for admission attached hereto as exhibits. As the Amended Complaint admits, the policy at TDCJ for inmates with medical

conditions requiring special treatment is for UTMB medical professionals to make "mandatory" recommendations as to the care, housing and treatment of medically vulnerable inmates depending on their condition.

X. **The Cases Cited in the Motion to Compel Do Not Support That Livingston Should Be Deposed and Are Distinguishable and Irrelevant to the Issue of Whether Livingston Should be Deposed.**

*Bogan v. City of Boston*, **489 F.3d 417, 423 (1st Cir.2007). "Federal Courts Have Permitted the Depositions of High Level Executives When Conduct and Knowledge at the Highest Corporate Levels of the Defendant Are Relevant in the Case." (Motion to Compel , p. 8)**

Plaintiffs have obtained a 150 page deposition of William Stephens and a 265 page deposition of Rick Thaler, TDCJ Correctional Institutions Directors as well as interrogatory and admission responses from Livingston. Thus they have already obtained the "conduct and knowledge" referenced in *Bogan v. City of Boston,* which supports why Livingston's deposition should not be ordered in this case-the proponent of discovery must not only show knowledge, but that the information is not obtainable from another source:  (489 F.3d at p.  423)

> Depositions of high ranking officials may be permitted where the official has first-hand knowledge related to the claim being litigated.  See, *Baine v. Gen. Motors Corp.*, 141 F.R.D. 332, 335 (M.D.Ala.1991); *Church of Scientology of Boston v. IRS*, 138 F.R.D. 9, 12 (D.Mass.1990); *Cmty. Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 96 F.R.D. 619, 621 (D.D.C.1983). However, ***even in such cases, discovery is permitted only where it is shown that other persons cannot provide the necessary information.*** *(emphasis added*)

It has not been shown that "other persons cannot provide the necessary information". Plaintiffs have been provided such information by other persons-Thaler and Stephens- and from Livingston in his interrogatory and admissions responses. *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir.1979)(upholding protective order concerning deposition of drug manufacturer's president who was extremely busy, lacked direct knowledge of facts in dispute, and other employees had more direct knowledge).

*Bagley v. Blagojevich*, **486 F. Supp. 2d 786 (C.D. Ill. 2007) (Suit Alleging Governor Personally Ordered Firing of Mid-level Correctional Officers) (Motion to Compel, p. 8).**

The very sentence chosen to represent this case argues against the taking of Livingston's deposition.  The Amended Complaint does not allege that Livingston personally "ordered" anything-he is claimed to have not air

condition prisons and to not have disregard the system in place for housing, treating and caring for medically vulnerable inmates, a  system whereby medical professionals made "mandatory recommendations" on the care, placement and treatment of medically vulnerable inmates.  Blagojevich was alleged to have personally ordered a firing.  Livingston is accused of failing to interfere with practices that did not violate clearly established law.

**_Prisma Zona Exploratoria De Puerto Rico, Inc. v. Calderon_**, 154 F.Supp.2d 245 (D. Puerto Rico 2001) **(Free Speech Retaliation Suit) (Motion to Compel, pp.8-9)**

The Plaintiffs in Prisma alleged that the Governor personally "discriminatorily denied disbursement of Prisma's operational and capital expenditure funds-earmarked, approved and granted since September 1999 by the previous governmental administration-based on political discriminatory reasons" in violation of its first amendment…"  The Motion to Compel does not allege that Livingston took any action.  It claims he failed to act- that he had a duty to air condition prisons, make housing policy that would restrict the ability of medical professionals to treat, place and house medically needy inmates and provide on site prison medical care.  However, there is no Constitutional right to air conditioned prisons, on site medical care or to a policy that prevents medical professionals from using their judgment, training and experience in responding to an inmate's medical needs.

**_Atlanta Journal and Constitution v. City of Atlanta Dept. of Aviation_**, 175 F.R.D. 347 (N.D. Ga. 1997) **(Suit Regarding Free Speech Implications of Placement of News Racks at Hartsfield International Airport) (Motion to Compel, p. 9).**

In requiring the Mayor to be deposed in this case, the District Court made a finding that Mayor  "Campbell is likely to possess pertinent, admissible, discoverable information which can be obtained only from him." **_Atlanta Journal and Constitution v. City of Atlanta Dept. of Aviation_**, 175 F.R.D. at p. 348.  The Motion to Compel cannot show that information on TDCJ policies can only be obtained from Livingston.  Even if they could, they have received Livingston's interrogatory, admission and requests for production responses from him so they have already obtained or had an opportunity to obtain the information they claim they need.

*Conti v. American Axle and Mfg., Inc.*, **326 Fed.Appx. 900, 906 (6th Cir. 2009) (Motion, p. 9).**

In this employment discrimination and retaliation claim, the Court concluded that American Axle CEO Richard Dauch should be deposed because "the record suggests that the two (Plaintiff and the CEO) interacted on numerous occasions, and perhaps frequently…" and that the CEO "was informed of" and "approved" employment decisions relating to *Conti*., 326 Fed. Appx. at 906.

The Motion to Compel does not claim that Livingston and McCollum interacted at all nor that Livingston "was informed of" or "approved" of actions taken as to McCollum.  Unlike the *American Axle CEO*, there is an absence of any personal involvement by Livingston-of him taking any action as to McCollum or his medical needs-something prudently delegated to medical professionals, as the Plaintiffs admit in their Amended Complaint.

*Morales v. E.D. Etnyre & Co.*, **229 F.R.D. 661 (D.N.M. 2005) (Motion to Compel, p. 9)**.

In requiring a deposition of a corporate CEO, the Court noted that Plaintiffs, after taking other depositions, were "…not able to provide information regarding Etnyre's corporate policy."  The Motion to Compel does not claim that it is not able to obtain information regarding TDCJ's policies from sources other than Livingston.  Indeed, the Amended Complaint demonstrates that Plaintiffs are well aware of TDCJ's policy in responding to inmate medical needs-a medical professional issues a "mandatory recommendation" as to the care, treatment and placement of an inmate based on medical need.  Even if it could be demonstrated that some relevant information can only be obtained from Livingston, it is not explained why that information could not have been obtained in one of the numerous interrogatories, requests for admissions and requests for production to which Livingston has already responded.

*Clinton v. Jones*, **520 U.S. 681, 705 (1997), affirms 72 F.3d 1354, 1358 (8th Cir. 1996). (Motion p. 9)**.

The frivolity of Plaintiffs' Motion to Compel is perhaps best illustrated by Plaintiffs' selection of this case as a basis for why Livingston should be ordered deposed.  A former state employee sued the President of the United States alleging that he made "abhorrent" sexual advances while he was Governor of the State of Arkansas, and that her rejection of those advances led to retaliatory punishment by her supervisors. Are there many more dramatic claims of personal involvement than ones alleging "abhorrent" sexual advances? Can it be argued that there were

persons other than Clinton that would have more direct knowledge of his sexual harassment of Plaintiff?  Is it rational to compare a case where the defendant is alleged to personally have sexually harassed a female with a TDCJ Director who has never met the decedent, made no decision and took no action in assessing or treating his medical needs?  Is it rational to claim that Clinton and Livingston are similarly situated for the purpose of having their deposition taken when the former intimately participated in the wrongs complained of and the other had no personal involvement whatsoever, other than to have policies in place that Plaintiffs have already obtained information on and which did not violate clearly established law.  This case is further irrelevant because the President does not have immunity for personal misconduct unrelated to the duties of his office:

> …we have never suggested that the President, or any other official, has an immunity that extends beyond the scope of any action taken in an official capacity.  (520 U.S at 694)

Livingston's request to stay discovery is based on qualified  immunity-the claim  against him is based on official (absence of-failure to act ) conduct.  Clinton was not found to have immunity at all for unofficial action sexually harassing an employee and did not have that basis upon which to avoid his deposition.

### XI.   Motion to Compel's Claim That Livingston Should Be Deposed Because Jimmy Carter and Gerald Ford Gave Depositions and Thomas Jefferson, Abraham Lincoln, James Monroe, and Ulysses S. Grant Testified Before Committees of Congress (Motion to Compel, p. 9)

The Motion to Compel does not give citation or  recite the circumstances surrounding the testimony of former presidents nor state whether the testimony was voluntary or compelled. That a President would testify voluntarily at a deposition or committee is irrelevant to the issue of whether he can be compelled to do so.  This argument should be disregarded as it provides no authoritative reference .  On appeal, this anecdotal reference to testimony of former Presidents under unspecified circumstances with no reference to a statute or a court decision would be disregarded by the Fifth Circuit Court under Fed. R. App. Proc. 28(a)(8)(A):

(a.)   Appellant's Brief.  The appellant's brief must contain, under appropriate headings and in the order indicated:

(8)   the argument, which must contain:

(A.)   appellant's contentions and the reasons for them, ***with citations to authorities*** and parts of the record on which the appellant relies; (*emphasis added*)

# CONCLUSION

Plaintiffs, in their Conclusion to their Motion to Compel state, as a reason for Livingston's deposition, that they have established he has personal knowledge of men dying in TDCJ's prisons due to extreme temperatures, and the policies TDCJ implements to mitigate the heat when clearly established law hold that mere knowledge is insufficient to defeat immunity.[26]   Livingston had no Constitutional duty to air condition the prisons, dictate by policy to medical staff, under what conditions an inmate should be housed given a specific medical condition, provide on site prison medical facilities or micro manage the many different circumstances that arise in making decisions as to the placement, medical treatment and daily needs of TDCJ staff or inmates at any TDCJ unit.[27]  The Motion to Compel does even make a pretense of an attempt to comply with this Court's previous order requiring a showing that "...Plaintiffs are unable to obtain the information sought by using other avenues and modes of discovery."  (Doc. 28, 29)

The Motion to Compel Livingston's deposition should be denied.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Defense Litigation

---

[26]    (See *supra*, p. 16)  *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009):

...respondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument.

[27]     TDCJ Hutchins Unit has been accredited by the American Corrections Association since 2007.  It is operated by Warden Jeff Pringle with the assistance of 405 employees and 28 contract medical staff to provide for the needs of 2,276 male inmates.  http://www.tdcj.state.tx.us/unit_directory../hj.html

25

KAREN D. MATLOCK
Assistant Attorney General
Chief, Law Enforcement Defense Division


/s/ Demetri Anastasiadis
DEMETRI ANASTASIADIS
Assistant Attorney General
Attorney-In-Charge
State Bar No. 01164480


Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin, Texas  78711
(512) 463-2080 / (512) 495-9139 (fax)

**ATTORNEYS FOR DEFENDANT
BRAD LIVINGSTON**


## NOTICE OF ELECTRONIC FILING

I, DEMETRI ANASTASIADIS, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing **Defendant Brad Livingston's Response to Motion to Compel** in accordance with the Electronic Case Files system of the Northern District of Texas, on this the 11th day of December, 2013.

/s/ Demetri Anastasiadis
DEMETRI ANASTASIADIS
Assistant Attorney General

26

## CERTIFICATE OF SERVICE

I, DEMETRI ANASTASIADIS, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Defendant Brad Livingston's Response to Motion to Compel** has been served electronically *via* the Electronic Case Files system of the USDC Northern District of Texas, on this the 11th day of December, 2013, addressed to:

Jeff Edwards
Jeff@edwards-law.com

Scott Medlock
scott@edwards-law.com

Brian Rolland McGiverin
brian@texascivilrightsproject.org

James Harrington
james.harrington@texascivilrightsproject.org

Eliot Shavin
eshavin@sbcglobal.net

Bruce Garcia
Bruce.Garcia@texasattorneygeneral.gov

Johnathan Stone
johnathan.stone@texasattorneygeneral.gov

Kim Coogan
Kim.Coogan@texasattorneygeneral.gov

Erika Danielle Hime
erika.hime@texasattorneygeneral.gov

Lacey E Mase
lacey.mase@texasattorneygeneral.gov

/s/ Demetri Anastasiadis
DEMETRI ANASTASIADIS
Assistant Attorney General

27