# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **STEPHANIE MCCOLLUM,** *et al.*, | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:12-CV-02037** |
| | § | |
| **BRAD LIVINGSTON,** *et al.*, | § | |
| *Defendants.* | § | *JURY* |

## APPENDIX TO DEFENDANT BRAD LIVINGSTON'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL

Exhibit 1:     TDCJ Office of General Counsel spread sheet     1-3

Exhibit 2:     Defendant Brad Livingston's Responses to Plaintiff Stephen     4-9

               McCollum's First Set of Requests for Production and Interrogatories

Exhibit 3:     Defendant Brad Livingston's Responses to Plaintiff Sandra McCollum's     10-20
               First Set of Requests for Admission, Requests for Production
               and Interrogatories

Exhibit 4:     Defendant Texas Department of Criminal Justice's Responses to Plaintiffs'  21-34
               First Set of Requests for Production, Request for Admissions and
               Interrogatories" dated December 2012

Exhibit 5:     Defendant Texas Department of Criminal Justice's Responses to Plaintiff     35-52
               Stephen McCollum's Second Request for Production, Interrogatories, and
               Admissions dated February 2013

Exhibit 6:     Defendant Texas Department of Criminal Justice's Responses to Plaintiff     53-57
               Sandra McCollum's Fifth Set of Requests for Production and Admissions
               dated July 2013

Exhibit 7:     Brad Livingston's Responses to Interrogatories in Webb v. Livingston     58-65

Exhibit 8:     Brad Livingston's Responses to Interrogatories in Togonidze v. Livingston   66-72

Exhibit 9:     Brad Livingston's Responses to Interrogatories in Adams v. Livingston     73-79

Exhibit 10:    William Stephens Deposition Transcript     80-118

Exhibit 11:     Rick Thaler Deposition Transcript     119-187

| Case Style | | Served or Ordered to answer? | MTD Mr. Livingston Filed | MTD Ruled Upon? | Granted or Denied |
|---|---|---|---|---|---|
| Howard, Alex JaRaun v. Asst. Warden Brian P. Blanchard, et al | 613CV0327 | Not yet served | | | |
| Johnson, Wilbert v. John Rupert, et al | 611CV0446 | Yes | Yes | Yes | Granted |
| Hinojosa, Ramona, Individually as a wrongful death beneficiary and as heir to the estate of Albert Hinojosa v. Brad Livingston, TDCJ, UTMB, et al | 213CV0319 | Yes | Yes | No | |
| Webb, Kevin Ind & as rep of Estate of Robert Allen Webb, Edna Webb and Casey Akins, Ind. as heirs at law v. Brad Livingston, et al | 613CV0711 | Yes | Yes | Yes | No |
| Martone, Roxanne, individually & as heir at law to the Estate of Michael Martone v. Brad Livingston, Rick Thaler, et al | 413CV3369 | Yes | Yes | No | |
| Sheppard, Curtis Lee v. Brad Livingston, et al | 112CV00169 | Yes | No | | |
| Strickland, Garry Wayne v. TDCJ, et al | 310CV0411 | Yes | Yes | No | |
| Whitaker, Thomas, Perry Williams, and Micheal Yowell v. Brad Livingston, William Stephens, et al | 413CV2901 | Yes | Yes | | |
| Baker, Steve v. TDCJ, et al | 412CV2241 | Yes | Yes | No | |
| Samuels, Will Adrian v. Warden Frankie Reescano, et al | H122543 | Yes | No | | |
| Brewer, Jindarat v. Brad Livingston, et al. | 413CV1161 | Yes | Yes | Yes | Yes |
| Toney, Michael Scott v. Rissie Owens, et al | 112CV0313 | Yes | No | | |
| Walters, Mark v. Brad Livingston | 112CV1072 | Yes | No | | |
| Olivera, Michelle v. TDCJ, et al | 2012DCV04062 | No | | | |
| Chance, William E. Jr. v. TDCJ, et al. | 611CV0435 | Yes | No | | |
| Scott, William Ernest v. Bill Pierce, et al | H093991 | Yes | No | | |
| Etheridge, Linda v. Brad Livingston, et al | 313CV2678 | Yes | Yes, 11/19/13 | | No |
| Mitchell, Amarylis v. TDCJ | 26648 | Yes | No | | |
| Tolleson, Ted R. v. Brad Livingston, et al | 212CV0201 | Yes | Yes, 5/10/13 (2nd MTD) | Yes | No |
| Eubanks, Donald R. v. Kokila Naik, et al | 311CV0432 | Yes | Yes (10/25/11 | Yes | Yes |
| Walker, Mary, et al v. Institutional Division of TDCJ, et al | H080530 | Yes | Yes | Yes | No |
| Gunter, Joshua v. Oliver Bell, et al. | 112CV0193 | Yes | Yes | Yes | Yes |
| Strong, Tabari S. v. Brad Livingston, et al | 212CV0106 | Yes | Yes | No | |

APPENDIX2

| | | | | | |
|---|---|---|---|---|---|
| Hickman-Bey, Kenneth v. Chairman & the Board of Criminal Justice, et al | 213CV0266 | Yes | No | | |
| McCollum, Stephen, et al.  v. Brad Livingston, et al. | 312CV2037 | Yes | Yes | No | |
| Togonidze, Gwen as Next Friend of J.T., a Minor v. Brad Livingston, et al. | 313CV0229 | Yes | Yes | No | |
| Wolf, David Paul v. TDCJ, et al | 412CV2424 | Yes | No | | |
| Adams, Ashley; James, Carlette Hunter;  & Hudson, Cade, et al v. Brad Livingston, et al | 613CV0217 | Yes | Yes | No | |
| Walters, Mark, et al v. Brad Livingston | D1GN13002356 | Yes | No | | |

APPENDIX3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Stephanie McCollum, *et al.*, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-02037 |
| | § | |
| Brad Livingston, *et al.*, | § | |
| Defendants. | § | JURY DEMAND |

### DEFENDANT BRAD LIVINGSTON'S RESPONSES TO PLAINTIFF STEPHEN McCOLLUM'S FIRST SET OF REQUESTS FOR PRODUCTION AND INTERROGATORIES

**TO:**   Jeff Edwards, The Edward Law Firm, The Bremond Houston House, 706 Guadalupe, Austin, Texas 78701; Scott Medlock, Brian McGiverin, James C. Harrington, Texas Civil Rights Project, 1405 Montopolis Drive, Austin, Texas 78741; and Eliot Shavin, 2600 State Street, Dallas, Texas 75204

COMES NOW the Defendant, Brad Livingston, by and through counsel, the Texas Attorney

General's Office, and offers the following **Defendant Brad Livingston's Responses to Plaintiff**

**Stephen McCollum's First Set of Requests for Production and Interrogatories**.

Respectfully submitted,

**GREG ABBOTT**
Attorney General of Texas

**DANIEL T. HODGE**
First Assistant Attorney General

**DAVID C. MATTAX**
Deputy Attorney General for Defense Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division

APPENDIX4

**BRUCE R. GARCIA**
Assistant Attorney General
Attorney in Charge
State Bar No.  07631060
So. Dist. Bar No. 18934

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080 / Fax (512) 495-9139

**ATTORNEYS FOR DEFENDANTS**
**TEXAS DEPARTMENT OF CRIMINAL**
**JUSTICE, BRAD LIVINGSTON AND JEFF**
**PRINGLE**

## CERTIFICATE OF SERVICE

I, **BRUCE R. GARCIA,** Assistant Attorney General of Texas, do hereby certify that a true

and correct copy of the above and foregoing **Defendant Brad Livingston's Responses to Plaintiff**

**Stephen McCollum's First Set of Requests for Production and Interrogatories** has been served

by courier services on this the 21st day of December, 2012 addressed to:

Jeff Edwards
The Edwards Law Firm
The Bremond Houston House
706 Guadalupe
Austin, Texas 78701

Scott Medlock
Texas Civil Rights Project
1405 Montopolis Drive
Austin, Texas 78741

Eliot Shavin
2600 State Street
Dallas, Texas 75204

**BRUCE R. GARCIA**
Assistant Attorney General

-2-

APPENDIX5

## FIRST SET OF INTERROGATORIES

1.    Identify all steps you took to protect Larry McCollum from heat index temperatures in the Hutchins Unit in excess of 90 degrees.

**RESPONSE**: I did not know Larry McCollum.  .

2.    Identify all heat-related injuries (refer to definition paragraph R) to inmates in Texas Department of Criminal Justice facilities at any TDCJ unit you were aware of during your employment with TDCJ.

**RESPONSE**: Objection, overly broad and unduly burdensome, not limited in time or scope, seeks information that is privileged under HIPAA.  Subject to and without waiving, I cannot recall any specific offenders illnesses.

3.    Identify all heat-related injuries to employees of the Texas Department of Criminal Justice working in Texas Department of Criminal Justice facilities at any TDCJ unit during the term of your employment. including, but not limited to, injuries where employees filed workers compensation claims.

**RESPONSE**: Objection, overly broad and unduly burdensome, not limited in time or scope, seeks information that is privileged under HIPAA. Subject to and without waiving, I cannot recall any specific officers illnesses and the heat as a specific cause.  .

4.    Identify all training you received about heat safety during your employment at the Texas Department of Criminal Justice.

**RESPONSE**:

5.    Identify all persons who you believe have knowledge of relevant facts and identify the issues upon which you believe they have knowledge. A response to this interrogatory should include. but is not limited to. all prisoners housed in the dorm with Larry McCollum on July 22, 2011 and July 23, 2011.

-3-

**RESPONSE**:  Defendant will supplement.

6.      If you contend that some other person or legal entity is. in whole or in part. liable to Plaintiff in this matter. identify that person or legal entity and describe in detail the basis of said liability.

**RESPONSE**:  None at this time.

7.      Please identify each person who provided information or assisted in any way in answering these interrogatories. and as to each such person. please indicate the discovery request with respect to which he or she was involved.

**RESPONSE**:  My attorneys assisted me.

8.      Please identify all persons that Defendant expects to call to testify on Defendant's behalf at trial.

**RESPONSE**:  Defendant will supplement.

9.      Please identify the names and. if known. the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--you may use to support your claims or defenses.

**RESPONSE**:  Defendant will supplement.

## REQUESTS FOR PRODUCTION

1.      Please produce all documents or other physical or tangible evidence related to, referred to, identified in,  or that formed the basis of any answer to the previous interrogatories, identifying the specific interrogatory to which that document or evidence is related.

-4-

**RESPONSE**: Objection, overly broad and unduly burdensome.  Subject to and without waiving, please see defendant's disclosures, and responses to plaintiff's requests for production.

2.      Please produce all documents, including. but not limited to inmate grievances and correspondence from state officials, you reviewed prior to July 22, 2011 regarding heat and/or high temperatures in TDCJ facilities, including, but not limited to, inmate grievances regarding conditions at the Hutchins Unit.

**RESPONSE**: Objection, overly broad and unduly burdensome,  not limited in scope or time. Subject to and without waiving, please see attached Hutchins unit grievance

3.      Please produce all documents you intend to introduce as exhibits at trial.

**RESPONSE**: Defendant will supplement per the Federal Rules of Civil Procedure and the scheduling order entered into by the parties in this matter.

4.      Please produce a copy of all documents. electronically stored information. and tangible things that you have in your possession, custody, or control and may use to support your claims or defenses.

**RESPONSE**: Objection, overly broad, not limited in scope, time or particularity.  Subject to and without waiving, Defendant will supplement per the Federal Rules of Civil Procedure and the scheduling order entered into by the parties in this matter.

APPENDIX8

## VERIFICATION

STATE OF TEXAS                            §
                                         §
COUNTY OF WALKER                          §

BEFORE ME, the undersigned authority, on this day personally appeared Brad

Livingston, who, being personally known to me, after being duly sworn upon his oath deposed

and stated that the foregoing responses to interrogatories in *McCollum v. Livingston*, Civil Action

No. 3:12cv02037, are true, correct and complete to the best of his knowledge; and he is

authorized to execute this verification.

Brad Livingston
Executive Director
Texas Department of Criminal Justice

BEFORE ME, the undersigned authority, on this day personally appeared Brad

Livingston known personally to me to be the person subscribed in the foregoing instrument.

Given under my hand and seal of office on this _18_ day of December, 2012.

Notary Public in and for the State of Texas

Angela Moore
Printed Name

My Commission Expires: _July 23, 2013_

ANGELA L MOORE
NOTARY PUBLIC - STATE OF TEXAS
MY COMMISSION EXPIRES
JULY 23, 2013

APPENDIX9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| Stephanie McCollum, *et al.*, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-02037 |
| | § | |
| Brad Livingston, *et al.*, | § | |
| Defendants. | § | **JURY DEMAND** |

### DEFENDANT BRAD LIVINGSTON'S RESPONSES TO PLAINTIFF SANDRA McCOLLUM'S FIRST SET OF REQUESTS FOR ADMISSION, REQUESTS FOR PRODUCTION AND INTERROGATORIES

TO:   Jeff Edwards, The Edward Law Firm, The Bremond Houston House, 706 Guadalupe, Austin, Texas 78701; Scott Medlock, Brian McGiverin, James C. Harrington, Texas Civil Rights Project, 1405 Montopolis Drive, Austin, Texas 78741; and Eliot Shavin, 2600 State Street, Dallas, Texas 75204

COMES NOW the Defendant, Brad Livingston, by and through counsel, the Texas Attorney General's Office, and offers the following **Defendant Brad Livingston's Responses to Plaintiff Sandra McCollum's First Set of Requests for Admission, Requests for Production and Interrogatories**.

Respectfully submitted,

**GREG ABBOTT**
Attorney General of Texas

**DANIEL T. HODGE**
First Assistant Attorney General

**DAVID C. MATTAX**
Deputy Attorney General for Defense Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division

**BRUCE R. GARCIA**
Assistant Attorney General
Attorney in Charge
State Bar No. 07631060

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080 / Fax (512) 495-9139

**ATTORNEYS FOR DEFENDANTS TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,
BRAD LIVINGSTON AND JEFF PRINGLE**

## CERTIFICATE OF SERVICE

I, **BRUCE R. GARCIA**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Defendant Brad Livingston's Responses to Plaintiff Sandra McCollum's First Set of Requests for Admission, Requests for Production and Interrogatories** has been served by placing same in the United States Mail, postage prepaid, on March 25, 2013 addressed to:

Jeff Edwards
The Edwards Law Firm
The Bremond Houston House
706 Guadalupe
Austin, Texas 78701

Scott Medlock
Texas Civil Rights Project
1405 Montopolis Drive
Austin, Texas 78741

Eliot Shavin
2600 State Street
Dallas, Texas 75204

**BRUCE R. GARCIA**
Assistant Attorney General

–2–

## FIRST SET OF INTERROGATORIES

1.      Identify all steps you took to protect inmates in TDCJ facilities from heat indexes above 90 degrees from January 1, 2007 to present.

**RESPONSE:  OBJECTION, Over broad and not reasonably limited in scope or time.  For steps taken to protect inmates at the Hutchins State Jail from heat indexes above 90 degrees from January 1, 2009 to present see documents previously produced in accordance with Plaintiffs' previous requests for production and deposition testimony of Warden Jeff Pringle.**

**See also heat safety training and circulars produced in response to Plaintiff Stephen McCollum's First Request for Production to TDCJ, numbers 3-5.**

**Subject to the previous answers and without waiving all previous objections,**

**The Agency takes the following measures.  Each year in April, the Agency has mandatory heat precaution training for all staff and offenders.  Each shift supervisor was instructed to discuss heat awareness and warning signs at shift turn outs during the summer months.  Heat awareness, warning signs, and hydration memos were placed throughout the facility for staff and offenders. Shower temperatures were lowered and showers times were extended.  Water coolers with ice were place in the dorms during summer months. Water is made available during meal times.  Staff was instructed that offenders identified or requested relief from the heat were allowed to sit in cooler areas.  Work shifts are reduced or cancelled and offenders are allowed to wear less clothing in the housing areas.  Allowing fans in all custody levels, permitting offenders to purchase a fan if they do not have one, and ensuring a program is in place allowing the permanent issue of a fan to an offender who is indigent with priority to offenders with significant medical needs that are negatively impacted by the heat. Air flow and fresh air exchange is increased to assist in the movement of air.  The procedures are reviewed continually by TDCJ staff.**

2.      Identify all people you discussed heat, high temperatures, heat indexes, or air conditioning in inmate housing areas in TDCJ facilities with from January 1, 2007 to the present.

**RESPONSE: Objection, over broad as to time.  From 2009 to present I have  had periodic discussions concerning high temperatures in inmate housing areas in TDCJ facilities with Jeff Baldwin, Rick Thaler, Jerry McGinty, Jackie Edwards, Oscar Mendoza, Dr. Lanette Linthicum and Bryan Collier.**

3.      Identify all people you consulted or conferred with before writing your August 16, 2011 letter to Rep. Sylvester Turner (Plaintiffs' Bates Nos. 000026-27). If you did not write the letter, please identify who did.

**RESPONSE: The letter was drafted by Jeff Baldwin, with assistance from Jerry McGinty and Rick Thaler.**

4.      Identify all people who authored, developed, consulted on, conferred about or otherwise contributed to drafting Administrative Directive AD-10.64 (rev. 5) (Sept. 19, 2006): Temperature Extremes in the TDCJ Workplace (Bates Nos. TDCJ – RFP #3 – 6-13).

**RESPONSE:  I have no personal knowledge of who authored, developed, consulted on, conferred about or contributed to drafting Administrative Directive AD-10.64 (rev. 5). The Administrative Directive would have been proposed by a division and staffed through all TDCJ division heads in accordance with Executive Directive 01.21 (rev. 4) April 19, 2002, entitled "TDCJ Policies and Procedures System." After review, and resolution of any concerns from division heads, the Administrative Directive would have been staffed through the Deputy Director at the time, Ed Owens, for his or my signature.**

5.      Identify all people who authored, developed, consulted on, conferred about or otherwise contributed to drafting Correctional Managed Health Care Policy Manual B-15.2 (Revised 11/07).

**RESPONSE:  I have no personal knowledge of who drafted Correctional Managed Health Care Policy Manual B-15.2 (Revised 11/07).**

6.      Describe in detail the process for making capital improvements at prisons (including installation of air conditioning). A response to this interrogatory requires a detailed description of how capital improvements are approved, including whose approval is required before capital improvements are made.

For purposes of this interrogatory, "capital improvements" includes any new construction, and any additions to existing structures beyond normal maintenance and repair.

**RESPONSE: Objection, over broad in scope.  See attached Executive Directive 10.06 (rev. 4), February 27, 2004, entitled, "Construction, Maintenance, Renovation, or Alteration of TDCJ Facilities."**

7.      Describe in detail any process for making sure conditions in TDCJ facilities satisfy constitutional minimums.

**RESPONSE:  Objection overbroad and undue burden, vague as to the term "constitutional minimums," not reasonably limited in scope or time, and not calculated to lead to the discovery of admissible evidence.   Without further clarification from plaintiff regarding what "conditions" they are referring to, defendant cannot answer this interrogatory.**

8.      Identify any changes made to TDCJ operations related to heat or extreme temperatures after Gates v. Cook , 528 F.3d 323 (5th Cir. 2004).

**RESPONSE: OBJECTION, vague. The interrogatory does not specify if TDCJ made changes pursuant to *Gates v. Cook* or simply made changes after 2004.   The interrogatory does not specify how *Gates v. Cook* would require changes to be made in TDCJ operations.**

**Subject to and without waiving, TDCJ annually reviews agency practices related to heat and extreme temperatures.  See training, circulars, and policies produced pursuant to Plaintiffs' previous requests for production.  One of the approved injunctions in *Gates v. Cook*, to provide fans, ice water, and daily showers in Mississippi prisons, were already in place when I became Executive Director in 2004.**

9.      Identify any changes made to TDCJ operations related to heat or extreme temperatures after Valigura v. Mendoza, 265 Fed. App'x. 232 (5th Cir. 2008).

**RESPONSE: OBJECTION, vague in regards to "after." The interrogatory does not specify if TDCJ made changes pursuant to *Valigura v. Mendoza* or simply after 2008. The interrogatory also fails to specify what changes, if any, *Valigura v. Mendoza* required TDCJ to make. Plaintiffs should clarify how *Valigura v. Mendoza*, 265 Fed. App'x. 232 (5th Cir. 2008), an unpublished per curiam decision of the Fifth Circuit to affirm the lower court's denial of TDCJ employees' motion for summary judgment, should impact TDCJ operations, particularly in light of the facts that the *Valigura v. Mendoza* Fifth Circuit decision did not specify any changes to be made to TDCJ operations, and the TDCJ employee defendants subsequently won their case at trial.**

**Subject to and without waiving, TDCJ annually reviews agency practices related to heat and extreme temperatures.  See training, circulars, and policies produced pursuant to Plaintiffs' previous requests for production.  No changes to TDCJ operations were made pursuant to the Fifth Circuit opinion in *Valigura v. Mendoza*, 265 Fed. App'x. 232 (5th Cir. 2008).**

10.      Identify any changes made to TDCJ operations related to heat or extreme temperatures after Blackmon v. Kukua, No. 11-40316 (5th Cir. July 30, 2012).

**RESPONSE: OBJECTION, vague in regards to "after." The interrogatory does not specify if TDCJ made changes pursuant to *Blackmon v. Kukua* or simply after 2008. The interrogatory also fails to specify what changes, if any, *Blackmon v. Kukua* required TDCJ to make. Furthermore, the Fifth Circuit in *Blackmon v. Kukua*, a per curiam unpublished decision to reverse and remand a lower court's awarding of a directed verdict to TDCJ employee defendants, specifically did not suggest that the remedial measures required by the *Gates* court are insufficient to address the risks of high heat and humidity, or, in *dictum*, that air conditioning is mandatory to meet the requirements of the *Eighth Amendment*. To the contrary, the Fifth Circuit merely held that there was a factual dispute between plaintiffs and**

–5–

defendants that the *Gates* remedial measures were fully implemented which created an issue of fact that ought to have been decided by a jury, and not by a judge with a directed verdict.

Subject to and without waiving, TDCJ annually reviews agency practices related to heat and extreme temperatures. See training, circulars, and policies produced pursuant to Plaintiffs' previous requests for production. No changes to TDCJ operations were made pursuant to the Fifth Circuit opinion in *Blackmon v. Kukua*, No. 11-40316 (5th Cir. July 30, 2012).

11.     Describe in detail how your signature arrived on the bottom of Administrative Directive AD-10.64 (rev. 5) (Sept. 19, 2006): Temperature Extremes in the TDCJ Workplace (Bates Nos. TDCJ – RFP #3 – 6-13).

RESPONSE: The Administrative Directive would have been presented to me in accordance with Executive Directive 01.21 (rev. 4) April 19, 2002, entitled "TDCJ Policies and Procedures System." It is TDCJ policy that the Executive Director or Deputy Executive Director will be the signature authority for all Administrative Directives.

TDCJ has 149 Administrative Directives and 41 Executive Directives which bear either my or the Deputy Director's signature.  For perspective, in 2006 alone I signed 42 other Administrative Directives and Executive Directives.

12.     Identify who was the director of the TDCJ Institutional Division for past 10 years.

RESPONSE: The TDCJ Institutional Division has not existed since 2003, when it was merged with the Operations Division, Private Facilities Division, and the State Jail Division to create the Correctional Institutions Division.  The current director of the TDCJ Correctional Institutions Division is Rick Thaler.  He has been the director since 2009.

13.     Identify all TDCJ policies that protect prisoners from heat in housing areas.

RESPONSE:  OBJECTION, overly broad, as to subject and undu burden as plaintiff as repeatedly requested and obtained this information.  Subject to and without waiving:

For steps taken to protect inmates at the Hutchins State Jail from heat housing areas at the Hutchins State Jail housing areas see documents previously produced in accordance with Plaintiff Stephen McCollum's First Request for Production to Defendant Texas Department of Criminal Justice, number 3-5, and Warden Pringle's deposition.

–6–

## REQUESTS FOR PRODUCTION

1.      Please produce all correspondence with Texas legislators about heat, high temperatures, heat indexes, or air conditioning in TDCJ facilities from January 1, 2007 to present.

**RESPONSE: Objection overbroad undue burden and not reasonably limited in scope or time. Subject to and without waiving, see attached correspondence with Texas legislators about heat, high temperatures, heat indexes, or air conditioning in TDCJ facilities from January 1, 2009 to present.**

2.      Please produce all communications you personally reviewed about air conditioning in TDCJ facilities from January 1, 2007 to present.

**RESPONSE: Objection, overbroad undue burden and not reasonably limited in scope or time. Subject to and without waiving, I have not reviewed any correspondence about air conditioning the Hutchins State Jail from January 1, 2009 to present.**

3.      Please produce all documents you reviewed about any heat-related injuries to prisoners in TDCJ facilities from January 1, 2007 to present.

**RESPONSE: Objection, overbroad undue burden and not reasonably limited in scope or time. Subject to and without waiving, I have no records about any heat-related injuries to prisoners at the Hutchins State Jail from January 1, 2009 to present.**

4.      Please produce all documents you reviewed about any heat-related workplace injuries to TDCJ employees from January 1, 2007 to present.

**RESPONSE: Objection, overbroad undue burden and not reasonably limited in scope or time. Subject to and without waiving, I have no records of any documents related to heat-related workplace injuries to TDCJ employees at the Hutchins Unit from January 1, 2009 to present.**

5.      Please produce a copy of your calendar from June 1, 2011 to August 31, 2011.

**RESPONSE: Objection, overbroad undue burden, and not calculated to lead to the discovery of admissible or relevant evidence.**

6.      Please produce a copy of your resume or curriculum vitae.

**RESPONSE:  Objection, undue burden, and plaintiff is seeking documents that have no relevance to the issues before this Court.**

APPENDIX16

## REQUESTS FOR ADMISSION

1.      Prisons are constitutionally required to protect prisoners from extreme temperatures.

**RESPONSE: Objection, vague and overbroad and calls for a legal conclusion. Subject to and without waiving, DENY as to, "Prisons are constitutionally required to protect prisoners from extreme temperatures." ADMIT to, "prisoners are to be protected from conditions determined to be cruel and unusual punishment under the 8th Amendment."**

2.      You are responsible for the operation of all TDCJ facilities.

**RESPONSE: OBJECTION.   Vague.   Subject to and without waiving, ADMIT to, "the authority to administer, organize, manage, and supervise the daily operations of the TDCJ is delegated to the executive director who may, in turn, further delegate this authority to staff as appropriate."**

3.      You were aware TDCJ housed prisoners in buildings that were not air conditioned in the summer of 2011.

**RESPONSE: OBJECTION, vague as the term "air conditioned" is not defined.  Subject to and without waiving, ADMIT to, "I was aware that TDCJ housed prisoners in buildings that did not have the air cooled by air conditioners with a refrigeration cycle in the summer of 2011."**

4.      You were aware TDCJ housed prisoners in buildings that were not air conditioned at the Hutchins Unit in the summer of 2011.

**RESPONSE: OBJECTION, the term "air conditioned" is not defined.  CANNOT ADMIT OR DENY.  ADMIT to "I was aware that TDCJ housed prisoners in buildings that did not have the air cooled by air conditioners with a refrigeration cycle at the Hutchins Unit in the summer of 2011."**

5.      You were aware in the summer of 2011 that during prolonged heat waves the risk of heat-related illnesses increases.

**RESPONSE: OBJECTION, vague, and overbroad as to the term "heat related illnesses."  Subject to and without waiving, ADMIT to, "during extended periods of extremely high temperatures, without precautions, an individual may experience medical issues, up to and including death."**

6.      You were aware in the summer of 2011 that during prolonged heat waves increase the risk of heat-related death.

–8–

**RESPONSE: OBJECTION, vague and overbroad as to the terms "prolonged heat waves" and "heat related death." Subject to and without waiving, ADMIT to, "during extended periods of extremely high temperatures, without precautions, an individual may experience medical issues, up to and including death."**

7.      You were aware in the summer of 2011 that high temperatures can cause death.

**RESPONSE: OBJECTION, vague and overbroad, the term "high temperatures" is not defined.**

8.      You were aware in the summer of 2011 that certain medical conditions increase a person's risk of suffering heat-related illnesses.

**RESPONSE: OBJECTION, vague, and overbroad as to the terms "certain medical conditions" and "heat related illnesses." Subject to and without waiving, ADMIT to, "during extended periods of extremely high temperatures that without precautions an individual may experience medical issues, up to and including death."**

9.      You were aware in the summer of 2011 that certain medical conditions increase a person's risk of heat-related death.

**RESPONSE: OBJECTION, vague, and overbroad as to the term "certain medical conditions" and  "heat related death." Subject to and without waiving, ADMIT to, "during extended periods of extremely high temperatures that without precautions an individual may experience medical issues, up to and including death." DENY as to, "I was aware that 'certain medical conditions' increased a person's risk of death specifically relating to the summer of 2011."**

10.      You were aware in the summer of 2011 that prisoners in TDCJ custody have hypertension.

**RESPONSE: OBJECTION, vague and overbroad. Subject to and without waiving, ADMIT to, "in the summer of 2011 I was aware that among the approximately 150,000 prisoners in TDCJ custody, some may have hypertension, but I have no personal knowledge as to any specific prisoners."**

11.      You were ware in the summer of 2011 that prisoners in TDCJ custody have diabetes.

**RESPONSE: OBJECTION, vague and overbroad. Subject to and without waiving, ADMIT to, "in the summer of 2011 I was aware that among the approximately 150,000 prisoners in TDCJ custody, some may have diabetes, but I have no personal knowledge as to any specific prisoners."**

12.      You are familiar with policies and procedures you have signed.

–9–

**RESPONSE: OBJECTION, vague to the term "familiar." Subject to and without waiving, ADMIT.**

13. You were aware TDCJ had no written policy in July 2011 regarding housing prisoners during periods of extreme temperatures.

**RESPONSE: OBJECTION, vague to the terms "policy" and "housing prisoners." Subject to and without further information, DENY.**

14.     You were aware temperatures in Texas routinely exceeded 100 degrees Fahrenheit in the summer of 2011.

**RESPONSE: OBJECTION, vague to the term "routinely." Subject to and without waiving, ADMIT to, "I was aware that temperatures in Texas reached 100 degrees a number of times in the summer of 2011."**

15.     Your office is air conditioned.

**RESPONSE: OBJECTION, vague as the term "air conditioned" is not defined. Subject to and without waiving, ADMIT to, "My office has its air cooled by air conditioners with a refrigeration cycle."**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| Stephanie McCollum, *et al.*, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-02037 |
| | § | |
| Brad Livingston, *et al.*, | § | |
| Defendants. | § | JURY DEMAND |

## VERIFICATION

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF | § |

BEFORE ME, the undersigned notary public, on this day personally appeared **BRAD LIVINGSTON**, who after being duly sworn, stated under oath that he has knowledge of the foregoing Answers contained in **Defendant Brad Livingston's Responses to Plaintiff Sandra McCollum's First Set of Requests for Interrogatories**, that he is duly authorized to execute this verification, and that all of such answers are true and correct.

BRAD LIVINGSTON

SWORN TO and SUBSCRIBED before me by *Brad Livingston*

on *March 22*, 2013.

Notary Public in and for the State of Texas

ANGELA L MOORE
NOTARY PUBLIC - STATE OF TEXAS
MY COMMISSION EXPIRES
JULY 23, 2013

My Commission Expires: *July 23, 2013*

–11–

APPENDIX20

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Stephanie McCollum, *et al.*, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-02037 |
| | § | |
| Brad Livingston, *et al.*, | § | |
| Defendants. | § | **JURY DEMAND** |

**DEFENDANT TEXAS DEPARTMENT OF CRIMINAL JUSTICE'S RESPONSES
TO PLAINTIFFS' REQUESTS FOR PRODUCTION AND INTERROGATORIES**

**TO:**  Jeff Edwards, The Edward Law Firm, The Bremond Houston House, 706 Guadalupe, Austin, Texas 78701; Scott Medlock, Brian McGiverin, James C. Harrington, Texas Civil Rights Project, 1405 Montopolis Drive, Austin, Texas 78741; and Eliot Shavin, 2600 State Street, Dallas, Texas 75204

COMES NOW the Defendant, Texas Department of Criminal Justice, by and through counsel, the Texas Attorney General's Office, and offers the following **Defendant Texas Department of Criminal Justice's Responses to Plaintiffs' Requests for Production and Interrogatories**.

Respectfully submitted,

**GREG ABBOTT**
Attorney General of Texas

**DANIEL T. HODGE**
First Assistant Attorney General

**DAVID C. MATTAX**
Deputy Attorney General for Defense Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division

APPENDIX21

**BRUCE R. GARCIA**
Assistant Attorney General
Attorney in Charge
State Bar No.  07631060
So. Dist. Bar No. 18934

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080 / Fax (512) 495-9139

**ATTORNEYS FOR DEFENDANTS
TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, BRAD LIVINGSTON AND JEFF
PRINGLE**

## CERTIFICATE OF SERVICE

I, **BRUCE R. GARCIA,** Assistant Attorney General of Texas, do hereby certify that a true

and correct copy of the above and foregoing **Defendant Texas Department of Criminal Justice's**

**Responses to Plaintiff's First Set of Requests for Production and Interrogatories** has been

served by courier service on this the 21st day of December 2012 addressed to:

Jeff Edwards
The Edwards Law Firm
The Bremond Houston House
706 Guadalupe
Austin, Texas 78701

Scott Medlock
Texas Civil Rights Project
1405 Montopolis Drive
Austin, Texas 78741

Eliot Shavin
2600 State Street
Dallas, Texas 75204

**BRUCE R. GARCIA**
Assistant Attorney General

-2-

## FIRST SET OF INTERROGATORIES

1.      Identify all steps you took to protect Larry McCollum from heat index temperatures in the Hutchins Unit in excess of 90 degrees.

RESPONSE:   Each year in April the Agency has mandatory heat precaution training for all staff and offenders.  Each shift supervisor was instructed to discuss heat awareness and warning signs at shift turn outs during the summer months.  Heat awareness, warning signs, and hydration memos were placed throughout the facility for staff and offenders. Shower temperatures were lowered and showers times were extended. Water coolers with ice were place in the dorms during summer months. Staff was instructed that offenders identified or requested relief from the heat were allowed to sit in cooler areas.

See also attached heat safety training and circulars produced with Request for Production 3-5.

.

2.      Identify all heat-related injuries (including, but not limited to, fatalities, where the cause of death is listed as "hyperthermia") of inmates in Texas Department of Criminal Justice facilities between January 1, 1990 to the present.

RESPONSE   Objection, overly broad and unduly burdensome, not limited in time or scope, Defendant further objects to the extent this seeks medical information privileged under HIPAA.
Subject to and without waiving between fiscal year 2008 to present, there have been three offender heat-related injuries in the Hutchins State Jail.  The first was in June of 2009, the second in July of 2011 to Larry Gene McCollum, and the third was in June of 2012.

.

3.      Identify all heat-related injuries (refer to definition paragraph R) to inmates in Texas Department of Criminal Justice facilities between January 1, 1990 to the present.

**RESPONSE**:  See response to TDCJ Interrogatory No. 2

3.      Identify all heat-related injuries to inmates in the Hutchins Unit between January 1, 2002 to the present.

**RESPONSE**:  See response to TDCj Interrogatory No. 2.

-3-

4.      Identify all heat-related injuries to employees of the Texas Department of Criminal
        Justice working in Texas Department of Criminal Justice facilities between January 1,
        2002 to the present, including, hut not limited to, injuries where employees filed workers
        compensation claims.

**RESPONSE**:   Objection, overly broad, unduly burdensome and not reasonably limited in time or
                scope.  Defendants also object to the extent Plaintiff's interrogatory seeks medical
                information protected by  HIPPA.  Subject to and without waiving:

                From fiscal year 2008 to present there have been seven employee heat-related
                injuries at the Hutchins State Jail.  Three occurred in 2009, two in 2010 and two
                in 2012, five filed workers' compensation claims.

5.      Identify all heat-related injuries to employees of the Texas Department of Criminal
        Justice in the Hutchins Unit between January l, 2002 to the present, including, but not
        limited to,  injuries where employees filed workers compensation claims.

**RESPONSE**:   See TDCJ response to Interrogatory No. 4.

6.      Describe in detail why all inmate housing areas at the Hutchins Unit are not air
        conditioned,  identifying all people responsible for decisions not to air condition any part
        of the Hutchins Unit.

**RESPONSE**:   Objection, overly broad, unduly burdensome and not calculated to lead to the
                discovery of relevant or admissible evidence.  The Hutchins unit was constructed
                in the mid 1990's All decisions made regarding these issues were made in the
                1990's, by former administrators.

7.      Identify all persons who authorized Larry McCollum's placement in each housing area he
        spent time in during his 2011 incarceration at the Hutchins Unit and describe in detail the
        basis for each placement. A response to this interrogatory should identify each location
        Larry McCollum was housed, including building, bunk number, and whether he was
        assigned to an upper or lower bunk.

**RESPONSE**:  Please see memo from P. Escobedo regarding housing and bunk assignments.

-4-

8.      Identify all persons who you believe have knowledge of relevant facts and identify the issues upon which you believe they have knowledge. A response to this interrogatory should include, but is not limited to, all prisoners housed in the dorm with Larry McCollum on July 22, 2011 and July 23, 2011.


**RESPONSE**:  Please see Defendant's initial disclosure.  In addition, Defendants have ordered and will supplement with the Office of Inspector General Investigation. See attached dorm roster for July 21, 2011, Hutchins State Jail shift rosters for June and July 2011, and the reports produced in response to Request for Production 22.


9.      If you contend that some other person or legal entity is, in whole or in part, liable to Plaintiff in this matter, identify that person or legal entity and describe in detail the basis of said liability.


**RESPONSE**:  Unknown at this time, should another responsible party become apparent, Defendants will supplement.


10.     Please describe in detail all steps that you have taken to bring the Hutchins Unit into compliance with the Americans with Disabilities Act and the Rehabilitation Act. Please include information about what modifications (if any) have been made at the prison, whether a transition plan and self-evaluation have been completed (as those terms are used in the ADA), and what services and programs at the jail exist to accommodate inmates' disabilities.


**RESPONSE**: Objection, overly broad, unduly burdensome, not limited in time or scope and not reasonably calculated to lead to the discovery or admissible evidence.  In addition this interrogatory is vague and overbroad as to the term "inmate disabilities".  Subject to and without waiving, please see TDCJ's response to Request for Production No.25.


11.     Please identify each person who provided information or assisted in any way in answering these interrogatories, and as to each such person, please indicate the discovery request with respect to which he or she was involved.


RESPONSE:   Warden Jeff Pringle, Interrogatory 1, 7, 8, 12, 14,

-5-

Robert Warren, Risk Management Division, Interrogatories 2-5, 15,
Frank Inmon, Facilities Management, Interrogatory 13

12.   Please identify all persons employed at the Hutchins Unit whose duties included spending time in the dormitories during the summer of 2011, including, but not limited to, sworn law enforcement officers and non-sworn employees.

**RESPONSE**: Objection, overly broad - all employees except administrative duties may require some time in the dormitories.

13.   Please identify who was responsible for construction of the Hutchins Unit, including, but not limited to, the construction firm and any architects involved in the design of the Hutchins Unit. A response to this interrogatory should include information about the design of the ventilation system at the Hutchins Unit.

**RESPONSE**: Objection, overly broad, unduly burdensome, and vague and not calculated to lead to the discovery of admissible or relevant evidence.  Subject to and without waiving:
Architects / Engineers:
Aguirre Associates Inc. - Designed the Ventilation
Latta Technical Services Inc.
Mulhauser McCleary Associates Inc.
HNTB Corporation

14.   Please describe why inmates at the Hutchins Unit were not permitted to use personal fans in 2011.

**RESPONSE**: The dormitories do not have electrical outlets.

15.   Please describe in detail "heat conditions" assigned to prisoners at the Hutchins Unit including, but not limited to, why prisoners are assigned these conditions and what action (if any) TDCJ takes when a prisoner is assigned "heat conditions."

**RESPONSE**: Objection, vague as to the term "heat conditions".  See response to TDCJ request for Production No. 3.

-6-

16.    Please describe in detail all TDCJ policies about what personal property prisoners at the Hutchins unit were allowed to possess in July 2011. A response to this interrogatory should include what items newly-arrived prisoners at the Hutchins Unit are issued on arrival, what items can be purchased from the prison commissary, and when newly-arrived prisoners can purchase items from the commissary.

       RESPONSE: See attached policies, AD 03.72 (rev. 5), "Offender Property," dated September 1, 2002, Offender Orientation Handbook, dated November 2004).

17.    Please identity all persons that Defendant expects to call to testify on Defendant's behalf at trial.

**RESPONSE**:  Defendants have made no decisions at this time regarding trial testimony. Defendants will supplement per the Federal Rules of Civil Procedure and the scheduling order.

## REQUESTS FOR PRODUCTION

1.    Please produce all documents or other physical or tangible evidence related to, referred to,  identified in, or that formed the basis of any answer to the previous interrogatories, identifying the specific interrogatory to which that document or evidence is related.

**RESPONSE**:  Objection, overly broad and unduly burdensome.  Please see specific responses for specific document references.

2.    Please produce all documents, including. but not limited to inmate grievances and correspondence from state officials, reviewed by Jeff Pringle or Brad Livingston prior to July 22, 2011 regarding heat and/or high temperatures in TDCJ facilities.

-7-

**RESPONSE**: Objection, overly broad and unduly burdensome, not reasonably limited in scope or time, and vague as to the term "state officials." Subject to and without waiving please see grievances filed on the Hutchins Unit for July, 2010 to the present attached as TDCJ's response to request for production No.2.

3.      Please produce copies of all relevant policy documents governing procedures that were in place during 2011 at the Hutchins Unit related to heat, temperature, or heat index. The request includes any rules or policies governing acceptable temperatures in TDCJ inmate housing areas during the summer months or other periods of high temperatures.

**RESPONSE**: Objection, overly broad and unduly burdensome and this request may include documents protected by the attorney client privilege. Subject to and without waiving, see responses attached as TDCJ's response to request for production No.3 and No.4.

4.      Please produce all documents that describe, or are used in, or are otherwise related to the training of officers at the Hutchins Unit related to high temperatures at the prison prior to July 22. 2011.

**RESPONSE**: Objection, overly broad and unduly burdensome and this request may include documents protected by the attorney client privilege. Subject to and without waiving, see TDCJ's response to request for production No.3 and No.4

5.      Please produce all work orders for the repair of ice machines, fans, ventilation, sinks,  and showers for inmate housing areas at the Hutchins Unit, including, but not limited to, AD84 forms, created from January 1, 2011 to the present.

**RESPONSE**: Objection, overly broad and unduly burdensome. Subject to and without waiving see TDCJ's response to Request for Production No.5.

6.      Please produce all current documents that describe, or are used in, or are otherwise related to the training of officers at the Hutchins Unit related to high temperatures at the prison.

**RESPONSE**: Objection, repetitive, unduly burdensome. See TDCJ previous responses to Request  for production No. 3 and No. 4.

-8-

7.      Please produce all documents related to heat, high temperatures, or heat index related to any training Jeff Pringle or Brad Livingston received from TDCJ prior to July 22. 2011.

**RESPONSE**:  Objection, repetitive, unduly burdensome.  Subject to and without waiving, please see TDCJ responses to Request  No. 3, No. 4. and No. 7.

8.      Please produce all documents Brad Livingston or Jeff Pringle reviewed at any time prior to July 22, 2011 showing any medical treatment any person (including inmates and TDCJ employees) received related to heat-related injuries.

**RESPONSE**:  Objection, overly broad and unduly burdensome not limited in time or scope.  In addition security does not have access to offender medical records.  That information is kept by the medical providers.

9.      Please produce all documents, including any diagrams or pictures, related to the structure and function of any ventilation system (including, but not limited to, the air handlers, and fans) at the Hutchins Unit.

**RESPONSE**:  Objection, overly broad and unduly burdensome and not limited in scope and calls for the creation of a document.

10.     Please produce a diagram of the Hutchins Unit, identifying which portions (if any) of the facility are air conditioned, and any locations where Larry McCollum was housed prior to his death.

**RESPONSE**:  Objection, calls for the creation of a document. Subject to and without waiving, no such document as requested exists.

11.     Please produce a diagram of the dorm to which Larry McCollum was assigned on the date he died. The diagram must include notations of the length of all interior walls.

**RESPONSE**:  Objection Plaintiff is asking for the creation of a document.

12.     Please provide a detailed and complete list of all areas in the Hutchins Unit that are air conditioned.

APPENDIX29

**RESPONSE**: Objection calls for the creation of a document.  Subject to and without waiving, no such list exists.


13.     Please provide a detailed and complete list of all areas in the Hutchins Unit that are NOT air conditioned.


**RESPONSE**: Objection, calls for the creation of a document.  Subject to and without waiving, no such list exists.


14.     Please provide a detailed and complete list of all TDCJ facilities where some or all inmate housing areas are air conditioned. indicating which portions of each facility are air conditioned.


**RESPONSE**: Objection, calls for creation of a document.  Subject to and without waiving, no such document as described or requested exists.


15.     Please provide all medical and infirmary records related to Larry McCollum, while he was incarcerated by TDCJ.


**RESPONSE**: Defendants have ordered all medical information from the contract medical care providers and will supplement.


16.     Please provide all grievances filed by prisoners at the Hutchins Unit related to heat, high temperature, or heat index from January 1. 2007 to the present.


**RESPONSE**: Objection overbroad and unduly burdensome, and repetitive.  Subject to and without waiving, See TDCJ's response to request for production No. 2.


17.     Please provide all grievances filed by prisoners in all TDCJ facilities related to heat. high temperature, or heat index from January 1, 2007 to the present.


**RESPONSE**: Objection, overly board and unduly burdensome, repetitive, not reasonably limited in time or scope, and not calculated to lead to the discovery of admissible


-10-

evidence.  Subject to and without waiving, see TDCJ's response to plaintiffs request for production No.2.

18.     Please produce all purchase orders for ice, ice machines, water, water bottles, water jugs, and fans from the Hutchins Unit from January 1, 2007 to the present.

**RESPONSE**:  Objection, overly board and unduly burdensome, not reasonably limited in time or scope.  Subject to and without waiving, defendant has ordered and will supplement if any documents are responsive.

19.     Please produce all documents related to ventilation design at the Hutchins Unit, including any documents related to ventilation, air conditioning, air flow, and fan placement in inmate housing areas.

**RESPONSE**:  Objection, overbroad and unduly burdensome, not reasonably limited in scope, and vague as to the terms "ventilation design", "air flow" and "fan placement". Subject to and without waiving defendants have ordered and if any documents are responsive, they will supplement.

20.     Please produce all documents related to any decision to not air condition any portion of the Hutchins Unit.

**RESPONSE**:  Objection, overbroad, not reasonably limited in scope or time. Subject to and without waiving, defendants have ordered and if any documents are responsive to this request, will supplement.

21.     Please produce all documents related to any additional water or ice provided to inmates in any location Larry McCollum was housed at the Hutchins Unit during his confinement there.

**RESPONSE**:  See TDCJ's response to request for production No.3.

-11-

22.     Please produce all documents related to any investigation conducted into Larry
        McCollum's death, including, but not limited to, any autopsy, investigation by the TDCJ
        Office of the Inspector General investigation conducted by any other law enforcement
        body (including,  but not limited to the Texas Department of Public Safety) and/or any
        investigation or peer review conducted by the University of Texas Medical Branch (or
        any other entity providing medical care to Larry McCollum).


**RESPONSE**:  Defendant has ordered and will supplement.  The OIG investigation is still open at
               this time.  Defendant objects to the extent this request seeks documents not in the
               Texas Department of Criminal Justice's care custody and control such as a peer
               review from the UTMB or any other entity providing medical care.


23.     Please produce all documents showing temperatures and heat indexes recorded at the
        Hutchins Unit from January 1, 2007 to the present.


**RESPONSE**:  See TDCJ's response to request No.23.


24.     Please produce all documents presented to the Texas Board of Criminal Justice related to
        heat, temperature, heat index, or air conditioning at any TDCJ facility from January 1,
        1990 to the present.


**RESPONSE**:  Objection, overly broad and unduly burdensome, repetitive and not reasonably
               calculated to lead to the discovery of admissible evidence.  In addition, this
               request is not reasonably limited in scope or time.


25.     Please produce all accreditation reports generated by any accrediting bodies since January
        1, 2007 pertaining to the Hutchins Unit.


**RESPONSE**: See attached TDCJ's response to request for production No. 25.


-12-


APPENDIX32

26.   Please produce and separately identify all records related to any disciplinary actions taken against TDCJ personnel since January 1, 2002 for failing to comply with TDCJ policies and/or procedures related to heat, temperature, and/or heat index at the Hutchins Unit.

**RESPONSE**:  Objection, overly broad and unduly burdensome, not reasonably limited in scope or time. Subject to and without waiving, defendants are unaware of any disciplinary actions for failure of a staff member to comply with TDCJ policies regarding heat.

27.   Please produce all audio or video recordings of Larry McCollum.

**RESPONSE**:  No such recordings exist.

APPENDIX33

## VERIFICATION

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF WALKER | § |

**BEFORE ME**, the undersigned authority, on this day personally appeared Brad Livingston, who, being personally known to me, after being duly sworn upon his oath deposed and stated that the foregoing responses to interrogatories in *McCollum v. Livingston*, Civil Action No. 3:12cv02037, are true, correct and complete to the best of his knowledge; and he is authorized to execute this verification.

Brad Livingston
Executive Director
Texas Department of Criminal Justice

**BEFORE ME**, the undersigned authority, on this day personally appeared Brad Livingston known personally to me to be the person subscribed in the foregoing instrument.

Given under my hand and seal of office on this 18th day of December, 2012.

Notary Public in and for the State of Texas

Angela Moore
Printed Name

My Commission Expires: July 23, 2013

ANGELA L MOORE
NOTARY PUBLIC - STATE OF TEXAS
MY COMMISSION EXPIRES
JULY 23, 2013

APPENDIX34



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| Stephanie McCollum, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-02037 |
| | § | |
| Brad Livingston, *et al.*, | § | |
| Defendants. | § | **JURY DEMAND** |

## DEFENDANT TEXAS DEPARTMENT OF CRIMINAL JUSTICE'S RESPONSES TO PLAINTIFF STEPHEN McCOLLUM'S SECOND SET OF REQUESTS FOR PRODUCTION AND INTERROGATORIES AND FIRST SET OF REQUESTS FOR ADMISSIONS

**TO:**   Jeff Edwards, The Edward Law Firm, The Bremond Houston House, 706 Guadalupe, Austin, Texas 78701; Scott Medlock, Brian McGiverin, James C. Harrington, Texas Civil Rights Project, 1405 Montopolis Drive, Austin, Texas 78741; and Eliot Shavin, 2600 State Street, Dallas, Texas 75204

COMES NOW the Defendant, Texas Department of Criminal Justice, by and through counsel, the Texas Attorney General's Office, and offers the following **Defendant Texas Department of Criminal Justice's Responses to Plaintiff Stephen McCollum's Second Set of Requests for Production and Interrogatories and First Set of Requests for Admissions**.

Respectfully submitted,

**GREG ABBOTT**
Attorney General of Texas

**DANIEL T. HODGE**
First Assistant Attorney General

**DAVID C. MATTAX**
Deputy Attorney General for Defense Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division

_B—R, A_

**BRUCE R. GARCIA**
Assistant Attorney General
Attorney in Charge
State Bar No. 07631060
So. Dist. Bar No. 18934

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080 / Fax (512) 495-9139

**ATTORNEYS FOR DEFENDANTS TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,
BRAD LIVINGSTON AND JEFF PRINGLE**

## CERTIFICATE OF SERVICE

I, **BRUCE R. GARCIA,** Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Defendant Texas Department of Criminal Justice's Responses to Plaintiff Stephen McCollum's Second Set of Requests for Production and Interrogatories and First Set of Requests for Admissions** has been served by placing same in the United States Mail, postage prepaid, on February 27, 2013 addressed to:

Jeff Edwards
The Edwards Law Firm
The Bremond Houston House
706 Guadalupe
Austin, Texas 78701

Scott Medlock
Texas Civil Rights Project
1405 Montopolis Drive
Austin, Texas 78741

Eliot Shavin
2600 State Street
Dallas, Texas 75204

_B—R, A_

**BRUCE R. GARCIA**
Assistant Attorney General

–2–

## INTERROGATORIES

1.      Please provide a complete and detailed list of all areas in the Hutchins Unit that are air conditioned – including but not limited to dorms, inmate work areas, staff work areas, chow halls, libraries, gyms, etc.

**RESPONSE: OBJECTION, vague as to the term "air conditioned." Subject to and without waiving:**

**The following areas of the Hutchins State Jail have air conditioners with a refrigeration cycle:**

**The administrative offices, control picket, armory and communication equipment room, Visitation Area found in the H-Building;**

**The pickets, personal work rooms, offender barbershops, multipurpose rooms, storage rooms, staff restrooms of buildings A, B, C, D, E, and  F;**

**The laundry personnel office and restroom;**

**Offender Unit Commissary (all areas);**

**Food service personnel office, food service perishable dry storage area, employee dining area and restrooms;**

**All of the Education Building (classrooms, library, personnel offices, computer lab, workrooms, and storage rooms);**

**G-Building (personnel offices, staff barber shop, control picket, storage rooms, offender holding cell, restrooms, and Communications Equipment Room);**

**All of the Medical Department (infirmary, personnel offices, storage rooms, restrooms, exam rooms, Offender Hold Area, and the medication room);**

**K-Building (personnel offices, storage rooms, restrooms, intake receiving and intake processing, offender housing area);**

**Chapel (all areas);**

**Maintenance Building (personnel office and restroom); and**

**Backgate Building (all areas).**

–3–

2.      Please provide a complete and detailed list of all areas in the Hutchins Unit that are NOT air conditioned – including but not limited to dorms, inmate work areas, staff work areas, chow halls, storage facilities, libraries, gyms, etc.

**RESPONSE: OBJECTION, vague as to the term "air conditioned."  Subject to and without waiving:**

**The following areas of the Hutchins State Jail do not have air conditioners with a refrigeration cycle:**

**The offender dorms,  mechanical rooms, entry and exit hallways, area around the pickets, and recreation yards of buildings A, B, C, D, E, and F;**

**The Laundry wash and drying floor area and the folding and clothing storage area;**

**The cooks' work floor, serving and dining area, dish washing room, and backdock receiving area of the Food Service Area;**

**The carpenters' work area, technicians' work area, tool room storage, parts storage, and grounds keeping area of the Maintenance Building;**

**The Unit Supply Storage Area;**

**The Paint Storage Building; and**

**The H-Building outside of the visitation area.**

3.      Please identify all TDCJ units that have some inmate living areas with air conditioning.

**RESPONSE: OBJECTION, over broad and undue burden and not reasonably limited in scope.  In addition, the term "air conditioning" is vague.  Subject to and without waiving:**

**The following Region II TDCJ Units have living areas serviced with air conditioners chilling air through either blowing heat off of a condenser coil or using a cooling tower:**

**Beto – Infirmary, 58 beds, central air and heat, Psychiatric Ward, 24 beds;**

**Boyd – Administrative Segregation, 7 beds;**

**Cole – K Side, 7 beds, X Side, 20 beds;**

–4–

APPENDIX38

**Gurney – K Building, 150 beds, G Building, 50 beds, Medical beds, 2 beds;**

**Hutchins – K Housing, 210 beds;**

**Johnson – Administrative Segregation, 3 beds;**

**Michael – 12 Building, 504 beds, Hospice/Infirmary, 24 beds;**

**Moore – Transient, 7 beds;**

**Powledge – Infirmary, 14 beds;**

**Skyview – Entire facility is air conditioned, 562 beds;**

**Telford – 12 Building, 504 beds, Infirmary, 17 beds.**

4.      Please identify all prisoners in the Hutchins Unit who have, at any time, been given "heat restrictions" (see Definition S), or otherwise had any prison activities limited due to medical conditions adversely effected [*sic*] by heat or high temperatures, since January 1, 2011, and the time frames in which the prisoners had those restrictions.

**RESPONSE: OBJECTION, over broad and unduly burdensome and not limited in scope or time. Subject to and without waiving:**

**As of August 2011, a list is computer generated around the 13th of each month and has, on average, 300 offenders on the list. The list changes each month based on offender population of the Hutchins Unit.**

## REQUESTS FOR PRODUCTION

1.      Please produce the autopsies of all inmates who have died in the Hutchins Unit since January 1, 2001.

**RESPONSE: OBJECTION, Plaintiff seeks documents that contain "individually identifiable health information" as defined by the Health Insurance Portability and Accountability Act of 1996 or HIPAA. Defendants cannot release these documents without the permission of the estate of the individual deceased. Subject to and without waiving said objections, defendants have ordered and will supplement with proper redactions as required by HIPAA.**

2.      Please produce all documents concerning when rounds (medical or otherwise) were performed to check on Larry McCollum while he was in the Hutchins Unit.

**RESPONSE: See attached no records affidavit.**

–5–

3.      Please produce AD 84 logs for the C-7 dorm of the Hutchins Unit from April 1, 2011 to September 1, 2011.

**RESPONSE: OBJECTION, overly broad and burdensome.  TDCJ will produce the AD-84 logs from July 1, 2011 to July 31, 2011.**

4.      Please produce the daily inspection form 10.20 for the C-7 dorm of the Hutchins Unit for each day from April 1, 2011 to September 1, 2011.

**RESPONSE:  See Response to Request for Production No. 3.**

5.      Please produce the agenda, minutes, attendance roster, other materials from the meetings on 4/23/10, 4/25/11, and 4/17/12 identified in the email from Katie Anderson included in Defendant's initial disclosures.

**RESPONSE: Assuming the request for production refers to annual TDCJ heat training, the documents will be produced.**

6.      Please produce any sections of the Recreation Department Policy manual which address heat, high temperature, or temperature extremes.

**RESPONSE: OBJECTION, undue burden as this is not calculated to lead to the discovery of admissible or relevant evidence.  Subject to and without waiving:**

        **There are no TDCJ records responsive to this request.  See attached affidavit.**

7.      Please produce all documents received by the risk manager regarding "temperature related incidents," as referenced in AD 10.64 (included in Defendant's initial disclosures), from January 1, 2001 through January 1, 2012.

**RESPONSE:  OBJECTION Over broad, undue burden and not reasonably limited in scope or time.  This is an undue burden as Plaintiffs were provided with a list of heat injuries in previously served and answered discovery. The definition of "temperature related incidents" as used by the Texas Department of Criminal Justice also includes cold events, the term "temperature related incidents" as defined by plaintiff is not limited solely to heat related events and is therefore irrelevant to any issue concerning plaintiff or his claims.  In addition individually identifiable health information as defined by the Health Insurance Portability and Accountability Act of 1996 or (HIPAA) is or may be contained in the documents and as such defendants cannot release these documents without the permission of the individuals identified.  Subject to and without waiving said objections, see documents produced with proper redactions as required by HIPAA provided in response to Requests No. 9, 10, 11 and 12.**

–6–

8. Please produce all documents showing water was delivered to the C-7 dorm from July 1 – July 22, 2011, including how much water.

**RESPONSE: See attached no records affidavit and unit policy regarding use of 10 gallon water coolers previously provided.**

9. Please produce all documents related to the inmate heat injury in 2009.

**RESPONSE: OBJECTION Plaintiff seeks documents that contain "individually identifiable health information" as defined by the Health Insurance Portability and Accountability Act of 1996 or HIPAA. Defendants cannot release these documents without the permission of the individuals identified. Subject to and without waiving said objections, see attached documents bate stamps 01-27 with proper redaction of "individually identifiable health information" as required by HIPAA provided in response to Request No. 9.**

10. Please produce all documents related to the three employee heat-related injuries in 2009.

**RESPONSE: OBJECTION Plaintiff seeks documents that contain "individually identifiable health information" as defined by the Health Insurance Portability and Accountability Act of 1996 or HIPAA. Defendants cannot release these documents without the permission of the individuals identified. Subject to and without waiving said objections, see attached documents with bate stamps 01-27 with proper redaction of "individually identifiable health information" as required by HIPAA provided in response to Request No. 10.**

11. Please produce all documents related to the two employee heat-related injuries in 2010.

**RESPONSE: OBJECTION Plaintiff seeks documents that contain "individually identifiable health information" as defined by the Health Insurance Portability and Accountability Act of 1996 or HIPAA. Defendants cannot release these documents without the permission of the individuals identified. Subject to and without waiving said objections, see attached documents with bate stamps 01-27 with proper redaction of "individually identifiable health information" as required by HIPAA provided in response to Request No. 11.**

12. Please produce all documents related to the inmate heat injury in 2012.

**RESPONSE: OBJECTION RESPONSE OBJECTION Plaintiff seeks documents that contain "individually identifiable health information" as defined by the Health Insurance Portability and Accountability Act of 1996 or HIPAA. Defendants cannot release these documents without the permission of the individuals identified. Subject to and without waiving said objections, see attached documents with bate stamps 01-27 with proper redaction of "individually identifiable health information" as required by HIPAA provided in response to Requests No. 12.**

–7–

13.     Please produce all documents related to the two employee heat-related injuries in 2012.

**RESPONSE: OBJECTION Plaintiff seeks documents that contain "individually identifiable health information" as defined by the Health Insurance Portability and Accountability Act of 1996 or HIPAA.  Defendants cannot release these documents without the permission of the individuals identified.  Subject to and without waiving said objections, see attached documents with bate stamps 01-27 with proper redaction of "individually identifiable health information" as required by HIPAA provided in response to Request No. 13.**

## REQUESTS FOR ADMISSION

1.     Please admit on July 1, 2011 staff at the Hutchins Unit recorded the outside heat index rising to 148.

**RESPONSE:  OBJECTION vague as to the definition of "heat index."  Subject to and without waiving, defendant admits that TDCJ documentation from the G picket of the facility recorded a reading of 148.**

2.     Please admit on July 2, 2011 staff at the Hutchins Unit recorded the outside heat index rising to 137.

**RESPONSE:  OBJECTION vague as to the definition of "heat index."  Subject to and without waiving, defendant admits that TDCJ documentation from the G picket of the facility recorded a reading of 137.**

3.     Please admit on July 3, 2011 staff at the Hutchins Unit recorded the outside heat index rising to 130.

**RESPONSE:  OBJECTION vague as to the definition of "heat index."  Subject to and without waiving, defendant admits that TDCJ documentation from the G picket of the facility recorded a reading of 130.**

4.     Please admit on July 4, 2011 staff at the Hutchins Unit recorded the outside heat index rising to 137.

**RESPONSE:  OBJECTION vague as to the definition of "heat index."  Subject to and without waiving, defendant admits that TDCJ documentation from the G picket of the facility recorded a reading of 137.**

5.      Please admit on July 5, 2011 staff at the Hutchins Unit recorded the outside heat index rising to 106.

**RESPONSE:  OBJECTION vague as to the definition of "heat index."  Subject to and without waiving, defendant admits that TDCJ documentation from the G picket of the facility recorded a reading of 106.**

6.      Please admit on July 6, 2011 staff at the Hutchins Unit recorded the outside heat index rising to 110.

**RESPONSE:  OBJECTION vague as to the definition of "heat index."  Subject to and without waiving, defendant admits that TDCJ documentation from the G picket of the facility recorded a reading of 110.**

7.      Please admit on July 7, 2011 staff at the Hutchins Unit recorded the outside heat index rising to 105.

**RESPONSE:  OBJECTION vague as to the definition of "heat index."  Subject to and without waiving, defendant admits that TDCJ documentation from the G picket of the facility recorded a reading of 105.**

8.      Please admit on July 8, 2011 staff at the Hutchins Unit recorded the outside heat index rising to 130.

**RESPONSE:  OBJECTION vague as to the definition of "heat index."  Subject to and without waiving, defendant admits that TDCJ documentation from the G picket of the facility recorded a reading of 130.**

9.      Please admit on July 9, 2011 staff at the Hutchins Unit recorded the outside heat index rising to 130.

**RESPONSE:  OBJECTION vague as to the definition of "heat index."  Subject to and without waiving, defendant admits that TDCJ documentation from the G picket of the facility recorded a reading of 130.**

10.     Please admit on July 10, 2011 staff at the Hutchins Unit recorded the outside heat index rising to 137.

**RESPONSE:  OBJECTION vague as to the definition of "heat index."  Subject to and without waiving, defendant admits that TDCJ documentation from the G picket of the facility recorded a reading of 137.**

–9–

11.    Please admit on July 11, 2011 staff at the Hutchins Unit recorded the outside heat index rising to 120.

**RESPONSE: OBJECTION vague as to the definition of "heat index." Subject to and without waiving, defendant admits that TDCJ documentation from the G picket of the facility recorded a reading of 120.**

12.    Please admit on July 12, 2011 staff at the Hutchins Unit recorded the outside heat index rising to 120.

**RESPONSE: OBJECTION vague as to the definition of "heat index." Subject to and without waiving, defendant admits that TDCJ documentation from the G picket of the facility recorded a reading of 120.**

13.    Please admit on July 13, 2011 staff at the Hutchins Unit recorded the outside heat index rising to 119.

**RESPONSE: OBJECTION vague as to the definition of "heat index." Subject to and without waiving, defendant admits that TDCJ documentation from the G picket of the facility recorded a reading of 119.**

14.    Please admit on July 14, 2011 staff at the Hutchins Unit recorded the outside heat index rising to 117.

**RESPONSE: OBJECTION vague as to the definition of "heat index." Subject to and without waiving, defendant admits that TDCJ documentation from the G picket of the facility recorded a reading of 117.**

15.    Please admit on July 15, 2011 staff at the Hutchins Unit recorded the outside heat index rising to 117.

**RESPONSE: OBJECTION vague as to the definition of "heat index." Subject to and without waiving, defendant admits that TDCJ documentation from the G picket of the facility recorded a reading of 117.**

16.    Please admit on July 16, 2011 staff at the Hutchins Unit recorded the outside heat index rising to 130.

**RESPONSE: OBJECTION vague as to the definition of "heat index." Subject to and without waiving, defendant admits that TDCJ documentation from the G picket of the facility recorded a reading of 130.**

APPENDIX44

17.     Please admit on July 17, 2011 staff at the Hutchins Unit recorded the outside heat index rising to 137.

**RESPONSE: OBJECTION vague as to the definition of "heat index." Subject to and without waiving, defendant admits that TDCJ documentation from the G picket of the facility recorded a reading of 137.**

18.     Please admit on July 18, 2011 staff at the Hutchins Unit recorded the outside heat index rising to 120.

**RESPONSE: OBJECTION vague as to the definition of "heat index." Subject to and without waiving, defendant admits that TDCJ documentation from the G picket of the facility recorded a reading of 120.**

19.     Please admit on July 19, 2011 staff at the Hutchins Unit recorded the outside heat index rising to 149.

**RESPONSE: OBJECTION vague as to the definition of "heat index." Subject to and without waiving, defendant admits that TDCJ documentation from the G picket of the facility recorded a reading of 149.**

20.     Please admit on July 20, 2011 staff at the Hutchins Unit recorded the outside heat index rising to 120.

**RESPONSE: OBJECTION vague as to the definition of "heat index." Subject to and without waiving, defendant admits that TDCJ documentation from the G picket of the facility recorded a reading of 120.**

21.     Please admit on July 21, 2011 staff at the Hutchins Unit recorded the outside heat index rising to 117.

**RESPONSE: OBJECTION vague as to the definition of "heat index." Subject to and without waiving, defendant admits that TDCJ documentation from the G picket of the facility recorded a reading of 117.**

22.     Admit you do not have an explanation for why less than all of the inmate housing areas at Hutchins Unit are air conditioned.

**RESPONSE: OBJECTION Hutchins State Jail was constructed in 1994 and opened in 1995. Any information about design criteria and decisions is outside of the statute of limitations. Subject to and without waiving, denied.**

–11–

23.     Admit you do not know which administrators made the decision not to air condition all inmate housing areas in Hutchins Unit.

**RESPONSE: OBJECTION.  The Hutchins State Jail was constructed in 1994 and opened in 1995.  Any information about design criteria and decisions is outside of the statute of limitations.  Subject to and without waiving, denied.**

24.     Admit the administrative segregation building at the Hutchins Unit is air conditioned.

**RESPONSE: OBJECTION, vague.  Plaintiffs have not defined the term "air conditioned." Subject to and without waiving, admit.**

25.     Admit the infirmary at the Hutchins Unit is air conditioned.

**RESPONSE: OBJECTION, vague.  Plaintiffs have not defined the term "air conditioned." Subject to and without waiving, admit.**

26.     Admit the officer pickets at the Hutchins Unit are air conditioned.

**RESPONSE: OBJECTION, vague.  Plaintiffs have not defined the term "air conditioned." Subject to and without waiving, admit.**

27.     Admit the armory room at the Hutchins Unit is air conditioned.

**RESPONSE: OBJECTION, vague.  Plaintiffs have not defined the term "air conditioned." Subject to and without waiving, admit.**

28.     Admit the C-7 dorm is not air conditioned.

**RESPONSE: OBJECTION, vague.  Plaintiffs have not defined the term "air conditioned." Subject to and without waiving, admit.**

29.     Admit the C-7 dorm does not have a water fountain.

**RESPONSE: OBJECTION, vague as to the term "water fountain."  Subject to and without waiving, deny.**

30.     Admit the C-7 dorm's windows are sealed shut.

**RESPONSE:  Admit.**

–12–

31.    Admit Larry McCollum did not possess a cup in the C-7 dorm.

**RESPONSE: OBJECTION. Defendants can neither admit nor deny as they have insufficient information to know if Larry McCollum did or did not possess a cup.**

32.    Admit no staff in the Hutchins Unit issued Larry McCollum a cup.

**RESPONSE: Admit.**

33.    Admit the Hutchins Unit has never had a transition plan (as that term is used in the ADA).

**RESPONSE: OBJECTION vague as to the term "transition plan." Subject to further definition or information from plaintiff, and without waiving, Defendant cannot admit or deny at this time, as no request for a transition plan has been made.**

34.    Admit the Hutchins Unit has never had a self-evaluation completed (as that term is used in the ADA).

**RESPONSE: OBJECTION vague as to the term "self evaluation". Subject to further definition or information from plaintiff, and without waiving, Defendant cannot admit or deny at this time.**

35.    Admit you took no steps to bring the Hutchins Unit into compliance with the ADA and Rehab Act in response to the inmate heat injury in 2009.

**RESPONSE: Defendants can neither admit or deny. No request for an accommodation was made under the ADA or the Rehab Act.**

36.    Admit you took no steps to bring the Hutchins Unit into compliance with the ADA and Rehab Act in response to the three employee heat-related injuries in 2009.

**RESPONSE: Deny.**

37.    Admit you took no steps to bring the Hutchins Unit into compliance with the ADA and Rehab Act in response to the two employee heat-related injuries in 2010.

**RESPONSE: Deny.**

38.    Admit you took no steps to bring the Hutchins Unit into compliance with the ADA and Rehab Act in response to Larry McCollum's death in 2011.

**RESPONSE: Deny.**

39.     Admit you took no steps to bring the Hutchins Unit into compliance with the ADA and Rehab Act in response to the inmate heat injury in 2012.

**RESPONSE: Deny.**

40.     Admit you took no steps to bring the Hutchins Unit into compliance with the ADA and Rehab Act in response to the two employee heat-related injuries in 2012.

**RESPONSE: Deny.**

41.     Admit Pringle was aware before July 2011 inmates in Hutchins Unit had suffered heat injury.

**RESPONSE: OBJECTION. TDCJ can neither admit nor deny, TDCJ has no knowledge of what Warden Pringle was aware of before July 2011.**

42.     Admit Pringle was aware before July 2011 employees in Hutchins Unit had suffered heat injury.

**RESPONSE: OBJECTION. TDCJ can neither admit nor deny, TDCJ has no knowledge of what Warden Pringle was aware of before July 2011.**

43.     Admit Pringle visited the C-7 dormitory during the summer of 2011.

**RESPONSE: Admit.**

44.     Admit Livingston was aware before July 2011 that TDCJ inmates had suffered heat injury.

**RESPONSE: OBJECTION. TDCJ can neither admit nor deny, TDCJ has no knowledge of whether Brad Livingston was aware before July 2011 if TDCJ inmates had suffered a heat injury.**

45.     Admit Livingston was aware before July 2011 that TDCJ employees had suffered heat injury.

**RESPONSE: OBJECTION. TDCJ can neither admit nor deny, TDCJ has no knowledge of whether Brad Livingston was aware before July 2011 if TDCJ employees had suffered a heat injury.**

46.     Admit in July 2011 TDCJ had no procedure for informing officers which prisoners have medical conditions adversely affected by high temperatures.

**RESPONSE: Deny.**

−14−

47.    Admit in July 2011 prisoners' housing assignments are [*sic*] not restricted when a prisoner has medical conditions adversely affected by high temperatures.

**RESPONSE:  Deny.**

48.    Admit TDCJ does not current [*sic*] have a procedure for informing officers which prisoners have medical conditions adversely affected by high temperatures.

**RESPONSE: Deny.**

49.    Admit that, currently in TDCJ, prisoners' housing assignments are not restricted when a prisoner has medical conditions adversely affected by high temperatures.

**RESPONSE: Deny.**

50.    Admit TDCJ had no procedure for informing officers Larry McCollum had medical conditions adversely affected by high temperatures.

**RESPONSE: Deny.**

51.    Admit Larry McCollum's housing assignment was not restricted when despite [*sic*] his medical conditions adversely affected by high temperatures.

**RESPONSE:  Deny.**

52.    Admit Larry McCollum's was assigned to the top bunk while in the C-7 dorm.

**RESPONSE:  Admit.**

53.    Admit Brad Livingston received training prior to July 2011 about dangers heat poses to human health.

**RESPONSE:  OBJECTION, speculation, TDCJ has no personal knowledge of any and all training Mr. Livingston received on dangers heat pose to human health.  TDCJ records do not indicate that Mr. Livingston has received training about dangers heat poses to human health.**

54.    Admit Brad Livingston has never received training about the dangers heat poses to human health.

**RESPONSE:  Admit.**

55.    Admit Pringle received training prior to July 2011 about dangers heat poses to human health.

**RESPONSE:  Admit.**

–15–

56.    Admit you have no documents, including any diagrams or pictures, related to the structure and function of any ventilation system (including, but not limited to, the air handlers, and fans) at the Hutchins Unit.

**RESPONSE: Deny.**

57.    Admit you have no diagram of the Hutchins Unit identifying which portions (if any) of the facility are air conditioned.

**RESPONSE: Admit.**

58.    Admit you have no diagram of the Hutchins Unit showing locations where Larry McCollum was housed prior to his death.

**RESPONSE: Deny.**

59.    Admit you have no documents that list which areas of Hutchins Unit are air conditioned.

**RESPONSE: Deny, see documents produced at deposition of Kim Fargason.**

60.    Admit you have no documents that list which areas of Hutchins Unit that are not air conditioned.

**RESPONSE: Deny, see documents produced at deposition of Kim Fargason.**

61.    Admit TDCJ has not taken any disciplinary actions against staff members for failing to comply with TDCJ policies regarding heat at the Hutchins Unit.

**RESPONSE: OBJECTION, over broad and undue burden and not limited in time or scope. Subject to and without waiving, defendants are unaware of any violations by employees regarding heat at the Hutchins facility, Admit.**

62.    Admit TDCJ has not taken any disciplinary actions against staff members at the Hutching [*sic*] Unit for failing to comply with TDCJ policies regarding heat.

**RESPONSE: See response to No. 62.**

63.    Admit you took no steps to protect Larry McCollum from heat index temperatures in the Hutchins Unit.

**RESPONSE: Deny.**

64.    Admit that TDCJ receives federal funding.

−16−

**RESPONSE: Admit.**

65.    Admit heat index levels over 90 pose a risk to human health.

**RESPONSE:  OBJECTION vague as to the terms "heat index", "over 90" and "pose a risk" and "human health"  Subject to and without waiving, without further information, defendants can neither admit or deny.**

66.    Admit heat index levels over 100 pose a significant risk to human health.

**RESPONSE: OBJECTION vague as to the terms "heat index", "over 100" and "pose a significant risk" and "human health"  Subject to and without waiving, without further information, defendants can neither admit or deny.**

67.    Admit heat index levels over 110 pose a significant risk to human health.

**RESPONSE: OBJECTION vague as to the terms "heat index", "over 110" and "pose a significant risk" and "human health"  Subject to and without waiving, without further information, defendants can neither admit or deny.**

68.    Admit heat index levels over 120 pose a significant risk to human health.

**RESPONSE: OBJECTION vague as to the terms "heat index", "over 120" and "pose a significant risk" and "human health"  Subject to and without waiving, without further information, defendants can neither admit or deny.**

69.    Admit heat index levels over 130 pose a significant risk to human health.

**RESPONSE: OBJECTION vague as to the terms "heat index", "over 130" and "pose a significant risk" and "human health"  Subject to and without waiving, without further information, defendants can neither admit or deny.**

70.    Admit heat index levels over 140 pose a significant risk to human health.

**RESPONSE: OBJECTION vague as to the terms "heat index", "over 140" and "pose a significant risk" and "human health"  Subject to and without waiving, without further information, defendants can neither admit or deny.**

71.    Admit that a person with hypertension is more vulnerable to heat-stress than a person without hypertension.

**RESPONSE:  OBJECTION Defendants have insufficient information without further information regarding the individual, defendants can neither admit or deny.**

–17–

72.     Admit hypertension may diminish the body's ability to regulate internal temperature

**RESPONSE:  OBJECTION to the extent this call for a medical conclusion.  Subject to and without waiving, Defendants have insufficient information without further information regarding the individual, defendants can neither admit nor deny.**

73.     Admit that a person suffering hypertension may suffer impairment of a major life function.

**RESPONSE: OBJECTION to the extent this calls for a medical conclusion, vague as to the terms "hypertension" "major life function", "may" and "impairment" Defendants have insufficient information to answer at this time and without further information can neither admit or deny.**

74.     Admit hypertension may impair a person's ability to walk, stand, or breathe.

**RESPONSE:  OBJECTION to the extent this call for a medical conclusion.  Subject to and without waiving, Defendants have insufficient information at this time without further information regarding the individual, defendants can neither admit nor deny.**

75.     Admit the initial medial intake physical of Larry McCollum identified him as a person with hypertension.

**RESPONSE: Admit.**

76.     Admit Hutchins Unit medical staff prescribed Larry McCollum medication for hypertension.

**RESPONSE:   Deny.  University of Texas Medical Branch staff prescribed medication for Larry McCollum.**

77.     Admit hydrochlorothiazide is a diuretic.

**RESPONSE: OBJECTION to the extent this call for a medical conclusion.  Subject to and without waiving, Defendants have insufficient information without further information regarding the individual, defendants can neither admit nor deny.  UTMB not TDCJ administers medication.**

–18–

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **Stephen McCollum,** *et al.*, | § | |
| **Plaintiffs,** | § | |
| **v.** | § | **Civil Action No. 3:12-CV-02037** |
| | § | |
| **Brad Livingston,** *et al.*, | § | |
| **Defendants.** | § | **JURY DEMAND** |

## DEFENDANT TEXAS DEPARTMENT OF CRIMINAL JUSTICE'S RESPONSES TO PLAINTIFF SANDRA McCOLLUM'S FIFTH REQUESTS FOR PRODUCTION AND REQUESTS FOR ADMISSION

TO:   Jeff Edwards, The Edward Law Firm, The Bremond Houston House, 706 Guadalupe, Austin, Texas 78701; Scott Medlock, Brian McGiverin, James C. Harrington, Texas Civil Rights Project, 1405 Montopolis Drive, Austin, Texas 78741; Eliot Shavin, 2600 State Street, Dallas, Texas 75204; and Kim Coogan, Assistant Attorney General, Office of the Attorney General, P.O. Box 12548, Austin, Texas 78711

COMES NOW the Defendant Texas Department of Criminal Justice by and through counsel, the Texas Attorney General's Office, and offers the following **Defendant Texas Department of Criminal Justice's Responses to Plaintiff Sandra McCollum's Fifth Set of Requests for Production and Requests for Admission**.

Respectfully submitted,

**GREG ABBOTT**
Attorney General of Texas

**DANIEL T. HODGE**
First Assistant Attorney General

**DAVID C. MATTAX**
Deputy Attorney General for Defense Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division

**BRUCE R. GARCIA**
Assistant Attorney General
Attorney in Charge
State Bar No. 07631060
So. Dist. Bar No. 18934

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080 / Fax (512) 495-9139

**ATTORNEYS FOR DEFENDANTS TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,
BRAD LIVINGSTON AND JEFF PRINGLE**

## CERTIFICATE OF SERVICE

I, **BRUCE R. GARCIA,** Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Defendant Texas Department of Criminal Justice's Responses to Plaintiff Sandra McCollum's Fifth Set of Requests for Production and Requests for Admission** has been served by placing same in the United States Mail, postage prepaid, on July 17, 2013 addressed to:

Jeff Edwards
The Edwards Law Firm
The Bremond Houston House
706 Guadalupe
Austin, Texas 78701

Scott Medlock
Texas Civil Rights Project
1405 Montopolis Drive
Austin, Texas 78741

Eliot Shavin
2600 State Street
Dallas, Texas 75204

2

Kim Coogan - **(Hand Delivered)**
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711

**BRUCE R. GARCIA**
Assistant Attorney General

3

## REQUESTS FOR PRODUCTION

1.     Please produce all documents from "'Directors Meetings," held between TDCJ regional directors and the Director of the TDCJ Correctional Institutions Division since January 1, 2007. This requests includes, but is not limited to: meeting agendas, meeting minutes, attendance records, audio/video recordings, summaries, and notes.

**RESPONSE: See attached.**

## REQUESTS FOR ADMISSION

1.     Admit TDCJ did not, before Mr. McCollum's death, distribute lists of prisoners with heat-related medical conditions to the corrections officers who monitored the dorms in the Hutchins Unit.

**RESPONSE: ADMIT.**

2.     Admit lists of prisoners with heat-related medical conditions that TDCJ distributed to the corrections officers who personally monitored the dorms in the Hutchins Unit at any time before Mr. McCollum's death have been destroyed, lost, or no longer exist.

**RESPONSE:   Defendants can neither admit nor deny as no such lists existed for the purpose described by this request.   Subject to and without waiving, denied.   TDCJ cannot destroy non-existent lists.**

3.     Admit UTMB staff at the Hutchins Unit did not provide lists of prisoners with heat-related medical conditions to TDCJ correctional officers at the Hutchins Unit before Mr. McCollum's death.

**RESPONSE: ADMIT.**

4.     Admit TDCJ did not, before Mr. McCollum's death, distribute lists of prisoners susceptible to heat-related injuries to the corrections officers who monitored the dorms in the Hutchins Unit.

**RESPONSE:   Objection overbroad, vague as to "heat related injuries."   Subject to and without waiving Defendant can neither admit nor deny as no such lists existed for the purpose described by this request.   TDCJ admits that no non-existent lists were distributed to corrections officers who personally monitored the dorms in the Hutchins Unit before Mr. McCollum's death.**

˅4˅

5.      Admit lists of prisoners susceptible to heat-related injuries that TDCJ distributed to corrections officers who personally monitored the dorms in the Hutchins Unit at any time before Mr. McCollum's death have been destroyed, lost, or no longer exist.

**RESPONSE: Defendants can neither admit nor deny as no such lists existed for the purpose described by this request. Subject to and without waiving, denied. TDCJ cannot destroy something that did not exist.**

6.      Admit UTMB staff at the Hutchins Unit did not provide lists of prisoners susceptible to heat-related injuries to TDCJ correctional officers at the Hutchins Unit before Mr. McCollum's death.

**RESPONSE: ADMIT.**

7.      Admit TDCJ did not, before Mr. McCollum's death, distribute lists of prisoners with heat restrictions to the corrections officers who monitored the dorms in the Hutchins Unit.

**RESPONSE: ADMIT.**

8.      Admit lists of prisoners with heat-restrictions that TDCJ distributed to the corrections officers who personally monitored the dorms in the Hutchins Unit at any time before Mr. McCollum's death have been destroyed, lost, or no longer exist.

**RESPONSE: Defendant can neither admit nor deny. There were no lists of prisoners with heat-restrictions that TDCJ distributed to the corrections officers who personally monitored the dorms in the Hutchins Unit before Mr. McCollum's death.**

9.      Admit UTMB staff at the Hutchins Unit did not provide lists of prisoners with heat restrictions to TDCJ correctional officers at the Hutchins Unit before Mr. McCollum's death.

**RESPONSE: ADMIT.**

5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **KEVIN WEBB, Individually and** | § | |
| **as Representative of the Estate of** | § | |
| **ROBERT ALLEN WEBB, et al.,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 6:13-cv-00711** |
| | § | |
| **BRAD LIVINGSTON, et al.,** | § | |
| **Defendants.** | § | |

## DEFENDANT BRAD LIVINGTON'S RESPONSE TO PLAINTIFF KEVIN WEBB'S
## FIRST SET OF INTERROGATORIES

**TO:**   Jeff Edwards, Scott Medlock , The Edwards Law Firm, The Haehnel Building, 1101 East 11th Street Austin, TEXAS 78702.

COMES NOW the Defendant, Brad Livingston, by and through counsel, the Texas Attorney General's Office, and offers the following **Defendant Brad Livingston's Response to Plaintiff Kevin Webb's First Set of Interrogatories**.

Respectfully submitted,

**GREG ABBOTT**
Attorney General of Texas

**DANIEL T. HODGE**
First Assistant Attorney General

**DAVID C. MATTAX**
Deputy Attorney General for Defense Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division

**DEMETRI ANASTASIADIS**
Assistant Attorney General
Attorney-In-Charge
State Bar No. 01164480

Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin, Texas  78711
(512) 463-2080 / (512) 495-9139 (fax)

**ATTORNEYS FOR DEFENDANT
BRAD LIVINGSTON**

## CERTIFICATE OF SERVICE

I, **DEMETRI ANASTASIADAS**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Defendant Brad Livingston's Response to Plaintiff Kevin Webb's First Set of Interrogatories** has been served by electronic mail and by FedEx overnight mail on November 22, 2013, as follows:

Jeff Edwards                                    **FedEx Overnight Mail No. 7972 3309 3912**
Scott Medlock
The Edwards Law Firm
The Haehnel Building
1101 East 11th Street
Austin, TX

Bruce Garcia                                   Interagency Mail
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711

APPENDIX59

## FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1:** Identify all steps you took to protect Robert Allen Webb from heat index temperatures in the Hodge Unit in excess of 90 degrees.

**RESPONSE: I was not personally aware of Mr. Webb's incarceration at the Hodge Unit. However, I am aware the following steps were taken on the Hodge Unit to mitigate high temperatures. During the summer months, offenders on the Hodge Unit were permitted to block the sun coming into their cells from the outer windows by covering the windows. Further, all supervisors were instructed to continually stress the importance of heat safety to their staff. Water coolers were placed in the offender housing areas, dayrooms, and gyms, and Warden Haynes instructed staff to ensure that the coolers remained full at all times. In L Wing where offenders spend the majority of the time in their cells, Warden Haynes instructed staff to pass water out to offenders frequently and to provide more water if requested by an offender.**

**Checks were conducted on offenders with heat restrictions or offenders on psychiatric medications every thirty minutes and Warden Haynes instructed staff to actually interact with the offenders during those checks in order to ensure that the offenders were doing well. If an offender told a staff member he was not feeling well or that he was getting too hot, staff members were instructed to always err on the side of caution, take it seriously, and take the offender for medical care.**

**The temperature of the water in the showers was lowered in order to provide offenders a means to cool off. Also, offenders were permitted to wear their shorts and t-shirt in the dayroom and in their cells rather than the standard TDCJ uniform. The dayrooms had two large fans placed in them, and the lights were turned out in an effort to keep it cool. Purge fans were turned on throughout the unit and the cells had forced air vents blowing.**

**Finally, all staff members and offenders received heat safety training in order to ensure that they recognized the signs and symptoms of heat-related illness. Staff members were given cards to carry which identified the signs and symptoms of heat related illnesses. The cards were to be carried at all times and staff was questioned to ensure they understood the information on the cards.**

**See also heat safety training and circulars produced in response to Plaintiff Stephen McCollum's First Request for Production to TDCJ, numbers 3-5 in *McCollum v. Livingston*, 3:12-cv-02037, U.S. District Court-Northern District- Dallas.**

**INTERROGATORY NO. 2:** Identify all training you received about heat safety during your employment at the Texas Department of Criminal Justice.

**RESPONSE: I have not received training about heat safety during my employment with Texas Department of Criminal Justice.**

**INTERROGATORY NO. 3:**  Identify all persons who you believe have knowledge of relevant facts and identify the issues upon which you believe they have knowledge. A response to this interrogatory should include, but is not limited to, all prisoners housed in the dorm with Robert Allen Webb.

**RESPONSE:  Defendant objects, offenders' housing history is recorded only on the offender's own housing assignment history and not in separate records by dormitory. Accordingly, to determine all offenders housed with Robert Webb would require a search of every offenders' housing history.  Subject to and without waiving the foregoing objection, the individuals likely to have information regarding this case are either named as defendants in this case or have been previously identified in documents released through the discovery process in this case.**

**INTERROGATORY NO. 4:**  If you contend that some other person or legal entity is, in whole or in part, liable to Plaintiff in this matter, identify that person or legal entity and describe in detail the basis of said liability.

**RESPONSE: Defendant objects as this interrogatory calls for a legal conclusion. Defendant further objects that this interrogatory invades the attorney work product and the attorney client privileges.**

**INTERROGATORY NO. 5:**  Please identify each person who provided information or assisted in any way in answering these interrogatories, and as to each such person, please indicate the discovery request with respect to which he or she was involved.

**RESPONSE: Defendant objects to the extent that this interrogatory is invasive of the attorney client privilege and attorney work product.  Subject to and without waiving the foregoing objection, my attorneys assisted in answering these interrogatories as well as the staff members who have signed verifications for the interrogatories posed to the Agency and the individual Defendants in this case.**

**INTERROGATORY NO. 6:**  Please identify all persons that Defendant expects to call to testify on Defendant s behalf at trial.

**RESPONSE: Defendant objects to this interrogatory as premature at this juncture. Defendant will designate its witnesses in a timely fashion in accordance with the Court's scheduling order.  Investigation continues; Defendant will supplement this response.**

**INTERROGATORY NO. 7:** Please identify the names and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information you may use to support your claims or defenses.

**RESPONSE: Defendant objects to this interrogatory as premature at this juncture. Defendant will designate its witnesses in a timely fashion in accordance with the Court's scheduling order.**

**INTERROGATORY NO. 8:**  Please describe your employment history since January 1, 1993. A response to this interrogatory should identify every employer, along with the address and phone number of the location where you worked, and the dates of your employment.

**RESPONSE:**

| | |
|---|---|
| **Nov. 2004 – Present** | **Executive Director, TDCJ** |
| **June 2001 – Nov. 2004** | **Chief Financial Officer, TDCJ** |
| **1997 – June 2001** | **Deputy Director, Financial Services Division, TDCJ** |
| **1995 – 1997** | **Group Director, Office of Budget and Planning, Texas Governor's Office** |

**INTERROGATORY NO. 9:** Please list any professional licenses you hold. A response to this interrogatory should include the name of the licensing agency, and the date you obtained the license.

**RESPONSE:  None.**

**INTERROGATORY NO. 10:**  Please list any educational degrees you have completed. A response to this interrogatory should include the name of the schools and dates you completed your degrees.

**RESPONSE:  I received a Bachelor of Arts degree in Political Science, with honors, from Metropolitan State College of Denver.  I also hold a Master of Public Affairs degree from the University of Texas at Austin.**

**INTERROGATORY NO. 11:**  Please describe in detail all actions you are aware of taken to protect prisoners in TDCJ custody from temperature over 90 degrees Fahrenheit.

**RESPONSE:  Defendant objects that this request is overly broad and not reasonably limited in scope, time, or geographic location.**

**Subject to and without waiving the foregoing objection, I am aware of the following steps taken by the Agency to mitigate hot weather on TDCJ Units.  The Agency has mandatory heat precaution training for all staff and offenders each year in April.  Each shift supervisor is instructed to discuss heat awareness and warning signs at shift turnouts during the summer months.  Heat awareness, warning signs, and hydration memos are placed throughout the facility for staff and offenders. Shower temperatures are lowered. Water coolers with ice are placed in the dorms during summer months. Staff is instructed that offenders identified as needing relief from the heat are allowed to sit in cooler areas. Work shifts are reduced or cancelled and offenders are allowed to wear less clothing in the housing areas.**