UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, STEPHANIE KINGREY, and SANDRA McCOLLUM, individually and as heirs at law to the Estate of LARRY GENE McCOLLUM, <br> PLAINTIFFS <br><br> v. <br><br> BRAD LIVINGSTON, JEFF PRINGLE, RICHARD CLARK, KAREN TATE, SANDREA SANDERS, ROBERT EASON, the UNIVERSITY OF TEXAS MEDICAL BRANCH and the TEXAS DEPARTMENT OF CRIMINAL JUSTICE. <br> DEFENDANTS | § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. <br> 3:12-cv-02037 |

**PLAINTIFFS' DESIGNATION OF EXPERT WITNESSES**

Plaintiffs file this Designation of Expert Witnesses:

**A.    Retained Experts**

   1.    Dr. Susi Vassallo, M.D.

Dr. Vassallo a physician licensed to practice Medicine in Texas and New York State. She is Board Certified in Emergency Medicine and Medical Toxicology. She is an expert on thermoregulation and the consequences of extreme heat on people. Her curriculum vita, fee schedule, and list of testimony for the previous four years were contemporaneously produced to the Defendants.

She will testify human bodies dissipate heat by evaporative cooling and dilation of the blood vessels, and by losing sweat through the skin. Sweating cools the body through evaporation, however high relative humidity limits evaporation, and the body cannot get rid of its heat. When heat gain by the body exceeds the amount the body can remove, body temperature begins to rise, increasing the risk of heat-related illnesses.

She will testify it is well known that certain medical conditions, including hypertension, diabetes, and obesity, along with other factors like age, increase the body's intolerance to extreme temperatures.

She will testify that Mr. McCollum was morbidly obese, and suffered from diabetes and hypertension. She will testify these medical conditions likely limited

his major life activities, and put him at increased risk of heat-related illness. She will testify the diuretic he was prescribed to treat his hypertension also increased his risk of heat stroke during exposure to extreme temperatures.

She will testify that the temperatures and heat index inside Mr. McCollum's dorm, combined with his medical conditions, age and general state of health, markedly increased his risk of heat stroke and death. She will testify this is well-known in the medical community, and reflected in TDCJ and UTMB policies governing extreme temperatures at the Hutchins State Jail at the time of Mr. McCollum's death.

She will testify based on her personal observations of the Hutchins State Jail on September 23, 2013, including, but not limited to, that Mr. McCollum would have been visible to correctional officers while on his bunk, that the temperatures inside the dorms were consistent with the outside temperatures, and that temperatures inside the dorms could not be raised or lowered in compliance with American Correctional Association standards.

She will testify that Mr. McCollum's medical conditions would have been obvious to any layperson observing prisoners at the Hutchins Unit before his death.

She will testify the delay in providing medical treatment to Mr. McCollum following the officers' discovery of him suffering convulsions while non-responsive, more likely than not caused his death. She will testify first aid was not provided to Mr. McCollum, including simple measures like immediately taking him to an air conditioned part of the prison, or packing his body with ice. She will testify that TDCJ's decision to house Mr. McCollum in a top bunk likely delayed his medical treatment, and denied him accommodations for his obesity.

She will testify the amount of cold water provided to the inmates at the Hutchins State Jail during Mr. McCollum's incarceration was insufficient to combat the high temperatures inside the dormitories.

She will testify Mr. McCollum died of heat stroke due to the extreme temperatures inside his prison dormitory, and because officers failed to provide timely medical care when he was found convulsing and unresponsive. She will testify that more likely than not, to a reasonable degree of medical certainty, that had medical care not been so delayed he would have survived.

She will testify that Mr. McCollum did not receive a physical examination during his incarceration at the Hutchins State Jail, and that this was a proximate cause of his death. She will testify that, due to his medical condition, disabilities, and laboratory results, a physical exam would have identified him as being at high risk of suffering heat-related illness during periods of extreme temperatures.

She will testify that policies, procedures, and practices at the Hutchins State Jail, including, but not limited to, failures to protect prisoners with medical conditions like Mr. McCollum's from extreme temperatures, and practices related to prisoners suffering seizure-like symptoms in the middle of the night denied Mr. McCollum medical treatment, and were a proximate cause of his death.

She will testify about various measures that could prevent heat stroke at the Hutchins State Jail, including air conditioning, housing prisoners with identified medical conditions in air-conditioned portions of the prison, and providing respite areas. She will testify that TDCJ and UTMB's existing protections for prisoners with heat-related illnesses are medically inadequate.

The Fifth Circuit relied on Dr. Vassallo's opinions in *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004). The Middle District of Louisiana relied on her opinions in *Bell v. LeBlanc*, No. 13-00368-BAJ-SCR, Doc. 87 (M.D. La. Dec. 19, 2013) in enjoining the Louisiana prison system and requiring indoor temperatures be kept below 88 degrees.

Dr. Vassallo's opinions and compensation are described in greater detail in her Rule 26 expert report, which was produced contemporaneously to the Defendants.

2.   Prof. James Balsamo

Prof. Balsamo is the director of the Office of Environmental Health and Safety at Tulane University. He is a 1967 graduate of Louisiana State University of Baton Rouge (BS in Pre-Med); 1969 graduate of Louisiana State University of Baton Rouge (MS in Dairy Nutrition Research); and 1973 graduate of Tulane University (Masters in Medical Care Administration) and 1996 graduate of Tulane University (Masters in Public Health and Tropical Medicine). Prof. Balsamo began his career as a Sanitarian and was promoted to Deputy Director of the Bureau of Personal Health Protection of the New Orleans Health Department. He has worked for Tulane University for 27 years, 20 of those years as the Director of the Office of Environmental Health and Safety. He has been interested in environmental health his entire career, as shown through his involvement in professional organizations at the state and federal levels, and having served on many committees and been elected as board member and officer on these organizations for many years. He is Past President of the Louisiana Environmental Health Association (1974 and 1984), and President of the National Environmental Health Association. He is a Registered Professional Sanitarian (state and national), Certified Hazard Control Manager, Certified Hazardous Materials Manager, Certified Health care Safety Professional, and executive level. Certified Food Safety Professional.

Prof. Balsamo's opinions have been relied upon by the Fifth Circuit in *Blackmon v. Garza*, 484 Fed.Appx. 866, 873 (5th Cir. 2012) (unpublished). He testified as an expert in *Bell v. LeBlanc*, No. 13-00368-BAJ-SCR, Doc. 87 (M.D. La. Dec. 19, 2013), where the court enjoined the operation of the Louisiana prison system.

3

Prof. Balsamo will testify based on his inspection of the Hutchins State Jail on September 26, 2012, and his review of documentation from the prison. He will testify based on historical temperature data and other references identified in his expert report, which has been contemporaneously produced to the Defendants.

He will testify that the temperatures at the prison became "extremely dangerous" during Mr. McCollum's incarceration, and that for people with Mr. McCollum's underlying medical conditions heat stroke became an "imminent" danger.

He will testify the Hutchins State Jail does not comply with American Correctional Association standards which require prisons be able to mechanically raise and lower indoor temperatures to provide a "comfortable" temperature. He will testify that the prison does not comply with standards for human occupancy relied upon in his field. He will testify that Texas county jails are required to keep temperatures between 65 and 85 degrees indoors. He will testify that almost 95% of housing in the South has at least some air conditioning.

He will testify that, based on his observations of the prison and TDCJ records, that the temperatures inside the prison are substantially similar to the outdoor temperatures during the summer.

He will testify that delays in fixing broken equipment at the Hutchins Unit were abnormally long. He will testify these delays indicate prison administrators failed to take dangerous conditions inside the prison seriously.

He will testify to the temperature and heat index inside the prison at the time of Mr. McCollum's incarceration, calculated based on available data, data considered reliable in his field, and calculations considered reliable in his field.

He will testify about the heat index, the temperature the human body "feels," and the heat index's effect on the human body. He will testify about the dangerousness of high temperatures and heat indexes.

He will testify that the temperatures and heat indexes inside the prison put inmates at increased risk of heat-related illness and death.

He will testify TDCJ and UTMB failed to provide important precautionary measures, such as housing in cooler parts of the prison, respite areas, or use of technologies such as air conditioning, misters, or portable air conditioning.

Likewise, he will testify that measures TDCJ and UTMB relied upon were inadequate, such as drinking water from the prison's sinks that was not cool enough to be effective.

Prof. Balsamo's opinions and compensation are described in greater detail in his Rule 26 expert report, which was produced contemporaneously to the Defendants.

3.     Ron Brown

Mr. Brown is a professional engineer with over 40 years of experience in developing and installing mechanical, plumbing, and electrical systems in commercial, residential, and educational settings. He has a BSME in mechanical engineering from Lamar University, and is licensed in 23 states.

Mr. Brown will testify based on the documents identified in his expert report, and his personal observations at the Hutchins Unit on September 23, 2013.

He will testify that while many buildings at the Hutchins State Jail are air conditioned, that the inmate housing areas are not. He will testify about the construction, insulation, and ventilation at the prison based on his review of documents and personal observations.

He will testify to the indoor temperatures and heat indexes in the non-air conditioned buildings. He will testify these temperatures and heat indexes are dangerous, "unbelievable," and unfit for human habitation.

He will testify that the operation of fans actually adds heat to the building during periods of high temperatures.

He will testify about various ways to add air conditioning to the inmate housing areas and Chow Hall at the Hutchins State Jail, and the cost thereof, and that doing so would be easy and cost effective.

Mr. Brown's opinions and compensation are described in greater detail in his Rule 26 expert report, which was produced contemporaneously to the Defendants.

4.     Lt. Roger Clark (ret.)

Lt. Clark is a twenty-seven year veteran of the Los Angeles County Sheriff's Department. He was a lieutenant for fifteen years before retiring in 1993. Among other duties, he served as an administrator/lieutenant at the Los Angeles County Men's Central Jail, which, during his tenure, incarcerated over 7,000 men, and provided hospital services. He trained new officers in peace officer standards.

Lt. Clark has worked as a police and jail procedure expert since his retirement from active duty. He has testified as an expert on use of force, jail procedures and jail administration, investigations, police procedures, police tactics, investigative procedures, shooting scene reconstruction, and police administration in Arizona State Courts, California Courts, Washington State Courts and Federal Courts in Arizona, California, Colorado, Illinois, Indiana, Louisiana, Missouri, Oregon, Nevada, New Mexico, Ohio, Pennsylvania, Texas, Utah and Washington. He has testified before the Los Angeles Police Department Board of Rights and the Los Angeles County Civil Service Commission. He testified before the Harris County

(Texas) Grand Jury. He has also submitted written opinions in state and federal courts in matters in Alaska, Florida, Idaho, Montana, North Carolina, Oregon and Wyoming.

Lt. Clark was recognized as an expert in police administration and use of force by the Ninth Circuit Court of Appeals in *Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007) and *Torres v. City of Los Angeles*, 540 F.3d 1031, 1042-43 (9th Cir. 2008). The Ninth Circuit relied on his expert testimony regarding jail administration in *Starr v. Baca*, 2011 WL 2988827 (9th Cir. 2011). The Fifth Circuit has relied on his opinions in *Bishop v. Arcuri*, 674 F.3d 456 (5th Cir. 2012).

Lt. Clark will testify correctional officers failed to prevent Mr. McCollum's death by deliberately delaying medical treatment when he was found convulsing and unresponsive. He will testify the policies, practices and procedures in existence at the Hutchins Unit needlessly delayed medical treatment Mr. McCollum urgently needed.

He will testify Hutchins State Jail personnel were aware of Mr. McCollum's medical conditions, but there were no policies or procedures to provide increased monitoring though he was medically fragile when exposed to extremely high temperatures. In his opinion, Mr. McCollum should have been transferred to an air-conditioned facility.

He will testify the Hutchins State Jail does not meet nationally recognized minimum standards for correctional facilities, including standards regarding environmental conditions, staffing, reception/intake, classification, and training.

He will testify that TDCJ and UTMB did not have appropriate policies and procedures to address extreme temperatures necessary to protect and safely house heat-sensitive prisoners.

This witness will be paid an hourly fee for expert services rendered in this case. His compensation and fee schedule are described in detail in his report.

Lt. Clark's CV, fee schedule, and Rule 26 list of previous testimony is attached as exhibits to his report.

5.   James P. Mandel, Ph.D.

James P. Mandel, Ph.D., C.P.A. is an economist who will testify about the present value of the Estate of Larry McCollum's damages, lost wages, and economic loss. These opinions are detailed in his attached report. He may testify as to any issue on which he has factual knowledge or which is within his area of expertise. He will testify as to the present value of economic loss to the Estate of Larry McCollum. He will respond to or address any testimony or expected testimony by any other witness within his area of expertise. He will testify

6

regarding any opinion or fact or issue raised by Plaintiff's witnesses, Defendants, Defendants' employees, or Defendants' experts within his area of expertise.

Please refer to Dr. Mandel's written report and any supplements thereto, for further information regarding Dr. Mandel's opinions, testimony and mental impressions in this case. His opinions concerning the present value of Mr. Orr's damages are based upon the depositions of the Plaintiffs, any literature he may have relied upon, and his education, training and experience.

Dr. Mandel's curriculum vitae, written report, list of cases in which he has given testimony were contemporaneously produced to the Defendants. Dr. Mandel will be paid an hourly fee of $325 an hour for his services in this matter. Finally, Dr. Mandel reserves the right to supplement and amend his report and opinion based on the review of additional records.

These witnesses opinions are based on TDCJ reports and investigations by TDCJ related to McCollum's death, TDCJ and UTMB policies, health care records, American Correctional Association standards, any literature they may have relied upon, statements and depositions taken in this cause (and exhibits thereto), documents produced by Defendants in this cause in discovery and pursuant to Open Records Requests, and the policies relevant to the incident, and their education, training and experience, as well as additional documents identified in their reports.

Expected exhibits to which these witnesses may refer or rely upon when giving their testimony at trial are not fully known at this time but are expected to include related TDCJ and UTMB records, health care records, relevant literature, any written report of these witnesses or other witnesses and any of the testimony of any party or other witness, the documents produced in this cause in discovery and pursuant to Open Records Request, articles concerning the events and TDCJ and UTMB policies, depositions in this cause, exhibits to said depositions, depositions and statements of the officers involved, their supervisors or into investigation, or lack thereof, of Mr. McCollum's death. Plaintiffs will supplement this list of expected trial exhibits and expected testimony as discovery proceeds in this case. These witnesses may refer to or rely upon any exhibit shown to or admitted into evidence by any other witness.

### B.     Non-Retained Experts - Healthcare Providers

The following health care providers (who have not been retained by, or employed by, and are not in the exclusive control of Plaintiffs) may testify concerning their evaluation and treatment of Mr. McCollum, the Plaintiffs, and the damages sustained as a result of the events of July 22, 2011 through July 29, 2011, as well as treatment subsequent provided to the Plaintiffs.

Providers to Plaintiff Stephanie Kingrey:

a.  Michelle Brem, LPC

7

        4800 West Waco Drive
        Suite 126
        Waco, Texas 76710
        (254) 326-1498

        Ms. Brem is a licensed professional counselor who is treating Ms. Kingrey for depression following her father's death. Ms. Brem is not retained by the Plaintiffs for the purpose of giving expert testimony, but is expected to testify about the treatment she is providing Ms. Kingrey, Ms. Kingrey's symptoms and psychiatric condition, and the causes thereof. Furthermore, Ms. Brem is expected to testify about the present and future cost of treatment for Ms. Kingrey.

Providers to Larry Gene McCollum

    a.    Parkland Hospital treating physicians and nurses

        Kevin Ross Davidson, M.D.
        Chet Schrader, M.D.
        Lance S. Terada, M.D.
        Carlos E. Girod, M.D.
        Jonathan Martin Hopkins, D.O.
        Joseph Young, D.O.
        Tito M. Orig, M.D.

    b.    McLennan County jail treating physicians and nurses

        Holli Lehman, L.V.N.
        Krystal Gordon, L.V.N.
        Dr. Browder
        A. Morgan, L.V.N.
        Maricella Hernandez, L.V.N.

    c.    University of Texas Medical Branch treatment providers

        Ananda Babbili, P.A.
        Yonette Gilford
        Kimberly Weaver
        J. Smith, M.A.
        Gina Stokes, R.N.

    d.    Hutchins Emergency Medical Services providers

        William P. Harvill
        Terry D. Pressler

       These treatment providers provided medical care to Mr. McCollum during the course of his incarceration at the Hutchins State Jail. They are identified in Mr. McCollum's medical records, and are not under the exclusive control of the Plaintiffs. These providers are not retained by the Plaintiffs, and are expected to testify according to Mr. McCollum's medical records, which have been produced to the Defendants or are equally available to them.

    e.    Dr. Keith Pinckard, M.D., Ph.D.

       University of New Mexico Office of the Medical Investigator
       1101 Camino de Salud
       Albuquerque, NM 87102

       Dr. Pinckard performed the autopsy on Mr. McCollum, and concluded he died of hyperthermia caused by his underlying medical conditions of hypertension and obesity, combined with lack of air conditioning in a very hot environment. Plaintiffs expect he will testify according to the autopsy report, which is equally available to the Defendants, and will testify that conditions in the prison were a proximate cause of his heat stroke. Plaintiff does not have a copy of Dr. Pinckard's CV.

The above persons are health care providers, including physicians, technicians, nurses, radiologists, physician's assistants, healthcare providers, clinics, hospitals and their agents, representatives and employees, where Mr. McCollum received medical care and treatment for his injuries related to the events causing his death, or where he received medical care prior to his death, or was examined after his death. Plaintiffs identify the above named health care providers as persons who may give expert testimony at the trial of this cause. To the extent it is necessary to call live at the trial of or deposition in this cause any custodian of records for any of the following health care providers, Plaintiffs identify any such custodian as a person who may have expert knowledge regarding issues related to the incident in question. The health care providers listed above are not within the control of Plaintiffs and have not been retained by Plaintiffs as expert witnesses (and therefore have not provided to Plaintiffs any specific written report other than their respective medical records); therefore, for the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to their medical records of Mr. McCollum and any deposition testimony given or to be given by any such healthcare providers.

For the subject matter on which the medical providers will testify and the general substance of their mental impressions and opinions and for a brief summary of the basis for their opinions, please refer to their respective medical/health care records.

Plaintiffs have furnished no documents, tangible things, reports, models or data compilations to any of the medical providers of Plaintiffs or Mr. McCollum for their review, nor have Plaintiffs prepared any such information for any medical provider in anticipation of their testimony.

9

        Plaintiffs do not have possession of the curriculum vitae of any relevant medical provider and have not retained any such medical provider to testify live at the trial of this cause. Therefore, if any of the relevant medical providers are produced for oral deposition, the parties may at that time subpoena any such resume from the provider.

B. **Non-Retained Non-Medical Experts**

        Lance Lowry
        AFSCME/CEC7
        Barret Professional Bldg.
        1314 10th Street, Suite 230
        Huntsville, Texas 77320

        Mr. Lowry is the president of the TDCJ correctional officers' union. As a correctional officer, he has extensive experience in the TDCJ prison system. He is expected to testify concerning the working conditions in TDCJ facilities, including the Hutchins State Jail, and TDCJ officials' longstanding knowledge of the dangerous heat and humidity that exists inside TDCJ facilities during Texas summers, and TDCJ's failure to remedy this for prisoners or the men and women that work in the prisons during the incredibly hot summers.

        Mr. Lowry is not retained by the Plaintiffs. Plaintiffs do not have a copy of his C.V., or any previous testimony he has given. His testimony is expected to be consistent with his public statements regarding high temperatures inside TDCJ prisons.

D. Plaintiffs reserve the right to elicit, by way of cross-examination, opinion testimony from experts designated or to be designated and called by other parties to the suit. Plaintiffs also reserve the right to elicit, by way of cross-examination, opinion testimony from Defendants and their employees. Plaintiffs express their intention to possibly call, as witnesses associated with adverse parties, any of Defendant's experts and/or employees (or former employees) of Defendants TDCJ and UTMB. Plaintiffs do not have any control over any such witness to be named by Defendant, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendants' discovery responses. In that regard, Plaintiffs refer you to Defendant's discovery documents, deposition testimony, and documents produced by Defendants in discovery or through Open Records Request for the subject matter, facts known, and opinions and impressions of these witnesses. Plaintiff reserves the right to obtain opinion testimony from any such witness within their area of expertise or related to this case.

E. Plaintiffs reserve the right to call undesignated rebuttal expert witnesses, whose testimony cannot reasonably be foreseen until the presentation of the evidence against the Plaintiffs.

F. Plaintiffs reserve the right to withdraw the designation of any expert and to aver

    positively that any such previously designated expert will not be called as a witness at trial, and to re-designate same as a consulting expert, who cannot be called by opposing counsel.

G.     Plaintiffs reserve the right to supplement this designation with additional designations of experts within the time limits imposed by the Court or any alterations of same by subsequent Court Order or agreement of the parties, or pursuant to the Federal Rules of Civil Procedure.

H.     Plaintiffs reserve the right to elicit any lay opinion testimony at the time of trial which would be truthful, which would be of benefit to the jury to determine material issues of fact, and which would not violate any existing Court Order or the Federal Rules of Civil Procedure and/or the Federal Rules of Evidence.  Specifically, Plaintiffs reserve the right to elicit such testimony from persons with knowledge of relevant facts who have been identified in response to discovery propounded to Plaintiffs.

I.     Plaintiffs reserve all additional rights they have with regard to experts pursuant to the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the case law construing same, and the rulings of the trial court.

J.     Plaintiffs names all of those persons identified as having knowledge of relevant facts whose training and background enables them to testify as experts and who may be called as experts by any of the parties to this litigation.  Furthermore, Plaintiffs adopt the designation of experts of Defendants to this litigation, without necessarily adopting their opinions or validating their qualifications as experts.

K.     Plaintiffs reserve the right to call former and current employees and/or representatives of Defendants as they are identified in discovery.

L.     Attorneys' Fees

    Ed Moore, and Plaintiffs' counsel, Jeff Edwards, Scott Medlock, James Harrington, Brian McGiverin, Eilot Shavin, and Wayne Krause Yang will testify concerning the amount, reasonableness, and necessity of Plaintiffs' attorney fees.  Their biographies and resumes were produced contemporaneously to the Defendants.

M.     Texas Department of Criminal Justice officers, TDCJ and University of Texas Medical Branch officials, and Defendants' Experts

    Plaintiffs reserve the right to elicit expert testimony and opinions through the cross-examination of all TDCJ and UTMB officials identified herein, and any expert witnesses designated by Defendants.

N.     Records Custodians

    To the extent it is necessary to obtain testimony from any custodians of records, Plaintiffs identify any such custodians as potential expert witnesses.

DATED: December 20, 2013.

        Respectfully submitted,

        The Edwards Law Firm
        The Haehnel Building
        1101 East 11th Street
        Austin, Texas 78702
            Tel.   512-623-7727
            Fax.  512-623-7729

        By    /s/ Jeff Edwards
        JEFF EDWARDS
        State Bar No. 24014406
        Lead Counsel

        Scott Medlock
        State Bar No. 24044783
        Brian McGiverin
        State Bar No. 24067760
        James C. Harrington
        State Bar No. 09048500

        TEXAS CIVIL RIGHTS PROJECT
        1405 Montopolis Drive
        Austin, TX 78741
        (512) 474-5073 [phone]
        (512) 474-0726 [fax]

        Eliot Shavin
        State Bar No. 18138200
        2600 State Street
        Dallas, Texas 75204
        214-522-2010 (telephone)
        214-720-9594 (fax)
        Local Counsel

        ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

    By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Northern District of Texas.