**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **STEPHEN McCOLLUM,** *et al.***,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:12-CV-02037** |
| | § | |
| **BRAD LIVINGSTON,** *et al.***,** | § | |
| *Defendants*. | § | *JURY* |

**DEFENDANT BRAD LIVINGSTON'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT ON THE BASIS OF QUALIFIED IMMUNITY**

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Defense Litigation

KAREN D. MATLOCK
Chief, Law Enforcement Defense Division

DEMETRI ANASTASIADIS*
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas   78711
[Tel.] (512) 463-2080
[Fax] (512) 495-9139

**ATTORNEYS FOR DEFENDANTS**
-------------------------------------------------------------

**\*Attorney of Record**

## TABLE OF CONTENTS

**Page**

Table of Contents ............................................................................................................... i

Index of Authorities  ........................................................................................... ii, iii, iv, v

Codes and Rules ............................................................................................................... v

Allegations Against Livingston In Second Amended Complaint .................................   1

I.       Knowledge Of The Absence Of Air Conditioning And That Some Inmates, Due To A Pre Existing Medical Condition, May Be More Vulnerable To Heat Does Not State A Claim Against The Chief Prison Security Administrator Not Present At The Unit Or Personally Involved In Taking Any Action Regarding Plaintiff And Who Is Not Medically Qualified To Make Treatment And Medical Housing Assignments ................................................................ 2

II.      The Second Amended Complaint's Claims Against the "Defendants" collectively, Without Specifying The Conduct Of Each Defendant Alleged To Violate Clearly Established Law Does Not Defeat Livingston's Immunity .............................................................................. 8

III.     Clearly Established Constitutional Law Did And Does Not Require A Prison Security Administrator To Provide 24 Hour On Site Prison Medical Care ................................. 15

IV.      Livingston'S Alleged Failure To Train And Supervise Clark, Tate And Sanders Fails To State A Claim Or Overcome His Qualified Immunity ...........................................   18

Conclusion ..................................................................................................................... 22

Notice of Electronic Filing ............................................................................................. 25

Certificate of Service ..................................................................................................... 26

# INDEX OF AUTHORITIES

**Cases**                                                                                   **Page**

*Anderson v. Creighton,*
    483 U.S. 635, 638, 639, 640–41, 107 S.Ct. at 3034, 3039–40 (1987)…………11, 14, 17, 18

*Ashcroft v. Iqbal,*
    556 U.S. 662,676, 677, 129 S. Ct. 1937, 1949-50 (2009)……… 3, 4, 8, 10, 13, 14, 20, 21

*Atuahene v. City of Hartford,*
    10 Fed. Appx. 33, 34 (2nd Cir.2001)…………………………………………..10, 12, 13

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544, 127 S.Ct. 1955 (2007)…………………………………………………….4

*Bennett v. City of Slidell,*
    728 F.2d 762, 767 (5th Cir. 1984)…………………………………………………… .23

*Bennett v. Reed,*
    534 F.Supp. 83, 87 (E.D.N.C.1981)………………………………………………… . . .15

*Blackmon v. Garza,*
    484 Fed. Appx. 866, fn. 6 (5th Cir. 2012)…………………………………………   4

*Blackmon v. Kukua,*
    758 F.Supp.2d 398, 411, 414 (S. D. Tex. 2010.)………………………………………..22

*Burns–Toole v. Byrne,*
    11 F.3d 1270, 1274 (5th Cir.1994)…………………………………………………… 11

*Board of County Comm'r v. Brown,*
    520 U.S. 397, 405 (1997)………………………………………………………   …23

*City of Los Angeles v. Lyons,*
    461 U.S. 95, 105-106, 111 (1983)………………………………………………… …24

*Domino v. Texas Dept of Criminal Justice,*
    239, F.3d 752, 756 (5th Cir. 2001)………………………………………………… 7

*Dudley v. Angel,*
    209 F.3d 460, 462 (5TH Cir. 2000)………………………………………………… 12

*Durmer v. O'Carroll,*
    991 F.2d 64, 69 (3d Cir.1993)……………………………………………………… 7

*Duvall v. Dallas County, Tex.*,
    631 F.3d 203, 209 (5th Cir. 2011)…………………………………………………… 22

*Edgerly v. City & Cnty of San Francisco*,
    599 F.3d 946, 961–62 (9th Cir.2010)……………………………………………… 16

*Estate of Davis ex rel. McCully v. City of North Richland Hills*,
    406 F.3d 375, 381(5th Cir.2005)…………………………………………………… 7

*Fantone v. Herbik*,
    2013 WL 2564429 (3rd Cir.2013)…………………………………………………6

*Ferro v. Ry. Express Agency, Inc*.,
    296 F.2d 847, 851 (2d Cir.1961)…………………………………………………13

*Hathaway v. Bazany*,
    507 F.3d 312, 319 (5th Cir. 2007)………………………………………………… 22

*Hayes v. Snyder*,
    546 F.3d 516, 527 (7th Cir.2008)…………………………………………..6, 23

*Jolly v. Klein*,
    923 F.Supp. 931, 943 (S.D. Tex. 1996)…………………………………………… 10

*King v. Chide*,
    974 F.2d 653, 657 (5th Cir.1992)………………………………………………… 11

*Lane v. Capital Acquisitions and Management Co*.,
    2006 WL 4590705 *5 (S.D.Fla.,2006)…………………………………………… 9, 10

*Lee v. Rushing*,
    2013 WL 2462247 (5th Cir. 2013)…………………………………………………7

*Lee v. Young*,
    533 F.3d 505, 511 (7th Cir.2008)………………………………………………… … 23

*Lindsey v. McGinnis*,
    1994 WL 162610 (6th Cir. 1994)…………………………………………………15

*Lippe v. Bairnco Corp*.,
    225 B.R. 846, 860 (S.D.N.Y., Oct. 13, 1998)…………………………………… … 9

*Marcilis v. Twp. of Redford*,
    693 F.3d 589, 596 (6th Cir.2012)…………………………………………………10

*McClendon v. City of Columbia,*
    305 F.3d 314, 323 (5th Cir. 2002)……………………………………………… 17

*Medina v. Bauer,*
    2004 WL 136636, *6 (S.D.N.Y.2004)……………………………………………….. 10

*Miller v. Graham,*
    447 F. App'x 549, 551 (5th Cir. 2011)………………………………………     22

*Morgan v. Swanson,*
    659 F.3d 359, 372 (5th Cir. 2011)…………………………………………… .11, 14

*Mouille v. City of Live Oak,*
    977 F.2d 924, 928 (5th Cir. 1992)……………………………………………… 17

*Murphy v. Kellar,*
    950 F.2d 290, 292 (5th Cir. 1992)……………………………………………… 10

*Obata v. Harrington,*
    2013 WL 1442481 (D.Hawai'i,2013): (pp.3-4)……………………………………15, 23

*Or. State University Student Alliance v. Ray,*
    699 F. F.3d 1053, 1070 (9th Cir.2012)…………………………………………… 16

*O'Shea v. Littleton,*
    414 U.S., at 502, 94 S. Ct., at 679……………………………………………..     24

*Ourts v. Cummins,*
    825 F.2d 1276, 1277 (8th Cir.1987)…………………………………………… 16

*Parker v. Amos,*
    2011 WL 3568836 *3 (W.D.Va.2011)………………………………………… .16

*Pfannstiel v. City of Marion,*
    918 F.2d 1178, 1183 (5th Cir. 1990)……………………………………………     12

*Rankin v. Klevenhagen,*
    5 F.3d 103, 106 (5th Cir. 1993)……………………………………………….... .17

*Robbins v. Oklahoma,*
    519 F.3d 1242 C.A. 10 (Okla.), 2008………………………………………     12

*Robinson v. Conner,*
    2012 WL 2358955 *5 (M.D.Ala.2012)………………………………………… 16

*Salas v. Carpenter*,
    980 F.2d 299, 305 (5th Cir. 1992)……………………………………………… 17

*Samaad v. City of Dallas*,
    940 F.2d 925, 940 (5th Cir. 1991)……………………………………………… 17

*Saucier v. Katz,*
    533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)……………………………   13

*Siegert v. Gilley*,
    500 U.S. 226, 230 (1991)………………………………………………………….17

*Simmons v. Abruzzo*,
    49 F.3d 83, 86 (2d Cir.1995)……………………………………………………….13

*Spann v. Rainey*,
    987 F.2d 1110, 1114 (5th Cir. (1993)……………………………………………... 17

*Starr v. Baca*,
    633 F.3d 1191, 1196 (9th Cir.2011)……………………………………………….16

*Streetman v. Jordan*,
    918 F.2d 555, 556 (5th Cir. 1990)………………………………………………... .18

*Sylvester v. Cain*,
    311 F. App'x 733, 735 (5th Cir., Feb. 20, 2009)……………………………………. 22

*Thompson v. City of Starkville, Miss.*,
    901 F.2d 456, 469 n.13 (5th Cir. 1990)…………………………………………… 22

*Valencia v. Wiggins*,
    981 F.2d 1440, 1448 (5th Cir.) cert. denied, 113 S.Ct. 2998 (1993)…………………… 17

*Williams v. Limestone County*,
    198 Fed. Appx. 893, 897 (11th Cir. 2006)……………………………………… . . 15

## **Codes and Rules**

42 U.S.C. 1983………………………………………………………………………1, 7

42 U.S.C. 1988(b)……………………………………………………………………… 24

Fed. R. Civ. Proc. 12(b)6)……………………………………………………………….1

Fed. R. Civ. Proc 12(c)…………………………………………………………………   1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **STEPHEN McCOLLUM,** *et al.*, | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:12-CV-02037** |
| | § | |
| **BRAD LIVINGSTON,** *et al.*, | § | |
| *Defendants.* | § | *JURY* |

**DEFENDANT BRAD LIVINGSTON'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT ON THE BASIS OF QUALIFIED IMMUNITY**

TO THE HONORABLE UNITED STATES MAGISTRATE JUDGE RENEE HARRIS TOLIVER:

     Defendant Brad Livingston files the following Motion to Dismiss the Second Amended Complaint (Doc. 119) on the basis of Qualified Immunity pursuant to Fed. R. Civ. Proc. 12(b)6) or in the alternative, for judgment on the pleadings.   Fed. R. Civ. Proc 12(c)

**ALLEGATIONS AGAINST LIVINGSTON IN SECOND AMENDED COMPLAINT**

     Plaintiffs sue TDCJ Director Brad Livingston under 42 U.S.C. 1983 claiming he is liable for the death of Larry McCollom at the Hutchins State Jail in Dallas, Texas on July 22, 2011.   Plaintiffs do not allege that TDCJ Director Livingston had any knowledge of McCollum's circumstances prior to his death nor that Livingston had personal involvement in his medical treatment, supervision, classification, assignment, any more that the Director of TDCJ is personally involved with any of the other 152,303 inmates in TDCJ custody.[1]

---

[1]     http://www.tdcj.state.tx.us/documents/Statistical_Report_FY2012.pdf

**I.      Knowledge Of The Absence Of Air Conditioning And That Some Inmates, Due To A Pre Existing Medical Condition, May Be More Vulnerable To Heat Does Not State A Claim Against The Chief Prison Security Administrator Not Present At The Unit Or Personally Involved In Taking Any Action Regarding Plaintiff And Who Is Not Medically Qualified To Make Treatment And Medical Housing Assignments**

The Second Amended Complaint-Doc.119-attempts to assign liability to TDCJ Director Livingston on the basis of his knowledge that prisons get hot during the summer, that TDCJ prisons are not air conditioned and for his alleged lack of intervention and involvement in medical decisions made by UTMB regarding the decedent, Larry Gene McCollum: (Paragraphs 54, 93,94, 96, 100, 103, 109, 123, 132, 137, 136, 137, 138, 139, 157, 158)

54. TDCJ and UTMB officials, including but not limited to Eason, Pringle, Clark, Tate, Sanders, and Livingston, were aware many TDCJ prisoners live with obesity, diabetes and hypertension, and are housed in non-air-conditioned TDCJ facilities, including the Hutchins State Jail.

93...Livingston, Eason, Owen and Pringle, took no steps to remedy this despite knowing and informing their employees that extreme heat could and would cause serious injury or death, even after ten people died from heat stroke in the summer of 2011.

94...Livingston, Eason, Clark, Tate, Sanders, and Pringle, knew "victims of prolonged or high heat can develop heat cramps or heat exhaustion.

96. System-wide, at least ten people in TDCJ custody, including Mr. McCollum, died of heat-related causes in the summer of 2011. Two men died before that, in 2007. All were, or should have been, known to UTMB and TDCJ, including Livingston and Eason.

100...Despite his knowledge of this policy, and his knowledge of the extremely hot conditions in TDCJ facilities in the summer of 2011, Livingston and Eason and, at least at the Hutchins State Jail, Warden Pringle, took no action to cool down these exceptionally dangerous and hot conditions. Livingston's refusal to cool inmate living areas was a moving force causing Mr. McCollum's death. Likewise, Livingston and Eason's failure to cool these areas or move inmates with heat-sensitive disabilities to air-conditioned areas was a cause of McCollum's death.

103. Approving air conditioning or other cooling mechanisms in TDCJ prisons would require action at the highest levels of the agency, including authorization and approval from Livingston – approval he has to date refused to provide.

109. And Director Livingston has made no effort to cool the brutally hot temperatures despite knowing that top UTMB officials testified that air-conditioned housing areas would be medically beneficial for prisoners with disabilities like Mr. McCollum

2

123. Of the 97 state-operated TDCJ facilities, 56 have some air conditioning in inmate living areas…Yet Livingston, Eason, Owen and Pringle took no steps to house prisoners with known medical conditions complicated by heat, such as those suffering from diabetes, hypertension, obesity, or prescribed diuretics, in locations that were air conditioned.

132...pursuant to TDCJ policy, which was known to Directors Livingston and Eason, as well as Warden Pringle, Mr. McCollum was not issued a cup when he entered prison, shortly before his death. Without a cup, Mr. McCollum could not drink any of the water provided in the water jugs (much less a sufficient amount of water to counteract the extreme temperatures), whether or not adequate water was provided, and whether or not the water was cold. Livingston, Eason and Pringle knew this policy denied this basic accommodation to prisoners like Mr. McCollum, yet chose not to remedy it.

137. While Livingston, Eason, and Pringle were aware of the brutal heat in the Dallas area, including inside the Hutchins Unit in the weeks preceding Mr. McCollum's injuries and death, and Eason and Livingston were notified of numerous other deaths, they took no steps to remedy the situation and provided no reasonable accommodations for prisoners like Mr. McCollum whose disabilities made them more susceptible to heat stroke.

138…Livingston, Eason, Pringle, TDCJ and UTMB knew indoor temperatures in TDCJ facilities regularly exceeded 90 degrees, and failed to take reasonable steps to protect the health and safety of prisoners.

139. Livingston, Eason, and Pringle as well as TDCJ and UTMB also knew TDCJ routinely housed people with obesity, hypertension and diabetes in extremely hot facilities like the Hutchins State Jail. TDCJ's policies and practices, which Livingston, Eason, UTMB director Owen and Pringle knew about, make no accommodation for people with hypertension or diabetes during periods of extreme temperatures.

157...Livingston… knew about and ratified the decision to delay prisoners access to medical care.

158…Livingston also knew about and effectively ratified an informal TDCJ policy of failing to provide immediate medical attention to non-responsive prisoners suffering seizures at prisons where there was no available medical staff.

Knowledge alone is an insufficient basis for Constitutional liability.   *Ashcroft v. Iqbal*, 556

U.S. 662, 677, 129 S. Ct. 1937, 1949-50 (2009):

...respondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution.   We reject this argument.   Respondent's conception of "supervisory liability" is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents. In a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their`` servants—the term "supervisory liability" is a

misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.  In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

Knowledge that inmates are housed in non-air conditioned prisons as actionable is premised on the theory that the Constitution required air conditioned prisons at the time of McCollum's death. It did not.  *Blackmon v. Garza,* 484 Fed. Appx. 866, fn. 6 (5th Cir. 2012) ("we do not suggest that air conditioning is mandatory to meet the requirements of the Eighth Amendment."). Paragraph 130's claim that Livingston had knowledge that inmates were not issued cups fails because knowledge alone does not overcome immunity and because it is implausible within the meaning of *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[2] *Id*., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556, 127 S.Ct. 1955.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' ").

Paragraph 132 claims that TDCJ provided water, but "Without a cup, Mr. McCollum could not drink **_ANY_** of the water provided in the water jugs…" (emphasis added). Aside from  assigning liability to Livingston solely because he had knowledge of such alleged policy-an insufficient basis-the claim that McCollum was not able to drink "any" water without a cup is implausible within the meaning of *Ashcroft*. The Second Amended Complaint claims that McCollum, "morbidly obese" and in poor health, was at the Hutchins State Jail for one week, July 15-22, 2011 where

---

2        Citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)

"temperatures reached 102 degrees.".[3]  A healthy person cannot survive for more than about three (3) days without "any" water.[4] McCollum was 58 years old, "overweight and morbidly obese and suffering from diabetes" and on diuretics.[5]

Paragraph 54's claim that "many TDCJ prisoners live with obesity, diabetes and hypertension" as a basis for Constitutional liability is defeated by admissions that the responsibility for medical treatment and assignment is the responsibility of medical officials at an inmate's unit-not the TDCJ Executive Director/security administrator officed in Huntsville, Texas, hundreds of miles from prison units and medically unqualified to make inmate housing or assignment decisions based on medical history and condition.[6]

Also defeated by the Second Amended Complaint's own allegations, is the claim that Livingston had a Constitutional duty to dictate to medical professionals how they should house, assign and treat inmates with pre-existing medical conditions or to take over medical care and housing assignment decisions.   The delegation to UTMB of inmate medical treatment, housing and assignment decisions based on a pre-existing infirmity, is a long established common sense practice and policy consistent with legal precedent, as the Second Amended Complaint admits:

---

3        Second Amended Complaint, paragraphs 43, 55, 69, 70.

4        http://www.livescience.com/32320-how-long-can-a-person-survive-without-water.html

5        *Id*.  Paragraphs 23, 44-45.  In that condition, and unable to "drink ***any*** of the water provided in the water jugs…".  McCollum could not have survived even the 3 days that a healthy person would, let alone a full week. Every inmate at the Hutchins State Jail, including those in excellent health, would have been all dead in about three days, if the Second Amended Complaint's assumption was true-that without a drinking cup, no inmate was able to access "any" of the water in the water jugs provided by TDCJ for inmate use as claimed in paragraph 132.

6          The Hutchins State Jail where McCollum died is in Dallas, Texas. Second Amended Complaint, paragraph 1. TDCJ Director Livingston's office in Huntsville, Texas is 171.06 miles from Dallas, Texas.

http://www.mapquest.com/maps?1c=Huntsville&1s=TX&1z=77341&2c=Dallas&2s=TX#dca5965cf7e104a8a6894297

117.   The intake physical is also the first time a prisoner can have his housing assignment restricted by UTMB. Thus, until the intake physical conducted by a UTMB doctor or physician's assistant took place, UTMB effectively chose not to protect Mr. McCollum, and virtually guaranteed he would be exposed to dangerous temperatures.

118. When UTMB finally does perform the physical, medical staff make  housing recommendations for prisoners.

119. UTMB also recommends bunk assignments for prisoners during the intake physical.

120. UTMB officials, including Babbili, were aware many TDCJ prisoners live with hypertension, diabetes, or are obese, but are housed in non-air-conditioned, non-climate controlled TDCJ facilities, including the Hutchins State Jail. While these housing decisions are ultimately made by TDCJ, ***Warden Pringle acknowledged following recommendations made by UTMB, and confirmed that he would have moved prisoners to air conditioned facilities if told to do so by UTMB.*** (emphasis added)

122...Though prisoners taking hydrochlorothiazide are prohibited from "recreating" in areas where the temperature exceeds 95 degrees, no one from UTMB made a recommendation to *house* Mr. McCollum safely – guaranteeing he would spend 24 hours a day in extremely hot conditions.

The Second Amended Complaint's admissions mirror clearly established law holding that a prison security administrator with no personal involvement in the circumstances leading to an inmate injury, does not lose his qualified immunity by relying on prison unit medical professionals' performance of their duty to administer competent medical care to prison inmates.   *Lee v. Young*, 533 F.3d 505, 511 (7th Cir.2008) ("[I]n determining the best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals."). *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir.2008) (reiterating "the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care"). *Fantone v. Herbik*, 2013 WL 2564429 (3rd Cir.2013) (State prison administrators who handled inmate's grievances were not deliberately indifferent to his serious medical needs, in violation of Eighth Amendment, where administrators had no responsibility or authority to treat inmates medically, and had no reason to

believe that prison doctors were either mistreating or not treating inmate.)*; Lee v. Rushing*, 2013 WL 2462247 (5th Cir. 2013) (Sheriff was not liable under 42 U.S.C. 1983 for deliberate indifference to prisoner's serious medical need based on prisoner's claim that sheriff was aware of prisoner's scalp condition and failed to ensure timely care, in alleged violation of Eighth Amendment; prisoner failed to allege any_personal involvement by sheriff in his treatment, medical complaints were monitored by the jail's medical personnel, and there was no evidence indicating that sheriff personally ignored prisoner's medical complaints or denied prisoner treatment.); *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir.1993).   Warden and Commissioner for Corrections, neither of whom were physicians, could not be considered deliberately indifferent to prisoner's medical needs simply because they failed to respond directly to medical complaints of prisoner)

The Second Amended Complaint's claim that medical professionals, based on McCollum's obesity and other medical vulnerabilities, should have made a recommendation to TDCJ that McCollum be housed in an air conditioned environment cannot be a basis for a claim against Livingston.   Clearly established law does not require prison administrators to be medical doctors nor to personally attend to or create policy for medically vulnerable inmates-only that they have employed qualified medical personnel for this purpose.   UTMB medical staff's decision not to make an air conditioned housing recommendation for McCollum may not form the basis of a Constitutional claim against a security administrator not personally involved in the care and treatment of an inmate.   *Domino v. Texas Dept of Criminal Justice*, 239, F.3d 752, 756 (5th Cir. 2001) (plaintiff must show the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for a serious medical needs-failure to mitigate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference.).   *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381(5th Cir.2005) (Supervisory

officials cannot be held liable under 42 U.S.C. §1983 for the actions of subordinates on any theory of vicarious or respondeat superior liability.) *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1949-1950 (2009) ("Respondent correctly concedes that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*").

II.   **The Second Amended Complaint's Claims Against the "Defendants" collectively, Without Specifying The Conduct Of Each Defendant Alleged To Violate Clearly Established Law Does Not Defeat Livingston's Immunity.**

Paragraphs 58, 62, 91, 129, 133, 140, 141, 145,146, Second Amended Complaint, fail to overcome Livingston's immunity because they do not identify specific unconstitutional conduct of each defendant as required by clearly established law:

58. But even though TDCJ and UTMB's own internal policies and documents acknowledge the incredible danger extreme heat indexes pose to prisoners with heat-sensitive medical conditions (like Mr. McCollum), none of the **Defendants** did anything differently when the heat index reached the "extreme dangerous" levels.

62. Despite this, **Defendants** took no steps to reduce the heat levels inside the housing dorms. They did not bring in temporary cooling devices (like misters, foggers, or portable air conditioners) and they did not move prisoners with disabilities rendering them dangerously susceptible to extreme heat – like Mr. McCollum – to air-conditioned portions of the prison or to other prisons with air-conditioned housing areas. They did not even ensure prisoners had cool water to drink.

91. As the conditions at the Hutchins State Jail are long-standing, well-documented, and expressly noted by prison officials in the past, **Defendants** knew subjecting prisoners, like Mr. McCollum, to the obvious risk of prolonged exposure to high ambient temperatures and humidity, posed a life-threatening health risk. Yet, rather than seek to have the housing areas cooled, or to make sure inmates with medical conditions that render them particularly vulnerable     to extreme heat (such as diabetes, obesity, or hypertension) were housed in air conditioned units, these officials chose to subject all inmates to dangerous, extreme heat, a decision, of course they made from the comfort of their own air conditioned offices.

129. Significantly, **_Defendants_** chose not to provide prisoners, like Mr. McCollum, these opportunities to cool off in an air-conditioned environment at the Hutchins State Jail. Nor did anyone at TDCJ, including Defendants, ever notify McCollum of any other prisoner when they arrived that they could spend time in air conditioned parts of the prison.

133. **_TDCJ officials,_** including Eason, Pringle and Livingston, prohibit new prisoners at the Hutchins Unit, like Mr. McCollum, from owning personal fans to cool themselves, though personal fans are available to other prisoners convicted of more serious crimes in other TDCJ prisons and are part of TDCJ's alleged plan to combat the heat inside its non-air conditioned unites. (*sic*)

140. UTMB, TDCJ, Livingston, Eason, and Pringle – at a minimum – failed to take reasonable steps to safely house Mr. McCollum and protect him from heat stroke, a risk they were well aware of at the time. Livingston, Eason, and Pringle were deliberately indifferent to the extremely dangerous conditions caused by heat in TDCJ facilities.

141. At the time of Mr. McCollum's death, the law was clearly established that temperatures exceeding 90 degrees Fahrenheit are cruel and unusual, and create unconstitutional conditions of confinement. Thus, Livingston, Eason, and Pringle are not entitled to qualified immunity.

145. By subjecting Mr. McCollum to these extreme conditions of confinement, specifically excessive heat, with full knowledge of the dangerousness of those conditions, Defendants Livingston, Eason and Pringle acted with deliberate indifference to Mr. McCollum's serious health and safety needs, in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution.

146. The extreme temperatures **_Defendants_** tolerated at the Hutchins State Jail proximately caused Mr. McCollum's untimely death.

(emphasis added)


There are eight defendants in this case.   None of the individual defendants are vicariously liable for any of the acts or omissions of any other defendant. Claims made collectively against defendants are insufficient to defeat the qualified immunity of any individual defendant. The Complaint must allege what each official did or failed to do that was Constitutionally required. *Lippe v. Bairnco Corp.*, 225 B.R. 846, 860 (S.D.N.Y., Oct. 13, 1998) ("plaintiffs cannot simply 'lump' all the defendants together and allege that the purported acts of every defendant can be imputed to every other defendant"). *Lane v.*

*Capital Acquisitions and Management Co.*,2006 WL 4590705 *5 (S.D.Fla.,2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the Lane's Complaint fails to satisfy the minimum standard of Rule 8.")   *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir.2012).   *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, (2nd Cir.2001).   (Simply " 'lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct'" fails "'to satisfy [the] minimum standard' that 'a complaint give each defendant fair notice of plaintiffs' claim and the ground upon which it rests".); *Medina v. Bauer*, 2004 WL 136636, *6 (S.D.N.Y.2004) (a plaintiff fails to satisfy Rule 8 where the complaint lumps all the defendants together and fails to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong)   *Jolly v. Klein*, 923 F.Supp. 931, 943 (S.D. Tex. 1996) ("To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant."); *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992).   ("The district court's reasons for dismissing Murphy's action are unequivocal: 'Because Murphy was unable to specify which defendants participated in which actions that allegedly violated his constitutional rights, this complaint will be dismissed without prejudice.' The court delivered this decision with sound authority for the principle that a plaintiff bringing a section 1983 action must specify the personal involvement of each defendant, and dismissed the case…"). *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1949-1950 (2009) ("As Respondent correctly concedes that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.").

Claiming that a defendant was deliberately indifferent because he "... failed to take reasonable steps to safely house Mr. McCollum and protect him from heat stroke." (Paragraph 140) or that "temperatures exceeding 90 degrees Fahrenheit are cruel and unusual, and create unconstitutional conditions of confinement" (Paragraph 141) are the type of overbroad, conclusory claims devoid of

specific facts or conduct of any particular defendant, that have been held insufficient to defeat qualified immunity. A claim of "...subjecting Mr. McCollum to these extreme conditions of confinement..." (Paragraph 145) does not set out any facts or specific conduct that would put an official on notice of what conduct is alleged to have violated clearly established law.[7]

Paragraph 140 does not identify the "reasonable steps to safely house Mr. McCollum" that Livingston was constitutionally required to take that no similarly situated TDCJ or CID Director could have reasonably failed to undertake. The Second Amended Complaint sets out no legal basis of the claim that the chief prison security administrator has a Constitutional duty to usurp medical judgments and intervene in UTMB medical providers' housing decisions descried therein, based on medical circumstances and made within the scope of their inmate health care duties.[8]

Plaintiffs have the burden to prove that no reasonable, similarly situated, official could have considered the conduct of the government officials to be lawful, under the circumstances known to him at the time. *Anderson v. Creighton,* 483 U.S. 635, 640–41, 107 S.Ct. at 3039–40 (1987); *Burns–Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir.1994). The reasonableness inquiry of the official's conduct is measured with reference to the law as it existed at the time of the conduct in question. *King v. Chide*, 974

---

[7]      As was noted in *Morgan v. Swanson,* 659 F.3d 359, 372 (5th Cir. 2011):

> "...existing precedent must have placed the statutory or constitutional question *beyond debate.*" The *sine qua non* of the clearly-established inquiry is "fair warning." Thus, we must ask "not only whether courts have recognized the *existence* of a particular constitutional right, but also ... whether that right has been defined with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct."

[8]      Second Amended Complaint, paragraph 117 ("The intake physical is also the first time a prisoner can have his housing assignment restricted by UTMB. Thus, until the intake physical conducted by a UTMB doctor or physician's assistant took place, UTMB effectively chose not to protect Mr. McCollum, and virtually guaranteed he would be exposed to dangerous temperatures.")

> Paragraph 118. ("When UTMB finally does perform the physical, medical staff make housing recommendations for prisoners.")

> Paragraph 120 ("Warden Pringle acknowledged following recommendations made by UTMB, and confirmed that he would have moved prisoners to air conditioned facilities if told to do so by UTMB." )

> Paragraph 122 ("...no one from UTMB made a recommendation to house Mr. McCollum safely – guaranteeing he would spend 24 hours a day in extremely hot conditions.…")

F.2d 653, 657 (5th Cir.1992).  "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity."  *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1183 (5th Cir. 1990). "A state official exercising discretionary authority whose conduct deprives another of a right secured by federal constitutional or statutory law is nonetheless shielded from personal liability for damages under section 1983 by the doctrine of qualified immunity, unless at the time and under the circumstances of the challenged conduct all reasonable officials would have realized that it was proscribed by the federal law on which the suit is founded."  *Dudley v. Angel*, 209 F.3d 460, 462 (5TH Cir. 2000). It cannot be seriously maintained that no reasonable, similarly situated prison administrator could have believed that the delegation of decisions based on the medical condition of an inmate to UTMB medical professionals was consistent with clearly established law.

Asserting that a *per se* temperature of 90 degrees or above at a Texas prison violates the Constitution, (Paragraph 141) without specifying facts that demonstrate a particular defendant's personal involvement or conduct prohibited by clearly established law does not defeat these Livingston's qualified immunity.

Also deficient is paragraph 133's claim that "TDCJ officials, including Eason, Pringle and Livingston, prohibit Livingston prohibit new prisoners at the Hutchins Unit, like Mr. McCollum, from owning personal fans." The Second Amended Complaint's use of the conclusory term "prohibit", lumping three defendants together within that vague word's coverage, sets out no facts that would give reasonable notice of what conduct each specific defendant is claimed to have engaged in.  *Robbins v. Oklahoma,* 519 F.3d 1242,1250 (10th Cir. 2008) ("We need not speculate, because the burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants. Given the complaint's use of either the collective term "Defendants" or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed. See *Atuahene v. City of Hartford,* 10 Fed.Appx. 33, 34 (2d Cir., May 31, 2001) (granting a motion to

dismiss for failure to provide fair notice under Rule 8 in part because "[t]he complaint failed to differentiate among the defendants, alleging instead violations by 'the defendants' ").

Established precedent in the Fifth Circuit would not have given fair warning to Livingston that he had a Constitutional duty to air condition Texas prisons, that he could be held liable for the medical and correctional staff's actions or omissions at a particular TDCJ prison or that he had a duty to provide 24-7 on site medical care at each of the 111 TDCJ prison units[9]

Also see, _Saucier v. Katz,_ 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (To overcome immunity, specific facts must be set out demonstrating that defendant's conduct violated a clearly established right under the circumstances faced by the official.)

As held in _Ashcroft v. Iqbal_, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009), "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.  _Id._, at 557, 127 S.Ct. 1955."   The Court further held:

> ...the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. _Id_., at 555, 127 S.Ct. 1955. Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we **1950 are not bound to accept as true a legal conclusion couched as a factual allegation. Rule 8 marks a notable and generous departure from the hyper technical, code pleading regime of a prior era, but it does not unlock the doors of discovery for *679 a plaintiff armed with nothing more than conclusions....where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not show[n] that the pleader is entitled to relief. Fed. Rule Civ. Proc. 8(a)(2).

---

[9] See _Atuahene v. City of Hartford,_ 10 Fed.Appx. 33, 34 (2nd Cir. 2001) ("Although Fed.R.Civ.P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.' _Ferro v. Ry. Express Agency, Inc.,_ 296 F.2d 847, 851 (2d Cir.1961); see also _Simmons v. Abruzzo,_ 49 F.3d 83, 86 (2d Cir.1995). By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, _Atuahene's_ complaint failed to satisfy this minimum standard, even after the district court graciously accorded him several opportunities to correct its manifest flaws. Consequently, the district court did not abuse its discretion in dismissing the complaint.")

As the Court noted in *Anderson v. Creighton,* 483 U.S. 635,639, 107 S.Ct. 3034,3039 (1987):

Qualified immunity depends substantially upon the level of generality at which the relevant "legal **3039 rule" is to be identified.  For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation.   But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of Harlow. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. Harlow would be transformed from a guarantee of immunity into a rule of pleading.   Such an approach, in sum, would destroy "the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties," by making it impossible for officials "reasonably [to] anticipate when their conduct may give rise to liability for damages." *640 *Davis, supra*, 468 U.S. 183, 104 S.Ct. 3012 (1984).   FN2 It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

This point was further emphasized in *Morgan v. Swanson,* 659 F.3d 359, 372 (5th Cir. 2011) summarizing

applicable precedent:

...the Supreme Court has held that generalizations and abstract propositions are not capable of clearly establishing the law. The Supreme Court recently─and forcefully─underscored this point in *Ashcroft v. al-Kidd,* where it noted, with some exasperation, that it has "repeatedly told courts ... not to define clearly established law at a high level of generality."[FN30]

FN30.   *Id.* (citations omitted); *See also Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (holding that the clearly-established inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition").

Because these paragraphs in the Second Amended Complaint are conclusory, overbroad and

do not identify any specific unconstitutional conduct on the part of any particular defendant that would

be violative of clearly established law, they fail to defeat Brad Livingston's qualified immunity or even

state a Constitutional claim.

14

**III.   Clearly Established Constitutional Law Did And Does Not Require A Prison Security Administrator To Provide 24 Hour On Site Prison Medical Care.**

Paragraph 67 premises a defeat of Livingston's qualified immunity on the basis that the Hutchins Unit did not provide on-site prison medical care to inmates after 6:00 p.m.

> 67... the Hutchins Unit, has no medical staff at the facility after 6:00 p.m.,even though over 2,200 men are housed there every night and significant numbers (greater than10%) suffer from obesity, hypertension, or diabetes and are at greater risk from the extreme heat. High-level TDCJ and UTMB officials, such as Livingston, and UTMB director Owen Murray, made this decision for financial reasons despite knowing it placed inmates at risk after 6:00 p.m., and at grave risk in emergency situations where medical care was immediately needed, such as when a prisoner suffered a heat stroke.

As is the case with prison air conditioning, there is no Constitutional right to an on site 24-7 prison medical facility.   *Lindsey v. McGinnis,* 1994 WL 162610 (6th Cir. 1994).   Therein, 70 year old inmate Lindsey, diagnosed with peripheral vertigo and pretibial edema, sued the Director of the Michigan Department of Corrections claiming an unconstitutional delay in treatment because the Director "...failed to provide 24-hour on-site physician coverage at LCF."   (Lakewood Correctional Facility).   The District Court rejected this claim and the 6th Circuit affirmed:

> Lindsey's reliance on *United States v. Michigan*, 680 F. Supp. 928, (W. D. Michigan 1987) is misplaced. The court in that case did not order the facilities involved or LCF to provide 24-hour on-site physician services.

In accord is *Obata v. Harrington*, 2013 WL 1442481 (D.Hawai'i,2013): (pp.3-4):

> Plaintiff alleges that WCF's lack of an onsite, twenty-four hour emergency facility violates his rights under the Eighth Amendment.
> ...

> **1.   Lack of a Twenty-Four Hour Emergency Care Facility**.
> Plaintiff fails to allege facts showing that WCF's lack of a twenty-four hour emergency care facility violated his constitutional rights. The Constitution requires prison officials to provide timely and adequate medical (and dental) care to prisoners. It does not require that every prison and jail have medical staff on duty twenty-four hours a day. *See, Bennett v. Reed,* 534 F.Supp. 83, 87 (E.D.N.C.1981)(absence of availability to qualified nurse on twenty-four hour duty does not violate prisoner's constitutional rights); *Williams v. Limestone County*, 198 Fed. Appx. 893, 897 (11th Cir. 2006) (absence of twenty-four hour medical staff on

15

duty did not violate the prisoner's constitutional rights); *Robinson v. Conner*, 2012 WL 2358955 *5 (M.D.Ala.2012)(holding that prison's lack of twenty-four hour emergency infirmary, without more, fails to state a claim); *Parker v. Amos*, 2011 WL 3568836 *3 (W.D.Va.2011)(holding that jails and prisons are not required to provide twenty-four hour emergency care facilities).   *4 Notwithstanding WCF's alleged lack of a twenty-four hour infirmary, Plaintiff fails to allege sufficient facts showing that (1) he required emergency medical care for a serious physical condition, (2) prison officials were aware of his serious need, and (3) nonetheless, refused or were unable to transport him to an emergency care facility outside of the prison with deliberate indifference to his health and safety.   As such, Plaintiff fails to state a claim and this claim is DISMISSED.


### 2.  Claims Against Warden Harrington

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.* **Iqbal, 556 at 676.** Rather, each government official may only be held liable for his or her own misconduct. A defendant may be held liable as a supervisor under **1983.** if either (1) he or she was personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the Constitutional violation. *Starr v. Baca*, 633 F.3d 1191, 1196 (9th Cir.2011). In general, a plaintiff "must allege that every government defendant—supervisor or subordinate—acts with the state of mind required by the underlying constitutional provision. *Or. State University Student Alliance v. Ray*, 699 F. F.3d 1053, 1070 (9th Cir.2012). Conversely, where there is no evidence that the supervisor was personally involved or connected to the alleged violation, the supervisor may not be held liable. *See Edgerly v. City & Cnty of San Francisco*, 599 F.3d 946, 961–62 (9th Cir.2010). Plaintiff fails to establish that Warden Harrington was personally involved or otherwise responsible for the alleged delay or denial of medical care to Plaintiff. Plaintiff simply claims in conclusory terms that he was in pain on August 4, 2012, and that Warden Harrington knew that WCF lacked an onsite, twenty-four hour emergency facility.   As explained above, even if Harrington was aware that WCF lacked a twenty-four hour infirmary, that does not equate to Harrington's deliberate indifference to Plaintiff's alleged need for emergency medical care on August 4, 2012.   Plaintiff does not allege that Harrington was aware of Plaintiff's need for emergency care, or that Harrington instituted policies or procedures that denied medical services to prisoners who became ill overnight WCF. That is, that Harrington denied WCF staff the authority to transport Plaintiff or any other prisoner to an outside emergency medical facility if the need arose. An individual's "general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Ourts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir.1987). Plaintiff's allegations against Warden Harrington fail to state a cognizable constitutional claim and are DISMISSED.

Because there is no clearly established right to a 24-7 on site prison medical facility, paragraph 67, Second Amended Complaint does not defeat Livingston's immunity nor even state a Constitutional claim. Once a government official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar recovery. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992);   *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*) ("When a Defendant invokes qualified immunity, the burden is on the Plaintiff to demonstrate the inapplicability of the defense.").

In determining whether the plaintiff has successfully overcome the qualified immunity defense, the court engages in a two-step inquiry. First, the court must consider "whether the plaintiff asserted a violation of a constitutional right at all -- prior to addressing the potentially unnecessary question of whether plaintiff asserted a violation of a clearly established right." *Siegert v. Gilley*, 500 U.S. 226, 230 (1991) (internal quotation marks omitted); *Samaad v. City of Dallas*, 940 F.2d 925, 940 (5th Cir. 1991) (holding that Siegert requires a plaintiff first to allege a constitutional violation before a court will decide whether the right is "clearly established"). In making this assessment, the court uses "currently applicable constitutional standards."   *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).

If a plaintiff has not cleared this first hurdle, the court need not further address the question of qualified immunity. If the court finds that the plaintiff has alleged the violation of a clearly established constitutional right, the court must then determine if the official's action could reasonably have been thought consistent with that right. *Siegert*, 500 U.S. at 230.

In making this second determination, the court looks to whether the defendant's actions were objectively reasonable as measured by reference to the law as it existed at the time the conduct occurred and in light of the information that the defendant possessed. *Mouille v. City of Live Oak*, 977 F.2d 924, 928 (5th Cir. 1992)(citing *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. (1993)); *Valencia v. Wiggins*, 981 F.2d 1440, 1448 (5th Cir.) cert. denied, 113 S.Ct. 2998 (1993); *Anderson*

*v. Creighton*, 483 U.S. 635, 639(1987); *Streetman v. Jordan*, 918 F.2d 555, 556 (5th Cir. 1990).Regardless of a defendant official's mistaken assumptions, if his conduct is determined to have been objectively reasonable, he is entitled to qualified immunity. Thus, officials are immune if their "actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson,* 483 U.S. at 638.

## IV.   Livingston's Alleged Failure To Train And Supervise Clark, Tate And Sanders Fails To State A Claim Or Overcome His Qualified Immunity.

**Paragraph 159, Second Amended Complaint Claims:**

> Livingston failed to adequately train and supervise Clark, Tate and Sanders. Their failure and refusal to instruct officers who find unresponsive inmates suffering convulsions to immediately seek emergency medical treatment proximately caused Mr.McCollum's death.

At the time of McCollum's distress, July 22, 2011, Richard Clark was a correctional officer, Karen Tate was a sergeant and Sandrea Sanders was a lieutenant at the Hutchins State Jail.   Second Amended Complaint, paragraphs 15-17.   TDCJ employs approximately 40,000 people, [10] none of who are alleged to be trained by TDCJ Director Brad Livingston in the Second Amended Complaint. Livingston manages the overall operation of the TDCJ's prison system, parole, and state jail systems. TDCJ also provides funding, training, and certain oversight of community supervision and is the largest state agency in Texas.[11]   TDCJ houses approximately 152,303 inmates.[12].

---

[10] The Payroll Processing Department issues salary payments for approximately 40,000 employees, which is in excess of $1,000,000,000.00 annually. http://www.tdcj.state.tx.us/divisions/finance/finance_payroll.html

[11] http://www.tdcj.state.tx.us/mediasvc/definitions/index.html

[12] TDCJ had 111 units and   an inmate population of 152,303 as of August 31, 2012. TDCJ Statistical Report, p. 1 http://www.tdcj.state.tx.us/documents/Statistical_Report_FY2012.pdf; TDCJ http://www.tdcj.state.tx.us/unit_directory/index.html

Of these, 2276 approximately were housed at the Hutchinson State Jail in Dallas, which has been accredited by the American Correctional Association since August 2007. [13]   The supervision and medical care of these inmates was properly delegated to the 405 TDCJ employees, including 28 medical staff, assigned to Hutchinson.   *Id.*   Public record facts, not subject to serious dispute may be judicially noticed pursuant to Federal Rules of Evidence, Rule 201.[14]   One person does not have the capacity to personally supervise 40,000 employees and 152,303 inmates. Clearly established law recognizes that the security administrator of the largest prison in the United States[15] may delegate the supervisory and managerial duties necessary to run a prison system.[16]   Delegation of duties by an administrative

---

[13]   http://www.tdcj.state.tx.us/unit_directory../hj.html

[14]   RULE 201. JUDICIAL NOTICE OF ADJUDICATIVE FACTS:

      (a)      SCOPE.   This rule governs judicial notice of an adjudicative fact only, not a legislative fact.
      (b)      KINDS OF FACTS THAT MAY BE JUDICIALLY NOTICED.     The court may judicially notice a fact that is not subject to reasonable dispute because it:
(1)      is generally known within the trial court's territorial jurisdiction; or
(2)      can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
      c)      TAKING NOTICE.   The court:
(1)      may take judicial notice on its own; or
(2)      must take judicial notice if a party requests it and the court is supplied with the necessary information.
      (d)      TIMING.   The court may take judicial notice at any stage of the proceeding

[15]   *California's Prison Population Eclipsed By Texas*   ("California now has fewer than 136,000 state inmates, eclipsed by about 154,000inTexas.")

   http://www.huffingtonpost.com/2012/06/13/california-prison-popualation_n_1594926.html

[16]   Sec. 493.006.   EXECUTIVE DIRECTOR.   (a)   The board shall employ an executive director who possesses the following minimum qualifications:

(1)   five years experience in the field of corrections in an administrative capacity;
(2)   three years experience in the field of corrections in an administrative capacity and a graduate degree from an institution of higher education in penology or a related field;   or
(3)   seven years experience in management or administration of a government agency, institution of higher education, or business enterprise of size comparable to the department.
***(b)   The executive director is responsible for the administration and enforcement of all laws relating to the department including rules implemented by the department but may delegate those responsibilities as permitted by board rule or general law.*** (emphasis added)

government official does not defeat his qualified immunity.   *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949-50 (2009):

> Respondent's conception of "supervisory liability" is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents. In a § 1983 suit or a Bivens action—where masters do not answer for the torts of their servants—the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.   In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

The TDCJ Executive Director's duties do not include personally training Clark, Tate and Sanders in how they should respond to medical emergencies, as claimed in paragraph 159, Second Amended Complaint:[17]

## I.  JOB SUMMARY

Performs highly responsible professional administrative work directing operations of the Texas Department of Criminal Justice as set forth by Chapter 493, Texas Government Code. Work involves interpreting, administering, and directing the enforcement of all laws, rules, regulations, and statutes regarding agency operations; establishing agency goals, objectives, standards, policies, and procedures in compliance with directives from the Texas Board of Criminal Justice (TBCJ). Work is performed independently under the authority of the TBCJ.

## II. ESSENTIAL FUNCTIONS

A. Directs the management of operations and activities of the agency in accordance with state and federal laws, rules, regulations, and statutes; reviews, evaluates, establishes, and enforces agency goals, objectives, standards, operating policies, procedures, rules, regulations, and methods.

B. Coordinates agency operations with other state, federal, and private agencies and organizations; represents the agency at TBCJ meetings, legislative meetings, hearings, and public functions.

C. Adapts existing agency methods and procedures to meet legislative changes and changes in operating needs; oversees the development of the biennial legislative appropriation request and the annual operating budget; directs the management and execution of the annual operating budget.

---

[17]        http://www.tdcj.state.tx.us/vacancy/pd/032020.pdf

D. Directs, reviews, and evaluates compliance, internal audits, and inspections; directs the management of legal and public affairs of the agency.

E. Receives service as authorized on behalf of the TBCJ, agency, or any division of the agency; directs the management of agency emergency planning and operations.

As is the case with the duty to provide inmate medical care, supervised and implemented by qualified, experienced and trained UTMB medical professionals, the training of officers such as Clark, Tate and Sanders is performed by staff assigned to the TDCJ Training Division.[18]

The Second Amended Complaint does not and cannot plausibly allege that Livingston had a duty to personally train each of the 40,000 TDCJ employees, including Clark, Tate and Sanders. If made, such an allegation would not be plausible within the meaning of *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 1948 (2009) and would constitute a claim based on vicarious liability.

A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties…Based on the rules our precedents establish, respondent correctly concedes that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior…To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."

Paragraph 159 of the Second Amended Complaint fails to state a Constitutional claim against Livingston as it is not enough to merely claim that "... refusal to instruct officers who find unresponsive inmates suffering convulsions to immediately seek emergency medical treatment proximately caused Mr. McCollum's death."  An allegation that the top official of an agency supervising 40,000 employees and 152,303 inmates failed to personally train 3 security employees does not allege sufficient personal involvement to defeat qualified immunity.  As Judge Jack recognized in another prison heat case,

---

[18]    "In FY12, training staff provided 40 hours of annual instruction to 29,588 uniformed and non-uniformed staff in 1,348 classes conducted across the state at the six regional academies and 25 unit-based locations listed below."

See:  http://tdcj.state.tx.us/divisions/cid/ctsd/index.html

Livingston's immunity is not defeated solely because security employees at a specific TDCJ unit are alleged to have engaged in misconduct.   *Blackmon v. Kukua* 758 F.Supp.2d 398, 411, 414 (S. D. Tex. 2010.) ("The Fifth Circuit has held that supervisory officials are not liable under § 1983 unless 'there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.' ...Latorre, M. Garza, and Livingston are entitled to qualified immunity to the extent that they could be found liable under the Eighth Amendment at all.")

## CONCLUSION

The Fifth Circuit has explained that "conclusory allegations and unsubstantiated assertions" are not sufficient to overcome the qualified immunity defense.   *Miller v. Graham*, 447 F. App'x 549, 551 (5th Cir. 2011) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007); *Sylvester v. Cain*, 311 F. App'x 733, 735 (5th Cir., Feb. 20, 2009) (citing *Thompson v. City of Starkville, Miss.*, 901 F.2d 456, 469 n.13 (5th Cir. 1990)). Plaintiff's conclusory claims that the absence of policies not Constitutionally required-such as providing prison air conditioning or 24-7 on site medical facilities,   or micromanaging the housing and treatment decisions of prison medical staff-do not defeat TDCJ Executive Director Livingston's qualified immunity fail because they do not set out a violation of clearly established law. The claim that security administrators have a Constitutional duty to make medical housing assignments or otherwise bypass the judgments, recommendations of the lack thereof, by prison unit medical and correctional officials is not supported by federal law.

In the absence of personal involvement, supervisory liability of the Executive Director of a prison system does not flow solely based on claims that on the scene medical and correctional employees could or should have made different decisions than they did.   The Complaint must allege more than that Livingston should have provided air conditioning or "taken steps", "refused to act" or similar meaningless vague conclusory assertions.   The Complaint must specify a policy or custom implemented by the TDCJ Security Administrator that was the moving force behind the constitutional violation.   *Duvall v. Dallas*

*County, Tex.*, 631 F.3d 203, 209 (5th Cir. 2011).   It must identify the policy, connect the policy to the supervisory defendant and show that injury was incurred because of the implementation of that administrator's specific policy.   *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984).

Plaintiffs must establish that TDCJ chief executive Livingston, as an administrator/policy maker, through deliberate conduct was "the moving force behind the injury" alleged and must establish a direct causal link between his action in formulating and implementing a specific policy that resulted in the deprivation of a federally protected right.   *Board of County Comm'r v. Brown*, 520 U.S. 397, 405 (1997). The Second Amended Complaint has not alleged conduct by Livingston that violates the Constitution, let alone defeat his immunity.

It is clearly established law that security administrators may rely on the judgments and decisions of medical professionals tasked with administering inmate care and are not Constitutionally required to monitor an inmate's medical history, substitute their own judgment as to a prisoner's housing, classification and treatment or dictate to medical professionals, by policy or otherwise, how they should respond to an inmate with a specific medical infirmity.   *Lee v. Young*, 533 F.3d 505, 511 (7th Cir.2008) ("[I]n determining the best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals.").   *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir.2008) (reiterating "the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care").   *Obata v. Harrington*, 2013 WL 1442481 (D.Hawai'i,2013): (pp.3-4) (Summarizing federal decisions holding that the U.S. Constitution does not require that every prison and jail have medical staff on duty twenty-four hours a day).

The vague and conclusory allegations in the Second Amended Complaint against TDCJ Director Livingston, absent a showing of personal involvement, fail to state a federal claim or overcome a public official's qualified immunity.   The U.S. Supreme Court and Fifth Circuit Court of Appeals have

repeatedly rejected the substitution of nefarious sounding conclusory legalese for facts in a Complaint purporting to allege a violation of a clearly established Constitutional right.

As to the equitable claims, the Second Amended Complaint fails to allege an inadequate remedy at law or that they will likely be damaged by future violations of federal law sufficient to support granting of equitable relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-106, 111 (1983):

> The equitable remedy is unavailable absent a showing or irreparable injury, a requirement that cannot be met where is no showing of any real or immediate threat that the plaintiff will be wronged again-a likelihood of substantial and immediate irreparable injury." *O'Shea v. Littleton*, 414 U.S., at 502, 94 S. Ct., at 679.  The speculative nature of *Lyons*' claim of future injury requires a finding that this prerequisite of equitable relief has not been fulfilled. Nor will the injury that *Lyons* allegedly suffered in 1976 go unrecompensed; for that injury, he has an adequate remedy at law....The legality of the violence to which *Lyons* claims he was once subjected is at issue in his suit for damages and can be determined there.

None of the Plaintiffs are currently incarcerated at a TDCJ prison unit, cannot satisfy the above standard and have no standing to seek declaratory or injunctive relief without asking the Court to give an advisory opinion.

Accordingly, TDCJ Director Livingston requests dismissal of the Second Amended Complaint as to him together with reasonable attorneys' fees expended in litigating this meritless suit against him. 42 U.S.C. 1988(b).[19]

---

[19]    (b) Attorney's fees In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C. 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C. 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C. 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Defense Litigation

KAREN D. MATLOCK
Assistant Attorney General
Chief, Law Enforcement Defense

/s/ Demetri Anastasiadis
DEMETRI ANASTASIADIS
Assistant Attorney General
Attorney-In-Charge
State Bar No. 01164480

Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin, Texas   78711
(512) 463-2080 / (512) 495-9139 (fax)

**ATTORNEYS FOR DEFENDANT
BRAD LIVINGSTON**


**NOTICE OF ELECTRONIC FILING**

I, DEMETRI ANASTASIADIS, Assistant Attorney General of Texas, do hereby certify that I

have electronically submitted for filing, a true and correct copy of the above and foregoing **Defendant**

**Livingston's Motion to Dismiss Second Amended Complaint on the Basis of Qualified Immunity,** in

accordance with the Electronic Case Files system of the Northern District of Texas, on this the 4th day of

February, 2014.

/s/ Demetri Anastasiadis
DEMETRI ANASTASIADIS
Assistant Attorney General

25

**CERTIFICATE OF SERVICE**

I, DEMETRI ANASTASIADIS, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Defendant Livingston's Amended Motion to Dismiss on the Basis of Qualified Immunity,** has been served electronically via the Electronic Case File system of the Northern District of Texas, on this the 4th day of February, 2014, addressed to:

Jeff Edwards
jeff@edwards-law.com

Scott Medlock
scott@edwards-law.com

James Harrington
Brian McGiverin
jch@mail.utexas.edu
brian@texascivilrightsproject.org

Eliot D Shavin
eshavin@sbcglobal.net

Bruce R Garcia
Jonathon Stone
bruce.garcia@texasattorneygeneral.gov
jonathon.stone@texasattorneygeneral.gov

Kim Coogan
Erika Hime
Lacey Mase
kim.coogan@texasattorneygeneral.gov
erika.hime@texasattorneygeneral.gov
lacey.mase@texasattorneygeneral.gov

/s/ Demetri Anastasiadis
DEMETRI ANASTASIADIS
Assistant Attorney General

26