IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN MCCOLLUM, *et al.*, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL NO. 3:12-CV-2037-L-BK |
| | § | |
| BRAD LIVINGSTON, *et al.*, | § | |
| *Defendants*. | § | |
| | § | |

## ORDER

Pursuant to the District Court's orders of reference (Docs. 125, 130), this case is before

the Court on Plaintiffs' *Emergency Opposed Motion to Depose University of Texas Medical*

*Branch Expert Witness, Glenda Adams, or to Exclude Adams's Expert Testimony* (Doc. 123) and

Defendant's *Opposed Motion to Quash* (Doc. 128) and *Amended Opposed Motion to Quash*

(Doc. 135).  For the reasons stated below, Plaintiffs' *Emergency Opposed Motion to Depose* is

**GRANTED** and Defendant's motions to quash are **DENIED AS MOOT**.

### A.   Background

Plaintiffs, the surviving wife and children of Larry Gene McCollum, have sued various

Texas Department of Criminal Justice ("TDCJ") officials and the University of Texas Medical

Branch ("UTMB"), stemming from McCollum's death in July 2011 while he was housed in the

Hutchins State Jail in Dallas, Texas.  (Doc. 119 at 1-2).  Plaintiffs claim that (1) TDCJ officials

violated McCollum's Eighth and/or Fourteenth Amendment rights; and (2) both TDCJ and

UTMB, which makes housing recommendations to TDCJ based on prisoners' medical

conditions, violated the Americans with Disabilities Act and the Rehabilitation Act of 1973.  *Id.*

at 2.

Plaintiffs allege in the operative complaint that McCollum was obese when he arrived at

the jail, and he reported to TDCJ and UTMB officials that he suffered from both hypertension and diabetes. *Id.* at 7-8. He was prescribed hydrochlorothiazide, a diuretic, shortly after his arrival. *Id.* at 8. Plaintiffs note that McCollum was assigned to an un-airconditioned dormitory in the jail. *Id.* at 10. Approximately one week later, McCollum began having convulsions at around 2:00 a.m. *Id.* at 14. Plaintiffs aver that another prisoner notified a guard and, after a delay of approximately an hour, an ambulance was called to take McCollum to the hospital. *Id.* at 14-16. When he arrived, McCollum's internal body temperature was 109.4 degrees Fahrenheit, and he slipped into a coma. *Id.* at 16-17. Six days later, he died of hyperthermia. *Id.* at 17. Plaintiffs contend that an autopsy concluded that McCollum was "predisposed to developing hyperthermia due to morbid obesity and treatment with a diuretic (hydrochlorothiazide) for hypertension." *Id.*

In October 2013, the undersigned ordered UTMB to provide a corporate witness for deposition pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. (Doc. 95). The Court noted, however, that UTMB was not required to designate a medical expert to provide an expert opinion regarding Topics 23, 24, or 25 set forth in Plaintiffs' notice of deposition. *Id.* at 2. Those proposed topics sought testimony regarding (1) the effects of heat on patients with diabetes; (2) the effects of heat on patients with hypertension; and (3) the effects of hydrochlorthiazide on patients. (Doc. 75-3 at 4). UTMB designated Dr. Glenda Adams as its Rule 30(b)(6) witness, and Plaintiffs took her deposition in November 2013. (Doc. 123-1 at 2). After UTMB subsequently designated Dr. Adams as its expert witness, Plaintiffs sought to depose her in that capacity. When UTMB objected, Plaintiffs filed the instant motion to compel her deposition testimony. (Doc. 123).

**B.      Applicable Law**

The Federal Rules of Civil Procedure contemplate depositions of both individuals and of corporate representatives. Rule 30 allows a party to request the deposition of any person by serving notice. FED. R. CIV. P. 30(a)(1). A natural person can be deposed under Rule 30(b)(1) whereas the deposition of a corporation is governed by Rule 30(b)(6). The rules permit two types of corporate depositions. First, one may notice a particular officer or agent of the corporation via Rule 30(b)(1). Second, via Rule 30(b)(6), one may notice the deposition of a corporation itself without naming a specific person to be deposed, and instead describing the information sought. Using this approach, the corporate deponent must designate one or more individuals to testify on its behalf. These deponents "shall testify to matters known or reasonably available to the organization." FED. R. CIV. P. 30(b)(6).

The testimony elicited at a Rule 30(b)(6) deposition represents the knowledge of the corporation, not of the individual deponents. The designated witness is "speaking for the corporation," and this testimony must be distinguished from that of a "mere corporate employee" whose deposition is not considered that of the corporation and whose presence must be obtained by subpoena. Charles Wright, *et al.*, 8A FED. PRAC. & PROC. CIV. § 2103 at 36-37. "Obviously it is not literally possible to take the deposition of a corporation; instead, when a corporation is involved, the information sought must be obtained from natural persons who can speak for the corporation." *Id.* at 30. The corporation thus appears vicariously through its designee. *Resolution Trust Corp. v. Southern Union Co.*, 985 F.2d 196, 197 (5th Cir.1993). Rule 30 specifically provides that "[t]his paragraph 6 does not preclude taking a deposition by any other procedure authorized in these rules." FED. R. CIV. P. 30(b)(6).

While there is a dearth of case law discussing the subject in this district, several other district courts have recognized that there is no prohibition against a party deposing a witness in both a corporate representative and in an individual capacity.  *See Sw. Bell Tel., L.P. v. UTEX Comm. Corp.*, 2009 WL 8541000, *1-2 (W.D. Tex. 2009) (denying motion to quash the notice of deposition of the defendant company's CEO even though he already had been deposed as the company's corporate representative); *Provide Commerce, Inc. v. Preferred Commerce, Inc.*, 2008 WL 360588, *3 (S.D. Fla. 2008) (court could find no case law barring second deposition of individual first deposed in his individual capacity and then called to testify a second time on behalf of corporation, noting that the corporation had yet to testify); *ICE Corp. v. Hamilton Sundstrand Corp.*, Case No. 05-4135-JAR, 2007 WL 1732369, *3-4 (D. Kan. 2007) (holding that the federal rules did not prohibit the depositions of persons as corporate representatives where the witnesses also had testified in their individual capacities); *Taylor v. Shaw*, Case No. 2:04-cv-1668-LDG, 2007 WL 710186, *2 (D. Nev. 2007) (same); *Alloc, Inc. v. Unilin Decor N.V.*, Case No. 02-C-1266, 2006 WL 2527656, *2 (E.D. Wis. 2006) (same); *LendingTree, Inc. v. LowerMyBills, Inc.*, Case No. 3:05-cv-153-C, 2006 WL 2443685, *2-3 (W.D.N.C. 2006) (same); *see also Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 210 F.3d 1, 17 (1st Cir. 2000) (upholding the imposition of sanctions and fees for party's refusal to produce Rule 30(b)(6) witnesses on the basis that the issuing party had previously deposed the employees); *Smith v. General Mills, Inc.*, Case No. C2 04-705, 2006 WL 7276959, *5 (S.D. Ohio 2006) (holding that an entity cannot escape its obligation to produce Rule 30(b)(6) witnesses by claiming that fact witnesses have or will testify on the same issues).

C.      **Arguments and Analysis**

*1. Expert Witness Deposition*

Plaintiffs contend in their *Motion to Depose* that UTMB (1) refuses to produce its

designated expert witness, Dr. Adams, for deposition unless ordered to do so by this Court; and

(2) proposes that Plaintiffs pay Dr. Adams $700.00 an hour for her testimony.  (Doc. 123 at 1).

Plaintiffs assert that they do not need leave of court to take Dr. Adams's second deposition

because she is now being called to testify in her expert capacity as opposed to her prior

deposition during which she testified as UTMB's corporate representative.  *Id.* at 2.  Plaintiffs

argue that if leave of court is required, they have demonstrated that need because they previously

deposed Dr. Adams only on matters covered by the Rule 30(b)(6) designation.  *Id.* at 5-6.

Finally, Plaintiffs maintain that because Dr. Adams is a UTMB employee, is serving as UTMB's

own expert, and is not charging her employer anything for her expert services, Plaintiffs should

not have to pay her any expert witness fees.  *Id.* at 6.  Plaintiffs also request that the Court award

them the fees and expenses they incurred in filing this motion.  *Id.* at 7.

UTMB responds that Plaintiffs questioned Dr. Adams during her Rule 30(b)(6)

deposition in her capacity as an expert medical doctor and have not identified any subject from

her expert report about which they seek to re-depose her.  (Doc. 124 at 1-4).  It contends that

there are no new facts or opinions on which to depose Dr. Adams a second time, and a second

deposition would be duplicative and harassing in violation of Rule 30(d)(1), which limits the

deposition of a witness to one day of seven hours.  *Id.* at 4.  Alternatively, UTMB requests that

the scope and time of any second deposition be limited to two hours and that no repetitive

questions be asked.  *Id.*  Regarding the matter of expert witness fees, UTMB asserts that Dr.

Adams's time and expertise should not be valued differently than any other expert, and state

employees who provide expert testimony are routinely paid expert fees even though the witness

is not allowed to keep the fee.  *Id.* at 5.

Upon consideration of the law discussed above and the parties' arguments, the Court

finds Plaintiffs' position to be well taken.  Numerous district courts have recognized, and this

Court agrees, that Rule 30 permits a party to depose the same witness in both her corporate

representative and individual capacity.  *See Sw. Bell Tel.*, 2009 WL 8541000 at \*1-2; *Provide*

*Commerce*, 2008 WL 360588 at \*3; *ICE Corp.*, 2007 WL 1732369 at \*3-4.  Indeed, UTMB has

cited no authority to the contrary.  Plaintiffs were not required to seek leave of court to conduct

Dr. Adams's second deposition because her first deposition was solely on behalf of UTMB, not

in her expert witness capacity.  *See Resolution Trust*, 985 F.2d at 197 (noting that during a Rule

30(b)(6) deposition, the corporation appears vicariously through its designee).  Additionally, Dr.

Adams's expert report indicates that she will testify regarding matters that Plaintiffs were not

able to fully explore during her Rule 30(b)(6) deposition, due to defense counsel's instruction

that she not answer, such as the effects of heat on patients with diabetes and what she considered

hyperthermia to be.  (Doc. 126 at 2; Doc. 126-1 at 3-4).  In light of these findings, no limits on

the scope or length of Dr. Adams's expert witness deposition are warranted.

*2.  Payment of Expert Witness Fee*

Federal Rule of Civil Procedure 26(b)(4)(E)(i) provides that unless "manifest injustice

would result, the court must require that the party seeking discovery . . . pay the expert a

reasonable fee for time" spent in deposition.  Rule 26(b)(4)(E) was created to "meet the objection

that it is unfair to permit one side to obtain without cost the benefit of an expert's work for which

the other side has paid, often a substantial sum." FED. R. CIV. P. 26(b)(4), 1970 Advisory

Committee Note.  In this case, UTMB does not deny that Dr. Adams is not being compensated

for her services as an expert witness apart from her usual salary.  Although UTMB contends that

state employees who provide expert testimony are routinely compensated for such, it has directed

the Court to no such evidence or authority.

To accept UTMB's interpretation of Rule 26(b)(4)(E) would be antithetical to the

American legal system's preference that parties bear their own costs because it would require

Plaintiffs to pay UTMB for Dr. Adams's time spent in deposition even though UTMB will have

incurred no costs and there is nothing to be reimbursed.  *See Krepps v. NITT (USA), Inc.*, __

F.R.D. __, 2013 WL 6139261, *2 (N.D. Ill. 2013) (holding that a party serving as his own expert

was not entitled to reimbursement of expert witness fees for being deposed by opposing counsel

because the opposing party was not obtaining for free that which his opponent had to pay for);

*Eastcott v. Hasselblad A/S*, 892 F. Supp. 2d 587, 591-92 (S.D.N.Y. 2012) (denying

reimbursement to plaintiff of expert witness fees under Rule 26(b)(4)(E) where neither expert

had billed the plaintiff for their time).  Under the circumstances presented here, directing

Plaintiffs to pay $700.00 an hour for Dr. Adams's deposition testimony would be a "manifest

injustice" for it would result in the payment of money to UTMB, which is acting as its own

expert, even though UTMB will incur no cost.  The Court does not view that as cost shifting so

much as a windfall for UTMB.  *Krepps*, 2013 WL 6139261 at *2 (finding that manifest injustice

would result if the party seeking the deposition was required to pay for the expert because it

would be an "inappropriate subsidization of the other side's case.").  Accordingly, UTMB's

request that Dr. Adams be reimbursed for her time spent in deposition is meritless and will be

denied.

### 3. Location of Deposition

UTMB filed a *Motion to Quash* and *Amended Motion to Quash* requesting that Dr. Adams be deposed in her office in Conroe, Texas, instead of in Dallas, Texas, where the deposition is currently set.  (Docs. 128, 135).  Plaintiffs have notified the Court that they are not opposed to deposing Dr. Adams in her office.  Accordingly, the motions to quash are **DENIED AS MOOT**.

### 4. Award of Fees for Filing Motion to Depose

Plaintiffs request that the Court award them $1,625.00 in attorneys' fees incurred in litigating their *Motion to Depose* pursuant to Rule 37(a)(5).  (Doc. 123 at 7).  In its response, UTMB does not contest an award of fees in the event Plaintiffs prevail on their motion, nor does it challenge either counsels' hourly rate or the number of hours claimed to have been expended.

Rule 37 provides that, when a motion to compel discovery is granted, the Court "must" also order "the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both" to pay the movant's reasonable expenses – including attorneys' fees. FED. R. CIV. P.  37(a)(5)(A).  However, attorneys' fees are not warranted if: (1) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action, (2) the opposing party's objection was substantially justified, or (3) other circumstances make an award of expenses unjust.  *Id*.  Based on the Court's findings and determination of the relative merits of the parties' positions, none of the above exceptions applies.  Most particularly, the great weight of authority is in Plaintiffs' favor and indeed UTMB did not cite to any case law in its opposition.

In the Fifth Circuit, the "lodestar" method is used to calculate attorney's fees for purposes of sanction awards under Rule 37. *Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002). In calculating the lodestar, the court multiplies the number of hours reasonably expended by the appropriate hourly rate in the community for such work. *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003).

Plaintiffs' counsel seeks reimbursement for (1) four hours of work at the rate of $350.00 per hour for work performed by Scott Medlock; and (2) 30 minutes of work at the rate of $450.00 per hour for work performed by Jeff Edwards. Given counsels' extensive experience in the area of civil rights litigation and the Court's knowledge of fees charged by attorneys in the local community with reasonably comparable skill, experience, and reputation, the Court finds the rates to be reasonable. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (noting that reasonable rates are determined by reference to those prevailing in the community for lawyers of reasonably comparable skill, experience and reputation). Additionally, given the Court's familiarity the amount of work involved in drafting a motion of this nature, Plaintiffs have demonstrated the reasonableness of the number of hours they expended on the motion. *See Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990) (noting that the burden does not shift to the opposing party merely because that party does not show that the hours are unreasonable or that it did not make specific objections to the hours claimed). Accordingly, Plaintiffs' request for reimbursement of attorneys' fees in the amount of $1,625.00 is **GRANTED**. UTMB is **ORDERED** to remit this sum to Plaintiffs, in care of their counsel, within 14 days of the date of this order.

**D.      Conclusion**

For the reasons set forth above, Plaintiffs' *Emergency Opposed Motion to Depose* (Doc.

123) is **GRANTED**, and UTMB's motions *Opposed Motion to Quash* (Doc. 128) and *Amended*

*Opposed Motion to Quash* (Doc. 135) are **DENIED AS MOOT**.

**SO ORDERED** on February 24, 2014.


_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE