UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, and SANDRA McCOLLUM, individually, and STEPHANIE KINGREY, individually and as independent administrator of the Estate of LARRY GENE McCOLLUM, | § § § § § | |
| PLAINTIFFS | § | |
| | § | |
| v. | § § § | CIVIL ACTION NO. 3:12-cv-02037 JURY DEMAND |
| BRAD LIVINGSTON, JEFF PRINGLE, RICHARD CLARK, KAREN TATE, SANDREA SANDERS, ROBERT EASON, the UNIVERSITY OF TEXAS MEDICAL BRANCH and the TEXAS DEPARTMENT OF CRIMINAL JUSTICE. | § § § § § § § | |
| DEFENDANTS | § | |

**BRIEF IN SUPPORT OF PLAINTIFFS'
RESPONSE TO DEFENDANT UNIVERSITY OF TEXAS MEDICAL BRANCH'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

I.  FACTS ........................................................................................................................5

    A.  Mr. McCollum's Death ................................................................................5

    B.  UTMB's Polices and Procedures Caused McCollum's Death............................6

II.  STANDARD OF REVIEW – RULE 12(C) MOTIONS ARE
      DISFAVORED AND RARELY GRANTED ........................................................7

III.  ARGUMENT – PLAINTIFFS STATE A CLAIM UNDER THE ADA AND
       REHABILITATION ACT ........................................................................8

    A.  Plaintiffs' Plead Claims Under the ADA and Rehabilitation Act ....................8

      (1)  Mr. McCollum Suffered from a Disability..........................................9

      (2)  Prison is a "Service or Program" for ADA and RA Purposes ..................10

      (3)  Mr. McCollum was Excluded from Prison Programs Because of his Disabilities ......11

    B.  The ADA Does Not Require "Sole" Causation ..........................................13

    C.  UTMB's Refusal to Accommodate McCollum was the Sole Cause of the
       Discrimination He Suffered ....................................................................14

    D.  The ADA and Rehabilitation Act Do Not Require Discriminatory Animus to
       Award Damages ..................................................................................17

    E.  Plaintiffs Only Seek Injunctive Relief Against TDCJ ...............................18

    CONCLUSION ........................................................................................18

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................. 8

*Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448 (5th Cir. 2005).................... 11, 13, 16

*Clarkson v. Coughlin*, 898 F.Supp. 1019 (S.D.N.Y. 1995) ............................................. 12

*Delano-Pyle v. Victoria Co.*, 302 F.3d 567, 575 (5th Cir. 2002)................................ 15, 17

*Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) ............................................. 7

*Guardians Association v. Civil Service Commission of New York*,
   463 U.S. 582 (1983)................................................................................ 17

*Hinojosa v. Livingston*, Civil Action No. 2:13-CV-319, Doc. 24
   (S.D. Tex. Jan. 16, 2014) ................................................................. 4, 8, 9, 10

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*,
   677 F.2d 1045, 1050 (5th Cir. 1982) ................................................................ 7

*Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 428 (5th Cir. 1997)....................... 9

*Lindquist v. City of Pasadena*, 525 F.3d 383, 386 (5th Cir. 2008)................................... 7

*Maples v. Univ. of Tex. Med. Branch*, 2013 U.S. App. LEXIS 8535
   (5th Cir. Apr. 26, 2013) ............................................................................ 16

*McCoy v. Texas Dep't of Criminal Justice*, 2006 U.S. Dist. LEXIS 55403,
   *22 (S.D. Tex. 2006)................................................................................. 10

*Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004)................. 10, 17

*O'Neil v. Tex. Dep't of Crim. Justice*, 804 F.Supp.2d 532, 538 (N.D. Tex. 2011) .......... 16

*Parker v. Am. Airlines, Inc.*, 516 F. Supp. 2d 632, 634 (N.D. Tex. 2007) ...................... 7

*Patrick v. Wal-Mart, Inc.-Store No. 155*, 681 F.3d 614, 622 (5th Cir. 2012)................... 8

*Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 211 (1998) ...................... 10

*Prejean v. Cypress-Fairbanks Indep. Sch. Dist.*, 97 Fed. Appx. 480
   (5th Cir. May 11, 2004) ............................................................................. 16

*Rojek v. Cath. Charities of Jackson, Inc.*, 2010 U.S. Dist. LEXIS 5205,
   *40 (E.D. Mich. May 27, 2010)..................................................................... 13

*Rouse v. Plantier*, 997 F.Supp. 575, 582 (D. N.J. 1998) ............................................. 12

*Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 503 (5th Cir. 2002).......................... 13

*Taylor v. Richmond State Supported Living Ctr.*, 2012 U.S. Dist. LEXIS 170190,
   *14 (S.D. Tex. Nov. 30, 2012)...................................................................... 17

*Tennessee v. Lane*, 541 U.S. 509, 533 (2004)......................................................... 12

*Thomas v. City of Galveston*, 800 F.Supp.2d 826, 842-43 (S.D. Tex. 2011) ................... 8

*United States v. Georgia*, 546 U.S. 151 (2006) .................................................... 10, 12

*Wright v. Texas Department of Criminal Justice*, No. 7:13-cv-0116-O,
   Doc. 16 (N.D. Tex. Dec. 16, 2013).................................................................. 4, 9

## BRIEF IN RESPONSE

Defendant University of Texas Medical Branch (UTMB), the medical provider for the Texas Department of Criminal Justice's Hutchins State Jail prison, fails to provide accommodations to prisoners with heat-sensitive disabilities. As a result, such prisoners are exposed to extremely high and extremely dangerous indoor heat indexes. At the Hutchins State Jail, these high heat indexes soared into the 120s and 130s, and killed Larry McCollum, a man with disabilities (obesity, hypertension, and diabetes) that put him at increased risk of heat stroke. Because UTMB failed to make an accommodation for McCollum, he died from an easily preventable heat stroke.

## SUMMARY OF THE RESPONSE

The Southern District of Texas recently denied a similar motion to dismiss in a virtually identical case. *Hinojosa v. Livingston*, Civil Action No. 2:13-CV-319, Doc. 24 (S.D. Tex. Jan. 16, 2014) (Gonzales Ramos, J.) (attached as *Exhibit 1*). The Northern District of Texas also rejected similar arguments in *Wright v. Texas Department of Criminal Justice*, No. 7:13-cv-0116-O, Doc. 16 (N.D. Tex. Dec. 16, 2013) (O'Connor, J.) (attached as *Exhibit 2*). In *Hinojosa, Wright*, and this case, a decedent's survivors allege prison medical providers failed to recommend safe housing for inmates with disabilities, causing prisoners to die. As in *Hinojosa* and *Wright*, the Plaintiffs have adequately plead facts showing UTMB denied reasonable accommodations to McCollum. Thus, UTMB's motion should be denied.[1]

---

[1] In addition, Plaintiffs allege UTMB failed to place McCollum in a lower bunk due to his morbid obesity, and that this failure to accommodate McCollum proximately caused his death.

I.      FACTS

A.  Mr. McCollum's Death

McCollum died at age fifty-eight, while serving a short prison sentence for forgery.[2] When he arrived at the Hutchins State Jail, the heat was so intense officers told him, "Welcome to Hell."[3] Though he told the UTMB nurse who performed an initial triage shortly after he arrived that he suffered from diabetes and hypertension, and he was obviously obese, no measures were taken to protect him from the high heat indexes inside the dormitory where UTMB recommended he live.[4] Disturbingly, this is by design. TDCJ and UTMB policy actually recognizes people with McCollum's medical conditions are at increased risk of heat stroke, but UTMB provided no additional measures to protect him.[5]

Moreover, though even a layperson (and certainly the nurse who examined him) could see McCollum was obese (and, in fact, weighed 330 pounds but was only 5' 10" tall),[6] UTMB had no policy to ensure he was assigned to a bottom bunk.[7] The triage nurse did not recommend he receive a bottom bunk. In fact, he was assigned to a top bunk, and had great difficulty getting on and off to get the limited water TDCJ provided – the prison's main strategy for protecting prisoners from heat.[8]

Housing and work assignments to accommodate prisoners' disabilities at the prison are made during the initial physical performed by a doctor or physician's assistant. But the intake physical, by UTMB policy, is not required to happen until the prisoner has been incarcerated for seven to ten days. Though an initial bunk assignment is made at the

---

[2] Doc. 119, Plaintiffs' Second Amended Complaint, ¶ 42.
[3] *Id.*, ¶ 43.
[4] *Id.*, ¶ 44.
[5] *Id.*, ¶¶ 26, 33, 63.
[6] *Id.*, ¶ 36.
[7] *Id.*, ¶¶ 48-50.
[8] *Id.*

5

initial triage (and this is its own ADA/Rehabilitation Act violation), a final housing assignment does not occur until the intake physical.[9] Thus, prisoners like McCollum must wait, and hope their disabilities do not strike them down until they can finally be seen by a doctor and assigned safe housing.

McCollum did not get that opportunity. He died just a few days after arriving when the heat index inside the prison rose above 120 degrees Fahrenheit.[10] He began suffering convulsions in his bunk and became unresponsive shortly after 2:00 a.m. Because of his obesity, and UTMB's failure to assign him to a bottom bunk, the officers could not get McCollum down off the top bunk to take him to a cool part of the prison.[11] And because UTMB chose not to staff the medical department after business hours,[12] it took officers almost an hour to call an ambulance to take him to Parkland Hospital.[13] When he got there, his body temperature was a stunning 109.4 degrees.[14] The extreme heat caused multi-system organ failure. He slipped into a coma and died a few excruciating days later.[15] An autopsy concluded he died of hyperthermia, due to being "in a hot environment without air conditioning."[16]

### B.  UTMB's Polices and Procedures Caused McCollum's Death

Plaintiffs' Second Amended Complaint alleges UTMB's policies and practices caused McCollum to suffer more from the extreme indoor temperatures than non-disabled prisoners:

---

[9] *Id*. ¶¶ 114-117.
[10] *Id.*, ¶ 52.
[11] *Id.*, ¶ 83.
[12] *Id.*, ¶ 67.
[13] *Id.*, ¶¶ 70-79.
[14] *Id.*, ¶ 84.
[15] *Id.*, ¶ 85.
[16] *Id.*, ¶ 86.

1).     UTMB failed to restrict McCollum's bunk assignment, via its triage nurse and/or policies, resulting in his placement in a top bunk. The top bunk deprived McCollum of emergency medical care, and limited his ability to access the minimal measures the prison did provide to combat the heat (like constant access to cold drinking water);

2).     UTMB failed to assign prisoners with heat-sensitive disabilities (like McCollum) to climate-controlled housing that would protect them from high temperatures;[17] and,

3).     UTMB failed to provide after-hours medical care at the Hutchins State Jail, despite knowing many prisoners with medical conditions similar to McCollum lived there and were likely to suffer a medical emergency.[18]

These deliberate decisions denied disabled prisoners, like McCollum, the reasonable accommodations necessary to allow them to live safely in TDCJ's prisons.

## II.     STANDARD OF REVIEW – RULE 12(c) MOTIONS ARE DISFAVORED AND RARELY GRANTED

The Court should deny UTMB's Rule 12(c) motion because it cannot be granted unless the pleadings are deficient on their face.

The standard of review for Rule 12(c) motions is the same as Rule 12(b)(6) motions to dismiss. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). Motions to dismiss for failure to state a claim "are viewed with disfavor and [are] rarely granted." *Parker v. Am. Airlines, Inc.*, 516 F. Supp. 2d 632, 634 (N.D. Tex. 2007) (citing *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)). When reviewing a motion to dismiss, Courts are required to accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Lindquist v. City of Pasadena*, 525 F.3d 383, 386 (5th Cir. 2008) (internal quotation marks and citations omitted).

---

[17] *Id.*, ¶¶ 93, 111, 118-23.
[18] 2nd Amd. Complaint, ¶ 63.

A claim is correctly pled when the facts go beyond "threadbare recital of the elements of a cause of action, supported by mere conclusory statements." *Patrick v. Wal-Mart, Inc.-Store No. 155*, 681 F.3d 614, 622 (5th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations," it only "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. And when a governmental entity is the defendant, plaintiffs will often not have access to critical documents before conducting discovery. Thus, "only minimal factual allegations should be required at the motion to dismiss stage." *Thomas v. City of Galveston*, 800 F.Supp.2d 826, 842-43 (S.D. Tex. 2011).

## III.   ARGUMENT – PLAINTIFFS STATE A CLAIM UNDER THE ADA AND REHABILITATION ACT

### A.  Plaintiffs' Plead Claims Under the ADA and Rehabilitation Act

Federal District Judge Nelva Gonzales Ramos denied a similar motion UTMB filed in *Hinojosa v. Livingston*, Civil Action No. 2:13-CV-319, Doc. 24 (S.D. Tex. Jan. 16, 2014). Judge Ramos ruled:

> Plaintiff has alleged sufficient facts to state how the decedent was discriminated against. Plaintiff alleges that Defendant knew of the risks and dangers associated with certain medical conditions and medications, that Defendant knew the decedent suffered from those conditions and used those medications, and that despite that knowledge, Defendant failed to make reasonable accommodations, resulting in the decedent suffering more pain and punishment than non-disabled prisoners – namely, his death.

*Id*. p. 4. Judge Ramos further held "it is not enough for Defendant to claim that all prisoners in the [prison] – whether suffering from a disability or not – endured the same housing and living conditions that the decedent did." *Id*.[19]

The facts alleged in this case are exactly the same. Like Mr. Hinojosa, McCollum suffered from heat-sensitive disabilities, but UTMB denied him any accommodation to protect him from the extreme indoor temperatures in Texas prisons. Allegations the medical provider failed to recommend safe housing "state[s] a *prima facie* case that [the medical provider] violated the ADA and Rehabilitation Act." *Wright*, No. 7:13-cv-0116-O, Doc. 16 at 8.

To allege a claim under the ADA and Rehabilitation Act, a plaintiff must plead: (1) that he is a qualified individual within the meaning of the acts; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability. *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 428 (5th Cir. 1997). Plaintiffs' complaint meets this standard.

*(1) Mr. McCollum Suffered from a Disability*

UTMB's motion does not contest Mr. McCollum was a qualified individual with a disability – diabetes, obesity, and hypertension. Plaintiffs allege these conditions are physical impairments that limited one or more of McCollum's major life activities, as

---

[19] UTMB's amended motion to dismiss abandons arguments made in the original motion – presumably due to Judge Ramos' decision in *Hinojosa*. Nonetheless, out of an abundance of caution, Plaintiffs address all the elements of an ADA/Rehabilitation Act claim.

defined in the statute.[20] *See* 42 U.S.C. § 12102. Thus, Plaintiffs have plead the first element.

### (2) Prison is a "Service or Program" for ADA and RA Purposes

Writing for a unanimous Supreme Court, Justice Scalia explained confinement in a jail or prison is a program or service for ADA/Rehabilitation Act purposes. *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 211 (1998).

When a person has a disability, the ADA/Rehabilitation Act requires public entities to provide a "reasonable accommodation" to assist them in accessing public programs and services. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004). "Discrimination" under the ADA and Rehabilitation Act "differs from discrimination in the constitutional sense because the ADA and Rehabilitation Act statutes contain their own definitions of discrimination." *McCoy v. Texas Dep't of Criminal Justice*, 2006 U.S. Dist. LEXIS 55403, *22 (S.D. Tex. 2006) (citing *Melton*, 391 F.3d at 672). The Court in *McCoy* explained a failure to make reasonable accommodations in the prison context constitutes "discrimination" under the ADA and Rehabilitation Act because "failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of an accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners." *Id*. (citing *United States v. Georgia*, 546 U.S. 151 (2006)). *See also Hinojosa*, 2:13-cv-00319, at 3.

Moreover, the Supreme Court has expressly held the denial of medical care to individuals with disabilities, here, an intake physical, can form the basis of a valid ADA and Rehabilitation Act claim. *Georgia*, 546 U.S. at 157.

---

[20] *See, e.g.*, 2nd Amd. Complaint, ¶¶ 24-28 (hypertension), 29-35 (diabetes), 36-40 (obesity).

Because Mr. McCollum was not provided reasonable accommodations, namely, safe housing given his disabilities, he could not participate in the prison's programs and died – undoubtedly suffering more "pain and punishment" than other able-bodied prisoners at the Hutchins State Jail.

The Rehabilitation Act follows the same standards, adding only the requirement that the entity also receive federal funding, as the complaint alleges UTMB does.[21] (2nd Amd. Complaint, ¶ 18). *See* 42 U.S.C. § 12133[22] and 29 U.S.C. § 794(a) (2006). Courts interpret the ADA and Rehabilitation Act under the same body of law. *See*, *e.g.*, *Bennett-Nelson v. Louisiana Board of Regents*, 431 F.3d 448, 455 (5th Cir. 2005).   Thus, Plaintiffs have satisfied the elements of a Rehabilitation Act claim as well.

> (3) *Mr. McCollum was Excluded from Prison Programs Because of his Disabilities*

Finally, the Second Amended Complaint plainly alleges McCollum was excluded from prison programs and activities. He died because UTMB failed to accommodate his disabilities by assigning him safe housing. Prisoners without disabilities like hypertension, obesity, and diabetes are far more likely to only suffer in the extreme heat, but avoid life-threatening injuries or death. McCollum's disabilities, however, put him at far greater risk of death. (2nd Amd. Complaint, ¶¶ 26-28 (hypertension increases risk of heat-related illness), ¶¶ 33-24 (diabetics at greater risk of heat stroke), ¶¶ 39, 63 (obesity causes greater risk of heat stroke)). Thus, UTMB discriminated against McCollum by

---

[21] The Rehabilitation Act also has a different causation standard, as discussed below. In all other respects, the statutes are identical.

[22] "The remedies, procedures, and rights set forth in section 505 of the Rehabilitation Act of 1973 shall be the remedies, procedures and rights this title provides to any person alleging discrimination on the basis of disability in violation of [Title II of the ADA]."

denying him an intake physical and by placing him in the same brutal conditions as able-bodied prisoners.

Unlike other anti-discrimination statutes, the ADA and Rehabilitation Act's definitions of discrimination create an "affirmative obligation" that requires public entities, like UTMB, to accommodate people with disabilities – *not* simply treat people with disabilities the same as able-bodied people. *See, e.g., Tennessee v. Lane*, 541 U.S. 509, 533 (2004). "Recognizing that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion, Congress required the States to take reasonable measures to remove architectural and other barriers to accessibility." *Id.*, at 531. Though UTMB treated McCollum the same as able-bodied prisoners, it "outright excluded" him from programs and services at the prison by failing to accommodate his disabilities, tragically causing his death. Title II creates an affirmative "duty to accommodate" – not just a passive duty to treat everyone equally. *Id.* at 532.[23]

Thus, the ADA and Rehabilitation Act are fundamentally different from other anti-discrimination statutes. Title VII of the Civil Rights Act, for example, prohibits employers from discriminating against people of color in hiring – employers must make color-blind hiring decisions. 42 U.S.C. § 2000e-2. But the ADA requires more. Employers are not only prohibited from making hiring decisions based on a person's disability, they must also make reasonable accommodations for employees with

---

[23] If, for example, the statutes only required equal treatment, UTMB would not be required to provide diabetics insulin unless it provided insulin to everyone. *See Rouse v. Plantier*, 997 F.Supp. 575, 582 (D. N.J. 1998) (denying prison's motion for summary judgment) (reversed on other grounds). Or if wheelchair ramps weren't built for able-bodied people, they would not need to be constructed for paraplegics' use. *See United States v. Georgia*, 546 U.S. 151, 154-55 (2006) (ADA requires removing architectural barriers for paraplegic prisoners). And if UTMB did not provide sign-language interpreters for every patient's appointment, it would not need to provide them for the deaf. *See Clarkson v. Coughlin*, 898 F.Supp. 1019 (S.D.N.Y. 1995) (prison required to provide sign-language interpreters for deaf).

disabilities. 42 U.S.C. § 12112(b)(5)(A). An employer, for example, could be required to purchase a document reader to assist a blind employee. *Rojek v. Cath. Charities of Jackson, Inc.*, 2010 U.S. Dist. LEXIS 5205, *40 (E.D. Mich. May 27, 2010).

The purpose of the ADA is to integrate people with disabilities into programs and services available to the able-bodied. *See* 42 U.S.C. § 12101(a)(1)-(8). Passively treating people with disabilities the same as able-bodied people is not enough – public entities must take affirmative steps to accommodate them. And here, UTMB did not.

**B.   The ADA Does Not Require "Sole" Causation**

Title II of the ADA, contrary to UTMB's motion, does not require the plaintiff to suffer discrimination "solely by reason of her or his disability."[24] Under the ADA, "discrimination need not be the sole reason for the exclusion of or denial of benefits to the plaintiff." *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005).

The Fifth Circuit squarely addressed this issue in *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 503 (5th Cir. 2002). There, the Fifth Circuit concluded the district court erred by instructing the jury that it could find for the plaintiff in an employment disability discrimination case brought under the Rehabilitation Act if disability was a "motivating factor" in an adverse employment decision. The Fifth Circuit stated "it is clear that the jury charge stated … was a proper ADA charge," but reversed

---

[24] Only the Rehabilitation Act requires a showing of discrimination "solely by reason of disability." *Compare* Title II, Americans with Disabilities Act, 42 U.S.C. §12132 ("no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.") *with* Rehabilitation Act, 29 U.S.C. §794 ("No otherwise qualified individual with a disability … shall, *solely by reason of her or his disability*, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance"). UTMB's citation is to the Rehabilitation Act, not the ADA.

the district court's decision because (on this point alone) the language of the Rehabilitation Act is different. 304 F.3d at 504. Only the Rehabilitation Act, not the ADA, requires discrimination "solely" by reason of disability. Thus, Plaintiffs' ADA claims may not be dismissed on this basis.

### C.  UTMB's Refusal to Accommodate McCollum was the Sole Cause of the Discrimination He Suffered

Had McCollum not suffered from obesity, hypertension and diabetes, he likely would have survived the brutal temperatures at the Hutchins State Jail. UTMB's failure to accommodate his disabilities denied him the ability to participate in programs and services at the prison, and ultimately resulted in his death. Denying him the accommodations was the illegal act of discrimination, regardless of any other contributory causes of the injury he ultimately suffered. The Rehabilitation Act only requires a plaintiff be excluded from a program or service "solely by reason of his disability" – not that the illegal discrimination be the sole cause of any ultimate injury.

Plaintiffs' Second Amended Complaint alleges UTMB discriminated against McCollum because it failed to provide him accommodations to assure he was not housed in the brutally hot parts of the prison. Had UTMB (1) timely performed an intake physical to assign Mr. McCollum proper housing; (2) immediately required accommodations for prisoners who self-reported heat-sensitive disabilities at triage; (3) provided 24-hour medical care at facilities where prisoners suffering heat-sensitive disabilities were housed; or (4) assigned him a lower bunk at the initial triage, then McCollum would likely be alive today. Each of these failures to accommodate McCollum solely denied him access to a benefit or service provided to non-disabled prisoners.

14

Moreover, the issue of sole causation is not relevant in this case. *Delano-Pyle v. Victoria Co.*, 302 F.3d 567, 575-76 (5th Cir. 2002) is instructive. There, a driver with severe hearing disabilities rear-ended another motorist. When the police arrived at the accident, the officer found prescription painkillers in the driver's car, but failed to provide him with a sign-language interpreter during field sobriety tests. As a result, the driver failed the sobriety tests and was taken to jail for driving while intoxicated. The Fifth Circuit upheld a jury verdict against the police department because its officer failed to provide an accommodation to the driver. Though the driver could have been arrested and taken to jail based on either the collision or the discovery of the painkillers, the department was liable because regardless of the ultimate injury he suffered (spending a night in jail) the department denied him a reasonable accommodation (the sign-language interpreter). The driver may still have been arrested after the interpreter arrived, but, had the accommodation been provided, he would not have been discriminated against.

As the Fifth Circuit explains, when the plaintiff was denied an accommodation the "sole" causation requirement is irrelevant.

> [T]here is no question that the complaint claims the [defendant's] failure to provide the demanded accommodations is the sole cause of the alleged denial of benefits to the plaintiffs. That is to say, the plaintiffs claim that they were excluded from participation in [programs and services] precisely to the extent that they were not accommodated … The question here is not … whether the denial of the accommodation to that disability was caused solely or only in part by the animus of the defendants. The question is whether the failure to accommodate the disability violates the ADA; and the existence of a violation depends on whether under both the Rehabilitation Act and the ADA, the demanded accommodation is in fact reasonable and therefore required. If the accommodation is required the defendants are liable simply by denying it.

*Bennett-Nelson*, 431 F.3d at 455 (hearing-impaired students denied accommodations for classes). Because Plaintiffs pled Mr. McCollum was denied a reasonable accommodation, they meet the "sole" causation standard.

For these reasons, "sole" causation only becomes relevant where the defendant takes an adverse action against the plaintiff – where there is a mixed motive for excluding a person with a disability, which is not the case here. For example, in *Maples v. Univ. of Tex. Med. Branch*, 2013 U.S. App. LEXIS 8535 (5th Cir. Apr. 26, 2013) (unpublished), summary judgment was entered against a student with a disability who did not receive accommodations for her learning disorder, but who also failed to complete required assignments (for reasons unrelated to her disability). The Fifth Circuit determined the failure to accommodate her was not the *sole* cause of her expulsion – her failure to complete required class work also played a role. *Compare Prejean v. Cypress-Fairbanks Indep. Sch. Dist.*, 97 Fed. Appx. 480, 483 (5th Cir. May 11, 2004) (unpublished) (summary judgment for employer when employee failed to present evidence showing termination for "any reason other than [his] declining job performance") *with O'Neil v. Tex. Dep't of Crim. Justice*, 804 F.Supp.2d 532, 538 (N.D. Tex. 2011) (denying summary judgment to prison medical care provider that failed to provide inmate with multiple accommodations for asthma). This case is similar to *Bennett-Nelson* and *O'Neil*, where disabled plaintiffs were denied accommodations by state agencies, and nothing like *Maples* and *Prejean* as McCollum had no ability to protect himself from the extreme heat without accommodations from UTMB.

### D.  The ADA and Rehabilitation Act Do Not Require Discriminatory Animus to Award Damages

Under the ADA and Rehabilitation Act, when a governmental entity knows a person needs an accommodation, and then fails to provide the accommodation, a person with disabilities has been intentionally discriminated against and is entitled to compensatory damages. *Delano-Pyle*, 302 F.3d at 575-76. A plaintiff does not need to show discriminatory animus, as in a race discrimination case. *See, e.g.*, *Taylor v. Richmond State Supported Living Ctr.*, 2012 U.S. Dist. LEXIS 170190, *14 (S.D. Tex. Nov. 30, 2012) (unpublished).

Tellingly, UTMB improperly relies on *Guardians Association v. Civil Service Commission of New York*, 463 U.S. 582 (1983), which is easily distinguishable because it is not an ADA or Rehabilitation Act case. It is a Title VI race-based discrimination case involving disparate impact in hiring allegations. The judgment of the Court turned on the "absen[ce] [of] clear congressional intent or guidance" in defining "discrimination" to include disparate impact claims. *Guardians Assoc.*, 463 U.S. at 598. But as the Fifth Circuit explained in *Melton*, the ADA and Rehabilitation Act define "discrimination" differently than Title VI. 391 F.3d at 672.[25] In the ADA/Rehabilitation Act context, the denial of the accommodation that UTMB knew McCollum needed is the intentional discrimination.

---

[25] *Compare* Title VI, 42 U.S.C. §2000d ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.") *with* ADA, 42 U.S.C. §12132 ("no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.").

**E.  Plaintiffs Only Seek Injunctive Relief Against TDCJ**

The Plaintiffs only seek injunctive and declaratory relief against TDCJ.[26] Thus, there are no claims for equitable relief against UTMB for the Court to dismiss.

## CONCLUSION

For the foregoing reasons, the Court should deny UTMB's motion to dismiss in its entirety.

DATED: February 26, 2014.

Respectfully submitted,

The Edwards Law Firm
The Haehnel Building
1101 East 11th Street
Austin, Texas 78702
     Tel.    512-623-7727
     Fax.   512-623-7729

By    /s/ Jeff Edwards
JEFF EDWARDS
State Bar No. 24014406
Lead Counsel
Scott Medlock
State Bar No. 24044783

Brian McGiverin
State Bar No. 24067760
James C. Harrington
State Bar No. 09048500

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
(512) 474-5073 [phone]
(512) 474-0726 [fax]

---

[26] 2nd Amd. Complaint, ¶¶ 163-164.

Eliot Shavin
State Bar No. 18138200
2600 State Street
Dallas, Texas 75204
214-522-2010 (telephone)
214-720-9594 (fax)
Local Counsel

ATTORNEYS FOR PLAINTIFFS


## CERTIFICATE OF SERVICE

By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Northern District of Texas.

By ____ /s/ Jeff Edwards _____
JEFF EDWARDS