IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN MCCOLLUM, *et al.*, | § | |
|     *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL NO. 3:12-CV-02037-L-BK |
| | § | |
| BRAD LIVINGSTON, *et al.*, | § | |
|     *Defendants*. | § | |

## ORDER

Pursuant to the District Court's *Order of Reference* (Doc. 125), this case is before the Court on Plaintiffs' *Motion for Protective Order and Motion to Quash Unauthorized Deposition*s (Doc. 120). For the reasons below, the motion is **GRANTED IN PART**.

**A.    Background**

Plaintiffs, the surviving wife and children of Larry Gene McCollum, have sued various Texas Department of Criminal Justice ("TDCJ") officials and the University of Texas Medical Branch ("UTMB"), stemming from McCollum's death in July 2011 while he was housed in the Hutchins State Jail in Dallas, Texas. (Doc. 119 at 1-2). Plaintiffs claim that (1) TDCJ officials violated McCollum's Eighth and/or Fourteenth Amendment rights; and (2) both TDCJ and UTMB, which makes housing recommendations to TDCJ based on prisoners' medical conditions, violated the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973. *Id.* at 2.

Plaintiffs allege in the operative complaint that McCollum was obese when he arrived at the jail, and he reported to TDCJ and UTMB officials that he suffered from both hypertension and diabetes. *Id.* at 7-8. He was prescribed hydrochlorothiazide, a diuretic, shortly after his arrival. *Id.* at 8. Plaintiffs note that McCollum was assigned to an un-airconditioned dormitory

in the jail. *Id.* at 10. Approximately one week later, McCollum began having convulsions at around 2:00 a.m. *Id.* at 14. Plaintiffs aver that another prisoner notified a guard and, after a delay of approximately an hour, an ambulance was called to take McCollum to the hospital. *Id.* at 14-16. When he arrived there, McCollum's internal body temperature was 109.4 degrees Fahrenheit, and he slipped into a coma. *Id.* at 16-17. Six days later, he died of hyperthermia. *Id.* at 17. Plaintiffs contend that the results of an autopsy indicated that McCollum was "predisposed to developing hyperthermia due to morbid obesity and treatment with a diuretic (hydrochlorothiazide) for hypertension." *Id.*

Defendants deposed two of the Plaintiffs, namely McCollum's surviving children Stephen McCollum ("Stephen") and Stephanie Kingrey ("Kingrey"), in November 2013. (Doc. 127-1 at 2; Doc. 127-2 at 2). When UTMB sought to depose them again based on changes to their testimony that they made on their errata sheets, Plaintiffs filed the instant motion. (Doc. 120).

**B.   Applicable Law**

For good cause, the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1)(A). "[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (quotation omitted).

Pursuant to Federal Rule of Civil Procedure 30(e), on request by the deponent or a party, the deponent must be allowed 30 days in which to review the transcript or recording of the

deposition and "if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." The Fifth Circuit has not addressed the scope of permissible substantive corrections to a deposition under Rule 30(e), and courts have taken different approaches. Under the most strict approach, a court will allow a Rule 30(e) amendment only for the correction of typographical and transcription errors. *See, e.g.*, *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000) (concluding that "a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not'"); *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322 (W.D. La. 1992) (holding that Rule 30(e) permits only the correction of typographical and transcription errors, reasoning that a deposition "is not a take home examination."); *see also E.E.O.C. v. Skanska USA Building, Inc.*, 278 F.R.D. 407, 412 (W.D. Tenn. 2012) (holding that while a party was prohibited from using an errata sheet to change his deposition testimony, the deponent could submit an affidavit that contradicted prior testimony at which point the court would apply the well-established "sham affidavit" analysis).

Under the so-called traditional view, courts have held that Rule 30(e) permits a deponent to change his deposition testimony by timely corrections even if they contradict the original answers. *See, e.g.*, *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997) ("[T]he language of [Rule 30(e)] places no limitations on the type of changes that may be made, nor does the Rule require a judge to examine the sufficiency, reasonableness, or legitimacy of the reasons for the changes – even if those reasons are unconvincing." (quotation marks and alterations omitted)). The few judges who have addressed the issue in this district have followed the more traditional view. In *Reilly v. TXU Corp.*, 230 F.R.D. 486 (N.D. Tex. 2005), the plaintiff's errata

3

sheet contained 111 changes to his deposition, with 107 of them being labeled as made for purposes of clarification.  In more than one instance, the plaintiff changed his answers completely, such as from "no" to "yes."  *Id.* at 487.  The defendant moved to strike the deposition corrections, arguing that they contradicted, changed, and added to the plaintiff's sworn testimony.  *Id.*  Magistrate Judge Ramirez rejected the narrow interpretation of Rule 30(e) espoused in the *Greenway* case, noting however, that it was a "growing minority view."  *Id.* at 488 (citing Ninth, Tenth, and Seventh Circuit cases).

Instead, Judge Ramirez adopted the broad view of Rule 30(e) set forth in *Lugtig v. Thomas*, 89 F.R.D. 639, 641 (N.D. Ill. 1981) and adopted by the majority of courts.  *Id.* at 489-90.  The court noted that this broader interpretation was more consistent with the language of Rule 30(e), which expressly contemplates "changes in form or substance" and does not contain any limitations on the nature of such changes.  *Id.* at 490.  Judge Ramirez also recognized that the broad approach allowed deponents to make legitimate corrective changes and provided judges with the leeway to implement adequate safeguards to prevent abuse, including allowing both the original and amended answers to be introduced into evidence, reopening the deposition, and assessing the costs of additional discovery necessitated by the substantive changes against the deponent.  *Id.*  Given the substantive and even contradictory manner in which the plaintiff's errata sheet changed his deposition testimony, Judge Ramirez (1) reopened his deposition; (2) limited it in scope to the changes between the documents and follow-up questions to the changed responses; and (3) invited the defendants to submit an application for attorneys' fees.  *Id.* at 491.

Since, the District Judge presiding over this case has found the *Reilly* opinion persuasive.  In *Atlin v. Mendes*, Case No. 3:06-CV-1909-L, 2009 WL 306173, *2-3 (N.D. Tex. 2009), the

4

defendant moved to strike the plaintiff's deposition after he changed some answers on the errata sheet. The Court found that a broad reading of Rule 30(e) was warranted based on the reasoning in *Reilly* and noted that there were two safeguards to such an approach: (1) the original answer remained part of the record, and the plaintiff would be subject to cross-examination on it; and (2) if changes made on the errata sheet rendered the deposition "incomplete or useless without further testimony," the party who took the deposition could reopen the proceeding. *Atlin*, 2009 WL 306173 at *3 (quoting *Reilly*, 230 F.R.D. at 490). Accordingly, the Court did not strike the deponent's errata sheet, finding that the changes to his testimony complied with Rule 30(e). Nevertheless, the district court (1) reopened the plaintiff's deposition so that the defendant could question him about the changes; (2) allowed the defendant to depose another witness implicated in his changed answers; and (3) rejected the plaintiff's attempt to keep his original answer out of the record. *Id.* at 3.

**C.      Arguments and Analysis**

Plaintiffs argue that they are not subject to being re-deposed because UTMB did not seek leave of court to do so and has not demonstrated the necessity for conducting additional depositions. (Doc. 120 at 2-3). UTMB responds that it deposed Plaintiffs in an attempt to discern whether McCollum suffered from diabetes and hypertension given the dearth of medical evidence in the record. (Doc. 127 at 2). UTMB contends that (1) Plaintiffs disclaimed any knowledge about whether McCollum had been diagnosed with either condition; (2) Kingrey testified that she did not consider her father to be disabled; and (3) Stephen stated that he believed his father was disabled based on a prior car accident and due to his obesity. *Id.* UTMB claims, however, that Kingrey and Stephen made new and contradictory statements in their post-

5

deposition errata sheets making their re-depositions necessary. *Id.* at 3. UTMB further argues that additional deposition time is needed because Plaintiffs recently amended their complaint to allege that McCollum also was disabled on the basis of his obesity. *Id.* Plaintiffs reply that in their errata sheets they merely clarified their answers to a question that called for a legal conclusion, namely whether their father suffered from a "disability" within the meaning of the ADA. (Doc. 134 at 1-2). As such, Plaintiffs argue that requiring them to be deposed again would be unreasonably duplicative and cumulative. *Id.* at 2-3.

A careful review of Plaintiffs' depositions and errata sheets reveals that the alleged conflicts between their testimony and errata sheets are not as significant as UTMB contends. Contrary to what UTMB represents, during her deposition Kingrey did not disclaim knowledge about whether her father had been diagnosed with diabetes. She actually testified that McCollum told her that he was diabetic, and she was not surprised by this because the disease runs in her family. (Doc. 134-4 at 4). Kingrey also testified that she was not aware of her father having been diagnosed with high blood pressure and that she did not consider him to be disabled. (Doc. 127-2 at 4, 6). In her errata sheet, she appended to the latter statement "but I knew he had difficulty walking because of his leg, that he had been diagnosed with diabetes and hypertension, and that he was obese." (Doc. 127-4 at 2). She noted that the reason for adding this to her testimony was to provide a more complete answer. *Id.*

Stephen answered several questions to the effect that while he did not know whether his father had been diagnosed with diabetes, he knew from various conversations with family members over the years that his father had been told at least once that he had diabetes and he was prescribed medication for that condition. (Doc. 134-6 at 3-4). When asked whether he knew

6

whether his father had hypertension, Stephen said that he did not know prior to some of the reports that he saw from Parkland Hospital. *Id.* at 10; Doc. 127-1 at 4.  Additionally, Stephen testified that he considered his father disabled because of his obesity and an injury to his knee sustained in a car accident. (Doc. 127-4 at 1).  In his errata sheet, Stephen added that he "also knew [McCollum] was diagnosed with diabetes and hypertension." (Doc. 127-3 at 2).  He stated that the reason he changed his testimony was to provide a more complete answer. *Id.*

In short, the only actual conflict between Kingrey's deposition and her errata sheet is that she newly claimed in the errata sheet that she knew McCollum had been diagnosed with hypertension.  Her contentions about her father's leg, his diabetes, and his weight were all matters to which she either testified consistently or there is no record evidence of how she testified because only a limited portion of the transcript is before the Court. (Doc. 134-4 at 4; 134-5 at 3).  Similarly, the only significant conflict between Stephen's deposition and his errata sheet is that he claimed for the first time in the errata sheet that he knew his father had been diagnosed with hypertension.  His mention of diabetes on the errata sheet is not inconsistent and is supported by his deposition testimony. (Doc. 127-4 at 1; Doc. 134-6 at 3-4).

Nevertheless, given the importance of the hypertension issue in the context of this case, the Court will permit Kingrey's and Stephen's depositions to be re-opened, but limit the scope of the inquiry to (1) the reason they changed their responses to the question about whether they knew McCollum had hypertension; and (2) follow-up questions related to the changed responses. Further, given Plaintiffs' recent amendment to their complaint to add McCollum's obesity as a separate claimed disability, UTMB may pose questions to Kingrey and Stephen on that subject as well.  (Doc. 119 at 30).

**D.**     **Conclusion**

For the reasons set forth above, Plaintiffs' *Motion for Protective Order and Motion to Quash Unauthorized Depositions* (Doc. 120) is **GRANTED IN PART**.

**SO ORDERED** on February 27, 2014.

*[signature]*
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE