IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHANIE McCOLLUM, *et al.*, | § | |
|     *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:12-CV-02037 |
| | § | |
| BRAD LIVINGSTON, *et al.*, | § | |
|     *Defendants*. | § | JURY |

**DEFENDANT LIVINGSTON'S REPLY TO PLAINTIFFS' RESPONSE TO HIS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT ON THE BASIS OF QUALIFIED IMMUNITY**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE SAM LINDSEY:

Defendant Brad Livingston files the following Reply to Plaintiffs' Response to his Motion to Dismiss (Doc. 136) the Second Amended Complaint (Doc. 113-2) on the basis of Qualified Immunity.

**SUMMARY**

Plaintiffs' Response to Livingston's Motion to Dismiss fails to address the insufficiency of the Second Amended Complaint to show that Livingston violated clearly established law. The Executive Administrator of a prison system of 152, 302 inmates does not lose his immunity if he does not air condition all 111 prison units, provide 24-7 on site prison medical care and if he does not personally involve himself in the medical, housing, diagnosis, treatment and assignment of an inmate with a pre existing medical condition such as McCollum.[1] *Blackmon v. Garza,* 484 Fed. Appx. 866, fn. 6 (5th Cir. 2012) (" . . . we do not suggest that air conditioning is mandatory to meet the requirements of the Eighth Amendment."). Livingston need not address all the issues raised in the 24 page Response Brief and its attached Exhibit 1 because the Response makes claims not found in the Second Amended Complaint and attaches a 6 page exhibit, also not part of the live Complaint in this case-Doc. 113-2. What has not been addressed in this Reply, regarding the Second Amended Complaint has been addressed in Livingston's Motion to Dismiss, to which this Court is referred. Livingston incorporates such Motion as if fully set out herein and asks that this Court consider it together with this Reply.

---

[1]     http://www.tdcj.state.tx.us/documents/Statistical_Report_FY2012.pdf

Livingston asks the Court to not consider Exhibit 1 to Plaintiffs' Response or claims made in the Response that conflict, change or add to the Second Amended Complaint. The Court has clearly ruled from the bench at the last hearing held on this case that no more Amendments to the Complaint will be permitted. Moreover, as will be shown, precedent does not permit a court to rule on Fed. R. Civ. Proc. 12(b)(6) Motion to Dismiss asserting qualified immunity on the basis of any exhibits, claims or alleged facts that are not found in the live and pending Second Amended Complaint. (Doc-113-2)

**I.    Why Plaintiffs Have No Claim Against Livingston for Not Placing McCollum in an Air Conditioned Unit or Housing Area.**

The "FACTS" recited on page 7 of the Response, as further set out in the Second Amended Complaint, demonstrate why the claims made against Livingston have no merit. On his arrival to the Hutchins Unit, "Though he told the nurse who performed an initial evaluation that he suffered from diabetes and hypertension, and he was obviously obese, no measures were taken to protect him from the high heat indexes inside the dormitory where TDCJ assigned him to live." There is no claim that Livingston is a doctor, that he examined McCollum or that Livingston prevented the nurse from initiating the process of recommending to TDCJ that McCollum, due to his medical needs, should be assigned to an air conditioned unit. Document 113-2, Second Amended Complaint paragraph 43 states that "the nurse referred Mr. McCollum and his triage record to the physician's assistant at the prison, Ananda Babbili." who also did not make a recommendation that McCollum be assigned to air conditioned housing. Paragraph 48, Second Amended Complaint admits that medical professionals assigned to prison units to monitor and treat inmate health problems were authorized by TDCJ policy to make recommendations consistent with the medical needs of inmates:

> 48.    Although UTMB makes recommendations for housing and bunk assignments based on prisoners' medical conditions, UTMB had no policies or procedures to prevent housing 300 pound men in top bunks, and made no such recommendation to protect Mr. McCollum.

Paragraph 51, Second Amended Complaint also admits that the nurse and the physician's assistant could have made a recommendation to house McCollum at an air conditioned housing area, it admits that TDCJ had air conditioned prisons, had the nurse or the physician's assistant made such recommendation: "Of

2

the 97 state-operated TDCJ prisons, 56 have some air conditioning in inmate living areas." Had the nurse or the physician's assistant Babbili made such recommendation and Livingston then refused to follow it, perhaps there might be sufficient personal involvement to state a Constitutional claim.[2] However, paragraph 118, Second Amended Complaint explicitly excludes a claim based on Livingston having a policy to disregard housing recommendations made by medical professionals based on inmate medical need:

> 118.   UTMB officials, including Babbili, were aware many TDCJ prisoners live with hypertension, diabetes, or are obese, but are housed in non-air-conditioned, non-climate controlled TDCJ facilities, including the Hutchins State Jail. While these housing decisions are ultimately made by TDCJ, ***Warden Pringle acknowledged following recommendations made by UTMB, and confirmed that he would have moved prisoners to air conditioned facilities if told to do so by UTMB***. (emphasis added)

Livingston's immunity is not defeated by claims that medical professionals employed to diagnose, monitor and treat inmates did not properly perform their duty to take necessary action to preserve McCollum's health. *Lee v. Young*, 533 F.3d 505, 511 (7th Cir.2008) (In determining the best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals. *Hayes v. Snyder,* 546 F.3d 516, 527 (7th Cir.2008) (reiterating the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care). *Fantone v. Herbik*, 2013 WL2564429 (3rd Cir.2013) (State prison administrators who handled inmate's grievances were not deliberately indifferent to his serious medical needs, in violation of Eighth Amendment, where administrators had no responsibility or authority to treat inmates medically, and had no reason to believe that prison doctors were either mistreating or not treating inmate.)*;* *Lee v. Rushing*, 2013 WL 2462247 (5th Cir. 2013) (Sheriff was not liable under 42 U.S.C. 1983 for deliberate indifference to prisoner's serious medical need based on prisoner's claim that sheriff was aware of prisoner's scalp condition and failed to ensure timely care, in alleged violation of Eighth Amendment; prisoner failed to allege any personal involvement by sheriff in his treatment, medical complaints were monitored by the jail's

---

[2] *Lee v. Rushing*, 2013 WL 2462247 (5th Cir. 2013)(prisoner failed to allege any personal involvement by sheriff in his treatment, medical complaints were monitored by the jail's medical personnel, and there was no evidence indicating that sheriff personally ignored prisoner's medical complaints or denied prisoner treatment.)

medical personnel, and there was no evidence indicating that sheriff personally ignored prisoner's medical complaints or denied prisoner treatment.); *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir.1993). Warden and Commissioner for Corrections, neither of whom were physicians, could not be considered deliberately indifferent to prisoner's medical needs simply because they failed to respond directly to medical complaints of prisoner).

The Second Amended Complaint's claim that medical professionals, based on McCollum's obesity and other medical vulnerabilities, should have made a recommendation to TDCJ that McCollum be housed in an air conditioned environment cannot be a basis for a claim against Livingston. Clearly established law does not require prison administrators to be medical doctors nor to personally attend to or create policy for medically vulnerable inmates-only that they have employed qualified medical personnel for this purpose. UTMB medical staff's decision not to make an air conditioned housing recommendation for McCollum may not form the basis of a Constitutional claim against a security administrator not personally involved in the care and treatment of an inmate. *Domino v. Texas Dept of Criminal Justice,* 239, F.3d 752, 756 (5th Cir. 2001) (plaintiff must show the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for a serious medical needs-failure to mitigate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference.). *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 381(5th Cir.2005) (Supervisory officials cannot be held liable under 42 U.S.C. §1983 for the actions of subordinates on any theory of vicarious or respondeat superior liability.). *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1949-1950 (2009) (Respondent correctly concedes that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*)

**II.    Why Plaintiffs Have No Claim Against Livingston for Not Providing on 24-7 on Site Prison Medical Care at the Hutchins State Jail.**

Plaintiffs' Response repeats the frivolous claim that Livingston had a duty to provide 24-7 on site prison medical care. Response, page 9. ("(f). Livingston approved ending after-hours medical care at the Hutchins State Jail, causing the fatal hour-long delay;"). This claim is arguably sanctionable by the Court *sua*

4

*sponte* under Rule 11, Fed. R. Civ. Proc. It is well settled law that Livingston's qualified immunity is defeated only by a showing of a violation of clearly established law. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (To overcome immunity, specific facts must be set out demonstrating that defendant's conduct violated a clearly established right under the circumstances faced by the official.) It is also settled law that prison officials have no Constitutional duty to provide round the clock on site prison medical care. In *Lindsey v. McGinnis*, 1994 WL 162610 (6th Cir. 1994), 70 year old inmate Lindsey, diagnosed with peripheral vertigo and pretibial edema, sued the Director of the Michigan Department of Corrections claiming an unconstitutional delay in treatment because the Director "...failed to provide 24-hour on-site physician coverage at LCF.   (Lakewood Correctional Facility). The District Court rejected this claim and the 6th Circuit affirmed:

> Lindsey's reliance on *United States v. Michigan*, 680 F. Supp. 928, (W. D. Michigan 1987) is misplaced. The court in that case did not order the facilities involved or LCF to provide 24-hour on-site physician services.

In accord is *Obata v. Harrington*, 2013 WL 1442481 (D.Hawaii, 2013): (pp.3-4):

> Plaintiff alleges that WCF's lack of an onsite, twenty-four hour emergency facility violates his rights under the Eighth Amendment.
>
> ...
>
> **1.  Lack of a Twenty-Four Hour Emergency Care Facility**.
>
> Plaintiff fails to allege facts showing that WCF's lack of a twenty-four hour emergency care facility violated his constitutional rights. The Constitution requires prison officials to provide timely and adequate medical (and dental) care to prisoners. It does not require that every prison and jail have medical staff on duty twenty-four hours a day. *See, Bennett v. Reed,* 534 F.Supp. 83, 87 (E.D.N.C.1981)(absence of availability to qualified nurse on twenty-four hour duty does not violate prisoner's constitutional rights); *Williams v. Limestone County*, 198 Fed. Appx. 893, 897 (11th Cir. 2006) (absence of twenty-four hour medical staff on duty did not violate the prisoner's constitutional rights); *Robinson v. Conner,* 2012 WL 2358955 *5 (M.D.Ala.2012)(holding that prison's lack of twenty-four hour emergency infirmary, without more, fails to state a claim); *Parker v. Amos,* 2011 WL 3568836 *3 (W.D.Va.2011)(holding that jails and prisons are not required to provide twenty-four hour emergency care facilities). *4 Notwithstanding WCF's alleged lack of a twenty-four hour infirmary, Plaintiff fails to allege sufficient facts showing that (1) he required emergency medical care for a serious physical condition, (2) prison officials were aware of his serious need, and (3) nonetheless, refused or were unable to transport him to an emergency care facility outside of the

5

prison with deliberate indifference to his health and safety. As such, Plaintiff fails to state a claim and this claim is DISMISSED.

**2. Claims Against Warden Harrington**

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Iqbal*, 556 at 676. Rather, each government official may only be held liable for his or her own misconduct. A defendant may be held liable as a supervisor under 1983. if either (1) he or she was personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the Constitutional violation. *Starr v. Baca*, 633 F.3d 1191, 1196 (9th Cir.2011). In general, a plaintiff must allege that every government defendant  supervisor or subordinate  acts with the state of mind required by the underlying constitutional provision. *Or. State University Student Alliance v. Ray*, 699 F. 3d 1053, 1070 (9th Cir.2012). Conversely, where there is no evidence that the supervisor was personally involved or connected to the alleged violation, the supervisor may not be held liable. See *Edgerly v. City & Cnty of San Francisco*, 599 F.3d 946, 961B62 (9th Cir.2010).  Plaintiff fails to establish that Warden Harrington was personally involved or otherwise responsible for the alleged delay or denial of medical care to Plaintiff.  Plaintiff simply claims in conclusory terms that he was in pain on August 4, 2012, and that Warden Harrington knew that WCF lacked an onsite, twenty-four hour emergency facility. As explained above, even if Harrington was aware that WCF lacked a twenty-four hour infirmary, that does not equate to Harrington's deliberate indifference to Plaintiff's alleged need for emergency medical care on August 4, 2012. Plaintiff does not allege that Harrington was aware of Plaintiff's need for emergency care, or that Harrington instituted policies or procedures that denied medical services to prisoners who became ill overnight WCF. That is, that Harrington denied WCF staff the authority to transport Plaintiff or any other prisoner to an outside emergency medical facility if the need arose. An individual's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement. *Ourts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir.1987).  Plaintiff's allegations against Warden Harrington fail to state a cognizable constitutional claim and are DISMISSED.

Because there is no clearly established right to a 24-7 on site prison medical facility, paragraph 67, Second Amended Complaint does not defeat Livingston's immunity nor even state a Constitutional claim.  Once a government official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar recovery.  *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*) ("When a Defendant invokes qualified immunity, the burden is on the Plaintiff to demonstrate the inapplicability of the defense.").  This burden cannot be met when the conduct upon which the claim is based does not violate clearly established or is consistent with it. *Rogers v. Pendleton,* 249 F.3d 279, 286 (4th Cir.2001) ("... in gray areas, where the law is unsettled or murky,

qualified immunity affords protection to [a government official] who takes an action that is not clearly forbidden—even if the action is later deemed wrongful.")

**III.    Plaintiffs' Claims That Livingston Had No Policy to Accommodate Inmates Susceptible to Hot Weather Due to a Medical Condition Are Contradicted by Facts Alleged in Both the Second Amended Complaint (Doc. 113-2) and in Their Response Brief. (Doc. 136-1).**

Plaintiffs claim that Livingston's personal involvement in McCollum's death consists of not having a policy that would take into account his heat vulnerability due to obesity, diabetes and hypertension, that could have resulted in his placement in one of the 56 prison units that included air conditioned housing. Second Amended Complaint, paragraph 39, 51. They then negate that claim by stating facts demonstrating that there were in fact precisely such policies in place but were not implemented, not by Livingston, but the omissions of UTMB staff. "Soon after his arrival" at Hutchins, a UTMB nurse performed a triage and determined that McCollum was obese, diabetic, had hypertension and was on prescription medication. Paragraph 42. The nurse then referred him to a physician's assistant, Ananda Babbili, who "ignored his diabetes" and put him on a prescription diuretic aggravating his heat susceptibility. Paragraph 43-44. TDCJ policy authorized the nurse and the physician's assistant to recommend that McCollum be assigned to a lower bunk and to climate controlled housing which they did not do. Paragraph 48 ("Although UTMB makes recommendations for housing and bunk assignments based on prisoners' medical conditions, UTMB had no policies or procedures to prevent housing 300 pound men in top bunks, and made no such recommendation to protect Mr. McCollum."). Paragraph 116 ("The form UTMB staff complete, which Babbili and other staff was familiar with, can also require prosoners be housed: 1) in 'single level' facilities or on the ground floor...2) with prisoners who have similar medical conditions;"). Plaintiffs admit that TDCJ had a policy/practice that of following UTMB medical staff recommendations and that McCollum would have been moved to an air conditioned facility had medical staff made such recommendation:

> 118...While these housing decisions are ultimately made by TDCJ, Warden Pringle acknowledged following recommendations mabe by UTMB, and confirmed that he would have moved prisoners to air conditioned facilities if told to do so by UTMB.

7

Plaintiffs even admit that within the Hutchins Unit itself, there was an air conditioned area that the UTMB nurse or physician's assistant Babbili could have recommended that McCollum be taken and that correctional staff also had that option, but declined to use it. Paragraph 73 ("Tate also did not take McCollum to one of the may air-conditioned places in the prison, or use ice to cool his body, as she knew she should have done."); Paragraph 77 ("...Sanders did not have him taken to a cool place in the prison, or pack his body with ice, as she knew she should have done.").

Plaintiffs' admit that TDCJ had many policies responsive to heat induced medical stress and that UTMB medical and corrections staff have duties to take appropriate measures. Paragraph 79 ("...TDCJ training materials repeatedly state that when someone is suffering heat exhaustion, let alone a heat stroke, they need to be immediately moved to an air-conditioned area, and provided ice packs for their body."); Paragraph 86 ("High-ranking TDCJ officials, including Richard Thaler, the deputy director, testified Clark, Tate, and Sanders should not have delayed calling 911..."); Paragraph 120 ("...no one from UTMB made a recommendation to house Mr. McCollum safely-guaranteeing he would spend 24 hours a day in extremely hot conditions.").

## CONCLUSION

In determining whether the Second Amended Complaint states sufficient personal involvement to defeat Livingston's qualified immunity, the Court must confine its review to the claims made in that Complaint. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013):

> A motion to dismiss tests the sufficiency of a complaint. See *Butler v. United States,* 702 F.3d 749, 752 (4th Cir.2012). To survive such a motion, the complaint must contain facts sufficient "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brockington v. Boykins,* 637 F.3d 503, 506 (4th Cir.2011) (internal quotation marks omitted). One such defense is qualified immunity.

Dismissal is warranted under Rule 12(b)(6) if the *complaint* fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir.2007). ("a *complaint* may be subject to dismissal under Rule 12(b)(6) *when an affirmative defense ... appears on its face*."); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 358–59 (1990). Qualified immunity " 'will be upheld on a 12(b)(6) motion only when the immunity is established *on the face of the complaint*.' " *Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir.1996).(emphasis added)

Plaintiffs' Response makes claims beyond what is contained in the Second Amended Complaint, and attaches 6 pages of mediation proposal and agreement documents. Neither claims made in the Response not included in the Second Amended Complaint, nor the 6 page attachment to that Response may be considered by the Court in ruling on Livingston's Motion to Dismiss.

It is clear that the Second Amended Complaint, as to Livingston, is essentially a claim that he was deliberately indifferent to McCollum's medical needs by not moving him to an air conditioned environment due to his diabetes and hypertension and by not providing him with 24 hour on site prison medical facilities. These claims are refuted by the Second Amend Complaint's "facts" which conclusively demonstrate that the UTMB medical staffers that saw McCollum shortly after his arrival, could have recommended and implemented housing in one of the 56 air conditioned TDCJ units or transferred to an air conditioned area within Hutchins.³ According to the Second Amended Complaint, such a recommendation would have been followed.⁴ It is also not clearly established law that prison

---

³ "Soon after his arrival" at Hutchins, a UTMB nurse performed a triage and determined that McCollum was obese, diabetic, had hypertension and was on prescription medication. Paragraph 42. The nurse then referred him to a physician's assistant, Ananda Babbili, who "ignored his diabetes" and put him on a prescription diuretic aggravating his heat susceptibility. Paragraph 43-44. ("Tate also did not take McCollum to one of the may air-conditioned places in the prison...") Paragraph 73 ("...Sanders did not have him taken to a cool place in the prison...") Paragraph 77

⁴ Paragraph 118 ("While these housing decisions are ultimately made by TDCJ, Warden Pringle acknowledged following recommendations mabe by UTMB, and confirmed that he would have moved prisoners to air conditioned facilities if told to do so by UTMB.

9

administrators have a duty to air condition every prison unit [5] or to provide on site prison medical care on a 24-7 basis.  Plaintiffs do not cite a single case for the proposition that on site prison medical care is Constitutionally required or that it is clearly established law.  Livingston cites to 7 federal court cases that hold such care is not required.[6]  It is Plaintiffs' burden to show that clearly established law requires 24 hour on site prison medical care.  They must do more than attempt to distinguish the 7 cases Livingston cites.  They must affirmatively show past precedent that requires such medical care and not merely quibble with Livingston's authority. *Morgan v. Swanson,* 659 F.3d 359, 372 (5th Cir. 2011):

> "...existing precedent must have placed the statutory or constitutional question *beyond debate.*" The *sine qua non* of the clearly-established inquiry is "fair warning."  Thus, we must ask not only whether courts have recognized the *existence* of a particular constitutional right, but also ... whether that right has been defined with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct."

A prisoner claiming a denial of adequate medical care in violation of the Eighth Amendment must allege facts that demonstrate  that prison officials acted with deliberate indifference to a serious medical need.  *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  It is not enough to defeat Livingston's immunity, to show that medical and correctional staff, that had the authority and ability to cause McCollum to be transferred to a climate controlled environment, did not do so.  Livingston is not vicariously liable for the conduct of staff who did have personal involvement with McCollum and are claimed to have inadequately cared for him.  Nor does he lose his immunity for not providing 24-7 on site medical care as all courts that have ruled on this issue have unanimously held that such care is not a clearly established Constitutional requirement.

---

[5] *Blackmon v. Garza,* 484 Fed. Appx. 866, fn. 6 (5th Cir. 2012) ("we do not suggest that air conditioning is mandatory to meet the requirements of the Eighth Amendment.").

[6] *Lindsey v. McGinnis,* 1994 WL 162610 (6th Cir. 1994), *United States v. Michigan*, 680 F. Supp. 928, (W. D. Michigan1987) *Obata v. Harrington,* 2013 WL 1442481 (D.Hawaii, 2013): *Bennett v. Reed*, 534 F.Supp. 83, 87 (E.D.N.C.1981) (absence of availability to qualified nurse on twenty-four hour duty does not violate prisoner's constitutional rights) *Williams v. Limestone County*, 198 Fed. Appx. 893, 897 (11th Cir. 2006) (11th Cir. 2006)  (absence of twenty-four hour medical staff on duty did not violate the prisoner's constitutional rights) *Robinson v. Conner*, 2012 WL 2358955 *5 (M.D.Ala.2012)(holding that prison's lack of twenty-four hour emergency infirmary, without more, fails to state a claim) *Parker v. Amos,* 2011 WL 3568836 *3 (W.D.Va.2011)(holding that jails and prisons are not required to provide twenty-four hour emergency care facilities). *supra*, pp. 5-6.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Defense Litigation

KAREN D. MATLOCK
Assistant Attorney General
Chief, Law Enforcement Defense Division

/s/ Demetri Anastasiadis
DEMETRI ANASTASIADIS
Assistant Attorney General
Attorney-In-Charge
State Bar No. 01164480
Demetri.Anastasiadis@texasattorneygeneral.gov

Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin, Texas  78711
(512) 463-2080 / (512) 495-9139 (fax)

**ATTORNEYS FOR DEFENDANT
BRAD LIVINGSTON**


### NOTICE OF ELECTRONIC FILING

I, DEMETRI ANASTASIADIS, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing **Defendant Livingston's Reply to Plaintiffs' Response to his Motion to Dismiss the Second Amended Complaint on the Basis of Qualified Immunity,** in accordance with the Electronic Case Files system of the Northern District of Texas, on this the 28th day of February, 2014.

/s/ Demetri Anastasiadis
DEMETRI ANASTASIADIS
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, DEMETRI ANASTASIADIS, Assistant Attorney General of Texas do hereby certify that a true and correct copy of the above and foregoing **Defendant Livingston's Reply to Plaintiffs' Response to his Motion to Dismiss the Second Amended Complaint on the Basis of Qualified Immunity,** has been served electronically via the Electronic Case File system of the Northern District of Texas, on this the 28th day of February, 2014, addressed to:

Jeff Edwards
jeff@edwards-law.com

Scott Medlock
scott@edwards-law.com

James Harrington
jch@mail.utexas.edu

Brian McGiverin
brian@texascivilrightsproject.org

Eliot D Shavin
eshavin@sbcglobal.net

Bruce R Garcia
bruce.garcia@texasattorneygeneral.gov

Johnathan Stone
jonathon.stone@texasattorneygeneral.gov

Kim Coogan
kim.coogan@texasattorneygeneral.gov

Shanna Molinaire
shanna.molinaire@texasattorneygeneral.gov

Erika Hime
erika.hime@texasattorneygeneral.gov

Lacey Mase
lacey.mase@texasattorneygeneral.gov

/s/ Demetri Anastasiadis
DEMETRI ANASTASIADIS
Assistant Attorney General