UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| STEPHEN McCOLLUM, and SANDRA McCOLLUM, individually, and STEPHANIE KINGREY, individually and as independent administrator of the Estate of LARRY GENE McCOLLUM,<br>PLAINTIFFS<br><br>v.<br><br>BRAD LIVINGSTON, JEFF PRINGLE, RICHARD CLARK, KAREN TATE, SANDREA SANDERS, ROBERT EASON, the UNIVERSITY OF TEXAS MEDICAL BRANCH and the TEXAS DEPARTMENT OF CRIMINAL JUSTICE.<br>DEFENDANTS | CIVIL ACTION NO.<br>3:12-cv-02037<br>JURY DEMAND |

**PLAINTIFFS' MOTION TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION AND DEPOSITION TESTIMONY FROM DEFENDANT UNIVERSITY OF TEXAS MEDICAL BRANCH**

**I.   SUMMARY OF THE LAWSUIT**

This is a wrongful death case. The decedent, Larry McCollum, died of heat stroke because he was subjected to dangerous temperatures inside his prison housing area. Shockingly, McCollum's death was merely one of ten heatstroke deaths during the summer of 2011 in TDCJ prisons where UTMB was providing health care.[1]

According to UTMB and its executive director for prison healthcare, each of these deaths were evaluated and reviewed by UTMB's mortality and morbidity review committee and were peer reviewed. But when asked for documents pertaining to these "reviews" and when asked directly in depositions, UTMB refused to provide the

---

[1] In 2012, another two men died of heatstroke in TDCJ facilities.

documents and its executive director, and its Rule 30(b)(6) designee refused to answer any questions about the investigations at the instruction of UTMB's counsel.

As the peer review privilege does not preclude discovery in federal civil rights cases and certainly does not enable UTMB to hide its mortality review investigations, Plaintiffs respectfully request that the Court order Defendant UTMB to produce all responsive documents and that UTMB's witnesses be ordered to give testimony on this topic.

## II.   SUMMARY OF THE MOTION

These peer review documents are relevant to show errors by UTMB medical providers, concerns about housing prisoners in extreme temperatures (or a complete lack thereof), and how UTMB failed to accommodate McCollum and other prisoners' heat-sensitive disabilities by failing to recommend safe housing, and resulting in their deaths. Because no privilege protects these documents or testimony under federal law, UTMB must produce these internal investigations and the witnesses may not remain silent.

## III.   FACTS AND PROCEDURAL HISTORY

Plaintiffs are the surviving family of Larry McCollum. McCollum died of heat stroke while imprisoned in the Texas Department of Criminal Justice's Hutchins State Jail due to the extreme temperatures prisoners are routinely subjected to during the hot Texas summers. Plaintiffs have sued UTMB because, among other things, it is the medical provider at the prison, and had no policies to accommodate people with heat-sensitive disabilities, like McCollum, who were at increased risk of death in the extremely hot prison dormitories.

- **UTMB produced no written documents concerning its internal investigations in response to written discovery**

Plaintiffs made the following document request to UTMB pursuant to Federal Rule of Civil Procedure 34:

> **Request for Production No. 7:** Please produce all documents related to any investigation conducted into Larry McCollum's death, including, but not limited to, any autopsy … and/or any investigation or peer review conducted by the University of Texas Medical Branch (or any other entity providing medical care to Larry McCollum).

UTMB refused to produce these obviously relevant documents, claiming the documents were protected by the Texas Health and Safety Code § 161.032 and Occupations Code § 160.007 or § 303.006. *See* Ex. 1, UTMB Response to Plaintiffs' Requests for Production.[2]

- **UTMB produced no documents concerning its internal investigation or review pursuant to subpoena duces tecums**

Plaintiffs subpoenaed "all documents which relate to or form the basis of the mental impressions and opinions held by [UTMB] with respect to the incident made the basis of this lawsuit and its consequences" when they took the Rule 30(b)(6) deposition of UTMB, and the depositions of Dr. Owen Murray, and UTMB's testifying expert. *See* Ex. 2, UTMB Rule 30(b)(6) Deposition Notice and Subpoena; Ex. 2, Owen Murray Deposition Notice and Subpoena; Ex. 3, Dr. Glenda Adams Deposition Notice and Subpoena. Though these documents include investigations into the deaths of the other

---

[2] Though UTMB also objected these documents did not exist, later deposition testimony from UTMB's designated representative and the director of its prison medical care program revealed these documents did exist. *See* Ex. 5, Deposition of Owen Murray, 17:24 ("all deaths within the system are moved to the Morbidity and Mortality Committee … that meets on a monthly basis and reviews the deaths that occurred."); Ex. 4, Deposition of Glenda Adams, 47:20-21 ("There is a Morbidity and Mortality Committee that reviews all deaths.").

3

inmates who died from heat stroke (which this Court has already found relevant, *see* Dkt. 69), no documents were produced.

- **UTMB's 30(b)(6) designee and Executive Director refused to testify about an internal investigation or review**

When asked directly, executive director for correctional healthcare, Owen Murray, and UTMB's Rule 30(b)(6) designee, Glenda Adams, refused to testify about UTMB's investigations and/or evaluation of the high number of deaths from heat stroke in the prisons where they provide healthcare. Rather, UTMB's witnesses were specifically instructed not to answer any questions about the morbidity and mortality reviews conducted into heat-related deaths. Ex. 4, UTMB 30(b)(6) deposition, 49:22-57:2; Ex. 5, Murray deposition, 81:10-25.[3]

## IV.   STANDARD OF REVIEW

In federal courts, federal laws of privilege apply. *See* Fed. R. Evid. 501; *Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000). "Privileges are strongly disfavored in federal practice." *Amer. Civil Lib. Union v. Finch*, 638 F.2d 1336, 1344 (5th Cir. 1981). The burden of establishing a privilege rests with the party asserting it. *Hodges, Grant, & Kaufmann v. U.S.*, 768 F.2d 719, 721 (5th Cir. 1985).

Privileges from disclosing relevant evidence are "distinctly exceptional." *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996). Federal courts are reluctant to create new privileges because doing so "contravene[s] the fundamental principle that the public ... has a right to every man's evidence." *University of Pennsylvania v. EEOC*, 493 U.S. 182, 189 (1990).

---

[3] In addition, Dr. Glenda Adams expert deposition was taken Friday, March 7, 2014.  On the advice of counsel, Dr. Adams refused to answer any questions concerning morbidity and mortality reviews or peer review.  Plaintiffs will supplement with relevant excerpts when the transcript becomes available.

4

When a privilege does exist in federal litigation, it should be construed narrowly. *See, e.g., Memorial Hospital v. Shadur*, 664 F.2d 1058,1061-62 (7th Cir. 1981).

V.   ARGUMENT

A.   NO "PEER REVIEW" PRIVILEGE EXISTS IN FEDERAL LAW

The "peer review" privilege UTMB cites simply does not exist in federal law.

In fact, in the context of prisoner civil rights lawsuits, courts routinely require disclosure of after-the-fact investigations conducted by medical providers. *See, e.g., Allen v. Cuyahoga Co.*, 2014 WL 434558 (N.D. Ohio, Feb. 4, 2014) (prisoner suicide); *Grabow v. County of Macon*, 2013 WL 3354505 (E.D. Mich., July 3, 2013) (prisoner suicide); *Lewis v. County of Henry*, 2006 WL 1843336, *2 (S.D. Ind., June 29, 2006) (prisoner wrongful death); *Leon v. County of San Diego*, 202 F.R.D. 631, 636 (S.D. Cal. 2001) (prisoner wrongful death). The Court in *Lewis* found the medical provider's "position is underwhelming in terms of legal support." *Id.* "To restrict a civil rights plaintiff's access to this type of evidence would seriously inhibit such plaintiff's ability to prosecute these types of important federal claims."*Id.*, at *2.

Federal courts are generally hostile to peer review privileges. The Supreme Court rejected the existence of a federal academic peer review privilege. *University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990). Circuit courts also reject the existence of a medical peer review privilege in federal law. *See Virmani v. Novant Health, Inc.*, 259 F.3d 284 (4th Cir. 2001) (declining to apply state medical peer review privilege in federal anti-discrimination lawsuit); *Memorial Hospital v. Shadur*, 664 F.2d 1058, 1063 (7th Cir. 1981) (declining to apply state medical peer review privilege in federal antitrust action).

5

The policy concerns in federal civil rights actions are fundamentally different from the justifications for peer review privileges in state medical malpractice suits. The purpose of federal civil rights suits is "to ensure an independent federal forum." *ACLU v. Finch*, 638 F.2d at 1343. Indeed, the Fifth Circuit observed "a 'special danger' in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged." *Id*. at 1344. "It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state or local authorities." *Leon*, 202 F.R.D. at 636 (citing *Miller v. Panucci*, 141 F.R.D. 292, 297 (C.D. Cal. 1992)). Thus, it is "particularly inappropriate to allow the use of state evidentiary privileges" in federal civil rights lawsuits. *Grabow*, 2013 WL 3354505, at *5.

**B.     EVEN TEXAS LAW DOES NOT PRIVILEGE PEER REVIEW RECORDS IN FEDERAL CIVIL RIGHTS LAWSUITS**

Though Texas law does create a "peer review" privilege for investigations into medical care, the statutory privilege <u>specifically exempts</u> records sought in federal civil rights lawsuits.

Texas Occupations Code § 160.007, which UTMB relies on, specifically exempts "proceeding[s] or record[s] of a medical peer review committee" when the documents are sought in "a civil rights proceeding brought under 42 U.S.C. § 1983 … to the extent it is considered relevant." In short, the Texas privilege by its own terms does not exist in federal civil rights cases. Thus, even the authority UTMB relies on requires producing the peer review documents in this case.

C.  **THE DOCUMENTS AND TESTIMONY SOUGHT FROM UTMB ARE RELEVANT TO PLAINTIFFS' CLAIMS**

The documents and testimony sought from UTMB are relevant to prove UTMB's policies and procedures disregarded prisoners' heat-sensitive disabilities, that UTMB knew its policies put UTMB's patients in grave danger, and that UTMB knows its patients remain in danger. In fact, at least as far back as 2007, UTMB executives testified they knew prisoners had died from heat stroke, but could not recall making any changes to protect inmates' lives. Ex. 5, Murray deposition, 64:11-66:8; Ex. 4, UTMB deposition, 75:9-12.[4] This is especially relevant now as Judge Brian A. Jackson ruled that temperatures above 88° Fahrenheit are cruel and unusual and endanger the lives and well being of prisoners subjected to them. *Bell v. LeBlanc*, No. 3:13-cv-00368-BAJ, Doc. 87 (M.D. La. Dec. 13, 2013).

Denying Plaintiffs access to these critical documents is prejudicial. They are relevant to show the cause of McCollum's death, UTMB's role in failing to accommodate his disabilities, and UTMB's notice of the obvious danger.

VI.  **ATTORNEYS' FEES**

As counsel conferred with UTMB several times before filing this motion and informed them that their refusal to allow UTMB witnesses to testify about mortality and morbity reviews and peer reviewed evaluations would be addressed with the Court, and UTMB's counsel has consistently invoked privilege and instructed witnesses not to testify, and as UTMB's position lacks legal justification even under Texas law, Plaintiffs

---

[4] In fact, it is likely UTMB executives knew extreme temperatures were killing vulnerable prisoners much longer ago. In the Texas prison reform class action that alleged the prisons' medical care was unconstitutional, Judge William Wayne Justice noted in 1999 that prisoners had died of heat stroke. *Ruiz v. Johnson*, 37 F.Supp.2d 855, 904 (S.D. Tex. 1999).

request the Court also order UTMB to pay the attorneys' fees that were incurred to draft this motion. Fed. R. Civ. Proc. 37(a)(5). *See* Ex. 6, Correspondence with UTMB.[5] Those fees are as follows:

| | | |
|---|---|---|
| Brian McGiverin | 1 hours x $250/hour = | $250.00 |
| Scott Medlock | 5.5 hours x $350/hour = | $1,925.00 |
| Jeff Edwards | 2 hours x $450/hour = | $900.00 |

## VII.   CONCLUSION

Plaintiffs respectfully ask the Court to order UTMB to produce any internal investigations (including peer review committee documents) related to Mr. McCollum's death, and the deaths of any other prisoners killed by hyperthermia, and to compel testimony regarding the same from UTMB's witnesses.

Dated: March 12, 2014.

Respectfully submitted,

The Edwards Law Firm
The Haehnel Building
1101 East 11th Street
Austin, TX 78702
  Tel.   512-623-7727
  Fax.   512-623-7729

By   /s/ Jeff Edwards
JEFF EDWARDS
State Bar No. 24014406
Scott Medlock
State Bar No. 24044783
Lead Counsel

---

[5] Though UTMB replied to Plaintiffs regarding other matters in this letter, and amended its expert designations in response to it, UTMB completely ignored Plaintiffs' attempt to resolve this issue without the Court's intervention.

8

Brian McGiverin
State Bar No. 24067760
James C. Harrington
State Bar No. 09048500

TEXAS CIVIL RIGHTS PROJECT
c/o TRLA 4920 N. I-35
Austin, TX 78751
(512) 474-5073 [phone]
(512) 474-0726 [fax]

Eliot Shavin
State Bar No. 18138200
2600 State Street
Dallas, Texas 75204
214-522-2010 (telephone)
214-720-9594 (fax)
Local Counsel

ATTORNEYS FOR PLAINTIFFS

CERTIFICATE OF SERVICE

By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Northern District of Texas.