# Exhibit 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

STEPHEN McCOLLUM, STEPHANIE
KINGREY, and SANDRA McCOLLUM,
individually and as heirs
at law in the Estate of
LARRY GENE McCOLLUM,
          Plaintiffs,

VS.                                    CIVIL ACTION NO.

                                       3:12-cv-02037

BRAD LIVINGSTON, JEFF PRINGLE,
RICHARD CLARK, KAREN TATE,
SANDREA SANDERS, ROBERT EASON,
THE UNIVERSITY OF TEXAS
MEDICAL BRANCH and the TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,
          Defendants.

ORAL AND VIDEOTAPED DEPOSITION OF
THE DESIGNATED REPRESENTATIVE OF
THE UNIVERSITY OF TEXAS MEDICAL BRANCH
BY AND THROUGH
GLENDA ADAMS, M.D.

NOVEMBER 19, 2013

     ORAL AND VIDEOTAPED DEPOSITION OF THE DESIGNATED REPRESENTATIVE OF THE UNIVERSITY OF TEXAS MEDICAL BRANCH BY AND THROUGH GLENDA ADAMS, M.D., produced as a witness at the instance of the Plaintiffs, and duly sworn, was taken in the above-styled and numbered cause on Tuesday, November 19, 2013, from 11:11 a.m. to 6:03 p.m., before Mary C. Dopico, Certified Shorthand Reporter No. 463 and Notary Public in and for the State of Texas, reported by machine shorthand and audio/video recording at the offices of Rebecca Sealy Hospital, 404 8th Street, Room, 4.204, Galveston, Houston, Texas, pursuant to Notice and the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

1  Mr. George Crippen from TDCJ, Chris Black
2  from TDCJ, Dr. Carol Cogli -- Coglianese from TDCJ,
3  Dr. Kathryn Buskirk from TDCJ. There may be others. I
4  don't recall the names of any more at this moment.
5      Q.  Okay. How often does this committee meet?
6      A.  It meets monthly.
7      Q.  Monthly? Are notes taken?
8      A.  The minutes are very short. It indicates how
9  many deaths were re -- reviewed and how many were sent
10 to one of the university peer review committees.
11         MS. COOGAN: Can we take a bathroom
12 break?
13         MR. EDWARDS: Of course.
14         THE VIDEOGRAPHER: Off the record at
15 12:08.
16         (Off the record from 12:08 - 12:20.)
17         THE VIDEOGRAPHER: This is videotape
18 number 2, 12:20, on the record.
19     Q.  (By Mr. Edwards) We -- When we broke, we
20 were talking about the morbidity committee?
21     A.  Mortality and morbidity.
22     Q.  Sorry. Mortality and Morbidity Committee.
23 What is the purpose of that committee?
24     A.  It reviews all deaths within TDCJ.
25     Q.  What is the purpose of reviewing -- why do you

1  do that?
2      A.   To ensure that the standard of medical care
3  was met.
4      Q.   Did somebody review Mr. McCollum's death?
5           MS. COOGAN:  Objection, privileged; and
6  we will not be answering any questions about the M and M
7  committee.
8               (INSTRUCTION NOT TO ANSWER.)
9           MR. EDWARDS:  Do you consider the M and M
10 committee a peer review committee?  Because I thought
11 what Dr. Adams said was that they decide whether or not
12 they send it to peer review.
13     Q.   (By Mr. Edwards)  Is that --  That was your
14 testimony; correct?
15     A.   Yes.
16     Q.   Okay.
17     A.   They do the initial quality review, and then
18 if -- then it goes to the individual universities to
19 review.
20     Q.   Is it fair to say that if -- once they do
21 their initial review, then they determine whether or not
22 it needs to go on to peer review if they find there is a
23 problem with quality?
24          MS. COOGAN:  And I object.  Really, not
25 to be difficult, but we consider the M and M committee

WRIGHT WATSON & ASSOCIATES
(800) 375-4363   3307 Northland Dr., Ste. 185  Austin, TX 78731-4946   (512) 474-4363
ed4af7ad-12d7-431a-9322-dd8468e9e55c

50

1  to be privileged. And so unless we have a Court order,
2  we're not going to answer -- we're going to assert that
3  privilege under the Texas Health and Safety Code.
4              (INSTRUCTION NOT TO ANSWER.)
5       Q.   (By Mr. Edwards) If I ask you any questions
6  about the Mortality and Morbidity Committee, you're not
7  going to answer them on the advice of your counsel?
8       A.   Individual cases, correct.
9       Q.   Okay. All right. Let's talk about globally.
10             Heat -- Heat -- Hyperthermia, are all
11 those cases evaluated for evidence of whether or not
12 there was good or bad medical care provided?
13      A.   Do you mean deaths from hyperthermia?
14             MS. COOGAN: Is that the --
15             MS. MOLINARE: Yes.
16             MS. COOGAN: Okay.
17      A.   All deaths go through --
18             MS. COOGAN: Okay. I'm going to assert
19 the privilege of the M and M committee with regard to
20 the heat deaths.
21             MR. EDWARDS: Okay.
22             MS. COOGAN: And anything that is not
23 part of the M and M committee, I'm going to ask her to
24 go ahead and answer.
25      Q.   (By Mr. Edwards) Do you evaluate correctional

1  officers as well as health care providers' roles in the
2  deaths when you're doing mortality and morbidity review?
3              MS. COOGAN:  Same privilege.
4              MR. EDWARDS:  You're -- you're saying
5  that a correctional officer has a peer review privilege?
6              MS. COOGAN:  I'm saying that if -- you
7  said -- you said "you," and I assume you meant the M and
8  M committee in your question.  Is that --  Am I assuming
9  that correctly?
10             MR. EDWARDS:  "You" is UTMB.
11             MS. COOGAN:  Okay.  Well, maybe -- maybe
12 you could reask the question.  You said "you," and I
13 found that -- I -- okay.  Objection, vague.
14             MR. EDWARDS:  That's great.
15    Q.   (By Mr. Edwards)  Do you review the roles of
16 correctional officers when you're making determinations
17 regarding this morbidity and mortality assessment?
18             MS. COOGAN:  Objection, privilege
19 asserted.
20    Q.   (By Mr. Edwards)  Or just medical providers?
21             MS. COOGAN:  Same -- same objection.
22 Same privilege asserted.
23             MR. EDWARDS:  Okay.  Is it your position,
24 Ms. Coogan, that correctional officers have a peer
25 review privilege?

1   MS. COOGAN:  I --  It is my position that
2   the M and M committee and its discussions are
3   privileged --
4           MR. EDWARDS:  Okay.
5           MS. COOGAN:  -- period.
6           MR. EDWARDS:  All right.
7           MS. COOGAN:  And if there are discussions
8   about correctional officers within that committee
9   meeting, that those are also privileged.
10          MR. EDWARDS:  Okay.  And that --  You're
11  making that argument even though there is a separate
12  peer review process that UTMB embraces --
13          MS. COOGAN:  I am --
14          MR. EDWARDS:  -- correct?
15          MS. COOGAN:  I am making that privilege,
16  asserting that privilege.  I am.
17          MR. EDWARDS:  And you are instructing
18  Dr. Adams, as the corporate rep of UTMB, not to answer
19  any questions about the correctional officers?
20          MS. COOGAN:  I am asking -- asserting the
21  privilege as to the M and M committee and all the
22  contents of those meetings, papers, documents,
23  discussions.  And so if you're asking a question about a
24  correctional officer in the context of those meetings,
25  I'm asserting the privilege.

```
 1                  I don't know the answers to the
 2   questions.
 3        Q.   (By Mr. Edwards)  Okay.  Did UTMB ever
 4   evaluate whether or not there was -- there was a -- a
 5   medical care issue with regards to Mr. McCollum?
 6        A.   Did UTMB --
 7        Q.   Yeah.
 8        A.   -- ever evaluate?
 9             MS. COOGAN:  Objection, I'm -- I'm going
10   to assert the privilege out of an abundance of caution.
11             MR. EDWARDS:  Is --  Is it your position,
12   then, that an analysis of heat deaths due to housing
13   conditions is privileged and cannot be explored and UTMB
14   will not testify about it?  Is that what you're saying?
15             MS. COOGAN:  I am not asserting the
16   privilege in that way, no.
17             MR. EDWARDS:  Okay.  But you're not --
18   you're not going to talk about any UTMB analysis of the
19   deaths by heatstroke in this deposition --
20             MS. COOGAN:  To the extent --
21             MR. EDWARDS:  -- except for
22   Mr. McCollum's?
23             MS. COOGAN:  To the extent you're asking
24   a question about a committee meeting or the contents of
25   a committee meeting or discussions or papers related to
```

1  a committee meeting, we assert the privilege.
2          If there was something outside of a
3  committee meeting, we don't assert the privilege.
4          Does that help?
5      Q.  (By Mr. Edwards)  Did you base your testimony
6  at all on information you've learned in mortality and
7  morbidity review meetings?
8      A.  No.
9      Q.  Did you participate in mortality and morbidity
10 review meetings with regards to Mr. McCollum?
11     A.  I don't recall.
12     Q.  Would there be a record of that?
13         MS. COOGAN:  Objection, privileged.
14         MR. EDWARDS:  No, that's not privileged.
15     Q.  (By Mr. Edwards)  Would there be a record if
16 there was a discussion of Mr. McCollum?
17         MS. COOGAN:  Objection, to the extent --
18 I assert the privilege.  You're ask --
19         MR. EDWARDS:  You can only assert the
20 privilege if there was, in fact, a discussion.
21         MS. COOGAN:  I assert the privilege for
22 anything surrounding an M and M meeting, including the
23 contents of the meeting, the participants in the
24 meeting, the minutes of the meeting -- papers, letters,
25 discussions, anything related to a meeting, I'm going to

Stephen McCollum, et al v.  
Brad Livingston, et al

Glenda Adams, M.D.  
November 19, 2013

1  assert a privilege to.
2      Q.   (By Mr. Edwards)   Did UTMB analyze whether or
3  not there was -- there was a medical care -- was there a
4  medical care fault with regard to Mr. McCollum?
5              MS. COOGAN:  In an M and M meeting?
6              MR. EDWARDS:  No.  Generally.  Any -- in
7  any meeting.
8              MS. COOGAN:  To the extent it -- there --
9  you know about in an M and M meeting, please don't
10 answer it.  If there's something outside of the meeting,
11 then we don't assert the privilege; and you should
12 answer it.
13     A.   Okay.  I do not know if Mr. McCollum's death
14 specifically was discussed by UTMB outside mortality,
15 morbidity, possibly peer reviews.
16              On the unit, there would have been a unit
17 review of Mr. McCollum's death; and if there were any
18 concerns, that would have been sent up the chain for
19 additional review.
20     Q.   (By Mr. Edwards)   Do you know if they were
21 sent up the chain?
22     A.   It was --
23     Q.   I'm asking you, U -- does UTMB know?
24     A.   Does UTMB know?
25     Q.   Yes.

57

1   A.   As -- As far as I know, I -- I can't answer
2   that question. I don't know.
3   Q.   Okay. All right. What is Dr. Linthicum's
4   role in correctional managed care policy?
5   A.   Dr. Linthicum is the deputy director of health
6   services for TDCJ. Well, not the --
7   Q.   What -- What's her --
8   A.   -- deputy director. She's the director.
9   Q.   What is her role in how correctional managed
10  care policies are made?
11  A.   She has final approval. She also determines
12  who will be the chair of the various joint committees.
13  Q.   What -- What joint committees are we --
14  What -- What are the joint committees, if you know?
15  A.   Mortality review, pharmacy and therapeutics,
16  policy and procedure, infection control. Those are the
17  primary ones. I may have missed...
18  Q.   Okay. Let me just go through in case you
19  didn't.
20  A.   Okay.
21  Q.   Mortality review?
22  A.   Uh-huh.
23  Q.   Pharmacy review?
24  A.   Pharmacy and therapeutics.
25  Q.   Policies and procedures?

1   A.   The correction -- the joint Policy and
2  Procedure Committee.
3   Q.   And that would be UTMB, TDCJ and Correctional
4  Managed Care?
5   A.   Texas Tech.
6   Q.   And Texas Tech.  The health care providers and
7  the security apparatus responsible for the system?
8   A.   Security is not involved in the health
9  policies.
10   Q.   I'm sorry.  The medical aspect of the Texas
11  Department of Criminal Justice; right?
12   A.   Correct.
13   Q.   Okay.  And that's a good point.
14        Is Director Livingston involved in -- at
15  all in these policy?  Do you know?
16   A.   I wouldn't have that information.
17   Q.   You -- You have no idea?
18   A.   No.
19   Q.   All right. Tell me -- tell me what 15.2 is,
20  tell me what these different policies are, and then tell
21  me what changes were made and why they were made,
22  please.
23   A.   Okay.  Correctional managed health care policy
24  15.2, actually, this is the Hutchins Unit facility
25  policy --

WRIGHT WATSON & ASSOCIATES
(800) 375-4363   3307 Northland Dr., Ste. 185  Austin, TX 78731-4946   (512) 474-4363
ed4af7ad-12d7-431a-9322-dd8468e9e55c

64

1   Q.   Okay.
2   A.   -- which is essentially identical to the
3 organizational policy.
4   Q.   Okay.  And what was the effect -- effective
5 date of that, ma'am?
6   A.   Of the -- 10-99.
7   Q.   Okay.
8   A.   And it was reviewed in 11-09.
9   Q.   Okay.  And to the best of your knowledge, was
10 that in effect at the time of Mr. McCollum's housing in
11 the Hutchins Unit?
12  A.   Yes.
13  Q.   Okay.  And how has that been changed since his
14 death?
15  A.   There's a section 9 that's been added called
16 "Reporting" that states that "Facility medical staff
17 shall complete the heat-related reporting form,
18 Attachment C, for each case of heat cramps, heat
19 exhaustion, heatstroke or neuroleptic malignant
20 syndrome.  The complete form is e-mailed to health
21 services liaison" -- that's TDCJ Health Services
22 liaison -- "via EMR e-mail or faxed to the office of
23 health services liaison at 936-437-3599."
24  Q.   Okay.  And when did that go into effect?
25  A.   10-15-2012.

| | |
|---|---|
| 1 | Q.   That went into effect after these lawsuits |
| 2 | were filed; right?  If you know. |
| 3 | A.   I don't know -- |
| 4 | Q.   Okay. |
| 5 | A.   -- when the lawsuits were filed. |
| 6 | Q.   Okay.  What's the point of that change?  Like |
| 7 | why did you guys decide that was important? |
| 8 | A.   At the Policy and Procedure Committee, I'm not |
| 9 | sure who presented this recommended change, but I feel |
| 10 | certain it was someone from TDCJ, since they are the one |
| 11 | who are collecting the reports.  TDCJ Health Services. |
| 12 | I'm sorry.  Okay.  And I assume the new -- |
| 13 | Q.   Dr. Adams, I'm not so concerned with -- |
| 14 | MS. COOGAN:  Excuse me.  Please let |
| 15 | the -- please -- please let the witness finish her |
| 16 | answer.  What's good for the goose is good for the |
| 17 | gander, please.  Please let the witness finish her |
| 18 | answer.  Please. |
| 19 | Q.   (By Mr. Edwards)  I'm trying to help you, but |
| 20 | that's okay.  Sure. |
| 21 | A.   Anyhow, TDCJ Health Services felt that we |
| 22 | should be tracking all heat illnesses and not just heat |
| 23 | deaths. |
| 24 | Q.   Do you know why you weren't tracking heat |
| 25 | illnesses prior to October 15th, 2012? |

WRIGHT WATSON & ASSOCIATES
(800) 375-4363   3307 Northland Dr., Ste. 185  Austin, TX 78731-4946   (512) 474-4363
ed4af7ad-12d7-431a-9322-dd8468e9e55c

66

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
 2                       DALLAS DIVISION

 3   ............................................................
                                     :
 4   STEPHEN McCOLLUM, STEPHANIE      :
     KINGREY, and SANDRA McCOLLUM,    :
 5   individually and as heirs        :
     at law in the Estate of          :
 6   LARRY GENE McCOLLUM,             :
              Plaintiffs,             :
 7                                    :  CIVIL ACTION NO.
     VS.                              :
 8                                    :    3:12-cv-02037
     BRAD LIVINGSTON, JEFF PRINGLE,   :
 9   RICHARD CLARK, KAREN TATE,       :
     SANDREA SANDERS, ROBERT EASON,   :
10   THE UNIVERSITY OF TEXAS          :
     MEDICAL BRANCH and the TEXAS     :
11   DEPARTMENT OF CRIMINAL JUSTICE,  :
              Defendants.             :
12                                    :
     ............................................................
13
                       REPORTER'S CERTIFICATION
14                            TO THE
              ORAL AND VIDEOTAPED DEPOSITION OF
15              THE DESIGNATED REPRESENTATIVE OF
            THE UNIVERSITY OF TEXAS MEDICAL BRANCH
16                        BY AND THROUGH
                       GLENDA ADAMS, M.D.
17                     NOVEMBER 19, 2013

18   ............................................................

19       I, Mary C. Dopico, Certified Shorthand. Reporter
     in and for the State of Texas, do hereby certify that
20   the facts stated by me in the caption hereto are true;
     that the foregoing deposition of THE DESIGNATED
21   REPRESENTATIVE OF THE UNIVERSITY OF TEXAS MEDICAL BRANCH
     BY AND THROUGH GLENDA ADAMS, M.D., the witness
22   hereinbefore named, was taken by me in machine
     shorthand, the said witness having been by me first duly
23   cautioned and sworn to tell the truth, the whole truth,
     and nothing but the truth, and later transcribed from my
24   machine shorthand notes to typewritten form by me.

25       I further certify that the above and foregoing
```

1  deposition, as set forth in typewriting, is a full, true
   and correct transcript of the proceedings had at the
2  time of taking said deposition.

3          I further certify that pursuant to FRCP Rule
   30(f)(1) that the signature of the deponent was
4  requested by the deponent or a party before the
   completion of the deposition and returned within 30 days
5  from date of receipt of the transcript.  If returned,
   the attached Changes and Signature Pages contain any
6  changes and the reasons therefor;

7          I further certify that I am neither attorney or
   counsel for, nor related to or employed by any of the
8  parties to the action in which this deposition is taken,
   and further that I am not a relative or employee of any
9  attorney or counsel employed by the parties hereto, or
   financially interested in the action.
10
           I further certify that charges for the preparation
11 of the foregoing completed deposition were $ _____
   for the original thereof, charged to Attorney(s) for
12 Plaintiffs.

13         GIVEN UNDER MY HAND AND SEAL OF OFFICE this the 3rd
   day of December, 2013.
14

15

16                          _____
                            Mary C. Dopico, CSR, RPR, CRR
17                          CSR No. 463, Exp. 12-31-2014
                            Notary Public, State of Texas
18                          Commission Expires 1-31-2017
   Independent Contractor To:
19 Wright, Watson & Associates
   Firm Registration No. 225
20 Expires 12-31-2013
   3307 Northland Drive, Suite 185
21 Austin, Texas  78731
   512/474-4363  Fax 512/474-8802
22

23

24

25