# Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

STEPHEN McCOLLUM, STEPHANIE
KINGREY, and SANDRA McCOLLUM,
individually and as heirs
at law in the Estate of
LARRY GENE McCOLLUM,
            Plaintiffs,

VS.                                    CIVIL ACTION NO.

                                       3:12-cv-02037

BRAD LIVINGSTON, JEFF PRINGLE,
RICHARD CLARK, KAREN TATE,
SANDREA SANDERS, ROBERT EASON,
THE UNIVERSITY OF TEXAS
MEDICAL BRANCH and the TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,
            Defendants.

ORAL AND VIDEOTAPED DEPOSITION OF OWEN MURRAY, M.D.

NOVEMBER 20, 2013

    ORAL AND VIDEOTAPED DEPOSITION OF OWEN MURRAY, M.D., produced as a witness at the instance of the Plaintiffs, and duly sworn, was taken in the above-styled and numbered cause on Wednesday, November 20, 2013, from 9:07 a.m. to 12:58 p.m., before Mary C. Dopico, Certified Shorthand Reporter No. 463 and Notary Public in and for the State of Texas, reported by machine shorthand and audio/video recording at the offices of Rebecca Sealy Hospital, 404 8th Street, Room, 4.204, Galveston, Texas, pursuant to Notice and the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

1  able to place it.
2      Q.  Well, there were --  Were allegations made by
3  an inmate named Blackman relating to extreme heat in the
4  Texas prison system which went to trial, and the Fifth
5  Circuit issued a ruling; are you familiar with that?
6      A.  No.
7      Q.  Were you familiar with --  Are you made aware
8  of deaths that occur in the Texas prison system?
9      A.  When you say "made aware," I --  When one
10 occurs, do they let me know?
11     Q.  Let's start with that.
12     A.  No.
13     Q.  Okay.  What is the --  What is the process
14 that you have in place to assess whether or not
15 there's -- there are too many deaths in the Texas prison
16 system?
17             MS. MOLINARE:  Objection, vague.
18     Q.  (By Mr. Edwards)  Let me withdraw that.  Is
19 there a process in place so that you're made aware of
20 potential medical problems leading to deaths in the
21 Texas prison system?
22     A.  We do have a process, and that process starts
23 at the facility where an initial review of the case is
24 done; and then all of -- all deaths within the system
25 are moved to the Morbidity and Mortality Committee,

1  related to these cases, I don't think any of us thought
2  that that was indeed the case.
3              We did review the training, nonetheless.
4  I know that was part of what we discussed; and to the
5  extent that there were any changes made in that program,
6  I'm not aware of that.
7              MR. EDWARDS:  Let me object as
8  non-responsive.
9       Q.   (By Mr. Edwards)  But you threw a lot out
10 there and I'd like to follow-up on it.
11             Were there deaths in 2007 from
12 hyperthermia, sir?
13      A.   I believe you told me there were two.
14      Q.   But you didn't know about them.
15      A.   No.
16      Q.   Okay.  Should --  Do you know if there
17 should --
18      A.   Well --
19      Q.   Is hyperthermia a preventible illness?
20      A.   Well, can --  Let me go back.  I don't know
21 about them now.  Back in 2007 and 2008, I may have known
22 about them and probably did know about them.
23      Q.   Okay.  Just to be clear, you may not recall
24 them now, but you are confident that you did know about
25 them back in 2007?

1    A.    I believe I did know about those --

2    Q.    Okay.

3    A.    -- in 2007.

4    Q.    Okay.  Did you do anything to evaluate the
5  training upon learning that two people had died from
6  hyperthermia in a custodial setting in 2007?

7          MR. STONE:  Objection, asked and answered
8  about four times at this point now.

9    Q.    (By Mr. Edwards)  Okay.

10   A.    The question?  I'm sorry.

11         MR. EDWARDS:  Would you repeat the
12 question.

13         (The record was read back by the reporter
14 as follows:

15         QUESTION: "Did you do anything to
16 evaluate the training upon learning that two people had
17 died from hyperthermia in a custodial setting in 2011?
18 (sic)")

19   Q.    (By Mr. Edwards)  Let me repeat --  Let me
20 withdraw that.

21         Did you do anything upon learning that
22 two people had died in a custodial setting in 2007 of
23 hyperthermia with regards to the training?

24   A.    I don't remember.

25   Q.    Did you do anything with regards to the UTMB

Stephen McCollum, et al v.　　　　　　　　Owen Murray, M.D.
Brad Livingston, et al　　　　　　　　　　November 20, 2013

1   policies upon learning that two people had died of
2   hyperthermia in a custodial setting in 2007?
3　　　A.   I don't remember if we made any policy changes
4   based on those deaths in 2007.
5　　　Q.   As you sit here today, can you recall any
6   policy changes specifically being made to address
7   hyperthermia during the summer of 2007?
8　　　A.   I can't recall.
9　　　Q.   Is two deaths from hyperthermia too many?
10　　A.   Correct.
11　　Q.   And is that because hyperthermia is actually a
12  preventible illness?  Correct?
13　　　　　　MS. MOLINARE:   Objection, vague;
14  objection, speculation.
15　　A.   It is -- It is something that can potentially
16  be managed.
17　　Q.   (By Mr. Edwards)  Sure. We're not talking
18  about exertional hyperthermia here. We're talking about
19  just regular hyperthermia. Okay? Hyperthermia is a
20  disease that should not happen in a controlled setting;
21  correct?
22　　　　　　MS. MOLINARE:   Objection --
23　　　　　　MR. STONE:   Objection.
24　　　　　　MS. MOLINARE:   -- vague; objection
25  foundation; objection, speculation.

| | | |
|---|---|---|
| 1 | A. | No. |
| 2 | Q. | Do you know why he died? |
| 3 | A. | No. |
| 4 | Q. | Do you know who Robert Allen Webb is? |
| 5 | A. | No. |
| 6 | Q. | Do you know how he died? |
| 7 | A. | No. |
| 8 | Q. | Do you know who Charles Cook is? |
| 9 | A. | No. |
| 10 | Q. | Do you know why he died? |
| 11 | A. | No. |
| 12 | Q. | Do you know who Michael Martone is? |
| 13 | A. | No. |
| 14 | Q. | Do you know why he died? |
| 15 | A. | No. |
| 16 | Q. | Do you know Alexander Toganidze is? |
| 17 | A. | No. |
| 18 | Q. | Do you know why he died? |
| 19 | A. | I do not. |
| 20 | Q. | Do you know who Kelly Marcus is? |
| 21 | A. | No. |
| 22 | Q. | Do you know why he died? |
| 23 | A. | No. |
| 24 | Q. | Do you know who Kenneth Wayne James is? |
| 25 | A. | No. |

1    Q.   Don't you think it's important for a
2  policymaker to review facts to draw conclusions?
3              MS. MOLINARE:  Objection, vague.
4              MR. STONE:  Speculation.
5    A.   The --  Those were reviewed.  They were
6  reviewed through our mortality committee, through TDCJ,
7  through UTMB.  I personally did not do that.
8              MR. EDWARDS:  Let me --  Let me object as
9  non-responsive.
10   Q.   (By Mr. Edwards)  Don't you think it's
11 important to review the facts and circumstances of these
12 cases in order to draw conclusions as to whether or not
13 your policies are sufficient or inadequate?
14   A.   I do and that did occur.
15   Q.   You just didn't do it.
16   A.   I --  I personally did not do that review.
17   Q.   Who did?
18   A.   All --  The mortality committee, that
19 mortality review group.
20   Q.   They reviewed every single case?
21   A.   Correct.
22   Q.   And your understanding of -- of their
23 conclusion is that everything's fine?
24              MS. MOLINARE:  Don't answer any questions
25 as to what the Mortality and Morbidity Committee did.

```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF TEXAS
                           DALLAS DIVISION

..........................................................
                                    :
STEPHEN McCOLLUM, STEPHANIE          :
KINGREY, and SANDRA McCOLLUM,        :
individually and as heirs            :
at law in the Estate of              :
LARRY GENE McCOLLUM,                 :
           Plaintiffs,               :
                                     :   CIVIL ACTION NO.
VS.                                  :
                                     :     3:12-cv-02037
BRAD LIVINGSTON, JEFF PRINGLE,       :
RICHARD CLARK, KAREN TATE,           :
SANDREA SANDERS, ROBERT EASON,       :
THE UNIVERSITY OF TEXAS              :
MEDICAL BRANCH and the TEXAS         :
DEPARTMENT OF CRIMINAL JUSTICE,      :
           Defendants.               :
                                     :
..........................................................

                     REPORTER'S CERTIFICATION
                             TO THE
         ORAL AND VIDEOTAPED DEPOSITION OF OWEN MURRAY, M.D.
                        NOVEMBER 20, 2013

..........................................................
```

       I, Mary C. Dopico, Certified Shorthand. Reporter in and for the State of Texas, do hereby certify that the facts stated by me in the caption hereto are true; that the foregoing deposition of OWEN MURRAY, M.D., the witness hereinbefore named, was taken by me in machine shorthand, the said witness having been by me first duly cautioned and sworn to tell the truth, the whole truth, and nothing but the truth, and later transcribed from my machine shorthand notes to typewritten form by me.

       I further certify that the above and foregoing deposition, as set forth in typewriting, is a full, true and correct transcript of the proceedings had at the time of taking said deposition.

       I further certify that pursuant to FRCP Rule 30(f)(1) that the signature of the deponent was requested by the deponent or a party before the

1  completion of the deposition and returned within 30 days
   from date of receipt of the transcript.  If returned,
2  the attached Changes and Signature Pages contain any
   changes and the reasons therefor.
3
           I further certify that I am neither attorney or
4  counsel for, nor related to or employed by any of the
   parties to the action in which this deposition is taken,
5  and further that I am not a relative or employee of any
   attorney or counsel employed by the parties hereto, or
6  financially interested in the action.

7          I further certify that charges for the preparation
   of the foregoing completed deposition were $ _____
8  for the original thereof, charged to Attorney(s) for
   Plaintiffs.
9
           GIVEN UNDER MY HAND AND SEAL OF OFFICE this the 3rd
10 day of December, 2013.

11

12
                              _____
13                            Mary C. Dopico, CSR, RPR, CRR
                              CSR No. 463, Exp. 12-31-2014
14                            Notary Public, State of Texas
                              Commission Expires 1-31-2017
15 Independent Contractor To:
   Wright, Watson & Associates
16 Firm Registration No. 225
   Expires 12-31-2013
17 3307 Northland Drive, Suite 185
   Austin, Texas   78731
18 512/474-4363   Fax 512/474-8802

19

20

21

22

23

24

25