UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, and SANDRA McCOLLUM, individually, and STEPHANIE KINGREY, individually and as independent administrator of the Estate of LARRY GENE McCOLLUM, <br>           PLAINTIFFS <br><br> v. <br><br> BRAD LIVINGSTON, JEFF PRINGLE, RICHARD CLARK, KAREN TATE, SANDREA SANDERS, ROBERT EASON, the UNIVERSITY OF TEXAS MEDICAL BRANCH and the TEXAS DEPARTMENT OF CRIMINAL JUSTICE. <br>           DEFENDANTS | § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. <br> 3:12-cv-02037 <br> JURY DEMAND |

**PLAINTIFFS' REPLY TO MOTION TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION AND DEPOSITION TESTIMONY FROM DEFENDANT UNIVERSITY OF TEXAS MEDICAL BRANCH**

**I.    SUMMARY OF THE REPLY**

Plaintiffs requested documents routinely reviewed by the University of Texas Medical Branch (the Texas Department of Criminal Justice's medical provider), and deposition testimony regarding the documents. Rather than simply produce the documents, UTMB is playing a shell game to obstruct discovery, though it has access to the records and could easily obtain and produce them.[1] For this reason, the Court should

---

[1] Plaintiffs made identical requests to TDCJ and UTMB for these medical peer review documents. TDCJ responded it "objects to the extent this request seeks documents not in the Texas Department of Criminal Justice's care custody and control *such as a peer review from UTMB or any other entity providing medical care*." Ex. 7, TDCJ's Responses to Plaintiff's Requests for Production, p. 12 (emphasis added). (This Court later ordered TDCJ to produce investigations into heat-related deaths to the Plaintiffs no later than August 14, 2013. Doc. 69.) No one disputes the documents exist, but these two State agencies are pointing the finger at each

grant Plaintiffs' motion to compel production of any peer review, morbidity and mortality review, nursing review, or any other investigations into Larry McCollum's death, and compel UTMB's witnesses to testify about these investigations.[2]

**ARGUMENT**

### I.  UTMB Cites No Authority a Federal Peer Review Privilege Exists

UTMB cites no authority to support its position that a federal peer review privilege exists because there is no such authority.

As explained in Plaintiffs' motion – and as UTMB fails to even address – federal courts routinely reject the existence of a medical peer review privilege in federal civil rights cases. In fact, this Court recently rejected the existence of a federal peer review privilege in a civil rights lawsuit brought against a prison medical care provider. "The weight of the authority within the Fifth Circuit and among the other Circuits holds that there is no federal privilege applying to medical peer review documents in § 1983 or ADA cases." Ex. 8, *Wright v. Texas Dep't of Criminal Justice*, No. 7:13-CV-0116-O, Doc. 43 (N.D. Tex. March 21, 2014) (Roach, Mag. J.). UTMB does not need to "waive" a privilege because in federal court no privilege exists.

---

other as to who actually has possession or control of the documents. It is obvious the Defendants are playing a shell game.

After UTMB filed its response, Plaintiff conferred with counsel for TDCJ. TDCJ's counsel has represented he advised his clients to produce the documents in TDCJ's possession or control to Plaintiffs by April 8, 2014. Given the Defendants' opaqueness and intransigence, however, Plaintiffs request the Court order production of the documents.

[2] It is simply not true that Plaintiffs' counsel did not confer with Defendants prior to filing this motion. Plaintiffs' counsel sent a letter on February 13, 2014 to UTMB's counsel asking counsel to withdraw UTMB's objections and produce the documents. *See* Ex. 6. UTMB never responded to the letter, necessitating the motion. Moreover, given TDCJ's prior representations that UTMB had custody of the documents, a motion would likely have been necessary regardless.

Plaintiffs sued several TDCJ officers and executives under 42 U.S.C. § 1983. Regardless of what theory UTMB was sued under, these documents are relevant to Plaintiffs' claims against these individual defendants. For example, the documents would likely discuss the hour-long delay in providing medical care after Mr. McCollum began convulsing, that UTMB and TDCJ officials knew the extreme temperatures made conditions inside the prison dangerous, and what, if anything, UTMB and TDCJ did to prevent future heat-stroke deaths. While sovereign immunity prevents Plaintiffs from bringing a § 1983 claim against UTMB or TDCJ itself, these records may help establish the liability of the officers and executives who have been sued. Thus, these documents are highly relevant, and must be disclosed even under Texas law.

Likewise, the documents are relevant to Plaintiffs' Americans with Disabilities Act and Rehabilitation Act claims against UTMB and TDCJ. Federal courts routinely allow discovery of medical peer review documents in suits alleging federal claims brought in federal court. *See, e.g.*, *Virmani v. Novant Health, Inc.*, 259 F.3d 284 (4th Cir. 2001) (Title VII claim); *Memorial Hospital v. Shadur*, 664 F.2d 1058, 1063 (7th Cir. 1981) (antitrust claim). Though the Texas statutory privilege does not carve out ADA claims like it does § 1983 claims, federal courts in the Fifth Circuit have held state peer review privileges do not shield medical providers from document production in ADA lawsuits. *See*, *e.g.*, *Wright*, No. 7:13-CV-0116-O, Doc. 43; *Robertson v. Neuromedical Center*, 169 F.R.D. 80 (M.D. La. 1996). Thus, the scope of the Texas privilege's exceptions is completely irrelevant because this case is not brought in Texas courts or under Texas law.

## II. UTMB Has Access to the Documents

The testimony of Murray and Dr. Glenda Adams, as well as Murray's affidavit, show UTMB has access to the responsive documents. Murray's affidavit admits "UTMB-CMC maintains records related to the August 26, 2011 request for an administrative review of the nursing care rendered to Larry McCollum" and "UTMB-CMC maintains records related to the December 8, 2011 request for physicians' joint peer review regarding Larry McCollum." Defendant's Ex. 2, p. 4, 5.[3] Under any interpretation of the Federal Rules of Civil Procedure, UTMB at least has possession of these peer review and nursing review documents, even if it does not "possess" the morbidity and mortality review documents.

But Federal Rule 26(a)(1) also requires production of documents "in the responding party's possession, custody, *or control*." (emphasis added). "Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand." *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984). "A party must disclose information and produce documents and things over which it has the right of control, and such right exists when a party has a right to obtain the information or document on demand, or where it would ordinarily have access to it in the ordinary course of business." *Chudasama v. Mazda Motor Corp.*, 1995 WL 641984, *20 (M.D. Ga. June 26, 1995) *reversed on other grounds* 123 F.3d 1353 (11th Cir. 1997). Rule 34 requires production of documents even when the party "has the practical ability to obtain the documents from a non-party to the action." *Southern Filter Media, LLC v. Halter*, 2014 WL 1091938, *2 (M.D. La. Mar. 18, 2014).

---

[3] Likewise, UTMB's witnesses used the "privilege" as a shield multiple times during their depositions without drawing this distinction, or stating they were asserting the privilege on CMHCC's behalf.

**4**

Murray's affidavit further concedes the Correctional Managed Health Care Committee includes "one member who is a physician and employed full-time by the University of Texas Medical Branch." Doc. 89.2, p. 2. UTMB and TDCJ "cooperate in monitoring qualify of care" and report their findings to CMHCC. *Id*., p. 3. Likewise, the morbidity and mortality committee "is composed of staff and health care providers from TDCJ [and] UTMB." *Id*. The affidavit even admits UTMB "may maintain Joint Peer Review Committee records." *Id*.

Likewise, the statute creating the CMHCC requires "The clinical and professional resources of the health care providers [including UTMB] shall be used to the greatest extent feasible for clinical oversight of quality of care issues." TEX. GOV'T CODE § 501.150(b). Furthermore, the statute requires UTMB to "communicate the results of their monitoring activities" to the CMHCC and Texas Board of Criminal Justice. TEX. GOV'T CODE § 501.150(c). Given UTMB's role in monitoring the health care provided to the patients under its care, and the statutory requirement that it use its "professional resources" "to the greatest extent feasible" in monitoring care, it is difficult to fathom that it does not "have access to [the records] in the ordinary course of business."

CMHCC is, in short, a legal fiction. It is composed of TDCJ, UTMB, and the other prison medical providers. If this committee's components do not have access to the responsive documents, it is unclear who would.

### III. UTMB's Witnesses Must Be Compelled to Testify

Even if UTMB truly does not have access to the documents and cannot obtain them for production (though Murray's affidavit admits it does), Dr. Owen Murray and Dr. Glenda Adams must be compelled to testify about the investigations into Mr.

McCollum's death. Both Murray and Adams were instructed not to answer any questions about these investigations during their depositions. They testified that all prisoners' deaths are reviewed, but were instructed not to answer any other questions about the reviews. *See* Ex. 4, Deposition of UTMB (Glenda Adams), p. 4-7; Ex. 5, Deposition of Owen Murray, p. 8. Likewise, Adams testified there "possibly" was a peer review done following Mr. McCollum's death, but was instructed not to answer any questions about it. *Id*. p. 11, 8-9. Whether or not UTMB has custody of the documents, its witnesses can certainly testify about the contents.

Thus, at a minimum, Plaintiffs should be awarded the fees and costs associated with re-deposing these witnesses. The witnesses were deposed in Galveston, requiring significant travel time and expense. Because UTMB's witnesses were improperly instructed not to answer questions about investigations into McCollum's death, the Court should award Plaintiffs fees for eight hours of travel time (for the four-hour drive each way to Galveston), one night of hotel accommodations in Galveston, and the actual attorney-time necessary to take the depositions, in addition to the fees incurred preparing this motion (as outlined previously).

**CONCLUSION**

Therefore, Plaintiffs respectfully request the Court grant the motion to compel, and order UTMB to produce any responsive documents, including the morbidity and mortality reviews, and command Murray and Adams to testify about them, as soon as possible.

Dated: April 7, 2014.

Respectfully submitted,

The Edwards Law Firm
The Haehnel Building
1101 East 11th Street
Austin, TX 78702
    Tel.    512-623-7727
    Fax.   512-623-7729

By    /s/ Jeff Edwards
JEFF EDWARDS
State Bar No. 24014406
Scott Medlock
State Bar No. 24044783
Lead Counsel

Brian McGiverin
State Bar No. 24067760
James C. Harrington
State Bar No. 09048500

TEXAS CIVIL RIGHTS PROJECT
c/o TRLA 4920 N. I-35
Austin, TX 78751
(512) 474-5073 [phone]
(512) 474-0726 [fax]

Eliot Shavin
State Bar No. 18138200
2600 State Street
Dallas, Texas 75204
214-522-2010 (telephone)
214-720-9594 (fax)
Local Counsel

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

    By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Northern District of Texas.