# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **KEVIN WEBB, individually and** | § | |
| **as representative of the Estate of** | § | |
| | § | |
| **ROBERT ALLEN WEBB, et al.** | § | |
| **Plaintiff** | § | **Civil Action No.   6:13cv711** |
| | § | **Jury** |
| **vs.** | § | |
| | § | |
| **BRAD LIVINGSTON, et al.** | § | |
| **Defendants** | § | |

## ORDER ON REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

The above-entitled and numbered civil action was heretofore referred to United States Magistrate Judge John D. Love.   The Report and Recommendation ("R&R") of the Magistrate Judge, which contains proposed findings of fact and recommendations for the disposition of Defendants Livingston, Stephens and Thaler's Opposed Motion to Stay and Objections to Plaintiffs' Discovery (docket entry #38) and Motion and Amended Motion to Dismiss on the Basis of Qualified Immunity (docket entries #43 & 44); and Defendant Dr. Murray's Amended Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) (docket entry #35), has been presented for consideration.

**I.     BACKGROUND**

Succinctly, the R&R recommends that the motions to dismiss on the grounds of qualified immunity be denied at this point in time, in favor of developing the record through limited discovery and review of qualified immunity defenses at the summary judgment stage.   It further recommends that the opposed motion to stay be denied in part and granted in part to the extent that

1

discovery is limited to the subject of Defendants' defenses of qualified immunity.   Since the time the R&R issued, the parties have filed numerous objections, motions, responses, replies to responses, notices and responses to notices.   The filings constitute hundreds of pages of briefing, exhibits of propounded evidentiary value, and notices of decisions by other courts with varying results (and sometimes dubious value).   In part, these pleadings are in response directly to the R&R itself and in part, they are in response to Plaintiff's scope of discovery.   The subjects are intimately interconnected; accordingly, the Court will take them up in consideration of the R&R.[1]

Defendants contend that they are entitled to qualified immunity[2] and on that basis seek to forestall and stay any discovery until this Court rules on their respective motions to dismiss pursuant to Rule 12(b)(6), citing a number of authorities that no discovery should be allowed until this threshold question is ruled upon.   They have asserted this position at every turn, propounding it as an absolute, mandatory result to a claim of qualified immunity.   Intent on blocking any further discovery with regard to, at least, Defendants Livingston, Thaler and Stephens, they go so far as to state:

> All three of these defendants intend to file a Notice of Interlocutory Appeal should
> the District Court adopt [the Magistrate Judge's] Report and Recommendation
> which will have the effect of an automatic stay of discovery and all proceedings

---

[1] Defendants Livingston, Thaler and Stephens have attached 271 pages of evidentiary exhibits to (at least) their Opposed Motion to Quash Deposition Notice/Subpoena *Duces Tecum* (docket entry #50), which they explicitly use in further argument on the subject of qualified immunity. However, when considering a motion to dismiss on the grounds of Fed. R. Civ. P. 12(b)(6), the district court cannot look beyond the pleadings.   *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994).   Accordingly, considering these filings as an integral part of the qualified immunity issue would already take this issue outside the motion to dismiss stage.

[2] Qualified immunity shields government officials performing discretionary functions from liability for civil damages so long as their conduct does not violate clearly established rights which a reasonable person would have known.   *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *Wilson v. Layne*, 526 U.S. 603, 614, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999).

regarding these defendants.

Supplement to Pending Opposed Motion to Quash the Deposition of Brad Livingston and Stay Discovery (the "Supplement") at 3 (citation omitted).   "[A]n order denying qualified immunity, to the extent it turns on an 'issue of law,' is immediately appealable." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc) (citing *Behrens v. Pelletier,* 516 U.S. 299, 311, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)).   However, where factual development is required, the decision whether to grant qualified immunity rests on a question of fact, not necessarily law.   Such a fact-based question is subject to limited discovery on the issue of the qualified immunity claim.   *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995) (en banc).[3]

In this case, Plaintiff contends that the four Defendants who are the subject of the two motions to dismiss on the grounds of qualified immunity have at all pertinent times involved in this lawsuit had personal knowledge of life-threatening conditions due to extreme high heat in the Hodge Unit where Robert Allen Webb was imprisoned at the time of his death.[4]   This knowledge

---

[3] "The district court may ban discovery at this threshold pleading stage and may limit any necessary discovery to the defense of qualified immunity. The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts. Even if such limited discovery is allowed, at its end, the court can again determine whether the case can proceed and consider any motions for summary judgment under Rule 56."

[4] Plaintiff further contends that these Defendants have had similar knowledge as to individual units throughout the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ-CID").   Additionally, that they had personal knowledge that such conditions could cause serious injury or death, particularly to inmates suffering from certain medical conditions and/or taking certain classes of medication, such as psychotropic drugs, as it is alleged Mr. Webb was taking.   Indeed, both Plaintiff and Defendants frequently refer in their respective pleadings to other inmates (and other lawsuits in federal districts throughout Texas) who have allegedly died due to high heat conditions in their prison units.   Also, all of the parties refer to discovery taken and orders issued in cases in other federal districts as if the cases have been consolidated for that

3

is allegedly based on earlier deaths of other prisoners in TDCJ.   Plaintiff also contends that these Defendants knew that Mr. Webb and other prisoners took medications making them more susceptible to heat stress.   Additionally, Plaintiff contends that there is no workable policy to alleviate the dangers of high heat and that even the existing policy was unused at the Hodge Unit (TDCJ "relies on measures proved inadequate when men died in 2007, like increasing water intake and providing additional fans, neither of which occurred at the Hodge Unit.   And neither of which cool the apparent temperature."   Amended Complaint at 23, ¶ 77.).   Further, Plaintiff contends that the high heat conditions in the Hodge Unit constituted cruel and unusual punishment in violation of the Eighth Amendment and that these four Defendants (among others) acted in deliberate indifference to Mr. Webb's serious health and safety needs under these conditions.

The four Defendants represented in the two motions to dismiss contend that they are entitled to qualified immunity from this lawsuit and any liability thereunder, including an entitlement to be free from any discovery while the qualified immunity issue is decided.   They also contend that the allegations of the Amended Complaint do not state a claim for deliberate indifference and that to the extent a general claim is stated, the allegations against them individually only constitute a claim of *respondeat superior* or vicarious liability, which generally

---

purpose.   To date, they have not.   Further, the Court notes from the minutes of the Status Conference the Magistrate Judge conducted in this matter on November 6, 2013, that he discussed consolidation of at least those cases pending before the Tyler Division and directed the parties to discuss the pros and cons of consolidation and to file a report back in this case by December 6, 2013.   *See* docket entry #49 (Minutes) at entries between 2:22 and 2:32 p.m.   It does not appear that the parties complied.   In any event, this lawsuit involves the circumstances surrounding decedent Mr. Webb at the Hodge Unit, not a wider group of victims of heat stress or related conditions or a broader scope of prison units.   Accordingly, although the Court cannot help but touch on allegations of common conditions permeating the Amended Complaint and the pleadings related to the R&R, it will constrain itself to the allegations of the Webb case.

4

does not lie under a § 1983 action.[5]   Defendants Livingston, Thaler and Stephens also argue that

as security managers, they are entitled to rely on the recommendations of medical personnel under

the University of Texas Medical Branch ("UTMB"); however, they provide no details of what

such recommendations included in Mr. Webb's case, if any were made.   Without repeating the

details of the argument Defendants have already made several times at great length, this is the

kernel of Defendants' main argument to dismiss, as well as their objections to the R&R and related

motions against discovery.

The specific allegations regarding Mr. Webb in the Amended Complaint state that he

suffered from severe mental illness, including bipolar disorder, and had functional cognitive

disabilities.   Upon arriving at TDCJ, UTMB doctors diagnosed him with "adjustment disorder

with mixed anxiety and depression," prescribing Thorazine,[6] Celexa[7] and Omeprazole.[8]   He had

"borderline intellectual functioning."   He was enrolled in the "Mentally Retarded Offender

Program" ("MROP") and housed with other prisoners with developmental disabilities at the

Hodge Unit.   Plaintiffs allege that Thorazine, a psychotropic drug, is known to affect the body's

ability to cool itself.   They further allege that the Defendants knew that prisoners taking

psychotropic drugs are at risk for heat-related injury but make no accommodations for them during

---

[5]  Defendants also cite several instances where Plaintiffs have referred to the lack of air conditioning in the Hodge Unit, among other prison units, and assert that there is no clearly established constitutional right to air conditioning in a prison unit.   Accepting *arguendo* that assertion as true, nonetheless the references to lack of air conditioning do not claim that there is such a right.

[6]  A preparation of chlorpromazine used, *inter alia*, to control the manic phase of bipolar disorder. *See* Dorland's Online Medical Dictionary at http://www.dorlands.com/def.jsp?id=100020356.

[7]  A preparation of citalopram hydrobromide used as an antidepressant.   *See id*. at http://www.dorlands.com/def.jsp?id=110096618.

[8]  A proton pump inhibitor used to treat stomach and duodenal ulcers.   *See* Physicians' Desk Reference Online at http://www.pdrhealth.com/info/v1us/omeprazole.

high heat.   There are no allegations as to whether Defendants specifically knew that Mr. Webb was taking the psychotropic drugs or was living exposed to extremely high heat.   Of course, evidence of that knowledge is uniquely within the grasp of those Defendants.

Plaintiff alleges that Mr. Webb was 50 years old at the time of his death.   He had spent several summers at the Hodge Unit, during which he experienced symptoms of heat exhaustion. Plaintiff further alleges that Mr. Webb wrote for sick calls or reported symptoms including dizziness, dehydration despite increasing his water intake, cramps and muscle spasms in August 2009, August 2010 and July 2011, shortly before his death.   Plaintiff further alleges that his complaints were ignored.   He also alleges that the night of August 4, 2011, the air temperature in the area was nearly 90 degrees after midnight following a day of 105 degrees and 50 percent relative humidity.   According to Plaintiff, the heat index reflected an apparent air temperature of 137 degrees, at which "heatstroke [is] imminent" under TDCJ's heat matrix of temperatures.   He alleges no action was taken to cool indoor temperatures or remove inmates who were vulnerable to the heat.   Mr. Webb was found nude and unresponsive on the floor of his cell about 3:00 a.m. and was pronounced dead at 3:55 a.m.

The specific cause of action Plaintiff presses against these Defendants is that they, among others, "acted with deliberate indifference to the his [*sic*] serious health and safety needs, in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution" and that the extreme temperatures at the Hodge Unit "proximately caused Webb's untimely death."   Amended Complaint at 32.   Plaintiffs go on to make further allegations as to Defendant Dr. Murray's actions or omissions, but the underlying cause of action remains deliberate indifference.

6

## II.    ANALYSIS

To state such a claim under the Eighth Amendment, a plaintiff must allege acts or omissions "sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Norton v. Dimanzana*, 122 F.3d 286, 291 (5th Cir. 1997).   "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind."   *Norton*, 122 F.3d at 291.   It occurs when two requirements are met.   "First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."   *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (internal citations and quotations omitted).   Second, the prison official must subjectively know of and disregard a substantial risk to the inmate's health or safety.   *Id*. at 839-40.

In this light, deliberate indifference is "an extremely high standard to meet," and requires a showing that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."   *Domino v. TDCJ-ID*, 239 F.3d 752, 756 (5th Cir. 2001).

Putting the claim into the context of conditions of confinement, the Fifth Circuit has stated in another heat-related case:

> In a suit against a prison official for a violation of the Eighth Amendment relating to an inmate's conditions of confinement, two requirements must be met.   First, the prison official's act or omission must be objectively serious, in that it "result[s] in the denial of the minimal civilized measure of life's necessities."   *Id.* at 834, 114 S.Ct. 1970 (citations and internal quotation marks omitted).   "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."   *Id.*   "Some conditions of confinement may establish an Eighth Amendment violation in

7

combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter,* 501 U.S. 294, 304, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (emphasis, citations, and internal quotation marks omitted).

Second, the "prison official must have a sufficiently culpable state of mind," meaning that the official was "deliberate[ly] indifferen[t] to inmate health or safety." *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970 (citations and internal quotation marks omitted). A prison official cannot be liable for deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S.Ct. 1970. "[S]ubjective recklessness as used in the criminal law is . . . the test for 'deliberate indifference' under the Eighth Amendment." *Id.* at 839–40, 114 S.Ct. 1970. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842, 114 S.Ct. 1970 (internal citations omitted).

*Blackmon v. Garza*, 484 Fed. Appx. 866, 869 (5th Cir. 2012) (per curiam).[9]   There, the Fifth Circuit also observed that "[a]llowing a prisoner to be exposed to extreme temperatures can constitute a violation of the Eighth Amendment," *id.*, citing *Wilson v. Seiter*, 501 U.S. 294, 304, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) and *Smith v. Sullivan*, 553 F.2d 373, 381 (5th Cir. 1977).

---

[9] *Blackmon* is a heat injury case of the same general nature as the instant Webb case and involving some of the same counsel.  At the District Court level, it included in part a ruling on summary judgment that Brad Livingston, the same Defendant present here, be dismissed on the grounds of qualified immunity.  Defendants Livingston, Thaler and Stephens attach a copy of that District Court decision, *Blackmon v. Kukua*, 758 F. Supp. 2d 398 (S.D. Tex. 2010), to their motion to dismiss as Exhibit 1 in support of their argument for qualified immunity here.  However, the facts of that case are different from the Webb case and that District Court's decision illustrates a point the Magistrate Judge made here – although issues of qualified immunity should be determined at an early stage in litigation, a determination at the summary judgment level, and not the motion to dismiss level, is necessary where facts must be developed and a record established.  (Ultimately, the Fifth Circuit's decision in *Blackmon v. Garza* reversed the District Court's subsequent grant of judgment as a matter of law to the remaining defendants at trial and remanded for a new trial.)

8

Although, as noted above, Defendants go to lengths to assert that there is no clearly established law holding a constitutional right to an air conditioned prison, relying in part on *Blackmon*, 484 Fed. Appx. at 872 n.6, that is not the point.   There is clearly established law of a constitutional right to be free from extreme temperatures.[10]   Therefore, whether qualified immunity should be granted or denied does not depend on a matter of law here.

The question here is one of fact.   Plaintiffs have obviously alleged that all of these Defendants – Defendants Livingston, Thaler and Stephens within TDCJ and Defendant Dr. Murray within UTMB – acted with personal knowledge and "callous disregard" constituting deliberate indifference toward Mr. Webb's right to be free from a condition posing a serious risk of injury or death.   Defendants assert that the allegations of the complaint are inadequate to support the claim.   However, the facts of their knowledge, actions, omissions and policies are within their grasp, not the Plaintiff's.

The Fifth Circuit has addressed this problem with regard to claims of qualified immunity. For example, in *Morgan v. Hubert*, 335 Fed. Appx. 466 (5th Cir. 2009) (per curiam), the prisoner-plaintiff, being held in protective custody but who was placed in general population where he was assaulted, sought redress against the prison warden for failure to provide safety for prisoners in protective custody; failure to train his staff in matters of inmate safety; failure to train his staff to determine what remedial action was necessary after an attack against the plaintiff to prevent future assaults; and failure to provide medical care and protection to inmates after they were attacked.   *Id*. at 467-68.   The warden moved to dismiss on the grounds of qualified

---

[10]  To the extent that Plaintiffs refer to the lack of air conditioning at the Hodge Unit, contributing to the high heat, or that air conditioning is an obvious avenue to reducing temperatures, they do not go so far as to suggest that there is a constitutional right to air conditioning in prison.

immunity.   *Id*. at 468.   The court ordered the plaintiff to amend his complaint and file a reply to the qualified immunity claim, which the plaintiff did.   Ultimately, the court denied the motion to dismiss and qualified immunity, and the warden filed an interlocutory appeal to the Fifth Circuit. On appeal, the Fifth Circuit found that the prisoner-plaintiff did not allege sufficient facts to state a plausible case against the warden so as to overcome qualified immunity, yet also found that the necessary facts were within the warden's own knowledge.   The Fifth Circuit reasoned:

> In his amended complaint and reply, Morgan alleges the following facts regarding Hubert's personal actions: (1) that Hubert created policies that placed Morgan in substantial risk of harm; (2) that he failed adequately to house, feed, and provide medical care for inmates evacuated from OPP, and particularly failed to provide protection to inmates in protective custody and to provide medical care to those assaulted; (3) that Hubert knew or should have known that transfers from OPP would include prisoners in protective custody; (4) that Hubert knew or should have known of the need to segregate these prisoners; (5) that Hubert failed to follow the policies he had in place for the segregation and protection of prisoners, and that he failed to ensure that his staff followed the policies; (6) in the alternative that Hubert failed to enact any policies and was thus deliberately indifferent to Morgan's rights; and (7) that Hubert had a personal duty to create and implement these policies or to oversee those who created and implemented the policies.

> *The difficulty with these allegations is that they fail to state specifically such important facts as when Hubert knew of the transfers and what his policies were regarding them, including the handling of prisoners in protective custody.* See Schultea, 47 F.3d at 1434 (requiring the plaintiff to support a "claim with *sufficient precision and factual specificity* to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts" (emphasis added)). [. . .] The failure of specificity is no fault of Morgan's, however, because he has not yet had the benefit of discovery, and is bound by Rule 11 to allege only those facts for which he has or will likely have evidentiary support. As we said in *Schultea,* we do not require a plaintiff to plead facts "peculiarly within the knowledge of defendants," *id.* at 1432, and the facts omitted fall squarely within that category.

*Morgan*, 335 Fed. Appx. at 472 (emphasis added in the first sentence of the second paragraph only).   The Fifth Circuit went on to explicitly observe that "the protection afforded by qualified immunity applies to the lawsuit itself, and not merely to liability, and thus the issue should be

resolved as early as possible." *Id.* (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). For that reason, however, the Fifth Circuit declined only to allow the case to proceed to full discovery, given that there were "important questions regarding qualified immunity left unanswered." *Id.* Relying on *Schultea*, as the Magistrate Judge did in the R&R in this case, the Fifth Circuit in *Morgan* observed that "The district court may . . . limit any necessary discovery to the defense of qualified immunity." *Morgan*, 335 Fed. Appx. at 473 (quoting *Schultea*, 47 F.3d at 1434). Therefore, because the key facts in that case were unknown and solely within the defendant's possession, the Fifth Circuit vacated the district court's denial of qualified immunity and remanded for discovery limited to that subject. *Id.* Notably, the Fifth Circuit did not reverse the denial of qualified immunity, but simply vacated it with instructions to the "district court to *carry the issue of qualified immunity and decide it anew once that discovery is complete*." *Id.* (emphasis added). Therefore, the warden's claim as to qualified immunity was neither explicitly denied or granted, but was deferred until the appropriate limited discovery was completed.

The Fifth Circuit recently restated and clarified, with specificity, the procedure to follow at the District Court level in this situation. In *Backe v. LeBlanc*, 691 F.3d 645 (5th Cir. 2012), partygoers sued a group of police officers, the Chief of Police and the City Manager for the excessive use of force against them allegedly used by the individual police officers. *Id.* at 647. The plaintiffs alleged that the Chief had arrived at the scene, observed the situation and allowed it to continue; there were no specific factual allegations regarding the City Manager, but plaintiffs alleged that there was a policy and/or custom of the city and the police department employing excessive use of force and that the Chief and City Manager had authorized or ratified the de facto policy. *Id.* Those defendants moved to dismiss the claims against them on the grounds of

11

qualified immunity and Fed. R. Civ. P. 12(b)(6).   The district court refused to rule on the qualified immunity defense, concluding that "[a]lthough qualified immunity might become a relevant defense to liability one the facts are known, it is too early to make that determination now," and denied the motion to dismiss in favor of conducting general discovery.  *Id*.  The defendants appealed, asserting abuse of discretion.  *Id*.  The Fifth Circuit vacated and remanded with instructions because the district court had not made a finding that the plaintiffs' claims could overcome the qualified immunity defense and because the order permitting general discovery to proceed was too broad.  *Id*. at 648-49.   In doing so, the Fifth Circuit explained that

> this court has established a careful procedure under which a district may *defer* its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense.   As we explained in *Wicks*[   ], a district court must first find "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity."

*Id*. at 648 (emphasis added; quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994-95 (5th Cir. 1995) and citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("directing that a plaintiff must 'state a claim for relief that is plausible on its face' – excluding statements that are "no more than conclusions" which are 'not entitled to the assumption of truth'").).

> In that manner, the Fifth Circuit stated,

> [A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.  *After* the district court finds a plaintiff has so pled, if the court remains "unable to rule on the immunity defense without further clarification of the facts," it may issue a discovery order "narrowly tailored to uncover only those facts needed to rule on the immunity claim."

*Backe*, 691 F.3d at 648 (emphasis in original; quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507-08

(5th Cir. 1987)).   If a District Court complies with those requirements, it may defer resolution of the issue of qualified immunity until after the appropriate, tailored and limited discovery has occurred.   Furthermore, upon such compliance by the District Court, the Fifth Circuit lacks jurisdiction to review interlocutory orders in qualified immunity cases.   *Id.* (citing *Edwards v. Cass County, Texas*, 919 F.2 273, 275-76 (5th Cir. 1990)).

*Backe* represents the proper approach to take in this case.   Here, Plaintiffs have alleged that these four Defendants had specific knowledge of the temperature conditions in various TDCJ units and specifically the Hodge Unit; that these temperature conditions, including at the Hodge Unit, were dangerous and at extremes were capable of causing heatstroke and/or death; that certain prisoners, including specifically Mr. Webb, had an enhanced susceptibility to the dangers of extreme heat due to physical conditions, including taking psychotropic drugs such as those taken by Mr. Webb; that these Defendants established or proceeded under a policy or plan that was known to be ineffective for the amelioration of extreme heat and the avoidance of heat-related injury and/or death, including specifically in the case of Mr. Webb; and that, based on these allegations, the Defendants were deliberately indifferent to Mr. Webb's serious medical needs in violation of the Eighth Amendment.[11]

Pursuant to *Backe*, this Court hereby explicitly finds that these allegations, if true, are specific enough to allow the Court to draw the reasonable inference that Defendants would be liable for the harm alleged and that, if true, they would defeat a qualified immunity defense.

---

[11] In addition, the security-management Defendants themselves have responded in part that they were entitled to rely on the recommendations of the medical professionals at the units, including the Hodge Unit in the Webb case, but have provided no information as to who the medical professionals were or the nature of the advice they may or may not have given in Mr. Webb's case. While not exactly part of Plaintiff's allegations, the topic of what medical advice the Defendants received cannot be discounted from this analysis.

13

*Backe*, 691 F.3d at 648.

Additionally, however, there remain significant questions to be answered as to the details of the Defendants' knowledge, actions, omissions and/or policies, including at least when Defendants knew these facts regarding Mr. Webb and the Hodge Unit; as noted above, what medical advice they received with regard to either Mr. Webb or extreme temperature conditions at the Hodge Unit and whether it was followed; and what the specific policies are regarding extreme temperature management and amelioration for prisoner medical needs that were either established by or under which Defendants proceeded.   These are "particularly important when evaluating the second prong of the qualified immunity test-the reasonableness of [Defendants'] actions in light of the clearly established constitutional right," *Morgan*, 335 Fed. Appx. at 472, to be free from extreme temperatures.   *Blackmon*, 484 Fed. Appx. at 869.   Until these questions are resolved, the Court is "unable to rule on the immunity defense without further clarification of the facts." *Backe*, 691 F.3d at 648.

Although the Magistrate Judge recommended denial of the respective motions to dismiss on the ground of qualified immunity while directing the parties to conduct discovery limited to that ground, this Court will not adopt that portion of the R&R.   Instead, the Court will direct the Magistrate Judge to defer and carry the issue of qualified immunity until discovery strictly limited to that subject is complete, and then to provide a new recommendation.[12]   Considering discovery

---

[12]  This case was directly assigned to the Magistrate Judge pursuant to this District's General Order 13-15.   During the Status Conference of November 6, 2013, the Magistrate Judge addressed the issue of full consent to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c).   Because the parties have not yet so consented, it was necessary for the Magistrate Judge to issue his recommendation as an R&R.   Therefore, a District Judge had to be assigned to review the R&R *de novo* and issue a ruling upon it.   After the undersigned District Judge issues this Order, however, he will no longer be assigned to this case.   It will return to the Magistrate Judge as a

with regard to a Rule 12(b)(6) motion to dismiss will necessarily convert such a motion into a motion for summary judgment; that is the same essential outcome the Magistrate Judge envisioned in the R&R.   Rather than rely on the existing framework of the motions to dismiss, however, the parties might be in a better position to file their summary judgment motion(s) as such after the limited discovery is complete, consistent with Rule 56 of the Federal Rules of Civil Procedure. Accordingly, the Court will adopt the R&R in part and reject it in part and will defer the issue of qualified immunity and direct that the issue be carried until the strictly limited discovery is complete, consistent with the procedure laid forth in *Backe*, 691 F.3d at 648-49.

## III.   PERMISSIBLE SCOPE OF LIMITED DISCOVERY

As to the scope of that limited discovery, the Court observes that Plaintiff, perhaps leaping at the chance to depose Defendant Livingston, almost immediately issued a deposition subpoena after the status conference along with a subpoena *duces tecum* seeking an extraordinary range of document discovery, despite the limitation to the subject of only qualified immunity.   The deposition subpoena/subpoena *duces tecum* is attached to Defendants' Opposed Motion to Quash . . . and Motion for Protective Order on the Basis of Qualified Immunity (docket entry #50) (the "Motion to Quash") as Exhibit 1 ("Plaintiff's First Amended Notice of Intention to Take Oral and Videotaped Deposition of Brad Livingston and Supeona [*sic*] Duces Tecum," including Exhibit A thereto, the document production command pursuant to the subpoena *duces tecum*).   This Court is ordering that discovery limited to the subject of qualified immunity proceed as the Magistrate Judge discussed at the Status Conference and recommended in the R&R; however, what has been

direct assignment pursuant to General Order 13-15.   In the event a District Judge will again be required to take action in this case, a new assignment will have to be made according to availability and random selection.   However, if the parties consent under § 636(c), such time-consuming proceedings will be avoided.

noticed in Plaintiffs' subpoena vastly exceeds the scope of such limited discovery.   Instead, the document production described in Exhibit A to the Plaintiffs' subpoena *duces tecum* appears calculated to obtain discovery related to the litigation of the entire case on its merits as well as discovery in other heat-related cases filed in this and other federal districts in Texas.   Defendants also reproduced this list of production demands in full in the Motion to Quash at 4-6.   Accordingly, this Court will not reproduce the entire list here, but will quote certain portions of it:

> 1.      ALL DOCUMENTS and tangible things, including all tangible reports, exhibits, physical models, compilations of data and other material prepared by or for you for use in this case.
>
> [. . .]
>
> 3.      All files, WRITINGS or other documentation, photographs, motion pictures, video, television records, maps, drawings, charts, diagrams, measurements, surveys and reference items reviewed, consulted, copied, compared to or taken by yourself which relate to the incident made the basis of this lawsuit or its consequence or similar incidents used for forming the basis of your opinion with respect to matter in this suit.
>
> [. . .]
>
> 7.      All depositions or transcripts of trial testimony previously given by you.
>
> [. . .]
>
> 13.      All contracts, agreements, correspondence and other DOCUMENTS pertaining to or reflecting any involvement, employment, listing, membership, affiliation, understanding or agreement of you with any expert witness referral service, listing service, directory, or any person or entity involved in locating or referring expert witness or consultations for legal matters.
>
> 14.      All advertisements, brochures, circulars, or other DOCUMENTS used by or on behalf to advertise, promote, publicize or describe the availability of your services in the past ten years.
>
> [. . .]
>
> 20.      All DOCUMENTS you have reviewed relating to medical conditions

16

> prisoners inside Texas Department of Criminal Justice prisons suffer from, including, but not limited to, statistical compilations showing medical conditions prisoners suffer from, statistical compilations showing medical conditions prisoners suffer from, statistics describing the number of prisoners diagnosed with developmental disabilities (or "mental retardation", bipolar disorder, depression, Hepatitis C, and other medical condition you know places prisoners at increased risk for heat-related injury, including, but not limited to any electronically stored information you have reviewed.

Motion to Quash at 4-6 (duplicating Subpoena *Duces Tecum* at Ex. A).   These demands clearly exceed the limitation to discovery related to qualified immunity in this case.   Instead, they seek discovery of material to litigate the underlying claims on the merits, including broad discovery related to TDCJ-wide prison units that are not relevant to qualified immunity in the Webb case. Accordingly, the Defendants' Motion to Quash, construed as integral with the objections to the R&R, will be granted.   The Court does not, however, bar the possibility of depositions, including that of Defendant Livingston.   As Defendants admit, some of them have participated in depositions and all have responded to interrogatories, requests for admissions and other discovery in other cases.   Therefore, they cannot be considered adverse to the idea of discovery.   However, when faced with overly broad and irrelevant demands for production as those discussed above, after the imposition of a limitation on discovery to the topic of qualified immunity in this case, their objections, resistance and a request to quash are understandable.   Plaintiff's demands for production are overruled.

Plaintiff is entitled to obtain discovery limited to the personal knowledge and personal conduct of the Defendants as it relates to the Webb case and the circumstances leading to his death at the Hodge Unit.   That may include their knowledge of extreme temperatures at the Hodge Unit; the effect of psychotropic drugs on a prisoner's ability to regulate high temperatures, specifically, Mr. Webb's ability to do so; and what medical advice the Defendants received or gave regarding

17

the Hodge Unit, Mr. Webb and management of extreme temperatures as it relates to this case. That may include discovery as to any policies or procedures in place (including TDCJ system-wide policies or procedures) to deal with the extreme high heat conditions at the Hodge Unit and whether those policies or procedures, if any, were followed in this case.   The discovery shall be designed to uncover evidence that may be used to overcome (or to enforce) Defendants' defense of qualified immunity in the Webb case.   Although the Amended Complaint includes allegations of conditions throughout the TDCJ system and relates injury or death due to high heat in several other cases, this is not a class action nor have the cases been consolidated; the causes of action it propounds involve the death of Mr. Webb and the circumstances at the Hodge Unit, not the circumstances at other units.   If such discovery can be completed on the basis of interrogatories and other written methods, that is preferred.   If depositions are necessary, they shall be noticed and conducted on the least-intrusive basis possible.

## IV.   CONCLUSION AND ORDERS

Having made a *de novo* review of the objections, motions and notices raised by Defendants in response to the R&R, and the Plaintiffs' replies thereto, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct in substantive part.   As the Magistrate Judge recommended, discovery limited to the subject of qualified immunity should proceed with regard to the Defendants identified herein, as specifically outlined above.   To the extent the Defendants' objections and other pleadings seek otherwise, they are overruled. However, under *Backe, Morgan* and *Schultea, supra*, it is not necessary to decide the issue of qualified immunity at this time.   To the extent that the R&R recommended denial of the Motions to Dismiss while pursuing the limited discovery, the R&R is rejected and the Magistrate Judge is

18

directed to defer and carry the issue of qualified immunity until the limited discovery is complete and a record is developed to enable ruling on the issue through summary judgment.   Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation of the Magistrate Judge is hereby **ADOPTED IN PART** to the extent that discovery on the issue of qualified immunity, limited as described herein, shall proceed to support a ruling on summary judgment, if necessary; and is hereby **REJECTED IN PART** to the extent that it recommends denying Defendant Livingston, Stephens and Thaler's Motion and Amended Motion to Dismiss on the Basis of Qualified Immunity (docket entries #43 & 44); and Defendant Dr. Murray's Amended Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) (docket entry #35).   Instead, the Magistrate Judge is directed to **DEFER** and **CARRY** the issue of qualified immunity until it may be decided, including on summary judgment as appropriate.   Accordingly, the issue of qualified immunity is deferred, but not denied, at this time consistent with *Backe*, 591 F.3d at 648-49.   It is further

**ORDERED** that Defendants Livingston, Stephens and Thaler's Opposed Motion to Stay and Objection to Plaintiff's Discovery (docket entry #38), Opposed Motion to Quash Deposition Notice/Subpoena *Duces Tecum* and Motion for Protective Order on the Basis of Qualified Immunity (docket entry #50), and Supplement to Pending Opposed Motion to Quash the Deposition of Brad Livingston and Stay Discovery (docket entry #60) are **GRANTED IN PART** and **DENIED IN PART** to the extent that only discovery strictly limited to the issue of qualified immunity in this case shall proceed and that the deposition previously noticed of Defendant Livingston is **QUASHED** without prejudice to re-noticing it in the future in a manner consistent with this **ORDER** if necessary.   It is further

**ORDERED** that the Plaintiffs' and Defendants' Joint Motion to Extend Deadline to

Complete Qualified Immunity Discovery and Qualified Immunity Dispositive Motion Deadline is **GRANTED**.   The deadline to complete limited discovery on the issue of qualified immunity is extended to 30 days from the date of this Order; the deadline to file summary judgment motions on the issue of qualified immunity is extended to 45 days from the date of this Order.   It is finally

   **ORDERED** that the parties meet and confer on the issue of consolidation of heat-related cases pending before this District and file a joint recommendation in this case within seven days of the date of this **ORDER**.   If the parties do not agree on whether the cases should be consolidated, their joint report shall set forth their respective reasons for and against such consolidation.

   **SIGNED this 14th day of March, 2014.**

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE

20