# Exhibit 4

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| GWEN TOGONIDZE, ET AL. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 6:14cv93 |
| | § | |
| BRAD LIVINGSTON, ET AL. | § | |

## SECOND REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Gwen Togonidze, as the next friend of J.T., a minor child and heir-at-law to the Estate of Alexander Togonidze, Plaintiffs, filed the above-styled and numbered lawsuit pursuant to the Eighth and Fourteenth Amendments under 42 U.S.C. § 1983; Title II of the Americans with Disabilities Act ("ADA"), and the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 13131, *et seq.*; and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794. The cause of action was referred for findings of fact, conclusions of law and recommendations for the disposition of the case.

The present Report and Recommendation concerns a motion to dismiss under Fed. R. Civ. P. 12(b)(6) (docket entry #5) filed by the University of Texas Medical Branch ("UTMB"), the Plaintiff's response (docket entry #10), and UTMB's reply (docket entry #14), along with their notices of supplemental authority. The Plaintiffs' claims against UTMB concern the ADA, ADAAA and RA.

### Background

Alexander Togonizde died from a heat stroke while confined at the Michael Unit. UTMB doctors had previously diagnosed him with depression. The Plaintiffs noted that depression is a physiological condition affecting body systems, including the neurological system. Before being treated for depression, Togonizde often had difficulty sleeping. Anti-depressants helped him to sleep

1

regularly. UTMB medical personnel prescribed him pamelor (Nortriptyline), a tricyclic antidepressant. The Plaintiffs assert that tricyclic antidepressants put patients at a much higher risk for heat stroke. UTMB policy recognizes that patients taking pamelor "should not be allowed to work or recreate in environments where the apparent air temperature is 95 [degrees] or higher." Togonizde also suffered from diabetes, and UTMB policies identified diabetes as a condition "that may affect heat tolerance." He was also prescribed atenolol (Tenormin), which reduces the body's ability to sweat, thereby placing him at a heightened risk of heat-related injury. During the days preceding Togonidze's death, the Tennessee Colony area had endured 39 consecutive days where the temperature exceeded 100 degrees Fahrenheit. On the day of his death, the high was 102 degrees Fahrenheit, with 65 percent humidity, making the heat index over 136 degrees. According to TDCJ's heat matrix, at these temperatures "heatstroke [is] imminent." At the time of his death, his body temperature was measured at over 106 degrees. An autopsy concluded that he died of hypothermia - heat stroke - which caused "severe organ damage."

      The Plaintiffs allege that Togonizde's medical conditions rendered him disabled, and UTMB's failure to make accommodations for those disabilities resulted in Togonizde's death. Specifically, the Plaintiff's argue that a combination of the medical conditions and medications of Togonizde made him more vulnerable to suffer adverse consequences as a result of the extreme heat that Michael Unit inmates were required to endure. The Plaintiffs argue that the UTMB's failure and refusal to reasonably accommodate Togonizde violated the ADA, ADAAA and RA, which led to his death.

      UTMB argues that the Plaintiffs' claims against it should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Alternatively, UTMB asks that the Plaintiffs be ordered to "re-plead sufficient facts to identify the elements of her causes of action under the ADA and Rehabilitation Acts." In support of the motion, UTMB argues that the Plaintiffs have not "alleged a single fact stating

1) how the inmate was discriminated against by being treated differently than any other inmate, or even other inmates with the same disabilities; 2) what accommodations, if any, the inmate sought for his disability, but was refused or denied; 3) what accommodations, if any, should have been provided without a request, but were denied or refused; or 4) which facilities, programs, or services should have been modified by UTMB." (docket entry 5, ¶ 17).

## Discussion and Analysis

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief may be granted." In the Fifth Circuit, "[a] motion to dismiss under rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Kaiser Aluminum & Chem Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)). The court is required to construe the complaint liberally in favor of the plaintiff, and takes all facts pleaded in the complaint as true. *See Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must "nudge[] their claim across the line from conceivable to plausible" by pleading "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In ruling on a Rule 12(b)(6) motion to dismiss, the district court cannot look beyond the pleadings. *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994). Thus, the court only considers matters proper under Rule 12(b)(6). *See Jones v. Liberty Bank & Trust Co.*, 461 F. App'x 407, 409 (5th Cir.) (per curiam) ("Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." (citation omitted)), *cert. dismissed*, 133 S. Ct. 32 (2012).

UTMB initially argues that the Plaintiffs have not alleged any facts stating how Togonizde was discriminated against by being treated differently than any other inmate, or even other inmates with the same disabilities (docket entry #5, ¶ 17).

"In the prison context . . . failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of an accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners." *McCoy v. Texas Dep't of Criminal Justice*, No. C-05-370, 2006 WL 2331055 at *7 (S.D. Tex. Aug. 9, 2006). "[T]he fact that individuals other than the class members have been unable to obtain benefits does not demonstrate that [disabled individuals] do not face conditions that are more onerous for them because of their particular disabilities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 279 (2nd Cir. 2003).

In the amended complaint, Plaintiffs allege "it is well known to . . . UTMB leadership" that people who are afflicted with cerrtain medical conditions or are on certain medications are "much more vulnerable to extreme temperatures" because "[t]heir medical conditions prevent their bodies from regulating their temperature, putting them at much greater risk of death." Plaintiffs also allege that UTMB officials "knew Mr. Togonidze suffered from mental illness, and was prescribed medications to treat his disabilities." Plaintiffs further allege that "UTMB makes mandatory housing recommendations to TDCJ for some prisoners with disabilities . . . [b]ut UTMB and TDCJ policies do not contemplate special housing for prisoners with heat-sensitive disabilities."

The attorneys in this case are also involved in another heat related death case in the Southern District of Texas in *Hinojosa v. Livingston*, No. 2:13-CV-319. Most recently, the Hon. Nelva Gonzales Ramos, United States District Judge, denied UTMB's motion to dismiss with the following analysis with respect to UTMB's first argument in support of it's motion:

4

> Here, Plaintiff has alleged sufficient facts to state how the decedent was discriminated against. Plaintiff alleges that Defendant knew of the risks and dangers associated with certain medical conditions and medications, that Defendant knew that the decedent suffered from those conditions and used those medications, and that despite that knowledge, Defendant failed to make reasonable accommodations, resulting in the decedent suffering more pain and punishment than non-disabled prisoners - namely, his death. It is not enough for Defendant to claim that all prisoners at the Garza West Unit - whether suffering from a disability or not - endured the same housing and living conditions that the decedent did because even though the conditions complained of was suffered by all of the inmates, Plaintiff has alleged sufficient facts to state those conditions were more onerous on the decedent due to his particular disabilities. Nevertheless, Plaintiff still pleads facts indicating that UTMB policy permitted housing accommodations for some disabled individuals (i.e., those with mobility impairments requiring a wheelchair), but not for individuals suffering from heat-sensitive disabilities. Accordingly, Plaintiff has alleged sufficient facts to state that Defendant discriminated against the decedent.

*Hinojosa v. Livingston*, ____ F.Supp.2d ____, 2014 WL 199022 at *2 (S.D. Tex. Jan. 16, 2014). The reasoning is equally applicable to the present case. The Plaintiffs have alleged sufficient facts to state that UTMB discriminated against Togonidze.

UTMB next alleges that the Plaintiffs have not alleged any facts that would suggest that Togonidze requested any accommodations but was denied. "A disabled person's failure to expressly 'request' an accommodation . . . is not fatal to an ADA claim where the defendant otherwise had knowledge of an individual's disability and needs but took no action." *Id.* at *3 (citations omitted). In the amended complaint, Togonizde alleges that UTMB officials knew that Togonidze suffered from depression, diabetes and hypertension, and was prescribed medications to treat his disabilities. They knew that extreme temperatures could be deadly, but UTMB failed to protect Togonidze from the extreme temperatures that ultimately led to his death. Because the Plaintiffs have alleged that UTMB had knowledge of Togonidze's disability and the needs that his disability created but took no action, it was not necessary that Togonidze request any accommodation, and his failure to do so is not fatal to the Plaintiffs' claim.

In its final arguments in support of a Rule 12(b)(6) motion to dismiss, UTMB argues that the Plaintiffs have not alleged any facts stating what accommodations, if any, should have been provided without a request, but were denied or refused or which facilities, programs, or services should have been modified by UTMB.

With regard to accommodations that should have been provided, the Plaintiffs allege that despite an epidemic of heat related deaths and UTMB officials' knowledge of the of the extreme indoor temperatures at the Michael Unit in the summer, UTMB "failed to take reasonable steps to safely house prisoners at the Michael Unit and protect them from heat stroke, a risk they were well aware of at the time."  It was noted that "[t]hough some parts of the Michael Unit are air conditioned and available to use as a respite area, such as the visitation rooms, prisoners are not given a chance to cool off."  The Plaintiffs complain that UTMB policy "does not contemplate special housing for prisoners with heat-sensitive disabilities" and "only addresses preventing heat-related injuries in the workplace," while neglecting to address prisoners' housing assignments or living areas.  In their response to the present motion, the Plaintiffs' opined that "[w]ithout safe, cooler housing conditions that do not place their lives at risk, people with depression, diabetes or hypertension - like Togonidze - cannot cool their bodies, become sicker than able-bodied people, and are at increased risk of heat stroke and death."

Although this is not an exhaustive recitation of the factual allegations in the amended complaint, the Plaintiffs have alleged at least some facts sufficient to identify what accommodations should have been provided to Togonidze and what facilities, programs, or services should have been modified by UTMB.  The Plaintiff's pleadings are sufficient to defeat a Rule 12(b)(6) motion.

Recommendation

It is recommended that Defendant UTMB's motion to dismiss under Fed. R. Civ. P. 12(b)(6) (docket entry #5) be denied.

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**So ORDERED and SIGNED this 8th day of April, 2014.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE