# Exhibit 6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **KEVIN WEBB, individually and** | § | |
| **as representative of the Estate of** | § | |
| **ROBERT ALLEN WEBB, et al.** | § | |
| **Plaintiff** | § | **Civil Action No.  6:13cv711** |
| | § | **CONSOLIDATED WITH** |
| **vs.** | § | *Adams v. Livingston*, 6:13cv712 |
| | § | *Togonidze v. Livingston*, 6:14cv93 |
| **BRAD LIVINGSTON, et al.** | § | |
| **Defendants** | § | |

**REPORT AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Came on for consideration, Defendant University of Texas Medical Branch's ("UTMB")

Motion to Dismiss Under FRCP 12(b)(6) (docket entry #5).  Plaintiffs filed a response (docket

entry #9) and Defendant UTMB filed a reply (docket entry #11).  The case was then transferred

from the United States District Court for the Southern District of Texas to this District.  Plaintiffs

subsequently filed notices of supplemental authority and Defendant UTMB filed replies to those

notices.  Defendant UTMB then filed a Response to Plaintiffs' Notice of Supplemental Authority

and Amended Motion to Dismiss (docket entry #73) and Plaintiffs filed their own Response to

UTMB's Amended Motion to Dismiss (docket entry #78).    The instant Report and

Recommendation addresses the underlying Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6),

including its Amended Motion to Dismiss (docket entries #5, 73).  Although Plaintiffs' lawsuit is

encompassed overall as a civil rights action pursuant to the Eighth and Fourteenth Amendments

and 42 U.S.C. § 1983, the specific claims against Defendant UTMB are pursuant to Title II of

the Americans with Disabilities Act ("ADA"), and the Americans with Disabilities Act

1

Amendments Act ("ADAAA"), 42 U.S.C. § 12131, *et seq*.; and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794.

## I.      BACKGROUND

This is one of three different numbered cases (but including wrongful death actions pertaining to five different decedent former inmates in the Texas Department of Criminal Justice ("TDCJ") prison unit system) that have been consolidated under the *Webb v. Livingston* case name.  However, the specifics of the instant claims against, and motion to dismiss of, Defendant UTMB arise out of the *Webb* case only.  There are similar motions pending in the other cases that are addressed within the structures of those cases.

Plaintiffs allege Mr. Webb suffered from severe mental illness, including bipolar disorder, and had functional cognitive disabilities.  Upon arriving at TDCJ, UTMB doctors diagnosed him with "adjustment disorder with mixed anxiety and depression," prescribing Thorazine, Celexa and Omeprazole.  He had "borderline intellectual functioning."  He was enrolled in the "Mentally Retarded Offender Program" ("MROP") and housed with other prisoners with cognitive disabilities at the Hodge Unit.  Plaintiffs allege that Thorazine, a psychotropic drug, is known to affect the body's ability to cool itself.  They further allege that the Defendants knew that prisoners taking psychotropic drugs are at risk for heat-related injury but make no accommodations for them during high heat.

Plaintiffs also allege that Mr. Webb was 50 years old at the time of his death and had spent several summers at the Hodge Unit, during which he experienced symptoms of heat exhaustion.  Plaintiffs further allege that Mr. Webb wrote for sick calls or reported symptoms including dizziness, dehydration despite increasing his water intake, cramps and muscle spasms in August 2009, August 2010 and July 2011, shortly before his death.  His complaints were

allegedly ignored.  The night of August 4, 2011, the air temperature in the area was allegedly nearly 90 degrees after midnight following a day of 105 degrees and 50 percent relative humidity.  According to Plaintiffs, the heat index reflected an apparent air temperature of 137 degrees, at which "heatstroke [is] imminent" under TDCJ's heat matrix of temperatures. Plaintiffs allege no action was taken to cool indoor temperatures or remove inmates who were vulnerable to the heat.  Mr. Webb was found nude and unresponsive on the floor of his cell about 3:00 a.m. and was pronounced dead at 3:55 a.m.

As noted above, the specific claims against Defendant UTMB are brought under the ADA, the ADAAA and the RA.  Plaintiffs allege that Mr. Webb's medical conditions rendered him disabled, and UTMB's failure to make accommodations for those disabilities resulted in his death.  Specifically, the Plaintiff's argue that a combination of Mr. Webb's medical conditions and medications made him more vulnerable to suffer adverse consequences as a result of the extreme heat that Hodge Unit inmates were required to endure.

UTMB argues that the Plaintiffs' claims against it should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Alternatively, UTMB asks that the Plaintiffs be ordered to "re-plead sufficient facts to identify the elements of their basis [*sic*] causes of action under the ADA and Rehabilitation Acts."  In support of the motion, UTMB argues that the Plaintiffs have not "alleged a single fact stating 1) how the inmate was discriminated against by being treated differently than any other inmate, or even other inmates with the same disabilities; 2) what accommodations, if any, the inmate sought for his disability, but was refused or denied; 3) what accommodations, if any, should have been provided without a request, but were denied or refused; or 4) which facilities, programs, or services should have been modified by UTMB." Motion to Dismiss (docket entry #5), at ¶ 18.

## II.    DISCUSSION AND ANALYSIS

In the Fifth Circuit, "(A) motion to dismiss under rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)).   The court is required to construe the complaint liberally in favor of the plaintiff, and takes all facts pleaded in the complaint as true.  *See Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)).   In other words, a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

However, in ruling on a Rule 12(b)(6) motion to dismiss, the district court cannot look beyond the pleadings, *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994).   Thus, the Court only considers matters proper under Rule 12(b)(6).  *See Jones v. Liberty Bank & Trust Co.*, 461 Fed. Appx. 407, 409 (5th Cir.) (per curiam) ("Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." (citation omitted)), *cert. dismissed*, 133 S. Ct. 32, 183 L. Ed. 2d 671 (2012).

UTMB initially argues that the Plaintiffs have not alleged any facts stating how Mr. Webb was discriminated against by being treated differently than any other inmate, or even other inmates with the same disabilities (docket entry #5, ¶ 18).

4

"In the prison context . . . failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of an accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners."  *McCoy v. Texas Dep't of Criminal Justice*, No. C-05-370, 2006 WL 2331055, at *7 (S.D. Tex. Aug. 9, 2006).  "[T]he fact that individuals other than the class members have been unable to obtain benefits does not demonstrate that [disabled individuals] do not face conditions that are more onerous for them because of their particular disabilities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 279 (2nd Cir. 2003), *cert. denied*, 541 U.S. 936, 124 S. Ct. 1658, 158 L. Ed. 2d 356 (2004).

The attorneys in this case are also involved in another heat related death case in the Southern District of Texas in *Hinojosa v. Livingston*, No. 2:13-CV-319.  Most recently, the Hon. Nelva Gonzales Ramos, United States District Judge, denied UTMB's motion to dismiss with the following analysis with respect to UTMB's first argument in support of its motion:

> Here, Plaintiff has alleged sufficient facts to state how the decedent was discriminated against.  Plaintiff alleges that Defendant knew of the risks and dangers associated with certain medical conditions and medications, that Defendant knew that the decedent suffered from those conditions and used those medications, and that despite that knowledge, Defendant failed to make reasonable accommodations, resulting in the decedent suffering more pain and punishment than non-disabled prisoners - namely, his death.  It is not enough for Defendant to claim that all prisoners at the Garza West Unit - whether suffering from a disability or not - endured the same housing and living conditions that the decedent did because even though the conditions complained of was suffered by all of the inmates, Plaintiff has alleged sufficient facts to state those conditions were more onerous on the decedent due to his particular disabilities. Nevertheless, Plaintiff still pleads facts indicating that UTMB policy permitted housing accommodations for some disabled individuals (i.e., those with mobility impairments requiring a wheelchair), but not for individuals suffering from heat-sensitive disabilities.  Accordingly, Plaintiff has alleged sufficient facts to state that Defendant discriminated against the decedent.

5

*Hinojosa v. Livingston*, - - - F.Supp.2d - - - -, 2014 WL 199022, at *2 (S.D. Tex. Jan. 16, 2014).

The reasoning is equally applicable to the present case.  Here, Plaintiffs have alleged sufficient

facts to state that UTMB discriminated against Mr. Webb.

UTMB next alleges that Plaintiffs have not alleged any facts that would suggest that Mr.

Webb requested any accommodations but was denied.  "A disabled person's failure to expressly

'request' an accommodation . . . is not fatal to an ADA claim where the defendant otherwise had

knowledge of an individual's disability and needs but took no action."  *Id.* at *3 (citations

omitted).  In the amended complaint,[1] Plaintiffs allege that UTMB officials knew that Mr. Webb

suffered from bipolar disorder/depression and cognitive disabilities, and was prescribed

medications to treat his disabilities.  They knew that extreme temperatures could be deadly, and

that certain of his medications increased his vulnerability to extreme heat, but UTMB failed to

protect Mr. Webb from the extreme temperatures that ultimately led to his death.  Because

Plaintiffs have alleged that UTMB had knowledge of Mr. Webb's disability and the needs that

his disability created but took no action, it was not necessary that Mr. Webb request any

accommodation, and his failure to do so is not fatal to the Plaintiffs' claim.

In its final arguments in support of a Rule 12(b)(6) motion to dismiss, UTMB argues that

the Plaintiffs have not alleged any facts stating what accommodations, if any, should have been

provided without a request, but were denied or refused or which facilities, programs, or services

should have been modified by UTMB.

With regard to accommodations that should have been provided, the Plaintiffs allege that

despite an epidemic of heat related deaths and UTMB officials' knowledge of the of the extreme

indoor temperatures at the Hodge Unit in the summer, UTMB "failed to take reasonable steps to

---

[1] Including the First and Second Amended Complaints, both of which were filed subsequent to
Defendant UTMB's initial Motion to Dismiss pleading.  The Second Amended Complaint is now
the operative pleading.

safely house prisoners at the Hodge Unit and protect them from heat stroke, a risk they were well aware of at the time." Second Amended Complaint at 24, ¶ 111.  Plaintiffs allege that "UTMB makes recommendations based on prisoners' medical conditions to TDCJ for forced labor assignments, but it does not make housing recommendations related to protecting heat-sensitive prisoners from extreme temperatures. For example, UTMB might prohibit a prisoner taking psychotropic drugs from forced labor outdoors on hot days, but it makes no corresponding recommendations for protecting prisoners from extreme temperatures inside." *Id*. at 16, ¶ 69. Further, that ". . . UTMB and TDCJ know that when temperatures exceed 90 degrees indoors that the housing areas become just as dangerous, and that there is no UTMB or TDCJ mechanism to prevent medically vulnerable prisoners from being housed in these conditions." *Id*. at 17, ¶ 69. Plaintiffs further allege that although UTMB policy states that "[e]very reasonable effort shall be made in the interest of preventing heat-related injuries *in the workplace*[,]" no such policy exists with regard to providing "housing assignments for prisoners, like Webb, likely to suffer heat-related injuries even though temperatures inside are virtually identical to outdoor temperatures." *Id*. at 17, ¶ 72 (emphasis in Second Amended Complaint).

Although this is not an exhaustive recitation of Plaintiffs' factual allegations, the Plaintiffs have alleged at least some facts sufficient to identify what accommodations should have been provided to Mr. Webb and what facilities, programs, or services should have been modified by UTMB.  The Plaintiff's pleadings are sufficient to defeat a Rule 12(b)(6) motion.

## III.    RECOMMENDATION

It is accordingly recommended that Defendant UTMB's Motion to Dismiss and Amended Motion to Dismiss (docket entries #5, 73) be denied.

7

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

**So ORDERED and SIGNED this 10th day of April, 2014.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE