IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN McCULLOM, et al., Plaintiffs, | § § § | |
| v. | § § | CIVIL ACTION NO. 3:12-CV-02037 |
| BRAD LIVINGSTON, et al., Defendants. | § § § | |

**DEFENDANT UTMB'S BRIEF IN SUPPORT OF
RESPONSE TO PLAINTIFFS' MOTION FOR DISCOVERY SANCTIONS,
REQUEST FOR SHOW CAUSE ORDER AND MOTION TO COMPEL**

NOW COMES Defendant the University of Texas Medical Branch at Galveston, by and through its Attorney, the Attorney General for the State of Texas, and submits this Defendant UTMB's Brief in Support of its Response To Plaintiffs' Motion For Discovery Sanctions, Request For Show Cause Order, and Motion To Compel. In support thereof, the Defendant UTMB respectfully offers the following:

**I.**

**BACKGROUND FACTS**

On April 5, 2013, almost one year after this case was filed against TDCJ, Plaintiffs filed a First Amended Complaint, which named the University of Texas Medical Branch at Galveston (UTMB) as Defendant. D.E. 43. In the First Amended Complaint, Plaintiffs contend UTMB violated the Americans with Disabilities Act and Rehabilitation Act. Specifically, Plaintiffs allege UTMB intentionally discriminated against Larry McCollum (McCollum) based upon his alleged disabilities of hypertension, diabetes, and obesity by failing to provide him "safe housing" to protect him from extreme temperatures. In response to Plaintiffs' First Amended Complaint, UTMB filed an Answer and a Motion to Dismiss. D.E. 49, 55. UTMB's Motion to

1

Dismiss, which was amended in response to Plaintiffs' Second Amended Complaint, is still pending. See D.E. 119, 122.

A. **ESI Discovery History**

To the extent that a Rule 16 Scheduling Conference occurred, UTMB was not present because it was not yet a party in this litigation. In fact, Plaintiffs filed their Original Complaint on or about June 26, 2012. Notably, when UTMB was joined as a Defendant in this lawsuit on or about April 5, 2013, plaintiffs did not make any specific requests under Rule 16 regarding ESI.

Similarly, UTMB was not present at the Rule 26 conference because it was once again not yet a party in this litigation. However, on or about September 21, 2012, Plaintiffs and Defendants Texas Department of Criminal Justice filed a Joint Status Report and Discovery Report. D.E. 12. The Agreed Proposed Discovery Plan between Plaintiffs and TDCJ does not include any specific ESI requests. Once again, after Plaintiffs joined UTMB as a Defendant, Plaintiffs made no specific requests regarding ESI.

B. **UTMB's Discovery History**

After UTMB became a party to this lawsuit, Plaintiffs propounded discovery requests to UTMB for 20 years of voluminous, system wide records unrelated to Mr. McCollum or the Hutchins State Jail. In response, UTMB's Department of Legal Affairs began the discovery process by asking potential witnesses at the prison unit level who provided care to Mr. McCollum whether they had any relevant documents or information about Mr. McCollum.[1] Thereafter, UTMB responded to Plaintiffs' discovery requests and appropriately objected as over

---

[1] UTMB did not initially place a litigation hold on electronically stored information for custodians of records at the unit level; instead, UTMB relied on its communication with individuals identified as people who may have knowledge to respond to discovery requests.

2

broad, but produced the responsive and non-privileged documents and e-mails that were identified. At the time, UTMB limited its search to documents involving Mr. McCollum and the Hutchins State Jail rather than conducting a search across all of the UTMB-Correctional Managed Care ("UTMB-CMC") units for documents that did not involve Mr. McCollum or the Hutchins State Jail. In other words, UTMB limited its search to documents specifically related to Plaintiffs' ADA and RA claims. Importantly, Plaintiffs did not file motions to compel or ask the Court to overrule any of UTMB's objections, except for the production of peer review materials and autopsies. D.E. 144

In the following weeks, UTMB-CMC produced medical records and policies, and also answered multiple sets of interrogatories, requests for production and requests for admission. See Exhibit 1. UTMB also produced for deposition UTMB-CMC physician's assistant, Mr. Andy Babbili, Dr. Owen Murray, Vice President for Offender Health Services, and Dr. Glenda Adams, Senior Medical Director of Inpatient Operations for UTMB-CMC, twice - once as a corporate representative and once as an expert witness.

## C.   DISCOVERY OF E-MAILS

This is one of six cases pending in courts around the state.[2] On April 11, 2014, while responding to a discovery request in the *Adams* case, Mr. Gary Eubank, Associate Chief Nursing Officer/Director at UTMB-CMC, who offices at UTMB-CMC in Conroe, Texas, realized that he had nursing records and minutes from prison unit meetings which were potentially responsive to the *Adams* discovery. Mr. Eubanks brought these records and minutes to the attention of

---

[2] These cases are: *Webb v. Livingston, et al*., Cause No. 6:13-cv-711, (consolidated with *Adams v. Livingston*, et al., Cause No. 6:13-cv-712, and *Togonidze v. Livingston, et al*., Cause No. 6:14-cv-093), pending in the Eastern District of Texas, Tyler Division; *Martone v. Livingston, et al.,* Cause No. 4:13-cv-3369, pending in the Southern District of Texas, Houston Division; and *Hinojosa v. Livingston, et al.,* Cause No. 2:13-cv-319, pending in the Southern District of Texas, Corpus Christi Division.

UTMB's Department of Legal Affairs. In response to this new discovery, UTMB's Department of Legal Affairs realized that although the minutes did not relate specifically to Mr. McCollum or to meetings at the Hutchins State Jail, they did relate to heat conditions generally.  As a result, the records were produced. See Exhibit 2.

Next, lawyers from UTMB's Department of Legal Affairs and the Office of Attorney General convened a meeting with Mr. Eubank and others to discuss whether any other potentially relevant documents remained undiscovered.  During the meeting, Jerri Denee' Robison, UTMB-CMC Director of Nursing Region 2, stated that she had "archived e-mails" that might be relevant ("the Robison e-mails").  Again, Ms. Robison's e-mails did not relate specifically to McCollum, the Hutchins State Jail, or any specific plaintiff, but still, the e-mails were generally relevant to heat illness at the units state-wide.  Accordingly, they were produced in *Webb, McCullom* and all other pending cases, whether requested or not.

The discovery of Ms. Robison's e-mails caused UTMB concern about the possibility of additional e-mails that could be considered relevant.  As a result, UTMB broadened its ESI search, which included the involvement of UTMB's Director of Information Services - Security, Mr. Bob Shaffer and UTMB's Department of Information Services - Security staff.  Specifically, Mr. Shaffer requested that a Senior Security Analyst create a search protocol, based on broad search terms provided by UTMB's Department of Legal Affairs, to locate all e-mails, state wide for approximately 139 individuals.  The search terms included the following:  "Heat, heat stress, heat exhaustion, heat illness, heat-related illness, heat cramps, heat stroke, heat death, hyperthermia, hot temperatures, air conditioning, AC, heat restrictions, Larry McCollum, Douglas Hudson, Robert Webb, Alexander Togonidze, Michael Martone, Kenneth James,

4

Rodney Adams, Albert Hinojosa." The protocol was sent, by affidavit, to Plaintiffs' counsel for review. See Exhibit 3.

To date, approximately 50 of the individuals' ESI have been searched, which has resulted in approximately 50,000 e-mails and/or attachments. Based on the information, it is anticipated that UTMB's search based on the current terms and individuals will reveal more than 100,000 relevant e-mails (not pages, but actual e-mails). UTMB anticipates that not all e-mails will be relevant. For example, the term "Adams" was used because two CMC physicians and one plaintiff are named Adams. The search, however, will return every e-mail for a medical employee or offender named Adams, not all of which will be relevant. The final financial cost to UTMB for the extensive searches and reviews of the e-mails has not yet been determined; however, UTMB has an estimate for the cost, which is significant.[3] .

In addition to initiating an internal search for ESI, UTMB made the voluntary decision to engage the discovery services of an outside law firm King & Spalding's Discovery Center (K&S) to conduct a forensic review of the e-mails located by UTMB's Department of Information Services – Security. Specifically, based on the volume of documents being identified with the broad search terms listed above, UTMB realized that it was necessary to get additional help to conduct the review and to help identify relevant documents. To date, K&S's review has not started because it is waiting on UTMB to finish searching for all e-mails based on the broad search terms. As soon as this process is complete, K&S can begin and anticipates that it will take up to 90 days to process to collect, review, and produce potentially responsive

---

[3] To the extent this Court needs additional information regarding the cost UTMB is incurring to engage the discovery services of K&S, UTMB respectfully requests that this Court grant leave so that UTMB can file the requested information under seal.

documents. As an alternative, K&S can also assist UTMB with rolling productions of relevant documents.

However, this process cannot begin until the parties have agreed on the search terms and individuals to search. Plaintiffs have requested additional terms and individuals, which is delaying the process. Accordingly, UTMB also requests that this Court provide guidance regarding the search for ESI so that this issue can be resolved.

Plaintiffs filed this Motion for Sanctions after discovery and production of Ms. Robison's e-mails, knowing that the K&S search was underway and that more documents would be forthcoming. Because Plaintiffs' motion was unnecessary, UTMB respectfully request that the Court deny Plaintiffs' motion.

## II.

## PLAINTIFFS' REQUEST FOR SANCTIONS

### A. Requirements of FED. R. CIV. P. 26(b)(2)(B)

The search being conducted by UTMB far exceeds what is required. Rule 26(b)(2)(B) specifically states that "[a] party need not produce discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden and cost." FED. R. CIV. P. 26(b)(2)(B). In response to Plaintiffs' interrogatories asking UTMB to identify all heat-related deaths from 1993 to the present, all heat-related injuries in any TDCJ facility in which UTMB rendered medical care from 1993 to the present, and all heat-related injuries at the Hutchins Unit from 1993 to the present, UTMB lodged objections. See D.E. 164-2 at 46. UTMB explained that searching for documentation potentially responsive to these requests would amount to an undue burden and hardship because it involves searching through the electronic medical records (EMR) of an ever-changing TDCJ inmate population over a 20-

year period. As outlined above, even refining the search in the ways in which UTMB has, it still imposes an undue burden and hardship on UTMB. Enormous expense and limited personnel are being utilized to conduct a search of potentially responsive ESI (that may have been retained beyond the established records retention schedule) that well exceeds the scope of Plaintiffs' allegations in this case and the other cases. Yet, in good faith and in an effort to ensure it produces all potentially relevant materials, UTMB has, on its own accord, initiated the new, additional search. Based on UTMB's current actions, UTMB respectfully asserts that sanctions are not warranted in this matter and asks the Court to allow the ESI discovery process it is currently utilizing to be completed.

**B.      Plaintiffs' Case Has Not Been Harmed**

Plaintiffs allege that they have been prejudiced as Defendants have failed to produce "an untold number of documents that Defendants should have produced with their initial disclosures or in response to discovery requests." D.E. 164-1 at 4. Plaintiffs further assert that they have "revealed strategy and expended hundreds of hours without access to key documents responsive to their claims," and that Defendants have "intentionally withheld information and documents in an effort to prejudice Plaintiffs." Id. Plaintiffs allege that they have "engaged multiple experts and prepared for and took numerous depositions" and "divulged trial strategy…and incurred significant expenses and attorneys' fees" because of the late disclosure of the e-mails. [D.E. 164-1at 9]. Specifically, Plaintiffs allege they were prejudiced because the emails demonstrate that "*TDCJ* did, in fact, communicate via e-mail regarding the heat…and that at least some UTMB nursing staff frantically sought help in caring for patients only to be ignored by those higher up the chain of command." (emphasis added). See D.E. 164-1 at 10.

7

As the history of discovery in this case reflects, UTMB has, in good-faith, satisfied its discovery obligations. Every time UTMB has been served with discovery requests, it has made reasonable inquiries into the requests and submitted responses and objections based upon the information received from personnel believed to have information relevant to the requests. Initially, UTMB's discovery responses were based upon information identified by unit-level personnel and Drs. Adams and Murray. As discovery, in this case and others, developed, UTMB broadened the scope of personnel contacted with respect to the requests. As a result, UTMB learned about additional information potentially relevant to Plaintiffs' discovery requests and promptly supplemented its discovery responses and objections to include the newly discovered information. This is what the Rules expect and require. See FED. R. CIV. P. 26(e)(1)(A).

UTMB has never denied that inmates in the TDCJ system suffered from or have died from heat related illness. UTMB simply contends that it does not have the statutory or contractual authority to require TDCJ to cool the prisons. In fact, plaintiffs acknowledge, admit and even assert that the e-mails confirm UTMB's position, which is that UTMB treated inmates for heat related illnesses and reported that information to TDCJ's Health Services Division.

**C.     Plaintiffs' Damages**

Plaintiffs assert that this case was filed in 2012. [D.E. 164-1 at 5]. This is not true. The case against UTMB was filed on April 5, 2013. This is significant for several reasons. Plaintiffs claim they have incurred more than $300,000 in attorneys' fees and expenses. Plaintiffs imply from the affidavit of Jeff Edwards that defendant UTMB should pay all or part of plaintiffs' fees and expenses. This seems particularly unjust in light of the evidence. First, this $300,000 presumably includes work which will be used in each of the eight cases, without incurring any additional expense to discover. Discovery in the other cases is in its infancy, also with qualified immunity

motions pending. The parties have agreed that depositions taken in one case can be used in other cases as well. Plaintiffs' have not identified any work they would not have done had they known about the Robison e-mails.

Further, of the 14 depositions taken in this case, six were taken by plaintiffs either before UTMB was a party to the case, or of fact witnesses at the unit level. Three were the plaintiffs. Two were plaintiffs' experts, whose deposition fees are being paid by UTMB. The remaining two were UTMB physicians (one was deposed twice). Both of those physicians can be made available for re-deposition, if necessary.

Contested motions have been filed in this case. But none of those involved the e-mails in question. Once the e-mails were identified in the *Webb* case, the emails were immediately provided to plaintiffs. While plaintiffs' complaint about the late discovery of the e-mails is understandable, plaintiffs have not presented evidence to support their claims for money damages as a result of the late discovery.

**D. Some Of Plaintiffs' Contentions Are Simply Untrue**

1. Plaintiffs contend that "Defendants represented that they had virtually no e-mails discussing heat in Texas prisons and that even high-level prison administrators rarely used e-mail." [D.E. 164-1 at 6]. Plaintiffs then dropped a footnote acknowledging that UTMB did not make this contention, and was not even a party yet when *TDCJ* made this statement. Throughout the motion, plaintiffs refer to "defendants" generally, knowing that most of the allegations are not against UTMB, but rather TDCJ. This is misleading to the court, as it requires the court to intuit whether plaintiffs are referring to TDCJ or UTMB. There are more examples which are not cited here, but

Plaintiffs' motion seems to intentionally blend the parties together to mislead the court.

2. Plaintiffs complain that UTMB did not initially disclose the Robison e-mails, and allege that UTMB responses to written discovery were "false". As explained above, UTMB's responses to discovery were true at the time they were made, and UTMB disclosed the e-mails immediately upon discovery. See Exhibit 4. Rule 26(e)(1)(A) anticipates that parties may respond to discovery, then learn that the disclosure is incomplete or incorrect in a material manner. The rule requires that the party must supplement or correct its disclosure or response. The case law adds the requirement that the supplementation be done "promptly". *Reed v. Iowa Mar. & Repair Corp.*, 16 F.3d 82, 84-85 (5th Cir.1994). A prompt supplementation is exactly what UTMB has done.

3. In addition, UTMB included names of individuals that it was quickly able to identify from the Robison e-mails in its initial disclosures. See Exhibit 5. Plaintiffs attached the supplementation as an exhibit, but omitted the pages listing the witnesses.

4. Now that the Robison e-mails have come to light, Plaintiffs' attorneys contend that UTMB has refused to confer about a new search plan or protocol. This is simply not true. On May 8, 2014, UTMB provided plaintiffs with the affidavit of Mr. Bob Shaffer describing the protocol UTMB was using to identify more e-mails like the Robison e-mails. In conversations before and after the affidavit was provided, UTMB urged plaintiffs' counsel to *read* the affidavit. In a particularly heated conversation, UTMB urged counsel to reserve judgment until the K&S search was completed. Then, UTMB suggested, if the 100,000 plus documents from 139 custodians still

    seemed inadequate in some way, UTMB promised to broaden the protocol again. Counsel for plaintiffs refused this offer, filed this motion 2 days later, and represented to the court that "plaintiffs have been the victims of defendants' "gamesmanship" and that UTMB has refused "to have a meaningful conversation." [D.E. 164-1 at page 4].

5. Further, plaintiffs claim a particular urgency to this sanctions request representing that this case is set for trial in November 2014. Again, this is not true, and was not true at the time this motion was filed. On May 5, 2014 this court stayed all of the pending deadlines in this case, including trial. [D.E. 162]. Plaintiffs filed this motion on May 12, 2014. Again, plaintiffs' representation about a trial setting is misleading to the court. The stay allows UTMB additional time to fully recover and produce the e-mails, and provides sufficient time for plaintiffs to depose any additional witnesses.

### III.

### RULES 16, 26 & 37

    In responding to discovery, Fed. R. Civ. P. 26(e)(1)(A) requires counsel to supplement reasonably any discovery response if the party learns that in some material respect the disclosure or response contains information upon the basis of which the party knows that the response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. *See also Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 84 (5th Cir. 1994). A court may assess attorney's fees when a party has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–259 (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116 (1974)). *See also Hall v. Cole*, 412 U.S. 1, 5 (1973); *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 n.4 (1968) (per curiam). In

this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party, as it may when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Hutto v. Finney*, 437 U.S. 678, 690 (1978).

In this case, there is no evidence that UTMB believed that its discovery responses were incomplete at the time they were made. There is no evidence that UTMB acted in bad faith, or that it failed to seasonably supplement discovery. Therefore, there is no basis for an award of discovery sanctions under Rule 16 or Rule 26.

Similarly, Rule 37(a)(5)(A) provides that if a discovery motion is filed and granted, or if the disclosure or requested discovery is provided after the motion was filed, the court must require the party whose conduct necessitated the motion to pay the movant's reasonable expenses, including attorney's fees incurred in making the motion. However, the court must not order this payment if the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; or if the party's non-disclosure, response, or objection was substantially justified; or if other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A).

In this case, UTMB discovered the Robison e-mails and produced them. There was no discovery motion filed or pending as required by Rule 37(a)(5)(A) to award sanctions. In fact, the evidence before the court is that plaintiffs filed this motion in bad faith, knowing that an exhaustive search was underway, that the search had already identified more than 45,000 potential e-mails, and knowing that an outside forensic document examiner had been hired.

In their motion, plaintiffs have categorized UTMB's' conduct as "gamesmanship" and in "cavalier disregard of their discovery obligations." [D.E. 164-1 at 4]. Such characterization of a

party opponent's conduct should be sparingly employed by counsel and should be reserved for only those instances in which there is a sound basis in fact demonstrating a party's deliberate and intentional disregard of an order of the court or of obligations imposed under applicable Federal Rules of Civil Procedure. *Dondi Properties Corp. v. Commerce Sav. And & Loan Ass'n*., 121 F.R.D. 284, 289 (N.D. Tex. - Dallas 1988). "Such allegations, when inappropriately made, add much heat but little light to the court's task of deciding discovery disputes."

Although there are recognized instances of lack of communication or miscommunication among counsel, there is no showing of intentional or willful conduct on the part of UTMB which warrants sanctions under Rules 26 or 37. However, the disputes which exist amply demonstrate an inadequate utilization of Local Rule 7.1(a). In part, Local Rule 7.1(a) reads as follows: "Before filing a motion, an attorney for a moving party shall confer with the counsel of all parties affected by the requested relief to determine whether or not the contemplated motion will be opposed." The purpose of the conference requirement is to promote a frank exchange between counsel to resolve issues by agreement or to at least narrow and focus the matters in controversy before judicial resolution is sought. *Dondi*, 121 F.R.D. at 289. In this case, a frank, although heated, discussion was had. But, before heads had cooled, plaintiffs filed this motion, even as discussions continued and do to this day. See Exhibit 6.

If the court determines that sanctions in this case are appropriate, UTMB prays that the sanction be tailored to fit the particular wrong; and that the court carefully choose sanctions that foster the appropriate purpose of the rule, depending on the parties, the violation, and the nature of the case." *Thomas v. Capital Security Svcs., Inc.*, 836 F.2d 866, 877 (5th Cir. 1988)[4]. In

---

[4] While *Thomas* dealt only with Rule 11 sanctions, it is instructive as to the nature and standards of sanction powers and review in general, despite the obvious procedural differences among the

*Thomas* and its progeny, the Fifth Circuit discerned four factors which the trial court's findings must reflect, the specificity of which is calculated according to *Thomas's* "sliding scale," in ordering sanctions. *See, e.g.*, Akin v. Q-L Investments, Inc., 959 F.2d 521, 534–35 (5th Cir. 1992) (large sanction required specific factual findings as to factors used to consider appropriate sanction, alternative sanctions considered, and reason for choosing particular sanction); *Jennings v. Joshua Indep. Sch. Dist.*, 948 F.2d 194, 196–99 (5th Cir. 1991) (vacating "arbitrary" and "cryptic" decision to award half of claimed attorney's fees; holding instead that amount of Rule 11 sanctions should be tied directly to expenses directly caused by violation); *Willy v. Coastal Corp.*, 915 F.2d 965, 968 (5th Cir. 1990) (affirming sanction award supported by district court's findings of "causal relationship" between attorney's conduct and amount of sanctions imposed); *Bogney v. Jones*, 904 F.2d 272, 274 (5th Cir. 1990) (noting that sanction amount must be tied to the precise Rule 11 violation at issue); *Truck Treads, Inc. v. Armstrong Rubber Co.*, 868 F.2d 1472, 1475 (5th Cir.1989) (reversing portion of attorney fee award that was not directly caused by the Rule 11 violation); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1173 (5th Cir. 1988) (reversing sanctions award because trial court did not explain how it arrived at specific figure); *Ho v. Martin Marietta Corp.*, 845 F.2d 545, 549 (5th Cir. 1988) (vacating attorney fee award because trial court did not identify specific act committed by plaintiff that warranted sanctions); *Smith Int'l, Inc. v. Tex. Commerce Bank*, 844 F.2d 1193, 1202 (5th Cir. 1988) (directing trial court to apportion sanctions among offending appellants to reflect individual rule violations of each).

---

sanction provisions at issue in this case ( e.g., Rule 11 deals with claims and pleadings in general, while Rules 26(g) and 37 deal only with discovery abuses).

The four factors are:

(1) What conduct is being punished or is sought to be deterred by the sanction? It is axiomatic that the court must announce the sanctionable conduct giving rise to its order.

(2) What expenses or costs were caused by the violation of the rule? The district court must demonstrate some connection between the amount of monetary sanctions it imposes and the sanctionable conduct by the violating party. *See Thomas*, 836 F.2d at 879; *Willy v. Coastal Corp.*, 855 F.2d 1160, 1173 (5th Cir. 1988), appeal after remand, 915 F.2d 965 (1990); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974).

(3) Were the costs or expenses "reasonable," as opposed to self-imposed, mitigatable, or the result of delay in seeking court intervention? "A party seeking [costs and fees for defending against frivolous claims] has a duty to mitigate those expenses, by correlating his response, in hours and funds expended, to the merit of the claims," *Thomas*, 836 F.2d at 879, as well as by giving notice to the court and the offending party promptly upon discovering the sanctionable conduct. *See Chapman & Cole v. Itel Container Int'l B.V.*, 865 F.2d 676, 684 (5th Cir. 1989). The Court's findings must reflect some consideration of the reasonableness of the non-violating party's actions in connection with the sanctionable conduct.

(4) Was the sanction the least severe sanction adequate to achieve the purpose of the rule under which it was imposed? In *Boazman v. Economics Laboratory, Inc.*, 537 F.2d 210, 212–213 (5th Cir.1976), followed in *Thomas*, 836 F.2d at 878, we ruled that district courts must demonstrate that sanctions are not vindictive or overly harsh reactions to objectionable conduct, and that the amount and type of sanction was necessary to carry out the purpose of the sanctioning provision. *See also Akin v. Q–L Investments, Inc.*, 959 F.2d 521, 534–535 (5th Cir.1992). *Topalian v. Ehrman*, 3 F.3d 931 (5th Cir. 1993).

## IV.

## REQUEST FOR SANCTIONS SHOULD BE DENIED

Plaintiffs filed this motion for sanctions knowing that more exhaustive searches were underway. Plaintiffs have given, and UTMB has accepted, multiple suggestions about how the discovery for ESI will be conducted, and how it will be produced to the parties. Despite Plaintiffs' counsel's representations to the contrary, UTMB has allowed Plaintiffs to participate in the search. Plaintiffs have been asked to delineate any terms and individuals they believe should be added to the search. On May 23, 2014, Plaintiffs forwarded a letter reflecting the individuals and terms they would like added to UTMB's search. Exhibit 7. As the letter reveals, Plaintiffs requests far exceed the scope of the facts and circumstances surrounding McCollum's case or the other cases.

In fact, Plaintiffs have requested UTMB to search the ESI of 258 individuals[5] and to include four pages of additional search terms which are overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Again, this case is a suit solely about the facts and circumstances surrounding the McCollum's incarceration at the Hutchins State Jail and UTMB's alleged failure to reasonably accommodate his alleged disabilities by failing to provide him safe housing, e.g., an air-conditioned housing assignment. This case is not a class action; and Plaintiffs' counsel's intent to prosecute them as such must be curtailed. Clearly, Plaintiffs' current request to expand the search constitutes a fishing expedition.

While UTMB is willing to include additional individuals and search terms that are reasonably related to plaintiffs' claims, it asks that the Court set parameters as to which additional search terms and individuals are necessary. The cost of the search is already great.

---

[5] Plaintiffs have requested that all medical staff at the Hodge, Hutchins, Huntsville, Gurney, Michael, and Garza West Units. There are 247 employees that qualify under the description.

Plaintiffs' current search request would be an undue burden and hardship on UTMB's limited resources. Moreover, the search of the listed 139 individuals utilizing the 21 identified search terms is already underway. To date, searches of approximately 50 of the 139 individuals' accounts have been completed. Adding additional terms means that the search will have to begin anew. This only further delays the process. Therefore, as previously set forth above, UTMB respectfully requests that this Court provide limitations and guidance regarding this search so that UTMB can begin the process.

## V.

## MOTION FOR ESI DISCOVERY ORDER

Magistrate Judge Love, in the Eastern District, issued an order relating to electronic discovery. Exhibit 8. This order is pending in *Webb*, *Adams*, and *Togonidze*. UTMB asks this court to adopt the orders in this case. The orders would provide certainty and continuity for the parties and consistency of rulings for the parties and the courts. Plaintiffs oppose this motion.

    Respectfully submitted,

    GREG ABBOTT
    Attorney General of Texas

    DANIEL T. HODGE
    First Assistant Attorney General

    DAVID C. MATTAX
    Deputy Attorney General for
    Defense Litigation

    KAREN D. MATLOCK
    Assistant Attorney General
    Chief, Law Enforcement Defense Division

    /s/KIM COOGAN
    KIM COOGAN
    Assistant Attorney General
    State Bar No. 00783867

P. O. Box 12548, Capitol Station
Austin, Texas 78711

ATTORNEYS FOR DEFENDANT
UNIVERSITY OF TEXAS MEDICAL BRANCH

NOTICE OF ELECTRONIC FILING

I, KIM COOGAN, Assistant Attorney General of Texas, certify that I have electronically submitted for filing **Defendant UTMB's Brief In Support of Response to Plaintiffs' Motion for Discovery Sanctions, Request for Show Cause Order and Motion to Compel**, on May 27, 2014 in the Northern District of Texas, Dallas Division.

/s/ KIM COOGAN
KIM COOGAN
Assistant Attorney General

CERTIFICATE OF SERVICE

I, KIM COOGAN, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Defendant UTMB's Brief In Support of Response to Plaintiffs' Motion for Discovery Sanctions, Request for Show Cause Order and Motion to Compel** has been served by placing same in the United States Mail on this the 27th day of May, 2014, addressed to:

Jeff Edwards
Scott Medlock
The Edwards Law Firm
1101 E. 11th Street
Austin, Texas 78702

Brian McGiverin
c/o TRLA
4920 N. IH-35
Austin, Texas 78751

Bruce R. Garcia *Via Hand-Delivery*
Office of the Attorney General
P. O. Box 12548, Capitol Station
Austin, Texas  78711

Demetri Anastasiadis *Via Hand-Delivery*
Office of the Attorney General
P. O. Box 12548, Capitol Station
Austin, Texas  78711

/s/KIM COOGAN
KIM COOGAN
Assistant Attorney General