UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, *et al.*, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | No. 3:12-cv-02037 |
| | § | |
| BRAD LIVINGSTON, *et al.*, | § | |
|     Defendants. | § | |

### RESPONSE TO PLAINTIFFS' MOTION FOR SANCTIONS

NOW COME the Texas Department of Criminal Justice, Robert Eason, Jeffrey Pringle, Sandrea Sanders, Karen Tate and Richard Clark, by and through the Attorney General of Texas, and submit their response to Plaintiffs' motion for sanctions.[1] This response is joined by Brad Livingston. In support of their response, TDCJ, Eason, Pringle, Sanders, Tate, Clark and Livingston attach the following exhibits, which are incorporated herein by reference:

    Ex. 1    Declaration of Bruce R. Garcia

    Ex. 2    Declaration of Cynthia N. Milne

    Ex. 3    Plaintiff's initial disclosures

### I.  SUMMARY

Neither Defendants nor their counsel dispute their discovery obligations under FED. R. CIV. P. 26. Nor do they dispute that—until recently—they have failed to meet those obligations with regard to the full extent of involvement by the TDCJ Health Services Division relating to the issues alleged in Plaintiffs' suit and with regard to the production of e-mails between some TDCJ officials and the Health Services Division. Both Defendants' counsel and TDCJ's Office of General Counsel acknowledge and accept responsibility for these shortcomings and are working with Plaintiffs' counsel to remedy the issue.

---

[1] D.E. 164.

As shown below, however, Defendants' shortcomings were the result of inadvertent oversight, and were not the result of any deliberate or knowing withholding of information. Moreover, the alleged harm is significantly overstated in light of the fact that Plaintiffs themselves disclosed the individual whose non-disclosure is one basis for their motion. Defendants contend that Plaintiffs' motion is premature and unwarranted in light of the facts that Plaintiffs were aware that TDCJ was in the process of curing the defect at the time they filed this motion. Further, Defendants were forthcoming with Plaintiffs' counsel following the discovery of undisclosed information. As shown below, this matter both could have and would have been resolved without the need for Court intervention.

## II. FACTS

### A. Facts relevant to e-mail production

This case was filed in June 2012, and was assigned to Assistant Attorney General Bruce Garcia.[2] Discovery was first served on Defendants in November 2012.[3] Garcia, following routine operating procedures, consulted with the Office of the General Counsel for TDCJ.[4] The Office of General Counsel assigned an attorney within its office to serve as a liaison on the case.[5] When the specific issue of e-mails of TDCJ executive officials was raised by Plaintiffs' counsel, Garcia conferred with TDCJ-OGC on the issue, and it was communicated that these officials had no responsive e-mails. This was consistent with Garcia's experience and general belief that TDCJ executive officials do not frequently communicate via e-mail. No other documents or materials at the time indicated otherwise.

---

[2] Ex. 1 at 1.
[3] *Id.*
[4] *Id.*
[5] *Id.*

B.    **Facts relevant to TDCJ Health Services Division**

The TDCJ Health Services Division is not a frequent target of litigation. The Division does not provide medical care to offenders, but serves as the representative for TDCJ on the Correctional Managed Health Care Committee, which includes the contracted health-care providers, the University of Texas Medical Branch and the Texas Tech University Health Sciences Center. The Health Services Division ensures access to care, monitors the quality of care, investigates medical grievances and conducts operational review audits of health care services at TDCJ facilities.[6] Dr. Lannette Linthicum is director of the Health Services Division.

With few exceptions, medical claims brought under 42 U.S.C. § 1983 by TDCJ offenders relate to complaints regarding their individual treatment and are therefore directed at the individual doctors, nurses, physician assistants and other providers employed by UTMB and TTUHSC. Even lawsuits challenging certain health care policies rarely focus on the Health Services Division because the policies are formulated jointly by the Correctional Managed Health Care Committee. As a result, neither Defendants' counsel, the Office of the Attorney General, nor TDCJ-OGC, have frequent contact with the Health Services Division or occasion to know the details of their daily activities. As a result, neither Defendants' counsel nor TDCJ's assistant general counsel were aware that the Health Services Division played any role in tracking and monitoring heat-related illnesses on TDCJ units.

C.    **Plaintiffs' knowledge of undisclosed witnesses and information and failure to object to discovery responses.**

Plaintiffs claim to have been prejudiced by Defendants' non-disclosure of relevant e-mails and information, particularly from the Health Services Division. But Dr. Linthicum's position, the role of the Health Services Division and the general duties of the Division were

---

[6] http://www.tdcj.state.tx.us/divisions/hs/health_preventive_medicine.html

known to Plaintiffs and were in fact disclosed by Plaintiffs as early as Nov. 2, 2011.[7] Yet Plaintiffs served no discovery specifically targeted at the Health Services Division, Dr. Linthicum, nor any other member of the Health Services Division.

Plaintiffs did, however, send discovery directed at TDCJ. As relevant here, Plaintiffs requested information relating to "all heat related injuries of inmates between Jan. 1, 1990, to present" and heat-related injuries to TDCJ employees since Jan. 1, 2002.[8] Defendants objected that the requests were overbroad, unduly burdensome and not limited in time or scope. In addition, Defendants asserted that responding to Plaintiffs' improper requests would invade the medical privacy rights of both the offenders and the officers involved. After the Court overruled the Defendants' objections, the documents were disclosed.[9]

**D.   Discovery of undisclosed information and witnesses and subsequent actions.**

Defendants' counsel and TDCJ's Office of General Counsel first became aware in late April 2014 that some witnesses and some information had not been disclosed.[10] As correctly noted in Plaintiffs' motion, the UTMB defendants compiled and disclosed a series of e-mails relevant to heat issues. Counsel for UTMB noted to Defendants' counsel that the disclosures included e-mails between UTMB officials and officials in the TDCJ Health Services Division.

A meeting was convened on April 16 between all defense counsel to discuss pending issues and to determine who would represent Dr. Linthicum in this and related litigation. Defendants' counsel and TDCJ's Office of General Counsel promptly initiated a search for the previously undisclosed e-mails.[11] The search included five of the relevant senior and mid-level

---

[7] Ex. 3 at 5-6.
[8] D.E. 164 at Ex. 2
[9] *See*. Ex. 2 at ¶ 7.
[10] *See generally*, Ex. 2.
[11] *Id*. and D.E. 164 at Ex. 28

4

executives, and was expanded to a sixth a short time later.[12] It also included 16 different search terms to capture the relevant information.[13] It was not until this meeting that the Health Services Division's involvement with heat-related issues was first brought to the attention of Defendants' counsel. It was determined that Dr. Linthicum would be represented by Garcia.

On May 1, 2014, Garcia met with Dr. Linthicum to discuss her involvement with heat-related issues, as well as her deposition, then set for May 13. During this meeting, Dr. Linthicum discussed her e-mails and additional information indicating that the Health Services Division played a significant role in monitoring and tracking heat-related injuries. Garcia requested copies of the documents and available attachments. The same day, Garcia contacted Plaintiffs' counsel to inform him that Dr. Linthicum had far more relevant documentation and knowledge than previously known, and that it would not be productive to depose her on May 13 due to the fact that documentation she possessed had not yet been obtained or provided to Plaintiffs' counsel.[14] Garcia suggested that the most productive course of action would be to obtain the relevant materials from Dr. Linthicum, disclose them to Plaintiffs, give counsel time to review them and depose Dr. Linthicum at a later date.[15]

On May 2, 2014, at Plaintiffs' request, Garcia and his co-counsel[16] had a telephone conference with Plaintiff's counsel. Plaintiffs' counsel demanded assurances and details regarding the current and on-going search being conducted of e-mail accounts and other electronic discovery, and demanded participation and access to the on-going search. Garcia reiterated his suggestion that the best course of action would be to allow TDCJ's Office of

---

[12] *Id.*
[13] *Id.*
[14] Ex. 1 at 2.
[15] *Id.*
[16] Demetri Anastasiadis, who filed his appearance on behalf of Livingston on Aug. 20, 2013, nine months after the suit was filed. *See* D.E. 77.

General Counsel to complete its search, disclose the relevant results and disclose to Plaintiff the relevant technical information used to create the search. After this was complete and after Plaintiffs' reviewed the results, Garcia suggested the issue could be revisited if Plaintiffs believed additional searches were necessary. Plaintiffs' counsel's representation in his certificate of conference[17] regarding this motion is misleading: At no time did Garcia indicate that Defendants would not cooperate or confer with Plaintiffs' counsel regarding search parameters or additional search terms, but only that the discussion was premature and should be revisited after viewing the initial results. Defendants did not even ask that Plaintiffs incur any costs for any future searches, even though they are very expensive and time-consuming.

During the May 2 telephone conference, Plaintiffs' counsel also made a series of inquiries regarding technical issues regarding the storage of data which was well beyond the expertise or knowledge of any of the defense counsel present at the phone conference. These inquiries persisted after responding several times that no one on the call had sufficient technical knowledge to answer Plaintiffs' counsel's questions. The conversation soon devolved and the call was terminated.[18]

The following week, Plaintiffs sent written correspondence again demanding immediate inclusion into the inner working of TDCJ's search for electronic materials, and demanding depositions of information technology personnel.[19] Counsel for Defendants again suggested that the most efficient course of action was to allow TDCJ to complete its search, disclose the results, and then discuss any additional search terms and individuals either party felt were necessary.[20] At no time did Defendants' counsel suggest or imply that TDCJ would not cooperate or confer

---

[17] D.E. 164 at 4.
[18] D.E. 164 at Ex. 24.
[19] D.E. 164 at Ex. 31
[20] D.E. 164 at Ex. 32.

with Plaintiffs' counsel regarding search perimeters, additional search terms, or additional accounts to be searched.

Plaintiffs' motion for sanctions was filed before Defendants' production of, or Plaintiffs' review of, the e-mails and materials located during Defendants' initial search of e-mail accounts.

It should also be noted that the course of action currently being followed is directly in line with what counsel for Defendants' suggested all along. The initial batch of responsive e-mails has been produced to Plaintiffs who are, upon information and belief, reviewing them. Together the parties will identify any additional individuals who have worked on issues related to heat illness and the parties also will identify additional search terms that might produce relevant results. A meeting has been scheduled with counsel for all parties on June 3, 2014, to monitor progress and ensure that Plaintiffs have direct input into the process. This would have occurred either with or without Court intervention.

### III. ARGUMENT

Plaintiffs are not clear under what grant of authority they seek the Court to enter an order of sanctions. Two theories are relevant here: the Court's inherent power to issue sanctions for discovery abuses and the Court's power under FED. R. CIV. P. 26(g). As the legal standards are different for imposing sanctions under these provisions, they will be addressed separately.

**A.  Sanctions pursuant to the Court's inherent power.**

The inherent powers of the Court are those which "are necessary to the exercise of all others."[21] The contempt sanction is the most prominent inherent power "which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court."[22] The Fifth Circuit has recognized that the inherent power

---

[21] *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980).
[22] *Id.*

"is necessarily incident to the judicial power granted under Article III of the Constitution."[23] When inherent powers are invoked, however, they must be exercised with "restraint and discretion."[24] The court "must make a specific finding of bad faith" to impose sanctions under its inherent power.[25]

Plaintiffs do not appear to be making an allegation of bad faith, and the evidence does not support one. Plaintiffs have specifically averred that they do not believe Garcia knowingly misrepresented the facts when informing them of the absence of e-mails.[26] Moreover, there was no deliberate or knowing attempt either to hide or to obscure the role of the Health Services Division with regard to tracking and monitoring heat-related illness. As noted above, the TDCJ Health Services Division is rarely the subject of litigation and it was not known by Defendants' counsel or TDCJ's Office of General Counsel the extent to which the Division was involved in heat-related issues. Moreover, Garcia immediately contacted Plaintiffs' counsel after meeting with Dr. Linthicum and after discovering the fact and the scope of the Health Services Division's involvement. As such, there is no evidence of sufficient for the Court to enter a sanction pursuant to its inherent power.

**B.  Sanctions under Rule 26(g).**

Rule 26(g) requires an attorney to certify that each discovery disclosure, "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry," is "complete and correct as of the time it is made."[27] "If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the

---

[23] *Gonzalez v. Trinity Marine Group, Inc.*, 117 F.3d 894, 898 (5th Cir. 1997).
[24] *Id.*
[25] *Toon v. Wackenhut Corrections Corp.*, 250 F.3d 950, 952 (5th Cir. 2001).
[26] *See* D.E. 164 at Ex. 1, 33
[27] FED. R. CIV. P. 26(g)(1).

signer, the party on whose behalf the signer was acting, or both."[28] When invoking Rule 26(g) as a basis for sanctions, the district court must specify which discovery certification was sanctionable.[29] The duty to make a 'reasonable inquiry' is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. It is an objective standard similar to the one imposed by Rule 11. . . . Ultimately what is reasonable is a matter for the court to decide on the totality of the circumstances.[30]

As applied to the totality of circumstances of this litigation, Defendants' counsel's conduct, though flawed, was excusable where the failure to sooner disclose relevant information was the product of incorrect understanding and not the product of an intent to deceive or hinder this litigation.

### 1. E-mails.

Defendants' counsel relied on the information provided by TDCJ's Office of General Counsel regarding the existence of responsive e-mails from the executive defendants. The response that there were no responsive e-mails was consistent with counsel's experience with interacting with these officials, who typically communicate by phone or face-to-face. In this regard, the failure to identify responsive e-mails at an earlier date was not due to any intent to deceive or delay.

### 2. Health Services Division.

As noted above, the TDCJ Health Services Division is not frequently the target of litigation. As a result, neither the Office of the Attorney General nor TDCJ's Office of General

---

[28] FED. R. CIV. P. 26(g)(3).
[29] *Sheets v. Yamaha Motors Corp.*, 849 F.2d 179, 185 (5th Cir. 1988) ("We do not search the record for an order that might possibly support the district court's $25,000 award under Rule 37(b)(2) because this may not be the portion of the record upon which the court relied."). *See also Ibarra v. Baker*, 338 Fed.Appx. 457, 470-71 (5th Cir. 2009).
[30] *Chapman & Cole v. Itel Container Intern. B.V.*, 865 F.2d 676, 686 (5th Cir. 1989) (*citing* FED. R. CIV. P. 26(g) Advisory Committee is note (1983)).

Counsel frequently correspond with the Health Services Division and none of Defendants' counsel had significant experience with activities conducted by the division. While Defendants' counsel knew that the TDCJ Health Services Division was the third of the three-member Correctional Managed Health Care Committee, they had next to no knowledge of the inner workings and duties of the Division where most of the litigation in which the Health Services Division has been involved focused on Correctional Managed Care policy. This litigation is unique insofar as Plaintiffs claim that a condition of TDCJ facilities may cause adverse health effects among some offenders. While there has been litigation over both systemwide medical treatment issues and CMC policy matters, there have been no cases where the condition of the facilities themselves allegedly have been the cause of health issues. In this regard, the monitoring and tracking done by the Health Services Division has rarely, if ever, been at issue. As a result, Defendants' counsel were simply unaware of the nature and extent of the Health Services Division's role in tracking and monitoring heat-related illness.

Defendants' counsel contend that their conduct after learning that it failed in its disclosure obligations is distinguishable from conduct where severe sanctions have been justifiably imposed. The failure of Defendants' counsel and TDCJ's general counsel to identify and appreciate the level to which the Health Services Division was involved in the tracking of heat-related illness is manifest and undisputed. It was not, however, the product of a deliberate withholding or an intent to deceive where it is undisputed that counsel informed Plaintiff of the issue the same day the scope of the omission was discovered. In this regard, Defendants' conduct was not willful or intentional and sanctions are not justified.

**C.      Harm to Plaintiffs.**

Plaintiffs have greatly overstated the harm to which they have suffered due to the acknowledged oversights. Only four of the depositions conducted of TDCJ officials will likely need to be reopened. Plaintiffs' generalized claims of prejudice are also unsupported. Finally, the evidence Plaintiff is seeking will have little or no probative value, as most of it relates to events that occurred after McCollum's death.

**1.      Previous knowledge by Plaintiffs.**

As noted above, Plaintiffs' themselves disclosed Dr. Linthicum as a witness in this case. Her existence, her position, or her role as Director of TDCJ Health Services cannot reasonably have come as a surprise to Plaintiffs. In fact, Plaintiffs' counsel have sued Dr. Linthicum in a virtually identical case alleging heat-related death.[31] This is not to say that Defendants were under no duty to disclose certain relevant materials and individuals in addition to Dr. Linthicum under FED. R. CIV. P. 26, or, as acknowledged throughout this response, that relevant materials should not have been disclosed sooner. But Plaintiffs' claims of "gamesmanship" and having to "litigate in the dark" are significantly exaggerated in light of their previous knowledge of Dr. Linthicum.

**2.      Depositions.**

Plaintiffs have greatly overstated the harm they have suffered in this litigation. No dispositive motions have been filed and all deadlines have been previously stayed.[32] Defendants are unopposed to reopening discovery to permit Plaintiffs to conduct additional discovery and to reopen certain depositions. But only a small number of the 14 depositions likely would be affected by the additional information at issue here. Of the 14 depositions taken, 10 were TDCJ

---

[31] *See Martone, et al. v. Livingston, et al.*, No. 3:13-cv-283 (S.D. Tex.)
[32] D.E. 162.

witnesses, many of whom had no dealings or knowledge of systemwide heat-illness monitoring. For example, three of the 10 were TDCJ security officers at the Hutchins Unit who responded to the scene when McCollum was found ill. None of them have any knowledge of systemwide issues related to heat monitoring and their testimony would have been the same. The same is true for two witnesses deposed from TDCJ facilities management as well as the Hutchins Unit Risk Manager. Defendants agree that depositions of the four senior TDCJ officials in the chain of command from warden and above will likely have to be reopened, and TDCJ is unopposed to bearing the cost for doing so.[33] Plaintiffs have yet to depose any witnesses from the Health Services Division, including Dr. Linthicum, and will have every opportunity to do so.

    **3.    General claims of harm.**

Plaintiffs' claim that they have needlessly spent "hundreds of thousands of dollars" and have been forced to "reveal[] trial strategy" is dubious. No information has been gleaned from any of the depositions or discovery in this case so far that has surprised Defendants' counsel, and none of it would not otherwise have been apparent had Plaintiffs received the relevant materials at an earlier date. Moreover, Plaintiffs' counsel was not entirely unaware of the nature of the work done by the Health Services Division or Dr. Linthicum. She was disclosed as a witness in January 2014, Defendants and, as noted above, Plaintiffs' counsel have named her as a defendant in other heat-related litigation. Additionally, Plaintiffs have not specified what work or costs they incurred, but only baldly claim they would not have had incur such expenses had they received more timely and complete disclosures. While certain matters will no doubt be revisited, the scale of the harm claimed by Plaintiffs is more for effect than reality.

---

[33] This includes Defendants Pringle (warden), and Eason (regional director) as well as Thaler (former director of the Correctional Institutions Division) and Stephens (former deputy director of the Correctional Institutions Division and current director).

### 4. Probative value of material not disclosed.

Much of what Plaintiffs seek is irrelevant to the purported reason for which they seek it. Non-targeted discovery served on TDCJ, must relate to the claim for they are being sued—specifically, they *intentionally discriminated* against McCollum by failing to accommodate his disabilities under the Americans with Disabilities Act. Plaintiffs seek a host of e-mails and documents to determine "to what extent the Defendants knew of the dangers faced by people like Mr. McCollum who suffer from disabilities that make them more susceptible to heat stroke."[34]

Viewed in this light, only a comparatively small number of documents would actually be probative for Plaintiffs' ostensible purpose. Virtually none of the documents that post-date McCollum's death provide relevant knowledge or insight as to TDCJ's belief or knowledge of heat-related issues before his death. TDCJ does not dispute that a number of inmates died during the historically hot summer of 2011. In the months that followed, a number of agency officials gathered information implemented remedial measures. But none of this process has any bearing on TDCJ's knowledge or intent before McCollum's death. A review of the 11 examples of information cited in Plaintiffs' motion, only three predated McCollum's death and contain information probative as to TDCJ's knowledge regarding heat injury. Substantive remedial measures are admissible to prove culpable conduct, but only for the limited purposes of impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures.[35]

Finally, although TDCJ does not dispute that there is a significant amount of material to be disclosed, it must be noted that much of the information Plaintiffs seek would go toward

---

[34] D.E. 164-1 at 6.
[35] Only TDCJ is sued under the Americans with Disabilities Act. *See* FRE 407. This is not to say that Rule 407 is grounds for objecting to disclosure, only to say that there can be only minimal harm to not timely disclosing material that has minimal probative value and marginal admissibility.

proving a point not in dispute in this litigation. TDCJ has always known of the high temperatures within its prisons and has always regarded it as a potential risk to the health and safety of offenders.

**D.     Attorney's fees.**

Rule 37 provides that when a motion to compel discovery is granted, the Court "must" also order "the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both" to pay the movant's reasonable expenses, including attorneys' fees.[36] An award of attorneys' fees is not warranted, however, if: (1) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action, (2) the opposing party's objection was substantially justified, or (3) other circumstances make an award of expenses unjust.[37]

Plaintiffs' claims for attorney's fees should be denied because, as noted above, this motion is entirely premature and court action is unnecessary. As soon as this issue was discovered, Defendants' counsel initiated their own efforts to search its various e-mail systems for responsive information and to gather documents and information from the Health Services Division for disclosure. Plaintiffs have consistently demanded inclusion and intervention in a process that already was under way and Defendants' counsel have consistently maintained that the most efficient and productive course of action is to complete this initial search, allow Plaintiffs to review the results and then jointly identify areas in which additional discovery is required.[38]

In fact, this refinement of discovery is already occurring, as the initial results have been disclosed to Plaintiffs and the parties are cooperating on the subsequent searches. This process

---

[36] FED. R. CIV. P. 37(a)(5)(A).
[37] *Id.*
[38] *See* D.E. 164 at Exs. 28, 31 and 32.

14

could have occurred entirely without the need for this motion, or the $28,550 Plaintiffs allegedly spent to create it, which in any case is greatly in excess of the attorney's fees limitations provided in the Prison Litigation Reform Act.[39]

Other circumstances also cut against an award of expenses. As noted throughout this response, Defendants' counsel have been forthright with Plaintiff from the very time the disclosure deficiencies were discovered and have been working to diligently with counsel to remedy the oversight. Plaintiffs agree that the failure to disclose information was not deliberate or intentional, and Defendants have agreed to bear the cost of their mistake. Awarding attorney's fees of $28,550—$442 an hour—in the circumstances of this case is simply unjustifiable.[40]

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for sanctions should be denied.

Respectfully submitted,

**GREG ABBOTT**
Attorney General of Texas

**DANIEL T. HODGE**
First Assistant Attorney General

**DAVID C. MATTAX**
Deputy Attorney General for Defense Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division

/s/ Bruce R. Garcia
**BRUCE R. GARCIA**
Assistant Attorney General
Attorney in Charge
Texas Bar No. 07631060

---

[39] *See* 42 U.S.C. § 1997e(d)(1)-(2).
[40] While Defendants do not question counsels' credentials, Plaintiffs' claim that it took 64.5 hours to draft this motion—more than a week and half, full-time—appears excessive. Before granting Plaintiffs' request for $28,550, more information is required. In the absence of such information, the Court should deny Plaintiffs' fees request.

/s/ Matthew J. Greer
**MATTHEW J. GREER**
Assistant Attorney General
Texas Bar No. 24069825

**ATTORNEYS FOR TEXAS DEPARTMENT OF CRIMINAL JUSTICE, ROBERT EASON, JEFFREY PRINGLE, SANDREA SANDERS, KAREN TATE AND RICHARD CLARK**

/s/ Demetri Anastasiadis
**DEMETRI ANASTASIADIS**
Assistant Attorney General
Attorney-In-Charge
Texas Bar No. 01164480

Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin TX 78711
(512) 463-2080/Fax (512) 495-9139

**ATTORNEYS FOR BRAD LIVINGSTON**

## NOTICE OF ELECTRONIC FILING

I, **BRUCE R. GARCIA**, Assistant Attorney General of Texas, certify that I have electronically submitted for a copy of the foregoing for filing in accordance with the Electronic Case Files system of the Northern District of Texas on May 30, 2014.

/s/ Bruce R. Garcia
**BRUCE R. GARCIA**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, **BRUCE R. GARCIA**, Assistant Attorney General of Texas, certify that I have served all counsel and or pro se parties of record electronically or by another manner authorized by FED. R. CIV. P. 5 (b)(2).

/s/ Bruce R. Garcia
**BRUCE R. GARCIA**
Assistant Attorney General