UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, and SANDRA McCOLLUM, individually, and STEPHANIE KINGREY, individually and as independent administrator of the Estate of LARRY GENE McCOLLUM,<br>　　　　　　　　　　PLAINTIFFS<br><br>v.<br><br>BRAD LIVINGSTON, JEFF PRINGLE, RICHARD CLARK, KAREN TATE, SANDREA SANDERS, ROBERT EASON, the UNIVERSITY OF TEXAS MEDICAL BRANCH and the TEXAS DEPARTMENT OF CRIMINAL JUSTICE.<br>　　　　　　　　　　DEFENDANTS | § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO.<br>3:12-cv-02037<br>JURY DEMAND |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS; REQUEST FOR SHOW CAUSE ORDER; AND MOTION TO COMPEL AGAINST DEFENDANT UTMB**

1

# TABLE OF CONTENTS

I.   Introduction ................................................................................................. 4

II.  UTMB Only Began To Search For Responsive Documents After Being Caught Red-Handed Making Misrepresentations to Federal Courts ................................ 4

III. UTMB Has Consistently Acted in Bad Faith ......................................................... 6

   A.  UTMB Failed to Request a Litigation Hold Until After the Motion for Sanctions was Filed .................................................................................. 6

   B.  UTMB Made No Reasonable Inquiry for Responsive Documents .................... 7

   C.  UTMB Made Affirmative Misrepresentations that Misled the Plaintiffs ......... 8

      1.  UTMB's Misrepresentations in Discovery Responses ................................... 8

      2.  Additional Misrepresentations to the Courts by UTMB .............................. 11

   D.  This Case Also Highlights UTMB's Abusive Discovery Practices .................. 13

IV. Plaintiffs Have Been Prejudiced ........................................................................... 13

V.  Conclusion ................................................................................................. 15

# TABLE OF AUTHORITIES

**CASES**

*Amsted Indus. v. Buckeye Steel Castings Co.*,
23 F.3d 374 (Fed. Cir. 1994) ............................................................................................... 7

*Chapman & Cole v. Itel Container International B.V.*,
865 F.2d 676 (5th Cir. 1989) ............................................................................................... 6

*Dollar v. Long Mfg.*,
561 F.2d 613 (5th Cir. 1977) ............................................................................................. 10

*Dondi Properties Corp. v. Commerce Savings and Loan*,
121 F.R.D. 284 (N.D. Tex. 1988) ..................................................................................... 10

*Holden v. Illinois Tool Works*,
429 F.Appx. 448 (5th Cir. 2011) ......................................................................................... 6

*In re Byrd, Inc.*,
927 F.2d 1135 (10th Cir. 1991) .......................................................................................... 7

## I. INTRODUCTION

Despite the evidence Plaintiffs submitted to the Court in their motion for sanctions, UTMB contends it has continually acted in good faith. Nothing could be further from the truth.

In fact, UTMB has acted in bad faith throughout this litigation. Most glaringly, UTMB failed to conduct a reasonable inquiry into what responsive documents existed in this case, and only began to even look for obviously responsive documents *after* being caught red-handed making misrepresentations about the existence and custody of documents to multiple federal courts.

Regardless of the electronic discovery search UTMB is purportedly doing now, it cannot be seriously disputed that its actions prejudiced Plaintiffs by forcing them to litigate in the dark, under false pretenses, and on UTMB's terms for months. As a consequence, Plaintiffs were forced to expend significant resources and time, and will have to re-open significant aspects of a case that, until recently, was to be tried in November 2014.

Accordingly, the Court should issue appropriate sanctions against UTMB. Otherwise, it will be rewarded for its misconduct, and undeterred from similar conduct in the future.

## II. UTMB ONLY BEGAN TO SEARCH FOR THE E-MAILS IN QUESTION AFTER BEING CAUGHT RED-HANDED MAKING A MISREPRESENTATION IN FEDERAL COURT

UTMB only discovered the emails that are the subject of this motion because it was caught telling a federal judge in open court that it did not have other responsive documents that were the subject to a motion to compel. Plaintiffs sought to compel

4

UTMB to produce peer-review documents of the care provided the men who died of heat stroke in the consolidated action pending in the Eastern District of Texas. At a hearing on April 7, 2014, UTMB's counsel told Magistrate Judge John Love that though the documents existed, "we physically do not have them, and we are also physically not the custodian of them." Ex. 1, Appendix p. 4-5, Transcript of April 7, 2014 Status Conference, 53:13-54:1.

This was not true. Because UTMB forced the plaintiffs in those consolidated cases to litigate the issue of the custody and control over the peer-review documents, the consolidated plaintiffs sought sanctions. Ex. 2, Appendix p. 8-14, *Webb v. Livingston* Motion for Sanctions.[1]

Later that week, after the hearing, UTMB admitted one of its custodians (Gary Eubank)[2] discovered he had the responsive peer-review documents. Doc. 174.1, p. 3-4. This discovery, in turn, led UTMB to finally search for and discover the thousands of responsive emails it had previously denied existed. But if UTMB had not been caught making this prior misrepresentation, the emails would likely have remained hidden.

---

[1] UTMB also made a similar misrepresentation to this Court.  In particular, Plaintiffs asked for "all documents related to any investigation conducted into Larry McCollum's death, including … any investigation or peer review conducted by the University of Texas Medical Branch (or any other entity providing medical care to Larry McCollum)." UTMB responded with an objection, and that "subject to these objections, UTMB has no responsive documents." Ex. 3, Appendix p. 19, UTMB's Responses to Plaintiff Sandra McCollum's First Request for Production, Request No. 7, p. 4 (Aug, 2, 2013). UTMB only admitted responsive documents existed *after* Plaintiffs happened to ask about investigations to UTMB's 30(b)(6) witness, and *after* Plaintiffs filed a motion to compel, and *after* telling the Court it did not have custody of the documents. Doc. 144 (Plaintiffs' Motion to Compel); Doc. 146 (UTMB's Response, p. 1). In fact, the Court found "UTMB acknowledges that it does maintain the peer review records Plaintiffs seek." Doc. 155, p. 2. Absent Plaintiffs' motion to compel and fortuitous questioning of Dr. Adams, UTMB may never have acknowledged the documents exist.

[2] Notably, Plaintiffs had identified Eubank as a possible witness in related litigation as early as September 2013. *See Adams v. Livingston*, 3:13-cv-217, Doc. 19 (S.D. Tex.) (Plaintiffs' Response to Motion to Transfer Venue).

5

### III. UTMB HAS CONSISTENTLY ACTED IN BAD FAITH

In this case, UTMB has consistently acted in bad faith, flaunting its discovery obligations and requiring Plaintiffs to seek the Court's intervention, even when it has no legal basis for doing so.

#### A. *UTMB Failed to Request a Litigation Hold Until After the Motion for Sanctions was Filed*

First, it is undisputed UTMB needed to take measures to prevent the destruction of relevant documents when it reasonably anticipated litigation.[3]

But UTMB did not issue a "litigation hold" until *after* Plaintiffs' motion for sanctions was filed, and almost a month after UTMB learned tens-of-thousands of documents might exist. "UTMB did not initially place a litigation hold on electronically stored information for custodians of records at the unit level; instead, UTMB relied on its communication with individuals identified as people who may have knowledge to respond to discovery requests." Doc. 174.1, UTMB Response, p.2. Tellingly, UTMB fails to tell the Court how recent this development was. In fact, at the May 30, 2014 court-ordered deposition of UTMB's corporate representative, Plaintiffs learned a "litigation hold" letter was not sent until May 13, 2014 – *the day after this motion for sanctions was filed. See* Ex. 4, Appendix p. 22, Litigation Hold email from Jennifer Osteen.[4]

---

[3] Interestingly, UTMB has never acknowledged when it anticipated litigation. However, the wrongfully withheld e-mails suggest that they long knew of their potential culpability for heat related deaths, and UTMB conducted an investigation into the care the physician's assistant provided to Mr. McCollum shortly after McCollum died.

[4] The litigation hold letter itself, however, only has 6 named recipients, and UTMB's corporate representative purportedly presented to testify about the date and scope of the litigation hold did not know if the hold was sent to anybody else, though this was a subject covered by Plaintiffs' Rule 30(b)(6) notice. (Plaintiffs will supplement this reply with the relevant excerpts of the transcript when they become available.) Declaration of Sean Flammer, Ex. 5, Appendix p. 29. UTMB's counsel did send a letter to Plaintiffs' counsel on May 22 indicating that a litigation hold

### *B. UTMB Made No Reasonable Inquiry for Responsive Documents*

Federal Rule of Civil Procedure 26(g)(1) requires attorneys' responding to discovery requests to certify they made a "reasonable inquiry" and the response is "complete and correct." A "reasonable inquiry" is "the amount of examination that is reasonable under the circumstances of the case." *Holden v. Illinois Tool Works*, 429 F.Appx. 448, 452 (5th Cir. 2011). The duty under Rule 26(g) to make a "reasonable inquiry" is viewed from an objective standard. *Chapman & Cole v. Itel Container International B.V.,* 865 F.2d 676, 686 (5th Cir. 1989) (quoting advisory committee notes of Rule). Subjective bad faith is not required. *In re Byrd, Inc.*, 927 F.2d 1135, 1137 (10th Cir. 1991). "[W]hat is reasonable is a matter for the Court to decide on the totality of the circumstances." *Chapman*, 865 F.2d at 686.

The scope of the recently discovered documents shows UTMB cannot have made a "reasonable inquiry" into the existence of these documents. This is not a case where one critical document was stuck in the back of a filing cabinet. This is an entire warehouse of documents that was never opened – a universe of well-known records (email) that no one from UTMB began to examine until the eve of the discovery deadline then in effect. It is inexplicable that a "reasonable inquiry" could at first find *zero* documents, then later locate "100,000 plus documents" held by almost 140 custodians. Doc. 174.1, UTMB Response, p. 10.

The sheer volume of documents and the number of custodians involved are evidence enough that UTMB failed to perform a reasonable inquiry. But key questions

---

was sent to "UTMB-CMC administration employees and unit employees," but it is not clear if those employees are the same as the 139 whose emails are being searched. Further, it is unclear what effect such a litigation hold can have when the hold was not sent until well after this lawsuit was filed.

are still unanswered: What did UTMB do to determine *who* has relevant documents when UTMB anticipated litigation? What conversations were had with those people when UTMB anticipated litigation about *what* documents they had and *where* those documents were stored? What steps (if any) were taken to ensure documents were not destroyed by those that have relevant documents, and when did those steps take place?  These basic questions of document production go unanswered in UTMB's response and Plaintiffs request that the Court ask UTMB these questions at a show cause hearing.

### C.  *UTMB Made Affirmative Misrepresentations that Misled the Plaintiffs*

As noted in Plaintiffs' initial motion, the Court may award sanctions under its inherent power if it finds fraud or bad faith. *Amsted Indus. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378 (Fed. Cir. 1994). This case involves both, as UTMB made continuous material representations that were false and Plaintiffs relied on those representations to their detriment. *See Allstate Ins. Co. v. Receivable Finance Co., L.L.C.,* 501 F.3d 398, 406 (5th Cir. 2007) (stating elements of fraud).  When UTMB made those representations, they either knew the statements were false or they asserted those statements recklessly without any knowledge of their truth. *Id.*  Plaintiffs believe the Court can infer UTMB's intent (and bad faith) from the facts presented and the continuous conduct throughout this case and the other heat-death cases.

#### 1.  UTMB's Misrepresentations in Discovery Responses

Here, UTMB denied thousands of documents existed for months.

UTMB's response to Plaintiffs' request for "all documents related to inmate heat injury in any TDCJ facility where UTMB provides medical care" was there are "no records responsive to this request."[5] This was not true.

UTMB's response to Plaintiffs' request for "all documents presented to [UTMB] related to heat, temperature, heat index, or air conditioning at any TDCJ facility" was "none" exist.[6] This was not true.

Similarly, as part of the subpoena duces tecum of Dr. Glenda Adams, UTMB's expert, Plaintiffs requested "all documents you have reviewed relating to temperatures inside Texas Department of Criminal Justice prisons, including … *any email or other electronically stored information* you have reviewed."[7] Yet none of the many emails Dr. Glenda Adams received, and which were described in Plaintiffs' motion for sanctions, were produced at her deposition by UTMB.

Likewise, UTMB failed to disclose databases tracking heat-related injuries based on false pretenses. Throughout this litigation, both UTMB and TDCJ have insisted they cannot determine how many prisoners suffered heat-related injuries because this information is not separately tracked, and could only be found by combing through each individual prisoner's medical records. *See*, *e.g.*, Ex. 6, Appendix p. 41, UTMB's Aug. 2, 2013 Discovery Responses; Doc. 42, TDCJ's Response to Motion to Compel.

This is simply not true. Since at least 2010, TDCJ officials have instructed UTMB providers to report every heat-related illness to TDCJ's Health Services Division. *See* Doc. 164.2, Ex. 12, p.57 and Ex. 7, Appendix p. 47. The emails even indicate UTMB

---

[5] Ex. 3, Appendix p. 19, August 2, 2013 Responses to Plaintiffs' Requests for Production No. 9.

[6] *Id.*, Response to Request No. 11.

[7] Ex. 9, Appendix p. 61  Deposition Notice of Dr. Glenda Adams, p. 6 (emphasis added).

kept its own database separate and apart from the database TDCJ maintained. *See* Ex. 8, Appendix p. 53, Email from Jerri Robison Re: Heat Related Issues, p. 2 ("The Nursing Regional Secretaries will keep a database."). Despite the fact that this information was provided monthly to "senior leadership" and would have been easy to obtain, UTMB apparently chose not to ask these individuals for the documents.

While UTMB cannot deny it made these misrepresentations, its response attempts to justify its misconduct by claiming Plaintiffs' requests were too broad. This is a specious argument that ignores this Court's previous orders regarding the scope of discovery. In fact, in June 2013, this Court recognized that evidence of other heat-related injuries and deaths was relevant to show Defendants (especially TDCJ's director, Brad Livingston) knew about the dangers posed by extreme temperatures inside TDCJ prisons. Doc. 58. UTMB did not first respond to discovery until August 2013 – months after the Court clarified the scope of discovery.

And UTMB not only objected that Plaintiffs' requests were overbroad, UTMB said there were no responsive documents – an untrue statement relied upon by Plaintiffs that epitomizes UTMB's bad faith. In advancing this "argument," UTMB conveniently ignores the difference between 1) an objection to the breadth of a request and 2) an objection to breadth *plus* a claim no responsive documents exist. This is the very definition of a misleading discovery response. Yet, incredibly, rather than acknowledge its malfeasance, UTMB blames Plaintiffs for "not fil[ing] motions to compel or ask[ing] the Court to overrule any of UTMB's objections." *Id.*, p. 3. But why would Plaintiffs move to compel the production of documents UTMB denied existed?

UTMB is essentially arguing that parties can fail to even look for responsive documents—or identify who has responsive documents—by registering objections that are not true, and wait for their opponent to call them on it before truly looking. Written discovery "requires candor in responding" – candor UTMB flatly failed to use in its responses. *Dollar v. Long Mfg.,* 561 F.2d 613, 616 (5th Cir. 1977). "[T]he rules dealing with discovery in federal cases are to be self-executing" and are meant to prevent the courts from having to hear discovery motions. *Dondi Properties Corp. v. Commerce Savings and Loan*, 121 F.R.D. 284, 289 (N.D. Tex. 1988). UTMB faulting the Plaintiffs for failing to compel production of documents UTMB *insisted did not exist* is absurd and runs contrary to Rule 34(b) and Rule 26.  It also suggests that Plaintiffs should be required to engage in motion practice to determine the veracity of UTMB's discovery responses – the very reason a show-cause order is appropriate here.

## 2. Additional Misrepresentations to the Courts by UTMB

In addition to the misrepresentations discussed earlier, UTMB has also made other misrepresentations to the courts.

In a related case pending in the Southern District of Texas, *Hinojosa v. Livingston*, UTMB again told the Court it did not have custody of responsive documents. Plaintiffs requested autopsies of other prisoners who may have died of heat-related illnesses. While seeking a protective order that was denied, UTMB boldly told the Court "UTMB is not the custodian of these records." Ex. 10, Appendix p. 67, *Hinojosa v. Livingston*, No. 2:13-cv-319, Doc. 32, p. 4 (S.D. Tex.). When Plaintiffs' counsel complained this was false, UTMB had to file an amended motion. *See* Ex. 11, Appendix

p. 72, *Id.*, Doc. 34. At a minimum, UTMB failed to conduct a reasonable inquiry and was reckless with the truth.

And UTMB makes several more false claims in its *Response* here. In particular, UTMB states "[i]n a particularly heated conversation," where Defense counsel actually hung up on Plaintiffs' counsel, "UTMB urged [Plaintiffs'] counsel to reserve judgment until the [King & Spalding] search was completed." Doc. 174.1, p. 10. UTMB further states Plaintiffs filed this motion "knowing that the K&S search was underway." *Id.*, p. 6. But UTMB did not mention King & Spalding was involved in the search for documents until much later, well after Plaintiffs' sanctions motion was filed.[8] And Robert Shaffer's affidavit, which UTMB's counsel represented contained complete information about the search (but has only three substantive paragraphs), does not mention King & Spalding is providing discovery assistance.[9] *See* Ex. 14, Appendix p. 84-85, Shaffer Affidavit.[10] The affidavit does not discuss the scope of the search (the "139 custodians"), or many of the other issues Plaintiffs' May 7, 2014 letter identified and asked to discuss.[11] UTMB only provided a substantive response to Plaintiffs' request for information about the search

---

[8] In fact, Plaintiffs were not told about King and Spalding until May 22, 2014. *See* Ex. 5, Appendix 29, Declaration of Sean Flammer; Ex. 12, Appendix p. 80, Declaration of Jeff Edwards; and Ex. 13, Appendix p. 82, Declaration of Scott Medlock.

[9] Of course, when Plaintiffs attempted to schedule the deposition of Shaffer –UTMB's Rule 30(b)(6) witness on the search procedures – UTMB refused to produce him until the Court intervened. *See* Doc. 181 (order denying motion to quash).

[10] UTMB's attorney told Plaintiffs' counsel they did not need to confer because "an affidavit explaining the searches currently being conducted has already been filed with the court." Ex. 15, Appendix p. 87, May 8, 2014 email from Shanna Molinare.

[11] This Court has specifically condemned this type of behavior. "An attorney's refusal to return a call requesting a … conference will not be tolerated." *Dondi Prop.*, 121 F.R.D. at 289.

*after* the motion for sanctions was filed and *after* the Court ordered expedited briefing of the response.

### D. This Case Also Highlights UTMB's Abusive Discovery Practices

Unfortunately, false representations are not the only examples of UTMB's dubious discovery strategy.

In October 2013, the Court had to order UTMB to produce a Rule 30(b)(6) witness for deposition. "[T]he Court can conceive of no valid basis for postponing a deposition" based on UTMB's arguments, and noted UTMB has "pointed to no supporting legal authority." Doc. 95.

In February 2014, UTMB refused to produce its own expert witness for deposition. Again, the Court noted UTMB "cited no authority" to support its position, and awarded attorneys' fees for forcing Plaintiffs to contest this frivolous position. *See* Doc. 137, p. 6.

Most recently, the Court had to order UTMB to produce a Rule 30(b)(6) witness to testify about UTMB's preservation and retrieval efforts. Plaintiffs asked the witness if he was UTMB's representative for all 14 noticed topics and the witness said *he was not for 6 of those 14 categories*. *See* Doc. 181; Ex. 5, Appendix p. 32-37 Declaration of Sean Flammer; Notice of Rule 30(b)(6) Deposition of UTMB.[12] As a consequence, there were multiple questions the witness could not answer.

### IV. PLAINTIFFS HAVE BEEN PREJUDICED

Contrary to UTMB's assertions, and for the reasons stated in their initial motion, Plaintiffs have suffered real prejudice in this case. They have been forced to take

---

[12] Plaintiffs will provide a copy of the relevant transcript excerpts as soon as it is ready.

depositions and retain experts with an incomplete picture of the facts. In the process, they have revealed trial and deposition strategy and been denied access to key documents that would have confirmed legal theories they were forced to develop differently. Whether the same depositions would have been taken can be legitimately debated. What cannot, however, is that Plaintiffs would have conducted many of those depositions differently had they had access to even the 392 pages of emails that have so far been produced by UTMB and been able to cross examine witnesses and experts with evidence known to Defendants.

In any event, Plaintiffs have been damaged far more than the time and expense incurred in having to file its sanctions motion and its reply.[13] Additionally, UTMB's suggestion that the only costs associated with expert witnesses are their actual time testifying is as flawed as its understanding of its discovery obligations. To put it bluntly, UTMB's conduct has caused, and will cause, Plaintiffs to incur significant fees and expenses.[14]

---

[13] Plaintiffs' counsel has incurred the following attorneys' fees associated with this reply:

| | | | | |
|---|---|---|---|---|
| Jeff Edwards, | 17.5 | hours x $450/hr. | = $ | 7,875 |
| Sean Flammer, | 16.6 | hours x $350/hr. | = $ | 5,810 |
| Scott Medlock, | 17.0 | hours x $350/hr.[13] | = $ | 5,600 |
| | | Total | = $ | 19,635 |

*See* Ex. 5, Appendix 29-30, Declaration of Sean Flammer; Ex. 12, Appendix p. 80, Declaration of Jeff Edwards; and Ex. 13, Appendix p. 82, Declaration of Scott Medlock.

[14] Should the Court wish to see Plaintiffs' detailed billings and expenses, Plaintiffs would respectfully request that they be permitted to submit them to the Court under seal for in camera review.

## V. CONCLUSION

For the reasons articulated in its motion and this reply, Plaintiffs respectfully ask that the Court grant its motion and award substantial sanctions to remedy the harm to Plaintiffs and to deter similar conduct from UTMB in the future.

Dated: June 2, 2014.

                              Respectfully submitted,

                              The Edwards Law Firm
                              The Haehnel Building
                              1101 East 11th Street
                              Austin, TX 78702
                              Tel.    512-623-7727
                              Fax.   512-623-7729

                              By    /s/ Jeff Edwards
                              JEFF EDWARDS
                              State Bar No. 24014406
                              Lead Counsel
                              Scott Medlock
                              State Bar No. 24044783
                              Sean Flammer
                              State Bar No. 24059754
                              Lead Counsel
                              Brian McGiverin
                              State Bar No. 24067760
                              James C. Harrington
                              State Bar No. 09048500

                              TEXAS CIVIL RIGHTS PROJECT
                              c/o TRLA 4920 N. I-35
                              Austin, TX 78751
                              (512) 474-5073 [phone]
                              (512) 474-0726 [fax]

Eliot Shavin
State Bar No. 18138200
2600 State Street
Dallas, Texas 75204
214-522-2010 (telephone)
214-720-9594 (fax)
Local Counsel

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Northern District of Texas.

By  /s/ Jeff Edwards
JEFF EDWARDS