IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:12-CV-02037 |
| | § | |
| BRAD LIVINGSTON, *et al.*, | § | |
| Defendants. | § | |

### UTMB'S SUR-REPLY TO PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PLAINTIFFS MOTION FOR SANCTIONS, REQUEST FOR SHOW CAUSE ORDER AND MOTION TO COMPEL

UTMB respectfully files its Sur-Reply to Plaintiffs' Reply Brief in Support of Plaintiffs' Motion for Sanctions; Request for Show Cause Order; and Motion to Compel to reiterate UTMB's good faith efforts to comply with the Federal Rules of Civil Procedure and to identify Plaintiffs' continued misrepresentation of the facts in this case.

First, based on Plaintiffs' Reply, it appears they are asserting UTMB has acted in "bad faith" while engaging in discovery. "Bad faith" has been defined as "conduct involving fraudulent intent and desire to suppress the truth." *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 344 (M.D. La. 2006). Plaintiffs, however, failed to offer any evidence, nor can they, to establish that UTMB intentionally acted in bad faith or engaged in conduct involving fraudulent intent and desire to suppress the truth related to discovery. *See id.* Rather, the evidence establishes that although UTMB did not initially locate documents, as soon as they were discovered during the course of litigation, UTMB promptly supplemented its discovery responses and engaged in additional searches. To be sure, at all times, UTMB

has acted in good faith and has never acted deliberately or knowingly to withhold discoverable information.

In support of their motion and request for sanctions, Plaintiffs inappropriately rely on alleged events that have occurred in other cases. However, this case has not been consolidated with the other "heat cases;"[1] rather, this matter is a single claim involving the facts and circumstances surrounding Larry McCollum's incarceration at the Hutchins State Jail and UTMB's alleged failure to reasonably accommodate Mr. McCollum's alleged disabilities by failing to provide him safe housing, e.g., an air-conditioned housing assignment. In fact, this case involves a single claim under the Americans with Disabilities Act Amendment Act ("ADAAA") and the Rehabilitation Act ("RA"). To be sure, this case is not a class claim under the ADA or RA, and Plaintiffs have never attempted to certify a class action. It involves one individual, Mr. McCollum.

Nevertheless, in an attempt to confuse the issue, Plaintiffs are now relying on discovery disputes in other matters, namely the *Webb* consolidated cases, to argue that UTMB's actions in requiring Plaintiffs to seek the Court's intervention regarding the peer review and medical committee reviews documents had no legal basis. This simply is not true. On the contrary, at all times during the discovery period in all of the "heat cases," UTMB has properly lodged objections under Texas Occupation Code § 160.007, Texas Occupation Code

---

[1] Currently, UTMB is a defendant in six cases: (1) Civil Action No. 2:13-cv-00319; *Ramona Hinojosa v. Livingston, et al.;* in the Corpus Christi Division in the Southern District of Texas; (2) Civil Action No. 4:13-cv-03369; *Roxanne Martone v. Livingston, et al.;* in the Houston Division in the Southern District of Texas; (3) Civil Action No. 3:12-cv-02037L; *Stephen McCollum v. Livingston, et al.;* in the Dallas Division in the Northern District of Texas; (4) Civil Action No. 6:13-cv-712*; Ashley Adams v. Livingston, et al*; in the Tyler Division in the Eastern District of Texas; *(5)* Civil Action No. 6:14-cv-00093; *Gwen Togonidze v. Livingston, et al*; in the Tyler Division in the Eastern District of Texas; and (6) Civil Action No. 6:13-cv-711; *Kevin Webb v. Livingston, et al*; in the Tyler Division in the Eastern District of Texas (collectively referred to as "heat cases"). *Webb, Adams, and Togonidze* have been consolidated for litigation purposes in the Tyler Division.

§ 303.006, and Texas Health and Safety Code § 161.032 in response to any of Plaintiffs' requests for peer review and/or medical committee reviews documents.  As a result, Plaintiffs were fully aware that UTMB believed that these documents were privileged.

Plaintiffs also incorrectly assert, with no factual basis, that UTMB made misrepresentations to this Court regarding "all documents related to any investigation conducted into Larry McCollum's death, including . . .any investigation or peer review conducted by [UTMB] . . ."  Once again, this simply is not true.  In fact, throughout the discovery, UTMB has properly asserted its discovery objections pursuant to the Federal Rules of Civil Procedure.  This Court even acknowledged that although UTMB "could have handled the situation [peer review and medical committee review objections] differently, its position was not wholly without merit under the circumstances."  D.E. No. 155.  Plaintiffs voluntarily chose to proceed with the depositions of UTMB's 30(b)(6) representative, Owen Murray, D.O., and Glenda Adams, M.D., in her capacity as UTMB's expert, without first seeking the Court's ruling on UTMB's properly lodged objections.  To be clear, Plaintiffs had knowledge of UTMB's peer review and medical committee review privilege assertions and did not seek to overrule these objections before they engaged in discovery.  Therefore, their attempt to now argue that UTMB acted in bad faith and/or somehow misled them to engage in discovery without these documents is misleading.[2]

---

[2] In the *Webb* cases, UTMB initially believed that it did not have responsive documents in its possession; however, as soon as UTMB discovered these documents, UTMB voluntarily disclosed the existence of the documents to Plaintiffs and to the Court and sought a ruling on relevance.  After the Court ruled on relevancy, UTMB promptly produced these records to Plaintiffs.  Accordingly, Plaintiffs suffered no harm regarding UTMB's actions in asserting legitimate objections to Plaintiffs' discovery requests and choosing to stand on those objections until the Court issued a ruling.  Although Plaintiffs' reliance on the discovery dispute in *Webb* is misplaced, UTMB feels the need to explain the facts.

Plaintiffs also assert, with no factual basis, that UTMB would not have fulfilled its discovery obligations under the Federal Rules of Civil Procedure to supplement its discovery responses had the dispute regarding peer review privileges not occurred. This is also not true. As the evidence demonstrates, as soon as UTMB discovered the emails in April 2014, UTMB promptly produced them to Plaintiffs. Furthermore, UTMB, on its own accord, initiated an additional search of 139 individuals based on very broad search terms to ensure that it fulfills its obligations to supplement its discovery responses. Finally, and most importantly, UTMB, on its own accord, has engaged the services, and incurred the significant expense, of King & Spalding's Discovery Center in order to process, review, de-duplicate, and produce any relevant documents that exist. Clearly, these facts establish that UTMB is acting in good faith as it continues to supplement its discovery responses.

UTMB does not deny its discovery obligations, namely that it needed to take measures to preserve relevant documents. In fact, UTMB thought it had fulfilled its obligations and had collected and produced all relevant documents. As previously set forth in its Response Brief, at the beginning of litigation, UTMB followed its normal process and procedure and requested copies of Mr. McCollum's medical records, medication compliance records, and grievance records, and all of these records were produced to Plaintiffs. Additionally, UTMB contacted all individuals that it believed had knowledge of Mr. McCollum's claims under the ADA and RA and ultimately produced non-privileged and responsive documents related to Mr. McCollum in response to Plaintiffs' discovery requests. Thereafter, while conducting discovery in *Webb*, UTMB discovered additional documents that could be considered responsive. As a result, UTMB immediately produced them. Notably, the emails, which were later discovered and produced on April 23, 2014 were not related to Mr. McCollum's claims.

That being said, because the parties eventually agreed to joint discovery in all six of the "heat cases," the emails were produced in all six cases.

Plaintiffs are correct that an official litigation hold notice was not sent until May 13, 2014; however, as previously set forth above, UTMB relied on its initial communication with individuals directly involved with Mr. McCollum to locate relevant documents in this matter. Accordingly, UTMB believed it had fulfilled its obligations at the time. However, UTMB also acknowledges that it has an obligation and duty to supplement its discovery responses. Therefore, on or about April 21, 2014, UTMB requested that its Information Services – Security Department began a search of electronically stored information of 139 individuals who have been identified as someone who may have knowledge in all six "heat cases" based on very broad search terms.[3] Thereafter, on or about May 13, 2014, a litigation hold notice was sent to these same individuals to locate any other relevant documents for King & Spalding's Discovery Center review.

Plaintiffs assert UTMB denied that thousands of documents existed. D.E. 184 at III.C.1. Once again, this is not true. In their request for production, plaintiffs asked for all documents "related to heat injury." UTMB objected that the request was so broad and ambiguous that it could not be answered, and that as a result, UTMB had no responsive documents. Keeping in mind that UTMB had not yet found the Robison emails, the answer was true. Once again, at this time, it is unclear what documents are relevant to this litigation because UTMB's search is not complete.

---

[3] The search terms included the following: Heat, heat stress, heat exhaustion, heat illness, heat-related illness, heat cramps, heat stroke, heat death, hyperthermia, hot temperatures, air conditioning, AC, heat restrictions, Larry McCollum, Douglas Hudson, Robert Webb, Alexander Togonidze, Michael Martone, Kenneth James, Rodney Adams, Albert Hinojosa." As previously explained to Plaintiffs' counsel, the search captures all forms of the words listed above. As a result, the search will capture "Larry," "heat," by default "heat-illness," "air conditioning" and " AC ," etc. . .

With respect to Plaintiffs' allegation that UTMB failed to timely produce the "databases tracking heat-related injuries," at the time UTMB responded to Plaintiffs' discovery requests, UTMB was unaware of their existence. While responding to discovery in this matter, UTMB requested information from individuals at the Hutchins State Jail, and no one had knowledge of these documents. However, as soon as they were discovered, while conducting discovery in another matter, UTMB immediately supplemented its discovery responses and produced them. Based on these facts, Plaintiffs cannot establish that UTMB acted in bad faith. *See Consol. Aluminum Corp.*, 244 F.R.D. at 344.

As previously set forth in its Response, to date, UTMB has identified approximately 50,000 documents based on the extremely broad search terms listed above, but their relevancy to Mr. McCollum's ADAAA claim and Rehabilitation Act claims have yet to be determined. In other words, every single electronic document that has the word heat, death, hot, stress, Larry, Robert, etc. . .is being gathered, but not yet reviewed for relevancy. Clearly, these key terms alone do not make these documents relevant to this litigation. In their reply, Plaintiffs attempt to claim that there is a warehouse of relevant documents, but they have no evidence to support such a claim. Had Plaintiffs allowed UTMB to complete its search before filing their Motion, the actual number of relevant documents could have been provided. Plaintiffs also attempt to mislead the Court by focusing on the number of individuals currently being searched. Once again, UTMB's current overly broad search is for all six cases, not solely this matter. Moreover, at this time, it is unclear how many of those individuals have any relevant information. Before UTMB can produce any additional documents, King & Spalding must complete their review process and assess relevancy.

Regarding the current search, UTMB respectfully seeks the Court's guidance regarding its search for additional relevant documents. It is undisputed that parties may obtain discovery regarding non-privileged matters that are relevant to any party's claim or defense. FED. R. CIV. P. 26(b)(1). Under Rule 26(b)(2)(C), however, discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) *the burden or expense of the proposed discovery outweighs its likely benefit. Id.*(emphasis added). Where appropriate, the Court may issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order "forbidding the disclosure or discovery . . . [or] prescribing a discovery method other than the one selected by the party seeking discovery[.]" FED. R. CIV. P. 26(c)(1)(A), (C).

Plaintiffs are requesting that UTMB expand the search to include approximately 258 individuals and four additional pages of search terms which are extremely broad, vague, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' current request to expand the search constitutes a fishing expedition in violation of the Federal Rules of Civil Procedure. *Global Oil Tools, Inc. v. Barnhill*, Slip Copy, 2014 WL 1652498 (E.D.La. April 24, 2014); *Provine v. Ambulatory Health Services, Inc.,* Slip Copy, 2014 WL 47771 (M.D.Pa. January 06, 2014); *Fort Worth Employees' Retirement Fund v. J.P. Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co*., 297 F.R.D. 99 (S.D.N.Y., 2013); *In re Weatherford Intern. Securities In re Weatherford Intern. Securities Litigation*, Slip Copy, 2013 WL 5788687 (S.D.N.Y. October 28, 2013). While UTMB is willing to include additional relevant individuals and search terms that are reasonably calculated to lead to the discovery of

information related to Plaintiffs' claims, the burden or expense of Plaintiffs' current request for additional searches outweighs its likely benefit. Thus, UTMB respectfully asks that the Court set parameters as to which additional search terms and individuals are necessary, including cost limitations. In its Response, UTMB asked the court to enter an order to guide the parties in this contested matter.

Plaintiffs vaguely assert that UTMB's actions have caused them harm because they would have conducted the previously taken depositions differently if they had the 392 pages of emails that were produced on April 23, 2014. First, the emails that were produced on April 23, 2014 did not relate to Mr. McCollum's claims. Nevertheless, to the extent that Plaintiffs believe these emails are relevant to Plaintiffs' claims, UTMB will not oppose the re-opening of the depositions of its Rule 30(b)(6) representative, Dr. Murray, or Dr. Adams limited to questions related to these 392 documents.

Plaintiffs also vaguely assert that UTMB's actions will cause them harm in the future and cause them to incur significant fees and expenses, but fail to demonstrate how. It is undisputed that all deadlines in this matter are currently stayed. In fact, all deadlines have been stayed, and no dispositive motions have been filed. To the extent that relevant documents related to Mr. McCollum's claims are discovered and produced after King & Spalding's Discovery Center completes its process, UTMB will not oppose the re-opening of the depositions of its Rule 30(b)(6) representative, Dr. Murray, or Dr. Adams limited to questions related to the newly produced documents, to the extent they exist. Further, UTMB will not oppose additional written discovery related to the newly produced documents, to the extent they exist. Finally, UTMB will not oppose any new deadlines, including a new trial setting, so that this search can be completed.

In their reply, plaintiffs assert that UTMB abused the discovery process when it produced a 30(b)(6) witness who did not have personal knowledge of all of the fourteen topics requested. Rule 30(b)(6) does not require that a single witness have personal knowledge of all of the operations of an organization, such a request would be impossible. Instead, the designated witness must "testify about information known or reasonably available to the organization." For example, Mr. Shaffer testified to personal knowledge of UTMB's email system, how to retrieve electronically stored information, and what UTMB was currently doing to retrieve electronically stored information in this case. While he acknowledged he did not have personal knowledge about the document retention policy, litigation holds or preservation letters, *he produced the document retention policy, litigation holds and preservation letters at the deposition*.

Plaintiffs' request for excessive attorneys' fees should be denied because Plaintiffs failed to allow the process that UTMB already initiated to proceed before seeking this Court's intervention. FED. R. CIV. P. 37(a)(5). In fact, Plaintiffs were aware that UTMB had initiated the search for additional documents and planned to supplement its discovery. Based on these facts, Plaintiffs' request should be denied. *See id.* Additionally, Plaintiffs' request for attorneys' fees in the amount of $28,550 and $19,635 should be denied because they are excessive and would be unjust. *See id.* Rule 37 empowers a Court to impose "just" sanctions on parties for failure to make disclosures or to cooperate in discovery. FED. R. CIV. P. 37. However, "in order to exercise these inherent powers, the Court must find that the guilty party engaged in bad faith that resulted in prejudice to the judicial process." *Nieman v. Hale, et al.*, No. 3:12-cv-2433-L-BN, 2014 WL 1577814, at *2 (N.D. Tex. April 21, 2014); see also *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (finding that a court's authority to

impose sanctions "ought to be exercised with great caution and used only when such conduct abuses the judicial process"); *Vick v. Texas Emp't Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975) (finding that in order for sanctions to be warranted, "circumstances of the act must manifest bad faith"). "Bad faith" has been defined as "conduct involving fraudulent intent and desire to suppress the truth." *Consol. Aluminum Corp. v. Alcoa, Inc.,* 244 F.R.D. 335, 344 (M.D. La. 2006).

In fact, courts have held that sanctions are too severe when there is no evidence of willful bad faith. See, e.g., *Pressey v. Patterson*, 898 F.2d 1018, 1023 (5th Cir. Tex. 1990) (holding that there was no evidence that Appellant City acted willfully in bad faith, and, thus, sanctions were too severe); *Harper v. Caldwell County*, No. A-10-CV-631-LY, 2012 U.S. Dist. LEXIS 68492, at *8 (W.D. Tex. May 16, 2012) (holding that there was no evidence to conclude that the defendant's decision not to retain a copy of the videotape was made in bad faith, or with any bad intention; therefore, sanctions would not be appropriate).

In determining whether sanctions are warranted, the Fifth Circuit considers: "(1) the reasons why the disclosure was not made; (2) the amount of prejudice to the opposing party; (3) the feasibility of curing such prejudice with a continuance of the trial; and (4) any other relevant circumstances." *Julian v. City of Houston*, No. 4:12-cv-2973, 2014 U.S. Dist. LEXIS 48846, at *3 (S.D. Tex. Apr. 8, 2014) (quoting *United States v. Garza*, 448 F.3d 294, 299-300 (5th Cir. 2006).

Based on the above, it is clear that UTMB did not act intentionally to deceive Plaintiffs or this Court or to delay the litigation. Moreover, UTMB is currently taking prompt action to remedy the discovery dispute and produce all documents. Once UTMB receives clarification from the Court, this process can proceed. To the extent that Plaintiffs have suffered harm,

UTMB has set forth the steps it will take to address the alleged harm. Therefore, UTMB respectfully requests that Plaintiffs' motion be denied.

        Respectfully submitted,

        GREG ABBOTT
        Attorney General of Texas

        DANIEL T. HODGE
        First Assistant Attorney General

        DAVID C. MATTAX
        Deputy Attorney General for Defense Litigation

        KAREN D. MATLOCK
        Assistant Attorney General
        Chief, Law Enforcement Defense Division

        <u>/s/KIM COOGAN</u>
        KIM COOGAN
        Assistant Attorney General
        Attorney-In-Charge
        State Bar No. 00783867

        Law Enforcement Defense Division
        P. O. Box 12548, Capitol Station
        Austin, Texas 78711
        (512) 463-2080/Fax (512) 495-9139

        **ATTORNEYS FOR DEFENDANT**
        **UNIVERSITY OF TEXAS MEDICAL BRANCH**

## NOTICE OF ELECTRONIC FILING

I, KIM COOGAN, Assistant Attorney General of Texas, certify that I have electronically submitted for filing to the Court, **UTMB'S SUR-REPLY TO PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS, REQUEST FOR SHOW CAUSE ORDER AND MOTION TO COMPEL** on June 5, 2014, in the Northern District of Texas, Dallas Division.

/s/ KIM COOGAN
**KIM COOGAN**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, KIM COOGAN, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **UTMB'S SUR-REPLY TO PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS, REQUEST FOR SHOW CAUSE ORDER AND MOTION TO COMPEL** has been served by placing the same in the United States Postal Service, postage prepaid, on June 5, 2014, addressed to:

Jeff Edwards
Scott Medlock
The Edwards Law Firm
1101 E. 11th Street
Austin, Texas 78702

Brian McGivern
Wayne Krause-Yang
Texas Civil Rights Project
4920 N. I-35
Austin TX 78751

Bruce R. Garcia  *Via Hand-Delivery*
Office of the Attorney General
P. O. Box 12548, Capitol Station
Austin, Texas  78711

Demetri Anastasiadis  *Via Hand-Delivery*
Office of the Attorney General
P. O. Box 12548, Capitol Station
Austin, Texas  78711

/s/KIM COOGAN
**KIM COOGAN**
Assistant Attorney General