# Exhibit A

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

STEPHEN McCOLLUM, STEPHANIE    :
KINGREY, and SANDRA McCOLLUM,   :
individually and as heirs      :
at law in the Estate of       :
LARRY GENE McCOLLUM,           :
       Plaintiffs,          :
                           :   CIVIL ACTION NO.
VS.                            :
                           :   3:12-cv-02037
BRAD LIVINGSTON, JEFF PRINGLE, :
RICHARD CLARK, KAREN TATE,     :
SANDREA SANDERS, ROBERT EASON, :
THE UNIVERSITY OF TEXAS       :
MEDICAL BRANCH and the TEXAS   :
DEPARTMENT OF CRIMINAL JUSTICE,:
       Defendants.          :
                           :

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

ORAL AND VIDEOTAPED DEPOSITION OF
THE DESIGNATED REPRESENTATIVE OF
THE UNIVERSITY OF TEXAS MEDICAL BRANCH
BY AND THROUGH
ROBERT VERNON SHAFFER, JR.

MAY 30, 2014

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

    ORAL AND VIDEOTAPED DEPOSITION OF THE DESIGNATED
REPRESENTATIVE OF THE UNIVERSITY OF TEXAS MEDICAL BRANCH
BY AND THROUGH ROBERT VERNON SHAFFER, JR., produced as a
witness at the instance of the Plaintiffs, and duly
sworn, was taken in the above-styled and numbered cause
on Friday, May 30, 2014, from 2:18 to 5:21 p.m., before
Mary C. Dopico, Certified Shorthand Reporter No. 463 and
Notary Public in and for the State of Texas, reported by
machine shorthand and audio/video recording at the
offices of Rebecca Sealy Hospital, 404 8th Street,
Galveston, Houston, Texas, pursuant to Notice and Court
Order and the Federal Rules of Civil Procedure and the
provisions stated on the record or attached hereto.

**WRIGHT WATSON & ASSOCIATES, LLC**
**(512) 474-4363**

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1  criteria.  We'll go out there, identify all of their

2  repositories or information resources that they may

3  store stuff on and then we'll go out there and conduct a

4  search.

5      Q.   Okay.  Let's talk about that more in just a

6  minute.  Let's go ahead --  I'm going to mark this as

7  Exhibit 1.

8           (Shaffer Exb. No. 1 was marked.)

9      Q.   (By Mr. Flammer)  I'm handing you what's been

10  marked as Exhibit 1.  Have you seen this document

11  before?

12      A.   I have.

13      Q.   Okay.  And this is the notice of the

14  deposition; is that correct?

15      A.   Yes, sir.

16      Q.   And can you turn with me to Exhibit A?

17      A.   I'm there.

18      Q.   Are you speaking here on behalf of UTMB today?

19      A.   I am.

20      Q.   Okay.  And are you the witness that UTMB has

21  produced to talk about UTMB's document retention

22  policies today?

23      A.   I am not.

24      Q.   You're not?

25      A.   Not for document retention.

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1    Q.    Okay.  Who would we speak to about document
2  retention?
3    A.    I'd have to defer to legal.  I -- I'm not the
4  expert in that field.  I can't point to an individual.
5  There might be other people.  It's really the person who
6  is in charge of that area.
7    Q.    Okay.
8    A.    I do know it's a compliance function here at
9  UTMB, so it would probably be one of the leaders in the
10  compliance area.
11    Q.    Okay.  Let's go to number 2 on Exhibit A.  It
12  says:  The date and scope of any litigation holds,
13  preservation letters, etcetera, that were sent from
14  outside counsel to UTMB and/or that were communicated
15  internally within UTMB regarding any litigation
16  regarding the heat conditions in Texas prisons.
17              Are UT --  Are you UTMB's witness on that
18  issue?
19    A.    I am not.
20    Q.    Okay.  Number 3 is:  The date and scope of any
21  litigation holds, preservation letters, etcetera, that
22  were sent from outside counsel to UTMB and/or that were
23  communicated internally within UTMB regarding any
24  litigation regarding this case.
25              Are you UTMB's witness on that issue?

ROBERT VERNON SHAFFER, JR. - May 30, 2014
DESIGNATED REPRESENTATIVE OF UTMB

1      A.    I am not.

2      Q.    Number 4 is:  All steps taken by UTMB to

3   preserve and retrieve electronically-stored information

4   that may be relevant to this litigation.

5            Are you UTMB's witness on that?

6      A.    Partial witness.

7      Q.    Can you explain?

8      A.    I don't do all steps.  I just have a small

9   component of it as far as retrieving information --

10  primarily e-mail, things like that.

11     Q.    So are you saying that you are the agency

12  representative of all steps taken by UTMB to retrieve

13  electronically stored information that may be relevant

14  to this litigation but you are not UTMB's witness as to

15  all steps taken by UTMB to preserve electronically

16  stored information that may be relevant to this

17  litigation?

18     A.    I am not.

19     Q.    For either?

20           MS. COOGAN:  Well, perhaps you could ask

21  him what he knows about those subjects, whether --

22  rather than whether he's a designated witness for those

23  subjects.

24           MR. FLAMMER:  Understood.  Okay.  I think

25  what I'll do is go through these categories --

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1          MS. COOGAN:  Sure.

2          MR. FLAMMER:  -- and just make sure we're

3     on the same page; and then -- then I can ask the

4     questions and see if he's the person we need to talk to;

5     and if he's not, then we'll just move on.

6          Q.   (By Mr. Flammer)  Let's look at category

7     number 5, the back-up tape --  Actually, let's look at

8     4, just to be clear.  You said partial.  Can you just

9     explain more what you mean?

10         A.   Well, there is a component that belongs to

11    legal; and there's a component that belongs to other

12    departments throughout the university.  So I primarily

13    look for documents in e-mails that might be part of

14    the -- an information store or somewhere else that's

15    stored on a -- on a drive or a local computer, something

16    like that.  But there's other relative -- relevant

17    information that may or may not be out there that I

18    wouldn't be involved in.

19         Q.   Okay.  But as it comes to electronically

20    stored information --

21         A.   No, I'm not the one that --  Again, a partial.

22    I don't see go out and look for, you know, medical

23    records or anything like that.  That's usually something

24    that's conducted by another party.

25         Q.   What about e-mails?

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1      A.    E-mail, yes.

2      Q.    Okay.  Is there anybody else who's UTMB's

3  witness on e-mail?

4      A.    No.

5      Q.    Okay.

6      A.    I'm the witness on the e-mails.

7      Q.    And what about documents stored either on

8  servers or people's computers?

9      A.    I would be considered that individual, as

10  well.

11      Q.    Okay.  Okay.  Okay.  Let's look at number 5.

12  Now, the back-up architecture at UTMB, including what is

13  backed up, when it is backed up, how long those back-up

14  tapes are retained, and how long information that is

15  backed up is retained on back-up tapes.

16              Are you UTMB's witness on that category?

17      A.    I'm a witness, yes.

18      Q.    Okay.  Number 6:  What efforts were made to

19  determine who the key players are in this case and what

20  was to done to preserve and retrieve electronically

21  stored information in their possession, custody or

22  control?

23      A.    I am not.

24      Q.    Okay.  Number 7 is:  The efforts that have

25  been taken and can be taken to obtain any potentially

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1  relevant electronically stored information that was

2  either manually deleted or that was purged through

3  automatic document retention policies.

4       A.    I am --

5       Q.    Are you --

6       A.    -- the witness.

7       Q.    You are the witness --

8       A.    Yes.

9       Q.    -- for UTMB on number 7?

10      A.    Yes.

11      Q.    Number 8:  Whether any electronically stored

12  information that may be relevant to this case has been

13  deleted.

14            Are you UTMB's witness on number 8?

15      A.    I am the witness.

16      Q.    And number 9:  Whether any electronically

17  stored information that may be relevant to this case is

18  irretrievable.

19            Are you UTMB's witness --

20      A.    I am --

21      Q.    -- on that topic?

22      A.    -- UTMB's witness.

23      Q.    And if you would, I do -- I do the same thing

24  when I'm talking, if you would, just let me finish the

25  question before you answer --

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1    A.    All right.

2    Q.    -- just so she can get it down.

3    A.    Not a problem.

4    Q.    And I'll try to do the same for you.

5              Number 10:  What efforts can be taken to

6    obtain any electronically stored information that has

7    been deleted?

8              Are you UTMB's witness on that topic?

9    A.    I am.

10   Q.    Number 11:  The identity of any electronically

11   stored information that has been depleted or that is

12   irretrievable.

13             Are you UTMB's witness on that topic?

14   A.    I am.

15   Q.    Number 12:  A physical location of

16   electronically stored information that may be relevant

17   to this case.

18             Are you UTMB's witness on that category?

19   A.    You know, I'd have to go back to a partial

20   witness.  I mean, I can testify to it, to what I know;

21   but, yeah, I'll be the witness.  Yeah, I am the witness

22   to what I know.

23   Q.    Okay.  Is that not part of your -- your area

24   of expertise?

25   A.    Well, it is.  Yeah --  my area of expertise is

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1  broad.  I'm at --  The IT infrastructure here, it's not

2  like I have complete knowledge of everything.  It's

3  somewhat broad and limited in certain areas.

4          So I'm not going to sit here and -- and

5  pretend like I'm an expert in all areas of this because

6  I'm not.  You know, when it comes to the security

7  related things, yes.  You know, like your back-up, I'm

8  not the -- the know-all to end-all.  I can talk to it in

9  general terms.

10  Q.   Okay.  Number 13:  All efforts taken

11  concerning the preservation of electronically stored

12  information related to heat-related illness of inmates

13  in TDCJ prison facilities where inmates are housed in

14  non-air-conditioned areas.

15          Are you UTMB's witness on that topic?

16  A.   I am not.

17  Q.   Number 14:  All efforts taken concerning the

18  preservation of electronically stored information

19  related to incidents where inmates have died from

20  heat-related causes in TCDJ prison facilities where

21  inmates are housed in non-air-conditioned areas.

22          Are you UTMB's witness on that topic?

23  A.   I am not.

24          MR. FLAMMER:  Ms. Coogan, are there any

25  other witnesses that you plan on presenting today?

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1      MS. COOGAN:  There are not any more

2  witnesses that I plan on presenting today.  And I will

3  say this for the record, whether he can provide you with

4  the information that you need with regard to these broad

5  categories of course will depend on the questions that

6  you ask.

7      So, I would say just for the record that

8  these are all very, very, very broad categories; and

9  there's a certain amount of vagueness to them, as well.

10     So the best way to determine whether this

11  witness can answer the specific questions you have in

12  mind is simply to ask him.  I think he'll -- might

13  surprise you with how much he does know.

14     Q.   (By Mr. Flammer)  Okay.  Let's turn to the

15  next page on Exhibit B.  Exhibit B is a subpoena for

16  documents.

17     Have you brought any documents with you

18  today?

19     A.   That or we've got some litigation hold

20  requests and then we have your -- so I guess this is a

21  notice to take oral disposition (sic) of rule -- so --

22     Q.   Okay.

23     A.   -- that's all I have.

24     Q.   May I see these, please?

25     THE WITNESS:  Is that okay?

**WRIGHT WATSON & ASSOCIATES, LLC**
**(512) 474-4363**

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1   several places we'd look.  One, our initial I guess

2   investigation would start at the Exchange server itself,

3   where that mailbox resides.  We would go in there and,

4   you know, look through all the e-mails.

5            Okay.  Then we'll go out there and see if

6   that person's been assigned network shares.  If they've

7   been assigned network shares, we go out there and look

8   for .psts.  Then we'll go out and look for that

9   computer, desktop, and then we'll do a search on that

10  desktop to see if they have any .psts out there.

11       Q.   Okay.

12            MR. FLAMMER:  Do you-all want to take a

13  break for a couple minutes?

14            MS. COOGAN:  Sure.

15            THE VIDEOGRAPHER:  Off the record at

16  3:16.

17            (Off the record from 3:16 - 3:24.)

18            THE VIDEOGRAPHER:  Back on the record at

19  3:24.

20            MR. FLAMMER:  Okay.  Thank you.  And,

21  Ms. Coogan, I just want to talk about what we talked

22  about during the break.

23            I asked for a -- for you to go get

24  somebody to talk about UTMB's document retention

25  policies, and you wanted to respond to that request.

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1    MS. COOGAN:  When I got your subpoena,

2   which was Exhibit A, I understood this entire exhibit to

3   be re -- was about how documents are retained within the

4   computer system, and that's what this witness can talk

5   about.

6    I did not understand what I think you're

7   asking for now which is how long documents are retained?

8   Is that -- Am I right?

9    MR. FLAMMER:  Yes.

10    MS. COOGAN:  Okay.  So I know I've

11   already produced it once before.  Let me reproduce the

12   document, UTMB document retention plan, and that's just

13   for Correctional Managed Care.

14    MR. FLAMMER:  Okay.  Thank you.  Let's go

15   ahead and have this marked.

16    MS. COOGAN:  Yeah.  Let's do.

17    MR. FLAMMER:  And then also --

18    MS. COOGAN:  Hang on.  She can't type and

19   listen to you at the same time.

20    (Shaffer Exb. No. 3 was marked.)

21    MS. COOGAN:  If I could just finish my

22   response to you --

23    MR. FLAMMER:  Go ahead.

24    MS. COOGAN:  We don't have any objection

25   to producing a witness to talk about how long documents

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1   are retained under the document retention plan; but this

2   witness is -- is here about how long they're physically

3   kept on the computers, which is what -- as part of

4   electrically -- electronically stored information, which

5   is what I understood you to be asking for.

6                MR. FLAMMER:  And what about a witness on

7   categories 2, 3, 13, and 14, and 6?

8                MS. COOGAN:  It depends on what you want

9   to know about those things.  The litigation hold letters

10  were produced by this witness.

11               MR. FLAMMER:  And those are the documents

12  that were just handed to me?

13               MS. COOGAN:  Yeah --  No.  Well --

14               MR. FLAMMER:  Or Exhibit No. 2?

15               MS. COOGAN:  Whatever it was that you got

16  from the witness earlier, to the extent that they exist.

17               MR. FLAMMER:  (Nods head affirmatively.)

18               MS. COOGAN:  So what is it --  What kind

19  of witness is it that you want to know?  What is it that

20  you want to know about that, so I can know what kind of

21  witness to get.

22               MR. FLAMMER:  I mean, the categories that

23  were in the subpoena.

24               MS. COOGAN:  And I hear what you're

25  saying, and I'm confessing that I don't understand your

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1  categories.  I don't understand what kind of witness you

2  want.

3                  I thought you wanted a computer expert,

4  and you're telling me that's not what you want; is that

5  right?

6                  MR. FLAMMER:  It's more than that.

7                  MS. COOGAN:  Okay.

8                  MR. FLAMMER:  It's more than just the

9  computer -- computer expert.  But why don't we do this?

10  Why don't we continue on --  But go ahead.  I mean,

11  can -- can you produce these people today?

12                  MS. COOGAN:  Which people on which -- on

13  which subject?

14                  MR. FLAMMER:  Well, I mean, UTMB's

15  document retention policy.  So, for example, how long

16  certain documents are retained, like spreadsheets

17  perhaps tracking heat-related illnesses.

18                  MS. COOGAN:  What is the document

19  retention policy on how long they're supposed to be

20  retained?  Or how are they retained on the computer?

21                  MR. FLAMMER:  Both.

22                  MS. COOGAN:  Okay.  This witness can talk

23  to you about how they're retained on the computer.

24                  If you're talking about a witness that

25  can testify about the document retention plan and

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

```
 1  compliance, policy 6.1.5 of the UTMB Handbook, I can do
 2  that for you.  I can't do it today, but I can do that.
 3                  MS. OSTEEN:  Can I talk?
 4                  MS. COOGAN:  Yeah.
 5                  MS. OSTEEN:  I need to talk to you.
 6                  MS. COOGAN:  Presumably now.
 7                  THE VIDEOGRAPHER:  Do you want to go off
 8  the record?
 9                  MR. FLAMMER:  Yeah.  Let's go ahead and
10  go off the record.  Thank you.
11                  THE VIDEOGRAPHER:  Off the record at
12  3:28.
13                  (Off the record from 3:28 - 3:29.)
14                  THE VIDEOGRAPHER:  Back on the record at
15  3:29.
16                  MS. COOGAN:  So I think part of my
17  confusion is that if it's patient related and it's in
18  the electronic medical record, those are going to be
19  part of TDCJ's records.  Right?
20                  MS. OSTEEN:  Retention policies.
21                  MS. COOGAN:  Retention policies.  But I
22  can produce somebody that can say that for you.
23                  MR. FLAMMER:  So are you saying that UTMB
24  doesn't keep records for the -- doesn't keep records
25  pertaining to individual inmates?
```

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1          MS. OSTEEN:  This is all --

2          MS. COOGAN:  Yeah, I don't either.  Okay

3    so we will just have to produce somebody who can talk

4    about the electronic medical record and then all of

5    these categories, Exhibit 3, identifies the categories

6    of documents that are retained.

7          So maybe that will shed some light on the

8    kind of witness that you want me to -- to produce; or

9    maybe you can help me be more specific with what you're

10   looking for.

11         MR. FLAMMER:  Okay.  And what about

12   category number 2, the date, scope of any litigation

13   holds, preservation letters, etcetera, that were sent

14   from outside counsel to UTMB and/or that were

15   communicated internally within UTMB regarding any

16   litigation regarding the heat conditions in Texas

17   prisons?

18         MS. COOGAN:  You have anything that

19   came --  Nothing came from outside counsel.

20         MR. FLAMMER:  Okay.

21         MS. COOGAN:  So if you want to know about

22   preservation letters on litigation holds, you're holding

23   them in your hand.

24         MR. FLAMMER:  And that's Exhibit 2.

25         MS. COOGAN:  Yes.

1          MR. FLAMMER:  Okay.  And these were all

2  internal --  I haven't had a chance to look at these.

3  It looks like these were all internal communications

4  regarding litigation holds.

5          MS. COOGAN:  Well, take -- take a look at

6  them and if you want to -- if we want to talk about --

7  obviously there's -- some of those are going to be

8  attorney/client and attorney work-product, have

9  privileged information within them.  Not within the

10  document, but within the confidential communications.

11  But if you need to talk to --  If you want to know when

12  they were done, you have them in your hand.

13          MR. FLAMMER:  Okay.  So this --  So this

14  is the scope, so --  Exhibit 2 is the scope of any

15  preservation letters, litigation holds, that were sent

16  regarding heat --

17          MS. COOGAN:  They are the letters.

18          MR. FLAMMER:  They are the letters.

19          MS. COOGAN:  They are the letters, yes.

20          MR. FLAMMER:  Okay.

21          MS. COOGAN:  They're not just about the

22  scope of it.  They are the actual preservation

23  materials.

24          MR. FLAMMER:  Okay.  And what about

25  category --  So are you --  Are you say --  So you're

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1  saying that there really isn't a need to have a person

2  from number 2; is that --  Is that what you're saying?

3  Or there isn't a person or --

4              MS. COOGAN:  You can have anybody you --

5  you want to.  I'm just telling you I need -- I don't

6  understand if I've produced the actual preservation

7  letters, if you -- what kind of person you want.

8              I mean, somebody that can read English?

9  Do you want somebody that drafted them?  Do you want

10  somebody who gathered the documents?  Do you want

11  somebody who put them on the computer?  Do you want to

12  know how they're stored on the computer?  Do you want to

13  know how to print them out?  Do you want to know when

14  they were destroyed.  You've got to give me just a

15  little bit more information so I can get the right

16  person for you.

17              MR. FLAMMER:  I just haven't had a chance

18  to look at these yet.

19              MS. COOGAN:  Okay.  I'm not --

20              MR. FLAMMER:  During the next break, I'll

21  take a look at them.

22              MS. COOGAN:  I'm not fussing at you.

23  I --  I'm telling you I -- clearly I misunderstood the

24  subpoena, and I want to make that right.

25              MR. FLAMMER:  Okay.

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1          MS. COOGAN:  But I need more information

2   even still.

3          MR. FLAMMER:  Okay.  What about category

4   number 6?

5          MS. COOGAN:  I think that's completely

6   privileged, and I assert that privilege.

7          MR. FLAMMER:  The whole scope of 6 is

8   privileged?  Is that your position?

9          MS. COOGAN:  I think that who the key

10  players are, who our persons with knowledge of relevant

11  facts is not privileged; and I think that question has

12  been answered.  But what -- what was the internal

13  thought process on how those people were determined I

14  think is privileged.

15          Who I think is a key player may not be

16  the same as who you think is a key player.  I think my

17  obligation is to turn over all players.  Whether you

18  think they're key or not, I don't think you're entitled

19  to my opinion about that.

20          MR. FLAMMER:  Okay.  Okay.

21          MS. COOGAN:  Maybe the "key players" is

22  the term that's ambiguous.  Maybe you want to know how

23  search terms were determined.  There is a hundred and --

24          MR. FLAMMER:  Does UTMB have a witness

25  who can talk about how UTMB determined what users may

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1  have relevant information that should be searched?

2           MS. COOGAN:  Prob --  I'm sure.  Yeah.

3           MR. FLAMMER:  And you'll produce --

4           MS. COOGAN:  I mean, those 139

5  custodians, how those 139 custodians were chosen?

6           MR. FLAMMER:  Right.  And when they were

7  chosen.

8           MS. COOGAN:  I'm not sure.  I would have

9  to talk to UTMB about that and -- and I'll have to think

10  about whether that's privileged or not.  You have the

11  139 names, and you've also been asked to submit names of

12  your own that you think are relevant.  But the thought

13  process behind -- I mean, I think -- I think the Rules

14  only require that we turn over five custodians.

15           MR. FLAMMER:  And --  Well, I disagree

16  with that; but that's okay.  We can agree to disagree.

17           MS. COOGAN:  Okay.

18           MR. FLAMMER:  But, also, from our

19  perspective is when those individuals were identified

20  and when they were told to start deleting documents or

21  to preserve documents.

22           MS. COOGAN:  And those would be in those

23  preservation letters that you have right in front of

24  you.

25           MR. FLAMMER:  Okay.

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1    MS. COOGAN:  And there is not anything
2  else.
3    MR. FLAMMER:  Okay.
4    MS. COOGAN:  So if you don't see it, it
5  doesn't exist.
6    MR. FLAMMER:  Understood.  And what about
7  categories 13 and 14?  Does UTMB have a witness --
8    MS. COOGAN:  Well, I mean, you can ask --
9  This witness that's here right now can tell you how --
10  what's being done regarding --  Do you mean physically
11  how are they being preserved?
12    MR. FLAMMER:  Yeah, and all efforts
13  taken.  So what was done?  When was it done?  How was it
14  done?
15    MS. COOGAN:  Okay.  You have the
16  preservation letters in front of you; and if it's not in
17  those preservation letters, it wasn't done.  I don't
18  know how else I can say it.  But this witness that's
19  here can talk about how electronically-stored
20  information was preserved once preservation letters went
21  out.  And the preservation letters you have.  So does
22  that answer your question?
23    MR. FLAMMER:  I'm not sure if it does or
24  not; but what I propose is I'll just go ahead and --
25  Either way, there -- there are no other witnesses that

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1  you are prepared to put forth today besides

2  Mr. Schaeffer; is that correct.

3             MS. COOGAN:  Not --  I have not prepared

4  to do that.  If you can tell me somebody specifically, I

5  can try to do it.

6             MR. FLAMMER:  Do you mean a specific

7  name?

8             MS. COOGAN:  Or specifically you want --

9  what you want them to talk about.

10             MR. FLAMMER:  I guess we're just having

11  some miscommunication problems, because I'm talking

12  about the topics listed on Exhibit A.

13             MS. COOGAN:  And I -- I thought I was,

14  too.

15             MR. FLAMMER:  All right.  Why don't we

16  just go ahead and continue on --

17             MS. COOGAN:  Okay.

18             MR. FLAMMER:  -- with questions of

19  Mr. Shaffer and we'll address that later.

20      Q.   (By Mr. Flammer)  Mr. Shaffer, if an employee

21  leaves, what happens to those employees' e-mails?

22      A.   When an employee leaves, we go ahead and

23  disable that account.  That account is disabled for 30

24  days and then it's deleted.

25             So now a legal or -- or even a department

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1      A.     No.

2      Q.     Are you aware of any litigation involving

3   Eugene Blackman?

4      A.     No.

5      Q.     I want to talk again about one of the

6   documents that is Exhibit 2, this May 13th, 2014 e-mail,

7   the subject line:  Litigation hold.

8      A.     Yes.  I got it.  Yes.

9      Q.     I see here only a few recipients, Carolanda

10  Bremond.  Do you know who that person is?

11     A.     I do.

12     Q.     What department is she in?

13     A.     Office of legal affairs.

14     Q.     And then Carolee King is in legal, as well?

15     A.     Yes, sir.

16     Q.     We know who Owen Murray is.  You're Robert

17  Shaffer.  And Louis Perrin --

18     A.     Is the analyst.

19     Q.     -- is the analyst.

20     A.     Yes.

21     Q.     Security analyst.

22            Who else did this go to?

23     A.     I don't know.  I didn't send it out.

24     Q.     Do you know if this went to any of the 139

25  users, except for Owen Murray?

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

```
 1        A.    I have no idea, sir.

 2        Q.    Do you know --  Do you have any knowledge as

 3   to whether or not any of the 139 users were sent any

 4   litigation hold of any sort?

 5        A.    I'd know there was a survey that was sent out.

 6   I don't know when it was sent out or by whom, but it's

 7   my understanding that some type of survey, whether it

 8   was one of the e-discovery requests like we got before

 9   or something different but...

10        Q.    And you said you don't know when that was sent

11   out, but was --

12        A.    It was just through conversation where I

13   learned of it.  So I don't know anything other than a

14   brief conversation that said there might -- there was a

15   survey that went out to individuals.  I -- It wasn't

16   produced by my office.

17        Q.    Okay.  Do you know if that was -- if that

18   survey was filled out and sent to those people in 2014

19   or before?

20        A.    I don't know.  I have no idea.

21              I just know there --  It's my

22   understanding, based on a brief conversation, that there

23   was a survey sent out.  I don't know who sent it out.  I

24   don't know who the recipients are.  I don't know who

25   responded or anything else.
```

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1     Q.   Okay.  When did you have that conversation?

2     A.   Actually earlier today.

3             MR. FLAMMER:  Ms. Coogan, on Exhibit A,

4 the deposition notice, for categories 13 and 14, I'm

5 just concerned, because we -- there are several

6 categories here that have been noticed; and we need to

7 be able to talk to people -- and I know I understand now

8 it's Friday, it's past 5:00 o'clock, and I imagine

9 people are gone.

10           MS. COOGAN:  What would you like to talk

11 to someone about?

12           MR. FLAMMER:  Categories 1, 2, 3, 6, 13

13 and 14?

14           MS. COOGAN:  13 and 14, you've got them

15 in your hand and you've asked this witness about them

16 several times.  Am I mistaken?

17           MR. FLAMMER:  Well, I mean, I just want

18 to be sure --  So all efforts taken concerning the

19 preservation of ESI related to heat-related illnesses of

20 inmates at TDCJ prison facilities where inmates were

21 housed in non-air-conditioned areas, you're pointing me

22 towards Exhibit 2; is that correct?

23           MS. COOGAN:  That's all I'm aware of.

24           MR. FLAMMER:  And so what --  I mean,

25 what I'm trying to say --  And neither of us want to

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1  argue.  We just want to get to the truth here and we

2  just want to make sure we're all on the same page.

3                   MS. COOGAN:  Okay.

4                   MR. FLAMMER:  And I understand --  I hear

5  what you're saying and what you're saying is that's all

6  you know of.

7                   MS. COOGAN:  Right.

8                   MR. FLAMMER:  And that's why we noticed

9  the agency rep so we can get a full answer to the

10  question not just I don't know.  Do you understand what

11  I'm saying?  Is that fair?

12                   MS. COOGAN:  Well, all I can do is

13  present people who can answer questions.

14                   MR. FLAMMER:  That's all I need.

15                   MS. COOGAN:  And this is the guy who does

16  the electronically stored information searches, and he

17  said he got these.

18                   MR. FLAMMER:  But he also told me he's

19  not the person to ask about 13 and 14 or 1, 2, 3, and 6.

20  And 4 was a little ambiguous.

21                   MS. COOGAN:  Number 1 does not relate to

22  electronically stored information.

23                   MR. FLAMMER:  Right.  So that's going to

24  be someone different, and we already talked about that.

25  And you'll put somebody up.

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

```
1                    MS. COOGAN:  Yes.

2                    MR. FLAMMER:  And will you represent that

3     you and I can work together to find a reasonable time in

4     the next week to get that done?

5                    MS. COOGAN:  Yes.

6                    MR. FLAMMER:  And can that get done to

7     the Austin?

8                    MS. COOGAN:  No.  The Rules say let's go

9     to the witness.  But it's 5:00 o'clock and we both have

10    four-hour drives ahead of us.

11                   So I've exhausted all of my discussions

12    with you on that.  I've told you everything I know and

13    everything I can do for you.

14                   So we can just play it back if you would

15    like.

16                   MR. FLAMMER:  I don't know what that

17    means.  What do you mean?

18                   MS. COOGAN:  Okay.  Let me say it one

19    more time.

20                   Remember how I was saying how I thought

21    retention meant how it was retained on the computer, and

22    this is the witness who could answer those questions?

23                   MR. FLAMMER:  Right.

24                   MR. GARCIA:  I remember.

25                   MS. COOGAN:  Okay.  That still is today
```

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

```
 1   still what I believe.
 2              MR. FLAMMER:  Okay.
 3              MS. COOGAN:  And I've given you the
 4   document retention policy.
 5              So I'm unclear what you need from me.
 6              But we can talk about that next week, and
 7   I promise to work with you on that.
 8              MR. GARCIA:  And, Sean, I'm going to have
 9   the same problem with category number 1.
10              MR. FLAMMER:  Okay.
11              MR. GARCIA:  Just so you know.
12              MR. FLAMMER:  Okay.
13              MS. COOGAN:  I'm not opposed to it in any
14   form whatsoever.
15              MR. GARCIA:  Me either.
16              MS. COOGAN:  I just am not certain I
17   understand, and I don't want to produce the wrong person
18   or be accused of not having produced someone.  So if
19   you're not talking about the document retention policy
20   and you're not talking about physical electronic
21   retention, I'm not sure what you mean; and, therefore,
22   I'm not sure what witness to produce.
23              MR. FLAMMER:  Okay.
24              MS. COOGAN:  But I'm all ears.
25              MR. FLAMMER:  Would you agree with me
```

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1  that this is a conversation we could have had before had

2  you voiced that to me?

3          MS. COOGAN:  No.  I'm not going to be

4  deposed right now.  Okay?  I've told you my position.

5  I've said I've misunderstood.  I still don't understand.

6  I'm asking for clarification; and I tell you what, I'm

7  going home.  So are you done with this witness or not?

8          MR. FLAMMER:  I'm done with this witness.

9          MS. COOGAN:  Then this deposition is

10  terminated.  Off the record.  I'd love to talk about it

11  next week?  I'll make an appointment?  How about Monday

12  morning at the hearing?  How about talking about it at

13  the hearing on Monday?

14          MR. FLAMMER:  Ms. Coogan, I just want to

15  talk to you about --  You know, we noticed the

16  deposition.  The court ordered that it take place today

17  at 2:00 o'clock.

18          MS. COOGAN:  You're done, Mr. Shaffer.

19          MR. FLAMMER:  Mr. Shaffer, thank you,

20  sir.  I appreciate it.

21          MR. GARCIA:  Thank you, Mr. Shaffer.

22          THE WITNESS:  Thank you.

23          MR. FLAMMER:  Ms. Coogan, are you not

24  willing to engage in a conversation about --

25          MS. COOGAN:  I done engaged in all my

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1   conversations with you.  I'm sorry I can't make you

2   understand it.

3                    I need for you to tell me, if you're not

4   talking about the paper retention policy in your hand

5   and you're not talking about the electronic retention

6   policy, I don't understand what you need in from me.

7                    MR. FLAMMER:  I need a witness --

8                    MS. COOGAN:  But I'm happy to do it.

9                    MR. FLAMMER:  I need a witness because

10  the document is not -- I need a witness --

11                   MS. COOGAN:  I need a, brother.  Amen.  A

12  witness to talk about what?

13                   MR. FLAMMER:  To talk about these topics.

14                   MS. COOGAN:  Explain it to me.  If you

15  don't want the paper retention policy and don't want the

16  electronic retention policy, what would you like?  Do

17  you need somebody who can read the English and read the

18  policy to you?

19                   MR. FLAMMER:  That can tell me what the

20  policy is and about the policy, whether it's enforced or

21  not?

22                   MS. COOGAN:  The policy is the po --  You

23  have the policy.  What do you mean what it is?  Are you

24  being Clintonesque?

25                   MR. FLAMMER:  What about --

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1    MR. GARCIA:  It's available online.  So

2  it's available to all parties.

3    MS. COOGAN:  He's got it in his hands.

4    MR. FLAMMER:  What about number 13?

5    MS. COOGAN:  What does it say?

6    MR. FLAMMER:  All efforts taken

7  concerning preservation of ESI related to heat-related

8  illnesses of inmates in TDCJ prison facilities where

9  inmates were housed in non-air-conditioned areas.

10    And what you have told me is --

11    MS. COOGAN:  No.  What the witness told

12  you is that any electronically stored information

13  requests go through him; and he told you several times

14  that he would personally be aware of it because it would

15  personally come across his desk.  And these are all that

16  he's aware of.

17    MR. FLAMMER:  But he also told me he's

18  not the guy to ask that; and then when I asked you, the

19  answer I hear is:  That's all I know of.

20    So what I --  What I need is someone that

21  the agency can designate as being the person who counsel

22  and the witness agree this is the guy or gal on this

23  issue and then that person can answer the question.

24    MS. COOGAN:  Okay.

25    MR. FLAMMER:  That's all.

**ROBERT VERNON SHAFFER, JR. - May 30, 2014**
**DESIGNATED REPRESENTATIVE OF UTMB**

1    MS. COOGAN:  All right.  I will work on

2  that.

3    MR. FLAMMER:  Just what was noticed.

4  That's all.

5    MS. COOGAN:  I don't agree that that's

6  what was noticed, but I will work on it anyway.

7    MR. FLAMMER:  Okay.

8    MS. COOGAN:  Okay.

9    MR. FLAMMER:  We're done for today.

10  Thank you.  We're off the record.

11    THE VIDEOGRAPHER:  Off the record.

12    (The deposition concluded at 5:21 p.m.)

13    (Signature requested.)

14    (-o0o-)

15

16

17

18

19

20

21

22

23

24

25