**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **STEPHEN McCOLLUM,** *et al.*, | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:12-cv-02037** |
| | § | |
| **BRAD LIVINGSTON,** *et al.*, | § | |
| *Defendants*. | § | |

# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, STEPHANIE KINGREY, and SANDRA McCOLLUM, individually and as heirs at law to the Estate of LARRY GENE McCOLLUM,<br><br>        PLAINTIFFS<br><br>v.<br><br>BRAD LIVINGSTON, JEFF PRINGLE, RICHARD CLARK, KAREN TATE, SANDREA SANDERS, ROBERT EASON, the UNIVERSITY OF TEXAS MEDICAL BRANCH and the TEXAS DEPARTMENT OF CRIMINAL JUSTICE.<br><br>        DEFENDANTS | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.<br>3:12-cv-02037 |

**PLAINTIFF STEPHANIE KINGREY'S REQUESTS FOR PRODUCTION AND INTERROGATORIES TO ALL DEFENDANTS**

TO:   **DEFENDANT TEXAS DEPARTMENT OF CRIMINAL JUSTICE, JEFF PRINGLE, ROBERT EASON, RICHARD CLARK, KAREN TATE, SANDREA SANDERS** by and through their attorney of record, Bruce Garcia, Assistant Attorney General, P.O. Box 12548, Capitol Station Austin, Texas 78711.

   **DEFENDANTS UNIVERSITY OF TEXAS MEDICAL BRANCH,** by and through its attorney of record, Kim Coogan, Assistant Attorney General, P.O. Box 12548, Capital Station Austin, Texas 78711.

   **DEFENDANT LIVINGSTON** by and through his attorney of record, Demetri Anastasiadis, Assistant Attorney General, P.O. Box 12548, Capitol Station, Austin, Texas 78711.

   COME NOW, **Stephanie Kingrey, Plaintiff** in the above styled and numbered cause, and pursuant to and in compliance with Rules 26(b), 33, and 34 of the Federal Rules of Civil Procedure, submits this Requests for Production and Interrogatories to all defendants, and formally requests the Defendants to produce accurate and legible copies

of the following documents and things and to organize and label such documents to correspond with the numerical categories in this Request, and to serve said responses on Attorneys for Plaintiff on or before thirty (30) days after the service hereof, at the offices of The Edwards Law Firm, 1101 East 11th Street, Austin, TX 78702.

Respectfully submitted,

The Edwards Law Firm
The Haehnel Building
1101 East 11th Street
Austin, TX 78702
   Tel. 512-623-7727
   Fax. 512-623-7729

By /s/ Jeff Edwards
JEFF EDWARDS
State Bar No. 24014406
Lead Counsel
Scott Medlock
State Bar No. 24044783
Sean Flammer
State Bar No. 24059754

Brian McGiverin
State Bar No. 24067760
James C. Harrington
State Bar No. 09048500

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
(512) 474-5073 [phone]
(512) 474-0726 [fax]

ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

By my signature above, I hereby certify that the foregoing document has been served on all counsel of record **via hand delivery** on May 14, 2014, as follows:

Bruce R. Garcia
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
*Facsimile: (512) 495-9139*

Kim Coogan
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
*Facsimile: (512) 495-9139*

Demetri Anastasiadis
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
*Facsimile: (512) 495-9139*

## **Instructions and Definitions**

Instructions:

To the extent you are withholding any privileged information, please provide a privilege log.

Unless otherwise noted, all Requests for Production are limited in time from 2003 to the present.

Please produce within 30 days all documents in your possession, custody, or control responsive to these requests.

Definitions:

**Document**.  The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a).  A draft of a non-identical copy is a separate document within the meaning of this term.  The term includes correspondence.

**Concerning**.  The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

**Correspondence.** The term "correspondence" includes emails, text messages, instant messages, letters, faxes, and any other communication reduced to a physical or electronic medium.  The term "correspondence" includes communications both sent and received.

**Extreme Heat.**  The term "extreme heat" refers to a heat index greater than or equal to 90 degrees.

**Heat-related illness.**  The term heat-related illness incorporates heat stroke, heat exhaustion, and heat cramps, as well as any condition caused by extreme heat—including but not limited to—hyperthermia.

**Heat precautions.** The term "heat precautions" includes all efforts to train employees or inmates regarding the dangers of heat in the summer months at TDCJ prisons; all efforts to protect inmates and/or employees in the summer months at TDCJ prisons; all efforts concerning how different inmates (including those with certain health conditions or that take psychotropic medications) may respond differently to high temperatures or high heat indexes; and any other topic or concern expressed in the email produced by UTMB that was sent on May 2, 2013 purportedly under the authority of Rick Thaler whose subject line is "Heat Precaution 2013."

**Non air-conditioned TDCJ Prison**.  This term refers to any inmate housing area in a TDCJ prison.

## Requests for Production

1. To the extent any inmate who was housed in a TDCJ air-conditioned facility has died while housed in an air-conditioned housing area from heat-related causes, please provide all documents concerning that inmate's death.  This request is limited in time from 1990 to the present.

2. Please produce all correspondence concerning extreme heat at any non-air conditioned TDCJ prisons for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

3. Please produce all correspondence concerning extreme heat at the Hutchins Unit, for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

4. Please produce all documents concerning the alleviation of extreme heat at the Hutchins Unit for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

5. Please produce all documents concerning the alleviation of extreme heat at any non-air conditioned TDCJ prisons for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

6. Please produce all documents concerning any effort to protect prisoners from extreme heat at any non-air conditioned TDCJ prisons for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

7. Please produce all documents concerning any effort to protect prisoners from extreme heat at Hutchins for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

8. Please produce all documents concerning any effort to protect employees from extreme heat at any non-air conditioned TDCJ prisons for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

9. Please produce all documents concerning any effort to protect employees from extreme heat at the Hutchins Unit for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

10. Please produce all documents concerning heat-related illnesses at any non-air conditioned TDCJ prisons for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

11. Please produce all documents concerning heat-related illnesses at the Hutchins Unit for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

12. Please produce all documents concerning heat-related deaths at the Hutchins Unit for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

13. Please produce all documents concerning heat-related deaths at any non-air conditioned TDCJ prisons for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

14. Please produce all documents concerning the extent to which TDCJ believes that the heat index is a reliable measure from which to base decisions or obtain information regarding the safety of inmates.

15. Please produce all documents concerning the extent to which UTMB believes that the heat index is a reliable measure from which to base decisions or obtain information regarding the safety of inmates.

16. Please produce all documents concerning the extent to which any individual Defendant believes that the heat index is a reliable measure from which to base decisions or obtain information regarding the safety of inmates.

17. Please produce all documents concerning how different people respond to different heat indexes, apparent temperatures, and/or humidity levels differently. This request encompasses, for example and not by limitation, all documents concerning how people who are obese, have hypertension, or take certain medications (including psychotropic medications) respond to different heat indexes, temperatures, and/or humidity levels.

18. Please produce all documents concerning any audit of heat precautions TDCJ has/had in place regarding inmates at any non-air conditioned TDCJ prisons. This request includes, but is not limited to, any audit of any database of information about heat-related illnesses or injuries.

19. Please produce all documents concerning any audit proposed, in progress, or completed concerning the extreme heat and any response to the extreme heat in any non-air conditioned TDCJ prisons. This request is limited in time to 2008 to the present.

20. Please produce all documents concerning any databases or other tracking of the number and/or nature of heat-related incidents (including, but not limited to, deaths, hyperthermia, hyponatremia, dehydration caused by exposure to extreme heat, heat stroke, heat exhaustion, or heat cramps) experienced by any inmate at any non-air conditioned TDCJ prison. This request is limited in time to 2008 to the present.

21. Please produce all documents concerning any databases or other tracking of the number and/or nature of heat-related incidents (including, but not limited to, deaths, hyperthermia, hyponatremia, dehydration caused by exposure to extreme

heat, heat stroke, heat exhaustion, or heat cramps) experienced by any UTMB or TDCJ employee at any non-air conditioned TDCJ prison. This request is limited in time to 2008 to the present.

22. Please produce the "database" referred to in Kim McLearen's June 25, 2012 email attached as **Exhibit 1**.

23. Please produce all documents concerning the "database" referred to in Kim McLearen's June 25, 2012 email (attached as **Exhibit 1**), including all documents concerning her sending the database to "senior leadership at the end of each month."

24. Please produce all documents concerning what efforts were taken to preserve electronically stored information that may be relevant to this case, including, but not limited to, any correspondence regarding the need to preserve documents such as what is typically called a "litigation hold."

25. Please produce all documents concerning any Defendant's knowledge of extreme heat conditions at any non-air conditioned TDCJ prison facility.

26. Please produce all documents concerning any Defendant's knowledge of extreme heat conditions at the Hutchins Unit.

27. Please produce all correspondence concerning the cooling of any non-air conditioned area of the Hutchins Unit.

28. Please produce all correspondence concerning the cooling of any non-air conditioned area of any TDCJ prison.

29. Please produce all documents concerning reports of compliance with any heat-related precaution.

30. Please produce all documents concerning disciplinary actions (including any warnings or reprimands) taken against any TDCJ or UTMB employee who did not comply with any heat precaution in any non-air conditioned TDCJ prison from 2008 to the present.

31. Please produce all documents concerning disciplinary actions (including any warnings or reprimands) taken against any TDCJ or UTMB employee who did not comply with any heat precaution at the Hutchins Unit, from 2008 to the present.

32. Please produce all documents concerning any meeting minutes or summary of any meeting attended by any individual Defendant where extreme heat, heat-related injuries, or heat precautions were discussed.  The definition of "meeting minutes or summary of any meeting" includes formal and informal meeting minutes and

also email correspondence or other notes that were recorded following such a meeting about the topics discussed at that meeting.

33. Please produce all agendas, minutes, or summaries for any meeting attended by any individually-named Defendant in this case where the issue of extreme heat at any non-air conditioned TDCJ prisons was discussed.

34. All documents concerning inmate access to personal fans at any non-air conditioned TDCJ prison.

35. All documents concerning inmate access to personal fans at the Hutchins Unit.

36. All documents concerning the distribution of water and/or ice to inmates at any non-air conditioned TDCJ prisons during the summer months. This request includes all documents concerning inmates' access to cups or other receptacles to hold water and/or ice.

37. All documents concerning the distribution of water and/or ice to inmates at Hutchins during the summer months. This request includes all documents concerning inmates' access to cups or other receptacles to hold water and/or ice.

38. All documents concerning TDCJ's decision to allow inmates at any non-air conditioned TDCJ prisons to wear short-sleeve shirts and/or shorts.

39. All documents concerning TDCJ's decision to allow inmates at the Hutchins Unit to wear short-sleeve shirts and/or shorts.

40. All documents concerning the procurement, use, and/or expense of swamp coolers at any non-air conditioned TDCJ prison.

41. All documents concerning the procurement, use, and/or expense of swamp coolers at the Hutchins Unit.

42. All documents concerning the procurement, use, and/or expense of misters at any non-air conditioned TDCJ prison.

43. All documents concerning the procurement, use, and/or expense of misters at the Hutchins Unit.

44. All documents concerning the procurement, use, and/or expense of air-conditioners at any non-air conditioned TDCJ prison.

45. All documents concerning the procurement, use, and/or expense of air-conditioners at the Hutchins Unit.

46. All documents concerning a safe temperature, humidity level, or heat index to which any inmate at any non-air conditioned TDCJ prison should be exposed.

47. Please produce all documents concerning your answer to any interrogatory in this case.

48. Please produce all correspondence with any testifying expert in this case concerning (i) any compensation for the expert's study or testimony; (ii) the facts or data that a party's attorney provided and that the expert considered in forming the opinions to be expressed; and (iii) the assumptions that a party's attorney provided that the expert relied on in forming the opinions to be expressed. This request includes all correspondence between counsel for any Defendant and any testifying expert concerning (i-iii) above. This request also includes any correspondence between any testifying expert and UTMB's or TDCJ's in-house counsel (such as general counsel or any assistant general counsel) concerning (i-iii) above.

49. Please produce all correspondence, including email correspondence, sent or received by all defendants in this case that are sued in their individual capacities that concerns extreme heat in any non-air conditioned TDCJ prisons.

50. Please produce all correspondence, including email correspondence, sent or received by all defendants in this case that are sued in their individual capacities that concerns extreme heat at the Hutchins Unit.

51. Please produce all correspondence, including email correspondence, sent or received by all UTMB nurses, UTMB doctors, wardens, assistant wardens, regional directors, unit directors, operations managers, and executive administrators concerning extreme heat in any non-air conditioned TDCJ prisons.

52. Please produce all correspondence, including email correspondence, sent or received by all UTMB nurses, UTMB doctors, wardens, assistant wardens, regional directors, unit directors, operations managers, and executive administrators concerning extreme heat at the Hutchins Unit.

53. Please produce all correspondence, including email correspondence, sent or received by any member of the Texas Board of Criminal Justice concerning extreme heat in any non-air conditioned TDCJ prisons.

54. Please produce all correspondence, including email correspondence, sent or received by any member of the Texas Board of Criminal Justice concerning extreme heat at the Hutchins Unit.

55. Please produce all correspondence, including email correspondence, sent or received by any member of the Texas Board of Criminal Justice concerning extreme heat precautions in any non-air conditioned TDCJ prisons.

56. Please produce all correspondence, including email correspondence, sent or received by any member of the Texas Board of Criminal Justice concerning heat precautions at the Hutchins Unit.

57. Please produce all correspondence, including email correspondence, sent or received by any member of the Texas Board of Criminal Justice concerning heat-related illnesses or heat-related deaths in any non-air conditioned TDCJ prisons.

58. Please produce all correspondence, including email correspondence, sent or received by any member of the Texas Board of Criminal Justice concerning heat-related illnesses or heat-related deaths at the Hutchins Unit.

59. All documents concerning any audit of the "Heat-Related Illness Reporting Form."

60. All documents concerning any audit of the "Heat-Related Illness Reporting Form" at the Hutchins Unit.

61. All settlement agreements concerning any dispute (including litigation) related to a heat-related illness or death in any non-air conditioned TDCJ prisons since 1998.

62. All correspondence with media concerning correctional officers' supporting prisoner litigation concerning deaths from extreme heat.

63. All correspondence concerning the report "Deadly Heat in Texas Prisons," attached as **Exhibit 2**.

64. All correspondence to media concerning extreme heat in TDCJ prisons for the period January 1, 2008 to the present.

65. All correspondence to media concerning extreme heat in prisons—or air-conditioning in Texas prisons for the period January 1, 2008 to the present.

66. To the extent you have not already provided them, temperature logs (both indoor and outdoor) from May 15 to September 15 for the years 2007 to the present for the Hutchins Unit.

## Interrogatories

1. Explain all steps you took to preserve and retrieve electronically stored information that may be relevant to this case. Include the date you took any such action. (The answer would include, at a minimum, the date and scope of any "litigation hold"; who was notified to preserve documents; what efforts were made to identify "key players" (people with knowledge) in this case; what was done to ensure all potentially relevant electronically stored information was preserved and when such acts occurred).

2. Explain the efforts that were taken or could be taken to obtain any potentially relevant electronically stored information that was either manually deleted by any computer user or that was purged consistent with any document retention policy. The answer would include, at a minimum, what efforts were taken—and could be taken—to obtain any emails, databases, or other files deleted by a user or purged in accordance with a records retention policy.

3. If any potentially electronically stored information that may have been relevant to this case is irretrievable, identify it to the best of your ability and explain why it cannot be retrieved.

4. Explain the extent to which you have back-up tapes and what information is on those back-up tapes. If any back-up tapes no longer contain electronically stored information from 2009-2012, provide the date that it was lost.

5. Identify all persons who have knowledge of any facts that may be relevant to this case, including all persons who have knowledge of any facts concerning extreme heat at any TDCJ prison facility. The term "extreme heat" in this interrogatory refers to a heat index greater than or equal to 90 degrees.

6. Identify the date upon which you anticipated litigation over the death of Larry Gene McCollum.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROXANNE MARTONE, individually and as the heir to the estate of MICHAEL MARTONE | § § § | |
| PLAINTIFF | § § § | CIVIL ACTION NO.<br>4:13-cv-03369<br>JURY DEMANDED |
| v. | § § | |
| BRAD LIVINGSTON, RICK THALER, WILLIAM STEPHENS, OWEN MURRAY, RICHARD ALFORD, JAMES JONES, LANNETTE LINTHICUM, PATRICIA RYE, PEGGY McCLESKEY, and KERRY COLLARD, in their individual capacities, the TEXAS DEPARTMENT OF CRIMINAL JUSTICE, and UNIVERSITY OF TEXAS MEDICAL BRANCH | § § § § § § § § | |
| DEFENDANTS | § § | |

**PLAINTIFF ROXANNE MARTONE'S (AS HEIR TO THE ESTATE) FIRST SET OF
REQUESTS FOR PRODUCTION AND INTERROGATORIES TO ALL DEFENDANTS**

TO:   **DEFENDANT TEXAS DEPARTMENT OF CRIMINAL JUSTICE, RICHARD ALFORD, JAMES JONES, LANNETTE LINTHICUM, KERRY COLLARD**, by and through their attorney of record, Bruce Garcia, Assistant Attorney General, P.O. Box 12548, Capitol Station Austin, Texas 78711.

**DEFENDANTS UNIVERSITY OF TEXAS MEDICAL BRANCH, OWEN MURRAY, PATRICIA RYE, PEGGY McCLESKEY** by and through their attorney of record, Kim Coogan, Assistant Attorney General, P.O. Box 12548, Capital Station Austin, Texas 78711.

**DEFENDANTS THALER, STEPHENS, AND LIVINGSTON** by and through their attorney of record, Demetri Anastasiadis, Assistant Attorney General, P.O. Box 12548, Capitol Station, Austin, Texas 78711.

COME NOW, **Roxanne Martone (as Heir to the Estate), Plaintiff** in the

above styled and numbered cause, and pursuant to and in compliance with Rules

26(b), 33, and 34 of the Federal Rules of Civil Procedure, submits this First Set of

1

Requests for Production and Interrogatories to the above Defendants, and formally requests the Defendants to produce accurate and legible copies of the following documents and things and to organize and label such documents to correspond with the numerical categories in this Request, and to serve said responses on Attorneys for Plaintiff on or before thirty (30) days after the service hereof, at the offices of The Edwards Law Firm, The Haehnel Building, 1101 East 11th Street, Austin, TX 78702.

Respectfully submitted,

The Edwards Law Firm
The Haehnel Building
1101 East 11th Street
Austin, TX 78702
       Tel.    512-623-7727
       Fax.   512-623-7729

By _____ /s/ Jeff Edwards
JEFF EDWARDS
State Bar No. 24014406
Lead Counsel
Scott Medlock
State Bar No. 24044783
Sean Flammer
State Bar No. 24059754


Brian McGiverin
State Bar No. 24067760
James C. Harrington
State Bar No. 09048500

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
(512) 474-5073 [phone]
(512) 474-0726 [fax]

ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

By my signature above, I hereby certify that the foregoing document has been served on all counsel of record **via hand delivery** on May 14, 2014, as follows:

Bruce R. Garcia
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
*Facsimile: (512) 495-9139*

Kim Coogan
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
*Facsimile: (512) 495-9139*

Demetri Anastasiadis
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
*Facsimile: (512) 495-9139*

4

## Instructions and Definitions

Instructions:

To the extent you are withholding any privileged information, please provide a privilege log.

Unless otherwise noted, all Requests for Production are limited in time from 2003 to the present.

Please produce within 30 days all documents in your possession, custody, or control responsive to these requests.

Definitions:

**Document**. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A draft of a non-identical copy is a separate document within the meaning of this term. The term includes correspondence.

**Concerning**. The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

**Correspondence.** The term "correspondence" includes emails, text messages, instant messages, letters, faxes, and any other communication reduced to a physical or electronic medium. The term "correspondence" includes communications both sent and received.

**Extreme Heat.** The term "extreme heat" refers to a heat index greater than or equal to 90 degrees.

**Heat-related illness.** The term heat-related illness incorporates heat stroke, heat exhaustion, and heat cramps, as well as any condition caused by extreme heat—including but not limited to—hyperthermia.

**Heat precautions.** The term "heat precautions" includes all efforts to train employees or inmates regarding the dangers of heat in the summer months at TDCJ prisons; all efforts to protect inmates and/or employees in the summer months at TDCJ prisons; all efforts concerning how different inmates (including those with certain health conditions or that take psychotropic medications) may respond differently to high temperatures or high heat indexes; and any other topic or concern expressed in the email produced by UTMB that was sent on May 2, 2013 purportedly under the authority of Rick Thaler whose subject line is "Heat Precaution 2013."

5

**Non air-conditioned TDCJ Prison**. This term refers to any inmate housing area in a TDCJ prison.

## Requests for Production

1. To the extent any inmate who was housed in a TDCJ air-conditioned facility has died while housed in an air-conditioned housing area from heat-related causes, please provide all documents concerning that inmate's death. This request is limited in time from 1990 to the present.

2. Please produce all correspondence concerning extreme heat at any non-air conditioned TDCJ prisons for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

3. Please produce all correspondence concerning extreme heat at the Huntsville Unit, for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

4. Please produce all documents concerning the alleviation of extreme heat at the Huntsville Unit for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

5. Please produce all documents concerning the alleviation of extreme heat at any non-air conditioned TDCJ prisons for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

6. Please produce all documents concerning any effort to protect prisoners from extreme heat at any non-air conditioned TDCJ prisons for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

7. Please produce all documents concerning any effort to protect prisoners from extreme heat at Huntsville for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

8. Please produce all documents concerning any effort to protect employees from extreme heat at any non-air conditioned TDCJ prisons for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

9. Please produce all documents concerning any effort to protect employees from extreme heat at the Huntsville Unit for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

10. Please produce all documents concerning heat-related illnesses at any non-air conditioned TDCJ prisons for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

11. Please produce all documents concerning heat-related illnesses at the Huntsville Unit for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

12. Please produce all documents concerning heat-related deaths at the Huntsville Unit for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

13. Please produce all documents concerning heat-related deaths at any non-air conditioned TDCJ prisons for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

14. Please produce all documents concerning the extent to which TDCJ believes that the heat index is a reliable measure from which to base decisions or obtain information regarding the safety of inmates.

15. Please produce all documents concerning the extent to which UTMB believes that the heat index is a reliable measure from which to base decisions or obtain information regarding the safety of inmates.

16. Please produce all documents concerning the extent to which any individual Defendant believes that the heat index is a reliable measure from which to base decisions or obtain information regarding the safety of inmates.

17. Please produce all documents concerning how different people respond to different heat indexes, apparent temperatures, and/or humidity levels differently. This request encompasses, for example and not by limitation, all documents concerning how people who are obese, have hypertension, or take certain medications (including psychotropic medications) respond to different heat indexes, temperatures, and/or humidity levels.

18. Please produce all documents concerning any audit of heat precautions TDCJ has/had in place regarding inmates at any non-air conditioned TDCJ prisons. This request includes, but is not limited to, any audit of any database of information about heat-related illnesses or injuries.

19. Please produce all documents concerning any audit proposed, in progress, or completed concerning the extreme heat and any response to the extreme heat in any non-air conditioned TDCJ prisons. This request is limited in time to 2008 to the present.

20. Please produce all documents concerning any databases or other tracking of the number and/or nature of heat-related incidents (including, but not limited to, deaths, hyperthermia, hyponatremia, dehydration caused by exposure to extreme heat, heat stroke, heat exhaustion, or heat cramps) experienced by any inmate at any non-air conditioned TDCJ prison. This request is limited in time to 2008 to the present.

21. Please produce all documents concerning any databases or other tracking of the number and/or nature of heat-related incidents (including, but not limited to, deaths, hyperthermia, hyponatremia, dehydration caused by exposure to extreme

heat, heat stroke, heat exhaustion, or heat cramps) experienced by any UTMB or TDCJ employee at any non-air conditioned TDCJ prison. This request is limited in time to 2008 to the present.

22. Please produce the "database" referred to in Kim McLearen's June 25, 2012 email attached as **Exhibit 1**.

23. Please produce all documents concerning the "database" referred to in Kim McLearen's June 25, 2012 email (attached as **Exhibit 1**), including all documents concerning her sending the database to "senior leadership at the end of each month."

24. Please produce all documents concerning what efforts were taken to preserve electronically stored information that may be relevant to this case, including, but not limited to, any correspondence regarding the need to preserve documents such as what is typically called a "litigation hold."

25. Please produce all documents concerning any Defendant's knowledge of extreme heat conditions at any non-air conditioned TDCJ prison facility.

26. Please produce all documents concerning any Defendant's knowledge of extreme heat conditions at the Huntsville Unit.

27. Please produce all correspondence concerning the cooling of any non-air conditioned area of the Huntsville Unit.

28. Please produce all correspondence concerning the cooling of any non-air conditioned area of any TDCJ prison.

29. Please produce all documents concerning reports of compliance with any heat-related precaution.

30. Please produce all documents concerning disciplinary actions (including any warnings or reprimands) taken against any TDCJ or UTMB employee who did not comply with any heat precaution in any non-air conditioned TDCJ prison from 2008 to the present.

31. Please produce all documents concerning disciplinary actions (including any warnings or reprimands) taken against any TDCJ or UTMB employee who did not comply with any heat precaution at the Huntsville Unit, from 2008 to the present.

32. Please produce all documents concerning any meeting minutes or summary of any meeting attended by any individual Defendant where extreme heat, heat-related injuries, or heat precautions were discussed. The definition of "meeting minutes or summary of any meeting" includes formal and informal meeting minutes and

9

also email correspondence or other notes that were recorded following such a meeting about the topics discussed at that meeting.

33. Please produce all agendas, minutes, or summaries for any meeting attended by any individually-named Defendant in this case where the issue of extreme heat at any non-air conditioned TDCJ prisons was discussed.

34. All documents concerning inmate access to personal fans at any non-air conditioned TDCJ prison.

35. All documents concerning inmate access to personal fans at the Huntsville Unit.

36. All documents concerning the distribution of water and/or ice to inmates at any non-air conditioned TDCJ prisons during the summer months. This request includes all documents concerning inmates' access to cups or other receptacles to hold water and/or ice.

37. All documents concerning the distribution of water and/or ice to inmates at Huntsville during the summer months. This request includes all documents concerning inmates' access to cups or other receptacles to hold water and/or ice.

38. All documents concerning TDCJ's decision to allow inmates at any non-air conditioned TDCJ prisons to wear short-sleeve shirts and/or shorts.

39. All documents concerning TDCJ's decision to allow inmates at the Huntsville Unit to wear short-sleeve shirts and/or shorts.

40. All documents concerning the procurement, use, and/or expense of swamp coolers at any non-air conditioned TDCJ prison.

41. All documents concerning the procurement, use, and/or expense of swamp coolers at the Huntsville Unit.

42. All documents concerning the procurement, use, and/or expense of misters at any non-air conditioned TDCJ prison.

43. All documents concerning the procurement, use, and/or expense of misters at the Huntsville Unit.

44. All documents concerning the procurement, use, and/or expense of air-conditioners at any non-air conditioned TDCJ prison.

45. All documents concerning the procurement, use, and/or expense of air-conditioners at the Huntsville Unit.

46. All documents concerning a safe temperature, humidity level, or heat index to which any inmate at any non-air conditioned TDCJ prison should be exposed.

47. Please produce all documents concerning your answer to any interrogatory in this case.

48. Please produce all correspondence with any testifying expert in this case concerning (i) any compensation for the expert's study or testimony; (ii) the facts or data that a party's attorney provided and that the expert considered in forming the opinions to be expressed; and (iii) the assumptions that a party's attorney provided that the expert relied on in forming the opinions to be expressed. This request includes all correspondence between counsel for any Defendant and any testifying expert concerning (i-iii) above. This request also includes any correspondence between any testifying expert and UTMB's or TDCJ's in-house counsel (such as general counsel or any assistant general counsel) concerning (i-iii) above.

49. Please produce all correspondence, including email correspondence, sent or received by all defendants in this case that are sued in their individual capacities that concerns extreme heat in any non-air conditioned TDCJ prisons.

50. Please produce all correspondence, including email correspondence, sent or received by all defendants in this case that are sued in their individual capacities that concerns extreme heat at the Huntsville Unit.

51. Please produce all correspondence, including email correspondence, sent or received by all UTMB nurses, UTMB doctors, wardens, assistant wardens, regional directors, unit directors, operations managers, and executive administrators concerning extreme heat in any non-air conditioned TDCJ prisons.

52. Please produce all correspondence, including email correspondence, sent or received by all UTMB nurses, UTMB doctors, wardens, assistant wardens, regional directors, unit directors, operations managers, and executive administrators concerning extreme heat at the Huntsville Unit.

53. Please produce all correspondence, including email correspondence, sent or received by any member of the Texas Board of Criminal Justice concerning extreme heat in any non-air conditioned TDCJ prisons.

54. Please produce all correspondence, including email correspondence, sent or received by any member of the Texas Board of Criminal Justice concerning extreme heat at the Huntsville Unit.

55. Please produce all correspondence, including email correspondence, sent or received by any member of the Texas Board of Criminal Justice concerning extreme heat precautions in any non-air conditioned TDCJ prisons.

11

56. Please produce all correspondence, including email correspondence, sent or received by any member of the Texas Board of Criminal Justice concerning heat precautions at the Huntsville Unit.

57. Please produce all correspondence, including email correspondence, sent or received by any member of the Texas Board of Criminal Justice concerning heat-related illnesses or heat-related deaths in any non-air conditioned TDCJ prisons.

58. Please produce all correspondence, including email correspondence, sent or received by any member of the Texas Board of Criminal Justice concerning heat-related illnesses or heat-related deaths at the Huntsville Unit.

59. All documents concerning any audit of the "Heat-Related Illness Reporting Form."

60. All documents concerning any audit of the "Heat-Related Illness Reporting Form" at the Huntsville Unit.

61. All settlement agreements concerning any dispute (including litigation) related to a heat-related illness or death in any non-air conditioned TDCJ prisons since 1998.

62. All correspondence with media concerning correctional officers' supporting prisoner litigation concerning deaths from extreme heat.

63. All correspondence concerning the report "Deadly Heat in Texas Prisons," attached as **Exhibit 2**.

64. All correspondence to media concerning extreme heat in TDCJ prisons for the period January 1, 2008 to the present.

65. All correspondence to media concerning extreme heat in prisons—or air-conditioning in Texas prisons for the period January 1, 2008 to the present.

66. To the extent you have not already provided them, temperature logs (both indoor and outdoor) from May 15 to September 15 for the years 2007 to the present for the Huntsville Unit.

## Interrogatories

1.  Explain all steps you took to preserve and retrieve electronically stored information that may be relevant to this case. Include the date you took any such action. (The answer would include, at a minimum, the date and scope of any "litigation hold"; who was notified to preserve documents; what efforts were made to identify "key players" (people with knowledge) in this case; what was done to ensure all potentially relevant electronically stored information was preserved and when such acts occurred).

2.  Explain the efforts that were taken or could be taken to obtain any potentially relevant electronically stored information that was either manually deleted by any computer user or that was purged consistent with any document retention policy. The answer would include, at a minimum, what efforts were taken—and could be taken—to obtain any emails, databases, or other files deleted by a user or purged in accordance with a records retention policy.

3.  If any potentially electronically stored information that may have been relevant to this case is irretrievable, identify it to the best of your ability and explain why it cannot be retrieved.

4.  Explain the extent to which you have back-up tapes and what information is on those back-up tapes. If any back-up tapes no longer contain electronically stored information from 2009-2012, provide the date that it was lost.

5.  Identify all persons who have knowledge of any facts that may be relevant to this case, including all persons who have knowledge of any facts concerning extreme heat at any TDCJ prison facility. The term "extreme heat" in this interrogatory refers to a heat index greater than or equal to 90 degrees.

6.  Identify the date upon which you anticipated litigation over the death of Michael Martone.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| KEVIN WEBB, individually and as representative of the Estate of ROBERT ALLEN WEBB, et al., *Plaintiff*, <br><br> v. <br><br> BRAD LIVINGSTON, et al *Defendants*. | § § § § § § § § § | Civil Action No. 6:13-cv-711 <br><br> CONSOLIDATED ACTIONS |

---

| | | |
|---|---|---|
| ASHLEY ADAMS, individually and as the representative of the Estate of RODNEY GERALD ADAMS, and WANDA ADAMS, individually, et al., *Plaintiffs*, <br><br><br> v. <br><br><br> Brad Livingston, et al *Defendants*. | § § § § § § § § § § § | Civil Action No. 6:13-cv-712 |

---

| | | |
|---|---|---|
| GWEN TOGONIDZE, as the next friend of J.T., a minor child and heir-at-law to the ESTATE OF ALEXANDER TOGONIDZE, *Plaintiff*, <br><br><br> v. <br><br> BRAD LIVINGSTON, et al *Defendants*. | § § § § § § § § § § § | Civil Action No. 6:14-cv-00093 |

1

## PLAINTIFF CASEY AKINS'S INTERROGATORIES TO DEFENDANTS THALER, STEPHENS, AND LIVINGSTON

TO:    **DEFENDANTS THALER, STEPHENS, AND LIVINGSTON** by and through their attorney of record, Demetri Anastasiadis, Assistant Attorney General, P.O. Box 12548, Capitol Station, Austin, Texas 78711.

COMES NOW, **Casey Akins, Plaintiff** in the above styled and numbered consolidated cause, and pursuant to and in compliance with Rules 26(b) and 33 of the Federal Rules of Civil Procedure, submit these Interrogatories to the above Defendants, and formally requestS that Defendants serve responses on Attorneys for Plaintiff on or before thirty (30) days after the service hereof, at the offices of The Edwards Law Firm, The Haehnel Building, 1101 East 11th Street, Austin, TX 78702.

Respectfully submitted,

The Edwards Law Firm
The Haehnel Building
1101 East 11th Street
Austin, TX 78702
       Tel.    512-623-7727
       Fax.   512-623-7729

By     /s/ Jeff Edwards
JEFF EDWARDS
State Bar No. 24014406
Lead Counsel
Scott Medlock
State Bar No. 24044783
Sean Flammer
State Bar No. 24059754

Brian McGiverin
State Bar No. 24067760
James C. Harrington
State Bar No. 09048500

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
(512) 474-5073 [phone]
(512) 474-0726 [fax]

ATTORNEYS FOR PLAINTIFFS

3

**<u>CERTIFICATE OF SERVICE</u>**

By my signature above, I hereby certify that the foregoing document has been served on all counsel of record **via hand delivery** on May 14, 2014, as follows:

Bruce R. Garcia
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
*Facsimile: (512) 495-9139*

Kim Coogan
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
*Facsimile: (512) 495-9139*

Demetri Anastasiadis
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
*Facsimile: (512) 495-9139*

4

## **Interrogatories**

1. Explain all steps you took to preserve and retrieve electronically stored information that may be relevant to your defense of qualified immunity.  Include the date you took any such action.  (The answer would include, at a minimum, the date and scope of any "litigation hold"; who was notified to preserve documents; what efforts were made to identify "key players" (people with knowledge) in this case; what was done to ensure all potentially relevant electronically stored information was preserved and when such acts occurred).

2. Identify the date upon which you anticipated litigation over the death of (a) Robert Allen Webb, (b) Rodney Gerald Adams, and (c) Alexander Togonidze, (d) Kenneth Wayne James, and (e) Douglas Hudson?

5

of the following documents and things and to organize and label such documents to correspond with the numerical categories in this Request, and to serve said responses on Attorneys for Plaintiff on or before thirty (30) days after the service hereof, at the offices of The Edwards Law Firm, 1101 East 11th Street, Austin, TX 78702.

Respectfully submitted,

The Edwards Law Firm
The Haehnel Building
1101 East 11th Street
Austin, TX 78702
    Tel.   512-623-7727
    Fax.   512-623-7729

By    /s/ Jeff Edwards
JEFF EDWARDS
State Bar No. 24014406
Lead Counsel
Scott Medlock
State Bar No. 24044783
Sean Flammer
State Bar No. 24059754


Brian McGiverin
State Bar No. 24067760
James C. Harrington
State Bar No. 09048500

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
(512) 474-5073 [phone]
(512) 474-0726 [fax]

ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

By my signature above, I hereby certify that the foregoing document has been served on all counsel of record **via hand delivery** on May 14, 2014, as follows:

Bruce R. Garcia
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
*Facsimile: (512) 495-9139*

Kim Coogan
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
*Facsimile: (512) 495-9139*

Demetri Anastasiadis
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
*Facsimile: (512) 495-9139*

## Instructions and Definitions

Instructions:

To the extent you are withholding any privileged information, please provide a privilege log.

Unless otherwise noted, all Requests for Production are limited in time from 2003 to the present.

Please produce within 30 days all documents in your possession, custody, or control responsive to these requests.

Definitions:

**Document**.  The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a).  A draft of a non-identical copy is a separate document within the meaning of this term.  The term includes correspondence.

**Concerning**.  The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

**Correspondence.** The term "correspondence" includes emails, text messages, instant messages, letters, faxes, and any other communication reduced to a physical or electronic medium.  The term "correspondence" includes communications both sent and received.

**Extreme Heat.**  The term "extreme heat" refers to a heat index greater than or equal to 90 degrees.

**Heat-related illness.**  The term heat-related illness incorporates heat stroke, heat exhaustion, and heat cramps, as well as any condition caused by extreme heat—including but not limited to—hyperthermia.

**Heat precautions.** The term "heat precautions" includes all efforts to train employees or inmates regarding the dangers of heat in the summer months at TDCJ prisons; all efforts to protect inmates and/or employees in the summer months at TDCJ prisons; all efforts concerning how different inmates (including those with certain health conditions or that take psychotropic medications) may respond differently to high temperatures or high heat indexes; and any other topic or concern expressed in the email produced by UTMB that was sent on May 2, 2013 purportedly under the authority of Rick Thaler whose subject line is "Heat Precaution 2013."

**Non air-conditioned TDCJ Prison**.  This term refers to any inmate housing area in a TDCJ prison.

## Requests for Production

1. To the extent any inmate who was housed in a TDCJ air-conditioned facility has died while housed in an air-conditioned housing area from heat-related causes, please provide all documents concerning that inmate's death.  This request is limited in time from 1990 to the present.

2. Please produce all correspondence concerning extreme heat at any non-air conditioned TDCJ prisons for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

3. Please produce all correspondence concerning extreme heat at the Hutchins Unit, for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

4. Please produce all documents concerning the alleviation of extreme heat at the Hutchins Unit for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

5. Please produce all documents concerning the alleviation of extreme heat at any non-air conditioned TDCJ prisons for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

6. Please produce all documents concerning any effort to protect prisoners from extreme heat at any non-air conditioned TDCJ prisons for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

7. Please produce all documents concerning any effort to protect prisoners from extreme heat at Hutchins for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

8. Please produce all documents concerning any effort to protect employees from extreme heat at any non-air conditioned TDCJ prisons for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

9. Please produce all documents concerning any effort to protect employees from extreme heat at the Hutchins Unit for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

10. Please produce all documents concerning heat-related illnesses at any non-air conditioned TDCJ prisons for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

11. Please produce all documents concerning heat-related illnesses at the Hutchins Unit for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

12. Please produce all documents concerning heat-related deaths at the Hutchins Unit for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

13. Please produce all documents concerning heat-related deaths at any non-air conditioned TDCJ prisons for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

14. Please produce all documents concerning the extent to which TDCJ believes that the heat index is a reliable measure from which to base decisions or obtain information regarding the safety of inmates.

15. Please produce all documents concerning the extent to which UTMB believes that the heat index is a reliable measure from which to base decisions or obtain information regarding the safety of inmates.

16. Please produce all documents concerning the extent to which any individual Defendant believes that the heat index is a reliable measure from which to base decisions or obtain information regarding the safety of inmates.

17. Please produce all documents concerning how different people respond to different heat indexes, apparent temperatures, and/or humidity levels differently. This request encompasses, for example and not by limitation, all documents concerning how people who are obese, have hypertension, or take certain medications (including psychotropic medications) respond to different heat indexes, temperatures, and/or humidity levels.

18. Please produce all documents concerning any audit of heat precautions TDCJ has/had in place regarding inmates at any non-air conditioned TDCJ prisons. This request includes, but is not limited to, any audit of any database of information about heat-related illnesses or injuries.

19. Please produce all documents concerning any audit proposed, in progress, or completed concerning the extreme heat and any response to the extreme heat in any non-air conditioned TDCJ prisons. This request is limited in time to 2008 to the present.

20. Please produce all documents concerning any databases or other tracking of the number and/or nature of heat-related incidents (including, but not limited to, deaths, hyperthermia, hyponatremia, dehydration caused by exposure to extreme heat, heat stroke, heat exhaustion, or heat cramps) experienced by any inmate at any non-air conditioned TDCJ prison. This request is limited in time to 2008 to the present.

21. Please produce all documents concerning any databases or other tracking of the number and/or nature of heat-related incidents (including, but not limited to, deaths, hyperthermia, hyponatremia, dehydration caused by exposure to extreme

heat, heat stroke, heat exhaustion, or heat cramps) experienced by any UTMB or TDCJ employee at any non-air conditioned TDCJ prison. This request is limited in time to 2008 to the present.

22. Please produce the "database" referred to in Kim McLearen's June 25, 2012 email attached as **Exhibit 1**.

23. Please produce all documents concerning the "database" referred to in Kim McLearen's June 25, 2012 email (attached as **Exhibit 1**), including all documents concerning her sending the database to "senior leadership at the end of each month."

24. Please produce all documents concerning what efforts were taken to preserve electronically stored information that may be relevant to this case, including, but not limited to, any correspondence regarding the need to preserve documents such as what is typically called a "litigation hold."

25. Please produce all documents concerning any Defendant's knowledge of extreme heat conditions at any non-air conditioned TDCJ prison facility.

26. Please produce all documents concerning any Defendant's knowledge of extreme heat conditions at the Hutchins Unit.

27. Please produce all correspondence concerning the cooling of any non-air conditioned area of the Hutchins Unit.

28. Please produce all correspondence concerning the cooling of any non-air conditioned area of any TDCJ prison.

29. Please produce all documents concerning reports of compliance with any heat-related precaution.

30. Please produce all documents concerning disciplinary actions (including any warnings or reprimands) taken against any TDCJ or UTMB employee who did not comply with any heat precaution in any non-air conditioned TDCJ prison from 2008 to the present.

31. Please produce all documents concerning disciplinary actions (including any warnings or reprimands) taken against any TDCJ or UTMB employee who did not comply with any heat precaution at the Hutchins Unit, from 2008 to the present.

32. Please produce all documents concerning any meeting minutes or summary of any meeting attended by any individual Defendant where extreme heat, heat-related injuries, or heat precautions were discussed.  The definition of "meeting minutes or summary of any meeting" includes formal and informal meeting minutes and

also email correspondence or other notes that were recorded following such a meeting about the topics discussed at that meeting.

33. Please produce all agendas, minutes, or summaries for any meeting attended by any individually-named Defendant in this case where the issue of extreme heat at any non-air conditioned TDCJ prisons was discussed.

34. All documents concerning inmate access to personal fans at any non-air conditioned TDCJ prison.

35. All documents concerning inmate access to personal fans at the Hutchins Unit.

36. All documents concerning the distribution of water and/or ice to inmates at any non-air conditioned TDCJ prisons during the summer months.  This request includes all documents concerning inmates' access to cups or other receptacles to hold water and/or ice.

37. All documents concerning the distribution of water and/or ice to inmates at Hutchins during the summer months.  This request includes all documents concerning inmates' access to cups or other receptacles to hold water and/or ice.

38. All documents concerning TDCJ's decision to allow inmates at any non-air conditioned TDCJ prisons to wear short-sleeve shirts and/or shorts.

39. All documents concerning TDCJ's decision to allow inmates at the Hutchins Unit to wear short-sleeve shirts and/or shorts.

40. All documents concerning the procurement, use, and/or expense of swamp coolers at any non-air conditioned TDCJ prison.

41. All documents concerning the procurement, use, and/or expense of swamp coolers at the Hutchins Unit.

42. All documents concerning the procurement, use, and/or expense of misters at any non-air conditioned TDCJ prison.

43. All documents concerning the procurement, use, and/or expense of misters at the Hutchins Unit.

44. All documents concerning the procurement, use, and/or expense of air-conditioners at any non-air conditioned TDCJ prison.

45. All documents concerning the procurement, use, and/or expense of air-conditioners at the Hutchins Unit.

46. All documents concerning a safe temperature, humidity level, or heat index to which any inmate at any non-air conditioned TDCJ prison should be exposed.

47. Please produce all documents concerning your answer to any interrogatory in this case.

48. Please produce all correspondence with any testifying expert in this case concerning (i) any compensation for the expert's study or testimony; (ii) the facts or data that a party's attorney provided and that the expert considered in forming the opinions to be expressed; and (iii) the assumptions that a party's attorney provided that the expert relied on in forming the opinions to be expressed. This request includes all correspondence between counsel for any Defendant and any testifying expert concerning (i-iii) above. This request also includes any correspondence between any testifying expert and UTMB's or TDCJ's in-house counsel (such as general counsel or any assistant general counsel) concerning (i-iii) above.

49. Please produce all correspondence, including email correspondence, sent or received by all defendants in this case that are sued in their individual capacities that concerns extreme heat in any non-air conditioned TDCJ prisons.

50. Please produce all correspondence, including email correspondence, sent or received by all defendants in this case that are sued in their individual capacities that concerns extreme heat at the Hutchins Unit.

51. Please produce all correspondence, including email correspondence, sent or received by all UTMB nurses, UTMB doctors, wardens, assistant wardens, regional directors, unit directors, operations managers, and executive administrators concerning extreme heat in any non-air conditioned TDCJ prisons.

52. Please produce all correspondence, including email correspondence, sent or received by all UTMB nurses, UTMB doctors, wardens, assistant wardens, regional directors, unit directors, operations managers, and executive administrators concerning extreme heat at the Hutchins Unit.

53. Please produce all correspondence, including email correspondence, sent or received by any member of the Texas Board of Criminal Justice concerning extreme heat in any non-air conditioned TDCJ prisons.

54. Please produce all correspondence, including email correspondence, sent or received by any member of the Texas Board of Criminal Justice concerning extreme heat at the Hutchins Unit.

55. Please produce all correspondence, including email correspondence, sent or received by any member of the Texas Board of Criminal Justice concerning extreme heat precautions in any non-air conditioned TDCJ prisons.

56. Please produce all correspondence, including email correspondence, sent or received by any member of the Texas Board of Criminal Justice concerning heat precautions at the Hutchins Unit.

57. Please produce all correspondence, including email correspondence, sent or received by any member of the Texas Board of Criminal Justice concerning heat-related illnesses or heat-related deaths in any non-air conditioned TDCJ prisons.

58. Please produce all correspondence, including email correspondence, sent or received by any member of the Texas Board of Criminal Justice concerning heat-related illnesses or heat-related deaths at the Hutchins Unit.

59. All documents concerning any audit of the "Heat-Related Illness Reporting Form."

60. All documents concerning any audit of the "Heat-Related Illness Reporting Form" at the Hutchins Unit.

61. All settlement agreements concerning any dispute (including litigation) related to a heat-related illness or death in any non-air conditioned TDCJ prisons since 1998.

62. All correspondence with media concerning correctional officers' supporting prisoner litigation concerning deaths from extreme heat.

63.  All correspondence concerning the report "Deadly Heat in Texas Prisons," attached as **Exhibit 2**.

64. All correspondence to media concerning extreme heat in TDCJ prisons for the period January 1, 2008 to the present.

65. All correspondence to media concerning extreme heat in prisons—or air-conditioning in Texas prisons for the period January 1, 2008 to the present.

66. To the extent you have not already provided them, temperature logs (both indoor and outdoor) from May 15 to September 15 for the years 2007 to the present for the Hutchins Unit.

## Interrogatories

1.  Explain all steps you took to preserve and retrieve electronically stored information that may be relevant to this case.  Include the date you took any such action.  (The answer would include, at a minimum, the date and scope of any "litigation hold"; who was notified to preserve documents; what efforts were made to identify "key players" (people with knowledge) in this case; what was done to ensure all potentially relevant electronically stored information was preserved and when such acts occurred).

2.  Explain the efforts that were taken or could be taken to obtain any potentially relevant electronically stored information that was either manually deleted by any computer user or that was purged consistent with any document retention policy.  The answer would include, at a minimum, what efforts were taken—and could be taken—to obtain any emails, databases, or other files deleted by a user or purged in accordance with a records retention policy.

3.  If any potentially electronically stored information that may have been relevant to this case is irretrievable, identify it to the best of your ability and explain why it cannot be retrieved.

4.  Explain the extent to which you have back-up tapes and what information is on those back-up tapes.  If any back-up tapes no longer contain electronically stored information from 2009-2012, provide the date that it was lost.

5.  Identify all persons who have knowledge of any facts that may be relevant to this case, including all persons who have knowledge of any facts concerning extreme heat at any TDCJ prison facility. The term "extreme heat" in this interrogatory refers to a heat index greater than or equal to 90 degrees.

6.  Identify the date upon which you anticipated litigation over the death of Larry Gene McCollum.