UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, and SANDRA McCOLLUM, individually, and STEPHANIE KINGREY, individually and as independent administrator of the Estate of LARRY GENE McCOLLUM, <br>                 PLAINTIFFS <br><br> v. <br><br> BRAD LIVINGSTON, JEFF PRINGLE, RICHARD CLARK, KAREN TATE, SANDREA SANDERS, ROBERT EASON, the UNIVERSITY OF TEXAS MEDICAL BRANCH and the TEXAS DEPARTMENT OF CRIMINAL JUSTICE. <br>                 DEFENDANTS | § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. <br> 4:14-cv-3253 |

---

**DEFENDANT UNIVERSITY OF TEXAS MEDICAL BRANCH'S OBJECTIONS TO MAGISTRATE JUDGE TOLIVER'S ORDER ON PLAINTIFFS' MOTION FOR SANCTIONS**

---

TO THE HONORABLE JUDGE ELLISON:

### INTRODUCTION

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, Defendant The University of Texas Medical Branch at Galveston ("UTMB") files these objections to the Order of January 26, 2015 of Magistrate Judge Toliver of the Northern District of Texas, Dallas Division, granting

in part Plaintiffs' Motion for Sanctions, Motion for Order to Show Cause, and Motion to Compel (the "Order"). Dkt. No. 219.[1]

Federal Rule of Civil Procedure 72(a) provides the framework for objecting to a Magistrate Judge's order on non-dispositive matters. In pertinent part, the Rule provides that parties may file objections to a Magistrate's order on non-dispositive matters within 14 days after being served with a copy of the order, and that "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). As the "district judge in [this] case," UTMB hereby timely files its objections to the Order before this Court. *See id.* As outlined below, the Order is clearly erroneous and contrary to established law in certain respects. UTMB is not objecting to the entire Order; only certain aspects of it as it relates to the award of monetary sanctions. UTMB believes that the sanctions imposed by the Order are unjust, unnecessary, and overly harsh. UTMB urges this Court to sustain its objections and modify the Order as discussed below.

## BACKGROUND

### A.    Procedural Posture

As this Court knows, the above-numbered action was previously pending in the Northern District of Texas, Dallas Division, before the Honorable Sam Lindsay. There, Plaintiffs filed their Motion for Sanctions, Motion for Order to Show Cause, and Motion to Compel (the "Motion") on May 12, 2014. Dkt. No. 164. Soon thereafter, Judge Lindsay stayed the case. Dkt. No. 162. Despite the stay, the parties fully briefed the Motion. *See* Dkt. Nos. 174, 183, 184, 185, 187, and 188. And despite the stay, UTMB continued to collect and produce

---

[1] Docket numbers referenced throughout this submission refer to documents filed in the Northern District of Texas, Dallas Division, Cause No. 3:12-cv-2037, where Plaintiffs' Motion for Sanctions, Motion for Order to Show Cause, and Motion to Compel was fully briefed and ruled upon by Magistrate Judge Toliver.

responsive documents. On November 10, 2014, Judge Lindsay transferred the case to this Court, along with four related cases involving prisoner deaths allegedly caused by heat-related injuries; another related case was already pending in this Court. Dkt. No. 215. Upon agreement of the parties, Judge Lindsay severed the Motion from the transferred action and lifted the stay. *Id*. Based upon a previously-entered order, Judge Lindsay referred the Motion to Judge Toliver for her consideration. Dkt. No. 165. On January 26, 2015, Judge Toliver granted the Motion, in part, ordering sanctions imposed against UTMB and the Texas Department of Criminal Justice ("TDCJ"). Dkt. No. 219. By this filing, UTMB objects to the Order and urges this Court to modify it as set forth below.

### B.   Background of Discovery Dispute

UTMB first responded to discovery in this case as a non-party in January 2013. At that time, it presented one of its witnesses for deposition and produced documents that were requested in a subpoena *duces tecum*. *See* **Exhibit A,** Documents Produced in Response to Plaintiffs' Subpoena *Duces Tecum*. Plaintiffs had no complaint with the documents that were produced or the deposition testimony. Plaintiffs added UTMB to this case in April 2013 but did not serve UTMB with discovery until July 2013. *See* **Exhibit B,** Plaintiffs' First Request for Production, First Set of Interrogatories, and First Requests for Admission. Among the now-pending six related cases, this case was the first filed against UTMB. In August 2013, UTMB responded to discovery with information available to it at that time. *See* **Exhibits C-1, C-2, and C-3**, UTMB's Responses to Plaintiffs' First Request for Production, First Set of Interrogatories, and First Requests for Admission. UTMB's responses to initial discovery were narrowly tailored to issues involving the decedent at issue in this case, Larry McCollum, and the facility in which he was incarcerated, the Hutchins State Jail. *Id*. UTMB's counsel conferred with the appropriate

UTMB employees to ensure all relevant documents were collected and produced. Plaintiffs made no complaint about UTMB's production nor did Plaintiffs allege that it contained any deficiencies.

Over the course of the following year, UTMB was added to five related cases, and UTMB began engaging in discovery for those cases. In April 2014, as discovery developed in this case and the other related cases, UTMB discovered a number of documents that were responsive to requests made in this case. UTMB produced those documents immediately upon discovering them and supplemented its discovery responses. *See* **Exhibits D-1 and D-2**. At that point, UTMB broadened its search for relevant information, requesting information system-wide rather than focusing on case-specific information. UTMB collected and produced documents from 139 custodians, which are responsive to Plaintiffs' discovery requests. *See* **Exhibit E.**

It is important to note that as soon as UTMB discovered that certain documents existed which had not been produced to Plaintiffs, UTMB immediately produced a "disc containing emails between UTMB-CMC employees and some TDCJ Health Services employees." *See* **Exhibit D-2**. UTMB also told Plaintiffs that it would search for and produce additional documents. *Id.* On April 29, 2014, UTMB informed Plaintiffs counsel that it would take "6-8 weeks" to complete the searches for these new documents. *See* **Exhibit F**. Additional documents were produced by UTMB on April 25, 2014 and May 23, 2014. *See* **Exhibit H**. Plaintiffs filed their Motion, seeking sanctions against UTMB and TDCJ on May 12, 2014, giving UTMB nearly no opportunity to work through the dispute without court intervention. Dkt. No. 164. Moreover, there was no reason for Plaintiffs to file the Motion since UTMB already told Plaintiffs that it would produce additional documents. Given Plaintiffs' complaints regarding Defendants' production and in an effort to resolve the discovery dispute and avoid

burdening the Court with the Motion, UTMB did two things. First, it presented its Director of Information Security, Robert Shaffer, for deposition on May 30, 2014. Mr. Shaffer testified regarding UTMB's efforts to collect and produce documents. *See* **Exhibit G**, Deposition Transcript of Robert Shaffer. Second, UTMB continued to work diligently during the stay period to supplement its disclosures and discovery responses and address production-related issues raised by the Motion. For instance, UTMB timely corrected a production error on June 16, 2014 soon after it was raised by Plaintiffs' counsel. *See* **Exhibit H**. Thereafter, UTMB worked with Plaintiffs' counsel to ensure all relevant and responsive documents were produced. UTMB provided Plaintiffs' counsel with a list of individuals whom UTMB believed might have responsive documents and from whom UTMB intended to gather additional documents. *See* **Exhibit I-1 and I-2**, Attachment to Ms. Coogan's Email to Plaintiffs' Counsel at Question 3. Plaintiffs responded to the list provided by UTMB and asked that searches be made on 11 additional custodians. *See* **Exhibit J.** UTMB agreed to add the requested individuals to the search. Further, UTMB provided Plaintiffs' counsel the search terms that UTMB intended to use to gather additional responsive documents. *See* **Exhibit K.** Plaintiffs' counsel requested additional search terms. *See* **Exhibit J.** Again, UTMB agreed to accommodate Plaintiffs' request and added 17 new search terms to the list. Overall, UTMB searched 139 individuals' electronic data using 39 search terms. As a result of UTMB's diligence to collect all relevant and responsive documents, UTMB produced 6,366 documents on December 19, 2014. *See* **Exhibit E.**

    To date, UTMB has produced documents in its possession that are responsive to Plaintiffs' discovery requests and that are addressed in the Motion. Thus, notwithstanding the stay, UTMB worked diligently to address all of Plaintiffs' concerns raised by the Motion. For

these reasons, and others explained more fully below, UTMB urges that monetary sanctions issued by Judge Toliver are completely unnecessary and overly harsh.

## LEGAL STANDARD

The Order imposes sanctions pursuant to Federal Rules of Civil Procedure 37(c) and 26(g). Rule 37(c) gives courts discretion to impose sanctions based on a party's failure to disclose information or documents. Fed. R. Civ. P. 37(c)(1). The rule makes clear that sanctions are not appropriate if the responding party's failure to disclose documents or information is "substantially justified or is harmless." *Id*. "Substantially justified" means there is a genuine dispute or that reasonable people could differ as to the appropriateness of the contested action. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Rule 37's "harmless error" analysis includes the following factors: (1) the importance of the evidence, (2) the prejudice to the opposing party of including the evidence, (3) the possibility of curing such prejudice by granting a continuance, and (4) the explanation for the party's failure to disclose. *See Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

Rule 26(a)(1)(E) requires a party to disclose information "then reasonably available to it." The Rule further requires that a party "must supplement or correct its disclosure[s] or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.…" Fed. R. Civ. P. 26(e)(1)(A). Rule 26(g) gives courts discretion to impose sanctions for a party's failure to make a reasonable inquiry in the factual basis for its discovery responses, requests, or objections. *See* Fed. R. Civ. P. 26(g), advisory committee note (1983). In making the inquiry, an attorney may rely on statements of the client as long as that reliance is appropriate under the

circumstances. Fed. R. Civ. P. 26(g), advisory committee note (1983). Again, Rule 26(g) sanctions should not be imposed if the responding party's actions are "substantially justified." Fed. R. Civ. P. 26(g)(1).

**OBJECTIONS**

The Order requires UTMB and TDCJ to bear Plaintiffs' various costs and attorneys' fees associated with the following: (1) filing the Motion, (2) six depositions of Plaintiffs' choosing to take place in the future, (3) the depositions of IT witnesses, and (4) re-opening depositions previously taken. Pursuant to Rule 72(a), UTMB objects to these sanctions, imposed for alleged bad-faith discovery conduct, as clearly erroneous and contrary to law. Fed. R. Civ. P. 72(a).

**A.     UTMB objects to the imposition of monetary sanctions of any kind, particularly for filing the Motion.**

UTMB's discovery conduct fails to warrant the extreme monetary sanctions imposed by the Order. UTMB took care to respond to discovery accurately and within the Rules of Civil Procedure with all information it had at the time. As explained above, this case was the first of several related cases filed against UTMB. Initially, UTMB limited its search for relevant information involving the decedent and facility at issue in this case. UTMB objected to broader requests as permitted by the Federal Rules. Importantly, Plaintiffs never moved to compel the Court to overrule those objections. Plaintiffs did not – at that time – complain about UTMB's document production and did not assert that the document production was in any way deficient. As UTMB was added to related cases and began conducting discovery in those cases, UTMB discovered information that was relevant to requests made in this case. UTMB immediately supplemented its discovery responses. Then, to cover all its bases, UTMB engaged in a significant ESI search for all possible documents responsive to Plaintiffs' requests in an effort to fully comply with its discovery obligations. Since then, UTMB has worked diligently with

Plaintiffs' counsel to resolve discovery-related issues and supplement its discovery responses and to produce all relevant responsive documents. As set forth above, UTMB worked with Plaintiffs' counsel to identify the custodians from whom documents would be collected and the search terms that were used to identify potentially responsive documents. As a result, in December, UTMB produced over 6,000 documents to Plaintiffs. This conduct is exactly what Rule 26(a) and (e) require. In answering initial discovery requests, UTMB disclosed relevant information based on what was "then reasonably available to it." Fed. R. Civ. P. 26(a)(1)(E). Upon discovering additional responsive information, UTMB timely supplemented its disclosures and production in accordance with Rule 26(e). At its worst, UTMB's conduct may be classified as slow to designate persons with knowledge of facts and produce relevant documents. But UTMB's conduct was substantially justified and complied with the Federal Rules of Civil Procedure; it was not intentional, willful, or conducted in bad faith. It fails to warrant the severe monetary sanctions imposed by the Order.

Further, Plaintiffs suffer no real prejudice based on UTMB's conduct. This case was stayed during the discovery period. Given the effect of the stay, UTMB's earlier production of documents would not have significantly affected Plaintiffs' case-preparation efforts. Even if UTMB produced documents earlier, Plaintiffs approach to this case would not have significantly changed and they would have spent approximately the same amount of time reviewing documents and preparing for depositions as they will now that the stay is lifted. Discovery is ongoing and this case will soon receive a new trial date. Thus, Plaintiffs will receive ample time to examine the newly-produced documents and take depositions before trial, and any prejudice is "negligible." *See Tex. A&M Research*, 338 F.3d at 402. UTMB has agreed to make any of its previously-deposed witnesses available for deposition again so that Plaintiffs can depose them

with regard to documents produced after their depositions. UTMB agreed that these depositions should take place in Austin, Texas where Plaintiffs' counsel resides. Simply put, Plaintiffs have not been prejudiced at all as a result of the delay in producing some of UTMB's documents and certainly, Plaintiffs have suffered no harm. UTMB's conduct is justified and harmless. Its objections to the Order's monetary sanctions should be sustained and the Order reversed.

Finally, the Motion was premature and unnecessary. UTMB has, throughout this case, cooperated with Plaintiffs' counsel to resolve any discovery disputes. Plaintiffs did not identify any deficiencies in UTMB's document production until April 24, 2014. As soon as these deficiencies were identified, UTMB immediately undertook a process to rectify and address the deficiencies in its document production including working with Plaintiffs' counsel to identify the custodians to be searched and the search terms to be used. Moreover, UTMB informed Plaintiffs' counsel that it agreed to run searches on these new custodians and to produce all of the responsive documents generated from the search. In other words, UTMB told Plaintiffs' counsel that it would cure and address the complaints that they raised. Rather than wait for that cooperative process to be completed, Plaintiffs chose to file their Motion on May 12, 2014 – less than three weeks later – and before UTMB could address the alleged deficiencies in its document production. Even though UTMB was under no obligation to do so, it has continued to search for and produce responsive documents during the time period that this case was stayed. Simply put, there was no need for Plaintiffs to file their Motion. UTMB would have – as it has done – produced responsive documents and supplemented its discovery responses without the need for a sanctions motion. Plaintiffs should not be rewarded for the filing of a premature and unnecessary motion by being awarded its attorneys fees for the filing it. Rather, parties – including Plaintiffs – should be encouraged to try and resolve discovery disputes themselves

without filing needless motions with the Court. *See Belue v. Wayne Farms, LLC*, Civil Action No. 2:07-cv-1004-KS-MTP, 2:07-cv-1005-KS-MTP, 2008 WL 4793753, at *1 (S.D. Miss. Oct. 31, 2008) (the purpose of Rule 37 is "to encourage parties to confer between or among themselves and to avoid using the limited time and resources of the Court on routine discovery disputes."). Instead of filing this unnecessary Motion, Plaintiffs should have given UTMB an opportunity to cure its document production and responses to discovery requests – which it has done.

> **B.     UTMB objects to sanctions imposed for six depositions of Plaintiffs' choosing.**

Judge Toliver ordered that UTMB and TDCJ bear Plaintiffs' costs and attorneys' fees associated with "six depositions that Plaintiffs may choose to undertake of witnesses who were previously undisclosed by Defendants." Dkt. No. 219 at 21. It is expected that this Court will soon enter a new scheduling order to govern this case and the related cases. Plaintiffs will most certainly use this opportunity to expand discovery and to conduct additional depositions. UTMB presumes that Plaintiffs will depose as many witnesses as possible in order to lay the ground work for possible theories and strategies for the related cases that will follow. Thus, Plaintiffs will plan to take at least six additional depositions moving forward. These depositions will be taken regardless of the delay in UTMB's document production. The Order needlessly requires UTMB and TDCJ to pay for them and there is no basis for doing so.

Further, Plaintiffs did not request this sanction. While it is true that courts have discretion to sanction parties for bad-faith conduct, because of the "very potency" of a court's inherent powers, the court must exercise them "with restraint and discretion." *Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991). Grounds for sanctions imposed pursuant to a court's inherent powers include bad faith, willful disobedience of a court order, or fraud on the court. *See id.* at

45-56. UTMB objects to the characterization of its conduct as being in bad faith, willful disobedience of a court order, or fraud. As fully explained above, UTMB's actions were substantially justified and there is absolutely no basis for this sanction.

Further, sanctions must be quantifiable with some precision and tailored to fit the particular wrong. *Topalian v. Ehrman*, 3 F.3d 931, 936 (5th Cir. 1993). A court must demonstrate some connection between the amount of monetary sanctions it imposes and the sanctionable conduct by the violating party. *Id*. at 937. Here, the Order fails to connect the cost of six depositions of Plaintiffs' choosing with UTMB's allegedly sanctionable conduct. *See* Dkt. No. 219 at 21. The Order simply states that "an additional sanction is warranted" with no explanation as to what sanctionable conduct the additional sanction applies. *Id*. Rather, it seems the additional sanction is "vindictive or an overly harsh reaction[] to objectionable conduct" that is prohibited. *Topalian*, 3 F.3d at 937. This sanction is overly harsh and unjust, and UTMB urges this Court overrule it.

      **C.**      **UTMB objects to sanctions imposed regarding the deposition witnesses regarding document retention.**

The Order requires UTMB to produce an appropriate witness for deposition to testify regarding the litigation holds that were used in this case and UTMB's document-retention policy. The Order also requires that UTMB pay Plaintiffs' costs and fees associated with this deposition. Dkt. No. 219 at 12. It is important to note that UTMB produced documents reflecting the litigation hold it put in place and its retention schedules for documents. And UTMB provided Plaintiffs' counsel with a detailed multi-page explanation of the process that was used to identify and collect document in this case. All of these documents were marked as exhibits to Mr. Shaffer's deposition. *See* **Exhibit G**. Thus, Plaintiffs have already been provided with detailed information concerning the litigation holds that were put in place in this case, the dates of those

holds, the names of the employees from whom documents were retrieved, and the process that was used to collect documents in this case. Further, UTMB's document-retention policy has been produced in its entirety. And Plaintiffs' counsel deposed Robert Shaffer, UTMB's Director of Information Security, who testified at length regarding UTMB's document preservation and retrieval processes. Even though the information was produced in written format, at the end of Mr. Shaffer's deposition, UTMB offered to produce a separate witness to specifically address UTMB's litigation hold and document-retention policy. While there is no need to depose another witness with regard to the litigation holds and UTMB's document-retention policy, UTMB is willing to do so, but it should not have to pay Plaintiffs' costs and fees associated with it. The written documentation concerning these two issues was produced to Plaintiffs long ago. There is no need to depose a witness to have them confirm what is contained in a written document. But if Plaintiffs want to do so, it should be at their expense, not at UTMB's expense.

> **D.     UTMB objects to sanctions imposed for re-opening depositions previously taken.**

The Order requires UTMB and TDCJ to bear Plaintiffs' costs and fees associated with opening any previously-taken deposition to cover recently-produced documents. Dkt. No. 219 at 15. UTMB already agreed to make available any UTMB witnesses previously deposed by Plaintiffs. UTMB strongly disagrees that it should pay for Plaintiffs' costs and fees associated with those depositions. Plainly, Plaintiffs suffer no prejudice by re-opening these depositions. If documents were produced before the depositions, Plaintiffs would have spent approximately the same amount of time preparing for and questioning witnesses regarding those documents as they would at the re-opened deposition. Judge Toliver agrees that "[i]t is unclear … what additional attorneys' fees Plaintiffs will incur by having to reopen some depositions since they presumably would have spent the same amount of time reviewing the newly-disclosed documents in

preparation for the initial depositions as they will in preparation for the reopened depositions." *Id*. This sanction creates a windfall for Plaintiffs' counsel; it is unnecessary and should be overruled. In the alternative, the Court should clarify that Plaintiffs are only entitled to recover any fees for re-deposing witnesses to the extent that they are able to prove that the fees were incurred only as a result of the delayed document production and that the Plaintiffs bear the burden of proof on this issue.

Should this Court disagree, UTMB urges that it only bear Plaintiffs' costs and fees associated with re-opening UTMB's depositions. The Order states that UTMB and TDCJ must "equally bear the costs associated with Plaintiffs' taking any additional depositions that need to be reopened…" Dkt. No. 219 at 15. Of the 14 depositions taken in this case, only two are UTMB witnesses. UTMB should not bear any costs associated with re-opening depositions of TDCJ witnesses, and vice versa. Thus, UTMB requests that this Court modify the Order to make it clear that UTMB is only potentially responsible for costs associated with the re-opening of its witnesses depositions (and not TDCJ's witnesses), only upon Plaintiffs meeting the burden of proof specified above.

  **E.**  **UTMB objects to jurisdiction in the Northern District of Texas for any future discovery disputes.**

The Order alludes to continued jurisdiction over future discovery disputes in the Northern District of Texas, to which UTMB objects. For example, the following statement from the Order causes UTMB concern:

> The Court has imposed substantial sanctions in this case and will consider additional sanctions should Defendants choose a similar course of action in the future. Dkt. No. 219 at 24.

While UTMB agreed to sever the Motion to remain in the Northern District of Texas for its determination, it did not agree that all future discovery disputes be handled there. The Motion

alone was severed from this action.  *See* Dkt. No. 215.  Upon entry of the Order, jurisdiction is no longer proper in the Northern District of Texas for any matter involving this case.  All of the related cases are currently pending in the Southern District and Texas, where all future discovery disputes should be resolved.

## CONCLUSION

UTMB's discovery conduct fails to warrant the harsh sanctions imposed by the Magistrate Judge's Order.  Throughout discovery, UTMB has been candid and willing to work with Plaintiffs' counsel through any discovery disputes without court intervention.  Accordingly, the Order is clearly erroneous and contrary to established law.  UTMB urges this Court to sustain its objections outlined herein and modify the Order as discussed above.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**CHARLES E. ROY**
First Assistant Attorney General

**JAMES E. DAVIS**
Deputy Attorney General for Civil Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division

*/s/ J. Lee Haney*
**J. LEE HANEY**
Attorney-in-Charge
Assistant Attorney General
Texas Bar No. 00784203

Shanna Elizabeth Molinare
Assistant Attorney General
Texas Bar No. 24041506

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080
(512) 936-2109 (Fax)


**BECK REDDEN LLP**
1221 McKinney St., Suite 4500
Houston, TX 77010-2010
(713) 951-3700
(713) 951-3720 (Fax)

Alistair Dawson
State Bar No. 05596100
Kate Skagerberg
State Bar No. 24058578
Leslie Honey Tronche
State Bar No. 24078681

**ATTORNEYS FOR DEFENDANT UNIVERSITY OF TEXAS MEDICAL BRANCH**