Exhibit C 1

*1278.013-p      D 384855*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN McCULLOM, *et al.*, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 3:12-CV-02037 |
| BRAD LIVINGSTON, *et al.*, | § | |
| *Defendants*. | § | |

### DEFENDANT UNIVERSITY OF TEXAS MEDICAL BRANCH'S ANSWERS TO PLAINTIFF SANDRA McCOLLUM'S FIRST SET OF INTERROGATORIES

TO:  Sandra McCollum, by and through her attorneys of record, Jeff Edwards, The Edwards Law Firm, 1101 E. 11th Street, Austin, Texas 78702 and Scott Medlock, Texas Civil Rights Project, 1405 Montopolis, Austin, Texas 78741.

The University of Texas Medical Branch, Defendant in the above-styled and numbered cause, offers the following Answers to Plaintiff's First Set of Interrogatories.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Defense Litigation

KAREN D. MATLOCK
Assistant Attorney General
Chief, Law Enforcement Defense Division

KIM COOGAN
Assistant Attorney General
State Bar No. 00783867
P. O. Box 12548, Capitol Station
Austin, Texas  78711

1

(512) 463-2080/Fax (512) 495-9139

**ATTORNEYS FOR DEFENDANT**
**UNIVERSITY OF TEXAS MEDICAL BRANCH**

**CERTIFICATE OF SERVICE**

I, KIM COOGAN, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Defendant University of Texas Medical Branch's Answers to Plaintiff Sandra McCollum's First Set of Interrogatories** has been served by placing same in the United States Mail on this the 2nd day of August, 2013, addressed to:

Jeff Edwards
The Edwards Law Firm
1101 E. 11th Street
Austin, Texas  78702

Scott Medlock
Texas Civil Rights Project
1405 Montopolis Drive
Austin, Texas  78741

Bruce Garcia            (Via Hand Delivery)
Assistant Attorney General
Office of the Attorney General
P. O. Box 12548
Austin, Texas  78711

KIM COOGAN
Assistant Attorney General

2

## FIRST SET OF INTERROGATORIES

1.  Identify all steps UTMB took to protect Larry McCollum from heat index temperatures in the Hutchins Unit in excess of 90 degrees.

    **ANSWER: At the time Mr. McCollum died, he had not yet been seen by a UTMB medical provider, and accommodations had not yet been requested by McCollum nor provided by UTMB. Further, UTMB does not monitor or control the indoor temperatures at the Hutchins unit.**

2.  Identify all heat-related deaths (including, but not limited to, fatalities where the cause of death is listed as "hyperthermia") of inmates in Texas Department of Criminal Justice facilities in which UTMB provided medical care between January 1, 1993 to the present.

    **ANSWER:  UTMB is unable to answer this question. UTMB does not create, keep or maintain records of inmate deaths by the category "cause of death" or "hyperthermia". Nor does it maintain a list or record of inmate deaths in the usual course of business. Further, Defendant objects to this interrogatory as privileged to the extent it seeks information protected by V.T.C.A. Health and Safety Code §161.032, V.T.C.A. Occupations Code §160.007, or §303.006."**

3.  Identify all heat-related injuries (refer to definition paragraph R) to inmates in Texas Department of Criminal Justice facilities in which UTMB provided medical care between January 1, 1993 to the present.

    **ANSWER: OBJECTION. This request is overbroad in scope and time. UTMB is unable to answer this question. UTMB does not keep or maintain records, other than individual medical records, which reflect "heat-related injuries" as defined in paragraph R. A review of the individual medical records of all 150,000 inmates, system wide, for a 20 year period would create an undue burden and hardship on defendant. Even a review of records of any inmate who has served time in the Hutchins unit would cause an undue burden and hardship. Further, defendant TDCJ has already provided records of those inmates, system wide, who allegedly died from a heat related illness or injury. Finally, the requested information is irrelevant to any material issue in this case and unlikely to lead to the discovery of admissible evidence in this disability discrimination case.**

4.  Identify all heat-related injuries to inmates in the Hutchins Unit between January 1, 2002 and the present.

    **ANSWER: OBJECTION. This request is overbroad in scope and time. UTMB is unable to answer this question. UTMB does not keep or maintain records, other than individual medical records, which reflect "heat-related injuries" as defined in paragraph R. A review of the individual medical records of all 150,000 inmates, system wide, for a 20 year period would create an undue burden and hardship on defendant. Even a review of records of any inmate who has served time in the Hutchins unit would cause an undue burden and hardship. Further, defendant TDCJ has already provided records of those inmates, system wide, who allegedly died from a heat related illness or injury. Finally, the**

3

requested information is irrelevant to any material issue in this case and unlikely to lead to the discovery of admissible evidence in this disability discrimination case.

5.  Identify all heat-related injuries to employees of the University of Texas Medical Branch working in Texas Department of Criminal Justice facilities between January 1, 2002 to the present, including, but not limited to, injuries where employees filed workers compensation claims.

    **ANSWER: OBJECTION. This request is overbroad in scope and time, and is an impermissible fishing expedition. This request seeks information irrelevant to any material issue in this case, and unlikely to lead to the discovery of admissible evidence as medical personnel and inmates are not similarly situated.**

6.  Identify all heat-related injuries to employees of the University of Texas Medical Branch in the Hutchins Unit between January 1, 2002 to the present, including, but not limited to, injuries where employees filed workers compensation claims.

    **ANSWER: OBJECTION. This request is overbroad in scope and time, and is an impermissible fishing expedition. This request seeks information irrelevant to any material issue in this case, and unlikely to lead to the discovery of admissible evidence as medical personnel and inmates are not similarly situated.**

7.  Identify all persons who authorized Larry McCollum's placement in each housing area he spent time in during his 2011 incarceration at the Hutchins Unit and describe in detail the basis for each placement. A response to this interrogatory should identify each location Larry McCollum was housed, including building, bunk number, whether he was assigned to an upper or lower bunk, and a description of any recommendations UTMB employees made that contributed to that placement.

    **ANSWER: Unknown to this defendant. UTMB does not assign offender housing.**

8.  Please describe in detail all steps that you have taken to bring your programs at the Hutchins Unit into compliance with the Americans with Disabilities Act and the Rehabilitation Act. Please include information about what modifications (if any) have been made at the prison, whether a transition plan and self-evaluation have been completed (as those terms are used in the ADA), and what services and programs at the jail exist to accommodate inmates' disabilities.

    **ANSWER: OBJECTION. This request is vague, overly broad, unduly burdensome, ambiguous, not limited in time and scope, and not reasonably calculated to lead to the discovery of admissible evidence. Further, the ADA was passed in 1990, and modifications to physical units and policies have been made which are too varied and numerous to list. All policies related to the claims made in this lawsuit have been produced.**

9.  Please identify each person who provided information or assisted in any way in answering these interrogatories, and as to each such person, please indicate the discovery request with respect to which he or she was involved.

    **ANSWER: Dr. Glenda Adams, along with counsel.**

4

10. Please identify all prisoners in the Hutchins Unit who have, at any time, been given "heat restrictions" (see Definition S), or otherwise had any prison activities limited due to medical conditions adversely effected by heat or high temperatures, since January 1, 2011, and the time frames in which the prisoners had those restrictions.

**ANSWER: Defendant objects to this interrogatory as being vague, overly broad, unduly burdensome, ambiguous, not limited in time and scope, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request to the extent it seeks information which unreasonably invades the privacy of individuals who are not parties to this lawsuit and to the extent that it seeks information protected by the Health Insurance Portability and Accountability Act of 1996. Subject thereto and without waiving said objections, Defendant states said information is not categorically tracked by Defendant. Defendant does not create or maintain a record which would provide the requested information.**

11. Please describe in detail "heat restrictions" assigned to prisoners at the Hutchins Unit, including, but not limited to, why prisoners are assigned these conditions and what action (if any) UTMB takes when a prisoner is assigned "heat conditions."

**ANSWER: OBJECTION. This request is vague as to the person or entity assigning the "heat restriction", or why they are assigned. UTMB has no knowledge of restrictions placed on inmates by TDCJ, if any. With regard to UTMB, please see CMC policy B-15.2 for the most comprehensive explanation of guidelines to assist prison facility administration in the determination of safe and healthful work conditions. Please also see TDCJ policy AD-10.64 for guidelines to assist unit administration in adapting offender work assignments to temperatures in the work environment that cannot be controlled by TDCJ or UTMB. Please see CMC policy A-08.4 for information regarding medical and or mental health limitations for the offender population. All of these policies have previously been produced, but are produced again herein.**

12. Please describe in detail when and why UTMB stopped providing 24-hour medical care at the Hutchins Unit and who made the decision to end 24-hour care at the Hutchins Unit.

**ANSWER: Hutchins has never operated a 24 hour care facility.**

13. Please describe the amount of time that passes between the moment a new inmate arrived at the Hutchins Unit in 2011 and the time when he received his intake physical. A response to this interrogatory should include the average amount of time that elapses from when the prisoner physically arrives at the unit to when he sees a doctor (or physician's assistant) who performs a physical examination.

**ANSWER: OBJECTION. This request is vague and overbroad. Each inmate has different medical conditions which may affect when he is seen and for what purpose. Further, new offenders are screened upon arrival to TDCJ for urgent or emergent conditions requiring immediate attention. If immediate attention is needed, a new arrival is seen immediately. A complete healthcare appraisement of new, non-emergency offenders is subsequently scheduled and consists of obtaining personal and medical baseline data; medical, mental health and dental histories; physical, dental and mental health**

5

assessments; and diagnostic procedures as needed. Offenders are screened for communicable diseases and pregnancy; and provided with appropriate inoculations. Offenders' health records are requested from free-world physicians and/or hospitals as needed. In addition, offenders are provided orientation and a handbook on how to access health care.

Offenders identified as requiring a mental health assessment are interviewed, tested and evaluated by a qualified mental health professional. The automated "Health Summary for Classification" screen is completed or updated as needed. Medications, appointments, and referrals are scheduled as appropriate based upon the results of the health appraisal. Every effort is made to complete the comprehensive health appraisal within seven days.

More specifically, for these reasons, defendant is unable to provide "the amount of time that passes between the moment a new inmate arrives at the Hutchins Unit in 2011 and the time when he received his intake physical".

VERIFICATION

THE STATE OF TEXAS                                          *
                                                            *
COUNTY OF _Walker_                                          *

    BEFORE ME, the undersigned notary, on this day personally appeared Dr. Glenda Adams, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

    "My name is Dr. Glenda Adams, I am capable of making this verification. I read Defendant's Answers to Plaintiff's Interrogatories Nos. 1, 2, 3, 4, 7, 8, 10, 11, 12, and 13. The facts stated in it are within my personal knowledge and are true and correct.

_____
Affiant

SIGNED AND SWORN TO before me on this 31st day of _July_, 2013, to certify which witness my hand and seal of office.

PHOEBE M. LANGLEY
Notary Public, State of Texas
My Commission Expires
December 30, 2015

_____
Notary Public, In and for the
State of Texas