UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STEPHEN McCOLLUM, and SANDRA McCOLLUM, individually, and STEPHANIE KINGREY, individually and as independent administrator of the Estate of LARRY GENE McCOLLUM,<br>　　　　　　　PLAINTIFFS<br><br>v.<br><br>BRAD LIVINGSTON, JEFF PRINGLE, RICHARD CLARK, KAREN TATE, SANDREA SANDERS, ROBERT EASON, the UNIVERSITY OF TEXAS MEDICAL BRANCH and the TEXAS DEPARTMENT OF CRIMINAL JUSTICE.<br>　　　　　　　DEFENDANTS | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§  CIVIL ACTION NO.<br>§  4:14-cv-3253<br>§  JURY DEMAND<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiffs file the following Response to Defendant Brad Livingston's Notice of Supplemental Authority (Doc. 242).

The Supreme Court's recent *per curiam* decision in *Taylor v. Barkes* is extremely limited – that "an incarcerated person's right to the proper implementation of adequate suicide prevention protocols" was not clearly established in the Third Circuit, in 2004, pursuant to the Court's qualified immunity analysis. 575 U.S. ____ (June 1, 2015) (slip. op. at 4).

*Taylor* is very different from this case. At the time Mr. McCollum suffered a heat stroke at the Hutchins State Jail in summer 2011, prisoners had a clearly established right to be protected from dangerous indoor temperatures. *See, e.g., Gates v. Cook*, 376 F.3d 323, 340 (5th Cir. 2004). Here, Mr. McCollum has alleged that Livingston, the executive

director of the Texas Department of Criminal Justice, actually knew that prisoners were dying because of brutally hot indoor temperatures – that his annual decision to house prisoners with heat-sensitive medical conditions in cellblocks without climate controls put prisoners at "substantial risk of serious harm." *See*, *e.g., Gates*, 376 F.3d at 333. In other words, Plaintiffs allege that *despite* Livingston's remedial measures, regardless of implementation, that Livingston still knew the prisons were dangerous and that people were dying of heat stroke or being seriously injured by the heat.

Indeed, in *Blackmon v. Garza*, 484 Fed. Appx. 866, 871-73 (5th Cir. 2012), the Fifth Circuit held "a reasonable jury [could] conclude that the extreme heat in Blackmon's dorm caused substantial health risks to Blackmon" – and TDCJ's remedial measures in 2008 when Blackmon was injured "were inadequate to satisfy the Eighth Amendment's demands."[1] This Court previously denied near-identical motions to dismiss in parallel litigation, concluding "it was not only obvious, but known, that the failure to protect heat-sensitive inmates from the extreme temperatures would result in heat-related illness and death. Indeed, fourteen prisoners died of heat-related causes from 2007 through 2012." *Martone v. Livingston*, 2014 WL 3534696, *7 (S.D. Tex. July 16, 2014) (Ellison, J.). While it was far from obvious in *Taylor* that Delaware executives would know a medical provider was not following a contractual provision (that the Delaware executives presumably required) to conduct adequate suicide screening protocols, and also actually knew that inmates were dying as a result,[2] Plaintiffs allege Livingston

---

[1] The TDCJ remedial measures have not changed since 2008.

[2] Indeed, the Third Circuit's opinion, which denied qualified immunity to the executives, contains no indication the Delaware executives did know that other prisoners died

knowingly exposed (and continues to expose) prisoners to hazardous temperatures every summer, and knew prisoners had died of heat stroke before. *See* Second Amended Complaint, Doc. 119, ¶¶ 97-98. Thus, the narrow ruling in *Taylor* is simply inapplicable to this case.

This case is also very different from the alleged failure to properly monitor a contract medical provider at issue in *Taylor*. 575 U.S. at _____ (slip op. at 2). In *Taylor*, the executives required a measure the medical contractor (arguably) did not follow.[3] *Id*. Here, Plaintiffs allege Livingston knew the allegedly in place were inadequate, and, in fact, the measures had failed to prevent previous deaths. *See* Doc. 119, ¶¶ 97-98. Plaintiffs allege Livingston not only oversaw a system-wide dangerous condition, he refused to make indoor temperatures safe during summer months when they knew heat indexes rose to dangerous levels. The Fifth Circuit has previously held extreme heat is an obvious danger. *See Blackmon v. Garza*, 484 Fed. Appx. 866, 873 (5th Cir. 2012) ("a jury could reasonably conclude that the heat-related health risks to [the prisoner] were obvious"). In contrast, in *Taylor* it was far from obvious that Delaware executives would both know the medical provider was not following a contractual provision, and that prisoners were being injured as a result.

---

because of how the contract was being implemented, or even that any other prisoners *did* die. *See See Barkes v. First Correctional Medical*, 766 F.3d 307, 312-13 (3rd Cir. 2014).

[3] From the Third Circuit's opinion, it is unclear what the contract even required of the provider. The contract, signed in 2002, required the provider to follow the National Commission on Correctional Health Care's suicide screening standards. At the time the contract was signed, the NCCHC had last adopted new standards in 1997, which required use of a screening form. But in 2003, after the contract was signed but before Mr. Barkes committed suicide, the NCCHC revised its standards and moved to a narrative evaluation. *See Barkes v. First Correctional Medical*, 766 F.3d 307, 312-13 (3rd Cir. 2014).

3

Livingston's obligation to protect prisoners from these temperatures was clearly established, and he knew certain prisoners – men like Mr. McCollum – were at particular risk. And he chose to only implement measures the Fifth Circuit previously held a jury could conclude were "inadequate." *Blackmon*, 484 Fed. Appx. at 871. Thus, Livingston is not entitled to qualified immunity and his motion to dismiss should be denied.

                                                Respectfully submitted,

EDWARDS LAW
The Haehnel Building
1101 East 11th Street
Austin, Texas 78702
Tel.   512-623-7727
Fax.   512-623-7729

By    /s/ Jeff Edwards
JEFF EDWARDS
State Bar No. 24014406
Scott Medlock
State Bar No. 24044783
Lead Counsel

Brian McGiverin
State Bar No. 24067760
James C. Harrington
State Bar No. 09048500
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Dr.
Austin, TX 78741
(512) 474-5073 [phone]
512 474-0726 [fax]

Eliot Shavin
State Bar No. 18138200
2600 State Street
Dallas, Texas 75204
214-522-2010 (telephone)
214-720-9594 (fax)
Local Counsel
ATTORNEYS FOR PLAINTIFFS

4

**CERTIFICATE OF SERVICE**

      By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Southern District of Texas.