UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STEPHEN McCOLLUM, et al., § | |
|    Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:14-cv-03253 |
| § | |
| BRAD LIVINGSTON, et al., § | |
|    Defendants. § | |

## DEFENDANT UNIVERSITY OF TEXAS MEDICAL BRANCH'S
## ANSWER TO PLAINTIFFS' (MCCOLLUM) SECOND AMENDED COMPLAINT

Defendant University of Texas Medical Branch at Galveston ("UTMB") submits this Answer to Plaintiffs' Second Amended Complaint.[1]

### I.
### STATEMENT OF THE CASE

Stephen McCollum ("McCollum") was an inmate housed at the Hutchins Unit of the Texas Department of Criminal Justice ("TDCJ"). Plaintiffs purport to be survivors of McCollum. Plaintiffs allege that McCollum was disabled because he suffered from hypertension, diabetes, and obesity. Dkt. 119 at 23-41. They allege that the Defendants failed to reasonably accommodate McCollum's alleged disabilities by failing to protect him from "extreme" temperatures and make adequate housing assignments, among other things. Dkt. 119 at 144-159. On July 22, 2011, McCollum started convulsing and died six days later. Dkt. 119 at 70-86. An autopsy concluded that McCollum died as a result of hyperthermia. Dkt. 199 at 86. Plaintiffs brought suit based on his death.

---

[1] Plaintiffs are not opposed to the filing of this answer.

1

Plaintiffs sued UTMB and TDCJ for violations of the Americans with Disabilities Act ("ADA"), the Americans with Disabilities Amendments Act ("ADAAA"), and the Rehabilitation Act ("RA") for allegedly failing to provide reasonable accommodations to McCollum. Dkt. 119 at 148-155. Further, Plaintiffs sued a number of individual TDCJ defendants pursuant to 42 U.S.C. § 1983. Dkt. 119 at 144-147, 156-159.

## II.
## ANSWER

Pursuant to Federal Rule of Civil Procedure 8(b), and for the express purpose of requiring Plaintiffs to meet their burden of proof, UTMB hereby denies each and every allegation contained in Plaintiffs' Second Amended Complaint (Dkt. No. 119), except those expressly admitted herein.

1. UTMB is unable to admit or deny the allegations regarding Plaintiff Stephen McCollum.

2. UTMB is unable to admit or deny the allegations regarding Plaintiff Stephanie Kingrey.

3. UTMB is unable to admit or deny the allegations regarding Plaintiff Sandra McCollum.

4. UTMB is unable to admit or deny the allegations against Defendants Livingston, Eason, Clark, Tate, Sanders and Pringle.

5. UTMB denies that it is liable for the deprivation of McCollum's rights under Title II of the ADA, the ADAAA, and/or the RA. UTMB is unable to admit or deny the allegations against Defendant TDCJ.

6. UTMB admits this court has jurisdiction over this action.

7. UTMB admits venue is proper.

8. UTMB is unable to admit or deny the factual assertions regarding the Plaintiffs' relationship with McCollum, the capacity in which they sue, and where they reside.

9. UTMB is unable to admit or deny the factual assertions regarding the Plaintiffs' relationship with McCollum, the capacity in which they sue, and where they reside.

10. UTMB is unable to admit or deny the factual assertions regarding the Plaintiffs' relationship with McCollum, the capacity in which they sue, and where they reside.

11. UTMB is unable to admit or deny the factual assertions regarding the Plaintiffs' relationship with McCollum, the capacity in which they sue, and where they reside.

12. UTMB is unable to admit or deny the factual assertions regarding Defendant Brad Livingston.

13. UTMB is unable to admit or deny the factual assertions regarding Defendant Robert Eason.

14. UTMB is unable to admit or deny the factual assertions regarding Defendant Jeff Pringle.

15. UTMB is unable to admit or deny the factual assertions regarding Defendant Richard Clark.

16. UTMB is unable to admit or deny the factual assertions regarding Defendant Karen Tate.

17. UTMB is unable to admit or deny the factual assertions regarding Defendant Sandrea Sanders.

18. UTMB admits it is located in Galveston, Texas, and is a component of the University of Texas system. UTMB admits that it was the medical provider at the Hutchins State Jail at the time of McCollum's death and that it receives federal funds. UTMB denies that McCollum was a qualified individual for purposes of the ADA, ADAAA, and RA to receive any services provided by UTMB. UTMB is unable to admit or deny whether it is sued for declaratory, injunctive, and compensatory relief. UTMB admits it has appeared in this litigation.

19. UTMB is unable to admit or deny the allegations regarding TDCJ.

20. UTMB is unable to admit or deny the National Weather Service statistics. UTMB denies that McCollum was a victim of heat.

21. UTMB is unable to admit or deny the allegations regarding temperature in the Dallas area.

22. UTMB is unable to admit or deny allegations regarding TDCJ employees' knowledge. UTMB admits that certain UTMB officials would have known at the time that Dallas was experiencing a heat wave in July 2011, but denies that UTMB officials knew inmates were at risk of heat related death at area prisons.

23. UTMB admits that McCollum was 58 years old when he died. UTMB admits that certain UTMB employees knew that McCollum was overweight, morbidly obese, and had a history of hypertension. UTMB denies that UTMB employees knew that Mr. McCollum

was suffering from diabetes.  UTMB is unable to admit or deny allegations regarding TDCJ or its employees' knowledge.

24. UTMB denies that hypertension is a cardiovascular disease.  UTMB admits that for some patients, hypertension can lead to stroke and heart attacks.  UTMB is unable to admit or deny whether hypertension is the leading cause of stroke and a major cause of heart attacks.  UTMB admits that, in some patients, hypertension may cause damage to the cardiovascular system when blood flow asserts high pressure on artery walls.  UTMB is unable to admit or deny whether hypertension is referred to as "the silent killer."  UTMB admits that for some patients hypertension can cause breathing problems and can result in organ damage if untreated or exacerbated.

25. UTMB admits that hypertension may cause headaches, fatigue, and vision problems for some patients.  UTMB denies that hypertension causes obesity.  UTMB admits that hypertension is a physiological condition that can affect body systems, including the respiratory and cardiovascular systems for some patients.

26. UTMB admits that the Correctional Managed Health Care ("CMHC") policy lists diuretics as a group of drugs associated with heat stress.  UTMB denies that CMHC policy places the alleged restriction on all patients taking diuretics.

27. UTMB denies the allegations regarding McCollum's physical abilities and medication.

28. UTMB admits that it knew, prior to McCollum's death, that hypertension may increase some patients' susceptibility to heat stress.  UTMB denies that hypertension diminishes the body's ability to regulate internal temperature.  UTMB is unable to admit or deny allegations regarding TDCJ employees' knowledge.

29. UTMB denies that diabetes is caused by insulin imbalance.  UTMB admits that diabetes is a chronic disease.  UTMB admits that insulin is a hormone produced by the pancreas to control blood sugar.  UTMB denies that diabetes results from improper insulin levels.  UTMB admits that diabetes is a physical condition that may affect the endocrine, digestive, circulatory, and nervous systems in some patients.

30. UTMB admits that diabetes may affect some patients' ability to sweat and may impair their ability to adjust to increases in temperature.  UTMB admits that sweating is critical to cool the body in extreme heat.  UTMB denies that an inability to sweat increases the body's core temperature.  UTMB admits that an inability to sweat may aggravate the risk of heat stroke in some cases.

31. UTMB admits that diabetes may reduce blood circulation in some patients by impairing the action of the heart and decreasing the ability of the body to dilate the blood vessels at

the skin. UTMB admits that action of the heart and dilation of blood vessels at the skin are necessary to dissipate body heat and prevent heat stroke.

32. UTMB denies the allegations regarding diabetes and McCollum's physical abilities.

33. UTMB denies the allegations regarding its policies and diabetes.

34. UTMB is unable to admit or deny the allegations regarding the American Diabetes Association.

35. UTMB denies that medical providers at Hutchins State Jail, including Ananda Babbali [*sic*] stated that failing to provide treatment and monitoring of diabetes is "off the charts unacceptable." UTMB admits that Ananda Babbali [*sic*] is a physician's assistant. UTMB denies that Babbali [*sic*] supervised McCollum's care at the prison. UTMB admits that McCollum received no treatment for diabetes at Hutchins State Jail. UTMB denies that the condition was entirely ignored.

36. UTMB admits that McCollum was 5'10" and 330 pounds and morbidly obese when he arrived at the Hutchins State Jail. UTMB denies the remaining allegations.

37. UTMB admits that Mr. McCollum's body mass index was greater than 40. UTMB is unable to admit or deny that he was twice his ideal weight according to the Centers for Disease Control.

38. UTMB is unable to admit or deny that McCollum's obesity likely contributed to, or was a cause of, his hypertension and diabetes, and thus affected his digestive, cardiovascular, nervous, and endocrine systems.

39. UTMB denies the allegations regarding McCollum's obesity and his ability to sweat.

40. UTMB denies the allegations regarding McCollum's obesity and his ability to access a top bunk.

41. UTMB denies the allegations regarding evaluation, monitoring, and/or accommodations for McCollum's hypertension, alleged diabetes, and obesity. UTMB is unable to admit or deny TDCJ's evaluation, monitoring, or provision of accommodations. UTMB denies the allegation that McCollum's disabilities, if any, were ignored.

42. UTMB is unable to admit or deny the circumstances of McCollum's conviction and sentence.

43. UTMB is unable to admit or deny the allegations regarding McCollum's arrival at the Hutchins Unit.

44. UTMB denies that a UTMB vocational nurse performed a triage or "self assessment" of McCollum and other newly arrived prisoners. UTMB is unable to admit or deny whether McCollum told the nurse he suffered from diabetes. UTMB admits that it is recorded in McCollum's intake history and health screening that he has a history of diabetes. UTMB admits that it is recorded in McCollum's clinic notes that he was taking a prescription medication, Clonidine, for hypertension. UTMB admits that the form sent with him by the McLennan County jail showed he weighed 330 pounds and was 5'10" tall. UTMB admits that McCollum's obesity was not only documented, it was also obvious.

45. UTMB admits that Babbili changed his prescription from Clonidine to hydrochlorothiazide ("HCTZ"), a diuretic. UTMB admits that Clonidine is not a diuretic. UTMB denies all other allegations regarding any exam performed by a UTMB nurse and medication prescribed as a result.

46. UTMB admits that diuretics remove water from the blood to decrease blood pressure and that, for some patients, they may lead to an increased risk of heat stroke. UTMB denies the other allegations regarding diuretics and what McCollum was told about them by any UTMB personnel.

47. UTMB denies the allegations regarding McCollum's treatment or monitoring.

48. UTMB denies that it assigned McCollum to a top bunk. UTMB is unable to admit or deny the allegations regarding the Hutchins Unit's procedures for counting prisoners and the number of times prisoners are required to get in and out of bed.

49. UTMB denies that its practice was to ignore obesity when recommending bunk assignments and further denies the remaining allegations regarding obesity and housing and/or bunk assignments. UTMB denies that it changed any policy regarding obesity and bunk assignments.

50. UTMB admits that it can make recommendations for housing and bunk assignments based on prisoners' medical conditions. UTMB admits that housing recommendations are made after each prisoner receives an intake physical. UTMB denies that a nurse or layperson can determine whether a prisoner is obese based upon sight only.

51. UTMB admits that McCollum was housed in an area that was not climate controlled. UTMB is unable to admit or deny the allegations regarding conditions in county jails.

52. UTMB is unable to admit or deny the allegations regarding the temperature in McCollum's dormitory.

53. UTMB admits that some climate controlled housing is available at some TDCJ prisons and units. UTMB is unable to admit or deny the remaining allegations.

54. UTMB admits that it is aware that many TDCJ inmates live with obesity, diabetes and hypertension, and are housed in non-climate controlled TDCJ facilities, including the Hutchins Unit. UTMB is unable to admit or deny allegations regarding other parties' knowledge.

55. UTMB is unable to admit or deny the allegations regarding temperatures for the seven days McCollum spent in the Hutchins Unit. UTMB denies that the National Oceanic and Atmospheric Administration's heat index chart (as incorporated into Plaintiffs' Second Amended Petition) is included in UTMB's training materials. CMHC's policies do contain the US National Weather Service's Heat and Humidity Index.

56. UTMB denies the allegations regarding its efforts to cool prisoners. UTMB is unable to admit or deny allegations regarding other parties' efforts.

57. UTMB denies the allegations regarding heat-sensitive disabilities and the heat index chart.

58. UTMB denies that it does nothing differently when temperatures are elevated, and otherwise denies these allegations. UTMB is unable to admit or deny allegations regarding other parties' actions.

59. UTMB is unable to admit or deny the allegations regarding an email from a safety officer regarding temperatures.

60. UTMB is unable to admit or deny the allegations regarding an email from a safety officer regarding temperatures.

61. UTMB is unable to admit or deny the allegations regarding the temperature of items found inside dormitories and sleeping preferences of inmates.

62. UTMB denies the allegations regarding steps to reduce heat levels inside housing units. UTMB is unable to admit or deny allegations regarding steps by other parties.

63. UTMB is unable to admit or deny these allegations as they relate only to TDCJ.

64. UTMB admits that certain UTMB employees knew that McCollum was over the age of 40, was overweight, and was prescribed diuretic medication. UTMB is unable to admit or deny allegations regarding other parties' knowledge.

65. UTMB denies that McCollum was in "grave danger" and that current inmates remain in danger.

66. UTMB denies that heat constitutes cruel and unusual punishment.

67. UTMB admits that it has no medical staff at the Hutchins Unit after 6:00 p.m. UTMB admits that the Hutchins Unit has a maximum capacity to house over 2,200 men. UTMB

admits that approximately 10% of the inmates at Hutchins Unit have been diagnosed with obesity, hypertension, or diabetes. UTMB denies that its staffing decisions are made for financial reasons.

68. UTMB is unable to admit or deny these allegations as they relate only to TDCJ.

69. UTMB is unable to admit or deny the allegations regarding temperatures on July 22, 2011.

70. UTMB admits that, according to Sandrea Sanders, McCollum suffered convulsions on July 22, 2011 at around 2:00 or 2:10 a.m.

71. UTMB is unable to admit or deny the allegations regarding action taken by Clark.

72. UTMB is unable to admit or deny the allegations regarding action taken by Clark.

73. UTMB is unable to admit or deny the allegations as to TDCJ's protocol for calling 911 and is unable to admit or deny the allegations regarding actions taken by Clark or Eason.

74. UTMB is unable to admit or deny the allegations regarding actions taken by Clark or Tate.

75. UTMB is unable to admit or deny the allegations regarding action taken by Tate.

76. UTMB is unable to admit or deny the allegations regarding action taken by Tate.

77. UTMB is unable to admit or deny the allegations regarding action taken by Tate.

78. UTMB is unable to admit or deny the allegations regarding action taken by Sanders.

79. UTMB is unable to admit or deny the allegations regarding action taken by Sanders or Clark.

80. UTMB denies the allegations as to the off-site nurse and is unable to admit or deny the allegations regarding action taken by Sanders.

81. UTMB is unable to admit or deny whether McCollum was responsive.

82. UTMB denies it was the general practice at Hutchins State Jail to allow patients to experience seizures and refer them to the infirmary the next morning. UTMB is unable to admit or deny the remaining allegations.

83. UTMB is unable to admit or deny the allegations regarding actions taken by Clark, Tate, and/or Sanders.

84. UTMB admits that McCollum's body temperature was recorded as 109.4 degrees Fahrenheit at the time he arrived at the hospital. UTMB denies that the extreme heat caused McCollum to suffer multi-system organ failure.

85. UTMB admits that McCollum became comatose and died after spending six days in the intensive care unit. UTMB is unable to admit or deny the circumstances surrounding McCollum's death or actions taken by Sanders, Tate, and/or Clark.

86. UTMB admits that an autopsy conducted by the Southwestern Institute of Forensic Sciences concluded that McCollum died of hyperthermia. UTMB denies that the autopsy concluded that Mr. McCollum's death was "due to housing 'in a hot environment without air conditioning.'"

87. UTMB denies the allegation regarding the contents of the autopsy report.

88. UTMB is unable to admit or deny these allegations as they relate only to TDCJ.

89. UTMB denies the allegations regarding its policies and procedures and that it proximately caused McCollum's death.

90. UTMB is unable to admit or deny these allegations as they relate only to TDCJ's policies and procedures.

91. UTMB denies the allegations regarding its decision to house inmates in non-climate controlled housing.

92. UTMB is unable to admit or deny the allegations regarding the temperature or remaining allegations as they relate only to TDCJ.

93. UTMB denies that it took no steps to cool inmates. UTMB is unable to admit or deny the remaining allegations.

94. UTMB is unable to admit or deny these allegations as they relate only to TDCJ.

95. UTMB is unable to admit or deny this allegation because it is vague.

96. UTMB admits that ten people in TDCJ custody, including Mr. McCollum, were reported to have died of hyperthermia in the summer of 2011. UTMB is unable to admit or deny the remaining allegations.

97. UTMB is unable to admit or deny the allegation regarding Judge Justice's opinion in *Ruiz v. Johnson*.

98. UTMB admits that John Cardwell reportedly died of hyperthermia in 2001 and Ricky Robertson reportedly died of hyperthermia in 2004. UTMB denies the remaining allegations.

99. UTMB is unable to admit or deny whether medical examiners and pathologists underreport heat-related injuries and deaths by hypertension.

100. UTMB is unable to admit or deny whether Texas county jails are kept between 65 and 85 degrees.  UTMB is unable to admit or deny the allegations regarding other parties' action and knowledge.

101. UTMB is unable to admit or deny the allegations regarding the effect of heat on TDCJ or UTMB employees.

102. UTMB is unable to admit or deny the allegations regarding the TDCJ employees' union.

103. UTMB is unable to admit or deny these allegations as they relate only to TDCJ.

104. UTMB is unable to admit or deny these allegations as they relate only to TDCJ.

105. UTMB is unable to admit or deny these allegations as they relate only to TDCJ.

106. UTMB is unable to admit or deny these allegations as they relate only to TDCJ.

107. UTMB is unable to admit or deny these allegations as they relate only to TDCJ.

108. UTMB is unable to admit or deny the allegations regarding the cost to install a climate control system in McCollum's dormitory or the Hutchins Unit.

109. UTMB is unable to admit or deny these allegations as they relate only to TDCJ.

110. UTMB admits CMHC's policies require certain precautions before inmates work in certain elevated temperatures and that CMHC's heat stress policy does not address temperatures in housing areas. UTMB denies the remaining allegations.

111. UTMB admits that CMHC's heat stress policy states that "it is the responsibility of the facility medical staff to provide guidelines to assist the facility administration in the determination of safe and healthful work conditions. Every reasonable effort shall be made in the interest of preventing heat-related injuries in the workplace."  UTMB admits that CMHC's heat stress policy does not address housing conditions.

112. UTMB admits that extreme temperatures can be deadly in some situations.  UTMB denies that CMHC policies do not address protecting prisoners from heat in housing units. UTMB denies that nineteen inmates died from hypertension in non-climate controlled housing units since 1999.

113. UTMB is unable to admit or deny these allegations as they relate only to TDCJ.

114. UTMB denies the allegations regarding intake physicals.

115. UTMB admits that McCollum's blood was drawn for lab work and his labs were not evaluated prior to his transport to the emergency room.  UTMB denies the allegations regarding the substance and interpretation of McCollum's blood work results.

10

116. UTMB denies the allegations regarding the intake physical. UTMB is unable to admit or deny allegations regarding other inmates' deaths.

117. UTMB denies that the intake physical is the first time UTMB may recommend a housing assignment. UTMB denies that it "effectively chose not to protect McCollum, and virtually guaranteed he would be exposed to dangerous temperatures."

118. UTMB admits that, in some cases, medical staff may make housing recommendations for inmates, depending on the inmates' specific medical needs. UTMB admits that it may recommend an inmate not work in "temperature extremes." UTMB admits that it may recommend that inmates with asthma be restricted from working in areas with potential exposure to environmental pollutants, including areas with a high concentration of dust. UTMB admits that some options for its recommendations regarding facility assignments and housing assignments include single-level facilities, single cells, and special housing with patients with like medical conditions, among other things. UTMB denies that it fails to contemplate special housing for inmates adversely affected by extreme temperatures. UTMB denies that those adversely affected by extreme temperatures have a disability, and denies the remaining allegations.

119. UTMB admits that, in some cases, it recommends bunk assignments for prisoners, depending on various medical conditions. UTMB denies that obesity is not a factor that would cause UTMB to recommend a lower-bunk assignment.

120. UTMB admits that housing decisions are made by TDCJ and is unable to admit or deny the remaining allegations regarding other parties' knowledge and actions.

121. UTMB admits that certain UTMB employees are aware of the serious risks that extreme heat may pose to some prisoners with heat-sensitive disabilities. UTMB denies that McCollum suffered from heat-sensitive disabilities. UTMB admits that certain UTMB employees are aware of some deaths in TDCJ facilities where UTMB provides medical care.

122. UTMB denies the allegations regarding work and recreation restrictions for inmates who have been prescribed HCTZ. UTMB denies the allegations regarding housing.

123. UTMB is unable to admit or deny these allegations as they relate only to TDCJ.

124. UTMB is unable to admit or deny these allegations as they relate only to TDCJ.

125. UTMB is unable to admit or deny whether areas where TDCJ employees work are climate controlled.

126. UTMB is unable to admit or deny whether the TDCJ armory is climate controlled.

127. UTMB is unable to admit or deny the allegations regarding the temperatures in some parts of the prison.

128. UTMB is unable to admit or deny the allegations regarding the temperatures in TDCJ's livestock barns.

129. UTMB denies the allegation that inmates were not given access to climate controlled respite areas at Hutchins State Jail. UTMB is unable to admit or deny the allegation regarding other parties' actions.

130. UTMB is unable to admit or deny these allegations as they relate only to TDCJ.

131. UTMB denies that it was an undue hardship for McCollum to get on and off of his bunk.

132. UTMB is unable to admit or deny the allegation regarding TDCJ policy.

133. UTMB is unable to admit or deny the allegation regarding TDCJ policy.

134. UTMB is unable to admit or deny the allegation regarding other parties' knowledge.

135. UTMB is unable to admit or deny the allegations regarding the effect of opening windows or using personal fans.

136. UTMB is unable to admit or deny the allegations regarding indoor temperatures in 2011 and 2012.

137. UTMB is unable to admit or deny the allegation regarding other parties' knowledge or actions.

138. UTMB cannot admit or deny that it knew indoor temperatures regularly exceeded 90 degrees because the term "regularly" is vague and non-specific regarding indoor temperatures, and denies that it failed to take reasonable steps to protect the health and safety of inmates. UTMB is unable to admit or deny the allegation regarding other parties' knowledge.

139. UTMB admits that some TDCJ inmates are obese or have hypertension or diabetes. UTMB denies that the Hutchins State Jail is "extremely hot." UTMB is unable to admit or deny the allegation regarding TDCJ policy.

140. UTMB denies these allegations to the extent that they relate to UTMB and its steps to safely house and protect McCollum. UTMB is unable to admit or deny the allegations regarding other parties' knowledge or actions.

141. UTMB denies that temperatures exceeding 90 degrees Fahrenheit constitute cruel and unusual punishment. UTMB is unable to admit or deny the remaining allegations as they relate to TDCJ.

142. UTMB denies the allegations regarding conditions at the Hutchins Unit.

143. UTMB denies that it discriminated against McCollum based on his alleged disabilities.

144. This paragraph alleges a cause of action against individual defendants and is inapplicable to UTMB.

145. This paragraph alleges a cause of action against individual defendants and is inapplicable to UTMB.

146. This paragraph alleges a cause of action against individual defendants and is inapplicable to UTMB.

147. This paragraph alleges a cause of action against individual defendants and is inapplicable to UTMB.

148. UTMB admits that it receives federal funds and is covered by the Rehabilitation Act. UTMB admits the other contentions regarding requirements of the RA.

149. UTMB admits that Title II of the ADA and the ADAAA apply to TDCJ and UTMB. UTMB denies that the ADA and ADAAA have the same mandate as the RA.

150. UTMB denies that Hutchins State Jail is a facility, or that its operation comprises a program, activity, and/or service for purposes of the ADA, ADAAA, and/or RA. UTMB denies that McCollum was qualified to receive the services of and participate in the programs or activities at the Hutchins State Jail.

151. UTMB denies that McCollum was a qualified individual regarded as having a physiological or mental impairment that substantially limited one or more of his major life activities for purposes of the ADA, ADA Amendments Act, and RA.

152. UTMB denies that it failed and/or refused to reasonably accommodate McCollum, in violation of the ADA, ADAAA and/or RA. UTMB denies that its alleged failure and/or refusal caused McCollum's death.

153. UTMB denies that it failed and/or refused to reasonably modify its policies, practices or procedures to ensure McCollum access to facilities, service, programs or activities of the Hutchins State Jail. UTMB denies McCollum had disabilities. UTMB denies these alleged failures and refusals caused McCollum's death.

154. UTMB denies that it failed to perform the listed actions.

155. UTMB denies that McCollum died as a direct and proximate result of UTMB's alleged intentional discrimination. UTMB denies that Plaintiffs are entitled to damages.

156. This paragraph alleges a cause of action against individual defendants and is inapplicable to UTMB.

157. This paragraph alleges a cause of action against individual defendants and is inapplicable to UTMB.

158. This paragraph alleges a cause of action against individual defendants and is inapplicable to UTMB.

159. This paragraph alleges a cause of action against individual defendants and is inapplicable to UTMB.

160. UTMB denies the allegations regarding Plaintiffs' damages.

161. UTMB denies the allegations regarding Plaintiffs' damages.

162. UTMB denies the allegations regarding Plaintiffs' damages.

163. UTMB is unable to admit or deny the allegations regarding Plaintiffs seeking injunctive and declaratory relief and any mediation by TDCJ before Magistrate Judge Andrew Austin.

164. UTMB is unable to admit or deny the allegations regarding Plaintiffs seeking injunctive and declaratory relief and any mediation by TDCJ before Magistrate Judge Andrew Austin.

165. UTMB denies that Plaintiffs are entitled to recover attorneys' fees, costs and expenses.

## III.
## GENERAL DENIAL AND AFFIRMATIVE DEFENSES

1. Pursuant to Federal Rule of Civil Procedure 8(b), UTMB hereby denies each and every allegation contained within Plaintiffs' Second Amended Complaint, except those expressly admitted herein.

2. Plaintiffs failed to state a claim for which relief can be granted under 42 U.S.C. § 12131 (the ADA and ADAAA), 42 U.S.C. § 794 (the RA), and under any other statute, constitutional theory, or legal theory.

3. UTMB admits that a claim may be stated under 42 U.S.C. § 12131 (the ADA and ADAAA) or 42 U.S.C. § 794 (the RA) under certain circumstances, but UTMB denies that those circumstances are plead and present in this case.

4. UTMB denies that McCollum was deprived of any right, privilege, or immunity granted or secured by the Constitution and/or laws of the United States.

5. UTMB denies that Plaintiffs are entitled to injunctive, declaratory, or any other relief demanded in the live complaint, and further denies that Plaintiffs are entitled to damages, attorneys' fees, or costs in any amount whatsoever.

6. UTMB denies that is a proper party to any claim brought against it under the Texas Survival Statute and hereby asserts sovereign immunity to any such claim.

7. UTMB denies that Plaintiffs have standing to pursue claims pursuant to the Texas Survival Statute and the Texas Wrongful Death Statute.

8. UTMB denies that Congress abrogated sovereign immunity for purposes of 42 U.S.C. § 12131 (the ADA and ADAAA) or 42 U.S.C. § 794 (the RA).

9. UTMB denies that it failed to provide reasonable accommodations to McCollum as alleged by Plaintiffs in their live complaint.

10. UTMB denies that McCollum was disabled because the alleged disabilities pled by Plaintiffs do not constitute a physical or mental impairment that substantially impairs a major life activity, as required for a valid cause of action pursuant to 42 U.S.C. § 12131 (the ADA and ADAAA) or 42 U.S.C. § 794 (the RA).

11. UTMB denies that McCollum requested any accommodation, that McCollum knew or believed he needed any accommodation, or that UTMB denied him a reasonable accommodation pursuant to 42 U.S.C. § 12131 (the ADA and ADAAA) or 42 U.S.C. § 794 (the RA).

12. The accommodations requested by Plaintiffs constitute fundamental alterations to UTMB's policies, procedures, services, and/or facilities and do not constitute reasonable modifications.

13. The accommodations requested by Plaintiffs constitute an undue burden.

14. The accommodations requested by Plaintiffs would result in undue financial and administrative burdens to UTMB.

15. UTMB hereby asserts that McCollum was not eligible to receive the benefits or services he was allegedly denied because UTMB does not provide access to or control the benefits or services Plaintiffs claim he was denied.

16. UTMB asserts that McCollum was not denied any benefits or services because of his alleged disability.

17. UTMB asserts that McCollum was not denied any benefits or services solely because of his allegedly disability.

## IV.
## DEMAND FOR JURY

UTMB hereby respectfully requests a trial by jury.

Defendant University of Texas Medical Branch at Galveston urges this Court to deny the Plaintiffs any and all relief demanded in their complaint and to grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**CHARLES E. ROY**
First Assistant Attorney General

**JAMES E. DAVIS**
Deputy Attorney General for Civil Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division


/s/ J. Lee Haney
**J. LEE HANEY**
Attorney-in-Charge
Assistant Attorney General
Texas Bar No. 00784203
Federal I.D. No. 18544
Lee.haney@texasattorneygeneral.gov


**SHANNA ELIZABETH MOLINARE**
Assistant Attorney General
Texas Bar No. 24041506
Federal I.D. No. 38632

**JENNIFER DANIEL**
Assistant Attorney General
Texas Bar No. 24090063
Federal I.D. No. 2451063

**HEATHER RHEA**
Assistant Attorney General
Texas Bar No. 24085420
Federal I.D. No. 2399979

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080
(512) 936-2109 (Fax)


**FERNELIUS ALVAREZ SIMON PLLC**

**GRAIG J. ALVAREZ**
State Bar No. 24001647
Federal I.D. No. 22596

**STEPHEN M. FERNELIUS**
State Bar No. 06934340
Federal I.D. No. 14121

**KARA STAUFFER PHILBIN**
State Bar No. 24056373
Federal I.D. No. 685342

1221 McKinney Street, Suite 3200
Houston, Texas  77010
(713) 654-1200
(713) 654-4039 (Fax)


**ATTORNEYS FOR DEFENDANT,
UNIVERSITY OF TEXAS MEDICAL
BRANCH AT GALVESTON**

## NOTICE OF ELECTRONIC FILING

I, J. LEE HANEY, Assistant Attorney General of Texas, certify that I have electronically submitted for filing University of Texas Medical Branch's Answer to Plaintiffs' (McCollum) Second Amended Complaint to the Court, on August 27, 2015, in the Southern District of Texas, Houston Division.

/s/ J. Lee Haney
**J. LEE HANEY**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, J. LEE HANEY, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing has been served on all counsel of record via electronic mail on August 27, 2015, 2015, as authorized by Fed. R. Civ. P. 5(b)(2) and in accordance with the electronic case filing procedures of the United States District Court for the Southern District of Texas.

/s/ J. Lee Haney
**J. LEE HANEY**
Assistant Attorney General