# Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

STEPHEN MCCOLLUM, *et al.*,
     *Plaintiffs,*

v.                                       **CIVIL NO. 3:12-CV-2037-L-BK**

BRAD LIVINGSTON, *et al.*,
     *Defendants.*

**ORDER**

Pursuant to the District Court's *Order of Reference*, Doc. 165, the Court now considers Plaintiffs' *Motion for Sanctions, Motion for Order to Show Cause, and Motion to Compel*, Doc. 164. For the reasons set forth below, the motion is **GRANTED IN PART**.[1]

**A.    Background**

Plaintiffs, the surviving wife and children of Larry Gene McCollum, have sued various Texas Department of Criminal Justice ("TDCJ") officials and the University of Texas Medical Branch ("UTMB"), stemming from McCollum's death in July 2011 while he was housed in the Hutchins State Jail in Dallas, Texas. Doc. 119 at 1-2. Plaintiffs claim that (1) TDCJ officials violated McCollum's Eighth and/or Fourteenth Amendment rights; and (2) both TDCJ and UTMB, which makes housing recommendations to TDCJ based on prisoners' medical conditions, violated the Americans with Disabilities Act and the Rehabilitation Act of 1973. Doc. 119 at 2.

Plaintiffs allege in the operative complaint that McCollum was obese when he arrived at the jail, and he reported to TDCJ and UTMB officials that he suffered from both hypertension and diabetes. Doc. 119 at 7-8. He was prescribed hydrochlorothiazide, a diuretic, shortly after

---

[1] Although the remainder of this case was severed and transferred to the Southern District of Texas on November 10, 2014, this Court retained jurisdiction to resolve the sanctions motion. Doc. 215.

his arrival.  Doc. 119 at 8.  Plaintiffs note that McCollum was assigned to an un-airconditioned dormitory in the jail.  Doc. 119 at 10.  Approximately one week later, McCollum began having convulsions at around 2:00 a.m.  Doc. 119 at 14.  Plaintiffs aver that another prisoner notified a guard and, after a delay of approximately an hour, an ambulance was called to take McCollum to the hospital.  Doc. 119 at 14-16.  When he arrived there, McCollum's internal body temperature was 109.4 degrees Fahrenheit, and he slipped into a coma.  Doc. 119 at 16-17.  Six days later, he died of hyperthermia.  Doc. 119 at 17.  Plaintiffs contend that the results of an autopsy indicated that McCollum was "predisposed to developing hyperthermia due to morbid obesity and treatment with a diuretic (hydrochlorothiazide) for hypertension."  Doc. 119 at 17.

This case has been marked by zealous legal representation on both sides.  The Court has moderated numerous discovery disputes and while counsel for all parties generally have conducted themselves professionally and with integrity, the case has now taken a different turn.  In particular, Plaintiffs accuse Defendants of failing to disclose numerous witnesses and documents despite the case being actively litigated since its inception in June 2012.  Doc. 164.  Accordingly, they have moved for sanctions, an order to show cause, and to compel.  Doc. 164.

**B.**    **Evidence and Arguments Relating to Discovery**

As might be imagined given the nature of this case and the high level officials who have been sued, who knew what and when they knew it are critical questions.  To that end, Plaintiffs represent that they have repeatedly asked Defendants for emails in their possession discussing heat-related issues in Texas prisons, and were informed that Defendants had virtually no such emails and that even high-level prison administrators rarely used email.  Doc. 164 at 6.  In their initial disclosures made pursuant to Rule 26 of the Federal Rules of Civil Procedure, TDJC, Livingston, and Pringle (collectively, "the TDCJ Defendants") listed as people likely to have

relevant information several of the Defendants, a few other TDCJ employees, two physicians, and a witness who would testify about TDCJ policy and procedures.  Doc. 164-2 at 5-6.  The Rule 26 disclosures also indicated that the TDCJ Defendants were providing copies of all documents they had that were likely to bear on any claim or defense, which consisted of McCollum's TDCJ medical and grievance records and a report regarding his death.  Doc. 164-2 at 6-7.

        In 2012, Plaintiffs propounded interrogatories on the TDCJ Defendants asking them to identify all witnesses with relevant knowledge, to identify all heat-related injuries of inmates in TDCJ facilities, and to produce documents that formed the basis of any answer to the interrogatories.  Doc. 164-2 at 15-16, 20, 22, 26, 28.  The TDCJ Defendants responded by attaching dorm and shift rosters among other limited documents.  Doc. 164-2 at 15.  After TDCJ disclosed that several employees and inmates had suffered heat-related injuries at the Hutchins facility, they redacted parts of the documentation and provided what then appeared to be all responsive documents.  Doc. 164-2 at 33.

        UTMB was added as a defendant to the case in April 2013.  Doc. 43.  In August 2013, UTMB responded to a request for production that asked for "all documents related to the inmate heat injury in any TDCJ facility where UTMB provides medical care between 2007 and 2012."  Doc. 164-2 at 42.  UTMB represented that it had "no records responsive to this request."  Doc. 164-2 at 42.  In March 2014, UTMB responded to interrogatories asking it to identify heat-related injuries and deaths in TDCJ facilities dating back to 1993.  To the injury interrogatory, UTMB stated that it did not "keep or maintain records, other than individual medical records, which reflect 'heat-related injuries'" and answering the interrogatory would create an undue burden.  Doc. 164-2 at 46.  To the death question, UTMB responded that it "does not create,

keep or maintain records of inmate deaths by the category 'cause of death' or 'hyperthermia.' Nor does it maintain a list or record of inmate deaths in the usual course of business." Doc. 164-2 at 46. A corresponding request for production sought all documents "related to, referred to, identified in, or that formed the basis of any answer to the previous interrogatories." Doc. 164-2 at 52. UTMB provided some documents, but did not include monthly emails that attached a spreadsheet updating senior TDCJ leadership of all heat-related illnesses and deaths since at least 2010, which have since been turned over to Plaintiffs. Doc. 164-2 at 57, 59, 61.

On April 25, 2014, one week before the deadline then in place for dispositive motions, UTMB turned over to Plaintiffs 392 pages of emails that revealed the existence of additional responsive documents and knowledgeable witnesses from both TDCJ and UTMB. Specifically,

• An August 2010 email with the subject line "Heat Ad Seg offenders." The email states that Rick Thaler, Director of TDCJ's Correctional Institutions Division, wants health services to "pay closer attention to ad seg offenders on psychotropic meds due to them being more at risk" of heat-related illnesses. Doc. 164-2 at 55.

• An August 2010 email from a nurse with UTMB to a TDCJ employee which states that a spreadsheet called "heat related incidents 081310" is attached. Doc. 164-2 at 57. At the time the instant motion was filed, the spreadsheet had not been produced, but it since has been. The spreadsheet indicates that TDCJ/UTMB have been documenting heat-related incidents and sharing them since at least August 2010. Kimberly McLearen, who Plaintiffs allege is a previously undisclosed witness, states in a June 2012 email that she keeps a "database" of all heat-related incidents that is "sent to senior leadership at the end of each month." Doc. 164-2 at 59.

• A June 2011 email from a TDCJ employee to, *inter alia,* employees at UTMB which states that Dr. Lannette Linthicum, TDCJ's Chief Medical Officer, wants to be informed about all offenders who suffer heat-related illnesses and details what information should be included in each report. Doc. 164-2 at 66.

• An August 2011 email from a TDCJ nurse which states that William Stephens, then Deputy Director of TDCJ's Correctional Institutions Division, was forwarded an email about heat-related issues at one of the prisons. The email states that several inmates had to see nursing staff due to heat-related illnesses, that water was only being passed out "once daily and sometimes twice," and that the prison's ice machines were either broken or could not keep up with demand. Doc. 164-2 at 69-71. Plaintiffs observe that this email contradicts repeated assertions by TDCJ that it has few relevant emails and that senior officials like Stephens had no relevant emails.

4

• An August 2011 email in which Dr. Charles Adams, Senior Medical Director of Outpatient Services at UTMB, states that inmates need "cooling" to protect them from the heat.  Doc. 164-2 at 81.

• An August 2012 email in which Dr. Adams criticizes how little water is offered to inmates, opines that passing out ice two to three times a day is "insufficient," and asks for a report for all TDCJ regions as to how each region provides water and ice to inmates.  Doc. 164-2 at 75-76.  At the time they filed their motion, Plaintiffs stated that they had not been provided with any of the referenced regional reports except the one in the body of the email, nor had Defendants provided any further information about the reports.

• An August 2011 email from Nurse Jerri Robison to Justin Robison, Director of Nursing for Correctional Managed Care at UTMB, both of whom Plaintiffs aver were previously undisclosed witnesses, which details an exchange that took place after an inmate almost died from heat stroke.  The email indicates that there is a disagreement between TDCJ and UTMB wherein TDCJ correctional officers "can't be allowed to take temps."  Doc. 164-2 at 85.  Nurse Robison states, "They know how to do it and this scares the hell out of me.  This guy could have died . . . Seems like a simple measure to save a life."  Doc. 164-2 at 85.

• An August 2011 email from Justin Robison stating that he is "very concerned" about patients at one of the prisons given that there were three heat-related deaths in the prior six days at that prison and all three prisoners were taking medications associated with heat stress.  Doc. 164-2 at 89.  He includes an email from a nurse manager, who Plaintiffs state was also a previously undisclosed witness, and she lists 21 problems at her particular prison, including that the inmates are not provided enough water and ice and correctional officers are taking away drink containers and "not honoring heat restrictions."  Doc. 164-2 at 89-90.  She also states that she is "not getting much if any cooperation from rank.  Was told no on more [water] coolers . . . I am very frustrated at the lack of cooperation from Warden Haynes.  HELP!!!!"  Doc. 164-2 at 90.

• An email exchange, which took place in the mid-summer of 2012, wherein a nurse at one prison complains about an air-conditioner outage in the medical unit where she works.  Doc. 164-2 at 92-95.  The exchange indicates that the regional warden was contacted at least twice about the situation.  Doc. 164-2 at 92-93.  W.E. Jarrett, Regional 1 Operations Manager at UTMB, advised the nurse that the prison's "heat situation has reached the highest levels of TDCJ and [Correctional Managed Care at UTMB]."  Doc. 164-2 at 93.

• A June 2013 email which states that a "Heat-Related Illness Reporting Form" exists and acts as a "reporting system" for heat-related incidents.  Doc. 164-2 at 63.  Plaintiffs state that neither UTMB nor the TDCJ Defendants previously produced any copies of this form or any information or correspondence related to this form.

• A July 2013 email that references an additional heat-related inmate death in the summer of 2013, although Plaintiffs assert that TDCJ has repeatedly stated that nobody died of heat-related causes during that time frame.  Doc. 164-2 at 97-98.

In response to Plaintiffs' *Motion for Sanctions*, the TDJC Defendants have submitted an affidavit from their counsel stating that when they were first served with discovery in November 2012, counsel consulted with TDCJ's Office of General Counsel and was informed that TDCJ had no responsive emails, which was consistent with counsel's experience and general belief that TDCJ executive officials generally do not communicate via email.  Doc. 183 at 2 (citing Ex. 1 at 1).  They further assert that TDCJ's Health Services Division is not frequently sued, so none of the defense attorneys responsible for this case have frequent contact with the Division or know the details of their daily activities and, as such, counsel were not aware that the Division played any role in tracking and monitoring heat-related illnesses on TDCJ units.  Doc. 183 at 3.  The TDCJ Defendants argue that they disclosed the information in question as soon as they became aware of it, Plaintiffs' motion is premature, and they are attempting to work with Plaintiffs to remedy the issue.  Doc. 183 at 1-2, 5-7.

UTMB claims that it was not until a UTMB employee realized in April 2014 that he had records and meeting minutes that might be responsive to a discovery request in another heat-related case that UTMB realized the documents might be discoverable in the McCollum case as well even though they did not relate directly to McCollum; thus, UTMB produced the documents at that point.  Doc. 174-1 at 4.  Counsel from UTMB's Department of Legal Affairs and the Office of Attorney General represent that they then convened a meeting with several UTMB employees to discuss whether any other potentially relevant documents remained undiscovered. Doc. 174-1 at 4.  During the meeting, Nurse Jerri Robison stated that she had "archived e-mails" that, while not specifically related to McCollum or the Hutchins State Jail, were generally relevant to heat illness at prison units state-wide.  Doc. 174-1 at 5.  Accordingly, UTMB

produced those documents.  Doc. 174-1 at 5.  UTMB states that it is continuing its search with the help of an outside vendor to assist its efforts.  Doc. 174-1 at 4-6.

## C.    Applicable Law

Rule 37(c) of the Federal Rules of Civil Procedure states that if a party fails to (1) timely identify witnesses, (2) provide copies of all documents it may use to support its claims or defenses, or (3) supplement its response to interrogatories and requests for production, the party is not allowed to use that information on a motion, at a hearing, or at trial unless the failure was substantially justified or is harmless.  FED. R. CIV. P. 37(c)(1) (cross-referencing FED. R. CIV. P. 26(a), (e)).  In addition to or instead of that sanction, the court may order the disobedient party to pay the opposing party's attorneys' fees caused by the failure.  FED. R. CIV. P. 37(c)(1)(A).

Further, Rule 26(g) provides:

(g) Signing Disclosures and Discovery Requests, Responses, and Objections.

(1) Signature Required; Effect of Signature. Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record . . . By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

> (A) with respect to a disclosure, it is complete and correct as of the time it is made; and
> (B) with respect to a discovery request, response, or objection, it is:
> (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; [and]
> (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. . .

"If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation."  FED. R. CIV. P. 26(g)(3).

Counsel have "an obligation, as officers of the court, to assist in the discovery process by making diligent, good-faith responses to legitimate discovery requests." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1486 (5th Cir. 1990). Rule 26(g) simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." FED. R. CIV. P. 26(g) advisory committee's note (1983). "'The duty to make a 'reasonable inquiry' is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. It is an objective standard similar to the one imposed by Rule 11 . . . Ultimately what is reasonable is a matter for the court to decide on the totality of the circumstances.'" *Chapman & Cole v. Itel Container Int'l B.V.*, 865 F.2d 676, 686 (5th Cir. 1989) (quoting FED. R. CIV. P. 26(g) advisory committee's note (1983)). In making the inquiry, an attorney may rely on statements of the client as long as that reliance is appropriate under the circumstances. FED. R. CIV. P. 26(g) advisory committee's note (1983).

But, even if an attorney violates Rule 26(g)(1), a court may not impose Rule 26(g)(3) sanctions unless the certification violated Rule 26(g)(1) "without substantial justification." FED. R. CIV. P. 26(g)(3). "Substantially justified" means "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The standard requires a "reasonable basis in both law and fact," such that "there is a genuine dispute . . . or if reasonable people could differ [as to the appropriateness of the contested action]." *Id.* (internal quotation marks omitted).

### D.     Parties' Arguments

Plaintiffs contend that sanctions are warranted for Defendants' discovery violations as Plaintiffs have taken 14 depositions, sent numerous written discovery requests, and engaged in

comprehensive motion practice, yet Defendants still have not produced documents that are referenced in the emails that recently have come forth.  Doc. 164-1 at 16-17.  Plaintiffs observe that despite their obligations under Rule 26 and the discovery requests, the TDCJ Defendants produced very little, including virtually no emails about the heat, and they repeatedly indicated that no emails existed.  Doc. 164-1 at 18.  Plaintiffs note that either the TDCJ Defendants either knowingly withheld responsive documents and information or they failed to make a reasonable inquiry as to what documents existed before they responded to discovery requests.  Doc. 164-1 at 18.  Plaintiffs further claim that UTMB is equally culpable for failing to make a reasonable inquiry into the existence of relevant documents and witnesses and for falsely responding that it had no documents related to inmate heat injuries even though it clearly did.  Doc. 164-1 at 18-19.

As a consequence of Defendants' acts, Plaintiffs assert that they took numerous depositions and engaged experts with an incomplete and potentially misleading picture of the facts because it is now clear that senior leadership knew how dangerous the heat was to inmates, they were getting repeated updates about injuries and deaths, and they not only ignored the severity of the problem, they ignored specific pleas for help from their own employees.  Doc. 164-1 at 20.  Plaintiffs maintain that they will likely have to re-depose several witnesses and, additionally, to ensure that they obtain all responsive documents and to inquire as to what evidence has been permanently deleted, Plaintiffs will need to depose IT staff at both UTMB and TDCJ regarding preservation and retrieval of electronically stored information ("ESI").  Doc. 164-1 at 20.

UTMB responds that Plaintiffs' motion is baseless because it began its search for responsive discovery documents that related directly to McCollum and the Hutchins State Jail rather than across all state prisons.  Doc. 174-1 at 2-3.  UTMB claims that it was not until a

UTMB employee realized in April 2014 that he had documents that might be responsive to a discovery request in another heat-related case that UTMB realized the documents might be discoverable in the McCollum case as well even though they did not relate directly to McCollum; thus UTMB produced the documents at that point and continues to search for further relevant documents. Doc. 174-1 at 4-6. UTMB argues that it has attempted to comply with its discovery obligations in good faith, and the monetary sanctions that Plaintiffs request are unsupported given the shorter period of time that it has been a defendant in the case and the fact that most of Plaintiffs' allegations are against the TDCJ Defendants. Doc. 174-1 at 8-13.

The TDCJ Defendants urge that while they failed to fully comply with their discovery obligations, such was the result of inadvertent oversight, not deliberate or knowing withholding of information. Doc. 183 at 1-2. Further, Defendants aver that they were forthcoming with Plaintiffs' counsel following the discovery of undisclosed information. Doc. 183 at 2.

E.      **The Parties'** *Joint Status Report*

Following the District Court's order directing the undersigned to delay ruling on Plaintiff's *Motion for Sanctions*, Doc. 192, this case was stayed for approximately five months. Thereafter, the parties agreed to a transfer of the case to the Southern District of Texas, Houston Division, to be assigned to United States District Judge Keith Ellison. Doc. 215. The District Court then lifted the prior stay and directed the undersigned to proceed to rule on the *Motion for Sanctions*. Doc. 215 at 2. Given the length of time that the motion had been pending during the stay of the case and considering the representations made in the parties' pleadings, the undersigned found that a status update would assist in resolving the motion. Doc. 216. Accordingly, the Court ordered the parties to meet and confer regarding the status of the discovery matters addressed in Plaintiffs' motion and to file a *Joint Status Report* setting forth

the issues that still required resolution.  Doc. 216.  The parties have now filed their report.  Doc. 217.

In Plaintiffs' *Motion for Sanctions*, they sought several categories of relief.  The parties represent in their *Joint Status Report* that they have resolved some of the disputed issues, and the remainder will be discussed *infra*.[1]

> 1.  *Plaintiffs request that Defendants present their IT personnel who are most knowledgeable about Defendants' preservation of ESI (both generally and specifically in this case). Plaintiffs request that Defendants pay all costs and attorneys' fees associated with these depositions.*

Plaintiffs argue that they took the depositions of certain TDCJ and UTMB IT personnel knowledgeable about document retrieval and production, and these depositions would not have been necessary had Defendants complied with the Federal Rules and timely disclosed all responsive documents.  Doc. 217 at 12.  The parties had scheduled a deposition for TDCJ's 30(b)(6) witness on document preservation for June 2014 but that deposition was suspended when the District Court issued the stay, so Plaintiffs have not been able to depose a document preservation witness for either TDCJ or UTMB.  Doc. 217 at 12.  Plaintiffs believe it is unclear whether, how many, and when documents were destroyed due to Defendants' failure to preserve documents in anticipation of litigation.  Doc. 217 at 12.  Plaintiffs also request that Defendants be ordered to pay all costs associated with the depositions of TDCJ and UTMB IT personnel, to date and to occur in the future.  Doc. 217 at 12.

---

[1] The resolved categories consist of Plaintiffs' requests (1) that Defendants' counsel be ordered to meet with Plaintiffs' counsel to discuss the issues Plaintiffs identified in their May 7 letter regarding ESI search protocol and any other issues regarding Defendants' search and retrieval of ESI, Doc. 217 at 11; and (2) that Defendants produce within 30 days, in a format selected by Plaintiffs, all responsive documents in its possession with the assistance of an independent, third-party technology firm of Plaintiffs' choosing, Doc. 217 at 11-12.  The *Joint Status Report* also indicates that the parties continue to cooperate in developing search terms for ESI discovery and in determining which record custodians' emails should be searched.  Doc. 217 at 7-10.  The Court appreciates the parties' efforts in this regard.

UTMB contends that no further Court action is necessary because (1) Plaintiffs have already deposed witnesses knowledgeable about document preservation and retrieval, including Robert Shaffer, UTMB's ESI witness on preservation and retrieval processes; and (2) UTMB has already produced documents reflecting their litigation hold in this case and documents showing the retention schedules for documents in this case.  Doc. 217 at 13.  UTMB avers that it is not aware of any relevant responsive documents that have been deleted.  Doc. 217 at 13. Additionally, Plaintiffs deposed TDCJ witnesses David Vader, Randy Bitner, and Charlotte Anderson regarding document preservation, collection and production issues.  Doc. 217 at 13. The TDCJ Defendants urge that no further action is necessary on this issue unless Plaintiffs serve it with new discovery requests because the District Court previously quashed the pending discovery on these matters.  Doc. 217 at 13.

Upon consideration of the law, the pleadings, and the parties' arguments, the undersigned finds that Plaintiffs are entitled to depose a UTMB witness who is knowledgeable about ESI preservation processes.  Although UTMB produced Shaffer, who professed knowledge of UTMB's retrieval processes, Shaffer denied that he was the appropriate witness to discuss document preservation.  Doc. 188-1 at 5-7, 9-10.  Moreover, at the end of Shaffer's deposition, counsel for UTMB agreed to produce a separate document preservation witness.  Doc. 188-1 at 32-33.  Accordingly, UTMB is **ORDERED** to produce an appropriate witness for deposition within 14 days of the date of this order or such other time as the parties may mutually agree. UTMB will bear the costs and Plaintiffs' attorneys' fees associated with the deposition.

As for the TDCJ witness who was scheduled to be deposed on June 20, 2014, there is no evidence before the undersigned that this witness was the subject of a subpoena which was quashed by the District Court.  The deposition shall proceed forthwith, and the TDCJ Defendants

are **ORDERED** to produce the witness at issue for deposition within 14 days of the date of this order or such other time as the parties may mutually agree. The TDCJ Defendants will bear the costs and Plaintiffs' attorneys' fees associated with the deposition. Further, the Court finds that Plaintiffs are entitled to costs and attorneys' fees for the time and money expended on taking discovery on document preservation, production and retrieval issues from Defendants' IT personnel to date. Following the two depositions just ordered, the parties are **ORDERED** to confer in an effort to reach an agreement regarding an appropriate cost and fee award. If the parties, after fully conferring and making their best efforts to agree, are unable to reach an agreement, Plaintiffs may submit to the Court for in camera inspection their billing statements in relation to those issues.

*2. Plaintiffs assert that Defendants should produce any preservation letters, litigation holds, etc. sent in this case. Additionally, Plaintiffs request that the Court order each Defendant to answer certain interrogatories and file their answers with the Court relating to the steps taken to preserve, retrieve, and obtain ESI (including ESI that may have been deleted).*

Plaintiffs assert that UTMB responded to interrogatories inquiring into these topics, but its responses were incomplete, and Plaintiffs were unable to move to compel because of the District Court's stay of the case. Doc. 217 at 14. Plaintiffs note that the TDCJ Defendants never responded to the interrogatories because the District Court quashed them when it issued its stay. Doc. 217 at 14. Plaintiffs request that the Court order Defendants to answer the interrogatories without objections and file their responses with the Court or require Defendants to present witnesses to answer the questions during a show cause hearing. Doc. 217 at 14.

UTMB states that it has responded fully to Plaintiffs' interrogatories as well as provided documents and deposition testimony on this topic. Doc. 217 at 14. The TDCJ Defendants respond that in light of the District Court's quashing of Plaintiffs' prior discovery requests, any further discovery on this point should be undertaken by new discovery requests. Doc. 217 at 15.

Upon consideration of the law and the parties' arguments, the undersigned does not view either of Plaintiffs' requests as directly relating to the sanctionable conduct around which this *Motion for Sanctions* revolves.  Instead, the Court concludes that in light of the transfer of this case to Judge Ellison's docket, Plaintiffs should file any motion to compel as to UTMB in the Southern District of Texas.  Additionally, because the District Court quashed Plaintiff's interrogatories as to all TDCJ Defendants, they are without legal effect and Plaintiffs must reissue the interrogatories.  Doc. 190-1 (Plaintiffs' May 14, 2014 discovery requests); Doc. 192 at 2 (order quashing discovery served by Plaintiffs on May 14, 2014).

    *3.  Plaintiffs request permission to reopen any deposition previously taken.*

Plaintiffs ask that any depositions previously taken be reopened after Defendants produce responsive documents and Plaintiffs have had an adequate opportunity to review such documents.  Doc. 217 at 15.  Plaintiffs request that the depositions be open for three hours per deponent and that the Court award all costs and attorneys' fees for the preparation and taking of these additional depositions as well as all costs associated with any resulting amendments to expert reports.  Doc. 217 at 15.

Based on the newly-produced documents, UTMB agrees to make available for deposition in Austin, Texas any UTMB witnesses previously deposed by Plaintiffs.  With Plaintiffs' ability to re-depose witnesses based on UTMB's recent production, UTMB contends that sanctions are not warranted as Plaintiffs have not suffered any prejudice.  Doc. 217 at 16.  UTMB observes that if they had produced the documents before the depositions of the witnesses, Plaintiffs would have spent approximately the same amount of time questioning each witness regarding the document in question, and it has complied with its discovery obligations in good faith.  Doc. 217 at 16.

The TDCJ Defendants join in UTMB's statement and further state that they are willing to bear the costs of reopening the depositions, but not attorneys' fees.  Doc. 217 at 16.  The TDCJ Defendants argue that no attorneys' fees should be awarded absent a detailed showing by Plaintiffs of (1) the time they previously spent preparing for the depositions that would have been avoided had they possessed certain documents; and (2) the time spent specifically related to the factual issues related to this case rather than to discovery related to all of the heat cases and TDCJ globally.  Doc. 217 at 16.

Upon consideration of the law, the pleadings, and the parties' arguments, the Court finds that UTMB and the TDCJ Defendants should equally bear the costs associated with Plaintiffs' taking any additional depositions that need to be reopened after Defendants complete production of responsive documents.  It is unclear at this juncture what additional attorneys' fees Plaintiffs will incur by having to reopen some depositions since they presumably would have spent the same amount of time reviewing the newly-disclosed documents in preparation for the initial depositions as they will in preparation for the reopened depositions.  Nevertheless, if Plaintiffs are able to quantify those fees at the conclusion of the reopened depositions, the parties are **ORDERED** to confer in an effort to reach an agreement regarding an appropriate cost and fee award.  If the parties, after fully conferring and making their best efforts to agree, are unable to reach an agreement, Plaintiffs may submit to the Court for in camera inspection their billing statements in relation to those issues.

*4. Plaintiffs note that the discovery period in this case closed on May 2, and they request that a new deadline for discovery be set.*

Plaintiffs request a new discovery deadline and believe the Court should allow them to take the discovery they need, but not allow Defendants to benefit from their allegedly improper conduct.  Doc. 217 at 17.  Plaintiffs thus ask that Defendants be prohibited from introducing into

evidence any document produced to Plaintiffs and any witnesses disclosed after the original

discovery deadline.  Doc. 217 at 17.  Plaintiffs also request that the Court prohibit Defendants

from designating any additional expert witnesses since the expert witness deadline was in

January 2014.  Doc. 217 at 17.

UTMB agrees with Plaintiffs that a new schedule should be entered in this case, noting

that it has asked Judge Ellison to do so.  Doc. 217 at 17.  UTMB opposes Plaintiffs' request that

it be prohibited from introducing into evidence any document produced or any presenting any

witnesses disclosed after May 2, 2014 on grounds of fairness and because there is no evidence

that its discovery failures were intentional.  Doc. 217 at 17.  Finally, UTMB points out that the

question of whether documents should be admitted into evidence at trial should be left to Judge

Ellison.  Doc. 217 at 17.

The TDCJ Defendants join in UTMB's statement and assert that their willingness to

extensively search for responsive documents demonstrates that they did not intentionally,

willfully, or in bad faith respond and/or fail to respond to discovery.  Doc. 217 at 17.  As such,

the TDCJ Defendants contend that the extreme sanction of limiting their evidence at trial is

unwarranted.  Doc. 217 at 17-18.

Upon consideration of the parties' arguments, the undersigned concludes that in light of

the transfer of this case to Judge Ellison's docket, any decision regarding whether to set a new

discovery deadline should be left to his discretion.  UTMB and the TDCJ Defendants have filed

a *Statement of Case Status* in that matter, requesting several more months to complete fact and

expert discovery.  *See* No. 4:14-cv-3253, Doc. #222 at 7-8.  Additionally, Plaintiffs' request that

Defendants be prohibited from introducing into evidence any documents and witnesses disclosed

after the original discovery deadline is a matter to be taken up before Judge Ellison, the presiding

judge.  The undersigned also denies Plaintiffs' request that this Court prohibit Defendants from designating any additional expert witnesses.  Defendants recently requested an extension for such designations which request is pending before Judge Ellison.  *Id.*

     5.  *Plaintiffs request that Defendants pay reasonable attorneys' fees and costs associated with the Motion for Sanctions and the Joint Status Report.*

     Plaintiffs have broken down the time and number of hours counsel have spent on the *Motion for Sanctions*, reply briefs, and a supplemental brief to reach a total amount of $72,305.  Doc. 217 at 18.  Additionally, Plaintiffs believe the Court should award them attorneys' fees and costs associated with their briefing of the *Joint Status Report*.  Doc. 217 at 18.

     UTMB opposes Plaintiffs' request for fees, asserting that there is no evidence that it acted intentionally, willfully, or in bad faith in responding to discovery.  Rather, UTMB believed its discovery responses and disclosures were accurate and complete at the time they were made.  Doc. 217 at 18.  Thus, UTMB maintains that its actions were substantially justified.  Doc. 217 at 18 (citing FED. R. CIV. P. 37(a)(5)(A)(ii)). Moreover, UTMB asserts that there was no need for Plaintiffs to file their sanctions motion because it had voluntarily addressed and was resolving any discovery deficiencies.  Doc. 217 at 19.

     The TDCJ Defendants join UTMB's response and note that their counsel alerted Plaintiffs to the discovery deficiencies as soon as they were discovered, and Plaintiffs' sanctions motion was premature and unnecessary because were already in the process of initiating a search for relevant documents.  Doc. 217 at 19 (citing FED. R. CIV. P. 37(a)(5)(A) (providing that an award of attorneys' fees is not permitted where (1) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (2) the opposing party's nondisclosure, response, or objection was substantially justified; or (3) other circumstances make an award of expenses unjust)).

Upon consideration of the law and the parties' arguments, the Court finds that Defendants did not make a reasonable inquiry into the factual basis of their responses to Plaintiffs' requests for production, interrogatories, and witness disclosures.  FED. R. CIV. P. 26(g) advisory committee's note (1983).  In light of the medical nature of this case, it was unreasonable for UTMB and their counsel to not inquire further (and disclose those employees' existence as potential witnesses) regarding whether there were any documents related to inmates' heat-related deaths or injuries considering that the newly disclosed evidence[2] reveals that (1) TDCJ/UTMB have been documenting heat-related incidents since at least August 2010, Doc. 164-2 at 59; (2) Dr. Adams, UTMB's Senior Medical Director of Outpatient Services, stated that inmates needed "cooling" to protect them from the heat, criticized how little water was given to inmates, and asked for reports for all TDCJ regions as to how each one provided water and ice to inmates, Doc. 164-2 at 75-76, 81; (3) Justin Robison, UTMB's Director of Nursing for Correctional Managed Care, was notified that a prisoner suffering from heat stroke could have died because TDCJ correctional officers "can't be allowed to take temps" Doc. 164-2 at 85; and (4) a regional operations manager at UTMB advised a nurse that a prison's "heat situation has reached the highest levels of TDCJ and [Correctional Managed Care at UTMB]," Doc. 164-2 at 93.

For similar reasons, the Court finds that UTMB and its counsel did not act reasonably when they failed to inquire further regarding whether there were additional witnesses with relevant knowledge.  Moreover, it is disingenuous for UTMB to state that Plaintiffs' motion is baseless because UTMB began its search for responsive documents only as related to McCollum and the Hutchins State Jail − Plaintiffs' discovery requests encompassed all TDCJ facilities.  Additionally, the undersigned finds that UTMB's and its counsel's actions were not substantially

---

[2] The Court notes that these initial supplemental discovery responses were just a drop in the bucket as UTMB represents that its ESI searches ultimately revealed 29,453 pages of responsive documents.  Doc. 217 at 8.

justified "to a degree that could satisfy a reasonable person" because reasonable people could not differ as to the appropriateness of their actions. *Pierce*, 487 U.S. at 565. Finally, the Court rejects UTMB's (and the TDCJ Defendants') argument that Plaintiffs' *Motion for Sanctions* was premature and unnecessary. The motion was warranted under the circumstances and, indeed, necessary as Plaintiffs seek to recoup their attorneys' fees and costs, and Defendants appear disinclined to pay them. Rule 37(a)(5)(A) has no application to this situation as that rule governs the filing of an unnecessary discovery motion, not a sanctions motion. Under the circumstances presented here and for the reasons stated, the Court holds that sanctions are warranted against UTMB.

The undersigned additionally finds that sanctions are warranted against the TDCJ Defendants. As was the case against UTMB, in light of the medical nature of this matter, it was unreasonable for the TDCJ Defendants and their counsel to not inquire further regarding whether there were any documents related to inmates' heat-related deaths or injuries considering that the newly disclosed evidence[3] reveals that (1) TDCJ/UTMB have been documenting heat-related incidents since at least August 2010, Doc. 164-2 at 59; (2) as early as August 2010, Rick Thaler wanted health services to "pay closer attention to ad seg offenders on psychotropic meds due to them being more at risk" of heat-related illnesses, Doc. 164-2 at 55; (3) TDCJ's Chief Medical Officer wanted to be informed about all offenders who suffered heat-related illnesses, Doc. 164-2 at 66; (4) William Stephens, then Deputy Director of TDCJ's Correctional Institutions Division was advised that several inmates at one TDCJ prison had to see nursing staff due to heat-related illnesses, water was only being passed out "once daily and sometimes twice," and the ice machines were either broken or could not keep up with demand, Doc. 164-2 at 69-71; (5) a

---

[3] The Court notes that these initial supplemental discovery responses represented just a few of the many that were yet to come as the TDCJ Defendants represent that their initial ESI search has revealed almost 200,000 potentially responsive documents. Doc. 217 at 9.

regional operations manager at UTMB stated that a prison's "heat situation has reached the highest levels of TDCJ and [Correctional Managed Care at UTMB]," Doc. 164-2 at 93; and (6) a July 2013 email references an additional heat-related inmate death that summer although Plaintiffs assert that TDCJ has denied that anybody died of heat-related causes during that time frame, Doc. 164-2 at 97-98.

Further, given the obvious health-related nature of this case, it is disingenuous for the TDCJ Defendants and their counsel to assert that they did not know that they should inquire further into the nature of the work done and records kept by TDCJ's Health Services Division. For similar reasons, the Court finds that the TDCJ Defendants and their counsel did not act reasonably when they failed to investigate more thoroughly to determine whether there were additional witnesses with relevant knowledge. Moreover, the undersigned finds that the TDCJ Defendants' and their counsel's actions were not substantially justified "to a degree that could satisfy a reasonable person" because reasonable people could not differ as to the appropriateness of their actions. *Pierce*, 487 U.S. at 565. Accordingly, the Court holds that sanctions are warranted against the TDCJ Defendants.

In sum, it borders on the ludicrous to ask the Court to believe that UTMB, TDCJ, and their counsel acted reasonably in believing, for example, that neither entity was keeping track of heat-related inmate deaths under the circumstances and that virtually no emails were being exchanged about the numerous deaths that were occurring across the state. Plaintiffs' counsel characterizes their own reaction to these representations as "incredulous," and the undersigned finds that description apt. Apparently, no one investigating the very serious allegations that characterize this case even bothered to talk to high level officials at either entity to inquire into the existence of such evidence or – worse – they did and the evidence was withheld. In either

event, sanctions are fully warranted against both UTMB and the TDCJ Defendants for the reasons discussed.

Plaintiffs request that Defendants equally bear the expense of paying Plaintiffs' reasonable attorneys' fees and costs associated with the drafting of their *Motion for Sanctions*, reply in support, and the *Joint Status Report*. Doc. 217 at 18. The Court finds this to be an appropriate sanction. Accordingly, the Court **ORDERS** the parties to confer in an effort to reach an agreement regarding an appropriate award of attorneys' fees and costs. If the parties, after fully conferring and making their best efforts to agree, cannot come to an agreement, Plaintiffs may submit to the Court for in camera inspection their supporting billing statements. The undersigned also concludes that an additional sanction is warranted. Specifically, Defendants are **ORDERED** to equally bear the expense of paying the costs and attorneys' fees incurred by Plaintiffs for up to six depositions that Plaintiffs may choose to undertake of witnesses who were previously undisclosed by Defendants. Upon the conclusion of such discovery, the Court **ORDERS** the parties to confer in an effort to reach an agreement regarding an appropriate award of attorneys' fees and costs. If the parties, after fully conferring and making their best efforts to agree, cannot come to an agreement, Plaintiffs may submit to the Court for in camera inspection their supporting billing statements.

*6. Plaintiff requests that the Court order Defendants to pay as a sanction reasonable attorneys' fees and costs in an amount the Court deems fair and just, considering that TDCJ has an annual budget of over $3 billion and UTMB has an annual budget of over $1.6 billion.*

Plaintiffs believe Defendants' conduct since the filing of the *Motion for Sanctions* demonstrates that they fail to take this issue seriously, to wit, UTMB moved to quash the deposition of an IT witness, Doc. 172, and this Court ordered the deposition to take place the day after the hearing, Doc. 181. Nevertheless, the witness testified that he was not the proper witness

for several of the categories.  *See* Doc. 188.  Further, despite Plaintiffs' identifying deficiencies

in UTMB's document production in April 2014, UTMB did not produce documents until

December 2014.  Doc. 217 at 20.

Plaintiffs contend that the TDCJ Defendants' behavior is worse because despite

acknowledging their deficient production, they still have not produced the results of an ESI

search and, in fact, did not even begin their search until September 2014, nearly five months

after the initial emails were produced.  Doc. 217 at 20.  Even then, Plaintiffs learned of the

search after the fact without any conversation among counsel as to which custodians' records to

search and which terms should be applied, and the TDCJ Defendants refused to conduct a search

on their Mainframe email system until Judge Ellison ordered it in a different case.  Doc. 217 at

20.

Plaintiffs believe the only way to get Defendants' attention is to severely sanction them,

including an award to Plaintiffs of their costs and attorneys' fees for the preparation and taking

of the following depositions, which were taken without key documents:  (a) Robert Eason as a

30(b)(6) witness on March 26, 2013; (b) Warden Pringle on February 15, 2013; (c) Warden

Pringle as a 30(b)(6) witness on August 12, 2013; (d) Glenda Adams as a 30(b)(6) witness on

November 19, 2013; (e) Glenda Adams as an expert witness on March 7, 2014; (f) William

Stephens on October 18, 2013; (g) Rick Thaler on October 18, 2013; and (h) Owen Murray on

November 20, 2013.  Doc. 217 at 20-21.  Additionally, to the extent Plaintiffs deem it necessary,

they request that Defendants pay any costs and attorneys' fees associated with Plaintiffs' need to

update their expert reports and any costs associated with Plaintiffs' existing experts reviewing

any documents produced after May 2, 2014.  Doc. 217 at 21.

UTMB contends that monetary sanctions are unwarranted because it produced documents as quickly as possible given that it searched e-mails, state-wide, for approximately 139 individuals using 39 search terms.  Doc. 217 at 21.  Based on the search, UTMB located almost 20 GB of data to review and engaged the discovery service of King & Spaulding ("K & S") to conduct a forensic review of the e-mails to reduce the potentially responsive data through a de-duplication process.  Doc. 217 at 21.  After the de-duplication process, (1) a UTMB employee traveled to Atlanta, Georgia to assist with a predictive coding process; (2) K & S and UTMB reviewed all documents for responsiveness and privilege; (3) K & S and UTMB  completed a quality control check; (4) two members of UTMB's Legal Affairs Department redacted privileged information; (5) K & S prepared a privilege log; and (6) in December 2014, UTMB produced 6,366 documents that are responsive to Plaintiffs' various requests.  Doc. 217 at 21-22.

UTMB agrees to make any of its previously-deposed witnesses available for deposition in Austin, Texas with regard to any of the recently produced documents and asserts that Plaintiffs have thus not suffered any prejudice.  Doc. 217 at 21.  UTMB thus argues that Plaintiffs' request for the fees and expenses of deposing all eight witnesses Plaintiffs identified is unjustified because (1) only two of the eight deponents were of UTMB witnesses (Glenda Adams and Owen Murray); and (2) Plaintiffs likely would have asked many of the same questions at the original deposition as at any further deposition and will be able to depose the witnesses on the new documents and thus suffer no prejudice.  Doc. 217 at 21-22.  Finally, UTMB argues that it should not be required to pay for any of the fees from Plaintiffs' experts in reviewing the most recently produced documents because parties routinely produce documents on a rolling basis.  Doc. 217 at 22.

The TDCJ Defendants join in UTMB's statement and further argue that they have undertaken expensive, unprecedented, and time consuming searches for ESI on two of their computer systems and have agreed to re-open depositions in this case and pay for the associated costs.  Doc. 217 at 22.  In this matter alone, the TDCJ Defendants aver that they have responded to numerous sets of discovery requests which contained 538 requests for production, 263 requests for admissions, and 134 interrogatories, and TDCJ's counsel took immediate steps to remedy the discovery omissions once it became apparent that the discovery had become much broader than a single wrongful death case and, instead, related to other cases being litigated throughout the state.  Doc. 217 at 22-23.

Upon consideration of the law, the pleadings, and the parties' arguments, and while it is a close call, the Court concludes that UTMB and the TDCJ Defendants have acted with reasonable diligence in remedying the discovery violations in this case.  The Court has imposed substantial sanctions in this case and will consider additional sanctions should Defendants choose a similar course of action in the future.  At this time, however, the sanctions imposed are all that are warranted.

**F.      Conclusion**

For the reasons set forth above, Plaintiffs' *Motion for Sanctions, Motion for Order to Show Cause, and Motion to Compel*, Doc. 164, is **GRANTED IN PART**.

**SO ORDERED** on January 26, 2015.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE