UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, and SANDRA McCOLLUM, individually, and STEPHANIE KINGREY, individually and as independent administrator of the Estate of LARRY GENE McCOLLUM, | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| PLAINTIFFS | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 4:14-cv-3253 |
| | § | JURY DEMAND |
| BRAD LIVINGSTON, JEFF PRINGLE, RICHARD CLARK, KAREN TATE, SANDREA SANDERS, ROBERT EASON, the UNIVERSITY OF TEXAS MEDICAL BRANCH and the TEXAS DEPARTMENT OF CRIMINAL JUSTICE. | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| DEFENDANTS | § | |

Plaintiffs' Consolidated Summary Judgment Response Appendix

# EXHIBIT 68

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| KEVIN WEBB, individually and<br>as representative of the Estate of<br>ROBERT ALLEN WEBB, et al. | § § § § | |
| | § | Civil Action No. 6:13cv711 |
| Plaintiff | § § | CONSOLIDATED ACTIONS |
| vs. | § § | |
| BRAD LIVINGSTON, et al. | § § | |
| Defendants | § | |

-----------------------------------------------------------------------------------------

| | | |
|---|---|---|
| ASHLEY ADAMS, individually and<br>as the representative of the Estate of<br>RODNEY GERALD ADAMS, and<br>WANDA ADAMS, individually, et al. | § § § § | |
| | § | Civil Action No. 6:13cv712 |
| Plaintiffs | § § | |
| vs. | § § | |
| BRAD LIVINGSTON, et al. | § § | |
| Defendants | § | |

-----------------------------------------------------------------------------------------

| | | |
|---|---|---|
| GWEN TOGONIDZE, as the next friend<br>of J.T., a minor child and heir-at-law to<br>the ESTATE OF ALEXANDER<br>TOGONIDZE, | § § § § | |
| | § | Civil Action No. 6:14cv93 |
| Plaintiff | § § | |
| vs. | § § | |
| BRAD LIVINGSTON, et al. | § § | |
| Defendants | § | |

TO:    Plaintiff, Kevin Webb, by and through his attorney of record, Jeff Edwards, EDWARDS LAW FIRM, The Haehnel Building, 1101 East 11th Street, Austin, Texas 78702.

Defendant Brad Livingston, through the Attorney General of Texas, submits the following **Defendant Brad Livingston's Answers to Plaintiff Kevin Webb's Second Request for Admissions.**

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Civil Litigation

KAREN D. MATLOCK
Assistant Attorney General
Chief, Law Enforcement Defense Division

DEMETRI ANASTASIADIS
Assistant Attorney General
Attorney-In-Charge
State Bar No. 01164480

Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463.2080 / (512) 495.9139 Fax

**ATTORNEYS FOR DEFENDANT
BRAD LIVINGSTON**

## CERTIFICATE OF SERVICE

I, DEMETRI ANASTASIADIS, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Defendant Brad Livingston's Answers to Plaintiffs'**

2

## CERTIFICATE OF SERVICE

I, DEMETRI ANASTASIADIS, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Defendant Brad Livingston's Answers to Plaintiffs' Second Request for Admissions,** has been served by placing the same in the United States Postal Service, postage prepaid, certified return receipt requested, on this the 5th day of May, 2014, addressed to:

Jeff Edwards                    *Via Certified Mail No. 7010 1060 0000 3700 7626*
Scott Medlock
THE EDWARDS LAW FIRM
The Haehnel Building
1101 East 11th Street
Austin, Texas 78702
jeff@edwards-law.com
scott@edwards-law.com
*Attorney for Plaintiffs*

Bruce R Garcia
Assistant Attorney General
Office of the Attorney General of Texas
Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin, Texas 78711
bruce.garcia@texasattorneygeneral.gov
*Attorneys for Defendants*

Kim Coogan
Assistant Attorney Generals
Office of the Attorney General of Texas
Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin, Texas 78711
kim.coogan@texasattorneygeneral.gov
*Attorneys for Defendants*

DEMETRI ANASTASIADIS
Assistant Attorney General

3

## DEFENDANT BRAD LIVINGSTON'S RESPONSES TO PLAINTIFF KEVIN WEBB'S SECOND REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

You knew in 2011 that temperatures inside TDCJ prisons in areas where prisoners are housed regularly exceeded 88 degrees during the summer.

**RESPONSE:**

Defendant objects that this request is vague as "regularly" is not defined.  Defendant further objects that this request is overly broad and not reasonably limited as to time or scope.

Subject to and without waiving the foregoing objections, Defendant admits that temperature logs indicate that there are occasions on which the temperatures in areas of TDCJ facilities that house offenders have exceeded 88 degrees.

**REQUEST FOR ADMISSION NO. 2:**

You knew in 2011 that temperatures inside TDCJ prisons in areas where prisoners are housed regularly exceeded 90 degrees during the summer.

**RESPONSE:**

Defendant objects that this request is vague as "regularly" is not defined.  Defendant further objects that this request is overly broad and not reasonably limited as to time or scope.

Subject to and without waiving the foregoing objections, Defendant admits that temperature logs indicate there are occasions on which the temperatures in areas of TDCJ facilities that house offenders have exceeded 90 degrees.

**REQUEST FOR ADMISSION NO. 3:**

You knew in 2011 that temperatures inside TDCJ prisons in areas where prisoners are housed regularly exceeded 95 degrees during the summer.

**RESPONSE:**

Defendant objects that this request is vague as "regularly" is not defined.  Defendant further objects that this request is overly broad and not reasonably limited as to time or scope.

Subject to and without waiving the foregoing objections, Defendant admits that temperature logs indicate there are occasions on which the temperatures in areas of TDCJ facilities that house offenders have exceeded 95 degrees.

4

## REQUEST FOR ADMISSION NO. 4:

You knew in 2011 that temperatures inside TDCJ prisons in areas where prisoners are housed regularly exceeded 100 degrees during the summer.

## RESPONSE:

Defendant objects that this request is vague as "regularly" is not defined.  Defendant further objects that this request is overly broad and not reasonably limited as to time or scope.

Subject to and without waiving the foregoing objections, Defendant admits temperature logs indicate there are occasions on which the temperatures in areas of TDCJ facilities that house offenders have exceeded 100 degrees.

## REQUEST FOR ADMISSION NO. 5:

You knew in 2011 that temperatures inside TDCJ prisons in area where prisoners are housed regularly exceeded 105 degrees during the summer.

## RESPONSE:

Defendant objects that this request is vague as "regularly" is not defined.  Defendant further objects that this request is overly broad and not reasonably limited as to time or scope.

Subject to and without waiving the foregoing objections, Defendant admits temperature logs indicate there are occasions on which the temperatures in areas of TDCJ facilities that house offenders have exceeded 105 degrees.

## REQUEST FOR ADMISSION NO. 6:

You knew in 2011 that the heat index inside TDCJ prisons in areas where prisoners are housed regularly exceeded 88 degrees during the summer.

## RESPONSE:

Defendant objects that this request is vague as "regularly" is not defined.  Defendant further objects that this request is overly broad and not reasonably limited as to time or scope.

Subject to and without waiving the foregoing objections, Defendant admits temperature logs indicate there are occasions on which the heat index in areas of TDCJ facilities that house offenders has exceeded 88 degrees.

## REQUEST FOR ADMISSION NO. 7:

You knew in 2011 that the heat index inside TDCJ prisons in areas where prisoners are housed regularly exceeded 90 degrees during the summer.

**RESPONSE:**

Defendant objects that this request is vague as "regularly" is not defined.  Defendant further objects that this request is overly broad and not reasonably limited as to time or scope.

Subject to and without waiving the foregoing objections, Defendant admits temperature logs indicate there are occasions on which the heat index in areas of TDCJ facilities that house offenders has exceeded 90 degrees.

**REQUEST FOR ADMISSION NO. 8:**

You knew in 2011 that the heat index inside TDCJ prisons in areas where prisoners are housed regularly exceeded 95 degrees during the summer.

**RESPONSE:**

Defendant objects that this request is vague as "regularly" is not defined.  Defendant further objects that this request is overly broad and not reasonably limited as to time or scope.

Subject to and without waiving the foregoing objections, Defendant admits temperature logs indicate there are occasions on which the heat index in areas of TDCJ facilities that house offenders has exceeded 95 degrees.

**REQUEST FOR ADMISSION NO. 9:**

You knew in 2011 that the heat index inside TDCJ prisons in areas where prisoners are housed regularly exceeded 100 degrees during the summer.

**RESPONSE:**

Defendant objects that this request is vague as "regularly" is not defined.  Defendant further objects that this request is overly broad and not reasonably limited as to time or scope.

Subject to and without waiving the foregoing objections, Defendant admits temperature logs indicate there are occasions on which the heat index in areas of TDCJ facilities that house offenders has exceeded 100 degrees.

**REQUEST FOR ADMISSION NO. 10:**

You knew in 2011 that the heat index inside TDCJ prisons in areas where prisoners are housed regularly exceeded 105 degrees during the summer.

6

**RESPONSE:**

Defendant objects that this request is vague as "regularly" is not defined. Defendant further objects that this request is overly broad and not reasonably limited as to time or scope.

Subject to and without waiving the foregoing objections, Defendant admits temperature logs indicate there are occasions on which the heat index in areas of TDCJ facilities that house offenders has exceeded 105 degrees.

**REQUEST FOR ADMISSION NO. 11:**

You knew in 2011 that TDCJ incarcerated prisoners who have been diagnosed with hypertension.

**RESPONSE:**

Defendant objects that this request is vague, overly broad, and not sufficiently limited as to time, scope, or geographic location.

Subject to and without waiving the foregoing objections, Defendant admits knowing in 2011 that among the approximately 150,000 offenders in TDCJ custody, there are some offenders who have been diagnosed with hypertension at some point in time.

**REQUEST FOR ADMISSION NO. 12:**

You knew in 2011 that TDCJ incarcerated prisoners who have been diagnosed with depression.

**RESPONSE:**

Defendant objects that this request is vague, overly broad, and not sufficiently limited as to time, scope, or geographic location.

Subject to and without waiving the foregoing objections, Defendant admits knowing in 2011 that among the approximately 150,000 offenders in TDCJ custody, there are some offenders who have been diagnosed with depression at some point in time.

**REQUEST FOR ADMISSION NO. 13:**

You knew in 2011 that TDCJ incarcerated prisoners who have been diagnosed with schizophrenia.

**RESPONSE:**

Defendant objects that this request is vague, overly broad, and not sufficiently limited as to time, scope, or geographic location.

7

Subject to and without waiving the foregoing objections, Defendant admits knowing in 2011 that among the approximately 150,000 offenders in TDCJ custody, there are some offenders who have been diagnosed with schizophrenia at some point in time.

**REQUEST FOR ADMISSION NO. 14:**

You knew in 2011 that TDCJ incarcerated prisoners who have been diagnosed with obesity.

**RESPONSE:**

Defendant objects that this request is vague, overly broad, and not sufficiently limited as to time, scope, or geographic location.

Subject to and without waiving the foregoing objections, Defendant admits knowing in 2011 that among the approximately 150,000 offenders in TDCJ custody, there are some offenders who have been diagnosed with obesity at some point in time.

**REQUEST FOR ADMISSION NO. 15:**

You knew in 2011 that TDCJ incarcerated prisoners who have been diagnosed with diabetes.

**RESPONSE:**

Defendant objects that this request is vague, overly broad, and not sufficiently limited as to time, scope, or geographic location.

Subject to and without waiving the foregoing objections, Defendant admits knowing in 2011 that among the approximately 150,000 offenders in TDCJ custody, there are some offenders who have been diagnosed with diabetes at some point in time.

**REQUEST FOR ADMISSION NO. 16:**

You knew in 2011 that TDCJ incarcerated prisoners who have been diagnosed with developmental disabilities.

**RESPONSE:**

Defendant objects that this request is vague, overly broad, and not sufficiently limited as to time, scope, or geographic location.

Subject to and without waiving the foregoing objections, Defendant admits knowing in 2011 that among the approximately 150,000 offenders in TDCJ custody, there are some offenders who have been diagnosed with developmental disabilities at some point in time.

Plaintiffs' MSJ Appx. 1285

**REQUEST FOR ADMISSION NO. 17:**

You knew in 2011 that TDCJ incarcerated prisoners who have been diagnosed with Hepatitis C.

**RESPONSE:**

Defendant objects that this request is vague, overly broad, and not sufficiently limited as to time, scope, or geographic location.

Subject to and without waiving the foregoing objections, Defendant admits knowing in 2011 that among the approximately 150,000 offenders in TDCJ custody, there are some offenders who have been diagnosed with Hepatitis C at some point in time.

**REQUEST FOR ADMISSION NO. 18:**

You knew in 2011 that TDCJ incarcerated prisoners who have been prescribed antidepressant drugs.

**RESPONSE:**

Defendant objects that this request is vague, overly broad, and not sufficiently limited as to time, scope, or geographic location.

Subject to and without waiving the foregoing objections, Defendant admits knowing in 2011 that among the approximately 150,000 offenders in TDCJ custody, there are some offenders who have been prescribed antidepressant medications at some point in time.

**REQUEST FOR ADMISSION NO. 19:**

You knew in 2011 that TDCJ incarcerates prisoners who have been prescribed antipsychotic drugs.

**RESPONSE:**

Defendant objects that this request is vague, overly broad, and not sufficiently limited as to time, scope, or geographic location.

Subject to and without waiving the foregoing objections, Defendant admits knowing in 2011 that among the approximately 150,000 offenders in TDCJ custody, there are some offenders who have been prescribed antipsychotic medications at some point in time.

**REQUEST FOR ADMISSION NO. 20:**

You knew in 2011 that TDCJ incarcerates prisoners who have been prescribed diuretic drugs.

9

**RESPONSE:**

Defendant objects that this request is vague, overly broad, and not sufficiently limited as to time, scope, or geographic location.

Subject to and without waiving the foregoing objections, Defendant admits knowing in 2011 that among the approximately 150,000 offenders in TDCJ custody, there are some offenders who have been prescribed diuretic medications at some point in time.

**REQUEST FOR ADMISSION NO. 21:**

You knew in 2011 that TDCJ incarcerates prisoners who have been prescribed medications to treat mental illnesses.

**RESPONSE:**

Defendant objects that this request is vague, overly broad, and not sufficiently limited as to time, scope, or geographic location.

Subject to and without waiving the foregoing objections, Defendant admits knowing in 2011 that among the approximately 150,000 offenders in TDCJ custody, there are some offenders who have been prescribed medications intended to treat mental illness at some point in time.

**REQUEST FOR ADMISSION NO. 22:**

You knew in 2011 that TDCJ incarcerates prisoners who have been prescribed antidepressants.

**RESPONSE:**

Defendant objects that this request is vague, overly broad, and not sufficiently limited as to time, scope, or geographic location.

Subject to and without waiving the foregoing objections, Defendant admits knowing in 2011 that among the approximately 150,000 offenders in TDCJ custody, there are some offenders who have been prescribed antidepressant medications at some point in time.

**REQUEST FOR ADMISSION NO. 23:**

You knew in 2011 TDCJ had no written administrative directive to address high temperatures in prisoner housing areas.

**RESPONSE:**

Admit.

10

**REQUEST FOR ADMISSION NO. 24:**

You knew in 2011 UTMB had no written policy to address high temperatures in prisoner housing areas.

**RESPONSE:**

Deny.

**REQUEST FOR ADMISSION NO. 25:**

You knew in 2011 the Correctional Managed Healthcare Committee had no written policy to address high temperatures in prisoner housing areas.

**RESPONSE:**

Deny.

**REQUEST FOR ADMISSION NO. 26:**

You knew in 2012 TDCJ had no written administrative directive to address high temperatures in prisoner housing areas.

**RESPONSE:**

Admit.

**REQUEST FOR ADMISSION NO. 27:**

You knew in 2012 UTMB had no written policy to address high temperatures in prisoner housing areas.

**RESPONSE:**

Deny.

**REQUEST FOR ADMISSION NO. 28:**

You knew in 2012 the Correctional Managed Healthcare Committee had no written policy to address high temperatures in prisoner housing areas.

**RESPONSE:**

11

Deny.

**REQUEST FOR ADMISSION NO. 29:**

The version of TDCJ Administrative Directive AD-10.64 effective in 2011 did not apply to conditions inside prisoner housing areas.

**RESPONSE:**

Admit.

**REQUEST FOR ADMISSION NO. 30:**

'The version of TDCJ Administrative Directive AD-10.64 effective in 2012 did not apply to conditions inside prisoner housing areas.

**RESPONSE:**

Admit.

**REQUEST FOR ADMISSION NO. 31:**

Other than TDCJ Administrative Directive AD-10.64, no other TDCJ administrative directive addressed protecting prisoners from high temperatures in 2011.

**RESPONSE:**

Admit.

**REQUEST FOR ADMISSION NO. 32:**

Other than TDCJ Administrative Directive AD-10.64, no other TDCJ administrative directive addressed protecting prisoners from high temperatures in 2012.

**RESPONSE:**

Admit.

**REQUEST FOR ADMISSION NO. 33:**

You are not aware of any study done to estimate the cost of air conditioning the inmate housing areas at the Gurney Unit.

**RESPONSE:**

12

Defendant objects that this request is vague, overly broad, and not sufficiently limited as to time or scope.  Subject to and without waiving the foregoing objections, admit

## REQUEST FOR ADMISSION NO. 34:

You are not aware of any study done to estimate the cost of air conditioning the inmate housing areas at the Michael Unit.

## RESPONSE:

Defendant objects that this request is vague, overly broad, and not sufficiently limited as to time or scope.  Subject to and without waiving the foregoing objections, admit

## REQUEST FOR ADMISSION NO. 35:

You are not aware of any study done to estimate the cost of air conditioning the inmate housing areas at the Hodge Unit.

## RESPONSE:

Defendant objects that this request is vague, overly broad, and not sufficiently limited as to time or scope.  Subject to and without waiving the foregoing objections, admit.

## REQUEST FOR ADMISSION NO. 36:

You are not aware of any study done to estimate the cost of air conditioning the inmate housing areas at the Garza West Unit.

## RESPONSE:

Defendant objects that this request is vague, overly broad, and not sufficiently limited as to time or scope.  Subject to and without waiving the foregoing objections, admit

## REQUEST FOR ADMISSION NO. 37:

You are not aware of any study done to estimate the cost of air conditioning the inmate housing areas at the Eastham Unit.

## RESPONSE:

Defendant objects that this request is vague, overly broad, and not sufficiently limited as to time or scope.  Subject to and without waiving the foregoing objections, admit.

Plaintiffs' MSJ Appx. 1290

**REQUEST FOR ADMISSION NO. 38:**

You are not aware of any study done to estimate the cost of air conditioning the inmate housing areas at the Byrd Unit.

**RESPONSE:**

Defendant objects that this request is vague, overly broad, and not sufficiently limited as to time or scope. Subject to and without waiving the foregoing objections, admit.

**REQUEST FOR ADMISSION NO. 39:**

You are not aware of any study done to estimate the cost of air conditioning the inmate housing areas at the Coffield Unit.

**RESPONSE:**

Defendant objects that this request is vague, overly broad, and not sufficiently limited as to time or scope. Subject to and without waiving the foregoing objections, admit.

**REQUEST FOR ADMISSION NO. 40:**

You are not aware of any study done to estimate the cost of air conditioning the inmate housing areas at the Connelly Unit.

**RESPONSE:**

Defendant objects that this request is vague, overly broad, and not sufficiently limited as to time or scope. Subject to and without waiving the foregoing objections, admit.

**REQUEST FOR ADMISSION NO. 41:**

You are not aware of any study done to estimate the cost of air conditioning the inmate housing areas at the Huntsville Unit.

**RESPONSE:**

Defendant objects that this request is vague, overly broad, and not sufficiently limited as to time or scope. Subject to and without waiving the foregoing objections, admit.

**REQUEST FOR ADMISSION NO. 42:**

In 2007, two prisoners died at the Byrd Unit where heat was judged to have been a significant contributing factor in the deaths.

14

**RESPONSE:**

Admit that Offender James Shriver, who was incarcerated at the Byrd Unit, died in 2007 and the cause of death was determined to be arrhythmia with likely temperature disregulation. Admit that Offender Dionicio Robles, who was incarcerated at the Byrd Unit, died in 2007 and the cause of death was determined to be hyperthermia caused by environmental conditions plus preexisting co-morbidities and medication.

**REQUEST FOR ADMISSION NO. 43:**

In 2011, one prisoner died at the Hutchins Unit where heat was judged to have been a significant contributing factor in the death.

**RESPONSE:**

Admit that Offender Larry McCollum, who was incarcerated at the Hutchins State Jail, died in 2011 and the cause of death was determined to be hyperthermia.

**REQUEST FOR ADMISSION NO. 44:**

In 2011, one prisoner died at the Coffield Unit where heat was judged to have been a significant contributing factor in the death.

**RESPONSE:**

Admit that Offender Thomas Meyers, who was incarcerated at the Coffield Unit, died in 2011 and the cause of death was determined to be hyperthermia.

**REQUEST FOR ADMISSION NO. 45:**

In 2011, two prisoners died at the Hodge Unit where heat was judged to have been a significant contributing factor in the deaths.

**RESPONSE:**

Admit that Offender Charles Cook, who was incarcerated at the Hodge Unit, died in 2011 and the cause of death was determined to be environmental hyperthermia.  Admit that Offender Robert Allen Webb, who was incarcerated at the Hodge Unit, died in 2011 and the final autopsy report stated environmental-induced hyperthermia is likely a major factor contributing to death but that the measured toxic level of Citalopram cannot be ruled out as a significant (possibly major) factor.

**REQUEST FOR ADMISSION NO. 46:**

In 2011, one prisoner died at the Michael Unit where heat was judged to have been a significant contributing factor in the death.

15

**RESPONSE:**

Admit that Offender Alexander Togonidze, who was incarcerated at the Michael Unit, died in 2011 and the cause of death was determined to be hyperthermia.

**REQUEST FOR ADMISSION NO. 47:**

In 2011, two prisoners died at the Huntsville Unit where heat was judged to have been a significant contributing factor in the death.

**RESPONSE:**

Deny.

**REQUEST FOR ADMISSION NO. 48:**

In 2011, five prisoners died at the Gurney Unit where heat was judged to have been a significant contributing factor in the deaths.

**RESPONSE:**

Deny.

**REQUEST FOR ADMISSION NO. 49:**

In 2012, one prisoner died at the Gurney Unit where heat was judged to have been a significant contributing factor in the death.

**RESPONSE:**

Admit that Offender Rodney Adams, who was incarcerated at the Gurney Unit, died in 2011 and the cause of death was determined to be hyperthermia

**REQUEST FOR ADMISSION NO. 50:**

In 2012, one prisoner died at the Garza West Unit where heat was judged to have been a significant contributing factor in the death.

**RESPONSE:**

Admit that Offender Albert Hinojosa, who was incarcerated at the Garza West Unit, died in 2012 and the autopsy determined that Mr. Hinojosa was vulnerable to the effects of environmental hyperthermia due to preexisting natural disease and likely suffered a seizure followed by fatal cardiac arrhythmia as a result.

16

**REQUEST FOR ADMISSION NO. 51:**

You were aware in 2011 TDCJ officials had been sued regarding high indoor temperatures at TDCJ prisons in the past.

**RESPONSE:**

Admit.

**REQUEST FOR ADMISSION NO. 52:**

You knew before August 2012 that prisoners being treated with a diuretic required medical evaluation before being assigned to work in extreme heat.

**RESPONSE:**

Admit that AD-10.64 as in effect in August 2012 stated that "[o]ffenders under treatment with diuretics or drugs inhibiting sweating require special medical evaluation prior to assignment to work in extreme heat."

**REQUEST FOR ADMISSION NO. 53:**

You knew before August 2012 that heat stroke can cause death.

**RESPONSE:**

Admit that during extended periods of extremely high temperatures, without precautions, an individual may experience medical issues, up to and including death.

**REQUEST FOR ADMISSION NO. 54:**

You knew before August 2012 that diabetes is a medical condition that places people at increased risk of heat-related injury.

**RESPONSE:**

Admit.

**REQUEST FOR ADMISSION NO. 55:**

You knew before August 2012 that diabetes is a medical condition that places people at increased risk of heat-related injury.

**RESPONSE:**

17

See response to request for admission no. 54, above.

## REQUEST FOR ADMISSION NO. 56:

You knew before August 2012 that cardiovascular disease is a medical condition that places people at increased risk of heat-related injury.

## RESPONSE:

Admit.

## REQUEST FOR ADMISSION NO. 57:

You knew before August 2012 that hypertension is a medical condition that places people at increased risk of heat-related injury.

## RESPONSE:

Admit.

## REQUEST FOR ADMISSION NO. 58:

You knew before August 2012 that psychiatric conditions are a medical condition that places people at increased risk of heat-related injury.

## RESPONSE:

Defendant objects that this request is vague. Subject to and without waiving the foregoing objection, Defendant admits knowing before August 2012 that individuals being treated for psychiatric conditions may be at increased risk of a heat-related injury. However, this request is denied as to whether psychiatric conditions place people at increased risk of heat-related injury.

## REQUEST FOR ADMISSION NO. 59:

You knew before August 2012 that depression is a medical condition that places people at increased risk of heat-related injury.

## RESPONSE:

Defendant objects that this request is vague. Subject to and without waiving the foregoing objection, Defendant admits knowing before August 2012 that individuals being treated for psychiatric conditions may be at increased risk of a heat-related injury. However, this request is denied as to whether depression itself places people at increased risk of heat-related injury.

18

**REQUEST FOR ADMISSION NO. 60:**

You knew before August 2012 that schizophrenia is a medical condition that places people at increased risk of heat-related injury.

**RESPONSE:**

Defendant objects that this request is vague.  Subject to and without waiving the foregoing objection, Defendant admits knowing before August 2012 that individuals being treated for psychiatric conditions may be at increased risk of a heat-related injury. However, this request is denied as to whether schizophrenia itself places people at increased risk of heat-related injury.

**REQUEST FOR ADMISSION NO. 61:**

You knew before August 2012 that Correctional Managed Health Care policy states prisoners "on antipsychotic drugs should not be allowed to work or recreate in environments where the apparent air temperature is 95 degrees F higher."

**RESPONSE:**

Deny.

**REQUEST FOR ADMISSION NO. 62:**

You knew before August 2012 that prisoners prescribed benztropine were at increased risk of heat-related illness.

**RESPONSE:**

Deny.

**REQUEST FOR ADMISSION NO. 63:**

You knew before August 2012 that prisoners prescribed antipsychotic drugs were at increased risk of heat-related illness.

**RESPONSE:**

Defendant objects that this request is vague.  Subject to and without waiving the foregoing objection, Defendant admits knowing before August 2012 that individuals being treated with psychotropic medications may be at increased risk of a heat-related injury.

19

**REQUEST FOR ADMISSION NO. 64:**

Before August 2012, you knew that TDCJ's heat and humidity matrix states heatstroke is "imminent" when the apparent temperature is 137.

**RESPONSE:**

Admit.

**REQUEST FOR ADMISSION NO. 65:**

At the Hodge Unit in August 2011, TDCJ did not mechanically lower the temperature in the part of the prison where Robert Webb lived.

**RESPONSE:**

Defendant objects that this request is vague as "mechanically lower" is not defined.

Subject to and without waiving the foregoing objection, Defendant admits that air conditioners chilling air through either blowing heat off of a condenser coil or using a cooling tower were not used in the part of the prison where Robert Webb lived. Rather, ventilation systems and purge fan blowers were used.

**REQUEST FOR ADMISSION NO. 66:**

At the Garza West Unit in August 2012, TDCJ did not mechanically lower the temperature in the part of the prison where Albert Hinojosa lived.

**RESPONSE:**

Defendant objects that this request is vague as "mechanically lower" is not defined.

Subject to and without waiving the foregoing objection, Defendant admits that air conditioners chilling air through either blowing heat off of a condenser coil or using a cooling tower were not used in the part of the prison where Albert Hinojosa lived. Rather, ventilation systems and purge fan blowers were used.

**REQUEST FOR ADMISSION NO. 67:**

At the Gurney Unit in July 2011, TDCJ did not mechanically lower the temperature in the part of the prison where Douglas Hudson lived.

**RESPONSE:**

20

Defendant objects that this request is vague as "mechanically lower" is not defined.

Subject to and without waiving the foregoing objection, Defendant admits that air conditioners chilling air through either blowing heat off of a condenser coil or using a cooling tower were not used in the part of the prison where Douglas Hudson lived. Rather, ventilation systems and purge fan blowers were used.

## REQUEST FOR ADMISSION NO. 68:

At the Gurney Unit in August 2011, TDCJ did not mechanically lower the temperature in the part of the prison where Kenneth Wayne James lived.

## RESPONSE:

Defendant objects that this request is vague as "mechanically lower" is not defined.

Subject to and without waiving the foregoing objection, Defendant admits that air conditioners chilling air through either blowing heat off of a condenser coil or using a cooling tower were not used in the part of the prison where Kenneth Wayne James lived. Rather, ventilation systems and purge fan blowers were used.

## REQUEST FOR ADMISSION NO. 69:

At the Gurney Unit in August 2012, TDCJ did not mechanically lower the temperature in the part of the prison where Rodney Adams lived.

## RESPONSE:

Defendant objects that this request is vague as "mechanically lower" is not defined.

Subject to and without waiving the foregoing objection, Defendant admits that air conditioners chilling air through either blowing heat off of a condenser coil or using a cooling tower were not used in the part of the prison where Rodney Adams lived. Rather, ventilation systems and purge fan blowers were used.

## REQUEST FOR ADMISSION NO. 70:

At the Michael Unit in August 2011, TDCJ did not mechanically lower the temperature in the part of the prison where Alexander Togonidze lived.

## RESPONSE:

Defendant objects that this request is vague as "mechanically lower" is not defined.

Subject to and without waiving the foregoing objection, Defendant admits that air conditioners chilling air through either blowing heat off of a condenser coil or using a cooling tower were not used in the part of the prison where Alexander Togonidze lived.  Rather, ventilation systems and purge fan blowers were used.

## REQUEST FOR ADMISSION NO. 71:

At the Huntsville Unit in August 2011, TDCJ did not mechanically lower the temperature in the part of the prison where Michael Martone lived.

## RESPONSE:

Defendant objects that this request is vague as "mechanically lower" is not defined.

Subject to and without waiving the foregoing objection, Defendant admits that air conditioners chilling air through either blowing heat off of a condenser coil or using a cooling tower were not used in the part of the prison where Michael Martone lived.  Rather, ventilation systems and purge fan blowers were used.

## REQUEST FOR ADMISSION NO. 72:

Between August 1, 2007 and January 1, 2013, no changes were made to TDCJ policies regarding protecting prisoners from heat.

## RESPONSE:

Deny.

## REQUEST FOR ADMISSION NO. 73:

Between July 1, 2004 and January 1, 2013, no changes were made to TDCJ policies regarding protecting prisoners from heat.

## RESPONSE:

Deny.

## REQUEST FOR ADMISSION NO. 74:

Between August 1, 2004 and January 1, 2013, no changes were made to TDCJ policies regarding protecting prisoners from heat.

## RESPONSE:

See response to request for admission no. 73, above.

22

**REQUEST FOR ADMISSION NO. 75:**

Between August 1, 2007 and January 1, 2013, no changes were made to UTMB policies regarding protecting prisoners from heat.

**RESPONSE:**

Unable to admit or deny.

**REQUEST FOR ADMISSION NO. 76:**

Between July 1, 2004 and January 1, 2013, no changes were made to UTMB policies regarding protecting prisoners from heat.

**RESPONSE:**

Unable to admit or deny.

**REQUEST FOR ADMISSION NO. 77:**

Between August 1, 2004 and January 1, 2013, no changes were made to UTMB policies regarding protecting prisoners from heat.

**RESPONSE:**

Unable to admit or deny.

**REQUEST FOR ADMISSION NO. 78:**

Between August 1, 2007 and January 1, 2013, no changes were made to Correctional Managed Health Care policies regarding protecting prisoners from heat

**RESPONSE:**

Unable to admit or deny.

**REQUEST FOR ADMISSION NO. 79:**

Between July 1, 2004 and January 1, 2013, no changes were made to Correctional Managed Health Care policies regarding protecting prisoners from heat.

**RESPONSE:**

23

Unable to admit or deny.

**REQUEST FOR ADMISSION NO. 80:**

Between August 1, 2004 and January 1, 2013, no changes were made to Correctional Managed Health Care policies regarding protecting prisoners from heat.

**RESPONSE:**

Unable to admit or deny.

**REQUEST FOR ADMISSION NO. 81:**

TDCJ has no policy to house prisoners who have previously experienced heat-related medical conditions in air-conditioned housing during the summer.

**RESPONSE:**

Admit that TDCJ follows the recommendations of medical providers regarding proper housing of offenders and does not have a separate policy regarding the housing of offenders who have previously experienced a heat-related illness.

**REQUEST FOR ADMISSION NO. 82:**

UTMB has no policy to recommend housing prisoners who have previously experienced heat-related medical conditions in air conditioned housing during the summer.

**RESPONSE:**

Unable to admit or deny.

**REQUEST FOR ADMISSION NO. 83:**

Correctional Managed Health Care has no policy to house prisoners who have previously experienced heat-related medical conditions in air conditioned housing during the summer.

**RESPONSE:**

Unable to admit or deny.

**REQUEST FOR ADMISSION NO. 84:**

In August 2011, you knew that temperatures inside the Hodge Unit were similar to outdoor temperatures.

24

**RESPONSE:**

Admit that in August 2011 I was aware that during the summer months there sometimes is not a large difference between the indoor and outdoor temperatures at TDCJ facilities.

### REQUEST FOR ADMISSION NO. 85:

In August 2012, you knew that temperatures inside the Garza West Unit were similar to outdoor temperatures.

**RESPONSE:**

Admit that in August 2012 I was aware that during the summer months there sometimes is not a large difference between the indoor and outdoor temperatures at TDCJ facilities.

### REQUEST FOR ADMISSION NO. 86:

In August 2011, you knew that temperatures inside the Gurney Unit were similar to outdoor temperatures.

**RESPONSE:**

Admit that in August 2011 I was aware that during the summer months there sometimes is not a large difference between the indoor and outdoor temperatures at TDCJ facilities.

### REQUEST FOR ADMISSION NO. 87:

In August 2011, you knew that temperatures inside the Michael Unit were similar to outdoor temperatures.

**RESPONSE:**

Admit that in August 2011 I was aware that during the summer months there sometimes is not a large difference between the indoor and outdoor temperatures at TDCJ facilities.

### REQUEST FOR ADMISSION NO. 88:

In August 2011, you knew that temperatures inside the Huntsville unit were similar to outdoor temperatures.

**RESPONSE:**

Admit that in August 2011 I was aware that during the summer months there sometimes is not a large difference between the indoor and outdoor temperatures at TDCJ facilities.

Plaintiffs' MSJ Appx. 1302

**REQUEST FOR ADMISSION NO. 89:**

In July 2011, TDCJ had no policy regarding mechanically lowering temperatures in inmate housing areas.

**RESPONSE:**

Defendant objects that this request is vague as "mechanically lower" is not defined. Defendant further objects that this request is overly broad and not reasonably limited as to scope or geographic location.

Subject to and without waiving the foregoing objections, Defendant does not have a written policy which requires that offender housing areas use air conditioners chilling air through either blowing heat off of a condenser coil or using a cooling tower. Rather, TDCJ uses ventilation systems, purge fan blowers, and floor or wall-mounted fans.

**REQUEST FOR ADMISSION NO. 90:**

In August 2011, TDCJ had no policy regarding mechanically lowering temperatures in inmate housing areas.

**RESPONSE:**

Defendant objects that this request is vague as "mechanically lower" is not defined. Defendant further objects that this request is overly broad and not reasonably limited as to scope or geographic location.

Subject to and without waiving the foregoing objections, Defendant does not have a written policy which requires that offender housing areas use air conditioners chilling air through either blowing heat off of a condenser coil or using a cooling tower. Rather, TDCJ uses ventilation systems, purge fan blowers, and floor or wall-mounted fans.

**REQUEST FOR ADMISSION NO. 91:**

In August 2012, TDCJ had no policy regarding mechanically lowering temperatures in inmate housing areas.

**RESPONSE:**

Defendant objects that this request is vague as "mechanically lower" is not defined. Defendant further objects that this request is overly broad and not reasonably limited as to scope or geographic location.

Subject to and without waiving the foregoing objections, Defendant does not have a written policy which requires that offender housing areas use air conditioners chilling air through

26

either blowing heat off of a condenser coil or using a cooling tower.  Rather, TDCJ uses ventilation systems, purge fan blowers, and floor or wall-mounted fans.

## REQUEST FOR ADMISSION NO. 92:

In August 2011, you were aware comments to American Correctional Association standards suggest temperatures should be "capable of being mechanically raised or lowered to an acceptable comfort level."

## RESPONSE:

Admit.

## REQUEST FOR ADMISSION NO. 93:

TDCJ does not require inmates be housed in areas where temperatures can be mechanically lowered to an acceptable comfort level.

## RESPONSE:

Defendant objects that this request is vague as "mechanically lower" is not defined.  Defendant further objects that this request is overly broad and not reasonably limited as to time, scope or geographic location.

Subject to and without waiving the foregoing objections, Defendant does not have a written policy which requires that offender housing areas use air conditioners chilling air through either blowing heat off of a condenser coil or using a cooling tower.  Rather, TDCJ uses ventilation systems, purge fan blowers, and floor or wall-mounted fans.

## REQUEST FOR ADMISSION NO. 94:

In 2011 you knew TDCJ did not use misters in inmate housing areas at any TDCJ prison.

## RESPONSE:

Admit.

## REQUEST FOR ADMISSION NO. 95:

In 2011, you knew TDCJ had policies to control temperatures in TDCJ's agricultural buildings where pigs are housed.

## RESPONSE:

Plaintiffs' MSJ Appx. 1304

Admit that TDCJ Agribusiness, Land and Minerals Policies contain sections which pertain to lowering or raising the temperature of agricultural buildings in which certain types of pigs are housed.

**REQUEST FOR ADMISSION NO. 96:**

In 2011 you knew TDCJ used evaporative coolers in agricultural buildings where pigs are housed.

**RESPONSE:**

Defendant objects that the term "evaporative coolers" is not defined. Defendant objects that this request is vague in that does not specify the classification of swine about which the request seeks information and the concomitant type of facility about which the request seeks information. Defendant further objects that this request is overly broad and not reasonably limited as to scope, time, or geographic location and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant admits that portions of TDCJ's livestock buildings are outfitted with one or more of the following: exhaust fans, circulation fans, misters, drippers, evaporative coolers, and/or heaters.

**REQUEST FOR ADMISSION NO. 97:**

In 2011 you knew TDCJ policy required pigs be kept at "comfortable" temperatures.

**RESPONSE:**

Defendant objects that the phrase "comfortable temperatures" is not defined. Defendant further objects that this request is overly broad in that it does not specify the classification of swine about which the request seeks information. Defendant further objects that this request is vague and not reasonably expected to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant admits that TDCJ Agribusiness, Land and Minerals Policy L/S 6.03.01 "Swine Program Management Procedures" states on page 2 under Procedures – Animal Welfare that ". . . animals are provided the basic needs to perform at the highest level. This includes . . . a comfortable environmental with ventilation."

**REQUEST FOR ADMISSION NO. 98:**

In 2011, you knew TDCJ policy required use of drip-system timers to cool pigs when temperatures exceeded 74 degrees.

**RESPONSE:**

28

Defendant objects that the phrase "drip-system timers" is not defined. Defendant further objects that this request is overly broad in that it does not specify the classification of swine about which the request seeks information. Defendant further objects that this request is vague and not reasonable expected to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant denies that TDCJ policy requires the use of drip-system timers to cool pigs when temperatures exceed 74 degrees. Rather, Defendant admits that TDCJ Agribusiness, Land and Minerals Policy L/S 6.03.01 "Swine Program Management Procedures" states on page 8 under C. Farrowing Program 4. Environment that "The drip-system timers for sows should be set to activate at 74-78 degrees during the warmer months . . .."

## REQUEST FOR ADMISSION NO. 99:

In 2011, you knew TDCJ did not require use of drip-system timers to cool prisoner housing areas at any temperature.

## RESPONSE:

Admit.

## REQUEST FOR ADMISSION NO. 100:

In 2011, you knew TDCJ policy required keeping pig barns at around 85 degrees.

## RESPONSE:

Defendant objects that this request is overly broad and vague in that does not specify the classification of swine about which the request seeks information and the concomitant type of facility about which the request seeks information.

Subject to and without waiving the foregoing objections, Defendant denies that TDCJ policy requires (emphasis added) keeping pig barns at around 85 degrees. Rather, Defendant admits that TDCJ Agribusiness, Land and Minerals Policy L/S 6.03.01 "Swine Program Management Procedures" states on page 8 under C. Farrowing Program 4. Environment that "The barns should be kept around 85 degrees for baby pig comfort." On page 11 under IV. Nursery Management A. Hot Nursery 5. Environment that "For newly weaned pigs the temperature should be at least 88 degrees..."

## REQUEST FOR ADMISSION NO. 101:

In 2011, you knew TDCJ had no policy requiring inmate housing areas at any prison be kept below any temperature.

## RESPONSE:

29

Admit.

## REQUEST FOR ADMISSION NO. 102:

In 2011, you knew TDCJ policy required employees to "be aware of the comfort levels of sows and pigs."

## RESPONSE:

Defendant admits that TDCJ Agribusiness, Land and Minerals Policy L/S 6.03.01 "Swine Program Management Procedures" states on page 8 under C. Farrowing Program 4. Environment that [employees and offenders assigned to the farrowing barn should] "Always be aware of the comfort level of sows and pigs."

## REQUEST FOR ADMISSION NO. 103:

In 2011, you knew TDCJ policy identified 95 degrees as the "upper critical limit" for pigs.

## RESPONSE:

Defendant objects that this request is overly broad and not reasonably limited in scope in that it does not define the classification of swine about which the request seeks information.

Subject to and without waiving the foregoing objection, Defendant admits that the TDCJ Swine Program Treatment Book – 2012(a), page two, identifies the upper critical temperature for hot nursery pigs, cold nursery pigs, grower pigs, and finisher pigs as 95 degrees Fahrenheit.

## REQUEST FOR ADMISSION NO. 104:

In 2011, you knew TDCJ policy identified temperatures above 95 degrees can negatively influence pigs' health.

## RESPONSE:

Defendant objects that the phrase "negatively influence" is not defined. Defendant further objects that this request is overly broad and vague in that it does not specify the classification of swine about which the request seeks information and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant admits that TDCJ Agribusiness, Land and Minerals Policy L/S 6.03.01 "Swine Program Management Procedures" refers to the Pork Quality Assurance Certification Manual published by the National Pork Board which states that keeping pigs at a temperature above or below their critical temperature can negatively influence the pigs' health.

## REQUEST FOR ADMISSION NO. 105:

30

In 2011, you knew TDCJ policy required "some form of cooling" when temperatures in areas where pigs are housed "approach upper critical limits."

**RESPONSE:**

Defendant objects that this request is overly broad, vague, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant admits that TDCJ Agribusiness, Land and Minerals Policy L/S 6.03.01 "Swine Program Management Procedures" refers to the Pork Quality Assurance Certification Manual published by the National Pork Board which states that "some form of cooling should be provided when temperatures approach upper critical limits."

**REQUEST FOR ADMISSION NO. 106:**

In 2011, you knew TDCJ policy did not identify an "upper critical limit" temperature for human beings.

**RESPONSE:**

Admit.

**REQUEST FOR ADMISSION NO. 107:**

In 2011, you knew TDCJ policy identified the preferred temperature range for buildings where pigs are housed to be between 60 and 80 degrees.

**RESPONSE:**

Defendant objects that this request is overly broad and not reasonably limited in scope in that it does not define the classification of swine about which the request seeks information.

Subject to and without waiving the foregoing objections, Defendant admits that the TDCJ Swine Program Treatment Book – 2012(a), page two, identifies the preferred temperature recommendation for a lactating sow as being 60 degrees Fahrenheit to 80 degrees Fahrenheit.

**REQUEST FOR ADMISSION NO. 108:**

In 2011, you knew TDCJ policy did not identify a preferred temperature range for inmate housing areas.

**RESPONSE:**

Admit.

31

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, and SANDRA McCOLLUM, individually, and STEPHANIE KINGREY, individually and as independent administrator of the Estate of LARRY GENE McCOLLUM, | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| PLAINTIFFS | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 4:14-cv-3253 |
| | § | JURY DEMAND |
| BRAD LIVINGSTON, JEFF PRINGLE, RICHARD CLARK, KAREN TATE, SANDREA SANDERS, ROBERT EASON, the UNIVERSITY OF TEXAS MEDICAL BRANCH and the TEXAS DEPARTMENT OF CRIMINAL JUSTICE. | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| DEFENDANTS | § | |

Plaintiffs' Consolidated Summary Judgment Response Appendix

# EXHIBIT 69



| | Correctional Institutions Division Director's Meeting<br>August 12, 2010<br>Conference Center |
|---|---|
| **Agenda** | |

| 08/12/2010 | | | | Speakers |
|---|---|---|---|---|
| 1:00 p.m. | 1) | Opening Remarks | | Rick Thaler |
| 1:10 p.m. | 2) | EAC Monthly Report | | Kathy Cleere |
| 1:20 p.m. | 3) | Ag Issues | | Matt Demny |
| 1:30 p.m. | 4) | Access to Courts | | Jackie Edwards |
| 1:45 p.m. | 5) | After Hours On Call System | | Dr. Linthicum |
| 2:00 p.m. | 6) | Use of Force Video Camera Conversion | | Colby Oldham |
| 3:00 p.m. | 7) | Heat Precautions- Cell Restrictions / Tempered Air Flow | (handout) | Bill Stephens |
| | 8) | Commissary Item Change | | |
| | 9) | Security Review Tracking | (handout) | |
| | 10) | Safe Prisons Audit<br>(handout) | | |
| | 11) | Re-entry Staff on Units (New Staff) | | Thomas Prasifka |
| | 12) | SAFPF Releases (Supervision) | | |
| | 13) | Religious Program Cancellations | | |
| | 14) | Intake Paperwork (Detainers) | | |
| | 15) | Regional Release Update | | |
| | 16) | Safekeeping Beds | | |
| | 17) | Visitation Removal (Phone Conversations) | | |
| | 18) | Toll Violation Charges | | |



# *CID Director's Meeting*
## August 12, 2010

### Agenda

| 1) Opening Remarks | Rick Thaler |
|---|---|

Discussion:

| Action items: | Person Responsible: | Deadline: |
|---|---|---|
| | | |
| | | |

| 2) EAC Monthly Report | *(handout)* | Kathy Cleere |
|---|---|---|

Discussion: Report looks good, some units behind on getting to regional offices. Security equipment being added to eform. Notification to units will be forthcoming.

| Action items: | Person Responsible: | Deadline: |
|---|---|---|
| | | |
| | | |

| 3) Ag Issues | *Gary Kent for* | Matt Demny |
|---|---|---|

Discussion: 55% of milo cut, 30% of corn. Grain finished soon. EA, FE have oil/gas operations taking place. (321 Wells on both units to be drilled)

| Action items: | Person Responsible: | Deadline: |
|---|---|---|
| | | |
| | | |

| 4) Access to Courts | *(handout)* | Jackie Edwards |
|---|---|---|

Discussion: I-163W make sure form is complete. Form developed for (I-164) Consulates (not representatives). Each representative must fill out separate form.

| Action items: | Person Responsible: | Deadline: |
|---|---|---|
| | | |
| | | |
| | | |



# *Director's Meeting*

## Agenda Topics

**5)  After Hours On Call System**   (handout)   **Dr. Linthicum**

Discussion: 29b unit UTMB personel layed off. Modification to unit clinic hours. 1 RN on unit (8hrs) 1 LVN + CMA after hours (on call) 79 units have 12 hr coverage (Regans only 8hrs) after that call 911.

Action items: After hours - contact medical Hub, if unavailable contact provider from list provided. Every unit has Tele-Medicine. Contact Dr Linthicum or Dr. Williams or G. Crippen with any issues.

**Person Responsible:**   **Deadline:**

**6)  Use of Force Video Camera Conversion**   (handout)   Colby Oldham

Discussion: Need to convert to video camera with internal flash memory. To burn to DVD. Need unit contact / computer information. DVD's are cheaper than tapes. Implementation - start with Region I.

Action items: Test Pieces for metal Detectors to standardize calibrations. Equipment needs to be checked minimum of weekly. (Medium for walk thru - Small for handheld + boss chair).

**Person Responsible:**   **Deadline:**

**7)  Heat Precautions- Cell Restrictions / Tempered Air Flow**   (handout)   **Bill Stephens**

Discussion: Share with Wardens to watch for issues and make sure we are taking steps necessary to control. Pass out ice water, do not confiscate fans. Make sure Staff are provided for as well.

Action Items:

**Person Responsible:**   **Deadline:**

**8)  Commissary Item Change**   **Bill Stephens**

Discussion: Tennis shoe to be sold in Commissary. Wardens need to Bring in commissary issues to Regional Director.

Action items:

**Person Responsible:**   **Deadline:**

Approved

# *Director's Meeting*

| 9) Security Review Tracking | (handout) | Bill Stephens |
|---|---|---|

Discussion: June was last month of excellerated Reviews. Still conducting follow ups.

| Action items: | Person Responsible: | Deadline: |
|---|---|---|
| | | |
| | | |

| 10) Safe Prisons Audit | (handout) | Bill Stephens |
|---|---|---|

Discussion: Remind Wardens of forthcoming audit. Information must be passed on to offenders on reporting process. Make sure staff are aware of who they need to contact

Action items: Make sure administrators on unit are aware of any allegations on their unit.

| | Person Responsible: | Deadline: |
|---|---|---|

| 11) Re-entry Staff on Units (New Staff) | Thomas Prasifka |
|---|---|

Discussion: Make sure Wardens are aware of new staff on their units. Starting at Hutchins on Monday with releases.

| Action items: | Person Responsible: | Deadline: |
|---|---|---|
| | | |
| | | |

| 12) SAFPF Releases (Supervision) | Thomas Prasifka |
|---|---|

Discussion: Policy states it is our responsibility to keep control of offender till on bus.

| Action items: | Person Responsible: | Deadline: |
|---|---|---|
| | | |
| | | |

# *Director's Meeting*

| | 13) Religious Program Cancellations | Thomas Prasifka |
|---|---|---|
| Discussion: Unit Chaplain must fill out email if they cancel a program. Look at these to make sure legitimate | | |
| Action items: | Person Responsible: | Deadline: |
| | | |
| | | |

| | 14) Intake Paperwork (Detainers) | Thomas Prasifka |
|---|---|---|
| Discussion: Make sure paperwork is reviewed during intakes | | |
| Action items: | Person Responsible: | Deadline: |
| | | |
| | | |

| | 15) Regional Release Update | Thomas Prasifka |
|---|---|---|
| Discussion: Programming issues. Immediately notify C&R of detainers. | | |
| Action items: | Person Responsible: | Deadline: |
| | | |
| | | |

| | 16) Safekeeping Beds | Thomas Prasifka |
|---|---|---|
| Discussion: 240 vacant beds. 419 G-4; 359 G-5, May have to move around. Talk to units for needs. | | |
| Action items: | Person Responsible: | Deadline: |
| | | |
| | | |
| | | |

# Director's Meeting

| **17)  Visitation Removal (Phone Conversions)** | **Thomas Prasifka** |
|---|---|

Discussion: People being removed after getting disrespectful on phone conversation. Make sure we have supportable reasoning

| Action items: | Person Responsible: | Deadline: |
|---|---|---|
| | | |
| | | |

| **18)  Toll Violation Charges** | **Thomas Prasifka** |
|---|---|

Discussion: Toll booth charges. M & L handles. Contact Daria with any issues/explanations.

| Action items: | Person Responsible: | Deadline: |
|---|---|---|
| | | |
| | | |

| Classification (handout) | Kim |
|---|---|

Discussion: CR30 program  -  I JOB 66 Program - I JOB 67 - Identify offender workers with specific skills

| Action items: | Person Responsible: | Deadline: |
|---|---|---|
| | | |

| Prison Museum (handout) | |
|---|---|

Discussion: Printers/paper for photo taking will be provided.

| Action items: | Person Responsible: | Deadline: |
|---|---|---|
| | | |

| R & R | Becky Price |
|---|---|

Discussion: Bambi ribbon cutting this week - 15 mothers capacity. Currently have 8. State Jail offenders.

| Action items: Faith Based Dorms - high profile - reports to Governors office. Justification needed on any changes. | Person Responsible: | Deadline: |
|---|---|---|

# Director's Meeting

| | |
|---|---|
| | *Ramadan* — *Thaler* |
| Discussion: | Started 6-11-10. Make sure we are allowing appropriate access. |
| Action items: | Person Responsible: | Deadline: |

| | |
|---|---|
| | *Hurricane Alex* — *Kirk Moss* |
| Discussion: | They are going to do a declaration to cover expenses. |
| Action items: | Person Responsible: | Deadline: |

| | |
|---|---|
| | *Security Systems* — *C. Bell* |
| Discussion: | Trail Cameras are being purchased GPS purchased today. |
| Action items: 18 Tracking Collars Coming in. | Person Responsible: | Deadline: |

| | |
|---|---|
| | *Private Prisons* — *Grady Wallace* |
| Discussion: | Couple of units (S. Tx ISF + Bridgeport) transitioning to new providers (MTC). Kyle still MTC. |
| Action items: | Person Responsible: | Deadline: |

| | |
|---|---|
| Discussion: | |
| Action items: | Person Responsible: | Deadline: |

| | | **Director's Meeting** |
|---|---|---|
| | | 8-13-10 |
| | RD Meeting | |

| SM 3.02 | Contraband Report | B.S. |
|---|---|---|

**Discussion:** Review report. Continue to stress importance with Wardens. Read internal audit on search procedures.

**Action items:** Document searches, it is Majors responsibility for cell searches, integrity searches. Address at turn outs importance of searches. Insure common areas are searched.

**Person Responsible:**  **Deadline:**

**Discussion:** Narcotic dogs must go to every unit, ensure it is being done timely and documented.

Pat on Sept

**Action items:** List of allowable items is not all-inclusive.

**Person Responsible:** Bring ideas on secret documentation to next mtg.  **Deadline:**

P.S.T.

**Discussion:** RD's to make desired changes to SM 02.06 and post orders.

**Action items:**

**Person Responsible:**  **Deadline:** By Sept 9

✗

Notifications

**Discussion:** Make sure Wardens are conveying issues to R.D. to notify Dep. Director. Make sure kennel staff being

**Action items:** deployed that notifications are made.

**Person Responsible:** Employee arrested for felonies - send email to Thaler.  **Deadline:**

# *Director's Meeting*

## Regional Director Agenda

| Duty Warden Rotation | |
|---|---|
| Discussion: *Senior Warden must be on rotation.* | |

| Action items: | Person Responsible: | Deadline: |
|---|---|---|
| | | |
| | | |

| Employee Hearings / Representation | |
|---|---|
| Discussion: *Allow reschedule of meeting or telephonic if representative has circumstances beyond their control.* | |

| Action items: | Person Responsible: | Deadline: |
|---|---|---|
| | | |
| | | |

| College / University Programs – WSD | |
|---|---|
| Discussion: *FYI* | |

| Action items: | Person Responsible: | Deadline: |
|---|---|---|
| | | |
| | | |

| Procedures for Appeal (College) | |
|---|---|
| Discussion: *Vendors- handbook of rules - appeal process includes Security and Contractual - make sure Warden* | |
| Action items: *let RD know what is going on to determine if it needs to go to Director for determination.* | Person Responsible: | Deadline: |
| | | |
| | | |

# *CID Director's Meeting*

### Regional Director Agenda

| Facility Entry Search Report | | | |
|---|---|---|---|
| Discussion: Remind Wardens that report should only include those who have to undress in separate room. | | | |
| Action items: | | Person Responsible: | Deadline: |
| | | | |
| | | | |

| Internal Audit 1001 | | | |
|---|---|---|---|
| Discussion: Covered | | | |
| Action items: | | Person Responsible: | Deadline: |
| | | | |
| | | | |

| Random Drug Testing | | | |
|---|---|---|---|
| Discussion: HR Sent out directives. | | | |
| Action items: | | Person Responsible: | Deadline: |
| | | | |
| | | | |

| Union Visits to Unit | | | |
|---|---|---|---|
| Discussion: Access to facilities is the parking lot — not shift turnout or lobby, etc. | | | |
| Action items: | | Person Responsible: | Deadline: |
| | | | |
| | | | |
| | | | |

| | |
|---|---|
| | ## *CID Director's Meeting* |
| | **Regional Director Agenda** |

| Overtime Tracking | | |
|---|---|---|
| Discussion: *Document Justifications – Burn off when possible.* | | |
| Action items: | Person Responsible: | Deadline: |
| | | |
| | | |

| Incident Management (Notifications/Timelines) | | |
|---|---|---|
| Discussion: *Covered* | | |
| Action items: | Person Responsible: | Deadline: |
| | | |
| | | |

| Regional Reviews / Suicides | | |
|---|---|---|
| Discussion: *Make sure you call Dr. Montross when Scheduling.* | | |
| Action items: | Person Responsible: | Deadline: |
| | | |
| | | |

| J-Pay | | |
|---|---|---|
| Discussion: *email system – access – Make determination of who on unit must have access.* | | |
| Action items: *Wardens, Majors, STG, Safe Prisons, Warden Secretary* | Person Responsible: | Deadline: |
| | | |
| | | |

# Director's Meeting

*Safekeeping*

Discussion: *Send your preferance to Prasifka.*
*Safekeeping / B-4*

| Action items: | | Person Responsible: | Deadline: |
|---|---|---|---|
| | | | *by end of next week* |
| | | | |

Discussion: *Eileen Kennedy*
*Rick Vogelsang*
*Lorie Davis*

| Action items: *Troy Sampson* | | Person Responsible: | Deadline: |
|---|---|---|---|
| *Deane Wakra* | | | |
| *Carmona* | | | |

| Discussion: | | | |
|---|---|---|---|

| Action items: | | Person Responsible: | Deadline: |
|---|---|---|---|
| | | | |
| | | | |

| Discussion: | | | |
|---|---|---|---|

| Action items: | | Person Responsible: | Deadline: |
|---|---|---|---|
| | | | |
| | | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, and SANDRA McCOLLUM, individually, and STEPHANIE KINGREY, individually and as independent administrator of the Estate of LARRY GENE McCOLLUM, | § § § § § | |
| PLAINTIFFS | § § | |
| v. | § § § | CIVIL ACTION NO. 4:14-cv-3253 JURY DEMAND |
| BRAD LIVINGSTON, JEFF PRINGLE, RICHARD CLARK, KAREN TATE, SANDREA SANDERS, ROBERT EASON, the UNIVERSITY OF TEXAS MEDICAL BRANCH and the TEXAS DEPARTMENT OF CRIMINAL JUSTICE. | § § § § § § § | |
| DEFENDANTS | § | |

Plaintiffs' Consolidated Summary Judgment Response Appendix

# EXHIBIT 70



|  | **Correctional Institutions Division Director's Meeting** |
|---|---|
|  | **July 14, 2011** |
|  | **CID Conference Room** |

**Agenda**

| 7/14/2011 | | | Speakers |
|---|---|---|---|
| 8:30 a.m. | 1) Opening Remarks | | Rick Thaler |
| 8:40 a.m. | 2) EAC Update | | Kathy Cleere |
| 8:50 a.m. | 3) Bible College at Darrington | | Marvin Dunbar |
| 9:10 a.m. | 4) Radios | | Joe Miles |
| 9:25 a.m. | 5) Ag Issues | | Matt Demny |
| 9:30 a.m. | 6) Recruiting, Prospector Program & CO Staffing Employee Benefits | | Paula Gilbert/ Richard Soape |
| 10:00 a.m. | 7) Reentry and Integration Division Update | | Dee Wilson |
| 10:15 a.m. | 8) PREA Ombudsman Update | (handout) | Ralph Bales |
| 10:30 a.m. | 9) AIMS/Table of Authorized Equipment for Weapons/Chemical Agents Re-supply Points/Parcel Scanners/EAC Reporting | | Tracy Bailey/ Colby Oldham |
| 10:45 a.m. | 10) Mailroom (Internal Audit) | | Thomas Prasifka |
|  | 11) Classification (Trusty(s) / Hardship Transfers / Administrative Segregation Placement / Capacity) | | Thomas Prasifka |
|  | 12) Disciplinary (Audit / Stats) | | Thomas Prasifka |
|  | 13) Hot Water Injuries | | William Stephens |
|  | 14) Security Bulletin | (handout) | William Stephens |
|  | 15) Security Review Compliance Checklist | | William Stephens |
|  | 16) Internal Audit 1124 Tool Control | | William Stephens |



# CID Director's Meeting

### Agenda

| 1) Opening Remarks | Rick Thaler |
|---|---|

**Discussion:** Heat Precautions - make sure we are taking appropriate measures.
Certificate - Jason Heaton, RS Director
Spec Olympics Plaques - BC, TO, JA, KN, BX, SO, HS, Tulia

| Action items: | Person Responsible: | Deadline: |
|---|---|---|

Jeff Marton - new TD Director, Legislative Session is over.
40 CID Positions will receive RIF letters this week. Windham +
UTMB notifying staff this week. Units able to post positions that have been held

| 2) EAC Update | (handout) | Kathy Cleere |
|---|---|---|

**Discussion:** Reports have been excellent. Incidents have increase with hot
weather. 10 offender, 20 employee heat related issues. Track OIG cell
phone detection incidents.

| Action items: | Person Responsible: | Deadline: |
|---|---|---|

| 3) Bible College at Darrington | Marvin Dunbar |
|---|---|

**Discussion:** Video shown. Southwestern Seminary Bible College, All Faiths. 4 yr BS
degree, offenders - 10 yrs from eligible for parole, 52 or 53, no max cases in last 12
mos, etc. Must fill out application, write essay, will live in GP at
DA, 1 class a day. Paperwork will be sent to unit chaplains next week.
Ramadan - can work but will not eat or drink during day so no strenuous
jobs is best. Shower before morning obligations. Receive Johnny in the evening in June.

| Action items: | Person Responsible: | Deadline: |
|---|---|---|

| 4) Radios | Joe Miles   David Page |
|---|---|

**Discussion:** 6965 Midland Radios, 6272 Motorola Portables - 1384 Mobiles,
77 Repeaters, 234 Antennas, 77 Duplexers, 397 Base Stations, 45 Towers,
36 UHF frequency, 97 VHF freq., 115 Radio licenses. Been purchased over
15 yrs ago (Motorolas) 55% have penetration problems w/ signal in units.
Radio licenses and frequencies are difficult to come by. Have 2 Radio Techs
now. $961,000 on radios spent in '11 $500,000 for '12. Looking at microcellular tech for future.

1) Staffing levels for next two years should be fairly set. Space Mgmt
      has determined some moves, combining of offices, etc.
3) Chaplains will notify security of needs.
4) Moving Central Unit repeater to §3. If have any broken radios, get
       them in immediately before warranty goes out. Keep up with
inventories and accountability for radios.



# *Director's Meeting*

## Agenda Topics

| | | |
|---|---|---|
| **5) Ag Issues** | *(handout)* | **Matt Demny** |

**Discussion:** June Board Approved 4 items – August Pending Board Items (W, St) Drill Pad Sites (EA, FE). Chase Field fence completed. Central closure.

**Action items:** Jester road widening ongoing, Ramsey HB filed to sell 2200 acres to DOW. Drought being experienced. Still harvesting. Staff shortages Causing issues. Not making enough hay due to drought.

| | | |
|---|---|---|
| **6) Recruiting, Prospector Program & CO Staffing Employee Benefits** | | **Paula Gilbert / Patty Garcia / Richard Soape** |

**Discussion:** Attending Mayor/Aw Trainings, getting ideas for prospecting. Over 99% pass rate on PAT testing. Sign on bonus being discussed again. Annual enrollment – started Monday, thru Aug 5. Skip Program

**Action items:** ends Aug 31, will now have CHIP (Federal Program). New info pac (DAYLWOP?) Screen. Employees who have used more than 450 days of LWOP.

| | | |
|---|---|---|
| **7) Reentry and Integration Division Update** | | **Dee Wilson / Frances Gattis** |

**Discussion:** Thanks to wardens who helped with RIF's. No Longer here Regional Supervisors. Tracy Long managing all case mgrs. wardens Should let them know of any staff issues so they can handle it.

**Action items:** Share information on program expectations with the RD/Wdrs. 936-437-5094 Tracy Long, 437-5027 Frances Gattis. Applications must be filled out to get ID's for offenders who are being released.

| | | |
|---|---|---|
| **8) PREA Ombudsman Update** | *(handout)* | **Ralph Bales** |

**Discussion:** OPI's on unit, they review. They handle inquiries/complaints from public. Inquiries have increased per month in FY11. Requests for information are being returned incomplete. 3% of complaints are offender/employee related. Respond to legislative requests. Respond to offenders.

**Action items:** BP02.09 states responsibilities of their office. ED-02.10 deals with their Ombudsman responsibilities. Flyer has not been created yet. Info is in ECHO. Form attached to policy and on entranet for responses.

# Director's Meeting

| 9) AIMS/ Table of Authorized Equipment for Weapons / Chemical Agents Re-Supply Points / Parcel Scanners / EAC Reporting (handout) | Tracy Bailey / Colby Oldham |
|---|---|

Discussion: 10 re supply points for Agency. Looking @ (DL Garza LH, AH) to be only re supply points. Tracking use of technology on units. Remind

Action items: Staff to complete section on EAC Report of technology used. Connie Kimich is radiation safety officer for agency. Manuals to be placed with parcel scanners on units have been created. Training (video conference) will also take place w/ Maj. + Armorers.

Person Responsible:

Deadline:

| 10) Mailroom (Internal Audit) (handout) | Thomas Prasifka |
|---|---|

Discussion: Should start this week going out to units.

Action items:

Person Responsible:

Deadline:

| 11) Classification (Trusty(s) / Hardship Transfers / Administrative Segregation Placement / Capacity) | Thomas Prasifka |
|---|---|

Discussion: Trusty need is critical. Transfer Facility need to look at their population. Some units are refusing to house newly assigned trusties at Trusty Camps. (IUCR955). Joni White handles hardship

Action items: transfers. Seg placement ( 169) put all information. Disciplinary Audit. wardens should be active in process. Review guidelines.

Person Responsible:

Deadline:

| 12) Disciplinary (Audit / Stats) | Thomas Prasifka |
|---|---|

Discussion:

Action items:

Person Responsible:

Deadline:

9) AIMS- initial load has been done. In process of getting it up and running. Weapons- Some are needing to be replaced as the are no longer repairable. Proposal for weapons distribution at unit. Provide any comments to Colby.

# Director's Meeting

| | 13) Hot Water Injuries | | William Stephens |
|---|---|---|---|
| Discussion: Legal Sent info on offender pushing bucket of hot water which spilled and burnt offender. Do not use this method. | | | |
| Action items: | | Person Responsible: | Deadline: |
| | | | |
| | | | |

| | 14) Security Bulletin | (handout) | William Stephens |
|---|---|---|---|
| Discussion: Fusion Center from Kevin Campbell. Wardens should provide info on security breach to Kevin. | | | |
| Action items: | | Person Responsible: | Deadline: |
| | | | |
| | | | |

| | 15) Security Review Compliance Checklist | | William Stephens |
|---|---|---|---|
| Discussion: Version 4 dated 08-2010 is correct one. | | | |
| Action items: | | Person Responsible: | Deadline: |
| | | | |
| | | | |

| | 16) Internal Audit 1124 Tool Control | | William Stephens |
|---|---|---|---|
| Discussion: Offender clerks were found to have control of add/delete on inventory by Auditors. | | | |
| Action items: Wants Justification from warden by end of month | | Person Responsible: | Deadline: |
| | | | |
| | | | |

# Director's Meeting

Shoes                                                          John Paulinson

Discussion: Jordan Shoe factory being closed — moved to Clements Shoe factory.
Looking at no longer carrying brazan. Looking at replacement from Alabama

Action/Items: factory which come from China. Will continue to make canvas shoe at
Clements. Going to purchase navy canvas due to shortage of black.

Person Responsible:                    Deadline:

---

Private Tee                                                    Grady Wallace

Discussion: Burnet Co. contract ends Aug 31

Action items:

Person Responsible:                    Deadline:

---

Transportation                                                Lonny Johnson

Discussion: Thanks for help on O/T and breakdowns

Action items:

Person Responsible:                    Deadline:

---

Classification                                                Jim White

Discussion: RDOO to help with tracking process has been
turned in.

Action items:

Person Responsible:                    Deadline:

---

Discussion:

Action items:

Person Responsible:                    Deadline:

# CID Director's Meeting

**Mr. Thaler's Agenda**

| | |
|---|---|
| 1. Testing | Rick Thaler |

**Discussion:** June 1 - PAT test now required. Changed Standard on academic / firearms testing to mirror PAT.

| Action items: | Person Responsible: | Deadline: |
|---|---|---|
| | | |
| | | |

2. EEO Investigations

**Discussion:** Numerous sustained investigations - hold Staff accountable for behavior.

| Action items: | Person Responsible: | Deadline: |
|---|---|---|
| | | |
| | | |

3. Heat Precautions

**Discussion:** Take measures - Fluids, Stress at meetings.

| Action items: | Person Responsible: | Deadline: |
|---|---|---|
| | | |
| | | |

4. Hurricane Season

**Discussion:** Remind to Stay preparded, talk to new Wardens.

| Action items: | Person Responsible: | Deadline: |
|---|---|---|
| | | |
| | | |

# *CID Director's Meeting*

**Mr. Thaler's Agenda**

---

5. Suicide Prevention

Discussion: Talks about at meetings. Question situations.

Action items: | Person Responsible: | Deadline:

---

6. Legislative Session (handout)

Discussion: Overview of results pertaining to CID
Factory shutdowns, closure of Central Unit

Action items: 250 million for MWR given | Person Responsible: | Deadline:

---

7. Internal Audits

Discussion: Make sure wardens know what audits are coming up in next 12 months. Recommendation on Disciplinary Audit that we limit the descretion of disciplinary captain.

Action items: Also check/balance system to make sure we aren't going outside guidelines. Coming up: Mailroom, STG, Classification. | Person Responsible: | Deadline:

---

8. RIFS

Discussion: CID - 40 letters - 240 positions held which can now be posted. Done with staff cuts.

Action items: | Person Responsible: | Deadline:

---

## CID Director's Meeting

**Mr. Thaler's Agenda**

**9.** Use of Force Reviews

Discussion: Give attention to these reviews, when see violations deal with them, use appropriate Sanctions. Will be audited

Action items: | | Person Responsible: | Deadline:

**10.** Central Unit Closure by Aug 31 (out by Dec 31)

Discussion: 350 offenders left (zoo trustys) - Staff receiving letters this week. Give staff with letters most consideration in filling positions.

Action items: | | Person Responsible: | Deadline:

**11.** Offender Capacity

Discussion: When beds complete will have the 1100 needed to house offenders from central Unit.

Action items: | | Person Responsible: | Deadline:

**12.** Safe Prison Program

Discussion: Grant opportunity (900,000) for facilities with high incident rates, updating cameras at Allred mapping software, training travel costs for staff.

Action items: | | Person Responsible: | Deadline:

# Director's Meeting

Mr. Thaler's Agenda

| | |
|---|---|
| **13.** PAT Tests | |

Discussion: If failed State wide, q came back within 30 day period and passed — 2 retired.

| Action items: | Person Responsible: | Deadline: |
|---|---|---|
| | | |
| | | |

| | |
|---|---|
| **14.** CO Staffing Levels | |

Discussion: Struggling in some areas

| Action items: | Person Responsible: | Deadline: |
|---|---|---|
| | | |
| | | |

| | |
|---|---|
| **15.** Random Drug Testing | |

Discussion: loosing many staff — make sure you have current prescription (your own).

| Action items: | Person Responsible: | Deadline: |
|---|---|---|
| | | |
| | | |

| | |
|---|---|
| **16.** AW/Major Trng | |

Discussion: continue involvement and ideas for next years training.

| Action items: | Person Responsible: | Deadline: |
|---|---|---|
| | | |
| | | |

# Director's Meeting

Mr. Thaler's Agenda

**17. High Impact Funding Followups**

Discussion: Division Level Audit followups - make sure corrected, take appropriate action. Make sure processes in place

Action items: To resolve.

Person Responsible:   Deadline:

**18. Bexar Co Transports**

Discussion: No longer bringing offenders to us. Put them on a schedule for us to pick up offenders. If other counties ask for same thing, make sure administration is notified.

Action items:

Person Responsible:   Deadline:

**19. Employee State Housing Repairs**

Discussion: legislation requires to be cost neutral - rent goes into pot to pay for repairs - all MWR for State. housing will go to Thaler for prioritization.

Action items:

Person Responsible:   Deadline:

**20. Employee Injuries**

Discussion: Stay on top of where we are at on employee and offenders injuries.

Action items:

Person Responsible:   Deadline:

**21. Contraband Interdiction**

Discussion: Doing good job - continue

Action items: ML - CY - ST - CN

Person Responsible:   Deadline: