UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, and SANDRA McCOLLUM, individually, and STEPHANIE KINGREY, individually and as independent administrator of the Estate of LARRY GENE McCOLLUM, | § § § § § | |
| PLAINTIFFS | § § | |
| v. | § § § | CIVIL ACTION NO. 4:14-cv-3253 JURY DEMAND |
| BRAD LIVINGSTON, JEFF PRINGLE, RICHARD CLARK, KAREN TATE, SANDREA SANDERS, ROBERT EASON, the UNIVERSITY OF TEXAS MEDICAL BRANCH and the TEXAS DEPARTMENT OF CRIMINAL JUSTICE. | § § § § § § § | |
| DEFENDANTS | § | |

Plaintiffs' Consolidated Summary Judgment Response Appendix

# EXHIBIT 197



# Texas Department of Criminal Justice

**Brad Livingston**

Administrative Review
**Incident # I-11520-08-11**
Texas Department of Criminal Justice
Correctional Institutional Division
Joe F. Gurney Transfer Facility
August 17, 2011



**To:**      Emergency Action Center
Huntsville, Texas

**Thru:**    Mr. Robert Eason
Region II Director

**Subject:** I-11520-08-11
Offender Death (Cause Pending)

Received

✓ SEP 1 2 2011 ✓

EAC

**Persons
Involved:**

**Offender James, Kenneth Wayne #1726849**
Offender James, Kenneth #1726849 is a 5'10" 266 pound fifty-two (52) year old black male, United States citizen, NR-Custody offender assigned to the Joe F. Gurney Transfer Facility of the Texas Department of Criminal Justice Correctional Institutional Division, serving a five (5) year sentence for Assault-Family Violence (Enhanced) out of McLennan County, Texas.

**Summary:**

On August 13, 2011 at approximately 0417 hours, it was reported to the Joe F. Gurney Transfer Facility by Sergeant Matthew Seda that offender James, Kenneth #1726849 was pronounced deceased by Medical Doctor Heidi Knowles. The preliminary cause of death was listed as cardiac arrest.

On August 13 at approximately 0020 hours, Correctional Officer V Doris Edwards, assigned to B1-Building, reported to Sergeant Seda that offender James, housed in B3-Dorm on B1-Building, was exhibiting abnormal behavior, specifically, that he appeared disoriented and may have urinated on himself.

---

*Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime.*

Joe F. Gurney Unit
1385 F.M. 3328
Palestine, Texas 75803
www.tdcj.state.tx.us

Sergeant Seda and Sergeant Tully Flowers reported that he was assisting with the unit count at the time the notification was made and Sergeant Seda confirmed that offender James was in a secure area, instructed Officer Edwards to maintain a visual on the offender and indicated that he would respond shortly.

Following Sergeant Seda's conversation with Officer Edwards, Correctional Officer V Robert Tatum, currently assigned as a correctional officer in the Food Service Department, reported to Sergeant Seda that, while rostering his 0100 hour offender workers he observed one offender, housed on A1-Building, with injuries consistent of having been involved in a physical altercation.   Sergeant Seda instructed Correctional Officer IV Tatum to instruct the injured offender to wait in the hallway immediately outside of the Building Lieutenant's Office and that he would conduct an investigation at the conclusion of the unit count.

Shortly after Sergeant Seda's conversation with Correctional Officer IV Tatum, Correctional Officer IV Revoyda Dodd, also assigned to B1-Building, reported to Sergeant Seda that she, too, had observed offender James behaving abnormally and that he appeared to be "drunk or on some kind of medication." Sergeant Seda indicated to Correctional Officer IV Dodd that he would report to the housing area as soon as he was complete with his current task, assisting with the unit count, and that offender James should remain in the secured area.   He further indicated that if the situation should change and warrant a more immediate response to notify him.

A sergeant's participation in the count, to ensure that it is conducted and cleared in a timely manner, consists of reviewing the count sheets to ensure that no discrepancies exist between the documentation provided by staff and the actual figures provided by telephone.   In this case, the count being conducted was a bed book count which provides that each offender will be verified by TDCJ identification card and would require additional review to ensure that all offenders are housed where they are assigned and that all staff conducted, properly, the bed book count.   A lieutenant, who is taking the formal count, is present during this process.

Upon completion of his duties in assisting with the unit count, at approximately 0035 hours, Sergeant Seda made contact with the offender who had been involved in the physical altercation and began questioning the offender regarding the circumstances of his physical altercation as well as the identity of the other involved offender.   Sergeant Seda, in an effort to determine what had occurred and to identify the unknown participant, proceeded to A1-Building and began an investigation, stating that he forgot about the report regarding offender James.   At approximately 0235 hours, the identity of the other involved offender had been determined and, as Sergeant Seda and Sergeant Flowers were exiting A-Building, they heard a request for a wheelchair and additional staff on B1-Building.   Both

*Our mission is to provide public safety, promote positive change in offender
behavior, reintegrate offenders into society, and assist victims of crime.*

Joe F. Gurney Unit
1385 F.M. 3328
Palestine, Texas 75803
www.tdcj.state.tx.us

proceeded to that location. *See Offense Reports #20110356416 and #20110356422).*

Upon arrival by both Sergeant Seda and Sergeant Flowers, offender James was observed standing in the dayroom of B3-Dorm and appeared disoriented. Sergeant Seda reported that, upon approaching offender James, he immediately kneeled to one knee. Correctional Officer V Torrance Stephens and Correctional Officer V Kenneth Mangan arrived shortly after Sergeant Seda with the wheelchair. Correctional Officer V Ronald Burt, who had also responded, and Correctional Officer V Stephens assisted offender James into the wheelchair. Correctional Officer V Stephens then, without incident, pushed the wheelchair containing offender James to the Gurney Unit Medical Department.

Upon arrival in the medical department, due to no on-site medical staff, Sergeant Tully Flowers contacted Registered Nurse Linda McKnight at the Beto Unit Medical Department. Sergeant Flowers indicated that Registered Nurse McKnight instructed him to obtain the blood pressure and temperature of offender James and report the results to her. As a result, Sergeant Flowers ordered Correctional Officer V Burt to obtain this information by use of the equipment in the medical department. Correctional Officer V Burt reported results of a temperature of 108° and a blood pressure reading of 89/57, which upon being relayed to Registered Nurse McKnight, resulted in her requesting that offender James be transported, by unit van, to the Beto Unit Medical Department for evaluation.

As offender James was being prepared for transport, he suddenly bent over in the wheelchair and became unresponsive; however, was still breathing and had a pulse, therefore cardiopulmonary resuscitation ("CPR") was not needed nor initiated. Lieutenant Toby Whitfield, upon being notified of offender James' current status, instructed Central Control to request Emergency Medical Services ("EMS") by dialing 9-1-1 as he arrived in the medical department. Lieutenant Whitfield confirmed that offender James had a pulse.

At approximately 0319 hours, EMS personnel arrived in the infirmary and began to assess offender James' condition. As the EMS personnel began obtaining vital signs, 9-1-1 operator Sarah Wardell informed Lieutenant Whitfield that offender James would be transported by air ambulance.

In preparation for the air ambulance, EMS personnel removed the offender from the Gurney Unit Medical Department and placed him inside of the ambulance. While awaiting the arrival of the air ambulance, at the request of EMS personnel, Correctional Officer V Vincent McKnight assisted EMS personnel with life saving measures by "ambu bag" to force air into the lungs as part of the CPR process. EMS personnel made multiple attempts to intubate offender James, to no avail.

*Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime.*

Joe F. Gurney Unit
1385 F.M. 3328
Palestine, Texas 75803
www.tdcj.state.tx.us

At approximately 0338 hours, the ambulance began to move to the back gate in preparation for the arrival of the air ambulance.  Lieutenant Whitfield was notified by the ambulance driver that offender James' condition had suddenly worsened and that there was insufficient time to await the arrival of the air ambulance; instead offender James would need to be transported to Palestine Regional Medical Center ("PRMC") immediately, via ambulance.

With Correctional Officer V McKnight onboard the ambulance assisting with life saving measures, Lieutenant Whitfield permitted the ambulance to immediately depart the facility, subsequently, dispatching Sergeant Seda and Correctional Officer V Burt to meet the ambulance at PRMC.  In addition, the air ambulance was canceled by EMS personnel.

Having arrived at PRMC, and assessing the situation, Sergeant Seda contacted Lieutenant Whitfield at 0410 hours and reported that PRMC Emergency Room personnel had continued life saving measures.

At approximately 0416 hours, Medical Doctor Heidi Knowles pronounced offender James as deceased with preliminary results indicating cardiac arrest.

At approximately 0417 hours, Sergeant Seda reported the death of offender James to Lieutenant Whitfield.  Correctional Officer V Burt and Correctional Officer V McKnight returned to the Gurney Unit and Sergeant Seda remained at PRMC with the remains until the arrival of Carnes Funeral Home, Precinct #3 Justice of the Peace James Todd, and the Office of the Inspector General.

At 0442 hours, Investigator Mark Owens of the Office of the Inspector General was notified and arrived at 0511 hours to begin an investigation.

At approximately 0500 hours, having been notified by PRMC medical staff, Precinct # 3 Justice of the Peace Todd arrived, conducted an inquest hearing and ordered an autopsy of the remains.

At approximately 0640 hours, Chaplain Thomas Taylor notified the next-of-kin, Ms. Mary James, listed as the mother of offender James.  Ms. James indicated that the family did not object to an autopsy and would claim the remains as well as any property belonging to offender James.

At approximately 0700 hours, Correctional Officer V John Crawford arrived at PRMC to relieve Sergeant Seda who subsequently returned to the Gurney Unit to complete his statement as part of this report.

At approximately 1005 hours Mr. Richard Syers of Carnes Funeral Home arrived at PRMC, collected the remains of offender James and departed.  Correctional Officer V Crawford returned to the Gurney Unit.

*Our mission is to provide public safety, promote positive change in offender
behavior, reintegrate offenders into society, and assist victims of crime.*

Joe F. Gurney Unit
1385 F.M. 3328
Palestine, Texas 75803
www.tdcj.state.tx.us

During a unit investigation, it was revealed that offender James arrived as a newly received offender on August 10 where, upon arrival, he received an orientation by Gurney Unit medical staff was conducted and prescriptions he was receiving in the McLennan County Jail were confirmed.

On August 11, offender James did not report to medical for any reason nor did he report to any member of staff of a need for medical assistance. In addition, offender James did not report to any pill window to obtain his prescribed medication. *See Clinic Nursing Notes (August 12, 2011).*

On August 12, at approximately 1145 hours, offender James reported to the Gurney Unit Medical Department for his required intake physical, conducted by Physician's Assistant Certified Stephen Smith. During the physical, offender James was noted to have a blood pressure of 170/100 and a pulse of 108. As a result, Physician's Assistant Certified Smith ordered Clonidine 0.2 MG to be administered immediately. Licensed Vocational Nurse Debbie Reinhart administered the prescribed medication at 1155 hours. A subsequent check of offender James' blood pressure revealed a result of 129/74 and a pulse of 100. As a result of the improvement, offender James was returned to Physician's Assistant Certified Smith for completion of the intake physical. No other abnormalities were noted and the offender was permitted to return to his assigned housing area. In addition, his prescriptions were renewed through September 11, 2011.

Correctional Officer V Debra Gilmore reports that, at approximately 1645 hours, she entered B3-Dorm to retrieve water coolers to be refilled and that offender James nor any other offender on his behalf reported that he needed medical assistance. At approximately 1715 hours, Correctional Officer V Robert Leonard, who was being relieved in the building control picket by Correctional Officer IV Brandon Matthews, advised Correctional Officer V Gilmore that several offenders in B3-Dorm had reported that offender James was in need of medical assistance. Correctional Officer V Leonard and Correctional Officer V Gilmore entered B3-Dorm to assess the condition of offender James. Correctional Officer V Leonard, as they approached offender James' assigned bunk, B3-23, asked him if he could sit up. Offender James was able to comply and was asked to provide his TDCJ identification card, which he also complied. Correctional Officer V Leonard then asked offender James a series of questions to determine if he was able to provide an accurate answer. Offender James accurately provided his name, number, age and the current day of the week. Correctional Officer V Leonard informed offender James that medical would be contacted regarding his condition. Correctional Officer V Gilmore proceeded to make contact with the medical department.

Correctional Officer V Gilmore reports in her statement that she made telephone contact with Licensed Vocational Nurse Danny Washington and that he declined to see offender James only advising her to instruct offender James to drink plenty

*Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime.*

of water as he was previously directed by medical staff. Correctional Officer V Gilmore provided the instructions of Licensed Vocational Nurse Washington to offender James, briefed second shift relief, Correctional Officer III Sarah Rains on offender James condition and departed the facility as she was properly relieved.

Licensed Vocational Nurse Washington provided a statement in which he confirmed, in part, Correctional Officer V Gilmore's allegations; however, he asserts that he advised Correctional Officer V Gilmore to allow the offender to return to medical if she felt that it was needed. He further asserts that, having received no further report from security staff regarding the condition of offender James, that he departed the facility at 1900 hours, the scheduled closing time for the medical department.

The following notifications were made at the approximate times noted:

- Warden Dennis Miller at 0417 hours;
- Investigator Mark Owens, Office of the Inspector General at 0442 hours;
- Judge James Todd, Precinct #3 Justice of the Peace at 0500 hours;
- Mr. Jacob Little, Carnes Funeral Home at 0505 hours;
- Ms. Kathy Crumby, Emergency Action Center at 0612 hours;
- Anderson County Sheriff's Office at 0640 hours;
- Correctional Officer J. Lowery, Off-Site Medical Transport Command Center at 0655 hours.

**Employee Action/Inaction:**

There were employee actions and inactions associated with this incident and corrective action initiated, as follows:

- Sergeant Seda received an entry in his Employee Performance Log for failing to immediately respond to the building when notified by staff that offender James was exhibiting abnormal behavior. While his inaction was unacceptable, his truthfulness during the investigation and the fact that his actions were not deliberate or malicious in nature, it was determined that a lesser means of corrective action was appropriate. In addition, Sergeant Seda's past performance has been exceptional and his inaction in this incident was a failure in correctly prioritizing two separate incidents that, he believed, were ongoing simultaneously. The physical altercation which he investigated before responding to the reports of offender James' abnormal behavior had already occurred and could have been investigated by the next shift, if needed, and

*Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime.*

Joe F. Gurney Unit
1385 F.M. 3328
Palestine, Texas 75803
www.tdcj.state.tx.us

didn't require the immediate response that it received as one of the offender participants was in a safe area, away from the assailant. However, Sergeant Seda was performing his duties as a Sergeant of Correctional Officers, such as investigating an alleged physical altercation, and was not substandard to the degree of ignoring his duties entirely, but that more prudent judgment in prioritizing the two incidents should have been used is apparent. There is no evidence to support that a more immediate response would have resulted in a different outcome; however, it cannot be ignored that a more immediate response would have been preferred. Sergeant Seda was served and acknowledged by his initials the Employee Performance Log entry on August 17.

- Sergeant Flowers received an entry in his Employee Performance Log for instructing Correctional Officer V Burt to obtain a temperature and blood pressure for offender James. Sergeant Flowers, while acting on request from medical staff, is not a licensed medical professional nor was Correctional Officer V Burt. While staff are aware of their responsibility in providing emergency first-aid and assisting medical staff in providing treatments and life saving measures when the circumstances warrant and at the request of medical staff, the unsupervised use of diagnostic equipment at the direction of off-site medical staff, is not permitted and places staff, who are not medically trained, in a unnecessarily compromising position of liability should the incorrect use result in inaccurate information being used by medical staff in determining their level of response. Previous instructions to supervisory staff have prohibited this and thus, corrective action was warranted; however, Sergeant Flowers' intent was of the utmost importance in evaluating the level of corrective action that was warranted. His actions were in response to an emergency situation and he felt, at the time, justified in those actions. He was promoted to the position of Sergeant of Correctional Officers after the issue of security staff utilizing diagnostic equipment had been addressed and while it is not a defense that he was unaware of this prohibited action, the circumstances of the incident, in its entirety, must be taken into consideration. Sergeant Flowers was served and acknowledged by his initials the Employee Performance Log entry on August 17. Additional instructions are being provided to supervisor staff regarding the use, whether at the request of medical staff or not, of diagnostic equipment. Correctional Officer V Burt did not receive corrective action because, although he obtained the vitals, this action was at the direction of a supervisor.

---

*Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime.*

Joe F. Gurney Unit
1385 F.M. 3328
Palestine, Texas 75803
www.tdcj.state.tx.us

- The UTMB review process is underway; however, a preliminary recommendation for additional training for Licensed Vocational Nurse Washington and Registered Nurse McKnight was made based on their actions while responding to this incident. Further corrective action, if any, will be known at the conclusion of the review process.

Copies of corrective actions taken thus far are attached to this report.

**Attachments:**

| | |
|---|---|
| Report by: | Major Incident Checklist |
| Report by: | E-Mail Messages |
| | • E-Mail Message ID #010637 |
| | • E-Mail Message ID #010681 |
| | • E-Mail Message ID #032557 |
| Report by: | TNG-93, Serious Incident Report Form |
| Report by: | Detailed Time Line |
| Report by: | Employee Statements |

- Correctional Officer IV Brenda Renner
- Correctional Officer V Debra Gilmore
- Correctional Officer III Brandon Matthews
- Correctional Officer V Robert Leonard
- Correctional Officer III Sarah Raines
- Correctional Officer V Doris Edwards
- Correctional Officer IV Revoyda Dodd
- Sergeant Matthew Seda
- Correctional Officer IV Glorie Harris
- Correctional Officer III Joshua Milton
- Correctional Officer V John Crawford
- Sergeant Tully Flowers
- Lieutenant Toby Whitfield
- Correctional Officer V Vincent McKnight
- Correctional Officer V Kenneth Mangan
- Correctional Officer V Ronald Burt
- Correctional Officer V Torrance Stephens
- Correctional Officer IV Deborah Schulle
- Sergeant Tully Flowers

Report by:     Offender Statements
- Inmate Locator Report for B3-Dorm (August 12, 2011)
- Handwritten Offender Witness Statements x 52

Report by:     Statement of Chaplain Thomas Taylor
- Offender Death Notification Worksheet

---

*Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime.*

Joe F. Gurney Unit
1385 F.M. 3328
Palestine, Texas 75803
www.tdcj.state.tx.us

McCollum James 2583

- Letter to Ms. Mary L. James, Next-of-kin
- Documentation of family contact: Offender Death
- E-Mail Message ID #010819

Report by:  Digital Photos x 6
Report by:  Offender Travel Card Information
Report by:  Offender Visitation Information
Report by:  Transport and Autopsy Information
- Autopsy Order
- Transport Authorization for Offender Remains
- Judge James Todd, Precinct #3 Justice of the Peace
  - o   Inquest Transport Order
  - o   Order for Autopsy
  - o   Inquest Information

Report by:  Investigator's Report of Custodial Death
Report by:  RM-03
Report by:  Off-Unit Transport Documentation
- I-056 *Inmate Transfer Roster*
- Transport of Offender Form

Report by:  UTMB Correctional Managed Care
- Facility Death Review for Total Quality Management (Final)
- Facility Death Review for Total Quality Management (Initial)
- Statement of Licensed Vocational Nurse Danny Washington
- Nursing Triage Form
- Health Summary for Classification
- Clinic Notes, August 10, 2011
- Texas Uniform Health Status Update, McLennan County
- Intake History and Health Screening
- Report of Physical Exam
- Clinic Notes, August 12, 2011
- Prescription Information x 3

Report by:  Documentation from Palestine Regional Medical Center
Report by:  EMS Patient Care Record
Report by:  Miscellaneous Information
- Dorm Temperature Log, August 12, 2011
- Dorm Temperature Log, August 13, 2011
- Receiving/Releasing Tracking Form, Carnes Funeral Home
- Count Sheet (August 13, 2011)
- Offense Report (#20110356416)
- I-47MA *Disciplinary Report and Hearing Record* (#20110356416)

---

*Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime.*

Joe F. Gurney Unit
1385 F.M. 3328
Palestine, Texas 75803
www.tdcj.state.tx.us

- Offense Report (#20110356422)
- I-47MA *Disciplinary Report and Hearing Record* (#20110356422)

Report by:       Corrective Action
- Employee Performance Log:  Sergeant Matthew Seda
- Employee Performance Log:  Sergeant Tully Flowers

**Administrative Review:  Wardens/Administrative Supervisors Comments:**

The staff and supervisors responded to the incident; however, there were some deficiencies and actions in staff response that required corrective action.  The appropriate corrective action, in accordance with PD-52 (rev. 5) *Performance Evaluations,* has been initiated and is attached to this report.  The UTMB review process is underway; however, additional training has been recommended for Licensed Vocational Nurse Washington and Registered Nurse McKnight due to their actions while responding to this incident.  Further corrective action, if any, will be known at the conclusion of the review process.

Signature and Date: _____

Dennis Miller
Senior Warden
Joe F. Gurney Transfer Facility

*Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime.*

Joe F. Gurney Unit
1385 F.M. 3328
Palestine, Texas 75803
www.tdcj.state.tx.us

Incident: I-11520-08-11 / Offender Death / Gurney Unit

Regional Director/Assistant Director's Comments:

An investigation into the offender death that was reported on August 13, 2011, by the Gurney Unit involving Offender James, Kenneth TDCJ #1726849, indicated that employee action or in-action may have been a contributing factor in the incident; furthermore, employee actions during this incident were not it accordance with agency policy and procedures.

On August 13, 2011, at or about 0417 hours, Offender James was pronounced deceased by Doctor Heidi Knowles. The preliminary cause of death is listed as cardiac arrest.

On August 13, 2011, at or about 0020 hours, COV Doris Edwards reported to Sergeant Matthew Seda that Offender James was exhibiting abnormal behavior in B-1 building. Sergeant Seda was assisting with the unit count and advised that he would report to the housing area as soon as he completed his current task; however, Sergeant Seda began investigating an offender altercation that was reported. At or about 0235 hours, staff requested assistance on B-1 building. Sergeant Seda responded and observed Offender James standing in the dayroom disoriented. Additional staff arrived and assisted the offender into a wheelchair. The offender was taken to the unit medical department. Upon arrival to the medical department, Sergeant Tully Flowers contacted RN Linda McKnight at the Beto Unit. RN McKnight instructed staff to obtain the vital signs of the offender. As a result of this instruction, CO V Ronald Burt obtained the information and reported results of a body temperature of 108 degrees and a blood pressure of 89/57. RN McKnight requested the offender be transported to the Beto Unit for further evaluation. During this time, the offender became unresponsive; however, continued breathing and had a pulse. Lieutenant Toby Whitfield requested Emergency Medical Services.

At or about 0319 hours, EMS personnel arrived at the Gurney Unit and began life saving measures. The initial determination for transport via Air Ambulance was made; however, while awaiting arrival of the helicopter, the offender's condition worsened and the decision was made by EMS staff to transport the offender via ambulance to Palestine Regional Medical Center. Upon arrival at PRMC, life saving measures continued; however, at 0416 hours Dr. Heidi Knowles pronounced offender James deceased.

The Office of the Inspector General Investigator Mark Owens was notified at 0442 hours and began an investigation 2011.03304. Precinct 3 Justice of the Peace James Todd arrived at 0500 hours and ordered an autopsy. The family was contacted and will claim the body. Carnes Funeral Home arrived at 1005 hours and took possession of the body.

During the unit investigation, it was revealed that Offender James arrived as a newly assigned offender on August 10, 2011. The offender received an orientation by Gurney Unit medical staff. On August 12, 2011, at or about 1145 hours, Offender James reported to the medical department for an intake examination. During the examination, it was noted that Offender James had a blood pressure of 170/100 and a pulse of 108 bpm. As a result, Physician Assistant Stephen Smith prescribed Clonidine 0.2 MG. The offender was again examined, his vital signs were improved; therefore, the offender was allowed to return to his assigned housing area.

It was reported at or about 1715 hours, several offenders in the dorm reported to staff that Offender James was ill.  COV Robert Leonard checked on the offender, the offender was able to comply with instructions and answer questions asked of him.  Officer Leonard informed COV Debra Gilmore at which time she reported his condition to LVN Danny Washington.  Officer Gilmore states that LVN Washington instructed her to have the offender drink fluids, but declined to see the offender at that time.  LVN Washington states that he did advise the officer to instruct the offender to drink plenty of water, but also to allow the offender to report to the medical department if she believed it was needed.  The Office of the Inspector General has been advised concerning the actions or inactions of staff related to this incident.

On the August 12, 2011, at 1908 hours, the air temperature in the housing area was 103.6 degrees and on August 13, 2011 at 0400 hours the air temperature in the housing area was 90.0 degrees.   The following heat precautions are taken at the Gurney Unit to minimize heat related illnesses:  air flow is monitored, all ventilation fans in the area were functioning properly, offenders are allowed to wear commissary shorts and t-shirts in the housing area, and ice water is provided in the housing area throughout the day.  All staff and offenders are trained on heat awareness and precautions in accordance with AD 10.54, Temperature Extremes in the Workplace.

The following employee actions or inactions were associated with the incident and corrective action has been initiated:

Sergeant Seda, COV Doris Edwards, COIV Revoyda Dodd, and COIV Gloria Harris will be charged with the appropriate disciplinary in accordance with PD-22 for not adequately responding to the needs of an ill offender.

Sergeant Flowers received an entry in his Employee Performance Log for instructing COV Burt to obtain vital signs of Offender James which is not in compliance with agency standards.

The UTMB review process is ongoing; however, additional training has been recommended for staff.

This office will review this incident in 90 days concerning autopsy report, OIG investigations, and employee corrective actions.

Signature:_____   Date: 09 - 09 - 2011

Robert Eason
Region II Director

# E-Mail Messages

| Date | Time | Recipient | ID # |
|------|------|-----------|------|
|  |  |  |  |
| August 13, 2011 | 0908 Hrs. | Emergency Action Center | 010637 |
| August 13, 2011 | 1044 Hrs. | Emergency Action Center | 010681 |
| August 17, 2011 | 1441 Hrs. | Emergency Action Center | 032557 |

```
******* ...  .............. ..............  ......... ............ . ..........  ..
*** ..... ... ....... ... .... ..., ... ..... ....
***... ... .. ... .. . ... . . . ....... ..
***

MESSAGE ... .....  ... .. .. .. .. ..  ..... ...... ......... ...

SUBJECT: ... .. .. .. . .. .. . ......

EAC USE ONLY ... .. .................... THE REPORTED ..............
EMERGENCY ACTION CENTER INCIDENT NO:  I   11520 - 08 - .1
MAJOR USE OF FORCE NUMBER (IF APPLICABLE) : N
TYPE OF INCIDENT: OFFENDER DEATH
UNIT: ...  REGION 06   DATE OCCURRED: 08 / 12 / 2011   TIME OCCURRED: 04:16
SPECIFIC LOCATION: PALESTINE REGIONAL MED. CENTER
INITIAL INCIDENT COMMANDER: (IF APPLICABLE)
RANK/NAME: .. ..
FINAL INCIDENT COMMANDER (IF COMMAND WAS TRANSFERRED):
RANK/NAME: N/A
LEVEL OF RESPONSE:  (INDICATE ALL THAT APPLY)
    A    ..  ..   ..    ..  E    X N/A (IF INCIDENT WAS HANDLED WITHOUT
REQUEST FOR RESPONSE TEAM)
GANG IDENTIFICATION: NONE
WAS OFFICE OF INSPECTOR GENERAL NOTIFIED:  X YES     NO
WAS INCIDENT RACIALLY MOTIVATED: .. YES  X NO

                     OFFENDER INFORMATION
OFFENDER NAME (LAST, FIRST M)       TDCJ NO.    CUST  RACE  SEX  AGE  INT ..
    JAMES, KENNETH WAYNE             01458-D     .AA    B    M    52   ..
```

```
WERE OFFENDERS INJURIES TREATED IN HOSPITAL X YES   NO
BY: X EMS   VAN   LIFE FLIGHT
NAME OF HOSPITAL: PALESTINE REGIONAL MEDICAL CENTER
TREATMENT: CONDUCTED LIFE SAVING MEASURES IN AN ATTEMPT TO PROTECT DEATH
                     EMPLOYEE INFORMATION
NAME (LAST, FIRST M)                SSN    RACE  SEX   AGE       RANK
    N/A
```

```
WHEN REPORTING AN ALLEGED SEXUAL ASSAULT PLEASE PROVIDE THE FOLLOWING
WAS A RAPE KIT COMPLETED   YES   NO   DECLINED
WAS A SEXUAL ASSAULT REPRESENTATIVE REQUESTED/PROVIDED   YES   NO   DECLINED
IF YES (NAME/TITLE OF REPRESENTATIVE):

WHEN REPORTING A DEATH/SUICIDE/HOMICIDE PLEASE PROVIDE THE FOLLOWING
DATE: 08 / 12 / 2011   TIME: 04 / 16 PRONOUNCED DECEASED
PERSON PRONOUNCING VICTIM DECEASED NAME/TITLE: MIGDI KNOWLES / M.D.
COUNTY WHERE DEATH OCCURRED: ANDERSON
```

PRELIMINARY CAUSE OF DEATH: CARDIAC ARREST
NEXT OF KIN NOTIFIED? YES   NO   DATE: 08 / 13 / 2011   TIME: 06 : 10
NAME OF KIN: [illegible]
HUNTSVILLE FUNERAL HOME NOTIFIED? X YES   NO
JUSTICE OF PEACE NOTIFIED? X YES   NO

DESCRIPTION OF WEAPON(S)/CONTRABAND

N/A

CHEMICAL AGENT INFORMATION

AMOUNT                          TYPE                    AUTHORIZATION
N/A                    N/A                              N/A

WAS TEAM AUTHORIZED? YES X NO   DECONTAMINATED? YES / NO   INJURIES? YES X NO

WERE ANY TECHNOLOGIES/PROTECTIVE EQUIPMENT/CANINE LISTED BELOW PERTINENT TO
THIS INCIDENT?
YES        NO X

IF YES, INDICATE APPLICABLE
PARCEL SCANNER                                 N/A
WALK THROUGH METAL DETECTOR                    N/A
HAND HELD METAL DETECTOR                       N/A
B.O.S.S. CHAIR                                 N/A
VIDEO SURVEILLANCE                             N/A
HEARTBEAT DETECTION SYSTEMS                    N/A
BODY ALARM                                     N/A
PERIMETER FENCE DETECTION SYSTEMS              N/A
STAB-RESISTANT VEST                            N/A
NARCOTIC DETECTION CANINE                      N/A
CELL PHONE DETECTOR CANINE                     N/A
PACK CANINES                                   N/A
S.A.R. CANINES                                 N/A
CONTRABAND INTERDICTION SHAKEDOWN TEAM         N/A
OTHER:    N/A

WHEN APPLICABLE INCLUDE IN THE "SUMMARY OF INCIDENT" HOW THE RESOURCE(S)
IDENTIFIED ABOVE WAS RELEVANT TO THE INCIDENT.

SUMMARY OF INCIDENT
ON 08/13/2011 THE JOE F. GURNEY TRANSFER FACILITY LOCATED IN PALESTINE, TEXAS
REGION II, WAS NOTIFIED THAT OFFENDER JAMES, KENNETH  1726850 WAS PRONOUNCED
DECEASED AT 0416 HOURS AT PALESTINE REGIONAL MEDICAL CENTER EMERGENCY ROOM.

OFFENDER JAMES, KENNETH  1726850 IS A 5'10", 660 FOUND FIFTY TWO YEAR OLD
BLACK MALE IN 3S-CUSTODY SERVING A 5-YEAR SENTENCE FOR ASSAULT FAMILY
VIOLENCE ENCHANCED OUT OF MELENNAN COUNTY TEXAS.

AT APPROXIMATELY 0240 HOURS, OFFICER GLORIE HARRIS 3DIV NOTIFIED LIEUTENANT
TOBY WHITFIELD THAT AN OFFENDER IN 8S-DORMITORY WAS IN THE DAYROOM URINATING
ON HIMSELF AND COULDN'T STAND UP.  LIEUTENANT WHITFIELD INSTRUCTED OFFICERS
KENNETH MANGAN 3DIV AND TORRANCE STEPHENS 3DIV TO OBTAIN A WHEEL CHAIR AND
RESPOND TO 8S-DORMITORY AND RETRIEVE OFFENDER JAMES FROM THE DAYROOM AND
ESCORT HIM TO THE UNIT MEDICAL DEPARTMENT.

OFFICER STEPHENS AND MANGAN RETRIEVED THE OFFENDER FROM THE DAYROOM AND

PROCEEDED TO THE MEDICAL DEPARTMENT WITH THE OFFENDER. AT THE MEDICAL
DEPARTMENT, SERGEANT TOBY PLOWER NOTIFIED REGISTERED NURSE MCKNIGHT AT THE
BEDSIDE OF THE OFFENDERS CONDITION. RN MCKNIGHT INFORMED SERGEANT PLOWER
TO TRANSPORT THE OFFENDER TO THE BED OUT FOR EVALUATION.
WHILE THE OFFENDER WAS BEING PREPARED FOR TRANSPORT, THE OFFENDER LEANED OVER
IN THE WHEEL CHAIR AND BECAME UNRESPONSIVE. SGT. PLOWER NOTIFIED LT.
WHITFIELD OF THE OFFENDERS CURRENT STATUS AND LT. WHITFIELD INSTRUCTED THE
CENTRAL CONTROL OFFICER TO CALL 911 AND REQUEST EMERGENCY SERVICES AT 0248.

THE OFFENDER CONTINUED TO BE UNRESPONSIVE. SERGEANT NOTIFIED WARDEN DENNIS
MILLER OF THE SITUATION. THE OFFENDER WAS MOVED FROM THE WHEEL CHAIR AND
PLACED IN THE GURNEY IN THE UNIT EMERGENCY ROOM.

AT APPROXIMATELY 0313 HOURS, THE AMBULANCE ARRIVED ON THE FACILITY AND
ENTERED THE BACK GATE. ONCE AT THE UNIT INFIRMARY, LT. WHITFIELD BRIEFED THE
EMT'S OF THE OFFENDERS CONDITION. THE EMT'S BEGAN TAKING VITAL SIGNS.
911-OPERATOR EMMAR WARDELL INFORMED INFORMED LT. WHITFIELD THAT THE AIR
AMBULANCE WOULD BE UTILIZED FOR THE TRANSPORT.

THE OFFENDER WAS REMOVED FROM THE UNITS MEDICAL GURNEY AND PLACED OF THE
AMBULANCE GURNEY. THE OFFENDER WAS MOVED FROM THE UNIT EMERGENCY ROOM TO THE
AMBULANCE.

SEND ADDITIONAL INFORMATION TO AGENCY INCLUDE INCIDENT NUMBER AS SUBJECT.
PREPARED BY: LIEUTENANT TOBY WHITFIELD                    DATE: 08 / 13 / 0611
AUTHORIZED BY: WARDEN DENNIS MILLER

Sent to:    EAC                                                     (16)
            TWHE304              WHITFIELD, TOBY                     (15)

```
***** ...........................................................................
*** REQUESTING OFFICER   WHITFIELD, TOBY        SURNEY UNIT              ***
*****...........................................................................
***                                                                     ***
```

MESSAGE TO: REQUEST        DATE: DETAIL   TIME: 12:440   PRIORITY: LOW

SUBJECT:    I-116SO-08-II CONTINUATION


    TO: EMERGENCY ACTION CENTER  EAC
        HUNTSVILLE, TEXAS

FROM: TOBY WHITFIELD, LIEUTENANT
      JOE F. SURNEY TRANSFER FACILITY
      PALESTINE, TEXAS

SUBJECT: I-116SO-08-II CONTINUATION
         OFFENDER DEATH
         JAMES, KENNETH #1726849

LT. WHITFIELD NOTIFIED THE SUTO UNIT THAT AN AIR AMBULANCE WAS ENROUTE
AND THE TENNESSEE COLONY VOLUNTEER FIRE DEPARTMENT WAS SUMMONED.

ONCE THE OFFENDER WAS IN THE AMBULANCE, OFFICER VINCENT MCKNIGHT 06:
ASSISTED MEDICAL STAFF ON THE AMBULANCE BY USING A B.P. BAG.  MEDICAL
STAFF ATTEMPTED TO INTUBATE THE OFFENDER AND AN I.V. WAS STARTED.  THE
OFFENDERS MEDICAL CONDITION CONTINUED TO DECLINE.

AT APPROXIMATELY 0038 THE AMBULANCE BEGAN TO MOVE TOWARD THE BACK GATE
IN PREPARATION FOR THE AIR AMBULANCE.  WHILE THE AMBULANCE WAS ENROUTE
TO THE BACK GATE, THE DRIVE INFORMED LT. WHITFIELD THAT THE OFFENDER
HAD CODED AND NEEDED TO BE TRANSPORTED TO THE HOSPITAL BY AMBULANCE
IMMEDIATELY INSTEAD OF WAITING FOR THE AIR AMBULANCE.  OFFICER MCKNIGHT
 STAYED IN THE BACK OF THE AMBULANCE AND CONTINUED TO ASSIST WITH LIFE
SAVING EFFORTS.

THE AIR AMBULANCE WAS CANCELED BY THE MEDICAL STAFF ON-BOARD OF THE
THE AMBULANCE.  SERGEANT MATTHEW SEDA AND OFFICER BURT FOLLOWED THE
AMBULANCE IN A STATE VAN TO PALESTINE REGIONAL MEDICAL CENTER
EMERGENCY ROOM.  WARDEN MILLER IS UPDATED ON THE OFFENDERS CONDITION.

AT 0410 HOURS, SERGEANT SEDA INFORMED LT. WHITFIELD THAT THE OFFENDER
WAS IN THE EMERGENCY ROOM AND LIFE SAVING MEASURES WERE STILL BEING
PERFORMED BY MEDICAL STAFF IN THE ER.  AT 0417 HOURS, SERGEANT SEDA
NOTIFIED LT. WHITFIELD THAT THE OFFENDER WAS DECEASED.

OFFENDER JAMES WAS PRONOUNCED DECEASED AT 0416 HOURS BY MEDICAL DOCTOR
HEIDI KNOWLES.  PRELIMINARY RESULTS INDICATED CARDIAC ARREST.

LT. WHITFIELD UPDATED WARDEN MILLER ON THE SITUATION.

AT 0442 HOURS, OFFICE OF INSPECTOR GENERAL, MARK OWENS WAS NOTIFIED OF
THE INCIDENT.

AT 0445 HOURS, CAPTAIN MICHAEL LUMPKINS WAS NOTIFIED OF THE INCIDENT.

AT APPROXIMATELY 0500 HOURS, JUSTICE OF THE PEACE JAMES TODD ARRIVED AT
PALESTINE REGIONAL MEDICAL CENTER AND COMPLETED A INQUEST TRANSPORT
ORDER AND THE ORDER FOR AUTOPSY.

AT 0505 HOURS, JACOB LITTLE OF CARNES FUNERAL HOME IN TEXAS CITY WAS NOTIFIED OF THE DECEASED OFFENDER.

AT 0511 HOURS, MARK OWENS ARRIVED AT PALESTINE REGIONAL MEDICAL CENTER EXAM ROOM #1 AND BEGAN INVESTIGATOR'S REPORT OF CUSTODIAL DEATH FORM AND TOOK DIGITAL PHOTOS OF THE OFFENDER.

AT APPROXIMATELY 0635 HOURS, WARDEN MILLER, CAPTAIN LUMPKINS AND CHAPLAIN THOMAS TAYLOR ARRIVED ON THE FACILITY.

AT 0640 HOURS, CHAPLAIN TAYLOR NOTIFIED MARY JAMES, MOTHER OF OFFENDER JAMES OF HIS DEATH.

AT 0645 HOURS, SERGEANT FLOWERS NOTIFIED ANDERSON COUNTY SHERIFF DEPARTMENT THAT OFFENDER JAMES BODY WAS BEING HELD IN EXAM ROOM #1 AT PRMC UNTIL ARRANGEMENTS WITH CARNES FUNERAL HOME COULD BE MADE.

AT 0655 HOURS, SERGEANT FLOWERS NOTIFIED J. LOWERY OF THE OFF-SITE MEDICAL COMMAND CENTER, OF THE INCIDENT.

AT 0955 HOURS, CARNES FUNERAL HOME, DICKY BYERS ARRIVED AT PALESTINE REGIONAL MEDICAL CENTER TO PICK UP THE BODY FOR TRANSPORT TO UTMB-GALVESTON FOR AN AUTOPSY.  AT 1005 HOURS, MR. DICKY TOOK POSSESSION OF THE BODY AND DEPARTED PALESTINE REGIONAL MEDICAL CENTER.

K. CRUMBY OF THE EMERGENCY ACTION CENTER WAS NOTIFIED OF THE INCIDENT AT 0612 HOURS AND INCIDENT NUMBER I 11520-08 11

C.R.I.S.P. WAS OFFERED TO ALL STAFF MEMBERS INVOLVED AND ALL DECLINED.

"ADDITIONAL INFORMATION WILL BE PROVIDED AS IT BECOMES AVAILABLE".

DRAFTED BY:    LIEUTENANT TOBY WHITFIELD
AUTHORIZATION:  WARDEN DENNIS MILLER

Sent to:      cmc            (list:            (to:
              TWHE304        WHITFIELD, TOBY   (to)

```
------------------------- SYSM INBASKET MESSAGE REVIEW --------------------
User ID: RMI9388                               ** PRINT completed on ND2
Enter Command ===>

To:       RMI9388 - MINTON, RICKY              Message ID: 032557
From:     RMI9388 - MINTON, RICKY              Date Sent:  08/17/1
Subject:  I-11520-08-11(ADDENDUM)    Priority: 000   Time Sent:  02:41pm

IN THE ORIGINAL REPORT FOR I-11520-08-11, THE FOLLOWING WAS
INADVERTENTLY OMITTED:

OFFENDER JAMES, KENNETH #1726849 IS A UNITED STATES CITIZEN.

DRAFTED BY:     RICKY MINTON, LIEUTENANT
AUTHORIZATION:  JERRY RAYFORD, MAJOR

Sent to:  EAC              <list>                    (to)
* * *        End of Message      * * *
```

```
COMMANDS: Ans TRa Read DEFer FILe POst EDit DEL PUT QUE DCal Print Help End
```

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
# EMERGENCY ACTION CENTER

## SERIOUS INCIDENT REPORT FORM

**EAC #** I-11520-08-11

| TYPE OF INCIDENT | UNIT CODE | DATE/TIME REPORTED | REPORTED BY |
|---|---|---|---|
| Offender Death | ND | 08/13/11 | Lt. Toby Whitfield |

| DATE/TIME OCCURRED | SPECIFIC LOCATION | GANG RELATED | GANG IDENTIFICATION |
|---|---|---|---|
| 08/13/11 | PRMC Hospital | No | N/A |

WAS THE INCIDENT RACIALLY MOTIVATED? (☐) YES    (☒) NO

## EMPLOYEE INFORMATION

| Name | SSN | RACE | SEX | AGE | RANK | HOSPITAL |
|---|---|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| | | | | | | |
| | | | | | | |

WERE EMPLOYEES TRANSFERRED TO A HOSPITAL? (☐) YES    (☒) NO

## OFFENDER INFORMATION

| Name | TDCJ# | RACE /SEX | AGE | CUSTODY CODE | INJURIES | A-V |
|---|---|---|---|---|---|---|
| James, Kenneth | 1726849 | B/M | 52 | NR | possible Cardiac Arrest | N/A |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

WERE OFFENDERS TRANSFERRED TO A HOSPITAL? (☒) YES    (☐) NO    NAME OF HOSPITAL: Palestine Medical Center

## INFORMATION ON DECEASED

| Name | TDCJ# | RACE /SEX | AGE | CUSTODY CODE | INJURIES | A-V |
|---|---|---|---|---|---|---|
| James, Kenneth | 1726849 | B/M | 52 | NR | Cardiac Arrest | N/A |
| | | | | | | |
| | | | | | | |

DATE/TIME VICTIM(S) PRONOUNCED DECEASED: 08/13/11 0416 hours

NAME OF PERSON PRONOUNCING VICTIM(S) DECEASED: Hedi Knowles-Medical Doctor

PRILIMINARY CAUSE OF DEATH: Cardiac Arrest

MOTIVE FOR ASSAULT/DEATH: N/A

NEXT OF KIN NOTIFIED? (☒) YES    (☐) NO    DATE/TIME/BY WHOM: 8-13-11/0640/Chaplain Taylor

HUNTSVILLE FUNERAL HOME NOTIFIED?    (☒) YES    (☐) NO    DATE/TIME/BY WHOM: 8-13-11/0505/Lt. Toby Whtfield

JUSTICE OF PEACE NOTIFIED?    (☒) YES    (☐) NO    DATE/TIME/BY WHOM: 8-13-2011/0442/ H.Knowles MD

## ASSAILANT INFORMATION

IS THE ASSAILANT(S) UNDERGOING INTERROGATION BY THE OFFICE OF INSPECTOR GENERAL? (☐) YES          (☒) NO

WAS THE ASSAILANT(S) AT THE LOCATION AT THE TIME OF THE DISCOVERY?          (☐) YES          (☒) NO

WEAPON INFORMATION

WEAPON(S) (DESCRIBE IN DETAIL): N/A _____

_____

## CHEMICAL AGENT INFORMATION

| AMOUNT | TYPE | AUTHORIZATION |
|--------|------|---------------|
| N/A | N/A | N/A |
|  |  |  |
|  |  |  |

WAS OFFICE OF INSPECTOR GENERAL NOTIFIED? (☒) YES          (☐) NO

## SUMMARY OF INCIDENT

On 08/13/11 on the Joe F. Gurney Transfer Facility located in Palestine, Texas (Region II), was notified that Offender James, Kenneth 1726849 was pronounced deceased at 0416 hours at Palestine Regional Medical Center Emergency Room.

Offender James, Kenneth 1726849 is a 5'10" 266 pound 52-year old black male in G2 custody, serving a five (5) year sentence for Assault Family Violence Enchanced out of McLennan County, Texas.

At approximately 0240 hours, Officer Glorie Harris COIV notified Lieutenant Toby Whitfield that an offender in B3 dormitory was in the dayroom urinating on himself and couldn't stand up.  Lieutenant Whitfield instructed Officers' Kenneth Mangan COIV and Torrance Stephens COV to obtain a wheel chair, respond to B3-dormitory, retrieve Offender James from the dayroom and escort him to the unit medical department.

Officer Stephens and Mangan retrieved the offender from the dayroom and proceeded to the medical department with the offender.  At the medical department, Sergeant Tully Flowers notified Registered Nurse McKnight at the Beto Unit of the offender's condition.  Mrs. McKnight informed Sergeant Flowers to transport the offender to the Beto Unit for evaluation.  While the offender was being prepared for transport, the offender leaned over in the wheel chair and became unresponsive.  Sgt. Flowers notified Lt. Whitfield of the offender's current status and Lt. Whitfield instructed the central control officer to call 911 and request emergency services at 0248 hours.

At approximately 0319 hours, the ambulance arrived on the facility and entered the back gate.  Once at the unit infirmary, Lt. Whitfield briefed the EMT's of the offender's condition.  The EMT's began taking vital signs, 911-operator Sarah Wardell informed Lt. Whitfield that the air ambulance would be utilized for the transport.

The offender was removed from the unit's medical gurney and placed on the ambulance gurney. The offender was moved from the unit emergency room to the ambulance.

Lt. Whitfield notified the Beto Unit that an air ambulance was enroute and the Tennessee Colony Volunteer Fire Department was summons.

Once the offender was in the ambulance, Officer Vincent McKnight COV assisted medical staff on the ambulance with life saving measures by using a B.P. bag. Medical staff attempted to intubate and an I.V. was started. The offender's medical condition continued to decline.

At approximately 0338 hours, the ambulance began to move toward the back gate in preparation for the air ambulance. While the ambulance was enroute to the back gate, the driver informed Lt. Whitfield that the offender had coded and needed to be transported to the hospital by ambulance immediately instead of waiting for the air ambulance and continued to assist with life saving efforts.

The air ambulance was canceled by the medical staff on board of the ambulance. Sergeant Matthew Seda and Officer Ronald Burt COV follow the ambulance in a state van to Palestine Regional Medical Center Emergency Room. Warden Miller is updated on the offender's condition.

At 0410 hours, Sergeant Seda informed Lt. Whitfield that the offender was in the emergency room and life saving measures were still being performed by medical staff in the Emergency Room. At 0417 hours, Sergeant Seda notified Lt. Whitfield that the offender was deceased.

Offender James was pronounced deceased at 0416 hours, by Medical Doctor Heidi Knowles. Preliminary results indicated cardiac arrest.

Lt. Whitfield updated Warden Miller on the situation.

At 0442 hours, Office of Inspector General, Mark Owens was notified of the incident.

At 0445 hours, Captain Michael Lumpkins was notified of the incident.

At approximately 0500 hours, Justice of the Peace James Todd arrives at Palestine Regional Medical Center and completed a inquest transport order and the order for autopsy.

At 0505 hours, Jacob Little of Carnes Funeral Home in Texas City was notified of the deceased offender.

At 0511 hours, Mark Owens arrived at Palestine Regional Medical Center exam room #1 and began Investigator's Report of Custodial Death Form and took digital photos of the offender.

At approximately 0605 hours, Warden Miller, Captain Lumpkins and Chaplain Thomas Taylor arrived on the facility.

At 0640 hours, Sergeant Flowers notified Anderson County Sheriff Department that Offender James' body was being held in exam #1 at PRMC until arrangements with Carnes Funeral Home could be made.

At 0655 hours, Sergeant Flowers notified J. Lowery of the Off-Site Medical Transport Command Center, of the incident.

At 0955 hours, Carnes Funeral Home, Dicky Syers arrived at Palestine Regional Medical Center to pick up the body for transport to UTMB-Galveston for an autopsy. At 1005 hours, Mr. Dicky took possession of the body and departed Palestine Regional Medical Center.

K. Crumby of the Emergency Action Center was notified of the incident at 0612 hours and incident number I-11520-08-11.

C.R.I.S.P. was offered to all staff members involved and all declined.

PREPARED BY:   Lt. Toby Whitfield                                      DATE:  08/13/11

AUTHORIZED BY:  Warden Dennis Miller

# Time Line

- Detailed Time Line

**Time Line**

Offender James, Kenneth #1726849                                      August 13, 2011

| | |
|---|---|
| 0240 | Officer Glorie Harris COIV notified Lt. Toby Whitfield that offender James was urinating on himself and was ill. |
| 0243 | Officer Torrance Stephens COV and Kenneth Mangan COIV respond with a wheelchair and transport the offender to the unit medical department. |
| 0245 | RN McKnight at the Beto unit was notified by Sergeant Tully Flowers of the situation. She advises him to transport the offender to Beto for evaluation. |
| 0247 | Offender Blood Pressure 89/57 and temp. 108 |
| 0248 | Lt. Whitfield is notified of the offender's condition and he notifies central control to call 911 for emergency services. |
| 0250 | RN McKnight is advised that Lt. Whitfield has called 911 to respond. |
| 0251 | Lt. Whitfield arrives at the medical department and he advises Sergeant Seda to move the offender into the emergency room and placed on the gurney.  Lt. Whitfield checks for a pulse and feels one. |
| 0305 | Sergeant Matthew Seda notifies Warden Dennis Miller of the situation |
| 0306 | Officer Mangan and Officer Ronald Burt are advised that they will be on the transport team |
| 0318 | The ambulance arrives at the back gate. |
| 0319 | The ambulance arrives at the back door of the medical department |
| 0320 | Lt. Whitfield briefs paramedics on the offender's condition. |
| 0323 | Lt. Whitfield receives a phone call from the 911 operator (Sarah Wardell) informs him that an air-ambulance was enroute |
| 0323 | Warden Miller was notified of the air-ambulance.  Beto was also noticed.  Lt. Whitfield informed central control to notify local volunteer fire departments. |
| 0327 | Paramedics, Lt. Whitfield and Officer Vincent McKnight move the offender from the state's gurney to the paramedic's gurney. |
| 0328 | Offender James was moved from the emergency room to the back door of the medical department and placed in the ambulance.  The paramedics were attempting to get vital signs again. |
| 0330 | Paramedics request assistance from an officer and Officer McKnight stepped into the ambulance and began assisting with life saving measures. |
| 0333 | Tennessee Colony Volunteer Fire Department arrives at the back gate and set up a perimeter for the air-ambulance to land. |
| 0336 | Lt. Notified that the ETA of the air-ambulance was 5-minutes. |
| 0338 | Lt. Whitfield was notified by a paramedic that the offender had coded and the ambulance needed to depart immediately for the hospital.  The ambulance proceeds to the back gate and exits it. |
| 0339 | Lt. Whitfield instructs Sergeant Seda and Officer Burt to follow the ambulance to Palestine Regional Medical Center.  They depart the unit behind the EMS. |
| 0340 | Warden Miller is updated on the situation. |
| 0342 | A volunteer fire fighter notifies Sergeant Flowers that the offender was code blue. |
| 0405 | Ambulance arrives at PRMC and is placed in Exam room #1<br>Medical staff at the ER began to perform life saving measures. |
| 0410 | Sergeant Seda hears a medical staff state they found a pulse and advises Lt. Whitfield. |
| 0416 | Heidi Knowles M.D. pronounces offender James deceased |
| 0417 | Sergeant Seda notifies Lt. Whitfield |
| 0418 | Lt. Whitfield notifies Warden Miller |
| 0435 | (OIG) Mark Owens notified |

1

PlaintiffsJames23250 McCollum/SJames250

| | |
|---|---|
| 0440 | Captain Michael Lumpkins notified |
| 0505 | Jacob Little (Carnes Funeral Home) notified by Lt. Whitfield |
| 0530 | Chaplain Thomas Taylor notified |
| 0605 | Captain Lumpkins arrives on the facility |
| 0610 | Warden Miller arrives on the facility |
| 0620 | Chaplain Taylor arrives on the facility. |
| 0640 | Chaplain Taylor notifies next-of-kin (Mary James-mother) |
| 0645 | Sergeant Tully Flowers notified Anderson Co. Sheriffs Department. |
| 0655 | J. Lowry (Off-Site Medical Transport) is notified. |
| 0700 | Officer John Crawford relieves Sergeant Seda at PRMC |
| 1005 | Dickie Syers (Carnes Funeral Home) takes possession of the body. |

2

# Employee Witness Statements

| Date | Name | Title |
|---|---|---|
| | | |
| August 13, 2011 | Renner, Brenda | Correctional Officer IV |
| August 13, 2011 | Gilmore, Debra | Correctional Officer V |
| August 13, 2011 | Matthews, Brandon | Correctional Officer III |
| August 13, 2011 | Leonard, Robert | Correctional Officer V |
| August 13, 2011 | Raines, Sarah | Correctional Officer III |
| August 13, 2011 | Edwards, Doris | Correctional Officer V |
| August 13, 2011 | Dodd, Revoyda | Correctional Officer IV |
| August 13, 2011 | Seda, Matthew | Sergeant of Correctional Officers |
| August 13, 2011 | Harris, Glorie | Correctional Officer IV |
| August 13, 2011 | Milton, Joshua | Correctional Officer III |
| August 13, 2011 | Crawford, John | Correctional Officer V |
| August 13, 2011 | Flowers, Tully | Sergeant of Correctional Officers |
| August 13, 2011 | McKnight, Vincent | Correctional Officer V |
| August 13, 2011 | Mangan, Kenneth | Correctional Officer V |
| August 13, 2011 | Burt, Ronald | Correctional Officer V |
| August 13, 2011 | Stephens, Torrance | Correctional Officer V |
| August 13, 2011 | Schulle, Deborah | Correctional Officer IV |
| August 17, 2011 | Flowers, Tully | Sergeant of Correctional Officers |

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

# Inter-Office Communications

**To**   Lieutenant Toby Whitfield         **Date**   August 13, 2011

**From**   Brenda Renner COIV         **Subject**   As Stated

On August 12, 2011 I (Officer Renner) was assigned to work on B1-building, at no time did I observed any unusual activity.  Furthermore, at no time did I observed nor did any offenders report to me that they were sick.

*Brenda Renner*

SO-4

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

# Inter-Office Communications

**To**      Lieutenant Toby Whitfield          **Date**      August 13, 2011

**From**    Debra Gilmore                       **Subject**   As Stated

On August 12, 2011, I (Officer Gilmore) was assigned as the first rover on B1-building, at approximately 1645 hours; I was getting the water coolers out of the dorm so they could be refilled with ice jugs and water during to count.  As I was getting coolers out I went through B3 dorm, no offenders reported being sick or dizzy.  At approximately 1715 hours, Officer Brandon Matthews started counting, Officer Robert Leonard arrived on the building and relieved me so that I could go and help with the count. Once we had finished counting Officer Leonard was relieved by Officer Brandon, he exited the picket and informed me that several offenders had some offenders had came to the speaker in B3 dorm and stated that B3-23 bunk was sick. At this time second shift officers began to arrive on the building. Officer Leonard and I entered B3 dorm together, went to B3-23 bunk, Officer Leonard asked the offender if he could sit up and talk. The offender sat up, Officer Leonard asked the offender for his identification card.  The offender got his shirt and gave his identification card to Officer Leonard. Officer Leonard asked the offender if he knew his name/TDCJ number, he said his name was Kenneth James and that his TDCJ number was 1726849. Officer Leonard asked Offender James a few more questions and he gave the answers to the questions. At this time I asked Offender James if he was in pain or feeling nauseated, he stated that just felt dizzy.  At this time both Officer Leonard and myself began to walk out of the dorm, on our way out of the dorm Officer Leonard handed me Offender James' identification so that I could call the unit infirmary. After exiting the dorm I went to the picket pass through drawer and asked Officer Matthews to call the unit infirmary. Officer Matthews called the unit infirmary and spoke briefly on the phone then he put the phone in the pass through drawer for me to talk on the phone.  I grabbed the phone and identified the person on the phone as Licensed Vocational Nurse Danny Washington. I Nurse Washington informed that Offender James, Kenneth 1726849 in B3-23 was complaining of being dizzy. Upon notifying Nurse Washington of Offender James' condition he instructed me to inform the offender that he needed to drink more fluids (water).  As per his instructions I entered B3 dorm and went to 23 bunk to inform Offender James to drink more fluids.  After exiting B3 dorm I was relieved from duty by the second shift Officer Sarah Raines, prior to leaving I informed her that Offender James was complaining saying he felt dizzy, I had already called the unit infirmary, spoke with Nurse Washington and I relayed his instructions to her.  After being properly relieved by Officer Raines I left B1-building and the unit as my shift was concluded.  I have no further knowledge of this incident.

*Debra Gilmore Cos 15*A*

SO-4

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

# Inter-Office Communications

**To**    Lieutenant Toby Whitfield       **Date**    August 13, 2011

**From**    Brandon Matthews       **Subject**    As Stated

On August 12, 2011 at approximately 1740 hours, Officer Debra Gilmore COV exited B3 dorm and requested that I call the unit infirmary for her.  Officer Gilmore stated that there was an offender in B3 dorm that wasn't feeling well.  At this time I called the unit infirmary and notified Licensed Vocational Nurse Danny Washington that there was an offender in B3 dorm that wasn't feeling well. Nurse Washington needed more information about the offender so I passed the phone through the picket pass through drawer to Officer Gilmore so that she could speak with Nurse Washington.  After Officer Gilmore finished talking with Nurse Washington she put the receiver back in the pass through drawer and went to B3 dorm and spoke with the offender assigned to B3-23.  At no time did any offenders report to me that any offender was ill nor did I observe any offenders that looked like they were in any kind of distress or ill.

**SO-4**

Texas Department of Criminal Justice
**CORRECTIONAL INSTITUTIONS DIVISION**

# Inter-Office Communications

**To**   Lieutenant Toby Whitfield          **Date**   August 13, 2011

**From**   Robert Leonard COV          **Subject**   As Stated

I (Officer Leonard) was assigned to R-picket on the morning of August 12, 2011, when I rotated into my building (B1), I was a second rover, and was sent to feed third chow.  At approximately 1715 hours, I returned to B1-building to help count the building.  The dorm officers Officer Brandon Matthews and Officer Debra Gilmore sent me to the control picket while they counted the building.  As they were counting, the ice crew was replenishing the water coolers.  During the count, as the officers were counting in B4 dorm, that's when several offenders approached the intercom in B3 dorm and stated that there was an offender in B3-23 that was not feeling well.  I asked why they didn't stop somebody when they walked by mere minutes before. Said offender stated that he didn't know.  Once the officers finished counting in B4 dorm, second shift arrived on the building.  Officer Matthews and the one of the second shift officers relieved me from the picket.  At this time, the second shift officer let Officer Gilmore and me into B3 dorm while Officer Matthews compared the count sheets.  As Officer Gilmore and I approached B3-23, I asked if he could sit up and talk to me.  He sat up, and then I asked for his identification card.  Said offender picked up his shirt (he was not wearing a shirt) and gave me his identification card.  At this time I asked the offender for his name/TDCJ number and compared his responses to his identification card, he responded with the correct answers.  After properly identifying Offender James, Kenneth Wayne 1726849, I asked him how old he was and what was day was it?  Offender James answered both questions correctly.  At this time I informed Offender James that we would call medical.  As Officer Gilmore and I walked out of the dorm, I handed Offender James' identification card to her; she proceeded to call the medical department, while I was leaving the building with the count sheets.

*Robert Leonard*

02-10   1A  3-14-2011

**SO-4**

Texas Department of Criminal Justice
**CORRECTIONAL INSTITUTIONS DIVISION**

# Inter-Office Communications

| | | | |
|---|---|---|---|
| **To** | Lieutenant Toby Whitfield | **Date** | August 13, 2011 |
| **From** | S. Raines | **Subject** | As Stated |

On August 12, 2011, at approximately 1800 hours I (Officer Raines) was assigned to B1-building to relieve first shift.  When I arrived at the building, I relieved the dorm rover, Officer Debra Gilmore COV, who informed me that the offender assigned to B3-23 bunk James, Kenneth #1726849 was not feeling well.  She then stated that Officer Brandon Matthews (who was in B1-control picket) had already called the infirmary and both of them spoke with Licensed Vocational Nurse Danny Washington, who instructed them to have the offender drink plenty of water.

At approximately 1845 hours, I went into B3 dorm and noticed an offender sitting in the dayroom without a shirt on. I asked the offender for his identification card and ordered him to put a shirt on; he stated that he was really hot. Offender was identified as James, Kenneth 1726849.  I asked him if he lived in B3-23 bunk and he said "yes".

At this time I asked the offender if he had been drinking any water, he stated that he had not been drinking any water.  I then asked him if he had a water bottle or cup, he stated "yes".  At this time I instructed Offender James to drink two (2) or three (3) containers of cold water from the water cooler.  Offender James shook his head up and down in a yes response.  He then slowly walked toward his bunk as if to comply with my instructions.

I completed a channel check and then exited the dorm.  At approximately 2015 hours, as I was sending the offenders from B3 dorm to necessities I returned Offender James' identification card to him as he exited the dorm. Offender James went to exchange his necessities and returned to B3 dorm.

While conducting my assigned duties (passing out mail/lay-ins) I observed Offender James walking around in the dorm, he showed no signs of distress.  At no time did Offender James report to me that he was not feeling ill nor did he make any requests to go to medical.

At approximately 2230 hours I was relieved from the building for break and then assist others for breaks.  I then report to my secondary position on R-picket.

Sarah Raines, COIII
Joe F. Gurney Transfer Facility

*Sarah Raines COIII*

**SO-4**

Texas Department of Criminal Justice
**CORRECTIONAL INSTITUTIONS DIVISION**

# Inter-Office Communications

**To**  Lieutenant Toby Whitfield          **Date**  August 13, 2011

**From**  Doris Edwards, COV          **Subject**  Offender James, Kenneth #1726849

At approximately 1800 hours I, Officer Doris Edwards COV was assigned to the control picket of B1-building. When I arrived on the Officer Brandon Matthews was in the control picket. I began to inventory the equipment on the building. At no time while first shift officers were on the building was I notified of any offenders being ill.

Until the special bed book count, at no time did I observe offender James, Kenneth #1726849 in any kind of distress.

At approximately 0005 hours, I conducted the count on B1-building. When I entered B3-dormitory, the offenders in the dorm told me that offender James was in his bed and urinated on himself. When I went over to his bunk, the offender didn't say anything about urinating on himself. When I looked at him, he looked back at me. He did not look to be in distress at this time.

While Officer Revoyda Dodd COIV was conducting the bed book count, I observed the offender go to the restroom area and back to his bunk area. He appeared to be dizzy while he was walking, he was wobbling back and forth as he was walking. Offenders in the housing area came up to the intercom and told me that offender James was sick.

While I was calling in the count, I notified Sergeant Matthew Seda and he informed me to keep an eye on the offender.

After Sergeant Seda told me to watch the offender, I did not notice any more abnormal behavior from the offender.

Shortly afterwards, Officer Glorie Harris COIV entered the building after coming in from the outside perimeter picket. I notified her that other offenders in the dorm stated that offender James had urinated by his bunk and was not urinating in the urinal.

At approximately 0200 hours, I exited the building to assist with other activities that were taking place on the unit.

At approximately 0240 hours, I was on the main hallway when Officer Torrance Stephens COV was pushing offender James in a wheelchair toward the unit infirmary. The offender was sitting up.

I remained on the main hallway.

*Doris Edwards CO V*
Doris Edwards, COV
Joe F. Gurney Transfer Facility

**SO-4**

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

# Inter-Office Communications

**To**    Lieutenant Toby Whitfield          **Date**    August 13, 2011

**From**   Revoyda Dodd, COIV          **Subject**    Offender James, Kenneth #1726849

At approximately 2200 hours I, Revoyda Dodd COIV reported to my assigned duty post on B1-building as the control picket officer. At approximately 0015 hours I was conducting a bed book count in B3-dormitory. When I arrived around B323 bunk, the offenders around 23-bunk, informed me that offender James, Kenneth #1726849 had urinated on himself. I approached B3-23 bunk and identified him by his TDCJ-ID card for the purpose of the bed book count.

The offender was lying in his assigned bunk. The offender was restless and was moving around in his bunk. I did not notice any urine on the offender at this time. I completed my bed book count for the rest of the building and before returned to the control picket I went back into B3-dormitory due to several offenders not being properly dressed in the dayroom. Shortly afterwards, I was in the control picket and noticed offender James sitting on the toilet in the restroom area. I then observed the offender leaving the restroom area. While he was walking, he bumped into the wall of the restroom, urinal and began to stumble. The offender made it back to his living area and fell into his bunk. I asked Officer Doris Edwards if she seen what the offender did. I notified Sergeant Matthaw Seda that the offender appeared to be drunk or on some kind of medication.

I went on with my normal duties in the control picket and continued to monitor offender activity in the dorm.

When Officer Glorie Harris came into the building, she noticed the offender in the dayroom and called Lieutenant Toby Whitfield on the radio. The offender was standing in the dayroom and would not respond to her questions. Shortly afterwards, Sergeant Tully Flowers, Sergeant Seda, Officers Ronald Burt COV, Kenneth Mangan COIV, and Torrance Stephens COV arrived on the building with a wheelchair. The offender was placed in the wheelchair and transported out of the building.

I then returned to my normal duties.

*Revoyda Dodd Co4*
Revoyda Dodd, COIV
Joe F. Gurney Transfer Facility

**SO-4**



Texas Department of Criminal Justice
**CORRECTIONAL INSTITUTIONS DIVISION**

# Inter-Office Communications

| **To** | Toby Whitfield, Lieutenant | **Date** | August 13, 2011 |
| | Joe F. Gurney Transfer Facility | | |
| | | | |
| **From** | Matthew Seda, Sergeant  _uS_ | **Subject** | I-11520-08-11 |
| | Joe F. Gurney Transfer Facility | | |

On August 13, 2011 at approximately 0020hours, I, Sergeant Matthew Seda, was in the Building Lieutenant's Office assisting with the unit count.  This was a bed book count which required that I assist by verifying the first count sheets that are turned in and then conducting a thorough check of the bed book rosters to ensure that all offenders were accurately accounted for in my area of assignment, the West End of the facility.

During this count, Officer Doris Edwards, CO V called and notified me that an offender on B1-Building, later identified as offender James, Kenneth #1726849, appeared dizzy and may have urinated on himself. After verifying that the offender was in a secured area, I instructed Officer Edwards to maintain a visual on the offender and that I would respond when able.  If the situation warranted a more immediate response that she was to let me know.

After talking to her, Officer Robert Tatum, CO IV entered the Building Lieutenant's Office, accompanied by an offender who works for him in the Food Service Department, and reported that he had injuries consistent with having been involved in a recent physical altercation.

Immediately after the report by Officer Tatum, Officer Revoyda Dodd, CO IV, while calling in her count, notified me of similar behavior of offender James and was provided the same instructions.

Officer Edwards and Officer Dodd were instructed to notify me if the situation required an immediate response.

During this time, Sergeant Tully Flowers was also assisting with the unit count, conducting the same verifications of count sheets for the East End of the facility.

At 0035 hours, the unit count cleared.  Upon exiting the Building Lieutenant's Office, I encountered the offender that was involved in the physical altercation on A1-Building and began questioning him regarding the circumstances and identity of the other assailant involved in the physical altercation.  I then proceeded to A1-Building to investigate further and identify the other involved offender.  In doing so, I forgot about the previous report involving offender James on B1-Building.

At approximately 0235 hours, the other participant in the physical altercation was identified and was being escorted from the building when Lieutenant Toby Whitfield, via radio, alerted staff that a wheelchair was needed on B1-Building.  Along with Sgt. Flowers, I proceeded to B1-Building where,

upon arrival, I found offender James in the dayroom area of B3-Dorm standing next to the benches. Upon entering B3-Dorm and making contact with offender James, he kneeled to his knees. Officer Ronald Burt, CO V entered the building followed shortly afterwards by Officer Torrance Stephens, CO V and Officer Kenneth Mangan, CO IV with a wheelchair. Officer Burt and Officer Stephens assisted offender James into the wheelchair and he was moved to the Gurney Unit Medical Department.

Once in the medical department, Sgt. Flowers contacted on-call medical staff at the Beto Unit, due to no on-site medical. Sgt. Flowers stated that he was instructed by Licensed Vocational Nurse Linda McKnight to obtain the offenders vitals. Officer Burt, on Sgt. Flower's instructions, obtained the vitals and reported a temperature of 108 and blood pressure of 89/57. Sgt. Flowers then stated that LVN McKnight had requested that offender James be transported to her location for examination. As offender James was being prepared for transport, he bent over in the wheelchair and became unresponsive. Lt. Whitfield was immediately notified who immediately requested that Central Control request Emergency Medical Services by 9-1-1. Lt. Whitfield reported to the medical department and instructed me to place offender James on a gurney in the emergency room. Officer Stephens moved offender James, by pushing the wheelchair, into the emergency room where I, Lt. Whitfield, and Officer Vincent McKnight, CO V lifted the offender from the wheelchair and placed him on the gurney.

While offender James was on the gurney, his eyes were open but he appeared disoriented. He was taking shallow breaths and, upon checking, Lt. Whitfield indicated that offender James did have a pulse. As a result, Cardiopulmonary Resuscitation was not initiated and offender James was closely monitored until arrival of EMS.

Lt. Whitfield instructed me to notify Warden Dennis Miller of the off-unit transport by EMS; Warden Miller was notified at 0305 hours.

At approximately 0320 hours, EMS arrived and began evaluating offender James' condition. After connecting their equipment which required affixing adhesive pads to offender James' upper body, the EMS requested assistance in moving offender James to their gurney, with Lt. Whitfield assisting in that process. EMS personnel then moved offender James to the ambulance where he was placed inside. One of the EMS personnel requested assistance from an officer. Officer McKnight entered the ambulance and was provided a breathing bag by EMS personnel and, upon instruction, began pumping air into offender James lungs. EMS personnel would stop Officer McKnight's actions in increments so that a tube could be inserted into his mouth, to no avail.

The ambulance remained at the back door of the medical department for several minutes. At 0338 hours, the ambulance departs the unit.

Lt. Whitfield instructed me, along with Officer Burt, to go to Palestine Regional Medical Center ("PRMC") via unit van. At 0405 hours, we arrived at PRMC, where offender James was placed in Exam Room #1. PRMC medical staff began life saving measures and at 0410 hours, report offender James has a pulse.

At 0416 hours, Doctor Heidi Knowles pronounced offender James deceased. I immediately notified Lt. Whitfield and am instructed to remain with the remains until I was properly relieved.

August 13, 2011
Lt. Toby Whitfield
I-1 1520-08-11

At 0500 hours, Precinct #4 Justice of the Peace James Todd arrived and began his documentation. At 0511 hours, Investigator Mark Owens of the Office of the Inspector General arrived and began his report and obtained photographs. They leave shortly after their arrival.

At approximately 0530 hours, Officer McKnight and Officer Burt depart PRMC enroute back to the facility.

I remained with the remains until Officer John Crawford, CO V relieved me at 0700 hours, at which time; I obtained a total of six (6) digital photos of the offender.

I then returned to the Gurney Unit to provide a statement of my actions in this incident.

Matthew Seda, Sergeant

Texas Department of Criminal Justice
### CORRECTIONAL INSTITUTIONS DIVISION

# Inter-Office Communications

**To**    Lieutenant Toby Whitfield          **Date**    August 13, 2011

**From**   Glorie Harris COIV  *G.H. COIV*   **Subject**   Offender James, Kenneth #1726849

At approximately 0150 hours I, Officer Glorie Harris COIV arrived on B1-building to assume the position of control picket officer. Officer Doris Edwards COV informed me that Offender James, Kenneth #1726849 had been urinating on the floor by the bunk and restroom area but not in the urinal. At approximately 0200 hours, I assisted with the 0200hour count of the offenders on B1-building. When I was in B3-dorm counting, offender James was in his assigned bunk (B3-23). At approximately 0235, I noticed offender James standing in the dayroom, holding on to the bench. I entered B3-dormitory and attempted to ask the offender why he was in the dayroom and not in his bunk. He did not respond to the question. He just stood there with his head down and was swaying back and forth.

At approximately 0240 hours, I notified Lieutenant Toby Whitfield, via handheld radio that there was something wrong with the offender in B3-23 bunk. Sergeant Matthew Seda and Sergeant Tully Flowers responded to the call and came to the dorm. Sergeant Flowers called via hand held radio for a wheelchair. While waiting for the wheel chair to arrive, Offender James kneeled down on his knees and maintained a tight grasp to the bench. Officers' Ronald Burt COV, Kenneth Mangan COIV and Torrance Stephens COV arrived on the dorm with a wheelchair. Officers Stephens and Burt assisted the offender into the wheelchair as Officer Mangan held the wheel chair steady. Offender James was then escorted out of the dorm and then out of the building. I then resumed my normal duties.


Glorie Harris, COIV
Joe F. Gurney Transfer Facility

*Glorie Harris COIV*


**SO-4**

Texas Department of Criminal Justice
### CORRECTIONAL INSTITUTIONS DIVISION

# Inter-Office Communications

**To**   Lieutenant Toby Whitfield      **Date**   August 13, 2011

**From**   Joshua Milton, COIII      **Subject**   Offender James, Kenneth #1726849

On August 13, 2011 at approximately 0245 hours, I was informed by Lieutenant Toby Whitfield to assume the position at the back gate because of a medical transport to the Beto Unit.  When I got to the back gate, Officer Kenneth Mangan COIV was on the outside of the perimeter in a state van.  While letting him into the back gate, Lieutenant Whitfield came over the radio and requested central control to call 911 for an ambulance.  Officer Mangan backed the van out of the sallyport and secured it on the outside of the perimeter.

At approximately 0320 hours, the ambulance entered the back gate and proceeded to the back door of the medical department.  A short while later, I was informed that an air ambulance was enroute.  Tennessee Colony Volunteer Fire Department arrived and set up a perimeter for landing the air ambulance.

At approximately 0340 hours, the ambulance exits the back gate and turns right and leaves the facility.  Sergeant Matthew Seda and Officer Ronald Burt COV exit the back gate and get in the state van and follow the ambulance. The Volunteer Fire Department then leaves the unit.

I secure the back gate and return inside of the unit.

Joshua Milton, COIII
Joe F. Gurney Transfer Facility

**SO-4**

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

# Inter-Office Communications

**To**      Lieutenant Toby Whitfield          **Date**      August 13, 2011

**From**    John Crawford COV                  **Subject**   As Stated


On August 13, 2011 at 0700 hours, I arrived at Palestine Regional Medical Center to relieve Sergeant Matthew Seda and hold security over the body of Offender James, Kenneth Wayne 1726849.  At 1005 hours, Mr. Dickie Syers from Carnes Funeral Home arrived, took possession of Offender James' body.  At this time I called the Off-Site Medical Transport Command Center via state cell phone and informed them that Offender James' body was being transported by Mr. Dickie Syers, who was an employee with Carnes Funeral Home.  Then, I returned to the unit and resumed my normal duties.

**SO-4**

Texas Department of Criminal Justice
### CORRECTIONAL INSTITUTIONS DIVISION
# Inter-Office Communications

**To**    Lieutenant Toby Whitfield       **Date**    August 13, 2011

**From**    Tully Flowers, Sergeant       **Subject**    Offender James, Kenneth #1726849

On August 13, 2011 at approximately 0240 hours I, Sergeant Tully Flowers was assisting Sergeant Matthew Seda with an investigation of a physical altercation on A1-building. The participant in the physical altercation was identified and I was leaving A1-building when Lieutenant Toby Whitfield requested a wheelchair be taken to B1-building due to an ill offender.

Sergeant Matthew Seda and myself arrived on B1-building few minutes later, offender James was in the dayroom of B3-dormitory standing next to the benches. We entered the dormitory and Sergeant Seda attempted to talk to the offender but the offender just looked at him. The offender then kneeled down on his knees and was holding onto the bench with one hand. The offender seemed to be disorientated. Officer Ronald Burt COV, Officer Torrance Stephens COV and Officer Kenneth Mangan COIV entered the building with a wheelchair a few minutes later. Officers Burt and Stephens assisted the offender into the wheelchair as Officer Mangan held it steady.

Officer Stephens then transported the offender in the wheelchair to the unit medical department as I followed. Once in the medical department I contacted the Beto unit and talked with Registered Nurse McKnight, which instructed me to get the offenders temperature and blood pressure and then transport the offender to the Beto unit. Officer Burt took the offender's blood pressure, which it was 89/57 and his temp 108. While the offender was being prepared for transport, he bent over in the wheelchair and became unresponsive. Sergeant Seda notified Lt. Whitfield at which time he notified central control to call 911 and request emergency service. Lt. Whitfield then entered the medical department and instructed Sergeant Seda to place the offender on the gurney in the emergency room. Officer Stephens move to offender into the emergency room. Sergeant Seda, Lt. Whitfield and Officer Vincent McKnight COV moved the offender from the wheelchair to the gurney.

While the offender was on the gurney, the offender appeared to be having difficulty breathing and looked disorientated. Lt. Whitfield checked the offender's wrist and stated that he could feel a pulse.

At approximately 0315, I went to the back gate to prepare for the arrival of the ambulance and assist Officer Joshua Milton COIII with expediting it into the facility. At 0319 hours, the ambulance arrives at the back gate and enters the facility. A few minutes later, Lt. Whitfield advises central control that an air-ambulance is enroute and to notify local fire department.

A several minutes later, Tennessee Colony Fire Department arrives at the backside of the unit and prepares for the air-ambulances arrival.

At 0338 hours, the ambulance enters the back gate and departs the unit. A member of the volunteer fire department informs me that the offender coded and was being transported to Palestine Regional Medical Center.

Sergeant Seda exited the back gate and got into the van with Officer Burt and followed the ambulance off the unit.

I then returned to the lieutenant's office where I was informed shortly afterwards that offender James had passed away.

At 0645 hours, I notified Anderson County Sheriff's Department that offender James body was at PRMC. At 0655 I notified the Off-Site Medical Transport command center of the deceased offender.

*Tully Flowers*
Tully Flowers, Sergeant
Joe F. Gurney Transfer Facility

**SO-4**               1

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION
# Inter-Office Communications

**To**      Warden Dennis Miller                    **Date**      August 13, 2011

**From**    Toby Whitfield, Lieutenant              **Subject**   Offender James, Kenneth #1726849

On August 13, 2011 at approximately 0240 hours I, Lieutenant Toby Whitfield was in the lieutenant's office when I received a call from Officer Glorie Harris COIV. She informed me that offender James, Kenneth #1726849 was in B3-dormitory that was in the dayroom urinating on himself and couldn't stand up. Via handheld radio, I requested a wheelchair to be taken to B3-dormitory.

Sergeant Tully Flowers and Sergeant Matthew Seda informed me via radio that they were responding to the dorm. At 0248 hours, Sergeant Seda informed me that Registered Nurse McKnight at the Beto Unit wanted the offender be transported to the Beto Unit for evaluation. He also informed me that offender James blood pressure was 89/57 and his temperature was 108. At this time I informed him that I was calling for an ambulance. Via radio, I notified central control to call 911 and request emergency services. I then proceeded to the unit medical department.

When I arrived at the medical department, offender James was leaned over in the wheelchair. I informed Sergeant Seda to move the offender into the emergency room. Officer Torrance Stephens COV wheeled the offender into the emergency room. Sergeant Seda and Officer Vincent McKnight COV assisted me moving the offender from the wheelchair to the gurney.

We placed the offender on his side on the gurney. I could tell that the offender was having difficulty with breathing and was disorientated. I checked the offender's wrist for a pulse and felt one.

I notified Officer Joshua Milton COIII to respond to the back gate to expedite the ambulance that was enroute. At 0319 hours, the ambulance entered the compound and pulled up to the back door of the medical department. When the paramedics entered the back door, I briefed them on the situation. The paramedics entered the emergency room and begin getting the offender's vital signs.

At 0323 hours, 911- operator Sarah Wardell called and informed me that an air-ambulance would enroute to the Gurney Unit. I then notified Warden Miller. I then notified central control via radio to notify the local Volunteer Fire Department of the air-ambulance that was enroute. I also notified the Beto Unit.

I returned to the emergency room and one of the paramedics asked if he could get some assistance moving the offender over to their gurney. I stepped to the head end of the gurney and assisted them moving the offender to their gurney.

At 0328 hours, the offender was moved from the emergency room to the ambulance at the back door of the medical department. One of the paramedics asked for an officer to assist them. I instructed Officer McKnight to get into the ambulance and assist. Officer McKnight was instructed by one of the paramedics to use the bag to pump air into the offender's lungs. Officer McKnight began utilizing the bag. Several times the paramedic stopped him and attempted to place a tube down the offender's throat.

At 0336 hours I was notified that the air-ambulance was five minutes out. At 0338 hours, one of the paramedics exited the back of the ambulance and stated that they had to leave now due to the offender coding. The ambulance, with Officer McKnight in the back pulled through the back gate and departed the unit.

I informed Sergeant Seda and Officer Burt to follow the ambulance to Palestine Regional Medical Center. Sergeant Seda and Officer Burt got into the van that was at the back gate and followed behind the ambulance.

**SO-4**                              1

Sergeant Flowers, who was at the back gate, spoke with one of the volunteer fireman who advised him that the air-ambulance was cancelled due to the offender code bluing, he then advised me what he was informed of.

I then called Warden Miller and advised him that the air-ambulance had been cancelled due to the offender coding.

At 0410 hours, Sergeant Seda call updated me on the offender condition.

At 0417 hours, Sergeant Seda called and reported that at 0416 hours, Heidi Knowles M.D. pronounced offender James deceased.  I immediately notified Warden Dennis Miller of the offender's death and passed along all the information that I had obtained at that time.

At 0435 hours, I notified Mark Owens of the Office of Inspector General.

At 0440 hours, Captain Michael Lumpkins was notified
At 0505 hours, I notified Jacob Little at the Carnes Funeral Home was notified of the deceased.

At 0530 hours, I notified Chaplain Thomas Taylor of the offender's death.

At 0630 hours, I assist Chaplain Taylor locate the next-of-kin, his mother Mary James.

At 0700 hours, Sergeant Seda notifies me that Officer John Crawford COV has arrived at PRMC to relieve him.  I instructed him to notify the Off-Site Medical Transport command center of the change.

At 1005 hours, Officer Crawford advised me that Mr. Dickie Syers of Carnes funeral home was at the hospital and was taking possession of offender James body.


Toby Whitfield, Lieutenant
Joe F. Gurney Transfer Facility


**SO-4**                                                                2

Texas Department of Criminal Justice
**CORRECTIONAL INSTITUTIONS DIVISION**

# Inter-Office Communications

| **To** | Lieutenant Toby Whitfield | **Date** | August 13, 2011 |
|---|---|---|---|
| **From** | Vincent McKnight COV | **Subject** | Offender James, Kenneth #1726849 |

On August 13, 2011 at approximately 0250 hours, I was instructed to go to the medical department by Lieutenant Toby Whitfield.  Offender James, Kenneth #1726849 was in a wheelchair in the medical department.  Lieutenant Whitfield instructed me to assist him and Sergeant Seda place the offender onto the gurney in the unit emergency room.  We removed the offender from the wheelchair and place him on the gurney.

While the offender was on the gurney, he appeared to be disorientated and having difficulty breathing.  Lt. Whitfield checked the offender for a pulse on his wrist.  A short while later, paramedics from Palestine Regional Medical Center entered the ER and began taking vital on the offender.  The paramedics asked for assistance to move the offender from the ER gurney to the ambulance gurney.  Lt. Whitfield assisted the paramedics move the offender onto their gurney.  The offender was then moved to the ambulance.  The paramedics asked Lt. Whitfield for an officer to assist them.  Lt. Whitfield instructed me to get into the ambulance and assist.  The paramedic had me use an air bag with a mouth peace to attempt to give the offender air into his lungs.  Several times the paramedics had me stop so they could attempt to place a breathing tube down his throat.

After several minutes, one of the paramedics stated that the offender was code blue and that they needed to get to the hospital immediately.  While still using the air bag with the mask, one of the paramedics got out and began to depart to the hospital.  When we arrived at the hospital, the offender was taken to exam room #1 and medical staff at the emergency room began performing life saving measures and I was no longer utilized in the procedures.

I stayed in the area and maintained security.  Officer Burt and Sgt. Seda were also present when we arrived at the emergency room.

At 0416 hours, Heidi Knowles M.D. informed Sergeant Seda that the offender was pronounced deceased.

Justice of the Peace James Todd and Mark Owens of the Office of Inspector General arrived at approximately 0510 hours.

I was relieved at approximately 0530 hours and returned to the facility.

Vincent McKnight, COV
Joe F. Gurney Transfer Facility

McKnight CC 5

**SO-4**

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

# Inter-Office Communications

**To**     Lieutenant Toby Whitfield            **Date**     August 13, 2011

**From**   Kenneth Mangan COV               **Subject**  Offender James, Kenneth #1726849

On August 13, 2011 at approximately 0240 hours, a call for a wheelchair to be brought to B1-building by Lieutenant Toby Whitfield came over the radio. I was on the unit's main hallway and I observed Officer Torrance Stephens COV coming down the hall with a wheelchair. I joined up with Officer Stephens and together we proceeded to B1-building 3 dorm. When we arrived in the dorm, offender James, Kenneth #1726849 was on his knees. I provided assistance to get him in the wheelchair by holding the chair steady.

Once the offender was placed in the wheelchair, Sergeant Tully Flowers informed me to go to inmate records and be on standby for a transport. I proceeded to inmate records and retrieved the offenders travel card and acquired a restraint bag and a state van. I proceeded to the back gate of the facility. While entering the back gate, I was informed that an ambulance was enroute to the unit to transport the offender to Palestine Regional Medical Center. I exited the back gate and secured the vehicle. I passed the restraint bag and travel card off to Sergeant Flowers and I remained outside the perimeter at the back gate to assist with the back gate procedures for getting the ambulance into the facility.

The ambulance arrived and I assisted opening the gates. The ambulance entered the facility and proceeded to the back door of the medical department. A short while later, the ambulance exited the facility and I was informed that Officer Burt and Sergeant Seda would be following the ambulance to Palestine Regional Medical Center. I gave Officer Burt the van the key and they departed the facility. I then returned to my normal duties.

Kenneth Mangan, COIV
Joe F. Gurney Transfer Facility

*Kenneth L. Mangan*

**SO-4**

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

# Inter-Office Communications

**To**   Lieutenant Toby Whitfield          **Date**   August 13, 2011

**From**   Ronald Burt COV          **Subject**   Offender James, Kenneth #1726849

At approximately 0240 hours on August 13, 2011 I, Officer Ronald Burt COV responded to a radio call from Lieutenant Toby Whitfield for assistance on B1-building.  When I arrived at the building, I observed Offender James, Kenneth 1726849 in the B3-dormitory dayroom.  He was standing up in the dayroom.  I stepped outside of the dorm to wait for Officer Torrance Stephens COV to respond with a wheelchair.  When I returned to the dormitory, Offender James was on his knees holding onto a bench.  When I entered he appeared to be delirious and incoherent.  Officer Stephens and myself assisted the offender into the wheelchair.  He was then escorted to the unit infirmary.

At this time the Beto Unit Medical Department was notified by Sergeant Tully Flowers and Registered Nurse McKnight instructed Sergeant Flowers to transport the offender to the Beto unit.  She then instructed him to check his vitals.  Lt. Whitfield was notified of the offender's vitals while we were preparing him for transport.  While preparing him for transport, the offender leaned over and became unresponsive.  His vitals were as follows: Blood Pressure - 89/57 and Temperature 108 degrees.  At that time Lieutenant Toby Whitfield was notified of the situation and had central control call 911.

Approximately twenty-five minutes later the ambulance from Palestine Regional Medical Center (PRMC) arrived and paramedics proceeded to administer aid to said offender.  I was informed that an air-ambulance was enroute and was instructed to get in the state van to go to the hospital.  The Tennessee Colony Volunteer Fire Department arrived and began setting up a perimeter for landing the air ambulance.  The ambulance exited the back gate and with the offender, paramedics and Officer Vincent McKnight COV.  Lt. Whitfield informed me that the air-ambulance was cancelled and I needed to follow the ambulance with Sgt. Matthew Seda.  The offender was then transported to PRMC and Sgt. Seda and myself followed in the unit van.  We arrived at approximately 0400 hours at PRMC.  The offender was placed in exam room #1.  I observed the medical staff of P.R.M.C. performing life saving measures on the offender.  Heidi Knowles (Medical Doctor) pronounced offender James deceased at 0416 hours.  Myself, Sgt. Seda and Officer McKnight then waited with the body.

The Office of Inspector General, Mr. Mark Owens and Judge Todd arrived at approximately 0510 hours and began filling out documentation on the offender.

I was relieved of duty at approximately 0530 hours and returned to the Unit.

Ronald Burt, COV
Joe F. Gurney Transfer Facility

**SO-4**

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

# Inter-Office Communications

**To**   Lieutenant Toby Whitfield          **Date**   August 13, 2011

**From**   Torrance Stephens COV          **Subject**   James, Kenneth #1726849


On August 13, 2011 at approximately 0240 hours, I (Officer Torrance Stephens COV) responded to a radio call for a wheelchair to be brought to B1-building by Lieutenant Toby Whitfield.  I reported to the unit medical department and retrieved a wheelchair.  I then proceeded to B1-building.

When I arrived at B1-building, I entered B3-dormitory to find Offender James, Kenneth #1726849 on his knees by the bench in the dayroom.  Sergeant Matthew Seda instructed me to assist the offender into the wheelchair. Officer Ronald Burt COV and I assisted the offender into the wheelchair. I then transported him to the infirmary.

Once at the unit infirmary, Sergeant Tully Flowers notified the Beto unit of the offender's condition.  Sergeant Flowers stated that the offender would be transported to the Beto unit by unit van.  Shortly afterwards, the offenders blood pressure and temperature was taken by Officer Burt.  While preparing the offender for transport, he leaned over in the chair and became unresponsive.  Lt. Whitfield then instructed me to move the offender into the unit emergency room.

Lt. Whitfield called central control via radio and request 911 to send an ambulance.  Offender James was moved from the wheelchair and placed on the gurney in the ER.  Several minutes later, the ambulance arrived and placed the offender on their gurney.  The paramedics worked on the offender for a couple of minutes and then escorted him out the back door of the unit medical department.

I then returned to my normal duties.

Torrance Stephens, COV
Joe F. Gurney Transfer Facility

*Torrance Stephens* COV

SO-4

Texas Department of Criminal Justice
**CORRECTIONAL INSTITUTIONS DIVISION**

# Inter-Office Communications

**To**     Lieutenant Toby Whitfield          **Date**     August 13, 2011

**From**   D. Schulle CO IV                   **Subject**   As Stated

On August 13, 2011 at approximately 0300 hours, Lieutenant Toby Whitfield ordered me via handheld radio to get some line paper and meet him in the unit infirmary. Upon my arrival in the unit infirmary I was instructed to take notes creating a timeline of the medical transport for Offender James, Kenneth Wayne 1726849, I was told to make sure that if I could not see the offender that I needed to ask what was happening so that I could accurately keep notes so that when transcribing them later that I would be able to write out in detail what had transpired. Lieutenant Whitfield then handed me the rough start to the timeline that he had started stating that because the offenders' health was dropping quickly by the looks of things that he was going to be needed. I made the entry about Sergeant M. Seda notifying Warden Dennis Miller of the events that were taking place as of current and that he would be notified of any changes. I notated all the events that took place prior to the ambulance's arrival up until the ambulance's departure from the unit; to include when the ambulance enter the highway gate and then the back gate, when the EMT personnel began asking Lieutenant Whitfield what the vitals were when the offender was first brought into the infirmary, when the EMT personnel attached the AED shock pads to the offender in case it was needed in order to get a heart beat, but never administered an electric shock while inside the unit infirmary. I wrote down that the 911 operator called back to notify Lieutenant Whitfield that an Air Ambulance would be en route, to which Lieutenant Whitfield called and notified the central control officer to activate Life Flight procedures and to begin notifying to appropriate people at approximately 03:23. I wrote down when the EMT personnel ask for assistance in lifting the offender and then placing him on their gurney so as to transport him to Palestine Regional Medical Center. When the EMT personnel got the offender loaded into the back of the ambulance and requested additional help Officer V. McKnight got into the ambulance and was told to take the air bag and administer breaths for the offender which was at approximately 03:30. The EMT personnel started an IV at 03:31. At 03:32 Tennessee Colony Volunteer Fire Department and Beto are notified that there will be an air ambulance en route. EMT personnel attempt at approximately 03:32 to use an intubations tube to be better able to administer CPR and aid the offender in breathing. At 03:33 Tennessee Colony Volunteer Fire Department arrives at the back gate in order to set up a safe perimeter for the Air Ambulance to land safely. Lieutenant Whitfield is notified via the central control officer that the ETA for the Air Ambulance is five minutes out from the unit at 03:36. EMT personnel and Officer McKnight head out the back gate in order to be ready for when the Life Flight helicopter arrived at 03:38. At 03:41 EMT personnel notified that the offender has Coded Blue and they need to be en route to the hospital immediately. A Tennessee Colony Volunteer Fire Department tells Sgt. Flowers that the air ambulance has been cancelled and Sgt. Flowers notifies Lt. Whitfield at 03:42. At 03:45 Sgt. Seda and Officer Burt are en route behind the ambulance in the chase vehicle to Palestine Regional Medical Center. Lt. Whitfield tells me that even though the offender has let the unit that if any calls come in from Sgt. Seda that I am to make sure to document with time and in detail. Sgt. Seda calls Lt. Whitfield at 04:10 and notifies that the medical personnel at the hospital are still attempting to give life saving measures. At 04:16 Sgt. Seda calls Lt. Whitfield and notifies that Dr. Heidi Knowles has given the official notice of death for Offender James, Kenneth Wayne 1726849. This is the last entry that I made.

*Deborah Schulle* ── CO IV

**SO-4**



Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

# Inter-Office Communications

| **To** | Toby Whitfield, Lieutenant | **Date** | August 17, 2011 |
|---|---|---|---|
| | Joe F. Gurney Transfer Facility | | |
| **From** | Tully Flowers, Sergeant | **Subject** | I-11520-08-11 |
| | Joe F. Gurney Transfer Facility | | |

On August 13, 2011, during my response to the medical emergency of offender James, Kenneth #1726849 I was asked by LVN Linda McKnight to get the vitals for the offender. In an effort to aid her as she attempted to assess offender James' condition, I instructed Officer Ronald Burt, CO V to obtain those vitals and reported them to her.

At the time that this occurred, my only intent was to aid medical staff. It has been explained to me that I am not nor was any of my staff trained on taking vitals or operating the equipment in the medical department. This will not occur again.

Tully Flowers, Sergeant

# Offender Witness Statements

- Inmate Tracking Roster (August 12, 2011)

| Name | Number | Housing |
|------|--------|---------|
| | | |
| Aguilar, Amado | 1725729 | B3-11 |
| Aguilar, Carlos | 1726403 | B3-54 |
| Balderramos, Joe | 680549 | B3-43 |
| Berkley, Rickey | 1725369 | B3-24 |
| Berkley, Rickey | 1725369 | B3-24 |
| Bishop, Charles | 1726233 | B3-41 |
| Bravo, Mauricio | 1726235 | B3-45 |
| Brewer, Chasen | 1725370 | B3-34 |
| Brown, John | 1726236 | B3-50 |
| Brown, William | 1727462 | B3-14 |
| Butler, Avalon | 1726237 | B3-51 |
| Calicio, Christopher | 1726238 | B3-49 |
| Campos, Jeffrey | 1726239 | B3-52 |
| Caswell, Alton | 1726828 | B3-37 |
| Chanthavong, Dpisth | 1727464 | B3-28 |
| Colson, Jason | 1704593 | B3-40 |
| Cuellar, Ferman | 1709727 | B3-47 |
| Davis, William | 1726242 | B3-53 |
| Dawson, Anthony | 1726272 | B3-46 |
| Dean, Lloyd | 1726841 | B3-01 |
| Fresse, Herbert | 1144502 | B3-22 |
| Gage, Thomas | 1726812 | B3-30 |
| Gordon, Courtney | 1727466 | B3-24 |
| Graciano, Madera | 1724484 | B3-16 |
| Hamilton, David | 1723338 | B3-04 |
| Hanlon, Andy | 1726844 | B3-05 |
| Hernandez, Johnny | 1726846 | B3-31 |
| Hull, Carlos | 1726273 | B3-44 |
| Hutchins, Joseph | 1726848 | B3-33 |
| Jefferson, Gary Lynn | 1726850 | B3-19 |
| Jennings, Terrance | 1725373 | B3-36 |
| Jewell, Tommy | 1726830 | B3-39 |
| Johnson, Carnease | 1726881 | B3-12 |
| Jones, Jimmy | 1725735 | B3-17 |
| Kuyjebdall, Rodney | 1726852 | B3-26 |
| Lara, Rafael | 1726853 | B3-38 |
| Markham, Willie | 1727448 | B3-32 |
| Martinez, Gerardo | 1622528 | B3-03 |
| Moore, Bradford | 1725730 | B3-13 |
| Moore, Marcus | 1725738 | B3-29 |
| Newsom, Clint | 1726834 | B3-06 |
| Pena, Ryan | 1725737 | B3-27 |
| Petty, Ryan | 1600592 | B3-02 |

I-11520-08-11
Offender Witness Statements
Page 2 of 2

| | | |
|---|---|---|
| Pickens, Derrick | 1725363 | B3-18 |
| Pruitt, Robert | 1726822 | B3-08 |
| Richardson, Eddie | 1724493 | B3-09 |
| Rios, Albert | 1564447 | B3-20 |
| Sanders, Casey | 879236 | B3-21 |
| Smith, Kenneth | 1725732 | B3-15 |
| Syrus, Anthony | 1725736 | B3-25 |
| Tarpeh, Konkun | 1725366 | B3-10 |
| Tiller, Michael | 1727480 | B3-35 |

*Dodd*
*OOD1-52  8·13·11*

```
UNIT: GURNEY                    T.D.C.J. - INSTITUTIONAL DIVISION                    FMT#
                    B3         RON INMATE LOCATOR REPORT                          09/13/2?
                               2,060                                              18:??

NAME                    TDC#        HOUSING     R CU HT  WT  AGE JOB DESCRIPTION       S P O I
```

| NAME | TDC# | HOUSING | R | CU | HT | WT | AGE | JOB DESCRIPTION | S | P | O | I |
|------|------|---------|---|----|----|----|----|-----------------|---|---|---|---|
| DEAN,LLOYD TRENT | 01726841 | B3-001B | | U | 5-10 | 152 | 45 | TRANSIENT PEND DIAG | P | | | |
| PETTY,RYAN DON | 01600592 | B3-002T | | W G2 | 6-00 | 230 | 23 | FIELD SQ 01 | | | | |
| MARTINEZ,GERARDO RUB | 01622528 | B3-003B | | H DP | 5-02 | 138 | 29 | TRANSIENT PEND DIAG | P | | | |
| HAMILTON,DAVID | 01221338 | B3-004T | | B G2 | 5-08 | 152 | 34 | FIELD SQ 01 | | | | |
| HARLOU,ANDY | 01726844 | B3-005B | | U | 5-10 | 155 | 48 | TRANSIENT PEND DIAG | P | | | |
| NEWSOM,CLINTON LAMAR | 01726834 | B3-006T | | U | 5-10 | 135 | 36 | TRANSIENT PEND DIAG | P | | | |
| PULLT,ROBERT JOSEPH | 01726822 | B3-008T | | U | 5-09 | 250 | 39 | TRANSIENT PEND DIAG | P | | | |
| RICHARDSON,EDDIE RAY | 01724493 | B3-009B | | B G2 | 5-10 | 200 | 48 | TRANSIENT PEND DIAG | P | | | |
| YAPPEN,RONKUN DEVONT | 01725366 | B3-010T | | B | 6-02 | 191 | 19 | TRANSIENT PEND DIAG | P | | | |
| AGUILAR,AMADO JR | 01725729 | B3-011B | | H | 5-07 | 162 | 32 | TRANSIENT PEND DIAG | P | | | |
| JOHNSON,CARNEASE LAT | 01726851 | B3-012T | | B | 5-10 | 313 | 27 | TRANSIENT PEND DIAG | P | | | |
| MOORE,BRADFORD ALLEN | 01725730 | B3-013B | | U | 5-11 | 188 | 44 | TRANSIENT PEND DIAG | P | | | |
| SMITH,KENNETH EUGENE | 01725733 | B3-015B | | B | 5-11 | 184 | 37 | TRANSIENT PEND DIAG | P | | | |
| GRACIANO,MADERA ERME | 01725858 | B3-016T | | H NR | 5-04 | 156 | 31 | TRANSIENT PEND INITIA | | | | |
| JONES,JIMMY DON | 01725735 | B3-017B | | W | 5-06 | 176 | 40 | TRANSIENT PEND DIAG | P | | | |
| PICKENS,DERRICK LAMO | 01725363 | B3-018T | | B | 5-09 | 180 | 41 | TRANSIENT PEND DIAG | P | | | |
| JEFFERSON,GARY LYNN | 01726850 | B3-019B | | B | 5-07 | 190 | 48 | TRANSIENT PEND DIAG | P | | | |
| RIOS,ALBERT PAUL | 01544442 | B3-020T | | H G2 | 5-09 | 220 | 25 | TRANSIENT PEND DIAG | P | | | |
| SANDERS,CASEY DAJUAN | 00829336 | B3-021B | | B G3 | 6-02 | 190 | 32 | TRANSIENT PEND DIAG | P | | | |
| FESSE,HERBERT JASON | 01344502 | B3-022T | | H TT | 5-05 | 199 | 36 | TRANSIENT PEND DIAG | P | | | |
| JAMES,KENNETH WAYNE | 01726849 | B3-023B | | B | 5-10 | 268 | 52 | TRANSIENT PEND DIAG | P | | | |
| BERKLEY,RICKEY JR | 01735969 | B3-024T | | B | 5-09 | 206 | 39 | TRANSIENT PEND DIAG | P | | | |
| CYRUS,ANTHONY JAMES | 01725736 | B3-025B | | U | 5-06 | 211 | 33 | TRANSIENT PEND DIAG | P | | | |
| KUYKENDALL,RODNEY DE | 01726952 | B3-026T | | B | 6-00 | 175 | 28 | TRANSIENT PEND DIAG | P | | | |
| PENA,RYAN KEITH | 01725737 | B3-027B | | H | 6-00 | 232 | 21 | TRANSIENT PEND DIAG | P | | | |
| MOORE,MARCUS ARNELL | 01725738 | B3-029B | | B | 5-09 | 234 | 38 | TRANSIENT PEND DIAG | P | | | |
| GASE,THOMAS ALLEN | 01726812 | B3-030T | | U | 0-00 | 00 | 41 | TRANSIENT PEND DIAG | P | | | |
| HERNANDEZ,JOHNNY CAS | 01726846 | B3-031B | | H | 5-06 | 200 | 52 | TRANSIENT PEND DIAG | P | | | |
| HUTCHINS,JOSEPH DEAN | 01726848 | B3-031B | | U | 6-00 | 174 | 48 | TRANSIENT PEND DIAG | P | | | |
| BREWER,CHASEN LEE | 01725370 | B3-034T | | B | 5-11 | 200 | 34 | TRANSIENT PEND DIAG | P | | | |
| JENNINGS,TERRANCE NE | 01725373 | B3-036T | | B | 5-05 | 175 | 21 | TRANSIENT PEND DIAG | P | | | |
| CRASWELL,ALTON LLOYD | 01726828 | B3-037B | | U | 5-09 | 175 | 40 | TRANSIENT PEND DIAG | P | | | |
| CARA,RAFAEL ALBERTO | 01726853 | B3-038T | | H | 5-07 | 188 | 28 | TRANSIENT PEND DIAG | P | | | |
| JEMELL,TOMMY WAYNE | 01726830 | B3-039B | | U | 5-08 | 145 | 49 | TRANSIENT PEND DIAG | P | | | |
| COLSON,JASON MICHAEL | 01704596 | B3-040T | | H G2 | 5-08 | 168 | 26 | TRANSIENT PEND DIAG | P | | | |
| BALDERRAMOS,JOE | 00680549 | B3-043B | | H G3 | 5-08 | 194 | 49 | TRANSIENT PEND DIAG | P | | | |
| BELL,CARLOS SANTANA | 01726273 | B3-044T | | B | 6-04 | 252 | 27 | TRANSIENT PEND DIAG | P | | | |
| BRAVO,MAURICIO | 01736335 | B3-045B | | U | 5-03 | 186 | 43 | TRANSIENT PEND DIAG | P | | | |
| DAWSON,ANTHONY LEROY | 01726272 | B3-046T | | B | 5-07 | 150 | 22 | TRANSIENT PEND DIAG | P | | | |
| CUELLAR,FERMIN | 01709232 | B3-047B | | H G2 | 5-04 | 124 | 31 | FIELD SQ 01 | | | | |
| BISHOP,CHARLES *(Medd)* | 21726333 | B3-04?T | | B | 5-10 | 154 | 41 | TRANSIENT PEND DIAG | P | | | |
| FALTO,CHRISTOPHER L | 01726238 | B3-049B | | B | 5-07 | 190 | 34 | TRANSIENT PEND DIAG | P | | | |
| BROWN,JOHN | 01726236 | B3-050T | | B | 6-01 | 196 | 27 | TRANSIENT PEND DIAG | P | | | |
| MILLER,AVALON MARTIN | 01726232 | B3-051B | | B | 5-08 | 191 | 52 | TRANSIENT PEND DIAG | P | | | |
| CAMPOS,JEFFREY | 01726239 | B3-052T | | H | 5-04 | 193 | 33 | TRANSIENT PEND DIAG | P | | | |
| DAVIS,WILLIAM J | 01726242 | B3-053B | | B | 6-00 | 238 | 52 | TRANSIENT PEND DIAG | P | | | |
| AGUILAR,CARLOS RUIZ | 01726241 | B3-05?T | | H | 5-02 | 144 | 27 | TRANSIENT PEND DIAG | P | | | |

*E  B3-01*

*Brown William 1722462  B3-14₈*
*CHANTHAVONE Aphetha 1727464 B3-2₈*
*Markham III Willie 1727448  B3 32_*
*Tiller Michael 172748V  B3 33*
*Bishop Charles 172633  B3 41*
*                              B3 42*

*E  B3 48*

I Dident see anything + Was asleep.

Alton Casnell #01726828
B-3-37

Katael A Lara          1726853      B-3-38      8-13-4

I was ~~could~~ asleep I didedt
see anything


Y Rafael Lara

I Tommy Jewell didnt see any
thing MY TDC# 1726830 bonk 39

I Jason colson #704596 was Asleep. B3-40

I Charles Bishop Buck 41. TDC# 1726233
Did not See anything I was sleep

I was asleep didn't see
any thing  Joe Balberramos
680549 #bunk 43

B344
Carlos, Hull   1726273
"I Whip a Seed"
a I Whis "N Bed"

Mauricio Bravo  1726235 - R3-45
I Did Not See enyting

I woke up and seen the man grabbing on the bench in the day room after a few minutes he was taken out the dorm in a wheelchair.

Fermin Cuellar III        1709727    /B3.47

8.13.11

Lloyd Dean B3-01   # 1726841

To Lt Whitfield,

I Was asleep and didn't Know anything happened.

Willie Markham III     1727448    32
I Was sleep

Christopher Collins #1726238          B-3-49                          8/12/11

Offender James kept complaining about being hot offender in bunk 24 pressed the button 3 different times each time the officers told the offender from bunk 24 that they needed to just watch over him during count time officer Dodd laughed when offender from bunk 24 told her that offender James had just passed on a towel and was trippin she just asked him to show her his I.D. since it was count time once he tried to give her his I.D. she looked at it and kept walking Offender James kept saying that he was hot and it wasn't enough air circulation his first day in the tank he passed out and medical had to be called to wheelchair him to the infirmary he came back and said that he didn't leave his medication that the heat with such lack of air circulation was gonna be a constant problem Tonight (8-12-11) offender from bunk 24 kept trying to get him help

                                                              Collins

To: Lt. Whitfield

Rickey Berkley Jr # 1725369 Bunk B-3 2

I didn't see anythang

Date: 8-16-2011

Name: Rickey Berkley Jr.     TDCJ #: 1725369     Bunk: B-3 24

On August 10, 2011 Kenneth James came into the tank and a few hours later needed medical attention & Rickey Berkley notified an officer don't know his name But he was white and about 5'7 170 pounds. He went to medical came back and was feeling fine.

On August 12, 2011 around 8:30 or 9:00 pm Mr James asked me to notify an officer that he was hurting and needed to go to medical Mrs. Edwards called medical and I come back in the tank to tell him medical said to drink water. I helped him with the water to get him to drink it he did. Then around 10:00 Kenneth James started urinating on himself and told me to notify the officers again which I did and they told me they couldn't do anything. So I cleaned up the urine. He was sweating, and eyes rolling back in is head Miss Dodd said she couldn't do anything about it. So I told him to get some rest and around 2:00 2:30 am Kenneth said he was hurting again so I told him to go sit on the bench and I went and told the officer Miss Harris and she got on the radio and they came and took him out.

Rickey Berkley Jr #1725369

# Chaplain Report

- Statement of Chaplain Thomas Taylor
- Offender Death Notification Worksheet
- Letter to Next-of-kin, Ms. Mary L. James
- Documentation of Family Contact:  Offender Death
- Death Notification E-Mail (ID #010819)

Texas Department of Criminal Justice
**INSTITUTIONAL DIVISION**

# Inter-Office Communications

To    WARDEN MILLER                              Date    **AUGUST 13, 2011**

                                                          Death of Offender
From    Chaplain Thomas Taylor                   Subject    James, Kenneth Wayne #1726849

On Saturday August 13, 2011, at 0416 hrs Gurney Unit Offender James, Kenneth Wayne #1726849 passed away at Palestine Regional Medical Center. Following is the scenario of events as they happened pertaining to me as the Chaplain on the Gurney Unit. On August 13, 2011 @ 0530 hrs I received a call from Leut. Whitfield informing me that offender James had died. I proceeded to Gurney Unit immediately and began a search for the next of kin. I was able to find a telephone number for offender James' mother at 0635 hrs. I reached Mary L. James (listed as offender James' mother) on the phone at 0640 hrs. I found that she had other relatives in the home with her so I informed her of her son's death and then spoke with her daughter as well. After offering my condolences and prayer, I asked if she knew if the family would claim the deceased for burial. She was unable to give me a firm answer at that time. I gave her the name and number of the Carnes Funeral Home and let her know that the family could contact them concerning burial arrangements. I received a call back from Mrs. James and her daughter at 1200 hrs. saying they would claim. I explained that after the autopsy was completed the body could be released to the funeral home of their choice for them to contact Carnes Funeral Home for more information. Any personal property is to be sent to the next of kin.

**The next of kin will be listed as:**
**Mrs. Mary L. James**
**2638 E. Auburn St.**
**Lubbock, TX  79903**
**Phone: (806) 747-3154**

SIGNATURE:

cc:    Major RAYFORD                          Northern Regional Medical Director
       Director of Chaplaincy                 Use of Force
       Director of Classification             Inmate Records
       Huntsville Unit/Connie Weich           Property Office
                                              File

## OFFENDER DEATH NOTIFICATION WORKSHEET

To: ___Warden Miller___          Date: ___August 13, 2011___

From: ___Chaplain Thomas Taylor___          Subject: ___Offender Death Notification___

1.  *Offender Information*
    Name: ___JAMES, KENNETH WAYNE___
    TDCJ#: ___1726849___          Unit Assigned: ___ND___
    Cause of Death: ___CARDIAC ARREST___
    Date of Death ___08/13/2011 @ 0416 HRS___
    Place of Death: (unit/hospital): ___PALESTINE REGIONAL MEDICAL CENTER___
    Certifying Physician/Justice of the Peace: ___DR. HEIDI KNOWLES / JAMES E. TODD___

2.  *Family Contact: In the event of natural causes of death under a physician or registered nurse's care, the priority family order should be spouse, adult children or guardians of minor children, parents and siblings.*
    Date: ___08/13/2011___          Time: ___0640 HRS___

    _____ Contacted listed next of kin

    ___X___ Contacted a relative/friend from visiting list of correspondence

    _____ Contacted Sheriff's Office / Police Department (specify)
    Name:_____ Date: _____ Time: _____

    Objection to Autopsy by N.O.K.   YES _____          NO ___X___

3.  *Person Contacted*
    Name: ___MARY L. JAMES___          Relationship: ___MOTHER___
    Address/City/St/Zip: ___2638 EAST AUBURN ST., LUBBOCK, TX 79903___
    Area Code & Telephone Number: ___806-747-3154___

4.  *Burial Arrangements*

    ___X___ The family **will claim** the body. The family was instructed to call the Carnes Funeral Home 1-855-262-8325.

    _____ The family **will not claim** the body.   The family was instructed to send a fax to 936-437-8073 to the Huntsville Unit Warden with following message.   "I am unable to claim the body of:_____TDCJ# ___I___ am requesting he/she be buried in the prison cemetery".   Name, address, telephone number and relationship to the inmate should be included in the fax.

    _____ Unable **to contact** any family member or friend (detail efforts in IOC to unit warden).   Send E-Mail and fax worksheet to the Huntsville Unit Warden.   Burial recommended in the prison cemetery.

5.  ___X___ Send a copy of this worksheet to (1) the Director of Classification and Records by E-Mail to BST0772 or fax to 936/437-6227 and (2) by fax to the Huntsville Funeral Home at 936/295-9253.

6.  ___X___ Place a copy of the next of kin letter in the Offender Death Notification Packet.

7.  ___X___ Send a copy of this worksheet, IOC, E-Form, and the next of kin letter to the Director of Chaplains.

8.  ___X___ Keep a copy of all paperwork in your file and submit this original to the Offender Death Notification Packet.

Chaplain's Signature: _____          Date: ___08/13/2011___



# TEXAS DEPARTMENT OF CRIMINAL JUSTICE

Gary Johnson
Executive Director

P.O. Box 99, Huntsville, Texas 77342-0099

AUGUST 13, 2011

MRS. MARY L. JAMES
2638 EAST AUBURN ST.
LUBBOCK, TX 79903

Dear MRS. JAMES & FAMILY                          Re:  #1726849

It is with the deepest sympathy I write this letter and I know I
express the feelings of the administrative personnel at this
institution. I experienced from each a sense of hurt and loss at your
love one's death. I am sure that the same sense of hurt must be
stronger among you who loved him in a special way and knew him better
than our staff.

Please accept our condolences and prayers as you endeavor to
strengthen one another in your loss. We are praying for you and know
that the Lord can be a source of strength during the worst of times.

It is customary that the body of any person who dies within the Texas
Department of Criminal Justice, Institutional Division, Gurney Unit,
will be handled by the Carnes Funeral Home in Texas City, Texas. You
may claim or inquire about the body by contacting the Carnes Funeral
Home at (855) 262-8325.

Sincerely,

Chaplain Thomas Taylor

CC:  Warden D. Miller
     Director of Chaplaincy
     Director Records & Classification
     Inmate Records
     file

CHAPLAIN Thomas Taylor                    Gurney Unit 1385 FM 3328
PROTESTANT CHAPLAIN                       Palestine, Tx 75803
                                          (903) 928-3118

Documentation of family Contact:  Offender Death

Offender (Name)    JAMES, KENNETH W,      TDCJ#     1726849

Date and Time of Death:   AUGUST 13, 2011 @ 0416

Please check the appropriate box below.  This form should be accompanied by an Autopsy Authorization signed by the facility warden.

☐   The legal Next-to-Kin was contacted and agrees to an autospy.

☐   The legal Next-of-Kin could not be reached within 8 hours of the time of death.

☒   The legal Next-of-Kin did not object to an autopsy within 8 hours of the time of death.

Signed

_____       08/13/11 @ 1345
Chaplain or Warden              Date/Time

+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
+++         REQUESTOR: TTA4090 - TAYLOR, THOMAS        GURNEY UNIT          +++
+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
+++              S Y S M   O U T P A G E K E T   P R I N T              +++

MESSAGE ID: 010819   DATE: 08/13/11   TIME: 01:08pm   PRIORITY: 000

SUBJECT:   DEATH NOTIFICATION

*************************DEATH NOTIFICATION***********************

INMATE: JAMES, KENNETH WAYNE                    TDCJ# 1754649
DATE OF DEATH: 08/13/2011
CUSTODY: LI-U   STATUS: ACTIVE   RACE: U   DOB: 11/25/58 AGE: 52
CAUSE OF DEATH: CARDIAC ARREST   TIME: 0414 HR DOCTOR: DR. HETUL KNOWLES
PLACE OF DEATH: PALESTINE REGIONAL MED. CENTER
DUTY WARDEN: D. MILLER                          TIME: 0417 HRS
JUSTICE OF THE PEACE: JAMES E. TODD  TIME: 0443 HRS
TDCJ-ID-LAW: MARK OWENS                          TIME: 0435 HRS
CARNES FUNERAL HOME: JACOB LITTLE               TIME: 0505 HRS
CHAPLAIN: THOMAS TAYLOR                          TIME: 0530 HRS
EAC: I-41530-08-11                               TIME: 0613 HRS
APPROVAL OF AUTOPSY BY N.O.K.: ( X )YES  (  )NO  (  ) (UNABLE TO CONTACT)
N.O.K.: MARY L. JAMES          HRS.   PHONE 806-747-3154
ADDRESS: 2438 E. AUBURN ST.   FAMILY WILL ( X ) WILL NOT (  ) CLAIM BODY
ADDRESS: LUBBOCK, TX 79403
LOCATION OF BODY: CARNES FUNERAL HOME
LOCATION OF INMATE PROPERTY: GURNEY UNIT

Sent to:   MSP016    DEATH REGS/CAROL VA MCMILLAN    (4)
           H040801   HUNTSVILLE WARDENS OFFICE       (4)
           CHAPSUP   HARDIN, LAMANA                  (4)
           T00001    CENTER, EMERGENCY ACTION        (4)
           CA87773   ASHWORTH, CARISE                (4)
           KEN2430   ENG OF, KELLY                   (4)
           DEL0702   MILLER, DENNIS                  (4)
           TTA4090   TAYLOR, THOMAS                  (4)

# Digital Photographs

- Digital Photos x 6





I-11520-08-11 - Offender Death
James, Kenneth Wayne #1726849
B3-23
August 13, 2011 @ 0700 Hours
Taken by:  Matthew Seda, Sergeant

McCollum/ James2- 74

 

I-11520-08-11 – Offender Death
James, Kenneth Wayne #1726849
B3-23
August 13, 2011 @ 0700 Hours
Taken by:  Matthew Seda, Sergeant

McCollum/ James2- 75

# Travel Card Information

- Copy of Travel Card
- Copy of TDCJ Identification Card





# Visitation Information

- Current Visitation List

```
                          DATE: 08/16/11        TIME: 12:49:12

NAME: JAMES,KENNETH WAYNE              TDC# 01726849   STAT/CUST: L1    NR UNIT:
HSNG ASSIGNMENT: UNASGN               CELL:     LAST VISITOR LIST CHANGE: 03 19
INMATE TYPE: TF
JAMES,MARY L                          MO    2638 E AURBURN ST,LUBBOCK,TX
LEWIS,PATRICK                         H/BRO 2611 GLOBE,LUBBOCK,TX
SMITH,MELVA J                         SIS   2638 E AURBURN ST,LUBBOCK,TX
JAMES,KRYSTAL D                       DAU   1510 E CORNELL APT 711,LUBBOCK,
TAYLOR,LURLENE                        FRND  2506 DATE AVE,LUBBOCK,TX
MANN,AUDRY                            FRND  1301 BAXTON,DESOTA,TX
TAYLOR,LEON                           FRND  2506 DATE,LUBBOCK,TX
MANN,BILLY                            FRND  1301 BAXTON,DESOTA,TX
MANN,AUDREY                           FRND  1301 BAXTON,DESOTA,TX
TAYLOR,LURLENE                        FRND  2506 DATE,LUBBOCK,TX




CONTACT VISITS THIS MO:    0 LAST VISIT DATE:          CONTACT VISIT ELIG.
REGULAR VISITS THIS MO:    0 LAST VISIT DATE:
SPECIAL VISITS THIS MO:    0 LAST VISIT DATE:
ENTER NEXT TDCNO, CODE, OR REQUEST: _____        OR SIDNO _____
PF1=HELP,  PF2=OTS INQUIRY SCREEN,   PF5=DISAPPROVED LIST    PF10=FAMILY PAGE
```

# Transport and Autopsy Information

- Transport Authorization for Offender Remains
- Autopsy Order
- Justice of the Peace Information

## Texas Department of Criminal Justice
### TRANSPORT AUTHORIZATION FOR OFFENDER REMAINS

The undersigned authorizes and directs the coordinating funeral home

and/or its said agents or staff to make the removal of the said remains of

_James, Kenneth_ from _Palestine Regional Medical Center_
   (Print Offender Name)                       (Print Unit/Location)

who died on _08-13-2011_ , and to hold until further notification
                (Date of Death)

from the Warden of the unit with regards to the approval for an autopsy.


**NOTE:  If an offender death is determined to be from natural cause by a certified medical physician, the offender's family will be provided the opportunity to object to an autopsy.**

> *Instructions:  If death occurs on the unit the Warden shall sign this form authorizing the transport of the remains.  If death occurs off the unit the Warden shall sign the form and shall the deliver the form by the most expedient means to the appropriate medical staff at the location of the death.*

_____     _Dennis Miller_
Signature of Warden/Designee              Printed Name

_____     _Heidi Knowles MD_
Medical Physician's/Registered Nurse's Signature    Printed Name


Address of Physician/Registered Nurse:
_2900 S. Loop 256_
_Palestine, TX 75801_
_903-731-1362_

# Texas Department of Criminal Justice
## AUTOPSY ORDER

In accordance with Section 501.055 of the Government Code, the following Order shall serve as authorization to perform an autopsy on the body of the deceased offender identified below.

Offender Name: _JAMES KENNETH_       TDCJ #: _1726849_
                     (Print Name)

Date of Birth: _11-25-1958_     Race: _B_   Sex: ☒ Male   ☐ Female

Offender Pronounced dead at _04/6 AM_      on _08-13-201¹_ .
                           (Print time, include am or pm)      (Print date, month, date, year)

Location of Death: ☐ Unit _____   ☒ Other _Palestine Regional Medical Center_
                        (Print Unit Name)            _Palestine, TX_
                                                   (Print location, ie. hospital name)

Acting in my capacity as an authorized official of the Texas Department of Criminal Justice, I hereby order and decree that an autopsy be performed on the body of the above described offender. Said autopsy should be performed to determine the cause of death of the offender who died of natural causes while attended by a physician or registered nurse.

Said autopsy should include a determination of the cause of death and toxicological examinations of the urine, blood and other bodily matter as deemed necessary to determine types and amounts of alcohol or drugs if any are present in the body. I further order that said autopsy be performed by the UTMB Autopsy Service Physicians and/or associates.

It is understood that due care shall be taken to avoid unnecessary disfigurement of the body.

Further, said body shall be transported to _UTMB Galveston_ (location of autopsy) by a representative or associate of _Caines_ Funeral Home, located in _Texas City_, Texas. Upon completion of the said autopsy, the body should be relinquished to a representative of the delivering funeral home who can be reached at (phone number) _855-262-8325_, for transport.

Please forward copy of preliminary findings and reports to:

TDCJ Death Records Technician, Health Services Division
3009 Hwy. 30 West, Rm. 162
Huntsville, TX 77340
(936) 437-3631 (phone) (936) 437-3638 (fax)

_____
Warden (or designee)

County _Anderson_

City _Palestine_, Texas Zip Code _75801_





**Anderson County**

JAMES E. TODD
Justice of the Peace
Anderson County Courthouse

PALESTINE, TEXAS 75801

Precinct No. 3
Telephone (903) 723-7418

August 13th, 2011


TO: Capt: Lumpkin
    or
    Warden Miller

Re: Inmate death


FROM: Judge James E. Todd

(SEE ATTACHED AUTOPSY REQUEST INFORMATION)

cover & 3 pgs.

ANDERSON COUNTY CSCD    ID:1903723/802             AUG 15 11    8:13 NO.003 P.02

## Anderson County



PALESTINE, TEXAS 75801

JAMES E. TODD
Justice of the Peace
Anderson County Courthouse

COPY

Precinct No. 3
Telephone (903) 723-7418

AUG 1 3 2011

### INQUEST TRANSPORT ORDER

THE STATE OF TEXAS
COUNTY OF ANDERSON
JUSTICE COURT, PRECINCT THREE

ORDER FOR TRANSFER OF DEAD BODY
FROM ANDERSON COUNTY TO ANOTHER
COUNTY FOR AUTOPSY

On this day, came on to be heard, evidence in an Inquest Investigation Hearing in regard to the death of ___Kenneth Wayne James  Inmate#1726849___, a ___Black___ (fe)male, age __52__, date of birth __11/25/58__ and said cause of death being either violent, unnatural or unknown.

After considering evidence presented and upon investigation in regard to this death, it is the opinion at this time that an autopsy should be had.

BE IT THEREFORE ORDERED AND DECREED, that ___Carnes___ Funeral Home, Palestine, Texas, who has the remains of the deceased, Transport said deceased to ___Texas City___ Funeral Home (or ___UTMB___) ___Galveston___, Texas as prescribed by law and to return said body upon completion of autopsy which is to be performed by Doctor ___UTMB Galveston___ or any other pathologist duly licensed to practice pathology in The State of Texas.

ISSUED UNDER MY OFFICIAL SIGNATURE of office in Anderson, County, Texas on this the __13th__ day of ___August___, __2011__.

Judge James E. Todd
Justice of the Peace-Coroner, Precinct Three
Anderson County, Texas

(SEAL)

ANDERSON COUNTY CSCD     ID:1903f237002            AUG 13 11   0:20 No.003 P.03

Time of Death: _____ 4:10 am
Date of Death: ____ 8/13/11 __
Remarks: __ Brought into E.R.
unresponsive from the Gurney Unit
TDCJ: _____

**Anderson County**

COPY

JAMES E. TODD
Justice of the Peace
Anderson County Courthouse

Precinct No. 3
Telephone (903) 723-7418

PALESTINE, TEXAS 75801

THE STATE OF TEXAS

COUNTY OF ANDERSON

AUG 1 3 2011

ORDER FOR AUTOPSY

Inmate#1726849
Kenneth Wayne James
Deceased

B/M   11/25/1958
Race/Sex & Date of Birth

. On this day, came to be heard, the INQUEST HEARING INVESTIGATION in regard
to the death of __ Kenneth Wayne James #1726849 __, a __ Black/Male __, Age __ 52 __
and the cause of death is violent, unnatural, or unknown.

After hearing testimony and evidence in regard to the death of the deceased
it is determined by the aftersigning Justice of the Peace (Coroner) that an
autopsy on the body of said deceased is necessary so that the cause of death
maybe accertained and for other necessary reasons.

BE IT THEREFORE CONSIDERED, ORDERED AND DECREED, that an autopsy be had on
the body of the deceased. There being no Health Officer in and for Anderson
County, it is hereby Ordered that Doctor: __ UTMB Galvestion __
or any physician, duly licensed in Texas and trained in pathology, shall
forthwith perform said autopsy on the body of the deceased which is located
at __ Carnes _____ Funeral Home, in __ Texas City _____,

Texas.  To be Transported to UTMB Galvestion for Autopsy by Carnes Funeral Home.

ISSUED UNDER MY OFFICIAL SEAL AND SIGNATURE OF OFFICE in Anderson County,
Texas, this __ 13th __ day of __ August _____ A.D., __ 2011 __

James E. Todd, Justice of the Peace
Precinct Three, Place One
Anderson County, Texas

(SEAL)

# INQUEST INFORMATION

COPY

AUG 1 3 2011

Inquest # ____8____

Justice of the Peace ___Judge James E. Todd; Pct. #3___   County of ___Anderson___

Location of death: __Palestine Regional Medical Center E.R.  Palestine, Texas  Loop 256__
Date and time of death: __8/13/11   4:16 am__

Decedent's name: __Kenneth Wayne James__
Address: __Gurney Unit  TDCJ  Tennessee Colony, Tex.__

DOB: __11/25/1958__   Age: __52__   Sex: ☒M ☐F   Race: ☐W ☒B ☐H ☐O

Next of kin: __Unk at this time__
Address and phone: __Unk__

Clothing: _____
Personal property: _____
Primary officer on scene: _____

Brief account of circumstances of death: __Found on Gurney Unit at Appx. 3:00 am unresponsive.__
__transported to the Palestine Regional Medical Center Hospital E.R., arrived 3:52 am called__
__by Dr. Heidi C. Knowles. Had gone into cardiac arrest.__

Impression as to cause of death: __Unknown__
Impression as to manner of death: ☐ Accident ☐ Suicide ☐ Homicide ☐ Natural ☒ Unknown

Brief medical history and medications: __Unk at this time__

Motor vehicle accident: ☐ Driver ☐ Passenger ☐ Pedestrian
Seat Belt: ☐ Yes ☐ No

Funeral Home of choice: __Carnes Funeral Home  Texas City, Texas__

Does family consent to tissue donation?: __N/A__

# Office of the Inspector General Reports

- Investigator's Report of Custodial Death



### Texas Department of Criminal Justice
#### OFFICE OF THE INSPECTOR GENERAL

# INVESTIGATOR'S REPORT
# OF CUSTODIAL DEATH

| OIG TRANSITORY #: (if necessary) | | | |
|---|---|---|---|

| CASE #: | EAC #: I- | OFFICIAL DATE & TIME OF DEATH: **8/13/11  4:16** ☒ AM ☐ PM | AUTOPSY ORDERED? ☒ YES ☐ NO |
|---|---|---|---|

| DECEDENT NAME: (LAST, First, MI) James, Kenneth | RACE B | SEX M | AGE 52 | DOB: 11/25/58 |
|---|---|---|---|---|

| IDENTIFICATION #: 1726849 | UNIT OF ASSIGNMENT: Gurney | DATE & TIME FOUND: 8/13/2011  3:00 ☒ AM ☐ PM |
|---|---|---|

| PLACE OF DEATH: P.R.M.C. | CITY: Palestine | COUNTY: Anderson | ZIP CODE 75801 |
|---|---|---|---|

| J.P. / M.E. NOTIFIED: (Name) James Todd | PRECINCT #: 3 | DATE & TIME J.P. / M.E. NOTIFIED: 8/13/2011  4:42 ☒ AM ☐ PM | PHOTOGRAPHS? ☒ YES ☐ NO |
|---|---|---|---|

| PLACE OF INQUEST: P.R.M.C. | DATE & TIME OF INQUEST: 8/13/2011  5:11 ☒ AM ☐ PM |
|---|---|

## ★ LOCATION, POSITION and SURROUNDINGS of BODY ★

P.R.M.C. Exam Room 1; Body laying flat on back, IV in place and oxygen in place.

## ★ SUMMARY of HOW DEATH OCCURRED ★

Offender James, Kenneth T.D.C.J. death pending autopsy. Offender was sent to P.R.M.C. at approximately 3:20 AM and pronounced dead by Dr. Heid Knowles at 4:16 AM 8/13/2011.

| TRANSPORTING FUNERAL HOME: Carnes Funeral Home | RECEIVING FUNERAL HOME: |
|---|---|
| INVESTIGATOR SIGNATURE: Mark Owens | TELEPHONE #: (   ) - |

Law Enforcement Agency: **TEXAS DEPARTMENT OF CRIMINAL JUSTICE**
**OFFICE OF THE INSPECTOR GENERAL**
**P.O. Box 4003 – Huntsville, TX 77342-4003**
**(936) 437-6755**

CC-0265 (07/2005)

## INVESTIGATOR'S REPORT OF CUSTODIAL DEATH
### (Continued)
TEXAS DEPARTMENT OF CRIMINAL JUSTICE – OFFICE OF THE INSPECTOR GENERAL

| CASE #: | DECEDENT NAME: (LAST, First MI) | IDENTIFICATION #: |
|---|---|---|
| | James, Kenneth | 1726849 |

### ★ CLOTHING WORN BY DECEDENT ★

☒ None        ☐ Pants        ☐ Shoes/Boots        ☐ Jacket

☐ Belt        ☐ Gown/Blouse        ☐ Dress        ☐ Other (list details below)

### ★ PROPERTY SENT WITH DECEDENT ★

None

### ★ MEDICAL HISTORY ★

| Was death attended? | ☐ Yes ☒ No | Previous history of illness? | ☐ Yes ☒ No |
|---|---|---|---|
| History of suicide? | ☐ Yes ☒ No | HIV? | ☐ Yes ☒ No |

| HOSPITAL NAME: | ADDRESS: | TELEPHONE: |
|---|---|---|
| P.R.M.C. | 2900 S. Loop 256 | (903) 731 - 1140 |
| PHYSICIAN CONTACTED: (Name) | ADDRESS: | TELEPHONE: |
| Knowles, Heidi | 2900 S. Loop 256 | (903) 731 - 1140 |

DIAGNOSIS: Pending Autopsy

### ★ NEXT OF KIN INFORMATION ★

| NEXT OF KIN: | ADDRESS: | TELEPHONE: |
|---|---|---|
| UNKNOWN | | ( ) - |
| NEXT OF KIN NOTIFIED BY: (Name) | TELEPHONE: ( ) - | DATE & TIME NOTIFIED: ☐ AM ☐ PM |

### ★ IDENTIFICATION ★     ★ DOCUMENTATION ★

HOW: ☐ Offender Records    ☐ Fingerprints

☒ Viewed at Hospital/Scene    ☐ Other _____

☒ Order for Autopsy        ☒ Clinic Notes (last 72 hrs)

☒ ER Report (if available)    ☒ Copy of Travel Card

REPORT DISTRIBUTION: (Include Complete Documentation)
(1) Case File    (2) J.P.    (3) To Accompany Body

Verification Made By: _____    Relationship to Decedent: _____

CC-0265 (07/2005)

# Risk Management Documentation

- Copy of RM-03 *Supervisor's Investigation of Employee/Offender Injury*

## SUPERVISOR'S INVESTIGATION OF EMPLOYEE/OFFENDER INJURY

| Last Name of Injured JAMES | First Name Kenneth | MI | SSN/TDCJ# 1726849 | Date Of Injury 8-13-11 |
|---|---|---|---|---|
| Type Of Injury O240 | Unit Of Assignment M | Use of Force ☐No ☐Yes<br>UOF# M | EAC# I-11520.08.11 | Date of Report 8-13-11 |

### Department of Assignment (Table 2) (Check ONLY One)

- ☐ 01 Administration*
- ☐ 02 Ag Administration*
- ☐ 03 Chaplaincy*
- ☐ 04 Classification*
- ☐ 05 Clerical*
- ☐ 06 Construction-Facilities
- ☐ 07 Counsel Substitute*
- ☐ 08 Counselor*
- ☐ 09 Education-Windham*
- ☐ 10 Food Service
- ☐ 11 Grievance*
- ☐ 12 Health Services*
- ☐ 13 Industry
- ☐ 14 Internal Affairs*
- ☐ 15 Laundry/Necessities
- ☐ 16 Operations & Maintenance
- ☐ 17 Parole*
- ☐ 18 Security*
- ☐ 19 Supply
- ☐ 20 Training*
- ☐ 21 Transportation*
- ☐ 22 Yard/Utility
- ☐ 23 Dog Kennel/Horse Barn
- ☐ 24 Community Work Proj
- ☐ 25 Field Force
- ☒ 26 Non-Occupational
- ☐ 27 Recreational
- ☐ 28 Suppt Services Inmate

* Not Applicable for offenders – Department of Assignment for offenders is Non-occupational or Recreational unless injury occurs on-the-job.

### Location Of Injury (Table 3) (Check ONLY One)

- ☐ 01 Admin. Area/Office
- ☐ 02 Backgate
- ☐ 03 Barber Shop
- ☐ 04 Boiler Room
- ☐ 05 Ad Seg Cell
- ☐ 06 Gen Pop Cell
- ☐ 07 Hi-Sec Cell
- ☐ 08 Cellblock Run
- ☐ 09 Closet/Utility Room
- ☐ 10 Clubhouse
- ☐ 11 Commissary
- ☐ 12 Community Work Projects
- ☐ 13 Craft Shop
- ☐ 14 Day Room/Lounge
- ☐ 15 Dining Hall/Kitchen
- ☒ 16 Dormitory/BOQ
- ☐ 17 Education Area/Classroom
- ☐ 18 Farm Shop
- ☐ 19 Field
- ☐ 20 Firing Range
- ☐ 21 Garage/Tractor Shed
- ☐ 22 Grounds/Yard-Inside Fence
- ☐ 23 Grounds/Yard-Outside Fence
- ☐ 24 Hallway/Walkway/Corridor/Foyer
- ☐ 25 Highway/Road/Street
- ☐ 26 Hospital/Clinic/Infirmary/Lab
- ☐ 27 Industrial Area
- ☐ 28 Intake Area
- ☐ 29 Laundry
- ☐ 30 Library
- ☐ 31 Loading Dock/Porch
- ☐ 32 Mailroom
- ☐ 33 Maintenance Shop/Work Area
- ☐ 34 Nursery/Greenhouse
- ☐ 35 Parking Lot
- ☐ 36 Picket Tower/Central Control
- ☐ 37 Ramp/Elevator
- ☐ 38 Recreation Yard/Gym
- ☐ 39 Roof
- ☐ 40 Sallyport/Vestibule
- ☐ 41 Salvage Area/Storage Yard
- ☒ 42 Shower
- ☐ 43 Sidewalk
- ☐ 44 Stable/Barn/Kennel
- ☐ 45 Steps/Stairway/Ladder
- ☐ 46 Supply/Necessities
- ☐ 47 Swimming Pool Area
- ☐ 48 Toilet/Restroom
- ☐ 49 Transportation Vehicle (Bus/Van, etc.)
- ☐ 50 Turnout Area
- ☐ 51 Visitation
- ☐ 52 Vocational Trades/Workshop
- ☐ 53 Warehouse/Storage Area

### Cause Of Injury (Table 5) (Check ONLY One)

- ☐ 01 Offender Assault
- ☐ 02 Intentionally Self-Inflicted
- ☐ 03 Employee on Employee Assault
- ☐ 06 Animal Bite
- ☐ 07 Bodily Reaction
- ☐ 08 Caught In, On or Between
- ☐ 09 Contact with Chemicals
- ☐ 10 Contact with Electrical Current
- ☐ 11 Contact w/ Temperature Ext
- ☐ 12 Fall on Different Level
- ☐ 13 Fall on Same Level
- ☐ 14 Horse Related
- ☐ 15 Insect Bite
- ☒ 16 Medical Condition
- ☐ 17 Over-Exertion
- ☐ 18 Environmental Hazards
- ☐ 19 Slip/Trip, Not a Fall
- ☐ 20 Struck Against
- ☐ 21 Struck By
- ☐ 22 Vehicular
- ☐ 23 Weather Related

### Type Of Injury (Table 8) (Check ONLY One)

- ☐ 01 Abrasion
- ☐ 02 Amputation
- ☐ 03 Bite
- ☐ 04 Bruise/Discoloration
- ☐ 05 Burn
- ☐ 06 Contusion
- ☐ 07 Cut
- ☐ 08 Dermatitis/Rash
- ☐ 09 Dislocation
- ☐ 10 Dizziness, Faintness
- ☐ 11 Foreign Object in Eye
- ☐ 12 Fracture
- ☐ 13 Frostbite
- ☐ 14 Hearing Loss
- ☐ 15 Heat Attack/Chest Pains
- ☐ 16 Heat Exhaustion/Cramps/Stroke
- ☐ 17 Hernia
- ☐ 18 Infection
- ☐ 19 Inflammation
- ☐ 20 Internal Injuries
- ☐ 21 Nausea
- ☐ 22 Puncture
- ☐ 23 Rupture
- ☐ 24 Scratch
- ☐ 25 Shock
- ☐ 26 Sprain
- ☐ 27 Sting
- ☐ 28 Strain
- ☐ 30 Exposure to Communicable Disease
- ☐ 31 Closed Head Injury
- ☐ 32 Open Head Injury
- ☒ 29 Other (Specify) Cardiac Arrest

McCollum/James 2386