**Texas Department of Criminal Justice**
OFFICE OF THE INSPECTOR GENERAL
INVESTIGATIONS DIVISION

**CRIMINAL CASE
VOLUNTARY STATEMENT**

STATEMENT OF  Nicholas Rodriguez

GIVEN THIS  5  DAY OF  October  , 2001

    I, CO IV Rodriguez, was assigned as chain officer.  At approx. 0900 the chain bus arrived from Robertson Unit. Offender Cardwell # 1041651 got off chain bus and I properly I.D.'d him and the rest of the incoming chain.  He had no complaints.  At that time he was put in the cage in 12 sallyport for approx. 10 minutes.  At approx. 0930 I was told that UCC would be run in 7 gym.  I then proceeded to take all the offenders to 7 gym.  UCC arrived at 7 gym at approx. 1000 and ran the incoming chain first.  When UCC was finished at approx. 1045 I took the chain to the chowhall and feed them. Then at approx. 1115 I went to unit supply and they were given mattresses and rolls.  I then escorted the chain to 3 building and they were put in the multi purpose room and I began to inventory their property.  After inventorying the property the offenders were left in the multi purpose room until approx. 1530 when I housed the offender in 7 G pod 21 cell.  At no time did Offender Cardwell complain of any heat problems

Date  10-5-01

Signature  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

Page 1 of 1

CC-0355 (06/2001)

Page 1 of 1

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

14-1

McCollum v. Cardwell 4287

**Texas Department of Criminal Justice**
OFFICE OF THE INSPECTOR GENERAL
INVESTIGATIONS DIVISION

## CRIMINAL CASE
## VOLUNTARY STATEMENT

STATEMENT OF _R. Toll_ _459 51 6939_

GIVEN THIS _5_ DAY OF _Oct_ , _2001_

I Officer Toll at approx. 530p.m was doing paperwork when Desk Officer Morales told me to go relieve Officer Redder, he had an offender down on G pod cell 21who was on the floor unresponsive.  Officer Redder asked for SSI's to help. Redder, ~~Sults~~ Sohs and I assisted putting the offender on the gurney and get him out of the cell. I then saw them off the pod and continued roster counting.  I never viewed the offender again.

_10 - 5 - 01_
Date
_R Toll_
Signature

Page _1_ of _1_

CC-0355 (06/2001)

Page 1 of 1

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

_15 - 1_

To: James V. Allred Unit
From: Amy Newman, RN

    On 7/16/01, I was the acting charge nurse on the 3-11 shift. At approx. 5:50pm I
received a call from 7 bldg security, the desk officer whom stated " I have a report of an
offender that passed out and is unresponsive, I have notified my desk sergeant and 2
officers are going to check it out what are you going to do." I instructed the officer to
return a call to me after the officers had verified the report (due to I was the only nurse in
the building at the time.) I promptly received a return call from the desk officer stating
that the offender was unresponsive and breathing. I instructed the officer to get the
offender on the gurney and transport him to medical because I was the only nurse in the
building. Ms. Sherman & Ms. Manchen returned to the building from their assigned
duties, at which time they were notified of an inmate coming to medical from 7 bldg
unresponsive. I then directly received another call from 7 bldg informing that the gurney
was unsafe and someone was coming to get a stretcher, upon hanging up the phone
Lt.Burger entered the clinic, I asked If he was there to pick up the stretcher he said "I
guess I am". I retrieved the stretcher. Lt. Burger walked out of medical with Ms. Sherman
and the gurney. The offender was brought into 10 bldg on the stretcher with the gurney
between him and the stretcher followed by security and Ms. Sherman. The offender was
brought into the ER @ 6:05pm and treatment was begun by Ms. Sherman, Ms. Manchen,
Dr. Wipperman, and I. The offender was extremely hot to touch, skin hot & dry, cyanosis
to the neck & face, labored respirations, pupils fixed & dilated, offender unresponsive.
He was started on O2 via mask, axillary temp 106.9, IV access was obtained and IV
fluids initiated. Upon arrival to the ER the inmates name & TDCJ number were
unavailable and were obtained by security. Security also placed a call to High Security
medical requesting additional medical staff. There were some difficulties including
obtaining & finding supplies and medication, also all the ice in the infirmary was used
until no longer available and the ODR had to be notified to bring more ice to the ER. The
offender was pack in ice as it was made available. The offender's boxers had to be cut off
to apply ice to directly to the groin area. Dr. Wipperman had contacted Electra Memorial
Hospital, which declined to accept the offender and she placed a call to United Regional
who accepted the patient. A call was placed to AMR for ambulance transportation with
report given and notification that the offender was in critical condition. Previous to this
event there was another offender awaiting transport to Electra Hospital by ambulance.
The first ambulance to arrive was Electra, they came into the ER and were redirected to
the appropriate offender. They initially loaded the previous offender on the gurney it was
then decided, by the ambulance staff and Dr. Wipperman, that they would transport the
offender in the ER to United Regional since the previous offender was stable and the
offender in the ER was in critical condition. As the inmate was being loaded onto the
gurney the medical records were obtained. Staff in medical records had made the Email.
The offender was transported to United Regional ER in critical condition, respiration
remained labor, cyanosis was present to the neck & face, hypertensive, pupils remained
fixed & dilated. Left the ER @ 6:25pm on ambulance stretcher with ambulance staff &

Copy of OIG case to Litigation Support on 06.26.2013by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

*16 - 1*

security. United Regional ER was notified and given departure report of offender in route & AMR was notified of transportation changes.

Amy Newman, RN

CC: Mr. Edwards
    Ms. Tucker
    Ms. Reed
    Personal file
    Allred Unit Security

10/5/2001

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

16-2

Texas Department of Criminal Justice
**INSTITUTIONAL DIVISION**

## Inter-Office Communications

To _____   Date  7/6/01

From  Dr. Wippermann   Subject  Cardwell # 1041651

Pr report, I/M found in cell by cellmate unresponsive. I/M brought to ER ~6:05pm and resuscitation initiated. Unresponsive to pain and verbal stimuli. Pupils fixed @ 5mm and dilated. Skin dusky. RR 30's. Temp 106.9 (ax) IV fluids bolus given. I/M packed in ice. WRHC ER notified. Dr. Myers accepted pt. Chart noted (p̄ pt tx'd and transfered for) for heat restrictions being present — chained in today.

EMS took I/M to 11th Street ER instead of 8th Street. Telephone report given.

SO-4

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

17-1



**Texas Department of Criminal Justice**
OFFICE OF THE INSPECTOR GENERAL
INVESTIGATIONS DIVISION

## CRIMINAL CASE
## VOLUNTARY STATEMENT

STATEMENT OF  McMILLAR, Stanley E., SS# ▮▮▮▮▮▮▮

GIVEN THIS   8th   DAY OF   August                                    , 2001

At approximately 1750 chest compressions were began on Offender CARDWELL #1041651.
Dr. CHAPPA pronounced Offender CARDWELL dead at 1803 hours, door was sealed at 1805
hours.

8/8/2001
Date

Stanley M'mller
Signature

Page   1   of   1

CC-0355 (06/2001)

Page 1 of 1

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

18 - 1



**Texas Department of Criminal Justice**
OFFICE OF THE INSPECTOR GENERAL
INVESTIGATIONS DIVISION

## CRIMINAL CASE
## VOLUNTARY STATEMENT

STATEMENT OF _Roland Riojas   859646_

GIVEN THIS _5th_ DAY OF _October 2_, _2001_

at _____ o'clock ☐ AM ☐ PM   My name is _Roland Riojas_

My telephone number and address are    ( )

_3.C.01.B_                          _Allred Unit_

*I am not under arrest, nor am I being detained by any law enforcement agency.  I understand that I am free to leave at any time I choose.  I voluntarily give this statement.*

When the guy came in with the chain boss i help escort him into the section and greeted him. At that point the guy said he was feeling sick. I went to the front desk to inform the Desk Boss Ms. Morales that the guy that just came in is not feeling well and looks sick.. She just said so and get out of her face.. i left not wanting trouble. This is all i saw and know. (No)
The day of 7.16.01..

Witness _____     Signature _____ 859646

Witness _____     Date _Oct 5, 2001_

CC-0365 (08/2001)

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

19-1



**Texas Department of Criminal Justice**
INTERNAL AFFAIRS DIVISION

## CRIMINAL CASE
## VOLUNTARY STATEMENT

STATEMENT OF _J. W. M? Cowan # 786708_

GIVEN THIS _18th_ DAY OF _August_ , _2001_

at _11:20_ o'clock ☑AM ☐PM My name is _____

My telephone number and address are ( ) _Allred unit_

---

*I am not under arrest, nor am I being detained by any law enforcement agency. I understand that I am free to leave at any time I choose. I voluntarily give this statement.*

On July 16, 2001 I, J.W. M? Cowan was working on 7G
when after evening chow a new offender was brought
in. After This offender was Taking into 1-section
There was some commotion as To getting him housed.
It seems This offender was in The shower or something.
I was still in deep space. After CO-III steward
finally got This offender Housed, she came out and
XXX Tried To Tell The picket officer something But The
inter-com on That side (1-section) did not work, so, she came
over to The other side to (3-section) And Told The
office in The picket That "she did not Think he
(The offender) would make it Through The night"
at which point The picket Boss (Don't know name) said,
"Fuck him if he dies he dies." I was under The
impression That This offender was afraid. Until
This time. At any rate Mrs. steward went up
front To notify The desk (CO III Morels) Morales)

Witness _____  Signature _____
            8/18/01

Witness _____          Date _____

Page _1_ of _2_

A-33 (6/3/1999)

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

20-1

STATEMENT OF  *J. W. Mc Cowan*

I remained in the deep space therefore I do not know what was said but I did began to understand that Mrs Steward was concerned. Soon thereafter count was called and all SSI was called to the front desk. After about another 35 to 40 minutes the desk sargent told 3 SSI (myself included) to go help get this offender out of his house because he was sick. When we got to 3 row one-section. We found this offender was "out for the count" with absolutely no movement. We carried him to the front desk but due to drip-not, the stricker began to fall apart and Sgt. Marge to us to put him down infront of the desk. At this time I observed that this offender was blue in the face. I began to make it know that he was blue in the face. At which sgt. Marge order the camera be put on him. Now during this time there was also a problem as to the infirmary coming to pick him up. It seem there was no one, so the Sgt. sent a CO III to go and bring a wheeled chair. Thereafter CO III Morales to us to move back... down by "H" section but sgt. said, "Go to work" and we left.

Witness _____ OIG/Jan-51  8/18/01

Signature _____ 8/18/01  #786708

Witness _____

Date _____

Page 2 of 2

20-2

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED



**Texas Department of Criminal Justice**
INTERNAL AFFAIRS DIVISION

## CRIMINAL CASE
## VOLUNTARY STATEMENT

STATEMENT OF _Christopher Cassiter #573946_

GIVEN THIS _18th_ DAY OF _August_

at _10:30_ o'clock  ☑AM ☐PM   My name is _____

My telephone number and address are   (   ) _Allred Unit_

---

*I am not under arrest, nor am I being detained by any law enforcement agency. I understand that I am free to leave at any time I choose. I voluntarily give this statement.*

On 7-16-01 between 4:20 p.m. - 5:20 p.m. I was working my assigned pod on 7-Blog when an inmate named Cardwell-CC moved into 7B 21 Cell. I first noticed that something was wrong when Cardwell-CC went to the shower and wouldn't come out. I then introduced myself and asked if things were alright. He stated yes, but that was obvious to me that things weren't. I explained that no one wanted to beat him up and take his property or hurt him. He seemed to understand and after a few minutes left the shower. Once he left the shower he wandered around by the shower. I shook his hand and noticed that it was very hot. Just to see if his arm was hot more out of curiosity than medical training I touched his arm. It was more hot than his hand. I alerted the officer on 3 row at the time to feel the inmates arm. Once she did this she got him in the assigned cell and notified the officers who were working with her, both the control picket officer and 7 bldg desk officer. At first I thought he was scared, but I know now that he was sick and no telling how long he was sick before coming to Janes V. Allred.

Witness _____   03952 B. 7/18/01

Signature _____

Witness _____

Date _8-18-01_

Page _1_ of _1_

IA-33 (6/3/1999)

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

21-1



**Texas Department of Criminal Justice**
INTERNAL AFFAIRS DIVISION

## CRIMINAL CASE
## VOLUNTARY STATEMENT

#641115

STATEMENT OF *Eugenio Garcia Ceniceros*

GIVEN THIS *18* DAY OF *August*, *2001*

at *11:00* o'clock ☑AM ☐PM   My name is

My telephone number and address are   (   )   *All Red Unit*

*I am not under arrest, nor am I being detained by any law enforcement agency. I understand that I am free to leave at any time I choose. I voluntarily give this statement.*

On July 16-01 inmate was thraunght to G1(3 Row 21 Cell, I was with Mrs, Stewart I was half way on 3 Row went I soto and I saw inmate in the shower I thraunght he was scared in moments he started to look sick some one and I told stewart since Entercomp don't work in G pat we' had to go to the out sied intercome 3 pat Mrs stewart told the picket Bross there was inmate sick on 3 Row Bross man said Fuck him if he dies he dies so mrs stewart went to the desk and told Morales that there was a sick man on G pot Morales said alright alright, sgt March came in went they were begin the inmate. She told Morales to call a gurney and morales told us

*Witness*  OIG/Sarrit   *Eugene H Ceniceros*
8/18/01                *Signature*

_____   *8-18-01*
Witness                     Date

Page *1* of *2*

:A-33 (6/3/1999)

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

22-1

**TDCJ-INTERNAL AFFAIRS DIVISION**

**CONTINUATION**

VOLUNTARY STATEMENT OF: *Eugene J. Cardero* # *641115*

all S.S.I.'s get to the end of H pot hall Stg March's said for all of us to go back to work at that time Stg March's told the officer to put the same camera on the sick inmate I guess he did I now how to work it he fool with it until a red light came on, it went back to C pot.

WITNESS _____   SIGNED *Eugene J. Cardero*   DATE 8-18-01

WITNESS _____

Page 2 of 2 Pages

IA-11B (05/03/1999)

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

22-2



**Texas Department of Criminal Justice**
INTERNAL AFFAIRS DIVISION

## CRIMINAL CASE
## VOLUNTARY STATEMENT

STATEMENT OF _Laurence McColloch 821769_
GIVEN THIS _18 th_ DAY OF _August_ , _2001_
at _1100_ o'clock ☒ AM ☐ PM   My name is _Laurence McColloch_
My telephone number and address are _(      )_

*I am not under arrest, nor am I being detained by any law enforcement agency. I understand that I am free to leave at any time I choose. I voluntarily give this statement.*

On 8-4-01 while working as an SSI in G pod of 7 building I was in 1 section while officer Stewart was doing his in's & out's. Inmate Lassiter was on the 3 row with officer Stewart when they discovered an inmate who had a high body temperature. When officer Stewart called on the ICA to officer Redder to tell him to notify the desk, officer Redder said he didn't care if the inmate died, he wasn't going to act on Stewart's request. Some time later — after chow & during count we (I) were standing at the front desk for count. Before coming to the desk for count O. Stewart told O. Morales to get the Sgt. Meach down to G. pod. That request was ignored. Now O. Stewart had requested that the stretcher be sent to G pod. Soon some of the SSI's (notme) brought the inmate out to the front desk and sat him on the floor.

Witness _[signature]_                    Signature _Laurence McColloch_
                                                        821769

Witness _____              Date _____

Page _1_ of _2_

IA-33 (6/3/1999)

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

23-1

**TDCJ-INTERNAL AFFAIRS DIVISION**

**CONTINUATION**

VOLUNTARY STATEMENT OF: One of the guards started filming the sick inmate. Sgt March was screaming at O. Morales (who was on the phone) to call the infirmary at once & get a gurney as the emergency stordon had torn. Sgt March was ignored by O. Morales as she was still doing count on the phone. (Sgt March was locked out of the cage.) Sgt March noticed all of us SSI's watching the show and ordered us to go to the pods. As we were leaving O. Morales hung up the phone, turned to Sgt March and said, "I had to finish the count". At that time we left for the pods — the inmate still laying on the floor — turning blue.

WITNESS

SIGNED

821769

DATE

WITNESS

Page 2 of 2 Pages

IA-11B (05/03/1999)

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

23-2

```
****************************************************************************
*** REQUESTOR: JAPER28 - GENTRY, BELINDA      ALLRED UNIT              ***
****************************************************************************
***              S Y S M   O U T B A S K E T   P R I N T              ***

MESSAGE ID: 733260      DATE: 08/01/01  TIME: 04:40pm  PRIORITY: 000

SUBJECT:    EMPLOYEE DISCIPLINARY


SUBJECT:        DISCIPLINARY ACTION
NAME:           STEWART, RETHA E
SSN:            ███████████████
JOB TITLE:      CO IV
VIOLATION #:    5B - RECKLESS ENDANGERMENT
PUNISHMENT:     DISCIPLINARY PROBATION: 8 CALENDAR MONTHS BEGINNING:
                08/01/01 ENDING: 03/31/02.

ID/MUOF #:      N/A
AUTHORITY:      ROBERT R. TREON, WARDEN II
                JAMES V. ALLRED UNIT

DISCIPLINARY IS: ( X ) WITHIN  (  ) ABOVE  (  ) BELOW THE GUIDELINES.


Sent to:    KCH7197         CHANDONNET, KATHY          (to)
            RPE5135         PENNINGTON, REGINA         (to)
            CTI4772         TILLEY, CYNTHIA            (to)
            CHE5972         HENRY, CYNTHIA             (to)
            JAWAR03         TREON, ROBERT              (to)
            JAWAR15         WATHEN, RICHARD E.         (to)
            JAPER28         GENTRY, BELINDA            (to)
```

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

24-1

PD-22
Attachment B
Page 1 of 2

## Texas Department of Criminal Justice
## EMPLOYEE OFFENSE AND PRE-HEARING
## INVESTIGATION REPORT

Purpose:   This form shall be used to record alleged violations of rules or regulations by employees. It shall also serve as a pre-hearing investigation report. If additional space is needed for any portion of this report, a continuation sheet may be attached.

Employee Name: __Stewart,_____ __Retha_____ __F.____    SSN: _____███████_____
                         Last            First         MI

Payroll Job
Title:_____Correctional Officer III_____     Date of
                                                  Incidents (s):_____07/16/2001_____
                                                                  (Month/Date/Year)

Description of alleged violation (s): On 07-16-2001 Officer Stewart was assigned to 7 Building G Pod. She discovered that an offender was in need of medical attention. She requested a supervisor, however, the supervisor was not called for. She then proceeded to count instead of contacting the supervisor. Officer Stewart failed to take all reasonable steps to get the offender medical attention. The offender had to be transported to a Wichita Falls hospital for heat stroke.

Employee's Statement: *See Attached*

Employee's Signature: *[signature]* Date: 7-23-01

PERS 325 (09/2000)                    Page 1 of 2

*24-2*

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

PD-22
Attachment B
Page 2 of 2

Page 2

Employee Offense and Pre-hearing Investigation Report

Witness:  Have witnesses read description of violation (s).  If the witnesses agree, have them sign and
indicate their "concurrence" with description.  If the witnesses disagree with description, have
the witnesses indicate their "non-concurrence" and attach an IOC with their version of the
incident.

| Witness Name (Printed) | Signature | Concur/Non-Concur | Date |
|---|---|---|---|
| _____ | _____ | _____/_____ | _____ |
| _____ | _____ | _____/_____ | _____ |
| _____ | _____ | _____/_____ | _____ |
| _____ | _____ | _____/_____ | _____ |
| _____ | _____ | _____/_____ | _____ |

CHARGING OFFICIAL:

Name:  Jimmy O. Bowman                    Payroll Job Title:  Major of Correctional Officers
(PLEASE PRINT)

Signature: _____          Date: _7-15-01_

PRE-HEARING INVESTIGATOR'S REVIEW/RECOMMENDATION:

Name: _Richard Watthen_                    Payroll Job Title: _ASSISTANT WARDEN_
(PLEASE PRINT)

Recommendation: #SB. RECKLESS ENDANGERMENT    Disciplinary Action:  Yes __✓__  No _____

COMMENTS: _BASED UPON THE SERIOUS NATURE OF THE INCIDENT_
_I RECOMMEND THE EMPLOYEE APPEAR BEFORE THE JAMES_
_V. ALLRED UNIT REPRIMANDING AUTHORITY FOR VIOLATION_
_OF PD 22, LEVEL #2, #SB. RECKLESS ENDANGERMENT._

Signature: _Richard Watthen_              Date: _July 23, 2001_

PERS 325 (09/2000)                         Page 2 of 2

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

## Texas Department of Criminal Justice

### REPRIMAND FORM

DA # _____
IA Case # _____
MUOF # _____

Employee Name: Stewart        Retha        F.        SSN: ▊▊▊▊▊▊
                Last          First        MI

Payroll Job Title: CO IV _____     Unit/Facility/Dept: Allred/Security   GP 1/1
Date(s) of Violation(s): 07/16/01 _____     Date Pre-Hearing Investigation Completed: 07/23/01

FINDINGS (circle)
GUILTY

No. 5b Violation: Reckless Endangerment _____ (Yes)/No
No. _____ Violation: _____ Yes/No
No. _____ Violation: _____ Yes/No
No. _____ Violation: _____ Yes/No

Synopsis of Incident(s): On 07/16/01, Off. R. Stewart was assigned to 7 Building G Pod. She discovered that an offender was in need of medical attention. She requested a supervisor, however, the supervisor was not called for. She then proceeded to count instead of contacting the supervisor. Off. Stewart failed to take all reasonable steps to get the offender medical attention. The offender had to be transported to a Wichita Falls hospital for heat stroke.

Offender(s) involved (Name/TDCJ Offender ID#), if applicable: _____ N/A _____

DISCIPLINARY ACTION:

Previous Violation(s): ☐ YES ☒ NO  If yes, list violation number(s) and date(s): N/A _____

Check and complete one or more of the following:

_____ REPRIMAND ONLY
✓ DISCIPLINARY PROBATION: 8 Calendar Months Beginning: 8·1·01 Ending: 3·31·02
_____ SUSPENSION WITHOUT PAY:   Workdays Beginning: _____ Return: _____
                                 Workweeks Beginning: _____ Return: _____
_____ REDUCTION IN PAY (Copy of Payroll Status Change attached)
_____ DEMOTION (Copy of Payroll Status Change attached)
_____ DISMISSAL RECOMMENDED, WITH FOLLOWING ACTION DURING INTERIM:
       __ Involuntary Use of Compensatory Time/Holiday Time
       __ Voluntary Use of Overtime/Vacation Time (Attach a copy of Leave Application)
       __ Suspension Without Pay (Not to report to work beginning _____)
       __ Job Change to Another Position
       __ Administrative Leave (Can only be granted by the Executive Director)
_____ NO DISCIPLINE IMPOSED (Provide explanation in space below.)

DISCIPLINE IS: ☒ Within ☐ Above ☐ Below the guidelines. (Provide explanation if above or below the guidelines.)
If this violation was a violation of Rule #24 or Rule #25, check one of the following: This violation ☐ Did ☐ Did Not involve a willful use of excessive force.

EXPLANATION (If no discipline was imposed or if discipline was above or below the guidelines.): OFFICER CLAIMS SHE KNEW SOMETHING WAS WRONG BUT DID NOT REALIZE IT WAS A HEAT RELATED ILLNESS. EVIDENCE INDICATES OFFICER ATTEMPTED TO GET ASSISTANCE. 49 MONTH – 1ST DISC.

Robert R. Treon, Warden II _____     [signature]          8·1·01
Reprimanding Authority/Title (printed)     Signature              Date

Employee's Acknowledgement: I have been advised of the procedures of progressive disciplinary actions, and my right to file a grievance. I acknowledge receipt of a copy of this reprimand and know that a copy will be placed in my Employee Master Personnel File. If recommended for dismissal, I verify that the following are my current address and phone number:

Mailing Address: _____
Phone Number, including Area Code: _____
Employee Signature: Retha Stewart    Date: 08-01-01

PERS 185 (09/2000)

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

(Instructions on reverse)

**Texas Department of Criminal Justice**
**INSTITUTIONAL DIVISION**

# Inter-Office Communications

To: _____ Warden R. Treon _____     Date: _____ 7-19-01 _____

From: _____ Major J. Bowman _____     Subject: _____ As Stated _____

While interviewing Officer Stewart, Retha SSN ▮▮▮▮▮ she stated that she asked
Officer Redder, Frederick SSN #▮▮▮▮▮ twice to call a supervisor.  She stated she told
Officer Redder something was wrong with the offender.  He stated, "So", and to rack him up for
count.  Officer Stewart admits that she put the offender in the cell and proceeded to count.  Officer
Stewart then turned in her count sheets and asked the desk officer to have Sgt. March come to
the pod when she got off the phone.  She never stated the offender needed medical attention.

Officer Redder admits he did not call for a supervisor when Officer Stewart asked for one.
He then stated she never said it was for medical reasons.  He later admitted that she might have
said it was for medical reasons, and he just stated, "So", but he could not remember.  Officer
Redder later recanted that version and stated she never said it was for medical reasons.  Officer
Redder still stated he did not call for a supervisor until he saw the offender laying on the cell floor.

I acknowledge receipt of a copy of this action and understand that this information
shall be placed in my unit disciplinary file and employee master personnel file.

_____ *Arthur Stewart* _____     _____ 07-31-01 _____
NAME                                     DATE

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

24-4

To Whom It May Concern:

I wrote the truth about the Offender Cardwell incident in my statement. I did not know that he was physically ill. I do not have a medical background therefore I am unable to make a medical assessment. All I wanted was a supervisor to advise me on what I should do about the situation. I have always been taught in TDC to go through the chain of command. Another thing I have been taught in my 51 months with TDC is- if a rover thinks that someone needs medical, he notifies the picket officer and he in turn contacts the desk. The desk officer informs the building supervisor (if possible) or calls medical.

I did not feel that I could abandon my assigned post to find the supervisor after having already asked the picket officer to locate her. So I did the next best thing. I racked the pod, counted quickly and accurately, then went to the sally port and got the desk officer's attention. I told her that I needed to talk to the Sergeant as soon as she got off the phone. That request was also to no avail.

When I switched out with the picket officer, I talked to a co-worker on the stentofon and told him that I was upset. I have talked to my family and my pastor about the situation. The major and the captain told me not to worry because I had done all I could do and that I should just tell the truth. My quote to my pastor was "if only I had known what was wrong, I could have taken him a drink of

Copy of OIG used in Litigation Support on 06 26 2015 by scm
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

24-5

water or turned the shower on him,
even with his clothes on."
Hindsight is always better than foresight
but I ~~had~~ knew nothing about his
medical or physical condition. Had I known,
I might have handled the situation differently.
Because of my lack of knowledge —
I am now at your mercy.
                    Thank you for your consideration

                        Retha Stewart COIV

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

27-6

## Texas Department Of Criminal Justice

## NOTIFICATION OF EMPLOYEE HEARING

IAD Case # _____
MUOF # _____

DATE: 07/31/01     TO: Retha F. Stewart _____     SSN: ██████████

UNIT/FACILITY/DEPT.: Allred/Security _____     PAYROLL JOB TITLE: CO IV _____

You are scheduled for an Employee Hearing to be held at Warden Treon's Office at 10:00 (AM/PM) on August 1, 20 01 .

The Employee Hearing will be convened to consider allegations of rule violation(s) against you as referenced in PD-22. _____

The specific offense as listed in the "Guidelines for Disciplinary Actions," is/are:

No. 5b Violation: Reckless Endangerment _____
No. _____ Violation: _____
No. _____ Violation: _____
No. _____ Violation: _____

Synopsis of Incident(s): On 07/16/01, Officer R. Stewart was assigned to 7 Building G Pod. She discovered that an offender was in need of medical attention. She requested a supervisor, however, the supervisor was not called for. She then proceeded to count instead of contacting the supervisor. Off. Stewart failed to take all reasonable steps to get the offender medical attention. The offender had to be transported to a Wichita Falls hospital for heat stroke.

Please be advised that you may:

1. Make a one-time request that the Employee Hearing be rescheduled within 30 days if you are on approved sick leave. The request to reschedule the hearing must be made within 48 hours of receipt of this form;

2. Upon request, be provided copies by the reprimanding authority of the evidence supporting the alleged violation(s) that is subject to disclosure. To obtain copies of evidence that is not subject to disclosure (e.g., confidential portions of IAD and EEO reports), you must request the documents in writing through an Open Records request. The request will be processed in accordance with the rules governing an open records request, and the requested documents may not be available before the Employee Hearing.

3. Present oral or written statements in your behalf;

4. Present witnesses (at no expense to the Agency other than paid time for employees serving as witnesses) or present statements from witnesses in your behalf;

5. Ask questions of person(s) who appear at the Employee Hearing as witnesses against you (confidential informants may be questioned only at the Reprimanding Authority's discretion);

6. Have a representative of your choice present at and participate in the proceedings as outlined in the Guidelines for Employee Hearings on the reverse of this form.

---

I ☒ do ☐ do not wish to appear at the Employee Hearing. I understand my failure to appear without prior notice may constitute a waiver of the right to an Employee Hearing and that the Employee Hearing may be conducted in absentia.

07-31-01
Today's Date

09/5
☒ A.M.
☐ P.M.

Time Notified _____

☒ I wish to waive the 24-hour Notice of Employee Hearing
☐ I do not wish to waive the 24-hour Notice of Employee Hearing

Employee's Signature _Retha Stewart_

---

PERS 184 (09/2000)

(Instructions on Reverse)

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

24-7

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Institutional Division

## Inter-Office Communications

**TO:** Warden Treon          **DATE:** July 31, 2001

**FROM:** Human Resources          **SUBJECT:** Receipt of Disciplinary Information

I, Retha F. Stewart, SS# ████████ received the following disciplinary information from the Human Resources Office, and I acknowledge that a copy will be placed in my unit disciplinary file and Employee Master Personnel File.

1. Notification of Employee Hearing

2. Employee Offense and Pre-Hearing Investigation Report

3. I.O.C. from Major J. Bowman

4. Excerpt from PD-22, General Rules of Conduct and Disciplinary Action Guidelines for Employees

5. PD-30 - Employee Grievance Procedures

_____          07-31-01
Signature                        Date

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

24-8

## TEXAS DEPARTMENT OF CORRECTIONS
## **Inter-Office Communications**

To _____ Warden Treon _____          Date _____ July 31, 2001 _____

From  Personnel Office _____          Subject  Disciplinary Report _____

I.  EMPLOYEE DATA:

   A.  EMPLOYEE:  Retha F. Stewart _____          SHIFT/CARD: GP 1/1 _____

   B.  SSN: ██████████ _____

II.  RECORD OF PAST DISCIPLINARY ACTIONS TAKEN AGAINST THIS EMPLOYEE:

   OFFENSE #1: _____

   _____

   OFFENSE #2: _____

   _____

   OFFENSE #3: _____

   _____

   OFFENSE #4: _____

   _____

III.  ADDITIONAL INFORMATION:

   49 months _____

   _____

   _____

IV.  CURRENT OFFENSE(S)

   __X__  FIRST OFFENSE WITHIN THE LAST TWO YEARS.

   _____  SECOND OFFENSE WITHIN THE LAST TWO YEARS.

   _____  THIRD OFFENSE WITHIN THE LAST TWO YEARS.

   _____  FOURTH OFFENSE WITHIN THE LAST TWO YEARS.

069-008-TE(10/95)

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

24-9

```
***************************************************************************
*** REQUESTOR: JAPER28 - GENTRY, BELINDA      ALLRED UNIT            ***
***************************************************************************
***                 S Y S M   O U T B A S K E T   P R I N T          ***

MESSAGE ID: 730958      DATE: 08/01/01  TIME: 02:39pm  PRIORITY: 000

SUBJECT:    EMPLOYEE DISCIPLINARY


SUBJECT:        DISCIPLINARY ACTION
NAME:           (LAST, FIRST MI) REDDER, FREDERICK L.
SSN:            ████████
JOB TITLE:      CO IV
VIOLATION #:    5A - RECKLESS ENDANGERMENT
PUNISHMENT:     DISMISSAL RECOMMENDED:  INVOLUNTARY USE OF COMP TIME/
                HOLIDAY TIME. VOLUNTARY USE OF OVERTIME/VACATION TIME.
                1003 CAROLINA, GRAHAM, TX.  76450, (940) 549-1808.
ID/MUOF #:      N/A
AUTHORITY:      ROBERT R. TREON, WARDEN II
                JAMES V. ALLRED UNIT

DISCIPLINARY IS: ( X ) WITHIN  (   ) ABOVE  (   ) BELOW THE GUIDELINES.


Sent to:     KCH7197          CHANDONNET, KATHY           (to)
             RPE5135          PENNINGTON, REGINA          (to)
             CTI4772          TILLEY, CYNTHIA             (to)
             CHE5972          HENRY, CYNTHIA              (to)
             JAWAR03          TREON, ROBERT               (to)
             JAWAR15          WATHEN, RICHARD E.          (to)
             JAPER28          GENTRY, BELINDA             (to)
```

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

25-1

## Texas Department of Criminal Justice

DA # _____

### REPRIMAND FORM

IA Case # _____

MUOF # _____

Employee Name: ~~Redder          Frederick          L.~~          SSN: ███████
                 Last           First       MI

Payroll Job Title: __CO  IV__                      Unit/Facility/Dept: ~~Allred/Security   (GP/1/1)~~

Dates(s) of Violations(s): ____07/16/01____     Date Pre-Hearing Investigation Completed: ____07/23/01____

                                                                        FINDINGS (circle)
                                                                       GUILTY

No. _5a(L1)_ Violation: ~~Reckless Endangerment~~             (Yes)/No

No. _____ Violation: _____  Yes/No

No. _____ Violation: _____  Yes/No

No. _____ Violation: _____  Yes/No

Synopsis of Incident(s): ~~On 07/16/01, Officer F. Redder, who was working 7 Bldg G Pod, failed to respond to an officer's request for a supervisor. His refusal resulted in the offender not getting medical attention in a timely manner. He failed to take all reasonable steps to get the offender medical attention. The offender had to be transported to a Wichita Falls hospital for heat stroke.~~

Offender(s) involved (Name/TDCJ Offender ID#), if applicable: ____N/A____

DISCIPLINARY ACTION:

Previous Violation(s): ☐ YES ☒ NO   If yes, list violation number(s) and date(s): ____N/A____

Check and complete one or more of the following:

____ REPRIMAND ONLY

____ DISCIPLINARY PROBATION: _____ Calendar Months Beginning: _____ Ending: _____

____ SUSPENSION WITHOUT PAY: _____ Workdays Beginning: _____ Return: _____

                                _____ Workweeks Beginning: _____ Return: _____

____ REDUCTION IN PAY (Copy of Payroll Status Change attached)

____✓ DEMOTION (Copy of Payroll Status Change attached)

✓ DISMISSAL RECOMMENDED, WITH FOLLOWING ACTION DURING INTERIM:

    ____✓ Involuntary Use of Compensatory Time/Holiday Time

    ____✓ Voluntary Use of Overtime/Vacation Time (Attach a copy of Leave Application)

    ____ Suspension Without Pay (Not to report to work beginning _____)

    ____ Job Change to Another Position

    ____ Administrative Leave (Can only be granted by the Executive Director)

____ NO DISCIPLINE IMPOSED (Provide explanation in space below.)

DISCIPLINE IS: ☒ Within ☐ Above ☐ Below the guidelines. (Provide explanation if above or below the guidelines.)

If this violation was a violation of Rule #24 or Rule #25, check one of the following: This violation ☐ Did ☐ Did Not involve a willful use of excessive force.

EXPLANATION (If no discipline was imposed or if discipline was above or below the guidelines.): *ADMITS OFFICER STEWART STATED SHE NEEDED HIM(?) A SUPERVISOR BECAUSE SOMETHING WAS WRONG WITH THE OFFENDER*

__Robert R. Treon, Warden II__     *[signature]*     __8-1-01__
Reprimanding Authority/Title (printed)       Signature              Date

**Employee's Acknowledgment:** I have been advised of the procedures of progressive disciplinary actions, and my right to file a grievance. I acknowledge receipt of a copy of this reprimand and know that a copy will be placed in my Employee Master Personnel File. If recommended for dismissal, I verify that the following are my current address and phone number:

Mailing Address: ████████████████████████████████████

Phone Number, includi█████████████████████████████████

Employee Signature: *[signature]*     Date: __08-01-01__

PERS 185 (09/2000)       Copy of OIG case to Litigation Support on 06.26.2013 by scm.     (Instructions on reverse)
                         UNAUTHORIZED COPYING OR VIEWING PROHIBITED     *25-2*

PD-22
Attachment B
Page 1 of 2

Texas Department of Criminal Justice
**EMPLOYEE OFFENSE AND PRE-HEARING
INVESTIGATION REPORT**

<u>Purpose:</u>   This form shall be used to record alleged violations of rules or regulations by employees.
It shall also serve as a pre-hearing investigation report.  If additional space is needed for
any portion of this report, a continuation sheet may be attached.

Employee Name:   <u>Redder,</u>          <u>Frederick</u>       <u>L.</u>          SSN:____████████_____
                        Last              First          MI

Payroll Job                              Date of
Title:____<u>Correctional Officer IV</u>_____   Incidents (s):_____<u>07/16/2001</u>_____
                                              (Month/Date/Year)

Description of alleged violation (s):  <u>On 07-16-2001 Officer Redder, who was working 7 Building G Pod,</u>

<u>failed to respond to an officer's request for a supervisor.  His refusal resulted in the offender not getting</u>

<u>medical attention in a timely manner.  He failed to take all reasonable steps to get the offender medical</u>

<u>attention.  The offender had to be   transported to a Wichita Falls hospital for heat stroke.</u>

_____

_____

_____

_____

Employee's Statement:  Officer Stewart did ask for a supervisor that one time before
she count and she stated that the offender would not go into his cell but
he was not refusing house. I told her to try to get him into
his house and she did so.

_____

_____

Employee's Signature: _Frederick Redder_____    Date: _07-23-01_____
PERS 325 (09/2000)                    Page 1 of 2

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

PD-22
Attachment B
25-3

Page 2

Employee Offense and Pre-hearing Investigation Report

Witness:  Have witnesses read description of violation (s).  If the witnesses agree, have them sign and
indicate their "concurrence" with description.  If the witnesses disagree with description, have
the witnesses indicate their "non-concurrence" and attach an IOC with their version of the
incident.

| Witness Name (Printed) | Signature | Concur/Non-Concur | Date |
|---|---|---|---|
| | | / | |
| | | / | |
| | | / | |
| | | / | |
| | | / | |

CHARGING OFFICIAL:

Name: Jimmy O. Bowman          Payroll Job Title: Major of Correctional Officers
(PLEASE PRINT)

Signature: _____          Date: 7-19-01

PRE-HEARING INVESTIGATOR'S REVIEW/RECOMMENDATION:

Name: Richard Watten          Payroll Job Title: Assistant Warden
(PLEASE PRINT)

Recommendation: # Sa. Reckless Endangerment    Disciplinary Action:  Yes ✓   No ___

COMMENTS: Based upon the serious nature of the incident
I recommend the employee appear before the James V.
Aires unit representing authority for violation of
PD-22, Level 1, # SA. Reckless Endangerment.

Signature: Richard Watten          Date: July 23, 2001

PERS 325 (09/2000)          Page 2 of 2

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

**Texas Department of Criminal Justice**
**INSTITUTIONAL DIVISION**

## Inter-Office Communications

To: _____Warden R. Treon_____     Date:_____7-19-01_____

From: _____Major J. Bowman_____     Subject:____As Stated_____

While interviewing Officer Stewart, Retha SSN # ████████ , she stated that she asked Officer Redder, Frederick SSN #████████ twice to call a supervisor. She stated she told Officer Redder something was wrong with the offender. He stated, "So", and to rack him up for count. Officer Stewart admits that she put the offender in the cell and proceeded to count. Officer Stewart then turned in her count sheets and asked the desk officer to have Sgt. March come to the pod when she got off the phone. She never stated the offender needed medical attention.

Officer Redder admits he did not call for a supervisor when Officer Stewart asked for one. He then stated she never said it was for medical reasons. He later admitted that she might have said it was for medical reasons, and he just stated, "So", but he could not remember. Officer Redder later recanted that version and stated she never said it was for medical reasons. Officer Redder still stated he did not call for a supervisor until he saw the offender laying on the cell floor.

I acknowledge receipt of a copy of this action and understand that this information shall be placed in my unit disciplinary file and Employee Master Personnel File.

_____     _____0731-01_____
Name                                 Date

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

25-4

**Texas Department Of Criminal Justice**

**NOTIFICATION OF EMPLOYEE HEARING**

IAD Case # _____
MUOF # _____

DATE: ___07/31/01___   TO: ___Frederick L. Redder___   SSN: ████████

UNIT/FACILITY/DEPT.: ___Allred/Security___   PAYROLL JOB TITLE: ___CO IV___

You are scheduled for an Employee Hearing to be held at ___Warden Treon's Office___ at ___10:00___ (AM/PM)
on ___August 1___ 20 _01_ .

The Employee Hearing will be convened to consider allegations of rule violation(s) against you as referenced in ___PD-22___

The specific offense as listed in the "Guidelines for Disciplinary Actions," is/are:

No. _5a_   Violation: ___Reckless Endangerment___
No. _____   Violation: _____
No. _____   Violation: _____
No. _____   Violation: _____

Synopsis of Incident(s): ___On 07/16/01, Officer F. Redder, who was working 7 Bldg G Pod, failed to respond to an officer's request for a supervisor. His refusal resulted in the offender not getting medical attention in a timely manner. He failed to take all reasonable steps to get the offender medical attention. The offender had to be transported to a Wichita Falls hospital for heat stroke.___

Please be advised that you may:

1. Make a one-time request that the Employee Hearing be rescheduled within 30 days if you are on approved sick leave. The request to reschedule the hearing must be made within 48 hours of receipt of this form.
2. Upon request, be provided copies by the reprimanding authority of the evidence supporting the alleged violation(s) that is subject to disclosure. To obtain copies of evidence that is not subject to disclosure (e.g., confidential portions of IAD and EEO reports), you must request the documents in writing through an Open Records request. The request will be processed in accordance with the rules governing an open records request, and the requested documents may not be available before the Employee Hearing.
3. Present oral or written statements in your behalf;
4. Present witnesses (at no expense to the Agency other than paid time for employees serving as witnesses) or present statements from witnesses in your behalf;
5. Ask questions of person(s) who appear at the Employee Hearing as witnesses against you (confidential informants may be questioned only at the Reprimanding Authority's discretion);
6. Have a representative of your choice present at and participate in the proceedings as outlined in the Guidelines for Employee Hearings on the reverse of this form.

I ☒ do ☐ do not wish to appear at the Employee Hearing. I understand my failure to appear without prior notice may constitute a waiver of the right to an Employee Hearing and that the Employee Hearing may be conducted in absentia.

__07-31-01__
Today's Date

☐ I wish to waive the 24-hour Notice of Employee Hearing
☒ I do not wish to waive the 24-hour Notice of Employee Hearing

☒ A.M.
☐ P.M.
Time Notified __0925__

Employee's Signature _[signature]_

PERS 184 (09/2000)                                (Instructions on Reverse)

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

25-5

**Texas Department of Criminal Justice**
INSTITUTIONAL DIVISION

## Inter-Office Communications

| | |
|---|---|
| To:    John Gilbert<br>Region V Director | Date:    August 3, 2001 |
| From:    Robert R. Treon-Senior Warden<br>James V. Allred Unit | Subject:    Redder, Frederick L.<br>SSN 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 |

On 8-1-01, I conducted an employee disciplinary hearing on COIV Frederick Redder SSN ▮▮▮▮▮ for possibly violating rule number 5A-Reckless Endangerment of the Employee General Rules of Conduct. During the incident in question, Officer Redder was assigned to the 7G-pod control picket when he was made aware by Officer R. Stewart SSN ▮▮▮▮▮ (7G-pod Rover) there was a problem with a newly arrived offender assigned to 7G-21 cell. According to the available evidence, Officer Stewart advised Officer Redder on two occasions over the intercom something was wrong with the offender and she needed a supervisor. Officer Stewart states during their second conversation, she advised Officer Redder the offender was sick. Officer Redder denied this allegation; however, it was corroborated by offenders in the immediate area who overheard Officer Redder on the intercom. Officer Redder also denied he spoke with Officer Stewart twice. Officer Redder did admit Officer Stewart had told him "something" was wrong with the offender and that she requested a supervisor immediately. Officer Redder also admitted he did not contact anyone. When questioned Officer Redder could offer no reasonable explanation for not calling a supervisor to the scene. Officer Redder's admission and the preponderance of the available evidence clearly indicate Officer Redder failed to act in an appropriate manner to Officer Stewart's request for assistance. Based on this evidence and the fact the offender in question was subsequently diagnosed as suffering from heat stroke and remains in critical condition, I find Officer Redder guilty of violating rule 5A-Reckless Endangerment and have recommended his dismissal per PD22 guidelines. It should be noted Officer Redder received training on heat related illness in April of this year. This is submitted for your information.

RT/df

CC: File

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

25-6

McCollum/Cardwell-217

**Texas Department of Criminal Justice**
**INSTITUTIONAL DIVISION**

## Inter-Office Communications

To:   Warden R. Treon – Sr. Warden                    Date:   July 24, 2001

From:   Richard Wathen, Assist. Warden              Subject:   Offender Interviews
          James V. Allred Unit

On July 24, 2001 I interviewed four- (4) offender SSI's regarding the July 16, 2001 incident involving Offender John Cardwell #1041651. These four offenders claim to be witnesses to different events surrounding this incident. The offenders interviewed were Roland Rojas #859646, J. W. McCowan #786708, Christopher Lassiter #573946, and Eugenio Ceniceros #641115.

Offender Lassiter informed me that after Offender Cardwell had been in the section for approximately 15-20 minutes he informed Officer Stewart the offender was sick. He claims prior to this no one knew that the offender was sick as he was responding to questions and moving around without difficulty. He stated during this time period Officer Stewart was checking cells and talking with other offenders. After notifying Officer Stewart of Offender Cardwell's condition, Offender Lassiter claims that she attempted to get the control officer's attention but he did not see her and the intercoms did not work. All of this activity occurred on three- (3) row of One (1) section in G Pod. Offender Lassiter states that Officer Stewart then proceeded to the D space to speak with the control officer via the intercom. He did not hear any of the conversation between Officer Stewart and Officer Redder. He further claims that approximately 15-20 minutes elapsed after that before the sergeant and other officers entered the pod to check on Offender Cardwell.

Offenders McCowan and Ceniceros both claim that they were in the D space when Officer Stewart came out of one section. They state that she attempted to use the intercom by the one section door but it was not working. She then went to the three-section intercom inside the D space and informed the control picket officer that there was a sick offender in the section. Officer Redder made the statement "Fuck him if he dies" or something similar. Both offenders claim to have only been about twenty (20) feet from Officer Stewart and the intercom when this was stated and heard it plainly. They claim Officer Stewart then went towards the desk and told Officer Morales to notify Sgt. March of the situation when she got off the phone (all the offenders claim that the desk was dealing with an offender at the time who was refusing to house). Approximately 15 minutes later the sergeant and other officers came to the pod.

Offender Rojas claims he did not hear any of the conversation between the officers but did verify the times the other offenders provided.

In summation, it appears as if the offenders relate enough of the same information, without it being exact, to indicate truthfulness. The time lines given all indicate that Offender Cardwell was in the section approximately 15-20 minutes prior to anyone becoming aware that he was ill. It appears that Officer Stewart made two (2) separate attempts to notify appropriate staff of the situation. It also appears that Officer Redder was notified in a sufficient manner and gave an inappropriate

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

25-7

response and failed to take further action.   Offender Cardwell remained in the section approximately 15 minutes beyond Officer Stewart's notification to the desk before assistance arrived.


RW/ayh

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

25-8

**Texas Department of Criminal Justice**
**INSTITUTIONAL DIVISION**

**Inter-Office Communications**

To:   <u>Warden Treon – Sr. Warden</u>              Date:   <u>July 25, 2001</u>              _____
        **Allred Unit**

From:  <u>Richard Wathen, Assist, Warden</u>         Subject: <u>Investigation</u>
        James V. Allred Unit

On July 25, 2001 interviews were conducted with staff members concerning the July 16, 2001 incident involving Offender Cardwell, John #1041651 in Seven (7) Building, G Pod.  The following is a timeline and occurrence record as related from accounts given by the staff involved.

1630 hours – Offender Cardwell arrives at Seven (7) Building, G Pod.  Other offenders begin to tease him and made statements such as fresh meat, etc. (This reaffirms staff's original belief that the offender was displaying behavior due to being scared rather than being ill).

1635 hours – Officer Stewart and other offenders discover Offender Cardwell in the shower.  The offender is acting scared and other offenders and Officer Stewart spend the next 10 minutes trying to calm him down and reassure him he will be all right.

1645 hours – Officer Stewart proceeds to the D space and informs Officer Redder that she needs Sgt. March because there is something wrong with an offender.  Officer Redder either replies "So" or "Fuck him" depending on which witness statements are considered (Officer Redder denies making either statement but is unable to recall what his response was).  Officer Redder does acknowledge that he did not call for a supervisor.

1646 hours – Officer Stewart goes back into the section to check on the offender.  At this point she discovers the offender is very hot.  She and some offenders continue to talk to Offender Cardwell in an attempt to calm him down.

1650 hours – Officer Redder claims Officer Stewart leaves the Pod at this time to inform the desk of the problem and when she returns he assumes the situation is resolved.  Officer Stewart and Officer Morales both claim that this did not occur (Officer Redder states that he could be mistaken about this point).

1656 hours – Officer Stewart proceeds back to the D space to again have Officer Redder call for the sergeant because the offender is hot.  Officer Redder claims that this second trip to the D space never occurred because Officer Stewart had already secured the offender in his cell.  Officer Stewart is positive on this point as she claims she secured the offender only a minute before she started her count, which occurs later.

1659 hours – Officer Stewart enters the section again to check on the offender.

1709 hours – Officer Stewart secures the offender in his cell.

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

25-9

1710 hours – Officer Stewart begins her count.

1725 hours – Officer Stewart completes her count and proceeds toward the Seven (7) Building desk. Sgt. March is on the telephone so the tells Officer Morales to have Sgt. March come to the pod when she gets off the telephone. Officer Morales affirms that this is her first contact with Officer Stewart regarding any problem on the pod.

1730 hours – Officer Stewart and Redder switch duty posts. Officer Redder begins his count, arrives at cell 7G-21 and notices Offender Cardwell unresponsive. Officer Redder instructs Officer Stewart to call the sergeant. Officer Stewart notifies the desk. Officer Morales contacts the Medical Department and speaks with LVN Newman.

1730 hours – Officer Morales calls Officer Stewart and inquires as to whether the offender is breathing.

1733 hours – Staff respond to the building with a gurney.

1743 hours – Offender Cardwell is taken from the building to the Unit Infirmary.

Be advised that times are only approximate as all staff times varied slightly. The course of events is believed to be factual as they were verified through witness accounts. The only events which are being contested are the actual number of times Officer Stewart proceeded to the D space and notified Officer Redder of a need for a supervisor and what Officer Redder's response was when notified of the offender's condition. Preponderance of evidence indicates the course of events as listed above are correct and Officer Redder most likely issued an inappropriate response to Officer Stewart's request.

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

25-10

**Texas Department of Criminal Justice**
INSTITUTIONAL DIVISION

# Inter-Office Communications

**To:**      Warden R. Treon                                   **Date:**   July 16, 2001

**From:**      Officer R. Stewart, CO III                    **Subject:**   Offender Cardwell #1041651

At approximately 1630, Offender Cardwell TDCJ #1041651 was brought to 7G to be housed in 21B cell.. At approximately 1635 when I, Officer Stewart CO IV, found Offender Caldwell in the shower, he seemed to be very scared and when he spoke, he rambled. He was taking his shoes off, and the offenders in 7G-1 section were telling him that he would be alright. Offender Edwards went to get him a towel, and Offender Lassiter borrowed some shower slides from an offender in 20 cell. The offenders were telling him to take a shower and calm down. At approximately 1645. I went down to the picket (because you can hardly hear over the speakers). I told Officer Redder to call Sgt. March because something was wrong with the offender. Officer Redder's response was, "So?"

At approximately 1646, I went back to 3 row 1 section shower, and the offender stood up and was coming out of the shower. He told me that he was going to the bus to get his stuff. These were the first words that I understood. He appeared to be shaky. He came out of the shower with Offender Lassiter sort of guiding him. Offender Lassiter said, "Ms. Stewart, touch his arm. He is burning up." I touched his arm (above the wrist), and it was just that, very hot. Offender Cardwell sat back down in the shower stall, and at approximately 1656, I went back down to the picket to call the Sgt. I told Officer Redder that the offender was red hot. Officer Redder said, "What do you mean-red hot?" I said, "His skin is very hot. He is talking out of his head. He is sick or something is wrong." I asked him to call the Sgt. Officer Redder said, "My advice is to rack him up and count." I said, "Is it 5:15?" Officer Redder said, "Close enough for me!"

At approximately 1659, I again went to 3 row 1 section shower. I went back to the offender, and he was walking around like he might not know where he was. I thought that he might be a psych. patient needing some meds. and that he was scared.  With the assistance of other offenders, I got the offender out of the shower and racked him up. At approximately 1710, I went to the floor, got my clipboard, and proceeded with count. I racked up and counted all 3 sections and at approximately 1725 I took my count sheet down front. Sgt. March was on the phone, so I got Officer Morales' attention and told her to tell the Sergeant that I needed to talk to her. I went into 7G control picket, and Officer Redder began the roster count. When he got to 21 cell at approximately 1730, he motioned for me to call rank. Immediately, I called the desk and talked to Ms. Morales and told her that Offender Cardwell had passed out. She hung up, then called me back at approximately 1731 and asked if the offender was breathing. I told her that he was breathing but not responding. At approximately 1733, the desk sent officers and offenders with a gurney to take Offender Cardwell to medical. At approximately 1743, they carried the offender out of 7 Building.

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

25-11

**Texas Department of Criminal Justice**
**INSTITUTIONAL DIVISION**

## Inter-Office Communications

To: _____Warden R. Treon_____          Date: _____July 16, 2001_____

From: _____F. Redder, CO IV_____          Subject: _____Cardwell, John #1041651_____

On 07-16-01 at approx. 1630, Offender Cardwell, John #1041651 came onto the wing to move into 21 cell. At the time said offender came in, the rover was doing an out in 3 section. At approximately 1635, the rover went up to three row so the offender could put his mattress and pillow into his cell. Said offender was walking up and down the three row walkway. At approximately 1640, the rover came down to the D-space and told me that she needed a Sgt. to the pod and the said offender was not refusing housing, but that he would not go into his house. I told her to try to get him into his cell again. At no time did she notify me that she needed medical. I did not call a supervisor. At approximately 1645, she went back up to three row and was talking to the offender. The offender went into his cell, and she closed the cell door and came to the D-space. At approximately 1650, she walked to the desk and came back into the D-space. I thought the problem was resolved. At approximately 1710, she got her count sheet and started counting in 1 section. At approx. 1735, I went to 1 section 3 row to do the roster count. When I got to 21 cell, I saw that the offender was laying in the cell floor not responding to my call for his I.D. card. I got the picket to roll the cell door. I then told the other offender in 21 to step out. I then started trying to get said offender to respond. At approximately 1740, I told Officer Stewart that I needed a Sgt. and that the offender was not responding. Officer Shults and Officer Toll arrived on the pod at approximately 1745 with a cloth gurney to carry him from three row. Due to the offender's weight, I told Officer Stewart that we needed more help. Four SSI's showed up. Me, Officer Shults and Officer Toll placed the offender on the gurney, and the four SSI's carried him from the cell to the front of the desk. At that time, the cloth gurney was ripping, so the SSI's placed him on the floor in front of the desk, while Officer Merklin went to medical to retrieve a gurney to roll him to medical. At approximately 1755, Officer Merklin showed up on the building with the gurney and the offender was placed on the gurney and immediately rolled to medical. At approximately 1800, I went to medical to assist. At approximately 1810, I was asked by a nurse to help take off said offender's boots. I then left medical and returned to 7 Building. At approximately 1820 I left 7 Building to turn the roster counts in and then went to medical to talk to the captain. At the time said offender was being rolled to the ambulance. At approximately 1830 I was asked to give the E-mail to the officer leaving. I then left medical. I have no further knowledge of this incident.

Copy of OIG case to Litigation Support on 06/28/05 by sem.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

*Freebush F. Redder*

25.12

**Texas Department of Criminal Justice**
**INSTITUTIONAL DIVISION**

# Inter-Office Communications

To:    Warden R. Treon                          Date:    July 16, 2001

From:    Offender Eugenio Ceniceros #641115        Subject:    As Stated

On 7-16-01 inmate arrived at 7-G. SSI's were carrying a mattress and pillow to 21-3 Row. I saw Mrs. Stewart with the inmate, inmate did not want to go to the cell. He went to the shower and stayed in there. I thought he was scare. His face started to get blue. Mrs. Stewart told the picted officer that the inmate was very sick. Officer reply was Fuck Him. I'm on the telephone now, if he dies he dies. Then Mrs. Steward went to the desk and said to Mrs. Morales that there was a sick man to tell Sgt. March. Mrs. Morales alright alright. Mrs. Morales told us SSI's to the end of H pot hall and sit down. Sgt. March said you all SSI's go to your pot's. Sgt. March was coming out when inmates were carrying the sick man. Sgt. said put him down and told Morales to call inforey for a gurney and told the officers to get the camera. The officer did not know how to turn it on or was having trouble with it.

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

25-13

Texas Department of Criminal Justice
INSTITUTIONAL DIVISION

# Inter-Office Communications

To: _____Warden R. Treon_____       Date: _____July 16, 2001_____

From: ___Offender J. W. McCowan TDC #786708 (7G-16T)__       Subject: ____As Stated_____

On the 16th of July, 2001 while I was working in 7 building G pod, a new inmate was brought in with mattress and what I assumed was his property. This inmate was complaining say, "I sick" and he was acting somewhat strange. There was some sort of problem as to getting him in a house, because he was in the shower. After housing this inmate Ms. Steward came out and told the boss something to the fact that this inmate "was not going to make it." The picket boss's response was, "Fuck him, if he dies he dies or something to that effect." Soon there after she went to the desk and told Ms. Morales. But nothing was done.

Then we went about our jobs, as cleaning and staying with Ms. Steward. Then count was called and all SSI(s) was called to the front. After 30 or 40 minute we were called to assist the office in getting this inmate from 3 row because he was out for the count.

While carry him the gurny began falling apart from dry rot and the inmates weight. After, get him to the front desk. The Sg. Ms. March called the infirmary for a wheel chair, but was told there was anyone available to bring it, so, she send a duty office.

At this time I notice that the inmate's face was beginning to turn blue, I inform the Sg. She order the camera be put on him and sent us back to our assigned pod.

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

25-14

**Texas Department of Criminal Justice**
**INSTITUTIONAL DIVISION**

# Inter-Office Communications

To: _____Warden R. Treon_____          Date: _____July 16, 2001_____

From: ___Offender Christopher Lassiter #573946_____          Subject: ____As Stated_____

       On 7-16-01 between the hrs. of 4:20 and 5:20 p.m. I had introduced myself to Inmate Powers who was new on the farm and assigned to 7G-21 (B). The reason why I introduced myself to this inmate is because I thought he was afraid because he was sitting in the shower on the metal ledge and wouldn't come out. I explained to the guy that things were cool on this farm and that nobody wanted to hurt him or to take his stuff He seemed to understand. His physical appearance wasn't exactly good and his skin was extremely hot. I know this because I shook his hand. After I shook his hand and realized how hot it was, I touched his arm. It was even more hot than his hand. I alerted Officer Stuart to this guys skin temperature who in turn escorted the offender to his cell and locked the cell door. Officer Stuart then left to inform Officer Redder in the control picket while I stayed in front of Offender Powers cell to make sure he was well enough untill medical could get to his cell. Once the security personel was alerted to the inmates condition and since there was nothing else I could do for inmate Powers, I left and proceeded with my SSI duties. AT around 5:15-5:20 cleaning the outside recreation yard when I saw officers with a green stretcher. A few minutes later several inmates went to G-pod to help bring Inmate Powers to the infirmary because he was heavy (at least that's what I assume). The stretcher was ripping while the inmate was on it. So he was sat down in front of the searchers desk while another female officer left to go to get a gurney form the building. While the inmate was on the stretcher on the floor he was shaking and having a hard time breathing and his whole head was turning a dark blue. It was almost like he was going into convulsion. Officer Schulz put the video camera on the inmate and we were told by Sgt. March to go to our assigned pods. We left.

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

25-15

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Institutional Division

## Inter-Office Communications

TO:    Warden Treon                          DATE:    July 31, 2001

FROM:  Human Resources                       SUBJECT:  Receipt of Disciplinary Information

I, Frederick L. Redder, SS█████████ received the following disciplinary information from the Human Resources Office, and I acknowledge that a copy will be placed in my unit disciplinary file and Employee Master Personnel File.

1. Notification of Employee Hearing

2. Employee Offense and Pre-Hearing Investigation Report

3. I.O.C. from Major J. Bowman

4. Excerpt from PD-22, General Rules of Conduct and Disciplinary Action Guidelines for Employees

5. PD-30 - Employee Grievance Procedures


_____          07-31-01
Signature                                  Date

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

25-16

# TEXAS DEPARTMENT OF CORRECTIONS
## Inter-Office Communications

To _Warden Treon_                          Date _____07/31/01_____

From _Personnel Office_                    Subject _Disciplinary Report_

I. EMPLOYEE DATA:

    A.   EMPLOYEE: ___Frederick L. Redder___     SHIFT/CARD: _GP/1/1_

    B.   SSN: _____ ████ _____

II. RECORD OF PAST DISCIPLINARY ACTIONS TAKEN AGAINST THIS EMPLOYEE:

    OFFENSE #1: _____

    OFFENSE #2: _____

    OFFENSE #3: _____

    OFFENSE #4: _____

III. ADDITIONAL INFORMATION:

    _73 Months of Service_

IV. CURRENT OFFENSE(S)

    __X__ FIRST OFFENSE WITHIN THE LAST TWO YEARS.

    _____ SECOND OFFENSE WITHIN THE LAST TWO YEARS.

    _____ THIRD OFFENSE WITHIN THE LAST TWO YEARS.

    _____ FOURTH OFFENSE WITHIN THE LAST TWO YEARS.

069-008-TE(10/95)

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

25-17

CARDWELL, John Wesley (W)

| Name | Number | Offense | Sent. | Class | Ed. | Plea |
|------|--------|---------|-------|-------|-----|------|
| CARDWELL, John Wesley (W) | 1041651 | DWI | 9Y | IIB | 10 | Yes |

| Max Expir | Minimum Expiration | | | | | | E.A./I.Q. | Age | DOB | Int./By | Religion |
|-----------|---|---|---|---|---|---|-----------|-----|-----|---------|----------|
| 04/16/2009 | 06/12/2004 | | | | | | Not Tested 85 | 39 | 09/01/1961 | 06/13/2001 ALS / rm | Pentecostal |

| COUNTY | Sent. Beg. | Date Received |
|--------|-----------|---------------|
| Williamson | 04/16/2000 | 06/07/2001 |

Sewing Machine Operator   Carpenter   Laborer

### EMPLOYMENT

| Inst. | Commitments | Escapes |
|-------|-------------|---------|
| Juv Prob | | |
| Prob Snt | 4-3REV | |
| Jails | 13 | |
| Ref'y | | |
| Det Hosp | 6 | |
| Det Home | 6 | |
| St Trans | 2 | |
| St Jail | | |
| SubA TF | | |
| TDCJ-ID | 1 | |
| O/Pris | | |

**ALL POSTINGS**

Jail Good Time Credited From Sentence Begin Date
70th/72nd/73rd LEGISLATURE -
DISCRETIONARY MANDATORY SUPERVISION RELEASE CANDIDATE HB-1433
L1 EFF: 04/16/2000  W EFF: 04/16/2000

JUL 1 2 2001  *allred*  *LIMI*
7/16/01  *JAVA(01)*  *LI / MI  G.S.*

### Transfers and Assignments

| DATE | UNITS | WORK |
|------|-------|------|
| CARDWELL, John Wesley | | |
| # 1041651 | | |
| 7-16-01 | Ja | GS30 |
| 7-16-01 | Ja | RGDTRANS |

**ALL POSTINGS (Cont'd.)**

DWI (1) (9 years)

ILLNESS, INJURY OR DEATH - NOTIFY
Mittie Messerli (MO)
2815 Winsor, Waco, TX  (254-754-5467)

RACE: WHITE          SEX: MALE          HEIGHT: 05' 05"    WEIGHT: 213

COMPLEXION: RUDDY                EYES:  HZL      HAIR:  BRN

NATIVITY:  Arlington, Tarrant Co., TX                MARKS and SCARS:

CUT SCAR LFT HEAD, TAT SPIDER WEB/SPIDER INSD LFT LEG, JUDY LFT
CHEST, TEXAS/MICKEY MOUSE/BARS OUTSD LFT F/ARM, CLOWN FACE
OUTSD RT F/ARM, OTHER TATS

DETAINERS:

26-1

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED.

| Transfers and Assignments | | |
|---|---|---|
| DATE | UNIT | WORK |
| | #1041651 | |

**SUMMARY:**

Current DPS report indicates 14 arrests--admits 25 arrests resulting in 6 confinements McLennan County Juvenile Detention Center for RUNAWAY, Delinquency, and Incorrigibility (released to parents on each)--2 weeks Henderson County Jail for Possession Of MARIJUANA (under 2 OUNCES, claims dismissed)--1 confinement McLennan County Jail for DWI PROBATION REVOCATION (time served)--1 confinement McLennan County Jail for Theft $20-$200 (claims dismissed)--1 confinement McLennan County Jail for Burglary Of A Habitation (claims dismissed)--30 days McLennan County Jail for Possession Of MARIJUANA (under 2 OUNCES, time served)--1 confinement El Lano County Jail for DWI (fined and time served)--1 year McLennan County Jail for DWI, Driving While License Suspended, and Resisting Arrest (fined and time served)--1 confinement McLennan County Jail for Driving While License Suspended (time served)--1 confinement McLennan County Jail for INHALANT Abuse (subject denies, claims dismissed)--1 confinement Bosque County Jail for Driving While License Suspended (time served)--1 confinement Travis County Jail for Public INTOXICATION (time served)--1 confinement Adams County, Colorado Jail for DWI and Traffic Violations (claims dismissed)--1 confinement McLennan County Jail for DWI PROBATION REVOCATION (time served)--2 year adult probation McLennan County 1986 for DWI (revoked to time served)--1 year adult probation McLennan County 1990 DWI (claims completed)--2 year adult probation McLennan County 1993 for DWI (revoked to time served)--5 year adult probation Bosque County 1994 for DWI (revoked and reduced as portion of first TDCJ-ID incarceration)--X/Carter Street Treatment Center, Austin, Texas, on a voluntary commitment as an inpatient, for ALCOHOL ABUSE and mental observation, claims confined 1 month and released in 1991--XXX/Austin State Hospital, Austin, Texas, on a voluntary commitment, as an inpatient, for NARCOTICS/ALCOHOL ABUSE and mental observation, claims treated 1 month and released in 1993; voluntary commitment as an inpatient, for mental observation, treated for 2 weeks and released in 1993; voluntary commitment as an inpatient, for mental observation/NARCOTICS/ALCOHOL ABUSE, claims treated 2 weeks and released in 1993--X/Charter Hospital, Austin, Texas, on a voluntary commitment as an inpatient, for ALCOHOL ABUSE and mental observation, claims treated 1 month and released in 1994--X/MHMR, Austin, Texas, on a voluntary commitment, as an inpatient, for mental observation, claims treated 4 months and released in 1996--X/TDCJ-ID #752922, on a 3 year sentence, from Travis County for 1 count of DWI, received at the Gurney State Transfer Facility on 06/27/1996, maintained clear record, 07/23/1996 assigned to Jester 3 Unit (MINIMUM-IN) Line Class 1 effective 02/14/1996, 08/02/1996 new commitments received from Bosque County on a new conviction of 4 years concurrent for 1 count of DWI, change net sentence from 3 years to 4 years, change sentence begin date to 02/15/1996, 12/11/1996 screened for BPP/PPT denied due to medical, 01/27/1997 SAT 4W, 05/13/1997 SAT 3W, maintained clear record, 11/14/1997 released on MANDATORY SUPERVISION to McLennan County; 02/15/2000 MANDATORY SUPERVISION DISCHARGE; as present TDCJ-ID #1041651, was received at the Holliday State Transfer Facility, has maintained a clear record--RAT OF P.O. "BECAUSE I'M AN ALCOHOLIC"--claims contact with father, mother, stepfather, 2 sibs (brother, Jackie CARDWELL, X/TDCJ-ID)--claims sporadic contact with wife, 1 child, 2 step children, and 3 half sibs--claims 1 half sib deceased--claims 1 marital failure with 1 child involved--claims married and separated--residence unstable--education claims 10 (NOT VERIFIED; GED, TDCJ-ID, 1998, WISD VERIFIED)--employment claims sewing machine operator (WISD VERIFIED), carpenter (WISD VERIFIED), and laborer--home stability poor due to one marital failure, current marital separation, and divorce of parents--admits use of INHALANTS, MARIJUANA, and COCAINE beginning at age 16--admits SALE of METHAMPHETAMINE beginning at age 17--admitted ALCOHOLIC--admits 4 SUICIDE attempts from ages 12-33 by hanging, car wreck, OVERDOSE, and shooting himself with shotgun--current offense of DWI involves the subject operating a motor vehicle on a public street while being under the influence of

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

26-2

McCollum v. Livingston 230

| Date | Place | Work |
|------|-------|------|
| | CARDWELL, John Wesley | |
| | #1041651 | |
| | Jacket #1 | |

ALCOHOL--there was a good report from Williamson County Jail Authorities-- refer to Diagnostic and Evaluation Classification Summary--

PROGRAM RECOMMENDATIONS:

NONE

ASSESSED JOB SKILLS:  CARPENTER; BUILDING MAINTENANCE

DPS#: 3055666
FBI#: 872240FA6
SSN#: 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
DL#:  N/A

Center, Austin, Texas, on a voluntary commitment as an inpatient, for ALCOHOL ABUSE and mental observation, claims confined 1 month and released in 1991--XXX/Austin State Hospital, Austin, Texas, on a voluntary commitment, as an inpatient, for NARCOTICS/ALCOHOL ABUSE and mental observation, claims treated 1 month and released in 1993; voluntary commitment as an inpatient, for mental observation, treated for 2 weeks and released in 1993; voluntary commitment as an inpatient, for mental observation/NARCOTICS/ALCOHOL ABUSE, claims treated 2 weeks and released in 1993-- X/Charter Hospital, Austin, Texas, on a voluntary commitment as an inpatient, for ALCOHOL ABUSE and mental observation, claims treated 1 month and released in 1994-- X/MHMR, Austin, Texas, on a voluntary commitment, as an inpatient, for mental observation, claims treated 4 months and released in 1996--X/TDCJ-ID #752922, on a 3 year

### TEXAS DEPARTMENT OF CRIMINAL JUSTICE
#### Institutional Division



ID Number:  1041651
Date:  06/07/01
Name:  JOHN WESLEY CARDWELL

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

26-3

Use pre-punched 5-hole paper when copying
Copy double-sided 8  d-To Toe

UNITED REGIONAL HEALTH CARE SYSTEM
11TH

**NURSING PLAN OF CARE**

united Regional
Health Care System

36-24-04 [N]
CARDWELL, JOHN W
SZCZERBA, ARTHUR J  9061  ADM  7/16/01
DOB 9/01/61    039Y
00011324092    M
UNITED REGIONAL HEALTH CARE SYSTEM

RN INITIALS

lan of Care Will Be Initiated by RN Within 24° of Admission
g Dx Must Be Addressed In Patient Care Record Until Resolved

Observations & Interventions  with  Goals & Expected Outcomes

Licensed Clinical Tech to sign initials in appropriate column each shift.
Changes to Plan of Care will be initialed by licensed person.

Restraint/    interventions:

1. Every 2 hours perform circulatory checks on restrained or Immobilized extremity
2. Every 2 hours while awake and PRN when indicated: remove the restraint and perform ROM on all restrained or Immobilized extremities, one extremity at a time.
3. Every 2 hours while awake and PRN when indicated: reposition
4. Every 2 hours while awake and PRN when indicated: encourage coughing and deep breathing
5. Every 2 hours while awake and PRN when indicated: offer fluids and opportunity for elimination
6. Assist patient with meals at unit specific mealtimes and PRN
7. Assist patient with ambulating PRN as warranted by patient's condition
8. Reassess the patient to determine the continuing need for the restraint/MPD every shift and PRN for patients with primary med/surg needs
9. Educate the patient/SO about why the restraints/    is being used, care to be given and how to prevent future use.
). Document according to procedure on unit specific nurse notes.

| DATE | DATE | DATE | DATE | DATE | DATE | DATE |
|---|---|---|---|---|---|---|
| 7/30 | 7/31 | 8/ | | | | |
| A-P Initials | A-P Initials | A-P Initials | A-P Initials | A-P Initials | A-P Initials | A-P Initials |
| P-A Initials | P-A Initials | P-A Initials | P-A Initials | P-A Initials | P-A Initials | P-A Initials |
| KAG | KAG | JA | | | | |

Comments: (Include Additions, Deletions, Date Resolved)

Pt on Digoxin & Maravan  D'Cd
patient

Place Preprinted or Handwritten Care Plan Here

| DATE | DATE | DATE | DATE | DATE | DATE | DATE |
|---|---|---|---|---|---|---|
| A-P Initials | A-P Initials | A-P Initials | A-P Initials | A-P Initials | A-P Initials | A-P Initials |
| P-A Initials | P-A Initials | P-A Initials | P-A Initials | P-A Initials | P-A Initials | P-A Initials |

Comments: (Include Additions, Deletions, Date Resolved)

| Initials | Name / Title / Shift | Initials | Name / Title / Shift |
|---|---|---|---|
| | | KAG | K. Goldsmann RN |
| | | | Janetta Hooker RN |

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Rev. 01/97

27-1





**See Admission Assessment database for initial admitting assessment**

| | ASSESSMENT | AM | PM |
|---|---|---|---|
| MENTAL | Alert — Paralyzed | | ✓ |
| | Cooperative/Uncooperative | | |
| | Anxious/Restless/Agitated | | |
| | Speech Clear/Slurred | | Trach |
| PULMONARY | Breath Sounds: Clear R/L | | |
| | Crackles R/L | ✓ | |
| | Wheezes R/L | ✓ | |
| | Rhonchi R/L | ✓ | ✓ |
| | Diminished R/L | | |
| | Absent R/L | | |
| | Resp. Effort: Regular/Irregular | ✓ | ✓ |
| | Unlabored/Labored | ✓ | ✓ |
| | Accessory Muscle Use | | no |
| | Symmetrical Chest Expansion | ✓ | ✓ |
| | Denies/Admits SOB or Dyspnea | * | |
| | Cough: Productive/Nonproductive | ✓ | SX |
| | Color — bloody | | → |
| | Tracheostomy | ✓ | ✓ |
| | Cuff up/down | ✓ | ✓ |
| | Tube secured in place | | ✓ |
| | Ambu at bedside | ✓ | ✓ |
| | ET tube: oral/nasal | | |
| | # cm at teeth/lip | | |
| | size — Shiley | | 8 |
| CHEST TUBES | **CT # 1 site:** | | |
| | Suction: # cm H2O/Gravity | | |
| | Bubbling | | |
| | Fluctuation in chamber | | |
| | Crepitus | | |
| | Drainage: Sang/Serosang/Sero | | |
| | Tubing Connections Secure | | |
| | CT Dressing Dry & Intact | | |
| | **CT # 2 site:** | | |
| | Suction: # cm H2O/Gravity | | |
| | Bubbling | | |
| | Fluctuation in chamber | | |
| | Crepitus | | |
| | Drainage: Sang/Serosang/Sero | | |
| | Tubing Connections Secure | | |
| | CT Dressing Dry & Intact | | |
| | **CT # 3 site:** | | |
| | Suction: # cm H2O/Gravity | | |
| | Bubbling | | |
| | Fluctuation in chamber | | |
| | Crepitus | | |
| | Drainage: Sang/Serosang/Sero | | |
| | Tubing Connections Secure | | |
| | CT Dressing Dry & Intact | | |
| | **CT # 4 site:** | | |
| | Suction: # cm H2O/Gravity | | |
| | Bubbling | | |
| | Fluctuation in chamber | | |
| | Crepitus | | |
| | Drainage: Sang/Serosang/Sero | | |
| | Tubing Connections Secure | | |
| | CT Dressing Dry & Intact | | |

| | ASSESSMENT | AM | PM |
|---|---|---|---|
| | Apical Pulse Regular /Irregular | | ✓ |
| | Capillary Refill: < 2 sec/>2 sec | | ✓ |
| | Neck Veins: Flat/Distended | | ✓ |
| CARDIAC | EKG Rhythm | SR/ST | ST |
| | Lead | | II |
| | EKG Hi/Lo Alarms On at: | 150/50 | 150/50 |
| | Pacer: Temporary/Permanent | | |
| | Insertion Depth (cm) | | |
| | Transvenous/External | | |
| | Epicardial Wires | | |
| | Pulse Generator On/Off | | |
| | Rate | | |
| | MA | | |
| | Demand/Asynchronous | | |
| HEMODYNAMICS | Transducers: Leveled with RA | | |
| | Zeroed & Calibrated | | |
| | 1000 U. Heparin | | |
| | 500 CC. NS Flush | | |
| | **A - Line Site:** | | |
| | Proper Wave Form | | |
| | MAP HI/LO Alarms On at | | |
| | Drsg dry & Intact | | |
| | **PA Catheter Site:** | | |
| | Insertion Depth (cm) | | |
| | Proper Waveform | | |
| | Drsg Dry & Intact | | |
| | **CVP Catheter Site:** | | |
| | Proper Waveform | | |
| | Drsg Dry & Intact | | |
| | **IABP Site:** | | |
| | Ratio I: | | |
| | Proper Augmentation | | |
| | Alarm On | | |
| | Drsg Dry & Intact | | |
| SKIN | Intact/Break in Skin Surface* | | ✓ |
| | Warm Cool | | ✓ |
| | Dry/Clammy/Diaphoretic | | ✓ |
| | Pink/Pale (✓ nailbeds/mucous membranes) | | ✓ |
| | Cyanotic/Flushed/Jaundiced | | ✓ |
| | Edema - Site | | gen |
| | +1 (+2) +3 P=Pitting | | |
| GI - GU | Urine Color — very dk Amber/Tea | | |
| | Clear/Cloudy/Bloody | ✓ | ✓ |
| | Voids/Foley/CBI | | ✓ |
| | Abdomen: Soft/Firm | ✓ | ✓ |
| | Flat/Distended | ✓ | ✓ |
| | Nontender/Tender | | ✓ |
| | Bowel Sounds: Present/Absent | ✓ | ✓ |
| | Hypoactive/Hyperactive | | ✓ |
| | Expels Flatus | | |
| | NGT/PEG (Placement verified) | ✓ | ✓ |
| | suction/clamped/feeding | ✓ | ✓ |
| | Urostomy/Ileostomy/Colostomy | | |
| | Stoma Pink/Other | | |
| | Rectal tube | | ✓ |

| | ASSESSMENT | AM | PM |
|---|---|---|---|
| SURGICAL | **Incision #1 Site** | | |
| | Open to Air/Dressing | | |
| | Dressing Dry & Intact /Drainage | | |
| | Edges: Approximated /Open* | | |
| | with: Staples/Sutures/Steri Strips | | |
| | Redness/Induction/Swelling | | |
| | Drainage: Sang/Serosang/Sero | | |
| | Purulent | | |
| | Amount: Sm/Mod/Lrg | | |
| | **Incision #2 Site** | | |
| | Open to Air/Dressing | | |
| | Dressing Dry & Intact /Drainage | | |
| | Edges: Approximated /Open* | | |
| | with: Staples/Sutures/Steri Strips | | |
| | Redness/Induction/Swelling | | |
| | Drainage: Sang/Serosang/Sero | | |
| | Purulent | | |
| | Amount: Sm/Mod/Lrg | | |
| DRAINS | Drain Tube - Site & Type: | | |
| | Drainage: Sang/Serosang/Sero | | |
| | Drain Tube - Site & Type: | | |
| | Drainage: Sang/Serosang/Sero | | |
| IV ACCESSES | IV Access: Site (R) sc tl? | | ✓ |
| | Patent | | ✓ |
| | IV Access: Site | | |
| | Patent | | |
| | IV Access: Site | | |
| | Patent | | |
| SAFETY | Bed in Low Position | | ✓ |
| | Call Light in Reach | | ✓ |
| | Side Rails Up: Upper/Full | | ✓ |
| | **POTENTIAL FOR VIOLENCE** | | no |
| ASSESSORS | Assessors Initials | AP [illegible] | PA KAG |

ASSESSORS: [signature] L. P. Chamberlain — AP

RN SIGNATURE: [signature] RN — PA

UNITED REGIONAL HEALTH CARE SYSTEM
11TH
36-24-04 |N|
CARDWELL, JOHN W
SZCZERBA, ARTHUR J 9061 ADM 7/16/01
DOB 9/01/61 039Y
00011324092 M

scm. 6

UNAUTHORIZED COPYING OR VIEWING PROHIBITED

27-2

UNITED REGIONAL HEALTH CARE SYSTEM
36-24-04 INI 11TH
CARDWELL, JOHN W
SZCZERBA, ARTHUR J 9061 ADM 7/16/01
DOB 9/01/61 039Y
00011324092 M
UNITED REGIONAL HEALTHCARE SYSTEM

United Regional Health Care System

# PATIENT CARE RECORD - OBSERVATIONS
## SPECIALTY CARE
Form # 8330/03 (REV. 12/99)

CODE STATUS: Full
ALLERGIES: NKA

| GLASGOW COMA SCALE | | |
|---|---|---|
| EYE OPENING | Spontaneous | 4 |
| | To Voice | 3 |
| | To Pain | 2 |
| | None | 1 |
| VERBAL RESPONSE | Oriented | 5 |
| | Confused | 4 |
| | Inappropriate Words | 3 |
| | Incomprehensive Words | 2 |
| | None | 1 |
| MOTOR RESPONSE | Obeys Commands | 6 |
| | Localizes Pain | 5 |
| | Withdraws (Pain) | 4 |
| | Flexion (Pain) | 3 |
| | Extension (Pain) | 2 |
| | None | 1 |

PUPILS (cm): 1, 2, 3, 4, 5, 6, 7, 8

EXTREMITIES — STRENGTH (Grips): 3 - Strong; 2 - Fair; 1 - Weak; 0 - Absent

PULSES: P = Palpable; D = Doppler; P1 - Weak; P2 - Fair; P3 - Strong; D1 - Monophasic; D2 - Biphasic; D3 - Triphasic

| | 07 | 08 | 09 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 00 | 01 | 02 | 03 | 04 | 05 | 06 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Respirations / O2 Sat % | | 20/95 | 19/98 | 20/98 | | 20/95 | | 97 | | 20/96 | | | 20/97 | 24/98 | 19/97 | 21/95 | 20/94 | 20/95 | 20/96 | 20/96 | 30/95 | 20/94 | 20/95 | 20/95 |
| CO/CI | | | | | | | | | | | | | | | | | | | | | | | | |
| CVP/PCWP | | | | | | | | | | | | | | | | | | | | | | | | |
| PAP | | | | | | | | | | | | | | | | | | | | | | | | |
| SVR/PVR | | | | | | | | | | | | | | | | | | | | | | | | |
| NEURO Eye Opening | | 1 | | 1 | | | | | | | | | | 1 | | | | 1 | | | | 1 | | |
| Verbal Response | | 1 ET | | 1 ET | | | | | | | | | | Trach | | | | Trach | | | | Trach | | |
| Motor Response | | 1 | | 1 | | | | | | | | | | 1 | | | | 1 | | | | 1 | | |
| Total (≥ 7 indicates coma) | | 3 | | 3 | | | | | | | | | | 3 | | | | 3 | | | | 3 | | |
| Pupils L | | SL 4 | | 4 | | | | | | | | | | Sluggish 4 | | | | | | | | | | |
| Pupils R | | R 4 | | 4 | | | | | | | | | | Sluggish 4 | | | | | | | | | | |
| Extremities Arm L | | — | | | | | | | | | | | | 0 | | | | | | | | | | |
| Extremities Arm R | | — | | | | | | | | | | | | 0 | | | | | | | | | | |
| Extremities Leg L | | — | | | | | | | | | | | | 0 | | | | | | | | | | |
| Extremities Leg R | | — | | | | | | | | | | | | 0 | | | | | | | | | | |
| PULSES Time | | | | | | | | | | | | | | 2000 | | | | | | | | | | |
| Radial L | | P1 | | | | | | | | | | | | P2 | | | | | | | | | | |
| Radial R | | P1 | | | | | | | | | | | | P2 | | | | | | | | | | |
| Dorsalis Pedis L | | \| | | | | | | | | | | | | P2 | | | | | | | | | | |
| Dorsalis Pedis R | | \| | | | | | | | | | | | | P2 | | | | | | | | | | |
| Posterior Tibial L | | \| | | | | | | | | | | | | P1 | | | | | | | | | | |
| Posterior Tibial R | | \| | | | | | | | | | | | | P1 | | | | | | | | | | |
| TOE | | 4/4 | | | | | | | | | | | | 4/4 | | | | 2/4 | | | | 2/4 | | |

27 3

Copy of OIG case to Litigation Support on 06.26.2014 by scm
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Form # 8330/03 (REV. 12/99) DATE: 7-31-01 ROOM# 8

UNITED REGIONAL HEALTH CARE SYSTEM
11TH

36-24-04 [N]
CARDWELL JOHN W    9061  ADM  7/16/01
SZCZERBA, ARTHUR J    039Y
DOB 9/01/61    M
00011324092


United Regional Health
Care System

Form # 8330/03 (REV. 12/99)

## SIGNATURE KEY

| Initials | Name, Title | Initials | Name, Title | Initials | Name, Title |
|---|---|---|---|---|---|
| Pmc | P Chamberlain | KAG | K. Kadsmann RN | | |
| | | | | | |
| | | | | | |

## PRN MEDICATION ASSESSMENT          (Pain Scale: 0=no pain & 10= maximum pain)

☐ Pt. has PCA or Epidural: See Pain Management 24° Flow Sheet for Documentation R/T Pain Management

| INITIAL ASSESSMENT | | | | | EVALUATION OF INTERVENTION | | | |
|---|---|---|---|---|---|---|---|---|
| Time | Initials | Pain Level | Problem/Focus | Intervention | Time | Initials | Pain Level | Assessment |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

## NARRATIVE NOTES

**Nursing Dx Must Be Addressed In Patient Care Record Until Resolved**

| Time | | Intervention & Evaluation |
|---|---|---|
| 0815 | | Sedated c paralyzed. Skin warm dry, color jaundiced & very edematous. Tracheostomy to vent. See vent settings. Bilat breath sounds - exp wheezes. Rhonchi, noted suction lg amts - bloody secretions. Abdomen extremely distended and firm. unable to auscultate bowel sounds. NG tube - clamped, present, placement checked. foley patent. urine is dark. Rectal tube draining lg amt lig stool. Feet and legs also edematous. ® mid line patent & IV infusing. See IV flowsheet. —— P Chamberlain |
| 09 | | Repositioned. Suctioned bloody secretions. O2 sat mid to upper 90's - Give MS 3mg IV c bolus for R R - P Chamberlain |
| 10 | | No new changes this time. No fair. P Chamberlain |
| 1230 | | Repositioned. Suctioned - remains sedated c paralyzed still gout drng from rectal tube. P Chamberlain |
| 14 | | Assess unchanged. O2 sats mid 90's - Dr Chatravedi here earlier - Prioritees? P Chamberlain |
| 16 | | Repositioned. Trach care done. July care done. —— Pmc |
| 1800 | | No new changes. O2 sat mid 90's - Pmc |
| 19 | | Report to Kadsmann RN P Chamberlain |
| 2000 | | VSS, F/C + Rectal Tube patent, IVF infusing 3 guards @ BS (prisoner), eye taped shut to prevent drying, severe ascites of abd, cooling blanket on automated control + Rectal Temp cord in place. —— KAG |
| 2200 | | CPN hung, nd A in status noted. —— KAG |
| 2350 | | VSS, pt resting quietly, RR even/unlabored, KAG |
| 01:30 | | nd 21-5 KAG |

Copy of OIG case to Litigation Support 11-26-26 2013 by epmc
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

DATE: 7/21/01    ROOM#

UNITED REGIONAL HEALTH CARE SYSTEM
36-24-04 [N]                              11TH
CARDWELL, JOHN W
SZGZERBA, ARTHUR J  9061  ADM  7/16/01
DOB 9/01/61   039Y
00011324092          M
UNITED REGIONAL HEALTH CARE SYSTEM

Form # 8330/03 (REV. 12/99)

## NURSING INTERVENTIONS

| Time | 08 |
|---|---|
| O2 via | 100 |
| L/M or FIO2 | 50  45 |
| CMV/SIMV Rate | 20  20 |
| Vt | 800 700 |
| CPAP / PEEP | 0 |
| PSV | 0 |
| PCV | |
| DS | |

## NURSING INTERVENTIONS

| HOUR | 07 | 08 | 09 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 00 | 01 | 02 | 03 | 04 | 05 | 06 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ambulation | | | | | | | | | | | | | | | | | | | | | | | | |
| Up to Chair | | | | | | | | | | | | | | | | | | | | | | | | |
| Dangle | | | | | | | | | | | | | | | | | | | | | | | | |
| Turn | | | | | | | | | | | | | ✓ | | | | ✓ | | ✓ | | | | | |
| CDB | | | | | | | | | | | | | | | | | | | | | | | | |
| TED Care Linen Δ | | | | | | | | | | | | | | | | | | | | ✓ | | | | |
| Bath/Shower | | | | | | | | | | | | | | | | | | | | ✓ | | | | |
| Mouth Care | | | | | ✓ | | | | | | | | | | | | | | | ✓ | | | | |
| Foley Care | | | | | | | ✓ | | | | | | | | | | | | | ✓ | | | | |
| Trach Care | | | | | | | | | | | | | | | | | | | | | | | | |
| Oral/Naso/Trach/ETT Suctioning | | | | | | | | | | | | | oral/trach | Trach | Trach | Trach | | ora/tr | | | | | | |
| Sputum Amount (Sm/Mod/Lg) | | | | | | | | | | | | | Mod | Mod | Mod | Mod | | Mod | | | | | | |
| Consistency (Th = Thick/T =) | Th | | | | | | | | | | | | TK | TK | TK | TK | | TK | | | | | | |
| Color | | | bloody | | | | | | | | | | dirty yellow | clots Bloody | clots Bloody | clots Bloody | | dirty yellow | | | | | | |
| HOB degree | | | | | | | | | | | | | 20° | | | Tan | Tan | | | | | | | |

| NGT | | IV INSERTION | | IV SITE CARE | | IABP/A-LINE DC'd | | EQUIPMENT | |
|---|---|---|---|---|---|---|---|---|---|
| Tube Type | | Site | | Site | (R)7ZJD | By | | IV Pump | x4 |
| Size | | Gauge | | Patent | yes | Time | | Feed Pump | |
| By | | By | | Drsg Applied | yes | Bleeding | | Oximeter | ✓ |
| Time | | Start Kit Used | | By | KHB | Hematoma | | Ventilator | ✓ |
| Placement 'd | | Injection Site | | Time | 0525 | Site Clean | | Temp Pace | |
| X-Ray | | # Attempts | | DRAIN DC'd | | Pressure Drsg | | SCD/K Ped | |
| To Suction | | | | Type | | CMS adequate | | Bard | |
| Clamped | | IV DC'd | | Site | | PA CATHETER DC'd | | IABP | |
| Feeding | | Site | | Drsg Applied | | Time | | Camino | |
| D/C'd Time | | Redness | | By | | Time | | Geomatt | |
| FOLEY/STRAIGHT CATH | | Bleeding | | Time | | Ectopy | | Hypo/(Hyper) | ✓ |
| Size | | Drainage | | CT DC'd | | EXTUBATION | | Thermia Unit | |
| Sterile Tech. Used | | Infiltration | | Site | | Hyperoxygenated | | | |
| By | | Drsg Applied | | By M.D. | | Suctioned | | | |
| Time | | By | | Drsg Applied | | Extubated by | | | |
| D/C'd Time | | Time | | Time | | Time | | | |

| FALL PRECAUTIONS | Initials 7-p  7-a | RESTRAINT/M.P.D. | AM | PM |
|---|---|---|---|---|
| NURSING DIAGNOSIS: POTENTIAL FOR INJURY R/T HIGH RISK FOR FALL | | *Requires Further Charting    *Alternative | | |
| DESIRED OUTCOME: NO FALLS OR INJURY DURING HOSPITAL STAY | KAG | Prisoner | | |
| Stress fall prevention information with Patient and family once per day and PRN | | Tube Wandering Fall    *Measures | | |
| Check for Yellow bracelet on Patient once per day | | Aggressive/Assaultive    Time Applied | | |
| Check for Yellow symbol on chart and kardex once per day | | Type: Wrist | | x/ |
| Confirm all side rails up, bed in low position q 4 hours and PRN | | Vest | | |
| Confirm presence of call light within reach and reinforce use of q 4 | | 4 pt. | | |
| Ensure Patient has slippers with rubber soles for out-of-bed activities | | ✓ Done-Continues  Needs Attended Q 2 hr | | ✓ |
| Provide mandatory assistance to BSC or BR prn. Remain with Patient while up to BSC or BR | | per protocol: | | |
| Provide mandatory assistance with ambulation | | *Time Discontinued | | ✓ |
| Apply reminder belt or posey vest when up to chair as indicated | | Report given to next shift | | |
| Apply bed sensor per nurse discretion. Check alarms *on* at all times when Patient in bed | | | | |
| Offer toileting at HS and PRN | | | | |

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

5
DATE: 7/31/01    ROOM# 27-6

| | I&O | Medsheet &kardex agree | Weights agree | Orders signed off | Meds signed off | Tubings, bags,sites O.K. | A-P init. P-A init. |
|---|---|---|---|---|---|---|---|
| Sunday 7- | | | | ✓ | | | |
| Monday 7-30 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | AG |
| Tuesday | | | | | | | |
| Wednes. 8-1 | | | | | | | |
| Thurs. 8-2 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | |
| Friday 7/3 | | | | | | | |
| Saturday | I&O | Medsheet &Kardex agree | Weights agree | Orders signed off | Meds signed off | Tubings,site Bags,O.K. | |
| Sunday | | | | | | | |
| Monday 7-30 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | KAG |
| Tuesday 7-31 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | KAG |
| Wednes. 8-1 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | MKAG |
| Thursday 8-2 | | | | | | | |
| Friday 8-3 | 8>0 ✓ | ✓ | ✓ | ✓ | ✓ | | |
| Saturday 8-4 | | | | | | | |
| | | | | | | | |
| | | | | | | | |

PM (handwritten left margin, next to Sunday/Monday 7-30 rows)

PM (handwritten left margin, next to Monday 7-30 / Tuesday 7-31 rows)

UNITED REGIONAL HEALTH CARE SYSTEM
36-24-04 [N]                                    11TH
CARDWELL JOHN W
SZCZERBA, ARTHUR J   9061
DOB 9/01/61   039V   ADM  7/16/01
00011324092           M

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

27- 7

| | I&O | Medsheet &kardex agree | Weights agree | Orders signed off | Meds signed off | Tubings, bags,sites O.K. | A-P init. P-A init. |
|---|---|---|---|---|---|---|---|
| Sunday 7/29 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | |
| Monday 7/20 | | | | | | | |
| Tuesday 7/24 | | | | | | | THOM |
| Wednes. 7/25/01 | | | | | | | |
| Thurs. 7/26(b) | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | |
| Friday 7/27/01 | ✓ | ✓ | ✓ | ✓ | ✓ | | |
| Saturday 7-28 | ✓ | ✓ | | ✓ | ✓ | | |

| | I&O | Medsheet &Kardex agree | Weights agree | Orders signed off | Meds signed off | Tubings,site Bags,O.K. | |
|---|---|---|---|---|---|---|---|
| Sunday 7/29 | ✓ | ✓ | ✓ | ✓ | | ✓ | |
| Monday 7/30 | | | | | | | |
| Tuesday 7/31 | | | | | | | |
| Wednes. 7/25 | ✓ | ✓ | ✓ | ✓ | | | |
| Thursday 7/26 | | | | | | | |
| Friday 7/27 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | |
| Saturday 7/28 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | |

UNITED REGIONAL HEALTH CARE SYSTEM 11TH
36-24-04 [N]
CARDWELL JOHN W
SZCZERBA, ARTHUR J  9061  ADM  7/16/01
DOB 3/01/61     039Y     M
000011324092

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

McCollum/Cardwell 299

36-24-04 [N]
CARDWELL, JOHN W.
SZCZERBA, ARTHUR J   DOB   ADM  7/16/01
0390901/3        39Y    M
0001132409Z

| AM | I&O | Medsheet &kardex agree | Weights agree | Orders signed off | Meds signed off | Tubings, bags,sites O.K. | A-P init. P-A init. |
|---|---|---|---|---|---|---|---|
| Sunday | | | | | | | |
| Monday | | | | | | | |
| Tuesday | | | | | | | |
| Wednes. | | | | | | | |
| Thurs. 7/19/01 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | mom |
| Friday 7/15 | ✓ | ✓ | ✓ | ✓ | | | |
| Saturday | | | | | | | |

✗ PM ✗

| | I&O | Medsheet &Kardex agree | Weights agree | Orders signed off | Meds signed off | Tubings,site Bags,O.K. | |
|---|---|---|---|---|---|---|---|
| Sunday | | | | | | | |
| Monday | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | |
| Tuesday | ✓ | ✓ | ✓ | ✓ | ✓ | | |
| Wednes. | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | |
| Thursday 7/19/01 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | |
| Friday | | | | | | | |
| Saturday | | | | | | | |

Copy of OIG case to Litigation Support on 06.26.2013 by scm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

27-9

UNITED REGIONAL HEALTH CARE SYSTEM
11TH

36-24-04 |N|
CARDWELL JOHN W
SZCZERBA, ARTHUR J 9061    ADM 7/16/01
DOB 9/01/61   039Y
00011324092              M
UNITED REGIONAL HEALTH CARE SYSTEM

## United Regional Health Care System

### MEDICATION ADMINISTRATION RECORD
### SCHEDULED MEDICATIONS

Form # 6010/01 (Rev. 7/99)

| DIAGNOSIS/ SURGERIES | | ALLERGIES | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | HOURS | 8/5 | 8/6 | 8/7 | 8/8 | 8/9 | 8/10 | 8/11 8/12 | 8/13 8/14 |
| START 7/17 8/2 | Protonix 40mg IVPB QP        BL | 09 | | | | | | | |
| DC | | ✗ | | | | | | | |
| START 8/20 | BB6 ⫶ 6° ECPN ¾s Insulin 150-200 3u  301-350 12u 201-250 6u  >350 Call 251-300 9u    MD    BL | 00 06 12 18 | | | | | | | |
| DC | | | | | | | | | |
| START 7/25 | Lactulose 30gm ↓NGT ⫶ 40 | 00 04 08 12 | | | | | | | |
| DC | | | | | | | | | |
| START | ⸝⸝          ⸝⸝ | 16 20 | | | | | | | |
| DC | | ✗ | | | | | | | |
| START 7/28 | Flagyl 500mg. Per NG tid        BL | 06 14 22 | | | | | | | |
| DC | | ✗ | | | | | | | |
| START 8/2 | L-Carnitor 990mg. tid per NGt (Total 2970)   BL | 09 14 21 | | | | | | | |
| DC | | | | | | | | | |
| START | | | | | | | | | |
| DC | | | | | | | | | |
| START | | | | | | | | | |
| DC | | | | | | | | | |
| START | | | | | | | | | |
| DC | | | | | | | | | |
| START | | | | | | | | | |
| DC | | | | | | | | | |

| DATE | SIGNATURE KEY | INIT | DATE | SIGNATURE KEY | INIT |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| SITE CODES | Anterior Thigh | Posterior Gluteal | Deltoid | Ventro Gluteal |
|---|---|---|---|---|
| | Right /= A | Right /= C | Right = E | Right = G |
| | Left /= B | Left = D | Left = F | Left = H |

Copy of OIG case to Litigation Section 06.26.2013 by ascm.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Recopied By: Brenda Lee R

# of Forms In Use  27-10

☐ CONTINUED ON BACK