UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, and SANDRA McCOLLUM, individually, and STEPHANIE KINGREY, individually and as independent administrator of the Estate of LARRY GENE McCOLLUM, | § § § § § | |
| PLAINTIFFS | § § | |
| v. | § § § | CIVIL ACTION NO. 4:14-cv-3253 JURY DEMAND |
| BRAD LIVINGSTON, JEFF PRINGLE, RICHARD CLARK, KAREN TATE, SANDREA SANDERS, ROBERT EASON, the UNIVERSITY OF TEXAS MEDICAL BRANCH and the TEXAS DEPARTMENT OF CRIMINAL JUSTICE. | § § § § § § § | |
| DEFENDANTS | § | |

Plaintiffs' Consolidated Summary Judgment Response Appendix

# EXHIBIT 209

## BUSINESS RECORDS AFFIDAVIT

STATE OF TEXAS

COUNTY OF Walker

RE:  Stephen McCollum, et al v. TDCJ

BEFORE ME, the undersigned authority, personally appeared Nathan Ward, who, being duly sworn by me, deposed as follows:

"My name is Nathan Ward.  I am over 18 years of age, of sound mind, capable of making this affidavit, and have personal knowledge of the facts herein stated:

"I am employed as a Regional Manager with the Office of the Inspector General (OIG) – Texas Department of Criminal Justice.  I am the custodian of the attached records of the OIG.  These records are kept by the OIG in the regular course of business, and it was the regular course of business of the OIG for an employee or representative of the OIG, with knowledge of the act, event, condition, or opinion, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter.  The attached record is an exact duplicate of the record on file with the Office of the Inspector General in Criminal Case File No. 2011.03304 concerning the death of Offender Kenneth James, TDCJ No. 01726849, as of the date of this affidavit.

Nathan Ward
Regional Manager
Office of the Inspector General

SWORN TO AND SUBSCRIBED before me on this the 22nd day of April 2013.

NOTARY PUBLIC in and for
The State of Texas
Printed Name:  Celia A Eastham
My commission expires: January 31, 2016

Celia A Eastham
Notary Public - State of Texas
My Commission Expires 1-31-2016

1

**Summary Investigative Activities**
**Case Number:2011.03304**

| Investigative Activities | |
|---|---|
| **DATE & INITIAL** | **ACTION/COMMENTS** |
| 2011-08-16 00:00:00.0 MHO | Assigned to Region-A |
| | Case Assigned to Investigator : MARK OWENS |
| RECEIVED MAR 1 2 2012 OFFICE OF THE INSPECTOR GENERAL | *KEP* |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Investigation Updates                    http://10.236.154.44:8180/casemgmt/pages/BlankInvestigationUpdate.jsf

## Summary Investigative Activities
### Case Number:2011.03304

| DATE & INITIAL | ACTION/COMMENTS |
|---|---|
| 2011-08-16 00:00:00.0 MHO | Assigned to Region-A |
| 8/19/11 | Case Assigned to Investigator : MARK OWENS |
| 8-19-11 | M. Owens 155, recieved, reviewd & logged |
| 10-18-11 | J. Campos Case Audit. |
| 1-26-12 | Case Audit. agwali |
| 2/8/12 | M. Owens #155 sent to review |
| 2/9/12 | D. Surlet - Recvd for review |
| 2-9-12 | Reviewed. Forwarded to Capt. Campos. agwali |
| 2-13-12 | For Records. N.P. agwali |
| 3-7-12 | Returned to Inv. Owens. agwali |
| 3/7/12 | M. Owens, corrections complete |
| 3/7/12 | D. Surlet - Recvd |
| 3-8-12 | Corrections made. For Records. N.P. agwali |
| | |
| | |

RECEIVED
FEB 15 2012
OFFICE OF THE
INSPECTOR GENERAL

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

8/18/2011  1:47 PM

Plaintiffs' MSJ Appx. 5411                    OIG - James 2

Texas Department of Criminal Justice
**OFFICE OF THE INSPECTOR GENERAL**

## CRIMINAL CASE INFORMATION WORKSHEET

| 2011.03304 | Gurney | Aug 13, 2011 | Aug 16, 2011 |
|---|---|---|---|
| Case Number | Unit or Location | Date of Offense | Date Case Opening |

### Victim , Complainant or Witness

| Last Name | First Name | Party Type | Person Type | TDCJ Number | Statutes | Rank | DOB | Race | Sex | SSN |
|---|---|---|---|---|---|---|---|---|---|---|
| JAMES | KENNETH | Victim | Offender / Parolee | 01726849 | CCP49.18 | | ▆ | Black / African | Male | ▆ |
| HARRIS | GLORIE | Witness | Employee | | | | ▆ | White | Female | |
| WHITFIELD | TOBY | Witness | Employee | | | Lieutenant of Correctional Officers | ▆ | White | Male | |
| MANGAN | KENNETH | Witness | Employee | | | | ▆ | White | Male | |
| STEPHENS | TORRANCE | Witness | Employee | | | | ▆ | Black / African | Male | |
| FLOWERS | TULLY | Witness | Employee | | | | ▆ | White | Male | |
| MCKNIGHT | VINCENT | Witness | Employee | | | | ▆ | Black / African | Male | |
| KNOWLES | HEIDI | Witness | Civilian | | | | ▆ | | Female | |
| GILMORE | DEBRA | Witness | Employee | | | | ▆ | Black / African | Female | |
| BURT | RONALD | Witness | Employee | | | | ▆ | White | Male | |
| RAINES | SARAH | Witness | Employee | | | | ▆ | White | Female | |
| EDWARDS | DORIS | Witness | Employee | | | | ▆ | Black / African | Female | |
| DODD | REVOYDA | Witness | Employee | | | | ▆ | Black / African | Female | |
| Washington | Danny | Witness | Civilian | | | | ▆ | | | |
| SEDA | MATTHEW | Witness | Employee | | | | ▆ | White | Male | |

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Plaintiffs' MSJ Appx. 5412          OIG - James 3

| Suspects | | | | | | | | | |
|----------|------------|-------------|-------------|----------|-------|-----|------|-----|-----|
| Last Name | First Name | Person Type | TDCJ Number | Statutes | R.... | DOB | Race | Sex | SSN |

## SUMMARY OF OFFENSE

On 08-13-2011 at approximately 3:38 AM, Offender James, Kenneth TDCJ #0172684 was transported from the Gurney Unit to Palestine Regional Medical Center via ambulance due to a medical illness. Offender James medical condition worsened and at 4:16 AM Offender James was pronounced dead by ER Dr. Heidi Knowles.

Exact Location of Incident : **Palestine Regional Medical Center**
Investigator Initials : **MHO**     Opened By : **MHO**
OIG Region : **Region-A**

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

You are Logged in as MARK OWENS

## Criminal Case Parties

| Case #:<br>2011.03304 | | Incident Date:<br>08/13/2011 | | Incident Time:<br>04:16:00 | Incident Location: Palestine Regional<br>Medical Center | | | | | No<br>Suspect |
|---|---|---|---|---|---|---|---|---|---|---|

| | Select | Last Name | First Name | Party Type | Person Type | DOB | SID # | SSN | TDCJ Number | Sex | Unknown<br>Suspect /<br>Victims |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | ☐ | JAMES | KENNETH | Victim | Offender / Parol | | 03298658 | | 01726849 | Male | |
| | ☐ | HARRIS | GLORIE | Witness | Employee | | | | | Female | |
| | ☐ | WHITFIELD | TOBY | Witness | Employee | | | | | Male | |
| | ☐ | MANGAN | KENNETH | Witness | Employee | | | | | Male | |
| | ☐ | STEPHENS | TORRANCE | Witness | Employee | | | | | Male | |
| | ☐ | FLOWERS | TULLY | Witness | Employee | | | | | Male | |
| | ☐ | MCKNIGHT | VINCENT | Witness | Employee | | | | | Male | |
| | ☐ | KNOWLES | HEIDI | Witness | Civilian | | | | | Female | |
| | ☐ | GILMORE | DEBRA | Witness | Employee | | | | | Female | |
| | ☐ | BURT | RONALD | Witness | Employee | | | | | Male | |
| | ☐ | RAINES | SARAH | Witness | Employee | | | | | Female | |
| | ☐ | EDWARDS | DORIS | Witness | Employee | | | | | Female | |
| | ☐ | DODD | REVOYDA | Witness | Employee | | | | | Female | |
| | ☐ | Washington | Danny | Witness | Civilian | | | | | | |
| | ☐ | SEDA | MATTHEW | Witness | Employee | | | | | Male | |

| Search Parties To Add | Add Unknown Party | View Detail | Save | Delete | Undo All | Back | Case Mar |
|---|---|---|---|---|---|---|---|

Statutes

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED



2011.C3304

# CUSTODIAL DEATH REPORT

For reporting requirements and procedure, see Section 39.05 of the Penal Code, Article 49.18(b) (c) of The Code of Criminal Procedure and Article 501.055(b) of The Government Code

Section 39.05 Failure to Report Death of Prisoner:
    (a) A person commits an offense if the person is required to conduct an investigation and file a report by Article 49.18, Code of Criminal Procedure, and the person fails to investigate the death, fails to file the report as required, or fails to include in a filed report facts known or discovered in the investigation.
    (b) A person commits an offense if the person is required by Section 501.055, Government Code, to:
        (1) give notice of the death of an inmate and the person fails to give the notice; or
        (2) conduct an investigation and file a report and the person:
            (A) fails to conduct the investigation or file the report, or
            (B) fails to include in the report facts known to the person or discovered by the person in the investigation.
    (c) An offense under this section is a Class B misdemeanor.

Article 49.18 (a) (b) (c).  Death in Custody
    (a) If a person confined in a penal institution dies, the sheriff or other person in charge of the penal institution shall as soon as practicable inform the justice of the peace of the precinct where the penal institution is located of the death.
    (b) If a person dies while in the custody of a peace officer or as a result of a peace officer's use of force or if a person incarcerated in a jail, correctional facility, or state juvenile facility dies, the director of the law enforcement agency of which the officer is a member or of the facility in which the person was incarcerated shall investigate the death and file a written report of the cause of death with the attorney general no later than the 30th day after the date on which the person in custody or the incarcerated person died.  The director shall make a good faith effort to obtain all facts relevant to the death and include those facts in the report.  The attorney general shall make the report, with the exception of any portion of the report that the attorney general determined is privileged, available to any interested person.
    (c) Subsection (a) does not apply to a death that occurs in a facility operated by or under contract with the Texas Department of Criminal Justice.  Subsection (b) does not apply to a death that occurs in a facility operated by or under contract with the Texas Department of Criminal Justice if the death occurs under circumstances described by Section 501.055 (b) (2), Government Code.
    (d) In this article:
        (1) "Correctional facility" means a confinement facility or halfway house operated by or under contract with any division of the Texas Department of Criminal Justice.
        (2) "In the custody of a peace officer" means:
            (A) under arrest by a peace officer, or
            (B) under the physical control or restraint of a peace officer.
        (3) "State juvenile facility" means any facility or halfway house:
            (A) operated by or under contract with the Texas Youth Commission or
            (B) described by Section 51.02 (13) or (14), Family code.

Mail To:  Office of the Attorney General
           Criminal Law Enforcement Division
           P.O. Box 12548
           Austin, Texas 78711-2548
           (512) 463-2170

**Date of Report:**  08/15/2011

1)      **AGENCY/FACILITY INFORMATION:**

      Name of Agency/Facility:  **TDCJ – Office of the Inspector General**

      Address:      **P.O. Box 4003**

      City, Zip Code:      **Huntsville, TX  77342-4003**

      Telephone: Number:      **(936) 437-5052**
      Fax:      **(936) 437-5010**
      Signature of Director of

Revised 5/06 Replaces Form of 07/03/ which is obsolete
CC-0267 (02/2008)

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

**Custodial Death Report**
Page 2

2) **IDENTITY OF DECEASED:**
Name of deceased:  James, Kenneth Wayne                    SSN ███████
Race/Ethnic Group:
☒ African-American
☐ Native American
☐ Anglo
☐ Asian  ☐ Hispanic
☐ Middle East
☐ Native Hawaiian/Pacific Islander
☐ Other (Specify)

Sex  ☒ Male      DOB: ███████
     ☐ Female  Age:  52

3) **DATE OF CUSTODY (arrest, incarceration):**
Date:  08/10/2011
Time: Hour: _____ Min _____  am☐  pm☐

4) **DATE/TIME OF DEATH:**
Month: 08 _____ Day: 13 _____ Year:  2011 _____
Time: Hour: 4 _____ Min:  16 ___  am☒  pm☐

5) **WHERE DID THE EVENT CAUSING THE DEATH OCCUR?**
Street Address:  Gurney Unit
City:  Tennessee Colony
County:  TX

6) **HAS A MEDICAL EXAMINER OR CORONER CONDUCTED AN EVALUATION TO DETERMINE A CAUSE OF DEATH?**
☐ Yes, results are available
☒ Yes, results are pending
☐ No, evaluation pending
☐ No, evaluation not planned

7) **MANNER OF DEATH:**
1. ☐ Accidental Injury to self
2. ☐ Accidental Injury by others
3. ☐ Alcohol/Drug Intoxication
4. ☐ Justifiable Homicide
5. ☐ Other Homicide
6. ☐ Suicide
7. ☐ Natural Causes/Illness-Specify
8. ☒ Other-Specify: Pending Autopsy

8) **MEDICAL CAUSE OF DEATH:**   Unknown

9) **WAS THE CAUSE OF DEATH THE RESULT OF A PRE-EXISTING MEDICAL CONDITION OR DID THE DECEASED DEVELOP THE CONDITION AFTER ADMISSION?**
1. ☐ Pre-existing medical condition
2. ☒ Deceased developed condition after admission
3. ☐ N/A – cause of death was accidental injury, intoxication, suicide, or homicide.
4 ☐ Don't Know

Revised 5/06 Replaces Form of 07/03/ which is obsolete
CC-0267 (02/2008)

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Plaintiffs' MSJ Appx. 5416                    OIG - James 7

10) **HAD THE DECEASED BEEN RECEIVING TREATMENT FOR THE MEDICAL CONDITION AFTER ADMISSION TO YOUR JAIL'S JURISDICTION?**
☐ Not Applicable
☒ No
☐ Yes-If yes, describe below (Include only treatment and medication related to the medical condition that caused the deceased's death.  Exclude emergency care provided at time of death):

_____
_____
_____

11) **WHAT TYPE OF CUSTODY/FACILITY WAS THE OFFENDER IN/AT PRIOR TO THE TIME OF DEATH?**
☐ Police Custody (pre-booking)
☒ Penitentiary
☐ Municipal Jail
☐ County Jail

12) **SPECIFIC TYPE OF CUSTODY/FACILITY**
☐ Custody of Peace Officer during/fleeing arrest
☐ Custody of Peace Officer subsequent to arrest
☒ TDCJ-ID (Unit):  Guney Unit
☐ Jail-single cell
☐ Jail-detox cell
☐ Jail-Multiple occupancy cell
☐ Jail-holding cell
☐ Jail-day room/recreation area
☐ Correctional/Rehabilitation Facility
☐ Hospital/Infirmary
☐ Halfway House/Restitution Center
☐ Non-law enforcement detox facility   Name: _____
☐ TYC-Facility:
☐ TJPC Detention Center:

13) **WHAT WERE THE MOST SERIOUS OFFENSE(S) WITH WHICH THE DECEASED WAS (OR WOULD HAVE BEEN) CHARGED WITH AT THE TIME OF DEATH (required)**
1. Assault family Violance
2. _____
3. _____

☐ Filed
☒ Convicted
☐ Probation/Parole
☐ Not filed at time of death

**Type of Charges**
☐ Violent Crime against Persons
☐ Child Abuse
☐ Serious Crime against Property
☐ Alcohol/Drug Offense
☒ Other-specify :  Family Violance

Revised 5/06 Replaces Form of 07/03/ which is obsolete
CC-0267 (02/2008)
Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

**14)** **DID THE DECEASED DIE FROM A MEDICAL CONDITION OR FROM INJURIES SUSTAINED AT THE CRIME/ARREST SCENE?**
- ☐ Medical condition only
- ☐ Injuries only
- ☐ Both medical condition and injuries
- ☒ Don't Know
- ☐ Not Applicable

**15)** **IF INJURED AT THE CRIME/ARREST SCENE, HOW WERE THESE INJURIES SUSTAINED?**
- ☐ Inflicted by law enforcement officers
- ☐ Inflicted by others at crime/arrest scene
- ☐ Self-inflicted-accidental
- ☐ Self-inflicted-suicide
- ☐ Unknown
- ☒ Not Applicable

**16)** **WAS THE DECEASED UNDER RESTRAINT IN THE TIME LEADING UP TO THE DEATH OR THE EVENTS CAUSING THE DEATH?**
- ☒ No
  - ☐ Yes,  If yes, mark which restraint devices were used:
  - ☐ Handcuffs
  - ☐ Leg shackles
  - ☐ Other device-Specify

**17)** **WHAT TYPE OF WEAPON(S) CAUSED THE DEATH?  (MARK ALL THAT APPLY)**
- ☐ Handgun
- ☐ Rifle/Shotgun
- ☐ Nightstick or baton
- ☐ Stun gun or tazer
- ☐ Other-specify
- ☒ Not applicable

**18)** **AT ANY TIME DURING THE ARREST/INCIDENT DID THE DECEASED:  MARK ALL THAT APPLY**
- ☐ Appear intoxicated (either alcohol or drugs)
- ☐ Threaten the officer(s) involved?
- ☐ Resist being handcuffed or arrested ?
- ☐ Try to escape/flee from custody?
- ☐ Grab, hit or fight with the officer(s) involved?
- ☐ Use a weapon to threaten or assault the officer(s)   Specify
- ☐ Other – specify
- ☒ Not applicable

**19)** **WHERE DID THE DECEASED DIE?**
- ☐ At law enforcement facility
- ☐ At the crime/arrest scene
- ☒ At medical facility
- ☐ En route to medical facility
- ☐ En route to booking center/police lookup
- ☐ Elsewhere – Specify:

**20)** **WHAT WAS THE TIME AND DATE OF THE DECEASED'S ENTRY INTO THE LAW ENFORCEMENT FACILITY WHERE THE DEATH OCCURRED?**
- ☒ N/A

Month: _____  Day: _____  Year: _____

Time:  Hour: _____  Min: _____  AM: ☐   PM: ☐

Revised 5/06 Replaces Form of 07/03/ which is obsolete
CC-0267 (02/2008)

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

**21) AT THE TIME OF ENTRY INTO THE FACILITY DID THE DECEASED:  MARK ALL THAT APPLY**

☐ Appear intoxicated (either alcohol or drugs)?
☐ Exhibit any mental health problems?
☐ Exhibit any medical problems?
☒ Not applicable

**22) IF DEATH WAS AN ACCIDENT OR HOMICIDE, WHO CAUSED THE DEATH?**

☐ Deceased
☐ Other detainees
☐ Law enforcement/correctional staff
☐ Other persons-specify
☐ Don't know
☒ Not applicable; cause of death was suicide, intoxication or illness/natural causes

**23) IF DEATH WAS AN ACCIDENT, HOMICIDE OR SUICIDE, WHAT WAS THE MEANS OF DEATH?**

☐ Firearm
☐ Blunt instrument
☐ Knife, cutting instrument
☐ Hanging, strangulation
☐ Drug overdose
☐ Other – specify
☒ Not applicable; cause of death was intoxication or illness/natural causes

**24) ATTACH A SUMMARY OF HOW THE DEATH OCCURRED:**

Revised 5/06 Replaces Form of 07/03/ which is obsolete
CC-0267 (02/2008)

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED



# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
# OFFICE OF THE INSPECTOR GENERAL
## INCIDENT / INVESTIGATION REPORT

| | STATUTE 1: | CRIME CLASS: | DESCRIPTION: | | ORI#: 236075C | CASE #: |
|---|---|---|---|---|---|---|
| | PC 49.18 | | Custodial Death | | | |
| | STATUTE 2: | CRIME CLASS: | DESCRIPTION: | | | |
| | STATUTE 3: | CRIME CLASS: | DESCRIPTION: | | | |

**Incident Data**

| DATE OF INCIDENT: | DAY: | TIME: | DATE REPORTED: | TIME REPORTED: | INVESTIGATED BY: |
|---|---|---|---|---|---|
| 8/13/2011 | Saturday | 4:16 AM | 8/13/2011 | 4:30 AM | Mark Owens |

| LOCATION OF INCIDENT | COUNTY OF OFFENSE /CODE: | TYPE OF PREMISES: |
|---|---|---|
| Palestine Regional Medical Center | Anderson / 001 | State Prison |

**Reporter**

| PERSON REPORTING INCIDENT: NAME: (LAST, First, MI) | DOB: | RACE: | SEX: | SOCIAL SECURITY #: | DL OR ID #: |
|---|---|---|---|---|---|
| Rayford, Jerry | | W | Male | | |

| HOME ADDRESS: | PRIMARY TELEPHONE #: 903-928-2217 | SECONDARY TELEPH #: |
|---|---|---|

| BUSINESS ADDRESS: | EMPLOYER: |
|---|---|
| Beto Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | TDCJ-ID |

| OCCUPATION: | ADDITIONAL INFORMATION: |
|---|---|
| Major of Correctional Officers | |

**Victim**

| VICTIM #1: NAME: (LAST, First, MI) | DOB: | RACE: | SEX: | SOCIAL SECURITY #: | DL OR ID #: |
|---|---|---|---|---|---|
| James, Kenneth Wayne | | B | Male | 017726849 | 017726849 |

| HOME ADDRESS: | PRIMARY TELEPHONE #: | SECONDARY TELEPHONE #: |
|---|---|---|
| Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | | |

| BUSINESS ADDRESS: | EMPLOYER: |
|---|---|

| OCCUPATION: | ADDITIONAL INFORMATION: |
|---|---|
| Offender | Offender |

**Witness**

| WITNESS #1: NAME: (LAST, First, MI) | DOB: | RACE: | SEX: | SOCIAL SECURITY #: | DL O #: |
|---|---|---|---|---|---|
| Harris, Glorie | | W | Female | | |

| HOME ADDRESS: | PRIMARY TELEPHONE #: | SECONDARY TELEP #: |
|---|---|---|

| BUSINESS ADDRESS: | EMPLOYER: |
|---|---|
| Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | TDCJ-ID |

| OCCUPATION: | ADDITIONAL INFORMATION: |
|---|---|
| CO | |

ADDENDUM ATTACHED

**SUMMARY:**

On 08-13-2011 at approximately 3:00 AM, Officer Harris, Glorie CO IV discovered Offender James, Kenneth TDCJ #01726849 in the B3-Dormitory dayroom of the Gurney Unit urinating on himself and unable to stand up. Offender James was transported to Palestine Regional Medical Center where he was pronounced dead of a possible cardiac arrest at 4:16 AM.

Investigator's Signature: *Mark Owens*    ID# 155    DATE 8-15-2011

Approving Supervisor's Signature: *[signature]*    ID# 116    DATE 8/16/2011

CC-0240 Draft (05/2011)

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED    Page    of

Plaintiffs' MSJ Appx. 5420    OIG - James 11

INCIDENT/INVESTIGATION REPORT                                                                 CASE #:

## ADDITIONAL: VICTIMS, WITNESSES OR NAMED PARTIES

| Witness #2 | DOB: | RACE: | SEX: | SOCIAL SECURITY #: | DL OR TL... |
|---|---|---|---|---|---|
| Whitfield, Toby P. | | W | Male | | |
| HOME ADDRESS: | | PRIMARY TELEPHONE #: | | SECONDARY TELEPHONE | |
| BUSINESS ADDRESS: Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | | EMPLOYER: TDCJ-ID | | | |
| OCCUPATION: Correctional Officer | | | | | |

| Witness #3 | DOB: | RACE: | SEX: | SOCIAL SECURITY #: | DL OR TL... |
|---|---|---|---|---|---|
| Mangan, Kenneth | | W | Male | | |
| HOME ADDRESS: | | PRIMARY TELEPHONE #: | | SECONDARY TELEPHONE | |
| BUSINESS ADDRESS: Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | | EMPLOYER: TDCJ-ID | | | |
| OCCUPATION: Correctional Officer | | | | | |

| Witness #4 | DOB: | RACE: | SEX: | SOCIAL SECURITY #: | DL OR TL... |
|---|---|---|---|---|---|
| Stephens, Torrance | | B | Male | | |
| HOME ADDRESS: | | PRIMARY TELEPHONE #: | | SECONDARY TELEPHONE | |
| BUSINESS ADDRESS: Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | | EMPLOYER: TDCJ-ID | | | |
| OCCUPATION: Correctional Officer | | | | | |

| Witness #5 | DOB: | RACE: | SEX: | SOCIAL SECURITY #: | DL OR TL... |
|---|---|---|---|---|---|
| Flowers, Tully | | W | Male | | |
| HOME ADDRESS: | | PRIMARY TELEPHONE #: | | SECONDARY TELEPHONE | |
| BUSINESS ADDRESS: Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | | EMPLOYER: TDCJ-ID | | | |
| OCCUPATION: Correctional Officer | | | | | |

| Witness #6 | DOB: | RACE | SEX: | SOCIAL SECURITY #: | DL OR T... |
|---|---|---|---|---|---|
| McKnight, Vincent | | B | Male | | |
| HOME ADDRESS: | | PRIMARY TELEPHONE #: | | SECONDARY TELEPHONE | |
| BUSINESS ADDRESS: Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | | EMPLOYER: TDCJ-ID | | | |
| OCCUPATION: Correctional Officer | | | | | |

| # | DOB: | RACE: | SEX: | SOCIAL SECURITY #: | DL OR T... |
|---|---|---|---|---|---|
| HOME ADDRESS: | | PRIMARY TELEPHONE #: | | SECONDARY TELEPHONE | |
| BUSINESS ADDRESS: | | EMPLOYER | | | |
| OCCUPATION: | | | | | |

*Mark Owens*
Investigator's Signature

*155*
ID#

*8-15-2011*
DATE

Approving Supervisor's Signature                                      ID#                      DATE

CC-0240 Draft(05/2011)

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

INCIDENT/INVESTIGATION REPORT                                                                 CASE #:

**INTRODUCTION:**
I, Investigator Mark Owens, am currently assigned as a criminal investigator with the TDCJ – Office of Inspector General, Region A.

This investigation involves Offender James, Kenneth TDCJ #01726849, who is a 52 year old black male, serving a 5 year sentence out of Marion County for Assault Family Violence. Offender James housed at the Gurney Unit. TDCJ received Offender James on 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.

**REPORTEE'S STATEMENT:**
Rayford, Jerry
Major
Gurney Unit
1385 FM 3328; Tennessee Colony, Tex. 75880

**CRIME SCENE DESCRIPTION:**
N/A

**INVESTIGATOR'S NARRATIVE:**
On 08-13-2011 at approximately 2:40 AM, Officer Harris, Glorie CO IV discovered Offender James, Kenneth TDCJ #01726849 in the B3-Dormitory dayroom of the Gurney Unit urinating on himself and unable to standup. Officer Harris called for additional security staff for assistance and Offender James was transported via wheel chair to the Gurney Unit Infirmary.

At approximately 2:48 AM, Offender James became unresponsive and Gurney Unit medical staff notified Palestine Regional Medical Center requesting transport to PRMC. At approximately 3:19 AM, PRMC ambulance arrived; and departed approximately 3:38 AM, Offender James was placed in the ambulance and coded before leaving the Gurney Unit back gate.

EMT staff started an IV and CPR was performed while in route to PRMC. At approximately 4:00 AM, PRMC ER staff received Offender James and continued life saving measures. At 4:16 AM, Offender James, Kenneth Wayne TDCJ #01726849 was pronounced dead by Dr. Heidi Knowles. Preliminary cause of death was cardiac arrest.

**VICTIM(S):**
James, Kenneth Wayne
TDCJ #01726849

**SUSPECT(S):**
None

**WITNESSES:**
See witness form

| | | |
|---|---|---|
| *Mark Owens* | *155* | *8-15-11* |
| Investigator's Signature | ID# | DATE |

| | | |
|---|---|---|
| Approving Supervisor's Signature | ID# | DATE |
| CC-0240 Draft(05/2011) | Copy of OIG case to Litigation Support on 04.19.2013 by ce. | |
| | UNAUTHORIZED COPYING OR VIEWING PROHIBITED | Page    of |

INCIDENT/INVESTIGATION REPORT                                                                CASE #

## EVIDENCE:
None

## DISPOSITION:
Under Investigation

---

Mark Owens

| Investigator's Signature | | 155 | 8-15-11 |
|---|---|---|---|
| | | ID# | DATE |

Copy of OIG case to Litigation Support on 04.19.2013 by jcs
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

| Approving Supervisor's Signature | | ID# | DATE |
|---|---|---|---|

CC-0240 Draft(05/2011)

Page      of

AUG-16-2011 10:01  FROM:OFFICE OF INSPECTOR  9039282248          TO:19364375010          P:1/6

*2011 - 033*



# CUSTODIAL DEATH REPORT

For reporting requirements and procedure, see Section 39.05 of the Penal Code, Article 49.18(b) (c) of The
Code of Criminal Procedure and Article 501.055(b) of The Government Code

Section 39.05 Failure to Report Death of Prisoner:
    (a) A person commits an offense if the person is required to conduct an investigation and file a report by Article 49.18, Code
    of Criminal Procedure, and the person fails to investigate the death, fails to file the report as required, or fails to include in a
    filed report facts known or discovered in the investigation.
    (b) A person commits an offense if the person is required by Section 501.055, Government Code, to:
        (1) give notice of the death of an inmate and the person fails to give the notice; or
        (2) conduct an investigation and file a report and the person:
            (A) fails to conduct the investigation or file the report, or
            (B) fails to include in the report facts known to the person or discovered by the person in the
            investigation.
    (c) An offense under this section is a Class B misdemeanor.

Article 49.18 (a) (b) (c). Death in Custody
    (a) If a person confined in a penal institution dies, the sheriff or other person in charge of the penal institution shall as soon
    as practicable inform the justice of the peace of the precinct where the penal institution is located of the death.
    (b) If a person dies while in the custody of a peace officer or as a result of a peace officer's use of force or if a person
    incarcerated in a jail, correctional facility, or state juvenile facility dies, the director of the law enforcement agency of which
    the officer is a member or of the facility in which the person was incarcerated shall investigate the death and file a written
    report of the cause of death with the attorney general no later than the 30th day after the date on which the person in custody
    or the incarcerated person died.  The director shall make a good faith effort to obtain all facts relevant to the death and
    include those facts in the report.  The attorney general shall make the report, with the exception of any portion of the report
    that the attorney general determined is privileged, available to any interested person.
    (c) Subsection (a) does not apply to a death that occurs in a facility operated by or under contract with the Texas Department
    of Criminal Justice.  Subsection (b) does not apply to a death that occurs in a facility operated by or under contract with the
    Texas Department of Criminal Justice if the death occurs under circumstances described by Section 501.055 (b) (2),
    Government Code.
    (d) In this article:
        (1) "Correctional facility" means a confinement facility or halfway house operated by or under contract with any
            division of the Texas Department of Criminal Justice.
        (2) "In the custody of a peace officer" means:
            (A) under arrest by a peace officer, or
            (B) under the physical control or restraint of a peace officer.
        (3) "State juvenile facility" means any facility or halfway house:
            (A) operated by or under contract with the Texas Youth Commission or
            (B) described by Section 51.02 (13) or (14), Family code.

        Mail To:  Office of the Attorney General
                  Criminal Law Enforcement Division
                  P.O. Box 12548
                  Austin, Texas 78711-2548
                  (512) 463-2170

                       Date of Report:  08/15/2011

1)        **AGENCY/FACILITY INFORMATION:**

        Name of Agency/Facility:  **TDCJ – Office of the Inspector General**

        Address:                  **P.O. Box 4003**

        City, Zip Code:          **Huntsville, TX  77342-4003**

        Telephone: Number:     **(936) 437-5052**
        Fax:                     **(936) 437-5010**
        Signature of Director of

Revised 5/06 Replaces Form of 07/03/ which is obsolete
CC-0207 (02/2006)

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Plaintiffs' MSJ Appx. 5424          OIG - James 15

AUG-16-2011 10:02  FROM:OFFICE OF INSPECTOR  9039282248          TO:19354375010          P.2 6

**Custodial Death Report**
Page 2

2) **IDENTITY OF DECEASED:**
Name of deceased:  James, Kenneth Wayne                    SSN: ███████
Race/Ethnic Group:
☒ African-American
☐ Native American
☐ Anglo
☐ Asian  ☐ Hispanic
☐ Middle East
☐ Native Hawaiian/Pacific Islander
☐ Other (Specify)

☒ Male    DOB: ███████
Sex
☐ Female  Age: 52

3) **DATE OF CUSTODY (arrest, incarceration):**
Date:  08/10/2011
Time:  Hour: _____ Min _____ am☐  pm☐

4) **DATE/TIME OF DEATH:**
Month: 08       Day: 13        Year: 2011
Time:  Hour: 4       Min: 16       am☒   pm☐

5) **WHERE DID THE EVENT CAUSING THE DEATH OCCUR?**
Street Address:  Gurney Unit
City:  Tennessee Colony
County:  TX

6) **HAS A MEDICAL EXAMINER OR CORONER CONDUCTED AN EVALUATION TO DETERMINE A CAUSE OF DEATH?**
☐ Yes, results are available
☒ Yes, results are pending
☐ No, evaluation pending
☐ No, evaluation not planned

7) **MANNER OF DEATH:**
1. ☐ Accidental Injury to self
2. ☐ Accidental Injury by others
3. ☐ Alcohol/Drug Intoxication
4. ☐ Justifiable Homicide
5. ☐ Other Homicide
6. ☐ Suicide
7. ☐ Natural Causes/Illness-Specify
8. ☒ Other-Specify: Pending Autopsy

8) **MEDICAL CAUSE OF DEATH:**  Unknown

9) **WAS THE CAUSE OF DEATH THE RESULT OF A PRE-EXISTING MEDICAL CONDITION OR DID THE DECEASED DEVELOP THE CONDITION AFTER ADMISSION?**
1. ☐ Pre-existing medical condition
2. ☒ Deceased developed condition after admission
3. ☐ N/A – cause of death was accidental injury, intoxication, suicide, or homicide.
4. ☐ Don't Know

Revised 5/08 Replaces Form of 07/03/ which is obsolete
CC-0267 (02/2008)

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Plaintiffs' MSJ Appx. 5425                    OIG - James 16

AUG-16-2011 10:02  FROM:OFFICE OF INSPECTOR  9039282248       TO:19364375010       P.3/6

**10)** HAD THE DECEASED BEEN RECEIVING TREATMENT FOR THE MEDICAL CONDITION AFTER ADMISSION TO YOUR JAIL'S JURISDICTION?
- ☐ Not Applicable
- ☒ No
- ☐ Yes-If yes, describe below (Include only treatment and medication related to the medical condition that caused the deceased's death. Exclude emergency care provided at time of death):

_____

_____

_____

**11)** WHAT TYPE OF CUSTODY/FACILITY WAS THE OFFENDER IN/AT PRIOR TO THE TIME OF DEATH?
- ☐ Police Custody (pre-booking)
- ☒ Penitentiary
- ☐ Municipal Jail
- ☐ County Jail

**12)** SPECIFIC TYPE OF CUSTODY/FACILITY
- ☐ Custody of Peace Officer during/fleeing arrest
- ☐ Custody of Peace Officer subsequent to arrest
- ☒ TDCJ-ID (Unit):  Guney Unit
- ☐ Jail-single cell
- ☐ Jail-detox cell
- ☐ Jail-Multiple occupancy cell
- ☐ Jail-holding cell
- ☐ Jail-day room/recreation area
- ☐ Correctional/Rehabilitation Facility
- ☐ Hospital/Infirmary
- ☐ Halfway House/Restitution Center
- ☐ Non-law enforcement detox facility   Name: _____
- ☐ TYC-Facility:
- ☐ TJPC Detention Center:

**13)** WHAT WERE THE MOST SERIOUS OFFENSE(S) WITH WHICH THE DECEASED WAS (OR WOULD HAVE BEEN) CHARGED WITH AT THE TIME OF DEATH (required)
1. Assault family Violance
2. _____
3. _____

- ☐ Filed
- ☒ Convicted
- ☐ Probation/Parole
- ☐ Not filed at time of death

Type of Charges
- ☐ Violent Crime against Persons
- ☐ Child Abuse
- ☐ Serious Crime against Property
- ☐ Alcohol/Drug Offense
- ☒ Other-specify :  Family Violance

Revised 5/08 Replaces Form of 07/03/ which is obsolete
CC-0267 (02/2008)

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

AUG-16-2011 10:02  FROM:OFFICE OF INSPECTOR  9039282248        TO:19364375010      P.1/15

14) **DID THE DECEASED DIE FROM A MEDICAL CONDITION OR FROM INJURIES SUSTAINED AT THE CRIME/ARREST SCENE?**
- ☐ Medical condition only
- ☐ Injuries only
- ☐ Both medical condition and injuries
- ☒ Don't Know
- ☐ Not Applicable

15) **IF INJURED AT THE CRIME/ARREST SCENE, HOW WERE THESE INJURIES SUSTAINED?**
- ☐ Inflicted by law enforcement officers
- ☐ Inflicted by others at crime/arrest scene
- ☐ Self-inflicted–accidental
- ☐ Self-inflicted–suicide
- ☐ Unknown
- ☒ Not Applicable

16) **WAS THE DECEASED UNDER RESTRAINT IN THE TIME LEADING UP TO THE DEATH OR THE EVENTS CAUSING THE DEATH?**
- ☒ No
- ☐ Yes. If yes, mark which restraint devices were used:
  - ☐ Handcuffs
  - ☐ Leg shackles
  - ☐ Other device-Specify

17) **WHAT TYPE OF WEAPON(S) CAUSED THE DEATH?  (MARK ALL THAT APPLY)**
- ☐ Handgun
- ☐ Rifle/Shotgun
- ☐ Nightstick or baton
- ☐ Stun gun or tazer
- ☐ Other-specify
- ☒ Not applicable

18) **AT ANY TIME DURING THE ARREST/INCIDENT DID THE DECEASED:  MARK ALL THAT APPLY**
- ☐ Appear intoxicated (either alcohol or drugs)
- ☐ Threaten the officer(s) involved?
- ☐ Resist being handcuffed or arrested ?
- ☐ Try to escape/flee from custody?
- ☐ Grab, bit or fight with the officer(s) involved?
- ☐ Use a weapon to threaten or assault the officer(s)  Specify
- ☐ Other – specify
- ☒ Not applicable

19) **WHERE DID THE DECEASED DIE?**
- ☐ At law enforcement facility
- ☐ At the crime/arrest scene
- ☒ At medical facility
- ☐ En route to medical facility
- ☐ En route to booking center/police lookup
- ☐ Elsewhere–Specify:

20) **WHAT WAS THE TIME AND DATE OF THE DECEASED'S ENTRY INTO THE LAW ENFORCEMENT FACILITY WHERE THE DEATH OCCURRED?**
- ☒ N/A
- Month: _____ Day: _____ Year: _____
- Time: Hour: _____ Min: _____ AM: ☐ PM: ☐

Revised 5/06 Rephrcos Form of 07/03/ which is obsolete
CC-0287 (02/2008)

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

21)  **AT THE TIME OF ENTRY INTO THE FACILITY DID THE DECEASED:  MARK ALL THAT APPLY**
- ☐ Appear intoxicated (either alcohol or drugs)?
- ☐ Exhibit any mental health problems?
- ☐ Exhibit any medical problems?
- ☒ Not applicable

22)  **IF DEATH WAS AN ACCIDENT OR HOMICIDE, WHO CAUSED THE DEATH?**
- ☐ Deceased
- ☐ Other detainees
- ☐ Law enforcement/correctional staff
- ☐ Other persons-specify
- ☐ Don't know
- ☒ Not applicable; cause of death was suicide, intoxication or illness/natural causes

23)  **IF DEATH WAS AN ACCIDENT, HOMICIDE OR SUICIDE, WHAT WAS THE MEANS OF DEATH?**
- ☐ Firearm
- ☐ Blunt instrument
- ☐ Knife, cutting instrument
- ☐ Hanging, strangulation
- ☐ Drug overdose
- ☐ Other – specify
- ☒ Not applicable; cause of death was intoxication or illness/natural causes

24)  **ATTACH A SUMMARY OF HOW THE DEATH OCCURRED:**

Revised 5/08 Replaces Form of 07/03/ which is obsolete
CC-0267 (02/2008)
Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Plaintiffs' MSJ Appx. 5428          OIG - James 19

AUG-16-2011 10:03  FROM:OFFICE OF INSPECTOR  9039282248            TO:19364375010         P:8/6



## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
# OFFICE OF THE INSPECTOR GENERAL
### INCIDENT / INVESTIGATION REPORT

| | STATUTE 1: | CRIME CLASS: | DESCRIPTION: | | ORN: 236075C | CASE #: |
|---|---|---|---|---|---|---|
| **Incident Data** | PC 49.18 | | Custodial Death | | | |
| | STATUTE 2: | CRIME CLASS: | DESCRIPTION: | | | |
| | STATUTE 3: | CRIME CLASS: | DESCRIPTION: | | | |

| | DATE OF INCIDENT: 8/13/2011 | DAY: Saturday | TIME: 4:16 AM | DATE REPORTED: 8/13/2011 | TIME REPORTED: 4:30 AM | INVESTIGATED BY: Mark Owens |
|---|---|---|---|---|---|---|
| | LOCATION OF INCIDENT: Palestine Regional Medical Center | | | | COUNTY OF OFFENSE / CODE: Anderson / 001 | TYPE OF PREMISES: State Prison |

| | PERSON REPORTING INCIDENT: NAME: (LAST, First, MI) Rayford, Jerry | | DOB: | RACE: W | SEX: Male | SOCIAL SECURITY #: | DL OR TDCJ #: |
|---|---|---|---|---|---|---|---|
| **Reportee** | HOME ADDRESS: | | | | PRIMARY TELEPHONE #: 903-928-2217 | | SECONDARY TELEPHONE #: |
| | BUSINESS ADDRESS: Beto Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | | | EMPLOYER: TDCJ-ID | | |
| | OCCUPATION: Major of Correctional Officers | | | ADDITIONAL INFORMATION: | | |

| | VICTIM #1: NAME: (LAST, First, MI) James, Kenneth Wayne | | DOB: | RACE: B | SEX: Male | SOCIAL SECURITY #: | DL OR TDCJ #: 01726849 |
|---|---|---|---|---|---|---|---|
| **Victim** | HOME ADDRESS: Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | | | | PRIMARY TELEPHONE #: | | SECONDARY TELEPHONE #: |
| | BUSINESS ADDRESS: | | | EMPLOYER: | | |
| | OCCUPATION: Offender | | | ADDITIONAL INFORMATION: Offender | | |

| | WITNESS #1: NAME: (LAST, First, MI) Harris, Gloric | | DOB: | RACE: W | SEX: Female | SOCIAL SECURITY #: | DL OR TDCJ #: |
|---|---|---|---|---|---|---|---|
| **Witness** | HOME ADDRESS: | | | | PRIMARY TELEPHONE #: | | SECONDARY TELEPHONE #: |
| | BUSINESS ADDRESS: Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | | | EMPLOYER: TDCJ-ID | | |
| | OCCUPATION: CO | | | ADDITIONAL INFORMATION: | | |

ADDENDUM ATTACHED

**SUMMARY:**
On 08-13-2011 at approximately 3:00 AM, Officer Harris, Gloric CO IV discovered Offender James, Kenneth TDCJ #01726849 in the B3-Dormitory dayroom of the Gurney Unit urinating on himself and unable to standup Offender James was transported to Palestine Regional Medical Center where he was pronounced dead of a possible cardiac arrest at 4:16 AM.

_Mark Owens_                          155         8-15-2011
Investigator's Signature                ID#          DATE

_Signature_                            11b          8/16/2011
Approving Supervisor's Signature         ID#          DATE

CC-0240 Draft (05/2011)

Copy of OIG case to Litigation Support on 04.19.2013 by ce.     Page     of
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Plaintiffs' MSJ Appx. 5429                    OIG - James 20



# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
# OFFICE OF THE INSPECTOR GENERAL
## INCIDENT / INVESTIGATION REPORT

| | STATUTE 1: | CRIME CLASS: | DESCRIPTION: | | | ORI#: 236075C | CASE #: 2011.03304 |
|---|---|---|---|---|---|---|---|
| **Incident Data** | PC 49.18 | | Custodial Death | | | | |
| | STATUTE 2: | CRIME CLASS: | DESCRIPTION: | | | | |
| | STATUTE 3: | CRIME CLASS: | DESCRIPTION: | | | | |

| | DATE OF INCIDENT: 8/13/2011 | DAY: Saturday | TIME: 4:16 AM | DATE REPORTED: 8/13/2011 | TIME REPORTED: 4:30 AM | INVESTIGATED BY: Mark Owens |
|---|---|---|---|---|---|---|
| | LOCATION OF INCIDENT Palestine Regional Medical Center | | | COUNTY OF OFFENSE /CODE: Anderson / 001 | | TYPE OF PREMISES: State Prison |

| | PERSON REPORTING INCIDENT: NAME: (LAST, First, MI) Rayford, Jerry | | DOB: | RACE: W | SEX: Male | SOCIAL SECURITY #: | DL OR ID #: |
|---|---|---|---|---|---|---|---|
| **Reporter** | HOME ADDRESS: | | | | PRIMARY TELEPHONE #: 903-928-2217 | SECONDARY TELEP-ONE # | |
| | BUSINESS ADDRESS: Beto Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | | | EMPLOYER: TDCJ-ID | | | |
| | OCCUPATION: Major of Correctional Officers | | | ADDITIONAL INFORMATION: | | | |

| | VICTIM #1: NAME: (Last, First, MI) James, Kenneth Wayne | | DOB: | RACE: B | SEX: Male | SOCIAL SECURITY #: | DL # 01726849 |
|---|---|---|---|---|---|---|---|
| **Victim** | HOME ADDRESS: Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | | | | PRIMARY TELEPHONE #: | SECONDARY TELE | |
| | BUSINESS ADDRESS: | | | EMPLOYER: | | | |
| | OCCUPATION: Offender | | | ADDITIONAL INFORMATION: Offender | | | |

| | WITNESS #1: NAME: (LAST, First, MI) Harris, Glorie | | DOB: | RACE: W | SEX: Female | SOCIAL SECURITY #: | DL |
|---|---|---|---|---|---|---|---|
| **Witness** | HOME ADDRESS: | | | | PRIMARY TELEPHONE #: | SECONDARY TELE | |
| | BUSINESS ADDRESS: Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | | | EMPLOYER: TDCJ-ID | | | |
| | OCCUPATION: Correctional Officer | | | ADDITIONAL INFORMATION: | | | |

ADDENDUM ATTACHED

**SUMMARY:**
On 08-13-2011 at approximately 3:00 AM, Officer Harris, Glorie CO IV discovered Offender James, Kenneth TDCJ #01726849 in the B3-Dormitory dayroom of the Gurney Unit urinating on himself and unable to stand up. Offender James was transported to Palestine Regional Medical Center where he was pronounced dead of a possible cardiac arrest at 4:16 AM.

*Mark Owens*
Investigator's Signature          155        3/8/13
                                  ID#        DATE

*Bugt W. Atkin*
Approving Supervisor's Signature   326       3-8-13
                                   ID#       DATE

CC-0240 Draft (05/2011)   Copy of OIG case to Litigation Support on 04.19.2013 by ce.   Page 1 of 14
                          UNAUTHORIZED COPYING OR VIEWING PROHIBITED

INCIDENT/INVESTIGATION REPORT                                    CASE #: A 011 03304

## ADDITIONAL: VICTIMS, WITNESSES OR NAMED PARTIES

**Witness #2**
Whitfield, Toby P.
DOB: ■ | RACE: W | SEX: Male | SOCIAL SECURITY #: ■ | DL OR T
HOME ADDRESS: | PRIMARY TELEPHONE #: | SECONDARY TELEPHONE
BUSINESS ADDRESS: Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | EMPLOYER: TDCJ-ID
OCCUPATION: Lieutenant of Correctional Officers

**Witness #3**
Mangan, Kenneth
DOB: ■ | RACE: W | SEX: Male | SOCIAL SECURITY #: ■ | DL OR T
HOME ADDRESS: | PRIMARY TELEPHONE #: | SECONDARY TELEPHONE
BUSINESS ADDRESS: Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | EMPLOYER: TDCJ-ID
OCCUPATION: Correctional Officer

**Witness #4**
Stephens, Torrance
DOB: ■ | RACE: B | SEX: Male | SOCIAL SECURITY #: ■ | DL OR T
HOME ADDRESS: | PRIMARY TELEPHONE #: | SECONDARY TELEPHONE
BUSINESS ADDRESS: Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | EMPLOYER: TDCJ-ID
OCCUPATION: Correctional Officer

**Witness #5**
Flowers, Tully
DOB: ■ | RACE: W | SEX: Male | SOCIAL SECURITY #: ■ | DL OR T
HOME ADDRESS: | PRIMARY TELEPHONE #: | SECONDARY TELEPHON
BUSINESS ADDRESS: Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | EMPLOYER: TDCJ-ID
OCCUPATION: Sergeant of Correctional Officers

**Witness #6**
McKnight, Vincent
DOB: ■ | RACE: B | SEX: Male | SOCIAL SECURITY #: ■ | DL OR
HOME ADDRESS: | PRIMARY TELEPHONE #: | SECONDARY TELEPHON
BUSINESS ADDRESS: Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | EMPLOYER: TDCJ-ID
OCCUPATION: Correctional Officer

**Witness #7**
Burt, Ronald
DOB: ■ | RACE: W | SEX: Male | SOCIAL SECURITY #: ■ | DL OR
HOME ADDRESS: | PRIMARY TELEPHONE #: | SECONDARY TELEPHON
BUSINESS ADDRESS: Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | EMPLOYER: TDCJ-ID
OCCUPATION: Correctional Officer

Mark Owens
Investigator's Signature        155        2/8/13
                                ID#         DATE

Approving Supervisor's Signature
CC-0240 Draft(05/2011)

Copy of OIG case to Litigation Support on 04.19.2013 by ce    ID#        DATE
UNAUTHORIZED COPYING OR VIEWING PROHIBITED              2 -14

TEXAS DEPARTMENT OF CRIMINAL JUSTICE

# OFFICE OF THE INSPECTOR GENERAL

## VICTIM – WITNESS – NAMED PARTY ADDENDUM REPORT

| Witness #8 | | | | | |
|---|---|---|---|---|---|
| Gilmore, Debra | DOB: ▮ | RACE: B | SEX: Female | SOCIAL SECURITY #: | DL OR TDX |
| HOME ADDRESS: | | | PRIMARY TELEPHONE #: | SECONDARY TELEPHONE # | |
| BUSINESS ADDRESS: Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | | | EMPLOYER: TDCJ-ID | | |
| OCCUPATION: Correctional Officer | | | | | |

| Witness #9 | | | | | |
|---|---|---|---|---|---|
| Leonard, Robert | DOB: ▮ | RACE: W | SEX: Male | SOCIAL SECURITY #: ▮ | DL OR TDX |
| HOME ADDRESS: | | | PRIMARY TELEPHONE #: | SECONDARY TELEPHONE # | |
| BUSINESS ADDRESS: Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | | | EMPLOYER: TDCJ-ID | | |
| OCCUPATION: Correctional Officer | | | | | |

| Witness #10 | | | | | |
|---|---|---|---|---|---|
| Matthews, Brandon | DOB: ▮ | RACE: W | SEX: Male | SOCIAL SECURITY #: ▮ | DL OR TD |
| HOME ADDRESS: | | | PRIMARY TELEPHONE #: | SECONDARY TELEPHONE # | |
| BUSINESS ADDRESS: Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | | | EMPLOYER: TDCJ-ID | | |
| OCCUPATION: Correctional Officer | | | | | |

| Witness #11 | | | | | |
|---|---|---|---|---|---|
| Washington, Danny | DOB: | RACE: | SEX: | SOCIAL SECURITY #: | DL OR TD |
| HOME ADDRESS: | | | PRIMARY TELEPHONE #: | SECONDARY TELEPHONE | |
| BUSINESS ADDRESS: Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | | | EMPLOYER: U.T.M.B. | | |
| OCCUPATION: LVN | | | | | |

| Witness #12 | | | | | |
|---|---|---|---|---|---|
| Raines, Sara | DOB: ▮ | RACE W | SEX: Female | SOCIAL SECURITY #: ▮ | DL OR TD |
| HOME ADDRESS: | | | PRIMARY TELEPHONE #: | SECONDARY TELEPHONE | |
| BUSINESS ADDRESS: Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | | | EMPLOYER: TDCJ-ID | | |
| OCCUPATION: Correctional Officer | | | | | |

_Mark Owens_
Investigator's Signature                          155                2/8/12
                                                  ID#                DATE

Approving Supervisor's Signature                  ID#                DATE

CC-0245 Draft(05/2011)

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Page 3 of 14

TEXAS DEPARTMENT OF CRIMINAL JUSTICE

# OFFICE OF THE INSPECTOR GENERAL

### VICTIM – WITNESS – NAMED PARTY ADDENDUM REPORT

| Witness #13 | DOB: | RACE: | SEX: | SOCIAL SECURITY #: | DL OR TD |
| Edwards, Doris | ▉ | B | Female | ▉ | |
| HOME ADDRESS: | | PRIMARY TELEPHONE #: | SECONDARY TELEPHONE |
| BUSINESS ADDRESS: Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | | EMPLOYER: TDCJ-ID | |
| OCCUPATION: Correctional Officer | | | |

| Witness #14 | DOB: | RACE: | SEX: | SOCIAL SECURITY #: | DL OR TD |
| Seda, Matthew | ▉ | W | Male | ▉ | |
| HOME ADDRESS: | | PRIMARY TELEPHONE #: | SECONDARY TELEPHONE |
| BUSINESS ADDRESS: Gurney Unit, 1391 FM 3328; Tennessee Colony, Tex. 75880 | | EMPLOYER: TDCJ-ID | |
| OCCUPATION: Sergeant of Correctional Officers | | | |

| Witness #15 | DOB: | RACE: | SEX: | SOCIAL SECURITY #: | DL OR TD |
| Revoyda, Dodd | ▉ | B | Female | ▉ | |
| HOME ADDRESS: | | PRIMARY TELEPHONE #: | SECONDARY TELEPHONE |
| BUSINESS ADDRESS: TDCJ-ID | | EMPLOYER: TDCJ-ID | |
| OCCUPATION: Correctional Officer | | | |

| Named #16 | DOB: | RACE: | SEX: | SOCIAL SECURITY #: | DL OR TD |
| Taylor, Thomas | ▉ | W | Male | ▉ | |
| HOME ADDRESS: | | PRIMARY TELEPHONE #: | SECONDARY TELEPHONE |
| BUSINESS ADDRESS: TDCJ-ID | | EMPLOYER: TDCJ-ID | |
| OCCUPATION: Chaplain | | | |

| Named # | DOB: | RACE | SEX: | SOCIAL SECURITY #: | DL OR TD |
| HOME ADDRESS: | | PRIMARY TELEPHONE #: | SECONDARY TELEPHONE |
| BUSINESS ADDRESS: | | EMPLOYER: | |
| OCCUPATION: | | | |

*Mark Owens*
Investigator's Signature          ID# 155          DATE 2/8/12

Approving Supervisor's Signature          ID#          DATE

CC-0245 Draft(05/2011)

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Page 4 of 14

Plaintiffs' MSJ Appx. 5433          OIG - James 24

INCIDENT/INVESTIGATION REPORT _____   CASE #: A 2011-03304

## SUSPECTS

| SUSPECT #1: (LAST, First, MI) None | HOME ADDRESS: | PRIMARY TELEPHONE |
|---|---|---|
| OCCUPATION: | BUSINESS ADDRESS: | SECONDARY TELEPH |

| RACE: | SEX: | DOB: | HEIGHT: | WEIGHT: | BUILD: | HAIR: | EYES: | COMPLEXION: | SOC SEC #: | DRIVERS LICENSE #: |
|---|---|---|---|---|---|---|---|---|---|---|

| TDCJ #: | SID#: | FBI#: | BIRTH PLACE: | ADDITIONAL INFORMATION: |
|---|---|---|---|---|

| SUSPECT #2: (LAST, First, MI) | HOME ADDRESS: | PRIMARY TELEPHONE |
|---|---|---|
| OCCUPATION: | BUSINESS ADDRESS: | SECONDARY TELEPH |

| RACE: | SEX: | DOB: | HEIGHT: | WEIGHT: | BUILD: | HAIR: | EYES: | COMPLEXION: | SOC SEC #: | DRIVERS LICENSE #: |
|---|---|---|---|---|---|---|---|---|---|---|

| TDCJ #: | SID#: | FBI#: | BIRTH PLACE: | ADDITIONAL INFORMATION: |
|---|---|---|---|---|

| SUSPECT #3: (LAST, First, MI) | HOME ADDRESS: | PRIMARY TELEPHON |
|---|---|---|
| OCCUPATION: | BUSINESS ADDRESS: | SECONDARY TELEPH |

| RACE: | SEX: | DOB: | HEIGHT: | WEIGHT: | BUILD: | HAIR: | EYES: | COMPLEXION: | SOC SEC #: | DRIVERS LICENSE #: |
|---|---|---|---|---|---|---|---|---|---|---|

| TDCJ #: | SID#: | FBI#: | BIRTH PLACE: | ADDITIONAL INFORMATION: |
|---|---|---|---|---|

| SUSPECT #4: (LAST, First, MI) | HOME ADDRESS: | PRIMARY TELEPHON |
|---|---|---|
| OCCUPATION: | BUSINESS ADDRESS: | SECONDARY TELEPH |

| RACE: | SEX: | DOB: | HEIGHT: | WEIGHT: | BUILD: | HAIR: | EYES: | COMPLEXION: | SOC SEC #: | DRIVERS LICENSE #: |
|---|---|---|---|---|---|---|---|---|---|---|

| TDCJ #: | SID#: | FBI#: | BIRTH PLACE: | ADDITIONAL INFORMATION: |
|---|---|---|---|---|

| SUSPECT #5: (LAST, First, MI) | HOME ADDRESS: | PRIMARY TELEPHON |
|---|---|---|
| OCCUPATION: | BUSINESS ADDRESS: | SECONDARY TELEPH |

| RACE: | SEX: | DOB: | HEIGHT: | WEIGHT: | BUILD: | HAIR: | EYES: | COMPLEXION: | SOC SEC #: | DRIVERS LICENSE #: |
|---|---|---|---|---|---|---|---|---|---|---|

| TDCJ #: | SID#: | FBI#: | BIRTH PLACE: | ADDITIONAL INFORMATION: |
|---|---|---|---|---|

_Mark Owens_                          _155_            _2/8/12_
Investigator's Signature              ID#             DATE

Approving Supervisor's Signature    Copy of OIG case to Litigation Support on 04.19.2013 by cb   ID#        DATE
CC-0240 Draft(05/2011)              UNAUTHORIZED COPYING OR VIEWING PROHIBITED
                                                                    page 5 of 14

INCIDENT/INVESTIGATION REPORT                                                                    CASE #: A2011 53 104

## INTRODUCTION:

My name is Mark Owens, I am a commissioned Peace Officer by the Texas Department of Criminal Justice, Office of Inspector General and currently assigned as a Criminal Investigator, Region A.

## REPORTEE'S STATEMENT:

Lt. Toby Whitfield reported in Emergency Action Center Report I-11520-08-11 that on August 13, 2011 at approximately 4:16 am, Heidi Knowles, M.D. pronounced Offender Kenneth James TDCJ #1726849 dead at Palestine Regional Medical Center. Offender James was transferred from the Gurney Unit at approximately 3:38 am, to PRMC following a brief illness.

## CRIME SCENE DESCRIPTION:

Gurney Unit B3-Dorm/Palestine Regional Medical Center Exam Room #1

## INVESTIGATOR'S NARRATIVE:

At approximately 4:42 am, OIG Investigator Mark Owens was notified of the death of Offender Kenneth James TDCJ #1726849. At approximately 5:11 am, Inv. Owens arrived at PRMC, completed the necessary forms, and photographed the body of Offender James.

At approximately 5:00 am, Precinct 3 Justice of the Peace, James Todd arrived at PRMC, conducted an inquest, and ordered autopsy.

At approximately 5:05 am, Lt. Whitfield notified Carnes Funeral Home in Texas City.

At approximately 5:30 am, Lt. Whitfield notified Gurney Unit Chaplain Thomas Taylor of the death of Offender James. At approximately 6:40 am, Chaplain Taylor notified the next-of-kin, Mary James, listed as mother of Offender James. Ms. James indicated that the family did not object to an autopsy and would claim the body as well as any property belonging to Offender James.

At approximately 10:05 am, Richard Syers of Carnes Funeral Home arrived at PRMC, collected the remains of Offender James.

On September 20, 2011, OIG Inv. Mark Owens received the final autopsy #AU-11-00174 from UTMB, Galveston concerning the death of Offender Kenneth James TDCJ #1726849.

Autopsy report #AU-11-00174 listed the manner of death as natural. It is opinion of the medical examiner the immediate cause of death is most likely environmental hyperthermia-related classic heat stroke.

| | | |
|---|---|---|
| _Mark Owens_ | /55 | 2/8/12 |
| Investigator's Signature | ID# | DATE |
| Approving Supervisor's Signature | ID# | DATE |

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

CC-0240 Draft(05/2011)

Page 6 of 14

On February 1, 2012, OIG Inv. Mark Owens received the Toxicology Profile report of Offender Kenneth James TDCJ #1726849. The report reflected there was no detection of drugs or medication not prescribed to Offender James, at the time of his death.

The following information was obtained through statements received on 08-13-2011 from Gurney Unit staff with knowledge concerning the chain of events leading to the time of death of Offender James Kenneth TDCJ #1726849.

On August 12, 2011, at approximately 5:40 pm, the B3 picket Officer Brandon Matthews, notified Officer Debra Gilmore that several offenders in B-3 dorm reported that the offender assigned to B3-23 bunk was sick. Officer Gilmore stated she and Officer Robert Leonard entered B3 dorm to check on the offender reported to be sick.

Officer Gilmore stated they approached B3-23 bunk and asked the offender if he was able to sit up and talk. The offender identified as Kenneth James TDCJ #1726849, sat up and gave his identification card to the officers. Officer Leonard asked the offender if he knew his name and TDCJ number, he said his name was Kenneth James and that his TDCJ number was 1726849. Officer Gilmore stated she asked Offender James if he was in pain or feeling nauseated, Offender James replied that he felt dizzy.

Officer Gilmore stated she went to the picket and requested Officer B. Matthews to notify medical staff of Offender James condition. Officer Gilmore further stated she spoke to UTMB, LVN Danny Washington and informed Nurse Washington that Offender James in B3-23 was complaining of being dizzy. Officer Gilmore stated Nurse Washington instructed her to inform the offender that he needed to drink more fluids (water).

Officer Gilmore stated as per Nurse Washington's instructions, she informed Offender James to drink more fluids and was then relieved of duty by second shift Officer Sarah Raines. Officer Gilmore further stated prior to leaving the unit, she informed Officer Raines that Offender James had complained of being dizzy and that the unit infirmary was contacted and Nurse Washington instructed that Offender James needed to drink more fluids.

At approximately 6:45 pm, Officer Raines stated she observed an offender sitting in the B3 dorm dayroom without a shirt on. Officer Raines stated she ask the offender for his identification card and ordered the offender to put on a shirt, the offender stated that he was very hot. The offender was identified as Offender Kenneth James. Officer Raines stated she ask Offender James if he had been drinking water, the offender stated that he had not been drinking any water. Officer Raines further stated she ask Offender James if he had a water bottle or cup, Offender James stated yes. Officer Raines stated she instructed Offender James to drink two or three containers of cold water from the water cooler, Offender James responded yes by shaking his head in an up and down manner.

Officer Raines stated at approximately 8:15 pm, she was sending offenders from B3 dorm to necessities and returned Offender James identification card to him as he was exiting the dorm. Officer Raines stated Offender James left the dorm, went and exchanged his necessities and returned to B3 dorm.

_Mark Owens_                                    _155_              _2/8/12_
Investigator's Signature                         ID#                 DATE

Approving Supervisor's Signature                 ID#                 DATE
CC-0240 Draft(05/2011)          Copy of OIG case to Litigation Support on 04.19.2013 by ce.
                                UNAUTHORIZED COPYING OR VIEWING PROHIBITED            _Page 7 of 14_

INCIDENT/INVESTIGATION REPORT        CASE #: A2011.03304

Officer Raines further stated while passing out mail/lay-ins, she observed Offender James walking around in the dorm, and he showed no signs of distress. Officer Raines further stated, that at no time did Offender James report to her that he was feeling ill nor did Offender James make any request to go to medical.

Officer Doris Edwards stated at approximately 12:05 am, when she entered into the B3 dorm, the offenders in the dorm told her that Offender James was in his bed and had urinated on himself. Officer Edwards stated when she approached Offender James; he did not say anything about urinating on himself. Officer Edwards stated Offender James looked up at her and did not appear to be in distress at the time.

Officer Edwards further stated, she observed Offender James go to the restroom area and back to his bunk area. Officer Edwards stated Offender James appeared to be dizzy while he was walking; he was wobbling back and forth, as he was walking.

Officer Edwards stated while calling in the building count, she notified Sgt. Matthew Seda and informed him of Offender James condition. Officer Edwards stated, Sgt. Seda informed her to keep a watch on Offender James, after notifying Sgt. Seda, Officer Edwards stated she did not notice any more abnormal behavior from Offender James.

Officer Revoyda Dodd stated at approximately 12:15 am, as she was conducting a bed book count of B3 dorm she observed Offender James lying in his assigned bunk. Officer Dodd stated, Offender James was restless and was moving around on the bunk. Officer Dodd further stated she did not notice any urine on Offender James as the other offenders had reported.

Officer Dodd stated after completing the bed book count, she returned to the control picket and observed Offender James sitting on the toilet in the restroom area. Officer Dodd stated as Offender James was exiting the restroom she observed him bump into the wall and began to stumble. Officer Dodd stated Offender James walked back to his living area and fell onto his bunk. Officer Dodd stated at that time she notified Sgt. Seda and advised the Sgt. that Offender James appeared to be intoxicated or on some type of medication.

Officer Glorie Harris stated at approximately 1:50 am, Officer Edwards informed her that Offender James had been urinating on the floor by the bunk and the restroom but not in the urinal. Officer Harris further stated at approximately 2:35 am, she observed Offender James standing in the dayroom, holding on to the bench.
Officer Harris stated, she entered the B3 dormitory dayroom and attempted to question Offender James as to why he was not in his bunk. Officer Harris stated Offender James did not respond to the questions, he just stood with his head down and was swaying back and forth.

Officer Harris stated at approximately 2:40 am, she notified Lt. Toby Whitfield, via handheld radio that there was something wrong with Offender James in B3-23. Officer Harris stated Sgt. Seda and Sgt. Flowers responded to the call. Upon the arrival of Sgt. Flowers, he notified security staff that a wheelchair was needed in B3 dorm.

| | | |
|---|---|---|
| *Mark Owens* | *155* | *2/8/12* |
| Investigator's Signature | ID# | DATE |
| | | |
| Approving Supervisor's Signature | ID# | DATE |

CC-0240 Draft(05/2011)

Copy of OIG case to Litigation Support on 04.19.2013 by ce
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Page 8 of 14

Plaintiffs' MSJ Appx. 5437        OIG - James 28

Officer Harris stated while waiting on the wheelchair, Offender James kneeled down on his knees and maintained a tight grasp to the bench. Officers Ronald Burt, Kenneth Mangan and Torrance Stephens arrived with the wheelchair, Offender James was assisted to the wheelchair and escorted to medical.

Sgt. Tully Flowers stated due to there being no onsite medical staff at the Gurney Unit at the time he contacted Beto Unit medical staff and spoke to LVN, Linda McKnight. Nurse McKnight instructed Sgt. Flowers to get the offenders temperature and blood pressure, which was noted as 89/57 and temperature of 108.

Sgt. Flowers stated as Offender James was being prepared for transport to the Beto Unit Infirmary, Offender James bent over in the wheelchair and became unresponsive at which time, Sgt. Seda stated he notified Lt. Whitfield and central control to notify 911 EMS. Offender James was placed on a gurney, and appeared to be having difficulty breathing, and looked disorientated. Sgt. Flowers stated Lt. Whitfield checked the offender's wrist and stated that he could feel a pulse.

Sgt. Flowers stated at approximately 3:19 am, EMS arrived at the Gurney Unit and advised Lt. Whitfield an Air Ambulance was dispatched to the unit. At approximately 3:38 am, as the EMS was preparing to exit the back gate of the unit, Sgt. Flowers stated he was notified that Offender James had coded and the EMS was transporting Offender James to Palestine Regional Medical Center.

Sgt. Seda stated Lt. Whitfield instructed he and Officer Burt to follow the EMS to PRMC and report the condition of Offender James to him. Sgt. Seda stated at approximately 4:05 am, EMS arrived at PRMC, where Offender James was placed in Exam Room #1. Sgt. Seda further stated PRMC medical staff began life saving measures and at 4:10 am, reported Offender James had a pulse. At approximately 4:16 am, Doctor Heidi Knowles pronounced Offender James deceased.

## VICTIM(S):

### James, Kenneth Wayne, TDCJ #01726849, Deceased:

Offender James, Kenneth TDCJ #01726849, was a 52-year-old black male, serving a 5-year sentence out of Marion County for Assault Family Violence. Offender James housed at the Gurney Unit. TDCJ received Offender James on 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.

## SUSPECT(S):

**None**

## WITNESSES:

### Debra Gilmore, CO Gurney Unit:    Officer Debra Gilmore that several offenders in B-3 dorm reported that the offender assigned to B3-23 bunk was sick. Officer Gilmore stated she and Officer Robert Leonard entered B3 dorm to check on the offender reported to be sick.

_Mark Owens_
Investigator's Signature                                                      155                    2/8/12
                                                                              ID#                    DATE

Approving Supervisor's Signature                                              ID#                    DATE
                                          Copy of OIG case to Litigation Support on 04.19.2013 by ce.
CC-0240 Draft(05/2011)                    UNAUTHORIZED COPYING OR VIEWING PROHIBITED
                                                                              Page 9 of 14

INCIDENT/INVESTIGATION REPORT _____   _____   CASE #: A3C11.03304

Officer Gilmore stated they approached B3-23 bunk and asked the offender if he was able to sit up and talk. The offender identified as Kenneth James TDCJ #1726849, sat up and gave his identification card to the officers. Officer Leonard asked the offender if he knew his name and TDCJ number, he said his name was Kenneth James and that his TDCJ number was 1726849. Officer Gilmore stated she asked Offender James if he was in pain or feeling nauseated, Offender James replied that he felt dizzy.

Officer Gilmore stated she went to the picket and requested Officer B. Matthews to notify medical staff of Offender James condition. Officer Gilmore further stated she spoke to UTMB, LVN Danny Washington and informed Nurse Washington that Offender James in B3-23 was complaining of being dizzy. Officer Gilmore stated Nurse Washington instructed her to inform the offender that he needed to drink more fluids (water).

Officer Gilmore stated as per Nurse Washington's instructions, she informed Offender James to drink more fluids and was then relieved of duty by second shift Officer Sarah Raines. Officer Gilmore further stated prior to leaving the unit, she informed Officer Raines that Offender James had complained of being dizzy and that the unit infirmary was contacted and Nurse Washington instructed that Offender James needed to drink more fluids.

Ronald Burt, C.O. Gurney Unit:      Officer Burt stated at approximately 3:00 am, 8-13-2011 he responded to B1 Building where Offender James, Kenneth TDCJ #1726849 was delirious and non-responsive. Officer Burt stated Offender James was escorted to the infirmary via a wheelchair and Beto medical staff was notified and 911 call was placed to EMS. Officer Burt further stated EMS arrived approximately 20 minutes later and transported Offender James to PRMC. Officer Burt stated CRP was administered in the ambulance to PRMC. Upon arrival at PRMC, emergency room medical staff continued life saving measures. Dr. Heidi Knowles pronounced Offender James deceased at 4:16 am.

Sara Raines, C.O. Gurney Unit:      Officer Raines stated she observed an offender sitting in the B3 dorm dayroom without a shirt on. Officer Raines stated she ask the offender for his identification card and ordered the offender to put on a shirt, the offender stated that he was very hot. The offender was identified as Offender Kenneth James. Officer Raines stated she ask Offender James if he had been drinking water the offender stated that he had not been drinking any water. Officer Raines further stated she ask Offender James if he had a water bottle or cup, Offender James stated yes. Officer Raines stated she instructed Offender James to drink two or three containers of cold water from the water cooler, Offender James responded yes by shaking his head in an up and down manner.

Officer Raines stated at approximately 8:15 pm, she was sending offenders from B3 dorm to necessities and returned Offender James identification card to him as he was exiting the dorm. Officer Raines stated Offender James left the dorm, went and exchanged his necessities and returned to B3 dorm.

Officer Raines further stated while passing out mail/lay-ins, she observed Offender James walking around in the dorm, and he showed no signs of distress. Officer Raines further stated, that at no time did Offender James report to her that he was feeling ill nor did Offender James make any request to go to medical.

Doris Edwards, C.O. Gurney Unit:      Officer Doris Edwards stated at approximately 12:05 am, when she entered into the B3 dorm, the offenders in the dorm told her that Offender James was in his bed and had

| | | |
|---|---|---|
| _Mark Owens_ | _155_ | _2/8/12_ |
| Investigator's Signature | ID# | DATE |

| | | |
|---|---|---|
| Approving Supervisor's Signature | ID# | DATE |

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
CC-0240 Draft(05/2011)      UNAUTHORIZED COPYING OR VIEWING PROHIBITED      Page 10 of 14

urinated on himself. Officer Edwards stated when she approached Offender James; he did not say anything about urinating on himself. Officer Edwards stated Offender James looked up at her and did not appear to be in distress at the time.

Officer Edwards further stated, she observed Offender James go to the restroom area and back to his bunk area. Officer Edwards stated Offender James appeared to be dizzy while he was walking; he was wobbling back and forth, as he was walking.

Officer Edwards stated while calling in the building count, she notified Sgt. Matthew Seda and informed him of Offender James condition. Officer Edwards stated, Sgt. Seda informed her to keep a watch on Offender James, after notifying Sgt. Seda, Officer Edwards stated she did not notice any more abnormal behavior from Offender James.

Revoyda Dodd, C.O. Gurney Unit:    Officer Revoyda Dodd stated at approximately 12:15 am, as she was conducting a bed book count of B3 dorm she observed Offender James lying in his assigned bunk. Officer Dodd stated, Offender James was restless and was moving around on the bunk. Officer Dodd further stated she did not notice any urine on Offender James as the other offenders had reported.

Officer Dodd stated after completing the bed book count, she returned to the control picket and observed Offender James sitting on the toilet in the restroom area. Officer Dodd stated as Offender James was exiting the restroom she observed him bump into the wall and began to stumble. Officer Dodd stated Offender James walked back to his living area and fell onto his bunk. Officer Dodd stated at that time she notified Sgt. Seda and advised the Sgt. that Offender James appeared to be intoxicated or on some type of medication.

Glorie Harris, C.O. Gurney Unit:    Officer Glorie Harris stated at approximately 1:50 am, Officer Edwards informed her that Offender James had been urinating on the floor by the bunk and the restroom but not in the urinal. Officer Harris further stated at approximately 2:35 am, she observed Offender James standing in the dayroom, holding on to the bench.
Officer Harris stated, she entered the B3 dormitory dayroom and attempted to question Offender James as to why he was not in his bunk. Officer Harris stated Offender James did not respond to the questions, he just stood with his head down and was swaying back and forth.

Officer Harris stated at approximately 2:40 am, she notified Lt. Toby Whitfield, via handheld radio that there was something wrong with Offender James in B3-23. Officer Harris stated Sgt. Seda and Sgt. Flowers responded to the call. Upon the arrival of Sgt. Flowers, he notified security staff that a wheelchair was needed in B3 dorm.

Officer Harris stated while waiting on the wheelchair, Offender James kneeled down on his knees and maintained a tight grasp to the bench. Officers Ronald Burt, Kenneth Mangan and Torrance Stephens arrived with the wheelchair, Offender James was assisted to the wheelchair and escorted to medical.

Tully Flowers, Sgt. Gurney Unit:    Sgt. Tully Flowers stated due to there being no onsite medical staff at the Gurney Unit at the time, he contacted Beto Unit medical staff and spoke to LVN, Linda McKnight Nurse

_Mark Owens_ _____    _155_    _2/8/13_
Investigator's Signature                ID#        DATE

Approving Supervisor's Signature _____    ID# _____    DATE _____
CC-0240 Draft(05/2011)

Copy of OIG case to Litigation Support on 04.19.2013 by ce
UNAUTHORIZED COPYING OR VIEWING PROHIBITED                Page 11 of 14

McKnight instructed Sgt. Flowers to get the offenders temperature and blood pressure, which was noted as 89/57 and temperature of 108.

Sgt. Flowers stated as Offender James was being prepared for transport to the Beto Unit Infirmary, Offender James bent over in the wheelchair and became unresponsive at which time, Sgt. Seda stated he notified Lt. Whitfield and central control to notify 911 EMS. Offender James was placed on a gurney, and appeared to be having difficulty breathing, and looked disorientated. Sgt. Flowers stated Lt. Whitfield checked the offender's wrist and stated that he could fell a pulse.

Sgt. Flowers stated at approximately 3:19 am, EMS arrived at the Gurney Unit and advised Lt. Whitfield an Air Ambulance was dispatched to the unit. At approximately 3:38 am, as the EMS was preparing to exit the back gate of the unit, Sgt. Flowers stated he was notified that Offender James had coded and the EMS was transporting Offender James to Palestine Regional Medical Center.

Matthew Seda, Sgt. Gurney Unit:     Sgt. Seda stated Lt. Whitfield instructed he and Officer Burt to follow the EMS to PRMC and report the condition of Offender James to him. Sgt. Seda stated at approximately 4:05 am, EMS arrived at PRMC, where Offender James was placed in Exam Room #1. Sgt. Seda further stated PRMC medical staff began life saving measures and at 4:10 am, reported Offender James had a pulse. At approximately 4:16 am, Doctor Heidi Knowles pronounced Offender James deceased.

Danny Washington, LVN, U.T.M.B.:     Mr. Washington stated on or about 8-12-2011, at approximately 6:00 pm, he received a call from the B-dorm in regards to Kenneth James. Washington stated the officer stated that they had an offender that was dizzy. Washington stated he advised the officer to have the patient to drink water, stay cool as possible, and if they thought that he, the patient needed to come to medical to have him come in. Washington further stated by the time the medical staff left the clinic at the end of the shift, he had not seen the patient.

Toby Whitfield, Lt., Gurney Unit:     Lt. Whitfield stated that on 8-13-2011, at approximately 2:40 am, was notified by Officer Glorie Harris that Offender Kenneth James was in B-3 Dorm urinating on himself and could not stand. Lt. Whitfield stated he instructed officers to send a wheelchair to the B-3 dorm and assist with Offender James. Lt. Whitfield further stated upon his arrival to the medical department, Offender James was unresponsive and 911 was notified by central control.

Vincent McKnight, CO V, Gurney Unit:     Officer McKnight stated that on 8-13-2011, at approximately 2:50 am, he was notified by Lt. Whitfield and instructed to report to the medical department and assist security staff place Offender James on a gurney. Officer McKnight stated upon arriving at the medical dept. Offender James appeared disorientated and having difficulty breathing. Officer McKnight further stated PRMC, EMT personal arrived and transferred Offender James to PRMC.

Kenneth Mangan, CO V, Gurney Unit:     Officer Mangan stated that on 8-13-2011, at approximately 2 40 am, he was in the main hallway and observed Officer Torrance Stephens in the hallway with a wheelchair. Officer Mangan stated he proceeded to B-3 dorm with Officer Stephens and assisted in placing Offender James in the wheelchair and escorting him to medical.

| | | |
|---|---|---|
| _Mark Owens_ | _155_ | _2/8/12_ |
| Investigator's Signature | ID# | DATE |
| Approving Supervisor's Signature | ID# | DATE |
| CC-0240 Draft(05/2011) | | |

Copy of OIG case to Litigation Support on 04.19.2013 by ce
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Page 12 of 14

INCIDENT/INVESTIGATION REPORT                                                          CASE #: A2011.03304

**Torrance Stephens, CO V, Gurney Unit:**    Officer Stephens stated that on 8-13-2011, at approximately 2:40 am, Lt. Whitfield notified him via radio and instructed him a wheelchair was needed in B-3 dorm in reference to a medical emergency. Officer Stephens stated he retrieved a wheelchair and proceeded to B-3 dorm. Upon arriving at b-3 dorm Officer Stephens stated he was instructed to assist Sgt. Matthew Seda place Offender James in the wheelchair and escort him to medical.

## EVIDENCE:

Beto Evidence Inventory #11-127 is described as a compact disc containing digital photographs of Offender Kenneth James TDCJ #1726849. Evidence Inventory #11-127 was secured into the Beto evidence for safekeeping. Evidence listed in case management under Tag #2011.03304.0001.

## DISPOSITION:

Based on the fact this investigation did not disclose any evidence that Offender James's death was caused by anything other than natural causes, this case is **Administratively Closed.**

## ATTACHMENTS:

1: Emergency Action Center Report
2: Administrative Review
3: Investigators Report of Custodial Death
4: Inquest Transport Order
5: Order for Autopsy
6: Inquest Information Sheet
7: Voluntary Statement, Officer Robert Burt
8: IOC Statement, Officer Deborah Schulle
9: IOC Statement, Officer Brenda Renner
10: IOC Statement, Officer Debra Gilmore
11: IOC Statement, Officer Brandon Matthews
12: IOC Statement, Officer Robert Leonard
13: IOC Statement, Officer Sara Raines
14: IOC Statement, Officer Doris Edwards
15: IOC Statement, Officer Revoyda Dodd
16: IOC Statement, Officer Glorie Harris
17: IOC Statement, Officer Joshua Milton
18: IOC Statement, Officer John Crawford
19: IOC Statement, Sergeant Tully Flowers
20: IOC Statement, Lieutenant Toby Whitfield
21: IOC Statement, Sergeant Matthew Seda
22: IOC Statement, Officer Vincent McKnight
23: IOC Statement, Officer Kenneth Mangan
24: IOC Statement, Officer Torrance Stephens
25: Unit Summary of Incident

_Mark Owens_ / Investigator's Signature            155 / ID#            2/8/12 / DATE

Approving Supervisor's Signature            ID#            DATE
CC-0240 Draft(05/2011)    Copy of OIG case to Litigation Support on 04.19.2013 by ce
UNAUTHORIZED COPYING OR VIEWING PROHIBITED    Page 13 of 14

INCIDENT/INVESTIGATION REPORT _____     _____     _____ CASE #: A2011.03304

26: Detailed Time Line
27: Offender Witness Statements
28: Offender Death Notification, Chaplain Taylor
29: Digital Photographs, Kenneth James TDCJ #1726849
30: Travel Card Information / Visitation Information, Kenneth James TDCJ #1726849
31: Unit Transport and Autopsy Information
32: Off-Unit Transport Documentation
33: UTMB Medical Records
34: PRMC Medical Records
35: Copy of Certificate of Death, State File Number 142-11-107249
36: Provisional Autopsy Report, Autopsy Number AU-11-00174
37: Final Autopsy Report, Autopsy Number AU-11-00174
38: Toxicology Profile Report, Lab I.D. #4446209
39: Employee Reprimand Form, Sgt. Matthew Seda
40: Employee Reprimand Form, Doris Edwards, CO V
41: Employee Reprimand Form, Revoyda Dodd, CO IV

_Mark Owens_ _____     _155_     _2/6/13_
Investigator's Signature                      ID#       DATE

Approving Supervisor's Signature                ID#       DATE
CC-0240 Draft(05/2011)

Copy of OIG case to Litigation Support on 04.19.2013 by ce
UNAUTHORIZED COPYING OR VIEWING PROHIBITED     Page 14 of 14

```
*****************************************************************************
*** REQUESTOR: MOW2068 - OWENS, MARK          BETO I UNIT              ***
*****************************************************************************
***              S Y S M   I N B A S K E T   P R I N T               ***
```

MESSAGE ID: 010637T     DATE: 08/15/11  TIME: 11:45am  PRIORITY: 000

TO:       MOW2068 - OWENS, MARK
          INVESTIGATOR
          BETO I UNIT
          P.O. BOX 128,
          TENN. COLONY, TX. 75880



FROM:     PRA3069 - RAYFORD, JERRY
          MAJOR
          GURNEY UNIT
          1385 FM 3328
          PALESTINE, TX 75803



SUBJECT:    EAC GENERAL INCIDENT REPORT


*** Original Author:  TWH5304 - WHITFIELD, TOBY; 08/13/11 09:08am

EAC USE ONLY:  DATE REPORTED:....................TIME REPORTED:..............

EMERGENCY ACTION CENTER INCIDENT NO:  I - 11520 - 08 - 11
MAJOR USE OF FORCE NUMBER (IF APPLICABLE):  M -       -      -
TYPE OF INCIDENT: OFFENDER DEATH
UNIT: ND   REGION 02  DATE OCCURRED: 08 / 13 / 2011  TIME OCCURRED: 04:15
SPECIFIC LOCATION: PALESTINE REGIONAL MED. CENTER
INITIAL INCIDENT COMMANDER:  (IF APPLICABLE)
RANK/NAME: N/A
FINAL INCIDENT COMMANDER (IF COMMAND WAS TRANSFERRED):
RANK/NAME: N/A
LEVEL OF RESPONSE:  (INDICATE ALL THAT APPLY)
   A       B       C       D       E   X N/A (IF INCIDENT WAS HANDLED WITHOUT
REQUEST FOR RESPONSE TEAM)
GANG IDENTIFICATION: NONE
WAS OFFICE OF INSPECTOR GENERAL NOTIFIED:  X YES     NO
WAS INCIDENT RACIALLY MOTIVATED:     YES  X NO



                         OFFENDER INFORMATION
OFFENDER NAME (LAST, FIRST M)      TDCJ NO     CUST  RACE  SEX  AGE  INJ  A-W
  JAMES, KENNETH WAYNE             01726849     NR    B    M    52   N

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

```
WERE OFFENDERS TRANSFERRED TO A HOSPITAL X YES    NO
BY: X EMS    VAN    LIFE FL    T
NAME OF HOSPITAL: PALESTIN_ REGIONAL MEDICAL CENTER
```

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

TREATMENT: CONDUCTED LIFE SAVING MEASURES IN AN ATTEMPT TO PROTECT DEATH

EMPLOYEE INFORMATION

NAME (LAST, FIRST M)      SSN    RACE  SEX   AGE    RANK
N/A


WHEN REPORTING AN ALLEGED SEXUAL ASSAULT PLEASE PROVIDE THE FOLLOWING
WAS A RAPE KIT COMPLETED    YES   NO   DECLINED
WAS A SEXUAL ASSAULT REPRESENTATIVE REQUESTED/PROVIDED    YES   NO   DECLINED
IF YES NAME/TITLE OF REPRESENTATIVE:

WHEN REPORTING A DEATH/SUICIDE/HOMICIDE PLEASE PROVIDE THE FOLLOWING
DATE: 08 / 13 / 2011  TIME: 04 : 16 PRONOUNCED DECEASED
PERSON PRONOUNCING VICTIM DECEASED NAME/TITLE: HIEDI KNOWLES / M.D.
COUNTY WHERE DEATH OCCURRED: ANDERSON
PRELIMINARY CAUSE OF DEATH: CARDIAC ARREST
NEXT OF KIN NOTIFIED X YES   NO DATE: 08 / 13 / 2011  TIME: 06 : 10
NAME OF NOK: MARY JAMES (MOTHER)
HUNTSVILLE FUNERAL HOME NOTIFIED X YES   NO
JUSTICE OF PEACE NOTIFIED: X YES   NO

DESCRIPTION OF WEAPON(S) CONTRABAND
N/A


CHEMICAL AGENT INFORMATION
AMOUNT                         LIST TYPE                    AUTHORIZATION
N/A                    N/A                              N/A


WAS TEAM AUTHORIZED   YES X NO   DECONTAMINATED   YES X NO   INJURIES   YES X NO

WERE ANY TECHNOLOGIES/PROTECTIVE EQUIPMENT/CANINE LISTED BELOW PERTINENT TO
THIS INCIDENT?
YES      NO X

IF YES, INDICATE APPLICABLE
PARCEL SCANNER                              N/A
WALK THROUGH METAL DETECTOR                 N/A
HAND HELD METAL DETECTOR                    N/A
B.O.S.S. CHAIR                             N/A
VIDEO SURVEILLANCE                          N/A
HEARTBEAT DETECTION SYSTEMS                 N/A
BODY ALARM                                 N/A
PERIMETER FENCE DETECTION SYSTEMS           N/A
STAB-RESISTANT VEST                         N/A
NARCOTIC DETECTOR CANINE                    N/A
CELL PHONE DETECTOR CANINE                  N/A
PACK CANINES                               N/A
S.A.R. CANINES                             N/A
CONTRABAND INTERDICTION SHAKEDOWN TEAM      N/A
OTHER:  N/A

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

SUMMARY OF INCIDENT
ON 08/13/2011 THE JOE F. GURNEY TRANSFER FACILITY LOCATED IN PALESTINE TEXAS
REGION II, WAS NOTIFIED THAT OFFENDER JAMES, KENNETH 1726236 WAS PRONOUNCED
DECEASED AT 0416 HOURS AT PALESTINE REGIONAL MEDICAL CENTER EMERGENCY ROOM.

OFFENDER JAMES, KENNETH  1726849 IS A 5'10" 266-POUND FIFTY-TWO YEAR OLD
BLACK MALE IN G2-CUSTODY SERVING A 5-YEAR SENTENCE FOR ASSAULT FAMILY
VIOLENCE ENCHANCED OUT OF MCLENNAN COUNTY TEXAS.

AT APPROXIMATELY 0240 HOURS, OFFICER GLORIE HARRIS COIV NOTIFIED LIEUTENANT
TOBY WHITFIELD THAT AN OFFENDER IN B3-DORMITORY WAS IN THE DAYROOM URINATING
ON HIMSELF AND COULDN'T STAND UP.  LIEUTENANT WHITFIELD INSTRUCTED OFFICERS
KENNETH MANGAN COIV AND TORRANCE STEPHENS COV TO OBTAIN A WHEEL CHAIR AND
RESPOND TO B3-DORMITORY AND RETRIEVE OFFENDER JAMES FROM THE DAYROOM AND
ESCORT HIM TO THE UNIT MEDICAL DEPARTMENT.

OFFICER STEPHENS AND MANGAN RETRIEVED THE OFFENDER FROM THE DAYROOM AND
PROCEEDED TO THE MEDICAL DEPARTMENT WITH THE OFFENDER.  AT THE MEDICAL
DEPARTMENT, SERGEANT TULLY FLOWERS NOTIFIED REGISTERED NURSE MCKNIGHT AT THE
BETO UNIT OF THE OFFENDERS CONDITION.  MRS. MCKNIGHT INFORMED SERGEANT FLOWER
TO TRANSPORT THE OFFENDER TO THE BETO UNIT FOR EVAULATION.
WHILE THE OFFENDER WAS BEING PREPARED FOR TRANSPORT, THE OFFENDER LEANED OVER
IN THE WHEEL CHAIR AND BECAME UNRESPONSIVE.  SGT. FLOWERS NOTIFIED LT.
WHITFIELD OF THE OFFENDERS CURRENT STATUS AND LT. WHITFIELD INSTRUCTED THE
CENTRAL CONTROL OFFICER TO CALL 911 AND REQUEST EMERGENCY SERVICES AT 0248.

THE OFFENDER CONTINUED TO BE UNRESPONSIVE.  SERGEANT NOTIFIED WARDEN DENNIS
MILLER OF THE SITUATION.  THE OFFENDER WAS MOVED FROM THE WHEEL CHAIR AND
PLACED ON THE GURNEY IN THE UNIT EMERGENCY ROOM.

AT APPROXIMATELY 0319 HOURS, THE AMBULANCE ARRIVED ON THE FACILITY AND
ENTERED THE BACK GATE.  ONCE AT THE UNIT INFIRMARY, LT. WHITFIELD BRIEFED THE
EMT'S OF THE OFFENDERS CONDITION.  THE EMT'S BEGAN TAKING VITAL SIGNS
911-OPERATOR SARAH WARDELL INFORMED INFORMED LT. WHITFEILD THAT THE AIR
AMBULANCE WOULD BE UTILIZED FOR THE TRANSPORT.

THE OFFENDER WAS REMOVED FROM THE UNITS MEDICAL GURNEY AND PLACED OF THE
AMBULANCE GURNEY.  THE OFFENDER WAS MOVED FROM THE UNIT EMERGENCY ROOM TO THE
AMBULANCE.

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

```
*********************************************************************
*** REQUESTOR: MOW2068 - OWENS, MARK          BETO I UNIT      ***
*********************************************************************
***            S Y S M   I N B A S K E T   P R I N T          ***
```

MESSAGE ID: 010681T      DATE: 08/15/11  TIME: 11:45am  PRIORITY: 000

```
TO:       MOW2068 - OWENS, MARK
          INVESTIGATOR
          BETO I UNIT
          P.O. BOX 128,
          TENN. COLONY, TX. 75880



FROM:     PRA3069 - RAYFORD, JERRY
          MAJOR
          GURNEY UNIT
          1385 FM 3328
          PALESTINE, TX 75803



SUBJECT:   I-11520-08-11/CONTINUATION


*** Original Author:  TWH5304 - WHITFIELD, TOBY; 08/13/11 10:44am

  TO: EMERGENCY ACTION CENTER (EAC)
      HUNTSVILLE, TEXAS

FROM: TOBY WHITFIELD, LIEUTENANT
      JOE F. GURNEY TRANSFER FACILITY
      PALESTINE, TEXAS

SUBJECT: I-11520-08-11/CONTINUATION
         OFFENDER DEATH
         JAMES, KENNETH #1726849
```

LT. WHITFIELD NOTIFIED THE BETO UNIT THAT AN AIR AMBULANCE WAS ENROUTE
AND THE TENNESSEE COLONY VOLUNTEER FIRE DEPARTMENT WAS SUMMONS.

ONCE THE OFFENDER WAS IN THE AMBULANCE, OFFICER VINCENT MCKNIGHT COV
ASSISTED MEDICAL STAFF ON THE AMBULANCE BY USING A B.P. BAG.  MEDICAL
STAFF ATTEMPTED TO INTUBATE THE OFFENDER AND AN I.V. WAS STARTED.  THE
OFFENDERS MEDICAL CONDITION CONTINUED TO DECLINE.

AT APPROXIMATELY 0338 THE AMBULANCE BEGAN TO MOVE TOWARD THE BACK GATE
IN PREPARATION FOR THE AIR AMBULANCE.  WHILE THE AMBULANCE WAS ENROUTE
TO THE BACK GATE, THE DRIVE INFORMED LT. WHITFIELD THAT THE OFFENDER
HAD CODED AND NEEDED TO BE TRANSPORTED TO THE HOSPITAL BY AMBULANCE
IMMEDIATELY INSTEAD OF WAITING FOR THE AIR AMBULANCE.  OFFICER MCKNIGHT
 STAYED IN THE BACK OF THE AMBULANCE AND CONTINUED TO ASSIST WITH LIFE
SAVING EFFORTS.

THE AIR AMBULANCE WAS CANCELED BY THE MEDICAL STAFF ON-BOARD OF THE
THE AMBULANCE.  SERGEANT MATTHEW SEDA AND OFFICER BURT FOLLOW THE

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

AMBULANCE IN A STATE VAN TO PALESTINE REGIONAL MEDICAL CENTER
EMERGENCY ROOM.  WARDEN M⊤ ¨ER IS UPDATED ON THE OFFE¨ ¨RS CONDITION.

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

AT 0410 HOURS, SERGEANT SEDA INFORMED LT. WHITFIELD THAT THE OFFENDER
WAS IN THE EMERGENCY ROOM AND LIFE SAVING MEASURES WERE STILL BEING
PERFORMED BY MEDICAL STAFF IN THE ER.  AT 0417 HOURS, SERGEANT SEDA
NOTIFIED LT. WHITFIELD THAT THE OFFENDER WAS DECEASED.

OFFENDER JAMES WAS PRONOUNCED DECEASED AT 0416 HOURS BY MEDICAL DOCTOR
HEIDI KNOWLES.  PRELIMINARY RESULTS INDICATED CARDIAC ARREST.

LT. WHITFIELD UPDATED WARDEN MILLER ON THE SITUATION.

AT 0442 HOURS, OFFICE OF INSPECTOR GENERAL, MARK OWENS WAS NOTIFIED OF
THE INCIDENT.

AT 0445 HOURS, CAPTAIN MICHAEL LUMPKINS WAS NOTIFIED OF THE INCIDENT.

AT APPROXIMATELY 0500 HOURS, JUSTICE OF THE PEACE JAMES TODD ARRIVES AT
PALESTINE REGIONAL MEDICAL CENTER AND COMPLETED A INQUEST TRANSPORT
ORDER AND THE ORDER FOR AUTOPSY.

AT 0505 HOURS, JACOB LITTLE OF CARNES FUNERAL HOME IN TEXAS CITY WAS
NOTIFIED OF THE DECEASED OFFENDER.

AT 0511 HOURS, MARK OWENS ARRIVED AT PALESTINE REGIONAL MEDICAL CENTER
EXAM ROOM #1 AND BEGAN INVESTIGATOR'S REPORT OF CUSTODIAL DEATH FORM
AND TOOK DIGITAL PHOTOS OF THE OFFENDER.

AT APPROXIMATELY 0605 HOURS, WARDEN MILLER, CAPTAIN LUMPKINS AND
CHAPLAIN THOMAS TAYLOR ARRIVED ON THE FACILITY.

AT 0640 HOURS, CHAPLAIN TAYLOR NOTIFIED MARY JAMES, MOTHER OF OFFENDER
JAMES OF HIS DEATH.

AT 0645 HOURS, SERGEANT FLOWERS NOTIFIED ANDERSON COUNTY SHERIFF
DEPARTMENT THAT OFFENDER JAMES BODY WAS BEING HELD IN EXAM ROOM #1 AT
PRMC UNTIL ARRANGEMENTS WITH CARNES FUNERAL HOME COULD BE MADE.

AT 0655 HOURS, SERGEANT FLOWERS NOTIFIED J. LOWERY OF THE OFF-SITE
MEDICAL COMMAND CENTER, OF THE INCIDENT.

AT 0955 HOURS, CARNES FUNERAL HOME, DICKY SYERS ARRIVED AT PALESTINE
REGIONAL MEDICAL CENTER TO PICK UP THE BODY FOR TRANSPORT TO
UTMB-GALVASTON FOR AN AUTOPSY.  AT 1005 HOURS, MR. DICKY TOOK POSSESSI
OF THE BODY AND DEPARTED PALESTINE REGIONAL MEDICAL CENTER.

K. CRUMBY OF THE EMERGENCY ACTION CENTER WAS NOTIFIED OF THE INCIDENT
AT 0612 HOURS AND INCIDENT NUMBER I-11520-08-11

C.R.I.S.P. WAS OFFERED TO ALL STAFF MEMBERS INVOLVED AND ALL DECLINED.


"ADDITIONAL INFORMATION WILL BE PROVIDED AS IT BECOMES AVAILABLE".

DRAFTED BY:   LIEUTENANT TOBY WHITFIELD
AUTHORIZATION: WARDEN DENNIS MILLER

*** Comments From: PRA3069 - RAYFORD, JERRY; 08/15/11 11:45am

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED



### Texas Department of Criminal Justice

——————————————————————— Brad Livingston

Administrative Review
**Incident # I-11520-08-11**
Texas Department of Criminal Justice
Correctional Institutional Division
Joe F. Gurney Transfer Facility
August 17, 2011

**To:**       Emergency Action Center
              Huntsville, Texas

**Thru:**     Mr. Robert Eason
              Region II Director

**Subject:**  I-11520-08-11
              Offender Death (Cause Pending)

**Persons
Involved:**

**Offender James, Kenneth Wayne #1726849**
Offender James, Kenneth #1726849 is a 5'10" 266 pound fifty-two (52) year old
black male, United States citizen, NR-Custody offender assigned to the Joe F.
Gurney Transfer Facility of the Texas Department of Criminal Justice
Correctional Institutional Division, serving a five (5) year sentence for Assault-
Family Violence (Enhanced) out of McLennan County, Texas.

**Summary:**

On August 13, 2011 at approximately 0417 hours, it was reported to the Joe F.
Gurney Transfer Facility by Sergeant Matthew Seda that offender James, Kenneth
#1726849 was pronounced deceased by Medical Doctor Heidi Knowles.   The
preliminary cause of death was listed as cardiac arrest.

On August 13 at approximately 0020 hours, Correctional Officer V Doris
Edwards, assigned to B1-Building, reported to Sergeant Seda that offender James,
housed in B3-Dorm on B1-Building, was exhibiting abnormal behavior,
specifically, that he appeared disoriented and may have urinated on himself.

---

*Our mission is to provide public safety, promote positive change in offender,
behavior, reintegrate offenders into society, and assist victims of crime.*

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED
1385 F.M. 3328
Palestine, Texas 75803

Sergeant Seda and Sergeant Tully Flowers reported that he was assisting with the unit count at the time the notification was made and Sergeant Seda confirmed that offender James was in a secure area, instructed Officer Edwards to maintain a visual on the offender and indicated that he would respond shortly.

Following Sergeant Seda's conversation with Officer Edwards, Correctional Officer V Robert Tatum, currently assigned as a correctional officer in the Food Service Department, reported to Sergeant Seda that, while rostering his 0100 hour offender workers he observed one offender, housed on A1-Building, with injuries consistent of having been involved in a physical altercation.  Sergeant Seda instructed Correctional Officer IV Tatum to instruct the injured offender to wait in the hallway immediately outside of the Building Lieutenant's Office and that he would conduct an investigation at the conclusion of the unit count.

Shortly after Sergeant Seda's conversation with Correctional Officer IV Tatum, Correctional Officer IV Revoyda Dodd, also assigned to B1-Building, reported to Sergeant Seda that she, too, had observed offender James behaving abnormally and that he appeared to be "drunk or on some kind of medication." Sergeant Seda indicated to Correctional Officer IV Dodd that he would report to the housing area as soon as he was complete with his current task, assisting with the unit count, and that offender James should remain in the secured area.  He further indicated that if the situation should change and warrant a more immediate response to notify him.

A sergeant's participation in the count, to ensure that it is conducted and cleared in a timely manner, consists of reviewing the count sheets to ensure that no discrepancies exist between the documentation provided by staff and the actual figures provided by telephone.  In this case, the count being conducted was a bed book count which provides that each offender will be verified by TDCJ identification card and would require additional review to ensure that all offenders are housed where they are assigned and that all staff conducted, properly, the bed book count.  A lieutenant, who is taking the formal count, is present during this process.

Upon completion of his duties in assisting with the unit count, at approximately 0035 hours, Sergeant Seda made contact with the offender who had been involved in the physical altercation and began questioning the offender regarding the circumstances of his physical altercation as well as the identity of the other involved offender.  Sergeant Seda, in an effort to determine what had occurred and to identify the unknown participant, proceeded to A1-Building and began an investigation, stating that he forgot about the report regarding offender James.  At approximately 0235 hours, the identity of the other involved offender had been determined and, as Sergeant Seda and Sergeant Flowers were exiting A-Building, they heard a request for a wheelchair and additional staff on B1-Building.  Both

*Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime.*
Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED
Joe F. Gurney Unit
1385 F.M. 3328

proceeded to that location.   *See Offense Reports #20110356416 and #20110356422).*

Upon arrival by both Sergeant Seda and Sergeant Flowers, offender James was observed standing in the dayroom of B3-Dorm and appeared disoriented. Sergeant Seda reported that, upon approaching offender James, he immediately kneeled to one knee. Correctional Officer V Torrance Stephens and Correctional Officer V Kenneth Mangan arrived shortly after Sergeant Seda with the wheelchair. Correctional Officer V Ronald Burt, who had also responded, and Correctional Officer V Stephens assisted offender James into the wheelchair. Correctional Officer V Stephens then, without incident, pushed the wheelchair containing offender James to the Gurney Unit Medical Department.

Upon arrival in the medical department, due to no on-site medical staff, Sergeant Tully Flowers contacted Registered Nurse Linda McKnight at the Beto Unit Medical Department.   Sergeant Flowers indicated that Registered Nurse McKnight instructed him to obtain the blood pressure and temperature of offender James and report the results to her.   As a result, Sergeant Flowers ordered Correctional Officer V Burt to obtain this information by use of the equipment in the medical department.   Correctional Officer V Burt reported results of a temperature of 108° and a blood pressure reading of 89/57, which upon being relayed to Registered Nurse McKnight, resulted in her requesting that offender James be transported, by unit van, to the Beto Unit Medical Department for evaluation.

As offender James was being prepared for transport, he suddenly bent over in the wheelchair and became unresponsive; however, was still breathing and had a pulse, therefore cardiopulmonary resuscitation ("CPR") was not needed nor initiated.   Lieutenant Toby Whitfield, upon being notified of offender James' current status, instructed Central Control to request Emergency Medical Services ("EMS") by dialing 9-1-1 as he arrived in the medical department.   Lieutenant Whitfield confirmed that offender James had a pulse.

At approximately 0319 hours, EMS personnel arrived in the infirmary and began to assess offender James' condition.   As the EMS personnel began obtaining vital signs, 9-1-1 operator Sarah Wardell informed Lieutenant Whitfield that offender James would be transported by air ambulance.

In preparation for the air ambulance, EMS personnel removed the offender from the Gurney Unit Medical Department and placed him inside of the ambulance. While awaiting the arrival of the air ambulance, at the request of EMS personnel, Correctional Officer V Vincent McKnight assisted EMS personnel with life saving measures by "ambu bag" to force air into the lungs as part of the CPR process. EMS personnel made multiple attempts to intubate offender James, to no avail.

*Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime.*
Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED
1385 F.M. 3328

**Incident Number I-11520-08-11**          **Joe F. Gurney Unit**          **Page 4 of 10**

At approximately 0338 hours, the ambulance began to move to the back gate in preparation for the arrival of the air ambulance. Lieutenant Whitfield was notified by the ambulance driver that offender James' condition had suddenly worsened and that there was insufficient time to await the arrival of the air ambulance; instead offender James would need to be transported to Palestine Regional Medical Center ("PRMC") immediately, via ambulance.

With Correctional Officer V McKnight onboard the ambulance assisting with life saving measures, Lieutenant Whitfield permitted the ambulance to immediately depart the facility, subsequently, dispatching Sergeant Seda and Correctional Officer V Burt to meet the ambulance at PRMC. In addition, the air ambulance was canceled by EMS personnel.

Having arrived at PRMC, and assessing the situation, Sergeant Seda contacted Lieutenant Whitfield at 0410 hours and reported that PRMC Emergency Room personnel had continued life saving measures.

At approximately 0416 hours, Medical Doctor Heidi Knowles pronounced offender James as deceased with preliminary results indicating cardiac arrest.

At approximately 0417 hours, Sergeant Seda reported the death of offender James to Lieutenant Whitfield. Correctional Officer V Burt and Correctional Officer V McKnight returned to the Gurney Unit and Sergeant Seda remained at PRMC with the remains until the arrival of Carnes Funeral Home, Precinct #3 Justice of the Peace James Todd, and the Office of the Inspector General.

At 0442 hours, Investigator Mark Owens of the Office of the Inspector General was notified and arrived at 0511 hours to begin an investigation.

At approximately 0500 hours, having been notified by PRMC medical staff, Precinct # 3 Justice of the Peace Todd arrived, conducted an inquest hearing and ordered an autopsy of the remains.

At approximately 0640 hours, Chaplain Thomas Taylor notified the next-of-kin, Ms. Mary James, listed as the mother of offender James. Ms. James indicated that the family did not object to an autopsy and would claim the remains as well as any property belonging to offender James.

At approximately 0700 hours, Correctional Officer V John Crawford arrived at PRMC to relieve Sergeant Seda who subsequently returned to the Gurney Unit to complete his statement as part of this report.

At approximately 1005 hours Mr. Richard Syers of Carnes Funeral Home arrived at PRMC, collected the remains of offender James and departed. Correctional Officer V Crawford returned to the Gurney Unit.

*Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime.*
Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED
Gurney Unit
1385 F.M. 3328

Incident Number I-11520-08-11          Joe F. Gurney Unit                    Page 5 of 10

During a unit investigation, it was revealed that offender James arrived as a newly received offender on August 10 where, upon arrival, he received an orientation by Gurney Unit medical staff was conducted and prescriptions he was receiving in the McLennan County Jail were confirmed.

On August 11, offender James did not report to medical for any reason nor did he report to any member of staff of a need for medical assistance. In addition, offender James did not report to any pill window to obtain his prescribed medication. *See Clinic Nursing Notes (August 12, 2011)*.

On August 12, at approximately 1145 hours, offender James reported to the Gurney Unit Medical Department for his required intake physical, conducted by Physician's Assistant Certified Stephen Smith. During the physical, offender James was noted to have a blood pressure of 170/100 and a pulse of 108. As a result, Physician's Assistant Certified Smith ordered Clonidine 0.2 MG to be administered immediately. Licensed Vocational Nurse Debbie Reinhart administered the prescribed medication at 1155 hours. A subsequent check of offender James' blood pressure revealed a result of 129/74 and a pulse of 100. As a result of the improvement, offender James was returned to Physician's Assistant Certified Smith for completion of the intake physical. No other abnormalities were noted and the offender was permitted to return to his assigned housing area. In addition, his prescriptions were renewed through September 11, 2011.

Correctional Officer V Debra Gilmore reports that, at approximately 1645 hours, she entered B3-Dorm to retrieve water coolers to be refilled and that offender James nor any other offender on his behalf reported that he needed medical assistance. At approximately 1715 hours, Correctional Officer V Robert Leonard, who was being relieved in the building control picket by Correctional Officer IV Brandon Matthews, advised Correctional Officer V Gilmore that several offenders in B3-Dorm had reported that offender James was in need of medical assistance. Correctional Officer V Leonard and Correctional Officer V Gilmore entered B3-Dorm to assess the condition of offender James. Correctional Officer V Leonard, as they approached offender James' assigned bunk, B3-23, asked him if he could sit up. Offender James was able to comply and was asked to provide his TDCJ identification card, which he also complied. Correctional Officer V Leonard then asked offender James a series of questions to determine if he was able to provide an accurate answer. Offender James accurately provided his name, number, age and the current day of the week. Correctional Officer V Leonard informed offender James that medical would be contacted regarding his condition. Correctional Officer V Gilmore proceeded to make contact with the medical department.

Correctional Officer V Gilmore reports in her statement that she made telephone contact with Licensed Vocational Nurse Danny Washington and that he declined to see offender James only advising her to instruct offender James to drink plenty

*Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime.*
Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED
1385 F.M. 3328

Incident Number I-11520-08-11 ·         Joe F. Gurney Unit                    Page 6 of 10

of water as he was previously directed by medical staff.  Correctional Officer V Gilmore provided the instructions of Licensed Vocational Nurse Washington to offender James, briefed second shift relief, Correctional Officer III Sarah Rains on offender James condition and departed the facility as she was properly relieved.

Licensed Vocational Nurse Washington provided a statement in which he confirmed, in part, Correctional Officer V Gilmore's allegations; however, he asserts that he advised Correctional Officer V Gilmore to allow the offender to return to medical if she felt that it was needed.  He further asserts that, having received no further report from security staff regarding the condition of offender James, that he departed the facility at 1900 hours, the scheduled closing time for the medical department.

The following notifications were made at the approximate times noted:

- Warden Dennis Miller at 0417 hours;
- Investigator Mark Owens, Office of the Inspector General at 0442 hours;
- Judge James Todd, Precinct #3 Justice of the Peace at 0500 hours;
- Mr. Jacob Little, Carnes Funeral Home at 0505 hours;
- Ms. Kathy Crumby, Emergency Action Center at 0612 hours;
- Anderson County Sheriff's Office at 0640 hours;
- Correctional Officer J. Lowery, Off-Site Medical Transport Command Center at 0655 hours.

**Employee Action/Inaction:**

There were employee actions and inactions associated with this incident and corrective action initiated, as follows:

- Sergeant Seda received an entry in his Employee Performance Log for failing to immediately respond to the building when notified by staff that offender James was exhibiting abnormal behavior.  While his inaction was unacceptable, his truthfulness during the investigation and the fact that his actions were not deliberate or malicious in nature, it was determined that a lesser means of corrective action was appropriate.  In addition, Sergeant Seda's past performance has been exceptional and his inaction in this incident was a failure in correctly prioritizing two separate incidents that, he believed, were ongoing simultaneously.  The physical altercation which he investigated before responding to the reports of offender James' abnormal behavior had already occurred and could have been investigated by the next shift, if needed, and

*Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime.*
Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED
Joe F. Gurney Unit
1385 F.M. 3328

didn't require the immediate response that it received as one of the
offender participants was in a safe area, away from the assailant.
However, Sergeant Seda was performing his duties as a Sergeant
of Correctional Officers, such as investigating an alleged physical
altercation, and was not substandard to the degree of ignoring his
duties entirely, but that more prudent judgment in prioritizing the
two incidents should have been used is apparent.   There is no
evidence to support that a more immediate response would have
resulted in a different outcome; however, it cannot be ignored that
a more immediate response would have been preferred.   Sergeant
Seda was served and acknowledged by his initials the Employee
Performance Log entry on August 17.

- Sergeant Flowers received an entry in his Employee Performance
  Log for instructing Correctional Officer V Burt to obtain a
  temperature and blood pressure for offender James.   Sergeant
  Flowers, while acting on request from medical staff, is not a
  licensed medical professional nor was Correctional Officer V Burt.
  While staff are aware of their responsibility in providing
  emergency first-aid and assisting medical staff in providing
  treatments and life saving measures when the circumstances
  warrant and at the request of medical staff, the unsupervised use of
  diagnostic equipment at the direction of off-site medical staff, is
  not permitted and places staff, who are not medically trained, in a
  unnecessarily compromising position of liability should the
  incorrect use result in inaccurate information being used by
  medical staff in determining their level of response. Previous
  instructions to supervisory staff have prohibited this and thus,
  corrective action was warranted; however, Sergeant Flowers'
  intent was of the utmost importance in evaluating the level of
  corrective action that was warranted. His actions were in response
  to an emergency situation and he felt, at the time, justified in those
  actions.   He was promoted to the position of Sergeant of
  Correctional Officers after the issue of security staff utilizing
  diagnostic equipment had been addressed and while it is not a
  defense that he was unaware of this prohibited action, the
  circumstances of the incident, in its entirety, must be taken into
  consideration. Sergeant Flowers was served and acknowledged by
  his initials the Employee Performance Log entry on August 17.
  Additional instructions are being provided to supervisor staff
  regarding the use, whether at the request of medical staff or not, of
  diagnostic equipment. Correctional Officer V Burt did not receive
  corrective action because, although he obtained the vitals, this
  action was at the direction of a supervisor.

*Our mission is to provide public safety, promote positive change in offender
behavior, reintegrate offenders into society, and assist victims of crime.*
Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED
1385 F.M. 3328

Incident Number I-11520-08-11     Joe F. Gurney Unit     Page 8 of 10

- The UTMB review process is underway; however, a preliminary recommendation for additional training for Licensed Vocational Nurse Washington and Registered Nurse McKnight was made based on their actions while responding to this incident. Further corrective action, if any, will be known at the conclusion of the review process.

Copies of corrective actions taken thus far are attached to this report.

Attachments:

| | |
|---|---|
| Report by: | Major Incident Checklist |
| Report by: | E-Mail Messages |

- E-Mail Message ID #010637
- E-Mail Message ID #010681
- E-Mail Message ID #032557

| | |
|---|---|
| Report by: | TNG-93, Serious Incident Report Form |
| Report by: | Detailed Time Line |
| Report by: | Employee Statements |

- Correctional Officer IV Brenda Renner
- Correctional Officer V Debra Gilmore
- Correctional Officer III Brandon Matthews
- Correctional Officer V Robert Leonard
- Correctional Officer III Sarah Raines
- Correctional Officer V Doris Edwards
- Correctional Officer IV Revoyda Dodd
- Sergeant Matthew Seda
- Correctional Officer IV Glorie Harris
- Correctional Officer III Joshua Milton
- Correctional Officer V John Crawford
- Sergeant Tully Flowers
- Lieutenant Toby Whitfield
- Correctional Officer V Vincent McKnight
- Correctional Officer V Kenneth Mangan
- Correctional Officer V Ronald Burt
- Correctional Officer V Torrance Stephens
- Correctional Officer IV Deborah Schulle
- Sergeant Tully Flowers

| | |
|---|---|
| Report by: | Offender Statements |

- Inmate Locator Report for B3-Dorm (August 12, 2011)
- Handwritten Offender Witness Statements x 52

| | |
|---|---|
| Report by: | Statement of Chaplain Thomas Taylor |

- Offender Death Notification Worksheet

*Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime.*
Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED
1385 F.M. 3328

Incident Number I-11520-08-11     Joe F. Gurney Unit     Page 9 of 10

- Letter to Ms. Mary L. James, Next-of-kin
- Documentation of family contact: Offender Death
- E-Mail Message ID #010819

Report by:    Digital Photos x 6
Report by:    Offender Travel Card Information
Report by:    Offender Visitation Information
Report by:    Transport and Autopsy Information

- Autopsy Order
- Transport Authorization for Offender Remains
- Judge James Todd, Precinct #3 Justice of the Peace
  - Inquest Transport Order
  - Order for Autopsy
  - Inquest Information

Report by:    Investigator's Report of Custodial Death
Report by:    RM-03
Report by:    Off-Unit Transport Documentation

- I-056 *Inmate Transfer Roster*
- Transport of Offender Form

Report by:    UTMB Correctional Managed Care

- Facility Death Review for Total Quality Management (Final)
- Facility Death Review for Total Quality Management (Initial)
- Statement of Licensed Vocational Nurse Danny Washington
- Nursing Triage Form
- Health Summary for Classification
- Clinic Notes, August 10, 2011
- Texas Uniform Health Status Update, McLennan County
- Intake History and Health Screening
- Report of Physical Exam
- Clinic Notes, August 12, 2011
- Prescription Information x 3

Report by:    Documentation from Palestine Regional Medical Center
Report by:    EMS Patient Care Record
Report by:    Miscellaneous Information

- Dorm Temperature Log, August 12, 2011
- Dorm Temperature Log, August 13, 2011
- Receiving/Releasing Tracking Form, Carnes Funeral Home
- Count Sheet (August 13, 2011)
- Offense Report (#20110356416)
- I-47MA *Disciplinary Report and Hearing Record* (#20110356416)

*Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime.*
Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED
1385 F.M. 3328

Incident Number I-11520-08-11          Joe F. Gurney Unit          Page 10 of 10

- Offense Report (#20110356422)
- I-47MA *Disciplinary Report and Hearing Record* (#20110356422)

Report by:     Corrective Action
- Employee Performance Log:  Sergeant Matthew Seda
- Employee Performance Log:  Sergeant Tully Flowers

**Administrative Review:  Wardens/Administrative Supervisors Comments:**

The staff and supervisors responded to the incident; however, there were some deficiencies and actions in staff response that required corrective action.  The appropriate corrective action, in accordance with PD-52 (rev. 5) *Performance Evaluations*, has been initiated and is attached to this report.  The UTMB review process is underway; however, additional training has been recommended for Licensed Vocational Nurse Washington and Registered Nurse McKnight due to their actions while responding to this incident.  Further corrective action, if any, will be known at the conclusion of the review process.

Signature and Date: _____

Dennis Miller
Senior Warden
Joe F. Gurney Transfer Facility

*Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime.*
Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED
1385 F.M. 3328



**Texas Department of Criminal Justice**
OFFICE OF THE INSPECTOR GENERAL

## INVESTIGATOR'S REPORT
## OF CUSTODIAL DEATH

OIG TRANSITORY #: (if necessary)

| CASE #: | EAC #: | OFFICIAL DATE & TIME OF DEATH: | AUTOPSY ORDERED? |
|---|---|---|---|
| | I- | 8/13/11  4:16  ☒ AM ☐ PM | ☒ YES ☐ NO |

| DECEDENT NAME: (LAST, First, MI) | RACE: | SEX: | AGE: | DOB: |
|---|---|---|---|---|
| James, Kenneth | B | M | 52 | |

| IDENTIFICATION #: | UNIT OF ASSIGNMENT: | DATE & TIME FOUND: |
|---|---|---|
| 1726849 | Gurney | 8/13/2011  3:00  ☒ AM ☐ PM |

| PLACE OF DEATH: | CITY: | COUNTY: | ZIP CODE: |
|---|---|---|---|
| P.R.M.C. | Palestine | Anderson | 75801 |

| J.P. / M.E. NOTIFIED: (Name) | PRECINCT #: | DATE & TIME J.P. / M.E. NOTIFIED | PHOTOGRAPHS? |
|---|---|---|---|
| James Todd | 3 | 8/13/2011  4:42  ☒ AM ☐ PM | ☒ YES ☐ NO |

| PLACE OF INQUEST: | | DATE & TIME OF INQUEST: |
|---|---|---|
| P.R.M.C. | | 8/13/2011  5:11  ☒ AM ☐ PM |

### ★ LOCATION, POSITION and SURROUNDINGS of BODY ★

P.R.M.C. Exam Room 1; Body laying flat on back, IV in place and oxygen in place.

### ★ SUMMARY of HOW DEATH OCCURRED ★

Offender James, Kenneth T.D.C.I. death pending autopsy. Offender was sent to P.R.M.C. at approximately 3:20 AM and pronounced dead by Dr. Heid Knowles at 4:16 AM 8/13/2011.

| TRANSPORTING FUNERAL HOME: | RECEIVING FUNERAL HOME: |
|---|---|
| Carnes Funeral Home | |

| INVESTIGATOR SIGNATURE: | TELEPHONE #: |
|---|---|
| Mark Owens | ( ) - |

Law Enforcement Agency: **TEXAS DEPARTMENT OF CRIMINAL JUSTICE**
OFFICE OF THE INSPECTOR GENERAL
P.O. Box 4003 – Huntsville, TX 77342-4003
(936) 437-6735

Copy of OIG case to Litigation Support on 04.19.2013 by ce
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

CC-0265 (07/2005)                    Page 1 of 2

Plaintiffs' MSJ Appx. 5461          OIG - James 52

## INVESTIGATOR'S REPORT OF CUSTODIAL DEATH
### (Continued)
TEXAS DEPARTMENT OF CRIMINAL JUSTICE – OFFICE OF THE INSPECTOR GENERAL

| CASE #: | DECEDENT NAME: (LAST, First MI) | IDENTIFICATION #: |
|---|---|---|
| | James, Kenneth | 1726849 |

### ★ CLOTHING WORN BY DECEDENT ★

| | | | |
|---|---|---|---|
| ☒ None | ☐ Pants | ☐ Shoes/Boots | ☐ Jacket |
| ☐ Belt | ☐ Gown/Blouse | ☐ Dress | ☐ Other (list details below) |

### ★ PROPERTY SENT WITH DECEDENT ★

None

### ★ MEDICAL HISTORY ★

| Was death attended? ☐ Yes ☒ No | Previous history of illness? ☐ Yes ☒ No |
|---|---|
| History of suicide? ☐ Yes ☒ No | HIV? ☐ Yes ☒ No |

| HOSPITAL NAME: | ADDRESS: | TELEPHONE: |
|---|---|---|
| P. R. M. C. | 2900 S. Loop 256 | (903) 731 - 1140 |
| PHYSICIAN CONTACTED: (Name) | ADDRESS: | TELEPHONE: |
| Knowles, Heidi | 2900 S. Loop 256 | (903) 731 - 1140 |

DIAGNOSIS: Pending Autopsy

### ★ NEXT OF KIN INFORMATION ★

| NEXT OF KIN: | ADDRESS: | TELEPHONE: |
|---|---|---|
| UNKNOWN | | ( ) - |

| NEXT OF KIN NOTIFIED BY: (Name) | TELEPHONE: | DATE & TIME NOTIFIED: |
|---|---|---|
| | ( ) - | ☐ AM ☐ PM |

### ★ IDENTIFICATION ★

HOW: ☐ Offender Records   ☐ Fingerprints

☒ Viewed at Hospital/Scene   ☐ Other

Verification Made By: _____   Relationship to Decedent: _____

### ★ DOCUMENTATION ★

☒ Order for Autopsy        ☒ Clinic Notes (last 72 hrs)

☒ ER Report (if available)  ☒ Copy of Travel Card

REPORT DISTRIBUTION: (Include Complete Documentation)
(1) Case File        (2) J.P.        (3) To Accompany Body

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Plaintiffs' MSJ Appx. 5462                    OIG - James 53

**Anderson County**



JAMES E. TODD
Justice of the Peace
Anderson County Courthouse

PALESTINE, TEXAS 75801

Precinct No. 3
Telephone (903) 723-7418

AUG 1 3 2011

### INQUEST TRANSPORT ORDER

THE STATE OF TEXAS
COUNTY OF ANDERSON
JUSTICE COURT, PRECINCT THREE

ORDER FOR TRANSFER OF DEAD BODY
FROM ANDERSON COUNTY TO ANOTHER
COUNTY FOR AUTOPSY

     On this day, came on to be heard, evidence in an Inquest Investigation Hearing in regard to the death of ___Kenneth Wayne James  Inmate#1726849___ ,a ___Black___ (fe)male, age ___52___, date of birth ▌▌▌▌▌▌▌▌ and said cause of death being either violent, unnatural or unknown.

     After considering evidence presented and upon investigation in regard to this death, it is the opinion at this time that an autopsy should be had.

     BE IT THEREFORE ORDERED AND DECREED, that ___Carnes___ Funeral Home, ___Palestine___, Texas, who has the remains of the deceased, Transport said deceased to ___Texas City___ Funeral Home (or ___UTMB___ ) ___Galveston___ , Texas as prescribed by law and to return said body upon completion of autopsy which is to be performed by Doctor _____ ___UTMB Galveston___ or any other pathologist duly licensed to practice pathology in The State of Texas.

     ISSUED UNDER MY OFFICIAL SIGNATURE of office in Anderson, County, Texas on this the ___13th___ day of ___August___ , ___2011___ .

Judge James E. Todd
Justice of the Peace-Coroner, Precinct Three
Anderson County, Texas

(SEAL)

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

4.0

COPY

**Anderson County**

JAMES E. TODD
Justice of the Peace
Anderson County Courthouse

PALESTINE, TEXAS 75801

Time of Death: 4:16 am

Date of Death: 8/13/11

Remarks: Brought into E.R.
unresponsive from the Gurney Unit

TDCJ:

Precinct No. 3
Telephone (903) 723-7418

THE STATE OF TEXAS

COUNTY OF ANDERSON

AUG 13 2011

ORDER FOR AUTOPSY

Inmate#1726849
Kenneth Wayne James
Deceased

B/M
Race/Sex & Date of Birth

On this day, came to be heard, the INQUEST HEARING INVESTIGATION in regard
to the death of Kenneth Wayne James #1726849 , a Black/Male , Age 52
and the cause of death is violent, unnatural, or unknown.

After hearing testimony and evidence in regard to the death of the deceased
it is determined by the aftersigning Justice of the Peace (Coroner) that an
autopsy on the body of said deceased is necessary so that the cause of death
maybe accertained and for other necessary reasons.

BE IT THEREFORE CONSIDERED, ORDERED AND DECREED, that an autopsy be had on
the body of the deceased. There being no Health Officer in and for Anderson
County, it is hereby Ordered that Doctor: UTMB Galvestion
or any physician, duly licensed in Texas and trained in pathology, shall
forthwith perform said autopsy on the body of the deceased which is located
at Carnes Funeral Home, in Texas City ,
Texas. To be Transported to UTMB Galvestion for Autopsy by Carnes Funeral Home.

ISSUED UNDER MY OFFICIAL SEAL AND SIGNATURE OF OFFICE in Anderson County,
Texas, this 13th day of August A.D., 2011 .

James E. Todd, Justice of the Peace
Precinct Three, Place One
Anderson County, Texas

(SEAL)

Copy of OIG case to Litigation Support 08/31/2016
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

# INQUEST INFORMATION

COPY                    AUG 1 3 2011

Inquest # _____8_____

Justice of the Peace  Judge James E. Todd, Pct.#3  County of  Anderson

Location of death:  Palestine Regional Medical Center E.R.  Palestine, Texas  Loop 256
Date and time of death:  8/13/11   4:16 am

Decedent's name:  Kenneth Wayne James
Address:  Gurney Unit  TDCJ  Tennessee Colony, Tex.

DOB: ██████████  Age: 52   Sex: ☒M  ☐F      Race: ☐W  ☒B  ☐H  ☐O

Next of kin:  Unk at this time
Address and phone:  Unk

Clothing: _____
Personal property: _____
Primary officer on scene: _____

Brief account of circumstances of death:  Found on Gurney Unit at Appx. 3:00 am unresponsive.
transported to the Palestine Regional Medical Center Hospital E.R., arrived 3:52 am called
by Dr. Heidi C. Knowles. Had gone into cardiac arrest.

Impression as to cause of death:  Unknown
Impression as to manner of death:  ☐ Accident   ☐ Suicide   ☐ Homicide   ☐ Natural   ☒ Unknown

Brief medical history and medications:  Unk at this time

Motor vehicle accident:  ☐ Driver   ☐ Passenger   ☐ Pedestrian
Seat Belt:  ☐ Yes   ☐ No

Funeral Home of choice:  Carnes Funeral Home  Texas City, Texas

Does family consent to tissue donation? or organs?

Case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED



**Texas Department of Criminal Justice**
OFFICE OF THE INSPECTOR GENERAL

## VOLUNTARY STATEMENT

STATEMENT OF _R. Burt COV_

GIVEN THIS DATE: _8-13-2011_ AT _0510_ O'CLOCK ☒ AM ☐ PM

My name is: _Ronald Burt_

Date of birth: ▮▮▮▮▮▮▮  I can be contacted at telephone number: ▮▮▮▮▮▮▮

and at address: ▮▮▮▮▮▮▮

*I am not under arrest, nor am I being detained by any law enforcement agency. I understand that I am free to leave at any time I choose. I have not been promised anything, nor have I been forced or coerced in any way to give this statement, which is true and correct and voluntarily given.*

At approximately 0300 on 8-13-2011 I responded ~~was called~~ to B-1 building where offender James, Kenneth #1726849 was delirious & non responsive. We wheel-chaired him to the infirmary where Beto medical was called and then 911 was called. Ambulance arrived approximately 20 minutes later and transported him to PRMC Palestine. CPR was administered in the ambulance, I arrived at PRMC - where doctor and nurses administered CPR per ACLS protocol. Death was pronounced at 0416 by Dr. Heid, Knowles

Subscribed And Sworn To Before Me By:

_Ronld Burt_
Signature

_Ronald Burt_
Printed Name

On this the _13_ day of _Aug. 2011_

_____
Notary Public In and For The State of Texas

OR

Witness: _____

_Mark Owens_
Police Officer's Signature

_____
Printed Name

_Mark Owens #155_
Printed Name, Rank, and ID Number

Page ___/___ of ___/___

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

CC-0355 (07/2005)

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

# Inter-Office Communications

| To | Lieutenant Toby Whitfield | Date | August 13, 2011 |
|---|---|---|---|
| From | Ronald Burt COV | Subject | Offender James, Kenneth #1726849 |

At approximately 0240 hours on August 13, 2011 I, Officer Ronald Burt COV responded to a radio call from Lieutenant Toby Whitfield for assistance on B1-building. When I arrived at the building, I observed Offender James, Kenneth 1726849 in the B3-dormitory dayroom. He was standing up in the dayroom. I stepped outside of the dorm to wait for Officer Torrance Stephens COV to respond with a wheelchair. When I returned to the dormitory, Offender James was on his knees holding onto a bench. When I entered he appeared to be delirious and incoherent. Officer Stephens and myself assisted the offender into the wheelchair. He was then escorted to the unit infirmary.

At this time the Beto Unit Medical Department was notified by Sergeant Tully Flowers and Registered Nurse McKnight instructed Sergeant Flowers to transport the offender to the Beto unit. She then instructed him to check his vitals. Lt. Whitfield was notified of the offender's vitals while we were preparing him for transport. While preparing him for transport, the offender leaned over and became unresponsive. His vitals were as follows: Blood Pressure - 89/57 and Temperature 108 degrees. At that time Lieutenant Toby Whitfield was notified of the situation and had central control call 911.

Approximately twenty-five minutes later the ambulance from Palestine Regional Medical Center (PRMC) arrived and paramedics proceeded to administer aid to said offender. I was informed that an air-ambulance was enroute and was instructed to get in the state van to go to the hospital. The Tennessee Colony Volunteer Fire Department arrived and began setting up a perimeter for landing the air ambulance. The ambulance exited the back gate and with the offender, paramedics and Officer Vincent McKnight COV. Lt. Whitfield informed me that the air-ambulance was cancelled and I needed to follow the ambulance with Sgt. Matthew Seda. The offender was then transported to PRMC and Sgt. Seda and myself followed in the unit van. We arrived at approximately 0400 hours at PRMC. The offender was placed in exam room #1. I observed the medical staff of P.R.M.C performing life saving measures on the offender. Heidi Knowles (Medical Doctor) pronounced offender James deceased at 0416 hours. Myself, Sgt. Seda and Officer McKnight then waited with the body.

The Office of Inspector General, Mr. Mark Owens and Judge Todd arrived at approximately 0510 hours and began filling out documentation on the offender.

I was relieved of duty at approximately 0530 hours and returned to the Unit.

Ronald Burt, COV
Joe F. Gurney Transfer Facility

SO-4

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

# Inter-Office Communications

| | | | |
|---|---|---|---|
| **To** | Lieutenant Toby Whitfield | **Date** | August 13, 2011 |
| **From** | D. Schulle CO IV | **Subject** | As Stated |

On August 13, 2011 at approximately 0300 hours, Lieutenant Toby Whitfield ordered me via handheld radio to get some line paper and meet him in the unit infirmary. Upon my arrival in the unit infirmary I was instructed to take notes creating a timeline of the medical transport for Offender James, Kenneth Wayne 1726849, I was told to make sure that if I could not see the offender that I needed to ask what was happening so that I could accurately keep notes so that when transcribing them later that I would be able to write out in detail what had transpired. Lieutenant Whitfield then handed me the rough start to the timeline that he had started stating that because the offenders' health was dropping quickly by the looks of things that he was going to be needed. I made the entry about Sergeant M. Seda notifying Warden Dennis Miller of the events that were taking place as of current and that he would be notified of any changes. I notated all the events that took place prior to the ambulance's arrival up until the ambulance's departure from the unit; to include when the ambulance enter the highway gate and then the back gate, when the EMT personnel began asking Lieutenant Whitfield what the vitals were when the offender was first brought into the infirmary, when the EMT personnel attached the AED shock pads to the offender in case it was needed in order to get a heart beat, but never administered an electric shock while inside the unit infirmary. I wrote down that the 911 operator called back to notify Lieutenant Whitfield that an Air Ambulance would be en route, to which Lieutenant Whitfield called and notified the central control officer to activate Life Flight procedures and to begin notifying to appropriate people at approximately 03:23. I wrote down when the EMT personnel ask for assistance in lifting the offender and then placing him on their gurney so as to transport him to Palestine Regional Medical Center. When the EMT personnel got the offender loaded into the back of the ambulance and requested additional help Officer V. McKnight got into the ambulance and was told to take the air bag and administer breaths for the offender which was at approximately 03:30. The EMT personnel started an IV at 03:31. At 03:32 Tennessee Colony Volunteer Fire Department and Beto are notified that there will be an air ambulance en route. EMT personnel attempt at approximately 03:32 to use an intubation tube to be better able to administer CPR and aid the offender in breathing. At 03:33 Tennessee Colony Volunteer Fire Department arrives at the back gate in order to set up a safe perimeter for the Air Ambulance to land safely. Lieutenant Whitfield is notified via the central control officer that the ETA for the Air Ambulance is five minutes out from the unit at 03:36. EMT personnel and Officer McKnight head out the back gate in order to be ready for when the Life Flight helicopter arrived at 03:38. At 03:41 EMT personnel notified that the offender has Coded Blue and they need to be en route to the hospital immediately. A Tennessee Colony Volunteer Fire Department tells Sgt. Flowers that the air ambulance has been cancelled and Sgt. Flowers notifies Lt. Whitfield at 03:42. At 03:45 Sgt. Seda and Officer Burt are en route behind the ambulance in the chase vehicle to Palestine Regional Medical Center. Lt. Whitfield tells me that even though the offender has let the unit that if any calls come in from Sgt. Seda that I am to make sure to document with time and in detail. Sgt. Seda calls Lt. Whitfield at 04:10 and notifies that the medical personnel at the hospital are still attempting to give life saving measures. At 04:16 Sgt. Seda calls Lt. Whitfield and notifies that Dr. Heidi Knowles has given the official notice of death for Offender James, Kenneth Wayne 1726849. This is the last entry that I made.

*Deborah Schulle* COIV

SO-4

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

## Inter-Office Communications

To      Lieutenant Toby Whitfield          Date      August 13, 2011

From    Brenda Renner COIV                Subject   As Stated


On August 12, 2011 I (Officer Renner) was assigned to work on B1-building, at no time did I observed any unusual activity.  Furthermore, at no time did I observed nor did any offenders report to me that they were sick.

*Brenda Renner*

SO-4

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Plaintiffs' MSJ Appx. 5469                    OIG - James 60

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

# Inter-Office Communications

| To | Lieutenant Toby Whitfield | Date | August 13, 2011 |
|----|---------------------------|------|------------------|
| From | Debra Gilmore | Subject | As Stated |

On August 12, 2011, I (Officer Gilmore) was assigned as the first rover on B1-building, at approximately 1645 hours; I was getting the water coolers out of the dorm so they could be refilled with ice jugs and water during the count.  As I was getting coolers out I went through B3 dorm, no offenders reported being sick or dizzy.  At approximately 1715 hours, Officer Brandon Matthews started counting, Officer Robert Leonard arrived on the building and relieved me so that I could go and help with the count. Once we had finished counting Officer Leonard was relieved by Officer Brandon, he exited the picket and informed me that several offenders had some offenders had came to the speaker in B3 dorm and stated that B3-23 bunk was sick. At this time second shift officers began to arrive on the building. Officer Leonard and I entered B3 dorm together, went to B3-23 bunk, Officer Leonard asked the offender if he could sit up and talk. The offender sat up, Officer Leonard asked the offender for his identification card.  The offender got his shirt and gave his identification card to Officer Leonard. Officer Leonard asked the offender if he knew his name/TDCJ number, he said his name was Kenneth James and that his TDCJ number was 1726849. Officer Leonard asked Offender James a few more questions and he gave the answers to the questions. At this time I asked Offender James if he was in pain or feeling nauseated, he stated that just felt dizzy.  At this time both Officer Leonard and myself began to walk out of the dorm, on our way out of the dorm Officer Leonard handed me Offender James' identification so that I could call the unit infirmary. After exiting the dorm I went to the picket pass through drawer and asked Officer Matthews to call the unit infirmary. Officer Matthews called the unit infirmary and spoke briefly on the phone then he put the phone in the pass through drawer for me to talk on the phone.  I grabbed the phone and identified the person on the phone as Licensed Vocational Nurse Danny Washington. I Nurse Washington informed that Offender James, Kenneth 1726849 in B3-23 was complaining of being dizzy. Upon notifying Nurse Washington of Offender James' condition he instructed me to inform the offender that he needed to drink more fluids.  As per his instructions I entered B3 dorm and went to 23 bunk to inform Offender James to drink more fluids.  After exiting B3 dorm I was relieved from duty by the second shift Officer Sarah Raines, prior to leaving I informed her that Offender James was complaining saying he felt dizzy, I had already called the unit infirmary, spoke with Nurse Washington and I relayed his instructions to her.  After being properly relieved by Officer Raines I left B1-building and the unit as my shift was concluded.  I have no further knowledge of this incident.

*Debra Gilmore C.O. 15-4*

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

## Inter-Office Communications

To      Lieutenant Toby Whitfield          Date     August 13, 2011

From    Brandon Matthews                   Subject  As Stated

On August 12, 2011 at approximately 1740 hours, Officer Debra Gilmore COV exited B3 dorm and requested that I call the unit infirmary for her. Officer Gilmore stated that there was an offender in B3 dorm that wasn't feeling well. At this time I called the unit infirmary and notified Licensed Vocational Nurse Danny Washington that there was an offender in B3 dorm that wasn't feeling well. Nurse Washington needed more information about the offender so I passed the phone through the picket pass through drawer to Officer Gilmore so that she could speak with Nurse Washington. After Officer Gilmore finished talking with Nurse Washington she put the receiver back in the pass through drawer and went to B3 dorm and spoke with the offender assigned to B3-23. At no time did any offenders report to me that any offender was ill nor did I observe any offenders that looked like they were in any kind of distress or ill.

SO-4

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

# Inter-Office Communications

| To | Lieutenant Toby Whitfield | Date | August 13, 2011 |
|---|---|---|---|
| From | Robert Leonard COV | Subject | As Stated |

I (Officer Leonard) was assigned to R-picket on the morning of August 12, 2011, when I rotated into my building (B1), I was a second rover, and was sent to feed third chow. At approximately 1715 hours, I returned to B1-building to help count the building. The dorm officers Officer Brandon Matthews and Officer Debra Gilmore sent me to the control picket while they counted the building. As they were counting, the ice crew was replenishing the water coolers. During the count, as the officers were counting in B4 dorm, that's when several offenders approached the intercom in B3 dorm and stated that there was an offender in B3-23 that was not feeling well. I asked why they didn't stop somebody when they walked by mere minutes before. Said offender stated that he didn't know. Once the officers finished counting in B4 dorm, second shift arrived on the building. Officer Matthews and the one of the second shift officers relieved me from the picket. At this time, the second shift officer let Officer Gilmore and me into B3 dorm while Officer Matthews compared the count sheets. As Officer Gilmore and I approached B3-23, I asked if he could sit up and talk to me. He sat up, and then I asked for his identification card. Said offender picked up his shirt (he was not wearing a shirt) and gave me his identification card. At this time I asked the offender for his name/TDCJ number and compared his responses to his identification card, he responded with the correct answers. After properly identifying Offender James, Kenneth Wayne 1726849, I asked him how old he was and what was day was it? Offender James answered both questions correctly. At this time I informed Offender James that we would call medical. As Officer Gilmore and I walked out of the dorm, I handed Offender James' identification card to her; she proceeded to call the medical department, while I was leaving the building with the count sheets.

*Robert Leonard*

OI-10    IA  9-14-2011

SO-4

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

# Inter-Office Communications

| To | Lieutenant Toby Whitfield | Date | August 13, 2011 |
|---|---|---|---|
| From | S. Raines | Subject | As Stated |

On August 12, 2011, at approximately 1800 hours I (Officer Raines) was assigned to B1-building to relieve first shift.  When I arrived at the building, I relieved the dorm rover, Officer Debra Gilmore COV, who informed me that the offender assigned to B3-23 bunk James, Kenneth #1726849 was not feeling well.  She then stated that Officer Brandon Matthews (who was in B1-control picket) had already called the infirmary and both of them spoke with Licensed Vocational Nurse Danny Washington, who instructed them to have the offender drink plenty of water.

At approximately 1845 hours, I went into B3 dorm and noticed an offender sitting in the dayroom without a shirt on. I asked the offender for his identification card and ordered him to put a shirt on; he stated that he was really hot. Offender was identified as James, Kenneth 1726849. I asked him if he lived in B3-23 bunk and he said "yes".

At this time I asked the offender if he had been drinking any water, he stated that he had not been drinking any water.  I then asked him if he had a water bottle or cup, he stated "yes".  At this time I instructed Offender James to drink two (2) or three (3) containers of cold water from the water cooler.  Offender James shook his head up and down in a yes response.  He then slowly walked toward his bunk as if to comply with my instructions.

I completed a channel check and then exited the dorm.  At approximately 2015 hours, as I was sending the offenders from B3 dorm to necessities I returned Offender James' identification card to him as he exited the dorm. Offender James went to exchange his necessities and returned to B3 dorm.

While conducting my assigned duties (passing out mail/lay-ins) I observed Offender James walking around in the dorm, he showed no signs of distress.  At no time did Offender James report to me that he was not feeling ill nor did he make any requests to go to medical.

At approximately 2230 hours I was relieved from the building for break and then assist others for breaks.  I then report to my secondary position on R-picket.


Sarah Raines, COIII
Joe F. Gurney Transfer Facility

*Sarah Raines COIII*


SO-4

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

# Inter-Office Communications

| To | Lieutenant Toby Whitfield | Date | August 13, 2011 |
|---|---|---|---|
| From | Doris Edwards, COV | Subject | Offender James, Kenneth #1726849 |

At approximately 1800 hours I, Officer Doris Edwards COV was assigned to the control picket of B1-building. When I arrived on the Officer Brandon Matthews was in the control picket. I began to inventory the equipment on the building. At no time while first shift officers were on the building was I notified of any offenders being ill.

Until the special bed book count, at no time did I observe offender James, Kenneth #1726849 in any kind of distress.

At approximately 0005 hours, I conducted the count on B1-building. When I entered B3-dormitory, the offenders in the dorm told me that offender James was in his bed and urinated on himself. When I went over to his bunk the offender didn't say anything about urinating on himself. When I looked at him, he looked back at me. He did not look to be in distress at this time.

While Officer Revoyda Dodd COIV was conducting the bed book count, I observed the offender go to the restroom area and back to his bunk area. He appeared to be dizzy while he was walking, he was wobbling back and forth as he was walking. Offenders in the housing area came up to the intercom and told me that offender James was sick.

While I was calling in the count, I notified Sergeant Matthew Seda and he informed me to keep an eye on the offender.

After Sergeant Seda told me to watch the offender, I did not notice any more abnormal behavior from the offender.

Shortly afterwards, Officer Glorie Harris COIV entered the building after coming in from the outside perimeter picket. I notified her that other offenders in the dorm stated that offender James had urinated by his bunk and was not urinating in the urinal.

At approximately 0200 hours, I exited the building to assist with other activities that were taking place on the unit.

At approximately 0240 hours, I was on the main hallway when Officer Torrance Stephens COV was pushing offender James in a wheelchair toward the unit infirmary. The offender was sitting up.

I remained on the main hallway.

*Doris Edwards COV*
Doris Edwards, COV
Joe F. Gurney Transfer Facility

SO-4

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

# Inter-Office Communications

| **To** | Lieutenant Toby Whitfield | **Date** | August 13, 2011 |
| **From** | Revoyda Dodd, COIV | **Subject** | Offender James, Kenneth #1726849 |

At approximately 2200 hours I, Revoyda Dodd COIV reported to my assigned duty post on B1-building as the control picket officer. At approximately 0015 hours I was conducting a bed book count in B3-dormitory. When arrived around B323 bunk, the offenders around 23-bunk, informed me that offender James, Kenneth #1726849 had urinated on himself. I approached B3-23 bunk and identified him by his TDCJ-ID card for the purpose of the bed book count.

The offender was lying in his assigned bunk. The offender was restless and was moving around in his bunk. did not notice any urine on the offender at this time. I completed my bed book count for the rest of the building and before returned to the control picket I went back into B3-dormitory due to several offenders not being properly dressed in the dayroom. Shortly afterwards, I was in the control picket and noticed offender James sitting on the toilet in the restroom area. I then observed the offender leaving the restroom area. While he was walking, he bumped into the wall of the restroom, urinal and began to stumble. The offender made it back to his living area and fell into his bunk. I asked Officer Doris Edwards if she seen what the offender did. I notified Sergeant Matthaw Seda that the offender appeared to be drunk or on some kind of medication.

I went on with my normal duties in the control picket and continued to monitor offender activity in the dorm.

When Officer Glorie Harris came into the building, she noticed the offender in the dayroom and called Lieutenant Toby Whitfield on the radio. The offender was standing in the dayroom and would not respond to her questions. Shortly afterwards, Sergeant Tully Flowers, Sergeant Seda, Officers Ronald Burt COV, Kenneth Mangan COIV and Torrance Stephens COV arrived on the building with a wheelchair. The offender was placed in the wheelchair and transported out of the building.

I then returned to my normal duties.

*Revoyda Dodd CO4*
Revoyda Dodd, COIV
Joe F. Gurney Transfer Facility

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

## Inter-Office Communications

To ___Lieutenant Toby Whitfield___       Date ___August 13, 2011___

From ___Glorie Harris COIV   G.H. 6ΙΙ___   Subject ___Offender James, Kenneth #1726849___

At approximately 0150 hours I, Officer Glorie Harris COIV arrived on B1-building to assume the position of control picket officer. Officer Doris Edwards COV informed me that Offender James, Kenneth #1726849 had been urinating on the floor by the bunk and restroom area but not in the urinal. At approximately 0200 hours, I assisted with the 0200hour count of the offenders on B1-building. When I was in B3-dorm counting, offender James was in his assigned bunk (B3-23). At approximately 0235, I noticed offender James standing in the dayroom, holding on to the bench. I entered B3-dormitory and attempted to ask the offender why he was in the dayroom and not in his bunk. He did not respond to the question. He just stood there with his head down and was swaying back and forth.

At approximately 0240 hours, I notified Lieutenant Toby Whitfield, via handheld radio that there was something wrong with the offender in B3-23 bunk. Sergeant Matthew Seda and Sergeant Tully Flowers responded to the call and came to the dorm. Sergeant Flowers called via hand held radio for a wheelchair. While waiting for the wheel chair to arrive, Offender James kneeled down on his knees and maintained a tight grasp to the bench. Officers' Ronald Burt COV, Kenneth Mangan COIV and Torrance Stephens COV arrived on the dorm with a wheelchair. Officers Stephens and Burt assisted the offender into the wheelchair as Officer Mangan held the wheel chair steady. Offender James was then escorted out of the dorm and then out of the building. I then resumed my normal duties.

Glorie Harris, COIV
Joe F. Gurney Transfer Facility

*Glorie Harris COIV*

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Plaintiffs' MSJ Appx. 5476                    OIG - James 67

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

# Inter-Office Communications

**To**   Lieutenant Toby Whitfield        **Date**   August 13, 2011

**From**   Joshua Milton, COIII        **Subject**   Offender James, Kenneth #1726849

On August 13, 2011 at approximately 0245 hours, I was informed by Lieutenant Toby Whitfield to assume the position at the back gate because of a medical transport to the Beto Unit. When I got to the back gate, Officer Kenneth Mangan COIV was on the outside of the perimeter in a state van. While letting him into the back gate Lieutenant Whitfield came over the radio and requested central control to call 911 for an ambulance. Officer Mangan backed the van out of the sallyport and secured it on the outside of the perimeter.

At approximately 0320 hours, the ambulance entered the back gate and proceeded to the back door of the medical department. A short while later, I was informed that an air ambulance was enroute. Tennessee Colony Volunteer Fire Department arrived and set up a perimeter for landing the air ambulance.

At approximately 0340 hours, the ambulance exits the back gate and turns right and leaves the facility. Sergeant Matthew Seda and Officer Ronald Burt COV exit the back gate and get in the state van and follow the ambulance The Volunteer Fire Department then leaves the unit.

I secure the back gate and return inside of the unit.

Joshua Milton, COIII
Joe F. Gurney Transfer Facility

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

SO-4

Plaintiffs' MSJ Appx. 5477        OIG - James 68

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

# Inter-Office Communications

| To | Lieutenant Toby Whitfield | Date | August 13, 2011 |
|---|---|---|---|
| From | John Crawford COV | Subject | As Stated |

On August 13, 2011 at 0700 hours, I arrived at Palestine Regional Medical Center to relieve Sergeant Matthew Seda and hold security over the body of Offender James, Kenneth Wayne 1726849.  At 1005 hours, Mr. Dickie Syers from Carnes Funeral Home arrived, took possession of Offender James' body.  At this time I called the Off-Site Medical Transport Command Center via state cell phone and informed them that Offender James' body was being transported by Mr. Dickie Syers, who was an employee with Carnes Funeral Home.  Then, I returned to the unit and resumed my normal duties.

SO-4

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION
## Inter-Office Communications

| To | Lieutenant Toby Whitfield | Date | August 13, 2011 |
|---|---|---|---|
| From | Tully Flowers, Sergeant | Subject | Offender James, Kenneth #1726849 |

On August 13, 2011 at approximately 0240 hours I, Sergeant Tully Flowers was assisting Sergeant Matthew Seda with an investigation of a physical altercation on A1-building. The participant in the physical altercation was identified and I was leaving A1-building when Lieutenant Toby Whitfield requested a wheelchair be taken to B1-building due to an ill offender.

Sergeant Matthew Seda and myself arrived on B1-building few minutes later, offender James was in the dayroom of B3-dormitory standing next to the benches. We entered the dormitory and Sergeant Seda attempted to talk to the offender but the offender just looked at him. The offender then kneeled down on his knees and was holding onto the bench with one hand. The offender seemed to be disorientated. Officer Ronald Burt COV, Officer Torrance Stephens COV and Officer Kenneth Mangan COIV entered the building with a wheelchair a few minutes later. Officers Burt and Stephens assisted the offender into the wheelchair as Officer Mangan held it steady.

Officer Stephens then transported the offender in the wheelchair to the unit medical department as I followed. Once in the medical department I contacted the Beto unit and talked with Registered Nurse McKnight, which instructed me to get the offenders temperature and blood pressure and then transport the offender to the Beto unit. Officer Burt took the offender's blood pressure, which it was 89/57 and his temp 108. While the offender was being prepared for transport, he bent over in the wheelchair and became unresponsive. Sergeant Seda notified Lt. Whitfield at which time he notified central control to call 911 and request emergency service. Lt. Whitfield then entered the medical department and instructed Sergeant Seda to place the offender on the gurney in the emergency room. Officer Stephens move to offender into the emergency room. Sergeant Seda, Lt. Whitfield and Officer Vincent McKnight COV moved the offender from the wheelchair to the gurney.

While the offender was on the gurney, the offender appeared to be having difficulty breathing and looked disorientated. Lt. Whitfield checked the offender's wrist and stated that he could feel a pulse.

At approximately 0315, I went to the back gate to prepare for the arrival of the ambulance and assist Officer Joshua Milton COIII with expediting it into the facility. At 0319 hours, the ambulance arrives at the back gate and enters the facility. A few minutes later, Lt. Whitfield advises central control that an air-ambulance is enroute and to notify local fire department.

A several minutes later, Tennessee Colony Fire Department arrives at the backside of the unit and prepares for the air-ambulances arrival.

At 0338 hours, the ambulance enters the back gate and departs the unit. A member of the volunteer fire department informs me that the offender coded and was being transported to Palestine Regional Medical Center.

Sergeant Seda exited the back gate and got into the van with Officer Burt and followed the ambulance off the unit.

I then returned to the lieutenant's office where I was informed shortly afterwards that offender James had passed away.

At 0645 hours, I notified Anderson County Sheriff's Department that offender James body was at PRMC. At 0655 I notified the Off-Site Medical Transport command center of the deceased offender.

Tully Flowers, Sergeant
Joe F. Gurney Transfer Facility

SO-4

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED



Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

## Inter-Office Communications

| To | Toby Whitfield, Lieutenant | Date | August 17, 2011 |
|---|---|---|---|
| | Joe F. Gurney Transfer Facility | | |
| From | Tully Flowers, Sergeant | Subject | I-11520-08-11 |
| | Joe F. Gurney Transfer Facility | | |

On August 13, 2011, during my response to the medical emergency of offender James, Kennet[h] #1726849 I was asked by LVN Linda McKnight to get the vitals for the offender. In an effort to aid he[r] as she attempted to assess offender James' condition, I instructed Officer Ronald Burt, CO V to obtai[n] those vitals and reported them to her.

At the time that this occurred, my only intent was to aid medical staff. It has been explained to me that [I] am not nor was any of my staff trained on taking vitals or operating the equipment in the medica[l] department. This will not occur again.


Tully Flowers, Sergeant

*Tully Flowers*

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Plaintiffs' MSJ Appx. 5480                    OIG - James 71

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION
**Inter-Office Communications**

| To | Warden Dennis Miller | Date | August 13, 2011 |
|---|---|---|---|
| From | Toby Whitfield, Lieutenant | Subject | Offender James, Kenneth #1726849 |

On August 13, 2011 at approximately 0240 hours I, Lieutenant Toby Whitfield was in the lieutenant's office when received a call from Officer Glorie Harris COIV. She informed me that offender James, Kenneth #1726849 was in B3-dormitory that was in the dayroom urinating on himself and couldn't stand up. Via handheld radio, I requested a wheelchair to be taken to B3-dormitory.

Sergeant Tully Flowers and Sergeant Matthew Seda informed me via radio that they were responding to the dorm. At 0248 hours, Sergeant Seda informed me that Registered Nurse McKnight at the Beto Unit wanted the offender be transported to the Beto Unit for evaluation. He also informed me that offender James blood pressure was 89/57 and his temperature was 108. At this time I informed him that I was calling for an ambulance. Via radio, I notified central control to call 911 and request emergency services. I then proceeded to the unit medical department.

When I arrived at the medical department, offender James was leaned over in the wheelchair. I informed Sergeant Seda to move the offender into the emergency room. Officer Torrance Stephens COV wheeled the offender into the emergency room. Sergeant Seda and Officer Vincent McKnight COV assisted me moving the offender from the wheelchair to the gurney.

We placed the offender on his side on the gurney. I could tell that the offender was having difficulty with breathing and was disorientated. I checked the offender's wrist for a pulse and felt one.

I notified Officer Joshua Milton COIII to respond to the back gate to expedite the ambulance that was enroute. At 0319 hours, the ambulance entered the compound and pulled up to the back door of the medical department. When the paramedics entered the back door, I briefed them on the situation. The paramedics entered the emergency room and begin getting the offender's vital signs.

At 0323 hours, 911- operator Sarah Wardell called and informed me that an air-ambulance would enroute to the Gurney Unit. I then notified Warden Miller. I then notified central control via radio to notify the local Volunteer Fire Department of the air-ambulance that was enroute. I also notified the Beto Unit.

I returned to the emergency room and one of the paramedics asked if he could get some assistance moving the offender over to their gurney. I stepped to the head end of the gurney and assisted them moving the offender to their gurney.

At 0328 hours, the offender was moved from the emergency room to the ambulance at the back door of the medical department. One of the paramedics asked for an officer to assist them. I instructed Officer McKnight to get into the ambulance and assist. Officer McKnight was instructed by one of the paramedics to use the bag to pump air into the offender's lungs. Officer McKnight began utilizing the bag. Several times the paramedic stopped him and attempted to place a tube down the offender's throat.

At 0336 hours I was notified that the air-ambulance was five minutes out. At 0338 hours, one of the paramedics exited the back of the ambulance and stated that they had to leave now due to the offender coding. The ambulance, with Officer McKnight in the back pulled through the back gate and departed the unit.

I informed Sergeant Seda and Officer Burt to follow the ambulance to Palestine Regional Medical Center. Sergeant Seda and Officer Burt got into the van that was at the back gate and followed behind the ambulance.

SO-4

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Sergeant Flowers, who was at the back gate, spoke with one of the volunteer fireman who advised him that the air-ambulance was cancelled due to the offender code bluing, he then advised me what he was informed of.

I then called Warden Miller and advised him that the air-ambulance had been cancelled due to the offender coding.

At 0410 hours, Sergeant Seda call updated me on the offender condition.

At 0417 hours, Sergeant Seda called and reported that at 0416 hours, Heidi Knowles M.D. pronounced offender James deceased. I immediately notified Warden Dennis Miller of the offender's death and passed along all the information that I had obtained at that time.

At 0435 hours, I notified Mark Owens of the Office of Inspector General.

At 0440 hours, Captain Michael Lumpkins was notified
At 0505 hours, I notified Jacob Little at the Carnes Funeral Home was notified of the deceased.

At 0530 hours, I notified Chaplain Thomas Taylor of the offender's death.

At 0630 hours, I assist Chaplain Taylor locate the next-of-kin, his mother Mary James.

At 0700 hours, Sergeant Seda notifies me that Officer John Crawford COV has arrived at PRMC to relieve him. instructed him to notify the Off-Site Medical Transport command center of the change.

At 1005 hours, Officer Crawford advised me that Mr. Dickie Syers of Carnes funeral home was at the hospital and was taking possession of offender James body.

Toby Whitfield, Lieutenant
Joe F. Gurney Transfer Facility

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED



Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

# Inter-Office Communications

| To | Toby Whitfield, Lieutenant | Date | August 13, 2011 |
|---|---|---|---|
| | Joe F. Gurney Transfer Facility | | |
| From | Matthew Seda, Sergeant  *MS* | Subject | I-11520-08-11 |
| | Joe F. Gurney Transfer Facility | | |

On August 13, 2011 at approximately 0020hours, I, Sergeant Matthew Seda, was in the Building Lieutenant's Office assisting with the unit count.   This was a bed book count which required that I assist by verifying the first count sheets that are turned in and then conducting a thorough check of the bed book rosters to ensure that all offenders were accurately accounted for in my area of assignment, the West End of the facility.

During this count, Officer Doris Edwards, CO V called and notified me that an offender on B1-Building, later identified as offender James, Kenneth #1726849, appeared dizzy and may have urinated on himself. After verifying that the offender was in a secured area, I instructed Officer Edwards to maintain a visual on the offender and that I would respond when able.  If the situation warranted a more immediate response that she was to let me know.

After talking to her, Officer Robert Tatum, CO IV entered the Building Lieutenant's Office, accompanied by an offender who works for him in the Food Service Department, and reported that he had injuries consistent with having been involved in a recent physical altercation.

Immediately after the report by Officer Tatum, Officer Revoyda Dodd, CO IV, while calling in her count, notified me of similar behavior of offender James and was provided the same instructions.

Officer Edwards and Officer Dodd were instructed to notify me if the situation required an immediate response.

During this time, Sergeant Tully Flowers was also assisting with the unit count, conducting the same verifications of count sheets for the East End of the facility.

At 0035 hours, the unit count cleared.  Upon exiting the Building Lieutenant's Office, I encountered the offender that was involved in the physical altercation on A1-Building and began questioning him regarding the circumstances and identity of the other assailant involved in the physical altercation.  I then proceeded to A1-Building to investigate further and identify the other involved offender.  In doing so, I forgot about the previous report involving offender James on B1-Building.

At approximately 0235 hours, the other participant in the physical altercation was identified and was being escorted from the building when Lieutenant Toby Whitfield, via radio, alerted staff that a wheelchair was needed on B1-Building.  Along with Sgt. Flowers, I proceeded to B1-Building where,

Copy of OIG Case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

August 13, 2011
Lt. Toby Whitfield
I-11520-08-11

Page 2 of 3

upon arrival, I found offender James in the dayroom area of B3-Dorm standing next to the benches. Upon entering B3-Dorm and making contact with offender James, he kneeled to his knees. Officer Ronald Burt, CO V entered the building followed shortly afterwards by Officer Torrance Stephens, CO V and Officer Kenneth Mangan, CO IV with a wheelchair. Officer Burt and Officer Stephens assisted offender James into the wheelchair and he was moved to the Gurney Unit Medical Department.

Once in the medical department, Sgt. Flowers contacted on-call medical staff at the Beto Unit, due to no on-site medical. Sgt. Flowers stated that he was instructed by Licensed Vocational Nurse Linda McKnight to obtain the offenders vitals. Officer Burt, on Sgt. Flower's instructions, obtained the vitals and reported a temperature of 108 and blood pressure of 89/57. Sgt. Flowers then stated that LVN McKnight had requested that offender James be transported to her location for examination. As offender James was being prepared for transport, he bent over in the wheelchair and became unresponsive. Lt. Whitfield was immediately notified who immediately requested that Central Control request Emergency Medical Services by 9-1-1. Lt. Whitfield reported to the medical department and instructed me to place offender James on a gurney in the emergency room. Officer Stephens moved offender James, by pushing the wheelchair, into the emergency room where I, Lt. Whitfield, and Officer Vincent McKnight, CO V lifted the offender from the wheelchair and placed him on the gurney.

While offender James was on the gurney, his eyes were open but he appeared disoriented. He was taking shallow breaths and, upon checking, Lt. Whitfield indicated that offender James did have a pulse. As a result, Cardiopulmonary Resuscitation was not initiated and offender James was closely monitored until arrival of EMS.

Lt. Whitfield instructed me to notify Warden Dennis Miller of the off-unit transport by EMS; Warden Miller was notified at 0305 hours.

At approximately 0320 hours, EMS arrived and began evaluating offender James' condition. After connecting their equipment which required affixing adhesive pads to offender James' upper body, the EMS requested assistance in moving offender James to their gurney, with Lt. Whitfield assisting in that process. EMS personnel then moved offender James to the ambulance where he was placed inside. One of the EMS personnel requested assistance from an officer. Officer McKnight entered the ambulance and was provided a breathing bag by EMS personnel and, upon instruction, began pumping air into offender James lungs. EMS personnel would stop Officer McKnight's actions in increments so that a tube could be inserted into his mouth, to no avail.

The ambulance remained at the back door of the medical department for several minutes. At 0338 hours, the ambulance departs the unit.

Lt. Whitfield instructed me, along with Officer Burt, to go to Palestine Regional Medical Center ("PRMC") via unit van. At 0405 hours, we arrived at PRMC, where offender James was placed in Exam Room #1. PRMC medical staff began life saving measures and at 0410 hours, report offender James has a pulse.

At 0416 hours, Doctor Heidi Knowles pronounced offender James deceased. I immediately notified Lt. Whitfield and am instructed to remain until offender James' body is removed.

Copy of OIG case to Litigation Support on 04.19.2013 by ce
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

August 13, 2011
Lt. Toby Whitfield
I-11520-08-11

At 0500 hours, Precinct #4 Justice of the Peace James Todd arrived and began his documentation.  At 0511 hours, Investigator Mark Owens of the Office of the Inspector General arrived and began his report and obtained photographs.  They leave shortly after their arrival.

At approximately 0530 hours, Officer McKnight and Officer Burt depart PRMC enroute back to the facility.

I remained with the remains until Officer John Crawford, CO V relieved me at 0700 hours, at which time; I obtained a total of six (6) digital photos of the offender.

I then returned to the Gurney Unit to provide a statement of my actions in this incident.

Matthew Seda, Sergeant

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

# Inter-Office Communications

| To | Lieutenant Toby Whitfield | Date | August 13, 2011 |
|---|---|---|---|
| From | Vincent McKnight COV | Subject | Offender James, Kenneth #1726849 |

On August 13, 2011 at approximately 0250 hours, I was instructed to go to the medical department by Lieutenant Toby Whitfield. Offender James, Kenneth #1726849 was in a wheelchair in the medical department. Lieutenant Whitfield instructed me to assist him and Sergeant Seda place the offender onto the gurney in the unit emergency room. We removed the offender from the wheelchair and place him on the gurney.

While the offender was on the gurney, he appeared to be disorientated and having difficulty breathing. Lt. Whitfield checked the offender for a pulse on his wrist. A short while later, paramedics from Palestine Regional Medical Center entered the ER and began taking vital on the offender. The paramedics asked for assistance to move the offender from the ER gurney to the ambulance gurney. Lt. Whitfield assisted the paramedics move the offender onto their gurney. The offender was then moved to the ambulance. The paramedics asked Lt. Whitfield for an officer to assist them. Lt. Whitfield instructed me to get into the ambulance and assist. The paramedic had me use an air bag with a mouth peace to attempt to give the offender air into his lungs. Several times the paramedics had me stop so they could attempt to place a breathing tube down his throat.

After several minutes, one of the paramedics stated that the offender was code blue and that they needed to get to the hospital immediately. While still using the air bag with the mask, one of the paramedics got out and began to depart to the hospital. When we arrived at the hospital, the offender was taken to exam room #1 and medical staff at the emergency room began performing life saving measures and I was no longer utilized in the procedures.

I stayed in the area and maintained security. Officer Burt and Sgt. Seda were also present when we arrived at the emergency room.

At 0416 hours, Heidi Knowles M.D. informed Sergeant Seda that the offender was pronounced deceased.

Justice of the Peace James Todd and Mark Owens of the Office of Inspector General arrived at approximately 0510 hours.

I was relieved at approximately 0530 hours and returned to the facility.

Vincent McKnight, COV
Joe F. Gurney Transfer Facility

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

SO-4

Plaintiffs' MSJ Appx. 5486                OIG - James 77

Texas Department of Criminal Justice
CORRECTIONAL INSTITUTIONS DIVISION

## Inter-Office Communications

| To | Lieutenant Toby Whitfield | Date | August 13, 2011 |
|---|---|---|---|
| From | Kenneth Mangan COV | Subject | Offender James, Kenneth #1726849 |

On August 13, 2011 at approximately 0240 hours, a call for a wheelchair to be brought to B1-building by Lieutenant Toby Whitfield came over the radio. I was on the unit's main hallway and I observed Officer Torrance Stephens COV coming down the hall with a wheelchair. I joined up with Officer Stephens and together we proceeded to B1-building 3 dorm. When we arrived in the dorm, offender James, Kenneth #1726849 was on his knees. I provided assistance to get him in the wheelchair by holding the chair steady.

Once the offender was placed in the wheelchair, Sergeant Tully Flowers informed me to go to inmate records and be on standby for a transport. I proceeded to inmate records and retrieved the offenders travel card and acquired a restraint bag and a state van. I proceeded to the back gate of the facility. While entering the back gate, I was informed that an ambulance was enroute to the unit to transport the offender to Palestine Regional Medical Center. I exited the back gate and secured the vehicle. I passed the restraint bag and travel card off to Sergeant Flowers and I remained outside the perimeter at the back gate to assist with the back gate procedures for getting the ambulance into the facility.

The ambulance arrived and I assisted opening the gates. The ambulance entered the facility and proceeded to the back door of the medical department. A short while later, the ambulance exited the facility and I was informed that Officer Burt and Sergeant Seda would be following the ambulance to Palestine Regional Medical Center. I gave Officer Burt the van to the key and they departed the facility. I then returned to my normal duties.

Kenneth Mangan, COIV
Joe F. Gurney Transfer Facility

Copy of OIG case to Litigation Support on 04.19.2013 by ce.
UNAUTHORIZED COPYING OR VIEWING PROHIBITED

SO-4

Plaintiffs' MSJ Appx. 5487          OIG - James 78