UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, et al., | § | |
|    Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:14-cv-03253 |
| | § | |
| BRAD LIVINGSTON, et al., | § | |
|    Defendants. | § | |

---

**DEFENDANT UNIVERSITY OF TEXAS MEDICAL BRANCH'S REPLY BRIEF
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for
Civil Litigation

KAREN D. MATLOCK
Chief, Law Enforcement Defense Division

J. LEE HANEY*
Assistant Attorney General

HEATHER RHEA
Assistant Attorney General

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080
(512) 936-2109 (fax)

ALVAREZ STAUFFER BREMER, PLLC

GRAIG J. ALVAREZ
KARA STAUFFER PHILBIN

815 Walker Street, Suite 1450
Houston, Texas  77002
(713) 351-0300
(713) 351-0320 (fax)

**ATTORNEYS FOR DEFENDANT**
_____
**\* Counsel of Record**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................... iv

I.       INTRODUCTION .......................................................................................1

II.     ARUGMENT & AUTHORITIES ..............................................................1

     A.  McCollum was not a qualified individual as defined by the ADA and RA ............1

         1.  McCollum's alleged depression cannot form the basis of Plaintiffs' claims against UTMB ................................................................................................1

         2.  McCollum was not substantially limited in any major life activity or bodily function ........................................................................................................2

             a.  Plaintiffs failed to prove McCollum's obesity substantially limited any major life activities ..............................................................................3

                1)  Walking, Standing, Climbing ...............................................................4

                    i.  Timing of Declarations ..................................................................4

                    ii.  Kingrey's declaration is inconsistent with all other competent evidence ........................................................................................5

                    iii.  UTMB physician testimony does not support Plaintiffs' claim of McCollum's substantial limitation...................................................7

                2)  Bending Over ........................................................................................8

              b.  The evidence shows McCollum's hypertension did not impair his cardiovascular or circulatory systems ..........................................................9

              c.  McCollum was not diagnosed with diabetes, and his endocrine system was not impaired ....................................................................................10

              d.  None of McCollum's alleged disabilities substantially limited his ability to thermoregulate ..............................................................................12

              e.  Plaintiffs abandoned claims of alleged substantial limitations to McCollum's respiratory, digestive, and nervous systems .........................13

3.   Plaintiffs abandoned any claims that McCollum had a record of impairment or was regarded as having an impairment ............................................................14

B.   McCollum was not excluded from participating in, or denied the benefits of, existing services, programs, or activities provided by UTMB ............................15

1.   Plaintiffs' claims that UTMB denied McCollum wellness checks and heat safety training cannot be considered by the Court............................................15

a.   Wellness checks .......................................................................................16

b.   Heat training to inmates .........................................................................16

2.   Proposed accommodations outside UTMB's control do not support Plaintiffs' claims .............................................................................................................17

a.   Climate controlled facilities are a function of TDCJ ...............................17

b.   Plaintiffs concede provision of a cup or fan was not a function of UTMB .....................................................................................................19

c.   It is undisputed that UTMB could not and did not assign McCollum's bunk at Hutchins ......................................................................................20

d.   UTMB did not exclude McCollum from receiving medical services at the Hutchins Unit ........................................................................................20

1)   Bottom bunk restriction ...................................................................21

2)   Intake physical .................................................................................23

C.   UTMB did not intentionally discriminate against McCollum due to his alleged disability........................................................................................................24

D.   UTMB's sovereign immunity is not abrogated ..................................................26

III.   CONCLUSION..............................................................................................27

CERTIFICATE OF SERVICE ..............................................................................30

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE #**

*Alexander v. Choate*,
    469 U.S. 287 (1985)..........................................................................................24, 25

*Arnold v. United Parcel Service*,
    136 F.3d 854 (1st Cir. 1998) ......................................................................................10

*Ball v. LeBlanc*,
    792 F.3d 584 (5th Cir. 2015) ..............................................................................7, 12, 13

*Borum v. Swisher County*,
    No. 2:14-CV-127-J, 2015 WL 327508 (N.D.Tex – Amarillo 2015) ....................16, 17, 22

*Burton v. Freescale Semiconductor, Inc.*,
    798 F.3d 222 (5th Cir. 2015) ................................................................................14, 22

*Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996) ........................................................20

*Cardenas v. Lee County, Texas*,
    569 Fed. Appx. 252 (5th Cir. 2014)....................................................................24

*Cook v. Rhode Island*,
    10 F.3d 17 (1st Cir. 1993).........................................................................................4

*Cutrera v. Bd. of Supervisors of La. State Univ.*,
    429 F.3d 108 (5th Cir. 2005) .............................................................................1, 2, 9, 15

*E.E.O.C. v. Resources for Human Dev., Inc.*,
    827 F. Supp. 2d 688 (E.D. La. 2011) .............................................................................4

*Green v. JP Morgan Chase Bank, N.A.*,
    562 F. App'x 238 (5th Cir. 2014) ..................................................................................2

*Griffin v. United Parcel Service, Inc.*,
    661 F.3d 216 (5th Cir. 2011) ...............................................................................10, 25

*Hale v. King*,
    642 F.3d 492 (5th Cir. 2011) .............................................................................2, 3, 13

*McCoy v. Tex. Dep't of Crim. Justice*,
    C.A. No. C-05-370, 2006 WL 2331055 (S.D. Tex. Aug. 9, 2006)....................................26

*McInnis v. Alamo Cmty. Coll. Dist.*,
    207 F.3d 276 (5th Cir. 2000) ....................................................................3, 6

*Mora v. Univ. of Tex. Southwestern Medical Center*,
    469 F. App'x 295 (5th Cir. 2012) ...................................................................2

*Munoz v. Echosphere, L.L.C.*,
    No. 09-CV-0308-KC, 2010 WL 2838356 (W.D. Tex. – El Paso, July 15, 2010) .............10

*O'Neil v. Tex. Dep't of Crim. Justice*,
    804 F.Supp.2d 532 (N.D.Tex. – Amarillo, 2011) .....................................................21, 26

*Pa. Dep't of Corr. v. Yeskey*,
    524 U.S. 206 (1998)..................................................................................9, 16

*Perez v. Doctors Hosp. at Renaissance, Ltd.*,
    624 F. App'x 180 (5th Cir. 2015) ...................................................................25

*Sherrod v. American Airlines, Inc.*,
    132 F.3d 1112 (5th Cir. 1998) .......................................................................14

*Smith v. Amedisys Inc.*,
    298 F.3d 434 (5th Cir. 2002) ...............................................................13, 14, 19

*Taylor v. Charter Med. Corp.*,
    162 F.3d 827 (5th Cir. 1998) .......................................................................26

*Tex. Sales and Mktg, Inc. v. Distinctive Appliances, Inc.*,
    Civil Action No. H-05-3555, 2007 WL 399292 (S.D. Tex. January 31, 2007)..................5

*U.S. v. Georgia*,
    546 U.S. 151 (2006)..................................................................................15

## STATUTES, RULES, CODES

28 C.F.R. §35.101 (2010) ..............................................................................2

28 C.F.R. §35.104 ......................................................................................14

28 C.F.R. §35.130(b)(1)(i)...........................................................................16, 17

28 C.F.R. §35.130(b)(1)(ii)......................................................................16, 17, 22

29 C.F.R. § 1630 *et seq.*............................................................................2, 10

29 C.F.R. §1630.2(j) .................................................................................................2, 3, 10, 11, 22

29 C.F.R. §1630.2(k)(2).........................................................................................................14

29 C.F.R. §1630.2(k)(3).........................................................................................................14

42 U.S.C. §12101(a)(7)..........................................................................................................22

42 U.S.C. §12102(1)(A)-(C)...................................................................................................14

42 U.S.C. §12102(2)(A)...........................................................................................................4

42 U.S.C. §12102(3)(A).........................................................................................................14

42 U.S.C. §12102(3)(B)...........................................................................................................6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, et al., | § | |
|    Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:14-cv-03253 |
| | § | |
| BRAD LIVINGSTON, et al., | § | |
|    Defendants. | § | |

**DEFENDANT UNIVERSITY OF TEXAS MEDICAL BRANCH'S REPLY BRIEF
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

Although Plaintiffs assert UTMB violated the ADA and RA by failing to provide McCollum with reasonable accommodations for his alleged disabilities, they fail to offer credible evidence establishing that (1) McCollum was a qualified individual under the ADA; (2) McCollum was excluded from benefits or services for which UTMB was responsible; or (3) UTMB excluded or denied benefits to McCollum by reason of his disability. Because there are no genuine issues of material fact, summary judgment is proper.

## II.  ARGUMENT & AUTHORITIES

### A.  McCollum was not a qualified individual as defined by the ADA and RA.

#### 1.  McCollum's alleged depression cannot form the basis of Plaintiffs' claims against UTMB.

Plaintiffs failed to plead that McCollum's alleged depression was a disability, or that it substantially limited his major life activities; therefore, depression cannot form a basis on which Plaintiffs avoid summary judgment on their ADA and RA claims against UTMB. *See* D.E. 297 at 98; *see generally* D.E. 119. "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v.*

1

*Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (affirming summary judgment on such a claim); *see also Green v. JP Morgan Chase Bank, N.A.,* 562 F. App'x 238, 240 (5th Cir. 2014) (affirming the court's refusal to consider new factual theory supporting a previously pled legal theory).[1] Based on the above, the allegation that McCollum was a qualified individual based on his depression is not properly before this Court, and summary judgment must be granted as to this alleged disability.[2] *See Cutrera*, 429 F.3d at 113.

### 2. McCollum was not substantially limited in any major life activity or bodily function.

For Plaintiffs to meet their burden of proof that McCollum was a qualified individual, they must prove more than an impairment; they must establish that McCollum's "impairment" substantially limited *him* in the performance of a major life activity. *Mora v. Univ. of Tex. Sw. Med. Ctr.*, 469 F. App'x 295, 297-98 (5th Cir. 2012) (ADA claim failed where plaintiff failed to specify which major life activities were substantially limited);[3] *Hale*, 642 F.3d at 501 (medical records of ailments without facts regarding impact on ability to perform major life activities insufficient to defeat summary judgment). Plaintiffs' attempts to do so fall short.

Plaintiffs summarily claim that the determination of whether a major life activity is "substantially limited" does not demand extensive analysis and then neglect to offer any individualized assessment of McCollum's abilities. D.E. 297 at 95 (citing 29 C.F.R. § 1630.2(j)(1)(iii)).[4] Their effort to establish McCollum was a qualified individual merely by

---

[1] Reply App. Tab 9 (unpublished opinion).

[2] In addition to failing to plead depression, Plaintiffs also present no evidence that McCollum's *undiagnosed* depression was anything other than a temporary reaction to returning to prison. *See* 42 U.S.C. § 12102 (3)(B); *see also Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

[3] *See* D.E. 285-2 App. Tab 52 (unpublished opinion).

[4] Plaintiffs repeatedly refer to regulations governing claims brought under Title I of the ADA. The purpose of the regulations found at 29 C.F.R. § 1630.1 *et seq.* is to implement Title I of the ADA, requiring equal employment opportunities. The regulations found that 28 C.F.R. § 35.101 prohibits discrimination by public entities on the basis of disability. *Compare* 29 C.F.R. § 1630.1 *with* 28 C.F.R. § 35.101.

2

highlighting *possible* substantial limitations *any person could* suffer due to certain ailments does not equate to competent evidence that McCollum *actually* suffered any substantial limitation. Plaintiffs fail to recognize that a party cannot avoid the individualized inquiry altogether.[5] *See* 29 C.F.R. § 1630.2(j)(1)(iv) (determination of whether impairment substantially limits major life activity requires individualized assessment) (emphasis added); 29 C.F.R. § 1630.2(j)(3)(ii) (individualized assessment required even when simple and straightforward);[6] *see also McInnis*, 207 F.3d at 281.

Plaintiffs unreasonably conclude that because an individual *can* have substantial limitations due to a disability, McCollum *must have had* substantial limitations. Such conclusory efforts simply do not defeat summary judgment. Rather, the evidence before the Court clearly establishes that summary judgment is proper because Plaintiffs fail to establish that any of McCollum's "impairments" substantially limited his major life activities.[7]

### a. Plaintiffs failed to prove McCollum's obesity substantially limited any major life activities.

According to Plaintiffs, McCollum "had difficulty 'performing manual tasks,' like 'walking short distances, standing, climbing, and bending over,'" due to him being "visibly overweight" and "obese." D.E. 297 at 95 (citing Ex. 37 at App. 641; Ex. 38 at App. 644; 42 U.S.C.

---

[5] In determining whether there is a substantial limitation, a court should consider: (1) the nature and severity of the impairment, (2) the duration, or expected duration, of the impairment, and (3) the permanent or long term impact, or the expected permanent or long term impact, from the impairment. *Hale*, 642 F.3d at 500; *see also McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 281 (5th Cir. 2000). "The determination of whether an impairment substantially limits a major life activity **requires** individualized assessment." 29 C.F.R. § 1630.2(j)(iv) (emphasis added).

[6] The issue of whether a temporary impairment is significant enough to be a disability must be resolved on a case-by-case basis, taking into consideration both the duration (or expected duration) of the impairment and the extent to which it actually limits a major life activity of the affected individual. THE AMERICANS WITH DISABILITIES ACT TITLE II TECHNICAL ASSISTANCE MANUAL, II-2.4000, *available at* https://www.ada.gov/taman2.html#II-2.4000 (last visited Oct. 18, 2016) (Reply App. Tab 8).

[7] As discussed below, the evidence establishes that McCollum had not been diagnosed with or treated for diabetes during his incarceration. To the extent, however, that the Court considers Plaintiffs' arguments as to diabetes in connection with other alleged substantial limitations related to obesity and hypertension, UTMB intends for this section to address those arguments as well.

3

§ 12102(2)(A)). These conclusory allegations, however, are not supported by any competent summary judgment evidence.[8] As shown below, McCollum's obesity did not substantially limit any major life activities.

### 1) Walking, Standing, Climbing

In an effort to establish that McCollum was substantially limited in his ability to walk, stand, and/or climb, Plaintiffs rely on declarations of Stephanie Kingrey and Santos Rodriguez III and the generalized testimony of UTMB physicians Dr. Glenda Adams and Dr. Owen Murray. *See generally* D.E. 297 at 94-95 (citing Ex. 37-38 at App. 640-646; Ex. 272 at App. 6340-402; Ex. 287 at App. 6731-39). None of this testimony creates a genuine issue of material fact.

### i.   Timing of declarations

Just one day prior to Plaintiffs' response, Kingrey executed a declaration stating, for the first time, that she believed her father's obesity caused difficulty "walking, standing, climbing and bending over." D.E. 297 at 95 (citing Ex. 37 at App. 640-41). Notably, Kingrey makes no mention of any alleged disability other than obesity. *See id.*

In a declaration executed after UTMB filed its Motion for Summary Judgment, Rodriguez discusses McCollum's alleged inactivity and difficulty in climbing to access a top bunk, but makes no mention of McCollum having any difficulty walking or standing. *See id.* at 32, 95 (citing Ex.

---

[8] Plaintiffs' case law is likewise summarily used and fails to support their claim that McCollum's obesity substantially limited any of his major life activities. Both cases fall under Title I, the employment section of the ADA, and in both cases, the plaintiff claimed their employer "regarded" their obesity to be limiting. *See E.E.O.C. v. Resources for Human Dev., Inc.,* 827 F. Supp. 2d 688 (E.D. La. 2011), *and Cook v. Rhode Island,* 10 F.3d 17 (1st Cir. 1993). In *E.E.O.C.*, the plaintiff weighed more than 100% over the norm and claimed her employer "regarded her as disabled" thus terminated her. 827 F. Supp. 2d at 690. In *Cook,* even though during the pre-hire physical, defendant concluded plaintiff was morbidly obese, it found no limitations on her ability to perform the job. *Cook,* 10 F.3d at 20-21. Plaintiff brought suit because the defendant *perceived* her obesity to be limiting and did not hire her, even though she had passed the physical examination. *Id.* at 21. Thus the critical inquiry in both cases was whether the plaintiff was perceived as being able to "perform the essential functions" of their job with or without "reasonable accommodations" and did not turn on whether the plaintiff was substantially limited in a major life activity. *See id.; E.E.O.C.*, 827 F. Supp. 2d at 695-96.

4

38 at App. 643-46). Other than calling McCollum "very large," Rodriguez fails to describe any alleged disability attributable to McCollum. *See generally id.*

> ii. *Kingrey's declaration is inconsistent with all other competent evidence.*

Kingrey's recent declaration is in stark contrast to her prior deposition testimony, the testimony of McCollum's wife, and McCollum's medical records. On November 22, 2013, Kingrey unequivocally testified that she *did not* consider McCollum disabled. D.E. 285-2 App. Tab 29 at 356 (54:25-55:1) **("Q: Did you consider your dad to be disabled? A: No.**") (emphasis added). Despite amending her testimony to add "[b]ut I knew he had difficulty walking because of his leg, that he had been diagnosed with diabetes and hypertension, and that he was obese," she still did not consider McCollum disabled. Reply App. Tab 1 at 1 (93:4-9). Moreover, her deposition testimony contains no indication that she believed McCollum had difficulty walking, standing, or climbing *due to* his obesity, hypertension, or alleged diabetes. *See id.*; *see also* D.E. 297 Ex. 37 at App. 640-41.  Clearly, Kingrey's declaration is nothing more than a sham affidavit and should be disregarded when considering UTMB's Motion for Summary Judgment. *Tex. Sales and Mktg, Inc. v. Distinctive Appliances, Inc.,* Civil Action No. H-05-3555, 2007 WL 399292, at *6 (S.D. Tex. January 31, 2007) ("When an affidavit is impeached by prior sworn testimony without sufficient explanation, the court must view that affidavit with profound skepticism . . .Indeed, it is within the court's discretion to disregard the affidavit altogether should the court determine that it is dealing with a sham affidavit.") (citation omitted).[9]

McCollum's wife, Sandra McCollum, explained his alleged difficulty in walking, indicating he had suffered a leg injury in a car accident, but that he no longer needed a cane after

---

[9] Reply App. Tab 10 (case not reported).

his cast was removed.[10] Reply App. Tab 2 at 3-4 (25:24-26:9). There is no credible evidence that McCollum had difficulty walking *due to* his obesity; instead Sandra McCollum unequivocally testified only that "[h]is foot was still bothering him a lot" due to the "wreck." *See id.* at 4 (26:6-9). After being diagnosed with a toe fracture, McCollum complained no further about his injury. His injury was short in duration and unrelated to the alleged physical impairments on which Plaintiffs rely.[11]

McCollum's medical records from UTMB and the McLennan County Jail, where he had multiple opportunities to self-report issues with walking, standing, and/or climbing, likewise do not reflect any difficulties due to alleged disabilities. D.E. 285-1 App. Tab 25 at 319-24; D.E. 285-2 App. Tab 31 at 380. UTMB medical staff noted no impaired motor activity, weakness or lethargy during either the intake screening or subsequent interactions with McCollum.[12] D.E. 285-2 App. Tab 31 at 373, 380-81.

Plaintiffs cannot show a genuine issue of material fact simply through the submission of self-serving declarations and conclusory allegations that are contrary to the competent summary judgment evidence.[13]

---

[10] McCollum was brought to Hillcrest Medical Center after a motor vehicle collision on December 24, 2010, complaining of pain to his foot, knee, and head. D.E. 285-2 App. Tab 27 at 338-41. The Hillcrest medical records support Sandra McCollum's testimony as to the limited effect, if any, of his injury. Despite claims of injury, the medical provider noted McCollum had normal range of motion of all joints. *Id.* at 340. McCollum could *fully bear his weight* and the only pain reported was his right big toe. *Id.* at 335 ("Able to bear weight: Fully"). McCollum answered "no" as to whether he falls unexpectedly or frequently, or needs any assistive devices to help walk, or feels dizzy when he stands up from a bed or chair when completing a "Fall Risk Assessment ER Questionnaire." *Id.* at 342. He was diagnosed by Hillcrest with a toe fracture on January 25, 2011. *Id.* at 336. During this visit just seven months prior to his death, McCollum also did not report any difficulty with walking, standing, or climbing. *Id.* at 337.

[11] *See supra* n. 5; *see also McInnis*, 207 F.3d at 281 (stating the analysis of whether a plaintiff's impairment interferes with or substantially limits a major life activity, constituting a disability under the ADA, requires individual inquiry). This prong does not apply, however, to impairments that are transitory, with an actual or expected duration of six months or less. 42 U.S.C. § 12102(3)(B).

[12] This is consistent with his McLennan County Jail records and previous medical records from Hillcrest Medical Center where no problems were reported or observed. D.E. 285-1 App. Tab 26 at 324; D.E. 285-2 App. Tab 27.

[13] Plaintiffs did not produce these declarations during the discovery period. UTMB objects to any reliance upon this evidence. Their admissibility is further addressed in UTMB's Motion to Strike.

> iii.    *UTMB physician testimony does not support Plaintiffs'*
> *claim of McCollum's substantial limitation.*

Purportedly relying on "UTMB physicians," Plaintiffs summarily claim that McCollum's obesity made him a qualified individual. D.E. 297 at 96 (citing Ex. 272 at App. 6395 (267:12-24); Ex. 287 at App. 6731-39 (119:4-120:18) (emphasis added)).   The testimony fails to support their conclusion.

Dr. Glenda Adams testified as follows:

> "Q: Okay do you consider obesity a medical condition? Morbid
> obesity?
> A: Yes.
> Q: It can limit physical activity.
> A: It can, yes.
> Q: It can affect breathing of people?
> A: Yes, it can.
> Q: It can affect people's ability to walk or to run; correct?
> A: It can.
> Q: It can even affect people's ability to stand up; right?
> A: If they're obese enough, yes."

Reply App. Tab 3 at 16 (267:12-24). Dr. Glenda Adams stated only that obesity *can* have these effects on individuals, not that it always has such an effect. *Id.* Dr. Adams never stated these limitations *did* affect McCollum. *See id.*; *see also Ball v. LeBlanc*, 792 F.3d 584, 597 (5th Cir. 2015) (explaining there was no evidence the inmates' ability to thermoregulate were *actually* impaired). Dr. Owen Murray agreed that obesity *can* affect certain life activities:

> Q: Certainly you would agree that obesity can limit one's physical
> activity?
> A: I would agree with that.
> Q: Certainly you would agree that morbid obesity can affect
> people's ability to breathe?
> A: Again, not knowing the specific circumstances, but morbid
> obesity can have – can complicate the respiratory process.
> Q: It can affect the ability to walk or run; right?
> A: Again, not knowing the specifics, yes.
> Q: It can affect the ability to climb; correct?

7

> A: Stairs, like – Or not like – You're talking stairs, not mountains or climb any –
> Q: Let's start with stairs.
> A: Yes it can. It can affect someone's ability to – to climb.
> Q: It can affect someone's ability to climb into a top bunk; correct?
> A: Again, not knowing the circumstances specifically, that could possibly occur."

Reply App. Tab 4 at 18-19 (119:4-120:1) (objections omitted). But Dr. Murray never testified that obesity always impacted major life activities, that McCollum actually suffered the requisite substantial limitations, or suggested that any evidence supported such a claim. *See generally id*.

It is undisputed that McCollum never reported any difficulties with walking, standing, or climbing to UTMB staff upon intake or during the multiple opportunities he had thereafter, or that climbing into or out of a top bunk substantially limited him from performing any major life activities. D.E. 285-2 App. Tab 31 at 368, 380-81; D.E. 285-2 App. Tab 35 (McCollum did not file any grievances or sick call requests at Hutchins); D.E. 285-1 App. Tab 26 at 324; D.E 285-2 App. Tab 27 at 333-42 (evidencing a strong musculoskeletal system and active range of motion). Faced with no evidence that McCollum experienced these substantial limitations, Plaintiffs attempt to create a fact issue out of conclusory allegations without conducting the requisite individualized assessment. As fully briefed in UTMB's Motion for Summary Judgment, the law is well-established that merely having a physical impairment does not automatically make McCollum a qualified individual under ADA. D.E. 285 at Part VI.B.1.a. Because Plaintiffs have offered nothing more to establish that McCollum was a qualified individual under the ADA, summary judgment is proper.

### 2) *Bending Over*

"Bending over" was not pled by Plaintiffs as an activity substantially limited due to McCollum's alleged disabilities. *See generally* D.E. 119. Because claims first raised in response

8

to a motion for summary judgment are not properly before the Court, this Court cannot conclude McCollum was a qualified individual based on his alleged inability to bend over due to his obesity. *See supra* Part III.A.1. (citing *Cutrera*, 429 F.3d at 113).

### b. The evidence shows McCollum's hypertension did not impair his cardiovascular or circulatory systems.

Plaintiffs claim McCollum's hypertension was "significant enough" to justify medication intended to be taken daily, and therefore, he was substantially limited. D.E. 297 at 97. In so claiming, Plaintiffs ignore multiple key undisputed facts:

- McCollum did not take medication for hypertension prior to his incarceration. D.E. 285-1 App. Tab 26 at 321; D.E. 285-2 App. Tab 31 at 380-81; D.E. 285-2 App. Tab 27 at 333, 338 (indicating no medications); D.E. 285-2 App. Tab 29 at 357 (60:17-24); D.E. 285-2 App. Tab 42 at 421 (10:14-17); D.E. 285-2 App. Tab 43 at 425 (20:20-23).

- The hypertension medication clonidine prescribed to McCollum at McLennan County Jail was only "as needed," and he only took four doses between June 23, 2011 and July 15, 2011. D.E. 285-2 App. Tab 30; D.E. 285-1 App. Tab 26 at 319, 327; *see also* D.E. 285-2 App. Tab 43 at 425 (20:24-21:4).

- McLennan County Jail records show multiple normal blood pressure readings. D.E. 285-1 at App. Tab 26 at 327.

- McCollum was prescribed a low dose of hydrochlorothiazide at Hutchins, but only to avoid fluctuating readings until his intake was completed by medical staff. D.E. 285-2 App. Tab 30 at 360.[14]

Contrary to Plaintiffs' suggestion, the Supreme Court did not recognize hypertension as a disability that alone makes one a qualified individual under the ADA.[15] Medical history of

---

[14] Plaintiffs contend the medical record showing McCollum taking hydrochlorothiazide two weeks after his death "creates a fact question," claiming either the dates he received the drug were filled in incorrectly, or the record was falsified after Mr. McCollum's death. D.E. 297 at 97 (citing Doc. 285-1, UTMB App. 128). But this record, which more logically means "no show" (represented by NS on the record), is irrelevant to the issue. As Dr. Ananda Babbili stated, even if McCollum had taken the hydrochlorothiazide as prescribed, within that short time, it would have not yet reached a therapeutic dose in his body. Reply App. Tab 5 at 21 (109:8-13) ("[I]t usually takes two weeks for hydrochlorothiazide to go into full effect.").

[15] *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998). The Court made note of plaintiff's medical history of hypertension but conducted no analysis of substantial limitation of any major life activity in deciding the question presented, which was whether Title II of the ADA applied to inmates in state prisons. *Id.* at 208. The Court held the ADA applies to such inmates. *Id.* at 210-11.

hypertension alone, does not make McCollum a qualified individual. *See, e.g.,* 29 C.F.R. § 1630, Appendix to Part 1630 - Interpretive Guidance on Title I of the Americans with Disabilities Act.[16] While McCollum's cardiovascular system may have experienced intermittent elevated blood pressure readings after his incarceration, nothing indicates McCollum relied on medication to regulate his cardiovascular or circulatory functions, or that without the prescribed medication, McCollum would have been substantially limited. *See supra in this section* (key undisputed facts). Plaintiffs failed to present any evidence supporting that McCollum's cardiovascular or circulatory systems were substantially limited.[17]

### c. McCollum was not diagnosed with diabetes, and his endocrine system was not impaired.

McCollum cannot be considered a qualified individual based on his alleged diabetes because he did not arrive to the Hutchins Unit with any record of a pre-existing diabetes diagnosis and was not on any medication to treat diabetes, nor was he ever diagnosed as diabetic by UTMB or McLennan County Jail during his incarceration. *See* D.E. 285 at 22-23. Plaintiffs ignore the lack of supporting evidence, and argue that because the EEOC's regulations specify diabetes is a "disability," this Court should conclude that it limits endocrine function and is a qualifying disability.[18] D.E. 297 at 96 (citing 29 C.F.R. § 1630.2(j)(3)(iii)); Ex. 53 at App. 6780).

---

[16] As an example, the Interpretive Guidance explains that someone who began taking medication for hypertension before experiencing substantial limitations related to the impairment would still be an individual with a disability if, without the medication, he or she would **now** be substantially limited in functions of the cardiovascular or circulatory system. This example makes clear the need for evidence that an individual's impairment would be substantially limiting, and is not conclusive based on the individual's taking of medication.

[17] Moderate impairment is not enough to be regarded as a qualified individual for purposes of the ADA. *See Griffin v. United Parcel Service, Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) (finding a diabetic plaintiff's treatment regimen did not substantially limit his ability to eat because it required only modest dietary and lifestyle changes).

[18] Plaintiffs cite to several cases attempting to suggest other courts find diabetes is a qualifying disability without considering the substantial limitation analysis. In addition to glossing over the necessary *diagnosis* preceding such a conclusion, Plaintiffs misstate the law. Again, all of Plaintiffs' cases fall under Title I of the ADA where any alleged disability is viewed in light of the individual's ability to perform their job rather than eligibility to access services. In *Munoz v. Echosphere, L.L.C.*, both parties agreed diabetes was not a per se disability and required proof of substantial limitation of one or more major life activities. No. 09-CV-0308-KC, 2010 WL 2838356 at *11 (W.D. Tex. – El Paso 2010) (Reply App. Tab 11 (case not reported)). Likewise, the *Arnold v. United Parcel Service* court agreed there was

10

But in so posturing, Plaintiffs put the cart before the proverbial horse, and ask the Court to assume McCollum was diabetic, when the evidence does not demonstrate that he actually had diabetes, or any substantial limitations because of it. *See, e.g.,* 29 C.F.R. § 1630.2(j)(3)(ii) (explaining individualized assessments for *some* impairments will be simple and straightforward – thus assuming the actual impairment has already been established). McCollum's diabetes was not established.

In 2010, the American Diabetes Association adopted criteria for diagnosing diabetes as a hemoglobin A1C reading of 6.5% or greater; a reading between 5.7% to 6.4% indicates an increased risk for diabetes. D.E. 285-1 App. Tab 8 at 128; D.E. 285-2 App. Tab 31 at 366; *see* D.E. 285-2 App. Tab 29 at 354 (29:2-30:7), 356 (57:20-22), 357 (60:17-24); *see also* D.E. 285-2 App. Tab 42 at 420 (7:10-8:16, 9:1-19). This diagnostic standard has not changed since 2010. Plaintiffs' expert, Dr. Vassallo, however, relies on her subjective opinion that this 6.5% threshold may not capture all individuals with diabetes and on McCollum's alleged self-reported diabetes and testimony of his family members, to opine that McCollum was diabetic. Reply App. Tab 6 at 25-26, 28-29 (61:13-24) (62:16-23) (67:2-8) (74:12-20). Her subjective beliefs simply do not support a ***medical*** diagnosis of diabetes. Dr. Vassallo concedes she never examined, met, or spoke with McCollum and never personally diagnosed him with diabetes. *Id.* at 27 (65:3-5). It is undisputed, and acknowledged by Dr. Vassallo, that McCollum's McLennan County Jail records do not indicate any diagnosis of or treatment for diabetes and that there is no medical evidence he was ever prescribed or took medication for diabetes. *Id.* at 23-24, 30 (57:18-24, 60:19-25, 101:6-11).

---

no per se rule, and held that a case-by-case approach was necessary to determine whether the impairment substantially limits any major life activity. 136 F.3d 854, 865 (1st Cir. 1998).

The available objective medical evidence clearly shows McCollum's hemoglobin AlC was measured at 6.2% during labs taken on July 20, 2011. D.E. 285-2 App. Tab 31 at 366. He had no prior medical record of diabetes. *See* D.E. 285-1 App. Tab 26 at 312-329; *see* D.E. 285-2 App. Tab 27 at 330-342, 374. No credible evidence exists to support McCollum was actually diabetic or that his endocrine function was substantially limited.[19] McCollum cannot be considered a qualified individual, and summary judgment on these grounds must be granted.

### d. None of McCollum's alleged disabilities substantially limited his ability to thermoregulate.

Plaintiffs claim that one, or more, of his alleged disabilities operated to impair his ability to thermoregulate, and therefore, he was a qualified individual.  But McCollum's death alone is not enough to support Plaintiffs' contention that he was substantially limited in his ability to thermoregulate. *See* D.E. 297 at 96-99.

While CMHCC policies do recognize that individuals that are morbidly obese, or that have hypertension or diabetes *may* be at increased risk for heat-related illnesses, Plaintiffs again summarily conclude – again, without any individualized assessment – that McCollum *was* at increased risk. But even if McCollum *may* have been at an increased risk for a heat illness, there is no evidence that his ability to thermoregulate was actually substantially limited prior to his death.

In *Ball*, the plaintiffs had similar ailments to McCollum but the Court found that there was no evidence in the record that their ability to thermoregulate was substantially limited. 792 F.3d at 597. The disability plus the mere possibility of increased susceptibility to a heat illness was simply not enough to establish a substantial limitation. *See id.* Here, the only evidence to support

---

[19] The autopsy result stating McCollum's endocrine system was unremarkable further supports that McCollum was not diabetic, nor was his endocrine function substantially limited. D.E. 285-2 App. Tab 40 at 411-15.

Plaintiffs' contention of McCollum's inability to thermoregulate was that he died of hyperthermia. D.E. 297 at 99. No evidence exists to show McCollum had difficulty thermoregulating prior to July 22, 2011. This one-time occurrence where McCollum was unable to regulate his body temperature is not enough to show his ability to thermoregulate was substantially limited.[20] *See* 42 U.S.C. § 12102 (3)(B); *see also Ball*, 792 F.3d at 597; *see also Hale*, 642 F.3d at 499 (temporary disability does not establish a substantial limitation sufficient to be a "qualified individual" under the ADA). By Plaintiffs' reasoning, any time a person dies due to the failure of a physical or bodily function, that person's death provides the only evidence necessary to prove that the person had a substantial limitation under the ADA. This cannot be the standard.

### e. Plaintiffs abandoned claims of alleged substantial limitations to McCollum's respiratory, digestive, and nervous systems.

Plaintiffs abandoned their arguments that McCollum was a qualified individual based on alleged substantial limitations to his respiratory, digestive, and nervous systems. D.E. 119 at ¶¶ 25, 27, 29, 32, 38. In their complaint, Plaintiffs bury claims that McCollum's respiratory, digestive, and nervous systems were substantially limited due to his obesity, hypertension and alleged diabetes, but completely failed to address UTMB's summary judgment arguments on these alleged limitations in their response. *See id.* "'[T]rial courts will not rule on claims – buried in pleadings – that go unpressed before the court;'" therefore, a plaintiff's failure to urge such claims may be construed as their intent to abandon those claims. *Smith v. Amedisys Inc.*, 298 F.3d 434, 451 (5th Cir. 2002) (affirming summary judgment dismissing unpressed claims) (quoting *Vaughn v. Mobil Oil Expl. & Prod. Southeast, Inc.*, 891 F.2d 1195, 1198 (5th Cir. 1990)).

---

[20] As explained in *Ball*, had the offenders there established a prior record of difficulty thermoregulating, an analysis as to whether this difficulty substantially limited them in major life activities may have been required. Until an individual establishes the disability plus substantial limitation, there is no expectation of a reasonable accommodation.

Because Plaintiffs abandoned these claims, summary judgment should be granted on their claims that McCollum's respiratory, digestive, and nervous systems were substantially limited.

### 3. Plaintiffs abandoned any claims that McCollum had a record of impairment or was regarded as having an impairment.

Plaintiffs offer no evidence in response to UTMB's assertion that Plaintiffs failed to demonstrate that McCollum had a "record of impairment" or was "regarded as having an impairment." *See* 28 C.F.R. § 35.104; *see also* 29 C.F.R. § 1630.2(k)(2), § 1630.2(k)(3) (2012). Instead, Plaintiffs argue only that McCollum's impairments substantially limited him under the first prong of the ADA analysis. *See* 42 U.S.C. § 12102(1)(A)-(C) (2009).

Specifically, Plaintiffs present no evidence of a record of an impairment – that, at some point in the past, McCollum was classified, or misclassified, as having a physical impairment that substantially limited a major life activity. *See Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1120-21 (5th Cir. 1998) (though plaintiff had back surgery and took a disability leave of absence, she failed to show that the impairment limited a major life activity and, consequently, did not raise a genuine issue of material fact regarding whether she had a record of impairment).

Similarly, although Plaintiffs repeatedly state that UTMB *should have* regarded McCollum as having a physical impairment, they offer no evidence that UTMB did, in fact, regard him as being impaired. *See* 42 U.S.C. § 12102(3)(A) (2009); 28 C.F.R. § 35.104(4) (2011); *see also generally* D.E. 285-2 App. Tab 31. McCollum never reported any current substantial limitations. *See generally supra* Part II.A.2. UTMB did not perceive McCollum as having a physical or mental impairment. *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015). Because Plaintiffs did not address either of these two prongs in their response, any claims under these prongs of the ADA are abandoned. *Smith*, 298 F.3d at 451.

14

### B. McCollum was not excluded from participating in, or denied the benefits of, existing services, programs, or activities provided by UTMB.

Plaintiffs broadly attempt to compare McCollum to the paraplegic inmate in *U.S. v. Georgia*, who was denied access to virtually all prison programs because the prison and his cell were not made handicapped accessible. D.E. 297 at 101 (citing 546 U.S. 151, 155 (2006)). Unlike the *Georgia* plaintiff, there is no evidence to suggest that McCollum was unable to physically access certain areas of the prison, such as his housing or the chow hall, or was denied access to any existing specific programs or services, including medical services. *See* D.E. 297 at 101-102; *see Georgia*, 546 U.S. at 155-57 (plaintiff claimed he was denied access to medical treatment and to other privileges granted to prison inmates because of his paraplegia and the prison's failure to accommodate his mobility issues).

Instead, Plaintiffs argue that safe confinement itself was the program or service denied to McCollum because UTMB (and TDCJ) failed to provide "reasonable accommodations:" climate-controlled housing, bottom bunk, cup, intake physical, wellness checks and heat safety training. D.E. 297 at 101-102. As shown below, Plaintiffs' arguments fail because: (1) Plaintiffs failed to plead the denial of certain accommodations was a UTMB function; (2) it is undisputed that UTMB did not control or provide the proposed accommodation; and (3) through CMHCC policies, UTMB provided reasonable accommodations to ensure McCollum had access to medical care.

### 1. Plaintiffs' claims that UTMB denied McCollum wellness checks and heat safety training cannot be considered by the Court.

Plaintiffs' complaint fails to plead that UTMB denied McCollum wellness checks or heat safety training for offenders. *See generally* D.E. 119; D.E. 297 at 25, 27, 100, 103. These claims are, therefore, not properly before the Court and should be dismissed. *See supra* Part III.A.1., (citing *Cutrera*, 429 F.3d at 113).

### a. Wellness checks

While Plaintiffs claim – for the first time in their summary judgment response – UTMB *could have* implemented wellness checks at the Hutchins Unit to monitor inmates with heat-sensitive disabilities, they provide no evidence that providing wellness checks to inmates was an existing program, service, or activity provided by UTMB or was within the control of UTMB to implement in July 2011.[21] *See Borum v. Swisher Cty*, No. 2:14-CV-127-J, 2015 WL 327508, at *9 (N.D. Tex. – Amarillo 2015) (prisons not required to provide *new* services or programs for a disabled prisoner, only meaningful access to *existing* services and programs) (emphasis in original);[22] D.E. 297 at 27.

Likewise, there is no evidence that wellness checks would have been a "reasonable accommodation" such that McCollum would have then had meaningful access or that McCollum was specifically excluded from receiving that wellness check.[23] *See Borum,* 2015 WL 327508, at *9;[24] 28 C.F.R. § 35.130(b)(1)(i)-(ii) (2011). Because Plaintiffs failed to plead that wellness checks were a reasonable accommodation that UTMB could have provided or that it was an existing service of UTMB in July 2011, they cannot rely on it to now defeat summary judgment.

### b. Heat training to inmates

Again, for the first time in response to UTMB's motion for summary judgment, Plaintiffs claim that inmate "heat safety training" was a "reasonable accommodation" that would have

---

[21] Plaintiffs acknowledge that wellness checks were implemented *by TDCJ* after McCollum's death. D.E. 297 at 28.
[22] *See* D.E. 285-2 App. Tab 49 (case not reported). Plaintiffs acknowledge that a non-disabled offender cannot be denied the programs and benefits afforded to disabled offenders. D.E. 297 at 102.
[23] It is unclear whether Plaintiffs contend the wellness checks were a reasonable accommodation or the program/service itself for which a reasonable accommodation would be required. *Compare* D.E. 297 at 108, where according to the heading and Plaintiffs' arguments, safe confinement itself is the program or service, with *Yeskey*, 524 U.S. at 210 (explaining the prison provides *many* activities, medical services, and programs, which should not prisoners on the basis of a disability). To the extent wellness checks, and other "accommodations" proposed by Plaintiffs were not yet existing services, programs, or benefits, UTMB had no obligation to provide these *new* services or programs for McCollum. *See Borum*, 2015 WL 327508 at *9 (previously provided at D.E. 285-2 App. Tab 49).
[24] D.E. 285-2 App. Tab 49.

protected McCollum. D.E. 297 at 25, 100. But they fail to provide any evidence that additional inmate heat safety training was within the control of UTMB to implement in July 2011 or that such training would have been a "reasonable accommodation," providing McCollum with meaningful access to programs and services provided by UTMB. *See Borum*, 2015 WL 327508 at *9;[25] D.E. 297 at 27. Further, no evidence exists that UTMB specifically excluded McCollum from heat training. Regardless, because Plaintiffs failed to plead in their complaint that heat safety training was a reasonable accommodation that could have been provided by UTMB, they cannot rely on it to now defeat summary judgment.

### 2. Proposed accommodations outside UTMB's control do not support Plaintiffs' claims.

UTMB cannot be held liable for any alleged failure to offer or provide a reasonable accommodation to an existing service, program or benefit, where the program itself or the proposed accommodation was not a function of UTMB. Because the following were not existing services, programs, or benefits *provided by* UTMB, they cannot form the basis of McCollum's alleged exclusion by UTMB.

### a. Climate controlled facilities are a function of TDCJ.

UTMB was not responsible for providing climate controlled facilities for offenders at the time of McCollum's death; this remains true today.[26] Plaintiffs acknowledge that TDCJ is responsible for providing UTMB with climate-controlled beds and that UTMB is restricted by TDCJ to a very small number of "infirmary beds" for extremely ill inmates. D.E. 297 at 25, n. 59

---

[25] *See* D.E. 285-2 App. Tab 49 (case not reported).

[26] Plaintiffs state, "Mr. McCollum also needed [] specialized housing: one of the 23,000 TDCJ climate controlled beds that do not expose prisoners with disabilities to dangerously high summer temperatures." D.E. 297 at 102, n. 190. But the ADA does not operate to provide services, programs or benefits to a disabled offender that are not equally afforded to all offenders. 28 C.F.R. § 35.130(b)(1)(i)-(ii) (2011); *see Borum*, 2015 WL 327508, at *9. There is no evidence that there are 23,000 climate-controlled beds to which McCollum could have been assigned. *See infra* n. 25.

(citing Ex. 271 at App. 6330-31 (Dr. Glenda Adams Mar. 7, 2014 Expert Deposition) (272:5-273:12)). Plaintiffs further acknowledge that "TDCJ does not permit medical providers to assign housing on the basis of heat sensitive disabilities for almost all of these beds." *See* D.E. 297 at 25-26 (citing Ex. 281 at App. 6631-32 (127:19-128:25) (Dr. Linthicum Deposition)).

Despite admitting that TDCJ is responsible for providing facilities generally for offenders, that TDCJ made the decision to house McCollum at the Hutchins Unit, and that TDCJ granted only a limited number of climate-controlled facilities and beds to UTMB, Plaintiffs then blame UTMB for not accommodating heat sensitive inmates with climate-controlled beds. D.E. 297 at 102-03. In doing so, Plaintiffs also misrepresent Dr. Adams's testimony regarding an ability to house over 22,000 inmates in climate-controlled beds. *See* D.E. 297 at 26 (citing Ex. 271 at App. 6326-27 (76:9-77:10) (Dr. Glenda Adams Mar. 7, 2014 Expert Deposition); Ex. 272 at App. 6387-88 (236:12-238:18) (Dr. Glenda Adams Nov. 19, 2013 30(b)(6) Depo.); Ex. 331 at App. 7386). Dr. Adams only discusses finding single-cell housing for psychiatric patients; she never claims that over 22,000 inmates could be housed in climate-controlled housing, and especially not at the sole direction of UTMB. Reply App. Tab 3 at 13-15.

Even Plaintiffs' own evidence fails to support their argument. Instead, the evidence is very clear that UTMB works within the constraints of limited resources provided by TDCJ and does not manage or control the construction or maintenance of state prisons generally, or any area of the Hutchins Unit, including any that was climate controlled.[27] D.E. 285-1 App. Tab 12 at 194

---

[27] In July 2011, TDCJ allocated space to UTMB for 1,100 inpatient mental health beds, 62 wheelchair dorm beds, 80 acute care hospital beds, and 471 infirmary beds, which were climate controlled. D.E. 285-1 App. Tab 7 at 110 (131:23-132:14); D.E. 285-1 App. Tab 8 at 129. TDCJ had some additional climate controlled facilities designated for inmates with certain needs outside the general population of Texas inmates. *See, e.g.,* D.E. 285-1 App. Tab 18 at 267 (271:10-21). But, UTMB is unable to provide for more air-conditioned or climate controlled space, or assign additional inmates when those beds or facilities are full, without TDCJ providing the facilities.

(23:17-25:14); D.E. 285-1 App. Tab 7 at 95-96 (24:21-25:7), 118 (242:19-243:3); D.E. 285-1 App. Tab 1 at 10-11.

In an effort to bolster their argument, Plaintiffs point to events that occurred *after* McCollum died. But these events have no relevance to whether then-existing programs, services, and activities provided by UTMB that were denied to McCollum.[28] Such arguments must be disregarded.

### b. Plaintiffs concede provision of a cup or fan was not a function of UTMB.

Plaintiffs initially and generally claim that "both agencies failed to reasonably accommodate [McCollum's] disabilities – from steps as simple as providing a cup for drinking water." D.E. 297 at 2. However, when describing the accommodations they believe should have been provided in response to the ADA claims, Plaintiffs plainly state that UTCJ did not provide inmates with "basic commissary items," like a cup or a personal fan. *Id.* at 25, 42, 103.

It is undisputed that it was not a function of UTMB to provide either cups or personal fans. Because Plaintiffs only address whether it was TDCJ policy for inmates to not be provided a cup or fan, they abandon any claim that UTMB denied McCollum these accommodations and these arguments cannot form any basis for UTMB's alleged failure to accommodate McCollum.[29] *See id.*; *Smith*, 298 F.3d at 451.

---

[28] For example, Plaintiffs claim UTMB and TDCJ "together" made a decision not to give unit-level providers the option to assign inmates to climate-controlled housing. D.E. 297 at 103. This reference is to TDCJ and UTMB's decision in September 2011 to not provide an "air conditioned housing only" line to the HSM18. D.E. 297 at 26-27 (citing Ex. 245 at App. 6126, Sep. 24, 2011 Email from Moultrie, TDCJ017646 (showing earlier email from Dr. G. Adams); *see also* Ex. 271 at App. 6333 (285:9-18) (Dr. Glenda Adams Mar. 7, 2014 Expert Depo.); Ex. 283 at App. 6687 (69:5-8) (Livingston Oct. 2, 2015 Depo.); Ex. 281 at App. 6629 (124:20-13) (Dr. Linthicum Depo.)). While the decision to not put "air conditioned housing only" on the HSM18 clearly reflects UTMB's inability to meet the potential demands due to their restriction on the number of beds made available by TDCJ, these discussions are irrelevant to what was available to UTMB at the time of McCollum's incarceration and death. *See* D.E. 305-8 Ex. 245 at App. 6125-28 (email chain occurred after McCollum's death, on September 23-24, 2011).

[29] It was also not an *existing* service, program, or benefit for UTMB to provide offenders with cups or fans in July 2011. D.E. 285 at Part B.2.c.

### c.  It is undisputed that UTMB could not and did not assign McCollum's bunk at Hutchins.

Plaintiffs concede that TDCJ ultimately makes the housing assignments, including assigning an offender to a specific bunk, whether top or bottom, and did so in assigning McCollum to a bottom bunk on July 15, 2011 and also when it assigned him to a top bunk on July 18, 2011. D.E. 297 at 31-32; D.E. 285 at Part VI.B.2.b. Thus, Plaintiffs concede McCollum's actual bunk assignment was not a reasonable accommodation that UTMB could have provided.

### d.  UTMB did not exclude McCollum from receiving medical services at the Hutchins Unit.

UTMB contracted with TDCJ to provide medical, psychiatric, and dental care to offenders in the custody of TDCJ, including offenders such as McCollum, who were housed at the Hutchins Unit in 2011. D.E. 285-1 App. Tab 1; D.E. 285-1 App. Tab 8 at 130.  Plaintiffs essentially complain regarding the manner in which care was assessed and provided by UTMB – they criticize the intake physical policy and the perceived impact its timing had on providing inmates with bottom bunk restrictions or heat restrictions.[30]  The timing of the intake physical is irrelevant when considering the multiple opportunities McCollum had – and took advantage of – to access medical services during his incarceration at the Hutchins Unit.  Plaintiffs fail to present any evidence that McCollum was *excluded* by UTMB from the medical services, programs, or benefits, afforded to the rest of the offender population.

---

[30] Whether or not McCollum required restrictions upon his initial medical screening, or whether Plaintiffs disagree about the medical decisions made, are matters of medical judgment. The ADA, however, is not an appropriate cause of action to seek relief for quality of care and matters of medical judgment complaints.  *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice.").  In *Bryant*, the court found that plaintiff complained that he was not given a *special* accommodation of guardrails on his bed, but was not being treated worse because he was disabled. The court dismissed plaintiff's ADA claim because he complained about incompetent medical treatment of his disability, and not that he was excluded from a prison service, program, or activity. *Id.* (emphasis added).

*1) Bottom bunk restriction*

According to Plaintiffs, the fact that UTMB did not order a bottom bunk restriction for McCollum was a violation of the ADA. But in so arguing, Plaintiffs neglect to recognize that McCollum neither raised a concern nor requested an accommodation from UTMB staff, despite multiple visits to the medial department between intake at the Hutchins Unit on July 15, 2011 and July 22, 2011. *See* D.E. 285-2 App. Tab 31.

Despite Plaintiffs' claims to the contrary, UTMB never conceded McCollum *should have* had a bottom bunk simply because he was morbidly obese. *See* D.E. 297 at 31. Plaintiffs misconstrue the testimony of Dr. Glenda Adams when they claim UTMB makes an "immediate assessment for obvious housing needs" when inmates arrive at the Hutchins Unit, including whether a bottom bunk restriction is necessary. D.E. 297 at 31 (citing Ex. 272 at App. 6345:15-19, 6348:-6349:11: 6350:12-20 (Dr. Glenda Adams Nov. 19, 2013 30(b)(6) Depo.)). Dr. Adams actually stated that if an inmate has "an immediate medical need for housing other than general population, they will be removed to the appropriate unit." Reply App. Tab 3 at 6 (77: 15-19) (for instance, an inmate confined to a wheelchair would be removed to a wheelchair facility). "If there is a recognized need for accommodation, the offender is referred to the medical department… [b]efore he goes to his housing." *Id.* at 7-8 (82:5-11; 81:17-22). And in the case of McCollum, Dr. Adams explained that he "would have been [provided a bottom bunk restriction], *if he had requested it and brought it medical's attention.*" *Id.* at 12 (137:4-8) (emphasis added).[31] However, Plaintiffs offer no evidence that McCollum ever brought the issue to the attention of UTMB staff.

---

[31] This case is unlike *O'Neil v. Tex. Dep't of Crim. Justice*, cited by Plaintiffs in support of their argument that UTMB denied McCollum a reasonable accommodation to live in the prison. 804 F.Supp.2d 532 (N.D.Tex. – Amarillo 2011); D.E. 297 at 103-104. There, the plaintiff sued TDCJ and Texas Tech University Health Services Center (TTUHSC) for ADA and Rehabilitation Act violations for failure to accommodate the offender's asthma. *Id.* at 535. Plaintiffs claim that the court found TTUHSC had denied the offender "accommodations, *including restricted housing.*" D.E. 297 at 104 (emphasis added). But there was no discussion regarding *housing restrictions* or placing the asthmatic

Here, there was no obvious need for McCollum to require an immediate bottom bunk restriction, it was not an *existing* service or program to *automatically* assign morbidly obese offenders to bottom bunks in July 2011, and McCollum never made UTMB staff aware that his obesity substantially limited his ability to climb into an upper bunk.[32] *See Burton*, 798 F.3d at 230; D.E. 285 at Part VI.B.2.b.; D.E. 285-1 App. Tab 23 at 298 (Offenders were restricted to bottom bunks when their "medical condition create[ed] major difficulties with climbing into an upper bunk."); *see also* 29 C.F.R § 1630.2(j)(3) (obesity is not listed as having a predictable assessment). Plaintiffs conveniently disregard that McCollum held some personal responsibility for reporting his limitations so that UTMB would be aware that a bunk restriction may be required.

Plaintiffs repeatedly argue about services, programs, and activities they believe *should* have existed when McCollum was incarcerated at Hutchins, instead of presenting any evidence that McCollum was actually denied access to *existing* programs, services or activities provided by UTMB. They merely make conclusory allegations that McCollum was unable to "live" at the prison without accommodations. D.E. 297 at 105-06. However, as shown herein and in its Motion, UTMB did not deny – and could not have denied – McCollum meaningful access to an existing service, program or activity afforded to other general population inmates in not providing a bottom bunk restriction. *See* 42 U.S.C. § 12101(a)(7) (2009); *see* 28 C.F.R. § 35.130(b)(1)(ii) (2011); *see also Borum*, 2015 WL 327508, at *9.[33]

---

offender in climate-controlled housing. *See id.* The court also found that the defendants were not required to guess the offender's need for a reasonable accommodation. *Id.* at 538.

[32] Plaintiffs also cite *Borum v. Swisher Co.* to support their argument that UTMB denied McCollum reasonable accommodations. In *Borum*, the court found ample evidence to show that the detainee was denied prison food and medical services when jail officials testified they were aware of symptoms of alcohol withdrawal and admitted to ignoring medical needs and not providing medical care. 2015 WL 327508 at *1-2, 5-6 (previously provided at D.E. 285-2 App. Tab 49 (case not reported)). In this case, there is no evidence UTMB staff at Hutchins were aware McCollum was disabled as defined by the ADA, or that McCollum needed, and was denied, a reasonable accommodation to access existing services, programs, or activities provided by UTMB.

[33] *See* D.E. 285-2 App. Tab 49 (case not reported).

*2)  Intake physical*

Plaintiffs claim that "UTMB's failure to timely provide intake physicals – especially for people identified with disabilities – denied Mr. McCollum access to any benefit of the heat restrictions." D.E. 297 at 29 (citing Ex. 272 at App. 6379:8-17 (Dr. Glenda Adams Nov. 19, 2013 30(b)(6) Depo.)); *see* D.E. 297 at 100, 103. But Plaintiffs' citation to Dr. Adams' testimony merely confirms that no restrictions were assigned until the physical occurred.[34] Before the intake physical is complete, an offender will not be assigned to work and will, in large part, be focused on completing the classification process. *See* D.E. 285 at n. 3 (citing portions of D.E. 285-1 App. Tab 17).

In jumping to the conclusion that had McCollum received an earlier intake physical, he would not have died, Plaintiffs conveniently ignore several facts that operate to ensure offenders have access to medical care and requisite housing restrictions in advance of their intake physical. First, offenders may access the clinic, during intake or any other time, and request a provider evaluate their need for an accommodation. D.E. 285 at Part VI.B.2.d. If a need is identified before the intake physical, a medical provider can provide a "medical pass." Dr. Glenda Adams testified that "[i]f it was determined immediately a [] special accommodation was needed for housing" the offender "could have been given a pass, a medical pass." Reply App. Tab 3 at 7 (81:17-22). As discussed above, Dr. Adams further testified that an offender with a recognized need for accommodation will be referred to the medical department before going to housing. *Id.* at 8 (82:5-11). Dr. Adams then clarified that such need for an accommodation can be dealt with quickly, and would not require an offender to wait for the intake physical. *Id.* at 10 (84:2-7).

---

[34] ACA standard recommends an intake physical be completed within 14 days of arrival. Reply App. Tab 7 ("Health Appraisal," 4-4365). CMHCC policy provides for a more rigorous requirement than that required by the American Correctional Association.  D.E. 285-1 App. Tab 22 ("A comprehensive medical evaluation will be completed on all new incoming offenders within seven days of their arrival in the system.").

In McCollum's case, he received an initial medical screening at the Hutchins Unit upon arrival on July 15, 2011, and he visited the medical department again on several other occasions over the next several days. *See generally* D.E. 285-2 App. Tab 31. If the need for his accommodation was obvious or had he requested an accommodation, UTMB staff would have evaluated McCollum and provided a pass if they determined one was necessary.

Second, Plaintiffs mistakenly claim that McCollum was excluded from access to medical care because Hutchins did not provide 24-hour medical coverage. D.E. 297 at 25, 30. As explained in UTMB's Motion, the Hutchins Unit provided "24-hour medical coverage," as follows: (1) on-call medical staff; (2) nursing triage at the Crain Unit, the assigned HUB Unit for Hutchins; and (3) emergency transportation to a hospital twenty-four hours a day. D.E. 119 at ¶67; D.E. 285-2 App. Tab 46 (S. Parker was on-call from midnight to 8am on July 22, 2011); D.E. 285-2 App. Tab 47; D.E. 285-2 App. Tab 48; *see, e.g., Cardenas v. Lee Cty., Tex.*, 569 F. App'x 252, 255-6 (5th Cir. 2014) (rejecting claim that county had a policy of refusing inmates medical care where transportation by ambulance was available in emergencies).[35]

Neither the testimony of Dr. Adams nor McCollum's multiple visits to the medical department support Plaintiffs' argument that McCollum was denied access to medical treatment or any immediate heat restrictions available from UTMB in violation of the ADA.

## C.  UTMB did not intentionally discriminate against McCollum due to his alleged disability.

Plaintiffs claim UTMB intentionally discriminated against McCollum by denying him reasonable accommodations to live in the prison.[36] D.E. 297 at 103-04. They rightfully concede

---

[35] *See* D.E. 285-2 App. Tab 50 (unpublished opinion).

[36] Plaintiffs also make an argument that the ADA and Rehabilitation Act do not require a showing of animus or ill-will towards the disabled. D.E. 297 at 108 (citing *Alexander v. Choate*, 469 U.S. 287, 295 (1985)). UTMB did not discuss animus or ill-will in their summary judgment motion. It is clear from the record, regardless of animus or ill-

that the Fifth Circuit has not defined what exactly constitutes intentional discrimination, but they advocate that the standard should be deliberate indifference or a simple failure to accommodate.[37] Regardless of the standard applied, the evidence establishes that McCollum was not denied any reasonable accommodation to access the existing services, programs or activities provided by UTMB, and even if there is some evidence to suggest a denial, there is no evidence UTMB discriminated against McCollum in not providing the accommodation. *See supra* Part II.B.; *see also Choate*, 469 U.S. at 295, 300-01.[38]

In *Perez*, a case cited by Plaintiffs, the Fifth Circuit held that ignoring "clear indications" that a person has a disability requiring an accommodation will establish intentional discrimination. *Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 185 (5th Cir. 2015).[39] Here, there is no evidence to suggest that UTMB had "clear indications" that McCollum had a disability that would have required an accommodation. As explained thoroughly above and in UTMB's Motion, after McCollum arrived at the Hutchins Unit, he never voiced any concerns to medical staff regarding his inability to access medical services, or other prison amenities. *See supra* Part II.A. McCollum visited the medical department on several occasions, negating any "clear indication" that any alleged disability somehow prevented him from walking to the medical department or receiving medical care.

---

will that UTMB did not intentionally discriminate against McCollum because he was not denied a reasonable accommodation to access the services, programs or activities at Hutchins.

[37] Plaintiffs claim that Title III cases require only proof of a failure to accommodate. D.E. 297 at 109-111. Their claim oversimplifies the cases they cite. In *Perez*, for example, the court recognized that Title I cases first require proof that a qualified individual either requested a reasonable accommodation and did not receive it, or that the need for an accommodation was obvious, and one was not provided. *See, e.g., Perez*, 624 F. App'x at 185-86 (finding evidence that plaintiffs made repeated requests for an accommodation) (Reply App. Tab 12 (unpublished opinion)). Likewise, in Title I cases, a plaintiff bears the burden of proving that they can perform the job, with a reasonable accommodation, and that the employer fails to provide a reasonable accommodation for "known" limitations due to a disability. *See, e.g, Griffin*, 661 F.3d at 224-25.

[38] *Choate*, cited by Plaintiffs, analyzed the necessary discrimination showing required under RA, and concluded that a policy neutral on its face did not deny meaningful access to qualified individuals. 469 U.S. at 301. Similarly, the CMHCC policies do not deny meaningful access to qualified individuals or have any exclusionary effect on offenders.

[39] Reply App. Tab 12 (unpublished opinion).

In another case cited by Plaintiffs, they claim that the court found TTUHSC denied the offender "accommodations, *including restricted housing*." D.E. 297 at 103-104 (citing *O'Neil*, 804 F.Supp.2d at 532) (emphasis added). But the court did not make that finding. Rather, it emphasized that the defendants were not required to guess the offender's need for a reasonable accommodation and required proof that the defendants had actual knowledge of the offender's disability and limitations and still took no action. *Id.* at 538. Unlike McCollum, the offender there had complained about his medication to medical staff, demonstrating TTUHSC had some knowledge of his need for an accommodation.[40] *Id.*

Plaintiffs cannot establish that UTMB knew of McCollum's need for an accommodation and disregarded that need. *See supra* Part II.B.2.; *see also McCoy v. Tex. Dep't of Crim. Justice*, C.A. No. C-05-370, 2006 WL 2331055, at *7 (S.D. Tex. Aug. 9, 2006) (internal citations omitted).[41] In fact, the summary judgment evidence clearly establishes that McCollum was never denied UTMB services, programs, or activities *by reason of* his alleged disability; therefore, Plaintiffs' claims against UTMB should be dismissed with prejudice.

### D. UTMB's sovereign immunity is not abrogated.

Plaintiffs failed to respond to UTMB's affirmative defense that sovereign immunity should not be abrogated pursuant to Title II of the ADA; therefore, UTMB's sovereign immunity remains intact. Plaintiffs assert only that TDCJ's immunity was abrogated by the ADA because inmates have a constitutional right to adequate protection from extreme temperatures. D.E. 297 at 114 (emphasis added). They also claim that the *individual TDCJ Defendants'* deliberate

---

[40] Notably, in *O'Neil*, the jury found in favor of TTUHSC. Judgment, *O'Neil v. Tex. Dep't of Crim. Justice, et al.*, No. 2:10-CV-3-J (N.D.Tex. – Amarillo Jun. 10, 2011), ECF No. 237 ("The jury having returned the verdict for Defendant Texas Tech Health Sciences Center…"); *see Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829-30 (5th Cir. 1998) (citing *Lib. Mut. Ins. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) (holding "a court may take judicial notice of a 'document filed in another court…to establish the fact of such litigation and related filings'").
[41] *See* D.E. 285-2 App. Tab 51 (case not reported).

indifference to McCollum's medical needs supports abrogating immunity.[42] *Id.* at 114-15. Plaintiffs wholly failed to acknowledge UTMB's sovereign immunity defense, and did not sue any *individual* UTMB defendants or allege UTMB violated McCollum's Eighth Amendment rights to support abrogation on those grounds. *See* D.E. 285 at Part VI.C. Plaintiffs cannot establish the required intentional discrimination and/or deliberate indifference. UTMB is, therefore, entitled to summary judgment, and the claims should be dismissed with prejudice.

## III.  CONCLUSION

UTMB asks the Court to grant summary judgment in its favor on the following grounds:

- There are no genuine issues of material fact to preclude summary judgment:

    o Plaintiffs cannot establish McCollum was not a qualified individual under the ADA based on his obesity or hypertension;
    o UTMB did not exclude McCollum from access to medical services;
    o UTMB did not intentionally discriminate against McCollum by reason of any alleged disability; and
    o UTMB's sovereign immunity is not abrogated.

- It is undisputed that some proposed accommodations cannot apply to UTMB:[43]

    o Climate controlled housing is a function of TDCJ;
    o Cups and personal fans are not a function of UTMB; and
    o Housing assignments are made by TDCJ.

- Claims that are not properly before the Court cannot defeat summary judgment:

    o Plaintiffs failed to plead the alleged disability of depression or that it substantially limited McCollum's major life activities;
    o Plaintiffs abandoned their arguments alleging substantial limitations to McCollum's respiratory, digestive, and nervous systems;

---

[42] TDCJ moved for summary judgment asserting that no high-level TDCJ official with the ability to remedy alleged violations had the requisite knowledge for Plaintiffs to demonstrate agency *respondeat superior* liability. D.E. 288 at 114. In their response, Plaintiffs attempt to imply that UTMB's decision to not move for summary judgment on this point lends support to their argument that TDCJ is not entitled to summary judgment on the theory of *respondeat superior*. D.E. 297 at 115. Plaintiff's attempt to invoke UTMB's silence in support of their argument is inappropriate; UTMB does not concede that *respondeat superior* has been properly applied to UTMB, and makes no argument on its applicability to TDCJ.

[43] UTMB does not respond to Plaintiff's arguments regarding Eighth Amendment claims and punitive damages as they are brought against TDCJ defendants only. D.E. 297 at 40-91, 118; D.E. 119 at 144-47, 156-59.

o   Plaintiffs abandoned any argument that McCollum had a record of an impairment or was regarding by UTMB as having an impairment; and
o   Plaintiffs failed to plead that UTMB denied McCollum wellness checks or offender heat training.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

**BRANTLEY STARR**
Deputy First Assistant Attorney General

**JAMES E. DAVIS**
Deputy Attorney General for Civil Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division


/s/J. Lee Haney
**J. LEE HANEY**
Attorney-in-Charge
Assistant Attorney General
Texas Bar No. 00784203
Federal I.D. No. 18544
lee.haney@oag.texas.gov

**SHANNA ELIZABETH MOLINARE**
Assistant Attorney General
Texas Bar No. 24041506
Federal I.D. No. 38632

**JENNIFER DANIEL**
Assistant Attorney General
Texas Bar No. 24090063
Federal I.D. No. 2451063

28

**HEATHER RHEA**
Assistant Attorney General
Texas Bar No. 24085420
Federal I.D. No. 2399979

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080
(512) 936-2109 (Fax)


**ALVAREZ STAUFFER BREMER PLLC**

**GRAIG J. ALVAREZ**
State Bar No. 24001647
Federal I.D. No. 22596

**KARA STAUFFER**
State Bar No. 24056373
Federal I.D. No. 685342

815 Walker St., Ste. 1450
Houston, Texas 77002
(713) 351-0300
(713) 351-0320 (Fax)

**ATTORNEYS FOR DEFENDANT
THE UNIVERSITY OF TEXAS
MEDICAL BRANCH**

## NOTICE OF ELECTRONIC FILING

I, J. LEE HANEY, Assistant Attorney General of Texas, certify that I have electronically submitted for filing the University of Texas Medical Branch's Reply Brief in Support of its Motion for Summary Judgment, on October 19, 2016, in the Southern District of Texas, Houston Division.

/s/ J. Lee Haney
**J. LEE HANEY**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, J. LEE HANEY, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing has been served on all counsel of record via electronic case filing mail on October 19, 2016, as authorized by Fed. R. Civ. P. 5(b)(2) and in accordance with the electronic case filing procedures of the United States District Court for the Southern District of Texas.

/s/ J. Lee Haney
**J. LEE HANEY**
Assistant Attorney General