UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **STEPHEN MCCOLLUM**, *et al.*, | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **CIVIL NO. 4:14-CV-3253** |
| | § | |
| | § | |
| **BRAD LIVINGSTON**, *et al.*, | § | |
| *Defendants*. | § | |
| | § | |

# Exhibit 2

```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                        DALLAS DIVISION
```

..................................:........................
                                  :
STEPHEN McCOLLUM, STEPHANIE       :
KINGREY, and SANDRA McCOLLUM,     :
individually and as heirs         :
at law in the Estate of           :
LARRY GENE McCOLLUM,              :
          Plaintiffs,             :
                                  :   CIVIL ACTION NO.
VS.                               :
                                  :     3:12-cv-02037
BRAD LIVINGSTON, JEFF PRINGLE,    :
RICHARD CLARK, KAREN TATE,        :
SANDREA SANDERS, ROBERT EASON,    :
THE UNIVERSITY OF TEXAS           :
MEDICAL BRANCH and the TEXAS      :
DEPARTMENT OF CRIMINAL JUSTICE,   :
          Defendants.             :
                                  :
..................................:........................

        ORAL AND VIDEOTAPED DEPOSITION OF OWEN MURRAY, M.D.

                       NOVEMBER 20, 2013


............................................................
     ORAL AND VIDEOTAPED DEPOSITION OF OWEN MURRAY,
M.D., produced as a witness at the instance of the
Plaintiffs, and duly sworn, was taken in the
above-styled and numbered cause on Wednesday, November
20, 2013, from 9:07 a.m. to 12:58 p.m., before Mary C.
Dopico, Certified Shorthand Reporter No. 463 and Notary
Public in and for the State of Texas, reported by
machine shorthand and audio/video recording at the
offices of Rebecca Sealy Hospital, 404 8th Street, Room,
4.204, Galveston, Texas, pursuant to Notice and the
Federal Rules of Civil Procedure and the provisions
stated on the record or attached hereto.

1  intensive analysis as to how much impact a person's
2  disease has on them; is that fair?
3      A.   You're talking about depression?
4      Q.   Well, we --  Sure.  Depression.
5      A.   Again, I mean, it -- from the history, the
6  nature of the symptoms --
7      Q.   Sure.
8      A.   -- the nature of the limitations, if there are
9  any, I mean, all of that would go into defining where
10 the disease lies on the -- on the continuum.
11     Q.   Right.  Okay.  All right.
12              Do you consider morbid obesity a medical
13 condition?
14     A.   I would --  I would consider it a medical
15 condition, yes.
16     Q.   Is it --  Is it serious and does it --  Strike
17 that.
18              Do you consider it to be a serious
19 medical condition that requires treatment?
20              MS. MOLINARE:  Objection, vague.
21     A.   I think it's a condition that requires
22 management.
23     Q.   (By Mr. Edwards)  Okay.
24     A.   And, again, from that perspective, you know,
25 educating the patients in terms of diet, exercise,

WRIGHT WATSON & ASSOCIATES
(800) 375-4363   3307 Northland Dr., Ste. 185  Austin, TX 78731-4946   (512) 474-4363
6435e48d-47ea-4ab9-b843-01a742fd09bd

APPENDIX 011

1  etcetera, unless we're going to get into bariatric
2  surgery and other things, I mean, it really becomes a
3  patient-dependent process.
4      Q.   Certainly you would agree that obesity can
5  limit one's physical activity?
6      A.   I would agree with that.
7      Q.   Certainly you would agree that morbid obesity
8  can affect people's ability to breathe?
9           MS. MOLINARE:  Objection, speculation;
10 objection, foundation; objection, vague.
11     A.   Again, not knowing the specific circumstances,
12 but morbid obesity can have -- can complicate the
13 respiratory process.
14     Q.   (By Mr. Edwards)  It can affect the ability to
15 walk or run; right?
16     A.   Again, not knowing the specifics, yes.
17     Q.   It can affect the ability to climb; correct?
18     A.   Stairs, like --  Or not like --  You're
19 talking stairs, not mountains or climb any --
20     Q.   Let's start with stairs.
21     A.   Yes, it can.  It can affect someone's ability
22 to -- to climb.
23     Q.   It can affect someone's ability to climb into
24 a top bunk; correct?
25     A.   Again, not knowing the circumstances

```
 1  specifically, that could possibly occur.
 2       Q.   Okay.  And morbidly obese people are at a
 3  higher risk to develop heat illness if they're exposed
 4  to higher temperatures; correct?
 5            MS. MOLINARE:  Objection, vague;
 6  objection, foundation; objection, speculation.
 7       A.   Again, not knowing the specifics, morbid
 8  obesity can be a risk factor for heat-related illness.
 9       Q.   (By Mr. Edwards)  And that risk factor is
10  something that UTMB should take into account when making
11  housing recommendations to TDCJ; correct?
12            MS. MOLINARE:  Objection, speculation.
13       A.   In making housing recommendations to TDCJ?
14       Q.   (By Mr. Edwards)  Uh-huh.
15       A.   It would be --  A patient's morbid obesity
16  would be part of our medical assessment, and part of and
17  play into a decision to -- about potentially that
18  patient requiring special housing.
19       Q.   Do you practice medicine currently and treat
20  patients?
21       A.   No.  Not --  Not on a day-to-day basis.
22       Q.   Have you ever treated anyone for heat -- for
23  heatstroke?
24       A.   Not --  Not to my recollection.  It is --  It
25  is possible that I could have in Illinois; but -- as I
```

**WRIGHT WATSON & ASSOCIATES**
(800) 375-4363   3307 Northland Dr., Ste. 185  Austin, TX 78731-4946   (512) 474-4363
6435e48d-47ea-4ab9-b843-01a742fd09bd

**APPENDIX 013**