UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **STEPHEN MCCOLLUM**, *et al.*, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | **CIVIL NO. 4:14-CV-3253** |
| | § | |
| | § | |
| **BRAD LIVINGSTON**, *et al.*, | § | |
| *Defendants.* | § | |

**DEFENDANTS UNIVERSITY OF TEXAS MEDICAL BRANCH AND TEXAS DEPARTMENT OF CRIMINAL JUSTICE'S OPPOSED MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL REGARDING PLAINTIFFS' ADA AND RA CLAIMS**

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JUSTIN BORUM, and CHELSEA RUSHING, individually and as heirs-at-law to the ESTATE OF TERRY BORUM, and GRADY BORUM § § § § § | § § § § § § § § § § § § | |
| PLAINTIFFS | | |
| | | CAUSE OF ACTION NO. |
| v. | | 2:14-cv-127 |
| SWISHER COUNTY | | JURY DEMANDED |
| DEFENDANTS | | |

**PLAINTIFFS' MOTION FOR COSTS, ATTORNEYS' FEES, AND LITIGATION EXPENSES**

Pursuant to Local Rule 7.1 and 54.1, Plaintiffs file this motion for costs, attorneys' fees, and litigation expenses.

As explained more fully in Plaintiffs' contemporaneously filed Brief, Plaintiffs are the prevailing party in this litigation, and are entitled to costs, attorneys' fees, and litigation expenses pursuant to 42 U.S.C. § 1988, and 42 U.S.C. § 12205. Plaintiffs' Appendix contains support for their motion for attorneys' fees, costs, and litigation expenses.

Thus, the Court should grant Plaintiffs' motion for attorneys' fees, costs, and litigation expenses, and award the sum requested in the brief.

Respectfully submitted,

**EDWARDS LAW**
The Haehnel Building
1101 East 11th Street
Austin, TX 78702
Tel.   512-623-7727
Fax.   512-623-7729

By   /s/ Jeff Edwards
    JEFF EDWARDS
    State Bar No. 24014406
    jeff@edwards-law.com
    SCOTT MEDLOCK
    State Bar No. 24044783
    scott@edwards-law.com
    SEAN FLAMMER
    State Bar No. 24059754
    sean@edwards-law.com

**LOVELL, LOVELL, NEWSOM & ISERN, L.L.P.**
112 W. 8th Ave. #1000
Amarillo, TX 79101
Tel.   (806) 373-1515
Fax.   (806) 379-7176

    TIM NEWSOM
    State Bar No. 00784677
    KEVIN A. ISERN
    State Bar No. 10432900

**ATTORNEYS FOR PLAINTIFF**

CERTIFICATE OF SERVICE

    By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Northern District of Texas.

## CERTIFICATE OF CONFERENCE

By my signature above, I certify that I attempted, in good faith, to resolve the issue of attorneys' fees and costs prior to filing this motion. Defense counsel, Mark White, initially reached out shortly after the verdict was entered to attempt to resolve these issues. I was later told that he lacked the requisite authority from his client's insurer to negotiate as to rates or hours. If these disputes can be resolved without the court's intervention, I will promptly notify the court of any agreement between the parties.

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| JUSTIN BORUM, and CHELSEA RUSHING, individually and as heirs-at-law to the ESTATE OF TERRY BORUM, and GRADY BORUM § § § § § <br> PLAINTIFFS § § <br> v. § § <br> SWISHER COUNTY § § <br> DEFENDANTS § | CAUSE OF ACTION NO. 2:14-cv-127 <br><br> JURY DEMANDED |

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR COSTS, ATTORNEYS' FEES, AND LITIGATION EXPENSES**

Pursuant to 42 U.S.C. § 1988, and 42 U.S.C. § 12205, Plaintiffs move this Court for an award of reasonable and necessary attorneys' fees, litigation expenses, and costs incurred in this case. In support of this motion, Plaintiffs submit the following:

CERTIFICATE OF CONFERENCE

Plaintiff's attorneys have conferred with Defendants counsel in a good-faith attempt to resolve all disputed issues regarding this motion. The specific disputes between the parties are the number of hours necessary and reasonable for the result, and the rates claimed.

### SUMMARY OF REQUESTED FEES, COSTS, AND LITIGATION EXPENSES

**Attorneys' Fees**

| Attorney | Hours | Rate | Lodestar Amount |
|---|---|---|---|
| Jeff Edwards | 422.4 | $450/hour | $190,080.00 |
| Scott Medlock | 677.8 | $350/hour | $240,750.00 |
| David James | 3.8 | $300/hour | $1,140.00 |
| Kevin Isern | 31.5 | $300/hour | $9,450.00 |
| Courtney Miller | 12.8 | $200/hour | $2,560.00 |
| Joe Lovell | 10.05 | $375/hour | $3,768.75 |
| Deborah Reeves | 0.1 | $250/hour | $25.00 |
| | | Total | $447,773.75 |

**Legal Assistants**

| Legal Assistant | Hours | Rate | Lodestar Amount |
|---|---|---|---|
| Lindsey Knapton | 66.5 | $100.00 | $6,650.00 |
| Shannon Rovzar | 101.35 | $75.00 | $7,601.25 |
| Gabby Garcia | 5.6 | $100.00 | $560.00 |
| Sabrina Dubberly | 27.05 | $70.00 | $1,893.50 |
| Terri Harrison | 1 | $70.00 | $70.00 |
| Melissa Smith | 0.5 | $70.00 | $35.00 |
| Nita Dyslin | 1 | $60.00 | $60.00 |
| | | Total | $16,869.75 |

**Expenses**

| Edwards Law | $75,905.82 |
|---|---|
| Lovell, Lovell, Newsom, & Isern | $1,310.54 |
| Total | $77,216.36 |

Due to the extraordinary result in this case – a jury verdict of $1,000,000 – Plaintiffs further request a multiplier of 1.5 on the amount of attorneys' fees only, for a total fee attorneys' fee award of $671,660.63. The total award of attorneys' fees, legal assistant fees, court costs, and litigation expenses will be:

| Attorneys' Fees | $671,660.63 |
|---|---|
| Legal Assistant Fees | $16,909.75 |
| Court costs, litigation expenses | $77,216.36 |
| Total | $765,786.74 |

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs' deceased, Terry Borum, died on February 3, 2013 after collapsing due to alcohol withdrawal symptoms at the Swisher County Jail. After attempting to hire multiple attorneys in the Amarillo area (as well as state and nationwide), Plaintiffs retained Edwards Law of Austin, Texas to investigate and prosecute their claims in November 2013. *See* Ex. 8, Declaration of Justin Borum; Ex. 6, Declaration of Jeff Edwards.[1]

Plaintiffs filed suit against Swisher County pursuant to 42 U.S.C. § 1983, and the Americans with Disabilities Act on May 28, 2014. Doc. 1.

The parties conducted extensive discovery. Four essential witnesses – Sheriff Cody Grubb, Jailer Jason Irwin, Jailer Cassie Pointer, and Jailer Wesley Trevino[2] – had moved out of the Amarillo area, and had to be deposed near their homes (Ruidoso, New Mexico; Denver, Colorado; Lawton, Oklahoma; and Corpus Christi, Texas, respectively). Likewise, eleven other depositions[3] were taken in Amarillo (and Defendant's expert was deposed in Austin). *See* Ex. 6, Declaration of Jeff Edwards.

---

[1] Pursuant to the Local Rules, Edwards Law retained Lovell, Lovell, Newsom & Isern (LLNI) as local counsel after the litigation was filed (and after asking leave to be excused from the local counsel requirement, *see* Docs. 12, 13). LLNI would not have accepted the case in any role other than local counsel. *See* Ex. 9, Declaration of Joe Lovell.

[2] Defendant noticed Mr. Trevino's deposition in Corpus Christi, but he did not appear for his deposition. Nonetheless, counsel for both parties flew to Corpus Christi to attempt to depose him, and had to spend time preparing for his deposition.

[3] The depositions taken in Amarillo were Corey Hoelting, Corey Hoelting (as Rule 30(b)(6) representative of Swisher County), Harold Keeter, Harold Keeter (as Rule 30(b)(6) representative of Swisher County), Deborah Lbsraoui, Deborah Lbsraoui (as Rule 30(b)(6) representative of Swisher County), Martin Sanchez, Justin Borum, Grady Borum, Chelsea Rushing, and Cornelia Franklin.

3

Defendant Swisher County twice tried to dismiss Plaintiffs' claims – first at the Rule 12(b)(6) stage (Doc. 6), then at summary judgment (Doc. 27). Both motions were ultimately denied, but only after Plaintiffs were forced to fully respond. *See* Docs. 10 and 17; Docs. 30 and 33.

Due to Defendants' insurance adjuster not appearing at the initial mediation on December 9, 2015, a second mediation had to be scheduled (on a Saturday) in Amarillo in January 2015.[4]

Pursuant to the local rules and the district judge's standing order, counsel were required to appear in Amarillo for docket call prior to trial. Plaintiffs appeared three times, only to have the trial postponed. *See* Doc. 79 (April 13, 2015), Doc. 86 (April 20, 2015), Doc. 104 (June 1, 2015).[5] Plaintiffs diligently prepared for trial before each setting.

The case was finally called for trial on October 19, 2015, and tried to a verdict on October 23, 2015. The jury found for the Plaintiffs on their § 1983 and ADA claims, and awarded Plaintiffs a total of $1,000,000.

Plaintiffs made repeated, reasonable offers to settle the case for amounts less than the ultimate jury verdict, and agreed to the mediator's proposal. Defendants declined to accept the proposal, which was significantly below the jury award, necessitating much

---

[4] To their credit, Defense counsel paid Plaintiffs' travel expenses and half of the initial mediation fee.

[5] At the April 13 setting, a civil case from the prior month was called and took precedence. The night before the April 20 setting, Plaintiff Grady Borum suffered a heart attack, and was hospitalized. The case was continued. At the June 2 setting, a criminal case was called and took precedence. The parties then consented to trial before the magistrate, and the case was specially set for trial on October 19.

4

additional work (including preparing for each trial setting). Plaintiffs made offers below the jury verdict at mediation in January 2015. Ex. 6, Declaration of Jeff Edwards. Plaintiffs offered to collectively settle for $850,000 in May 2015, including attorneys' fees and expenses. *See* Ex. 11, Plaintiffs' May 2015 *Stowers* Demands. Defendants made no counter offer. The week before trial, Plaintiffs made an offer of $425,000, including attorneys' fees and expenses. Defendant responded by offering $100,000[6] – less than one-tenth the verdict – and gave Plaintiffs less than one hour to accept. *See* Ex. 6, Declaration of Jeff Edwards.

Plaintiffs offers documentary evidence of their attorneys' fees, litigation expenses, and costs. Plaintiffs offer a detailed breakdown of all the hours worked and activities done by Plaintiffs' counsel (broken down by date and by staff member), itemized lists of court costs and litigation expenses, and declarations from the lawyers who primarily worked on the case. *See* Exhibit 1-2, 6 and 10.

## II. ARGUMENT AND AUTHORITIES

Plaintiff is entitled to all necessary and reasonable attorneys' fees, litigation expenses, and costs as the prevailing party. "In any action or proceeding to enforce provisions of [42 U.S.C. § 1983] the court … may allow the prevailing party … a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. Likewise, the ADA provides a prevailing party may recover "a reasonable attorney's fee, litigation expenses, and costs." 42 U.S.C. § 12205. "[T]he judicial gloss, on § 1988, and its legislative history, have converted the statute's 'may' into a 'must.'" *Sanchez v. City of Austin*, 774 F.3d 873, 880 (5th Cir. 2014) (reversing district court's denial of attorneys' fees). "The

---

[6] Defendants knew, at this time, that Plaintiffs' expenses alone exceeded $60,000.

5

prevailing party [in a § 1983 case] should ordinarily recover an attorney's fee unless special circumstances would render an award unjust." *Blanchard v. Bergeron*, 489 U.S. 87, 89 n. 1 (1988) (citing *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968)). *See also Hopwood v. Texas*, 236 F.3d 256, 278 (5th Cir. 2000) *cert. denied*, 533 U.S. 929 (2001).

### A. The Attorneys' Fees Claimed Here are Necessary and Reasonable

Plaintiffs request all reasonable and necessary fees, litigation expenses, and costs expended with regard to this case in conjunction with the claims on which they prevailed, and interest that shall accrue, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205. Detailed support for such fees is included in the affidavits and detailed time records attached as Exhibit 1.

The amount of attorneys' fees a prevailing party is entitled to recover is determined by calculating "the reasonable number of hours expended on the litigation multiplied by a reasonable hourly rate." *Blanchard*, 489 U.S. at 89. In order to find attorneys' fees, courts calculate a "lodestar" by multiplying the reasonable number of hours spent on the case by the reasonable hourly rates. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

1) *Plaintiff's Attorneys' Fees are Reasonable*

A reasonable hourly rate is generally based on the "prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895 (1984). When determining whether hourly rates are reasonable, courts use the "prevailing market rate in the relevant community for similar services by lawyers of comparable skill, experience, and reputation." *Republic Ins. Co. v. Stafford,* 2005 U.S. Dist. LEXIS 17634, *1 (N.D. Tex.

6

Aug. 22, 2005) (citing *League of United Latin American Citizens v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1234 (5th Cir. 1997)).

The rates claimed for Jeff Edwards and Scott Medlock were approved by the Northern District of Texas in another civil rights case, *McCollum v. Livingston*, No. 3:12-cv-2037-L-BK, Doc. 137, at 9 (N.D. Tex. Feb. 2, 2014) (attached as Ex. 12). The Northern District of Texas specifically cited Edwards and Medlock's "extensive experience in the area of civil rights litigation and the Court's knowledge of fees charged by attorneys in the local community with reasonably comparable skill, experience, and reputation." *Id*.

Though Amarillo, Austin, and Dallas are different legal markets, because Plaintiffs had to go outside the Amarillo market to secure counsel, they are entitled to Austin or Dallas-area rates. *See* Ex. 8, Declaration of Justin Borum. "[W]here out-of-district counsel are proven to be necessary to secure adequate representation for a civil rights plaintiff, the rates charged by that firm are the starting point for the lodestar calculation." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 383 (5th Cir. 2014) (using rates of San Francisco Bay Area attorneys' ($650/hour) as starting point for lodestar calculation for case brought in Lufkin, Texas). *See also Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir.1983) (Breyer, J.) (affirming district court award of attorneys' fees). As Justice Breyer noted, "[A]n out-of-town specialist may be able to command a somewhat higher price for his talents, both because of his specialty and because he is likely to be from a larger city, where rates are higher." *Id*. at 40. Though Justin Borum spoke with many attorneys in Amarillo and the surrounding areas, none would take on a civil rights case on behalf of a prisoner. *See* Ex. 8, Declaration of Justin Borum. Likewise,

7

experienced litigations in the Amarillo market testify they would not have taken the case, or know anyone within the Panhandle area who would. *See* Ex. 5, Declaration of Jeff Blackburn; Ex. 9, Declaration of Joe Lovell. "[I]f the client needs to go to a different city to find that specialist, he will expect to pay the rate prevailing in that city." *Maceira*, 698 F.2d at 40.

Legal assistant fees are also recoverable under § 1988 and the ADA. The affidavits outline the work done by legal assistants in this case and show their work was in place of what an attorney would otherwise do. Plaintiffs seek between $100 and $70 per hour for legal assistants. Federal courts in Texas have recently approved rates as high as $110/hour for legal assistants. *Szijjarto v. McCarrell*, 2014 WL 555122, *5 (S.D. Tex. Feb. 12, 2014). Fifteen years ago, the Fifth Circuit found paralegal rates of $75-$125 per hour reasonable. *See League of United Latin American Citizens,* 119 F.3d at 1235.

*2) Substantial Time and Labor were Required in this Litigation*

As outlined above, and as this Court is well aware, describing the amount of time and labor required in this litigation as only "substantial" might minimize how much effort this litigation required. Plaintiffs' attorneys spent more than 1,100 hours working on their behalf. This is a reasonable amount of hours billed for a case that required 15 depositions (in six cities), a motion to dismiss, a motion for summary judgment, and four separate trial settings before a four-day long jury trial.

In part, Plaintiffs' counsel's extensive experience in civil rights litigation allowed them to draft briefs (especially the motion to dismiss and motion for summary judgment responses) in far fewer hours than attorneys with less civil rights experience. *See* Ex. 1, p.

8

8 (Scott Medlock attorneys' fees – 9 hours spent responding to motion for summary judgment).

A detailed accounting of the hours spent working on Plaintiffs' successful claims is attached as Exhibit 1.[7]

Plaintiffs have also not billed for numerous hours spent reading and responding to email, short phone calls, informal discussions about the case, and time spent travelling (while not working on the case). Ex. 6, Declaration of Jeff Edwards; Ex. 3, Declaration of Scott Medlock.

<u>B. The Exceptional Result in this Case Justifies a Fee Multiplier</u>

Plaintiffs request the Court grant a fee multiplier of 1.5 given the jury's verdict of $1,000,000. "[W]here exceptional results are obtained … an increase in fee is justifiable." *Maciera*, 698 F.2d at 41 (Breyer, J.). "[A] party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified." *Perdue v. Kenny A.*, 559 U.S. 542, 555 (2010) (Alito, J.). A fee enhancement cannot be justified based on a factor that is contained in the lodestar calculation. *Id*. Though there is a "strong presumption" that the lodestar figure alone represents a "reasonable fee," "that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id*.

"[S]uperior results are relevant only to the extent it can be shown that they are the result of superior attorney performance," and not due to factors like "inferior

---

[7] Though Plaintiffs abandoned their Rehabilitation Act claims at trial, the Rehabilitation Act claims in this case were wholly duplicative of the ADA claims. *See* Doc. 33, Order Denying Summary Judgment Motion, p. 6.

9

performance from defense counsel," "an unexpectedly sympathetic jury," "unexpectedly favorable rulings by the court," or "simple luck." *Perdue*, 559 U.S. at 555. The verdict in this case is the result of such "superior attorney performance." Defense counsel was a well-respected local attorney, working for the largest firm in Amarillo – his performance was far from "inferior." *See* Ex. 6, Declaration of Jeff Edwards; Ex. 9, Declaration of Joe Lovell. Likewise, the verdict was not due to "unexpectedly favorable rulings" – in fact, many key rulings at trial went again Plaintiffs.[8] And the jury was not "unexpectedly sympathetic" – it was a fair cross section of a very conservative community that is generally skeptical of personal injury plaintiffs.[9] *See* Ex. 13, Declaration of Kevin Isern; Ex. 9, Declaration of Joe Lovell; Ex. 7, Declaration of Jim Harrington; Ex. 5, Declaration of Jeff Blackburn.

---

[8] For example, the Court submitted the "episodic acts" jury instruction rather than the "conditions of confinement" question to the jury, and Plaintiffs were not allowed to call a critical witness who was located at the eve of trial (Wesley Trevino) during their case in chief.

[9] The counties that make up the Amarillo division, for example, voted overwhelmingly to limit awards in medical malpractice cases. *See* Office of the Secretary of State, 2003 Constitutional Amendment: Prop. 12, Suits Against Doctors and Providers, *available at* http://elections.sos.state.tx.us/elchist103_race2988.htm (last visited Nov. 2, 2015) (Armstrong County voting 61% in favor; Briscoe County voting 54% in favor; Carson County voting 63% in favor; Castro County voting 64% in favor; Childress County voting 69% in favor; Collingsworth County voting 62% in favor; Dallam County voting 72% in favor; Deaf Smith County voting 67% in favor; Donley County voting 62% in favor; Gray County voting 64% in favor; Hall County voting 57% in favor; Hunsford County voting 76% in favor; Hartley County voting 70% in favor; Hemphill County voting 53% in favor; Hutchinson County voting 59% in favor; Lipscomb County voting 69% in favor; Moore County voting 62% in favor; Ochiltree County voting 75% in favor; Oldham County voting 70% in favor; Parmer County voting 81% in favor; Potter County voting 57% in favor; Randall County voting 66% in favor; Roberts County voting 54% in favor; Sherman County voting 74% in favor; Swisher County voting 55% in favor; and Wheeler County voting 66% in favor).

Factors justifying an increased fee award include factors "not adequately measur[ing] the attorney's true market rate," "an extraordinary outlay of expenses and the litigation is exceptionally protracted," or an "exceptional delay in payment of fees." *Perdue*, 559 U.S. at 555-556. These factors also favor granting a multiplier. This case became very expensive to try – Plaintiffs retained two highly-qualified, out-of-town experts (Florida's Ron McAndrew, and California's Dr. Joseph Goldenson, M.D.). Warden McAndrew flew to Amarillo three times for the "false starts" in this trial, creating substantial airfares, hotel expenses, and expert witness fees.[10] Likewise, Dr. Goldenson was required to book (and cancel) airfares at the last minute. Plaintiffs paid their audio-visual technician, Brad Snyder, and his team to prepare for trial four times, and attend docket call on several occasions.[11] The significant presentation of surveillance video and video depositions at trial required Mr. Snyder's expertise. Of course, these significant expenses do not even account for the significant travel costs Plaintiffs attorneys' incurred (both to Amarillo and the various places to which witnesses had relocated). *See* Ex. 6, Declaration of Jeff Edwards.

A party's entitlement to a multiplier is determined using the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974): (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee;

---

[10] As discussed below, Plaintiffs negotiated a discounted rate with Warden McAndrew, as he did not want to charge them unnecessarily for his time. His last-minute airfares, however, were substantial and could not be negotiated downward.

[11] Because Mr. Snyder had to cancel other jobs to attend trial with Plaintiffs, he also could not refund his entire fee.

11

(6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. These factors weigh heavily in Plaintiff's favor.

*1) The Questions Presented by this Case were Novel and Difficult*

Though the facts of the case were not overly complex, Plaintiffs' claims involved complex issues of constitutional and disability law. Developing Plaintiffs' theories required knowledge of a large body of Fifth Circuit and Supreme Court decisions stretching over several decades.

Plaintiff's ADA wrongful death claim is believed to be the first such case successfully tried to a verdict. *See* Ex. 7, Declaration of Jim Harrington; Ex. 5, Declaration of Jeff Blackburn; Ex. 3, Declaration of Scott Medlock. Though the jury instruction on the Fourteenth Amendment claims ultimately presented to the jury is ground well-trod, the ADA wrongful death claims are literally novel.

*2) This Case Precluded Other Employment Opportunities*

Plaintiffs' counsel lost other employment opportunities due to this litigation. The travel to Amarillo and multiple trial settings precluded Plaintiffs' counsel from meeting with potential new clients in the highly-competitive personal injury field. *See* Ex. 3, Declaration of Scott Medlock. Plaintiffs' counsel lost at least one case directly due to this litigation. *Id*.

*3) The Result Obtained is Impressive*

The jury awarded a significant verdict to Plaintiffs. Despite a venue everyone would likely agree is difficult, and operating under the "deliberate indifference" standards, Plaintiffs won a substantial jury award, believed to be the highest civil rights/wrongful death award in federal court in Amarillo in thirty years (since *Grandstaff v. City of Borger*). This is precisely the type of "private attorney general" action § 1988 is meant to encourage—cases that will ensure individuals' fundamental constitutional rights are protected. *See Tex. State Teachers Assn. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989).

> A civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms. And Congress has determined that the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in § 1988, over and above the value of a civil rights remedy to a particular plaintiff.

*Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (internal citations omitted).

*4) Plaintiffs were Represented by Experienced and Skilled Attorneys*

Mr. Edwards, lead counsel in this litigation, has more than 15 years of experience in litigating civil rights cases. He has represented dozens of civil rights plaintiffs over his career, and tried several civil rights cases to a verdict. He has also obtained multiple seven-figure settlements in the civil rights area – including police shooting and wrongful imprisonment cases. His experience suing governmental entities and deposing and cross-examining high-ranking officials and jail experts proved invaluable to Plaintiffs. His expertise in this often dense body of law was critical to achieving the result Plaintiffs obtained. *See* Ex. 6, Declaration of Edwards.

Similarly, Mr. Medlock is one of only a few lawyers in the State of Texas who represents plaintiffs in prisoners' rights cases. For eight years, Mr. Medlock directed the Texas Civil Rights Project's prison and jail litigation program, representing dozens of prisoners and their families. Since leaving the non-profit sector, he has continued to represent inmates and their families in prison and jail litigation. He has handled numerous jail death cases, and is one of the nation's leading authorities on prison wrongful death litigation. *See* Ex. 3, Declaration of Medlock.

*5) Mr. Borum's Case was "Undesirable" to Other Attorneys*

Plaintiffs were unable to find any other lawyers to take their case, and were told repeatedly that lawyers did not want to litigate prisoners' rights cases. Ex. 8, Declaration of Justin Borum. Aside from the difficulty of the legal issues (as discussed above), pre-trial detainees are highly unpopular clients, for obvious reasons, and, here, there were no economic damages sought from the jury due to Terry Borum's significant disabilities.

B. Costs and Litigation Expenses

Plaintiffs further request the Court award them all reasonable and necessary costs, which they incurred in conjunction with the claims on which they prevailed, plus interest that shall accrue, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205. *See also Jones v. White*, 2007 WL 2427976, *8 (S.D. Tex. Aug. 22, 2007) (awarding experts' fees as litigation costs under the ADA).

A detailed breakdown of the costs is attached as Exhibit 2. *See also* Ex. 6, Declaration of Jeff Edwards.

PRAYER FOR RELIEF

Therefore, Plaintiffs respectfully pray the Court award them the reasonable and necessary attorneys' fees, court costs, and litigation expenses of $762,838.48.

Respectfully submitted,

**EDWARDS LAW**
The Haehnel Building
1101 East 11th Street
Austin, TX 78702
Tel.   512-623-7727
Fax.   512-623-7729

By   /s/ Jeff Edwards
     JEFF EDWARDS
     State Bar No. 24014406
     jeff@edwards-law.com
     SCOTT MEDLOCK
     State Bar No. 24044783
     scott@edwards-law.com

**LOVELL, LOVELL, NEWSOM & ISERN, L.L.P.**
112 W. 8th Ave. #1000
Amarillo, TX 79101
Tel.   (806) 373-1515
Fax.   (806) 379-7176

     TIM NEWSOM
     State Bar No. 00784677
     KEVIN A. ISERN
     State Bar No. 10432900

**ATTORNEYS FOR PLAINTIFF**

CERTIFICATE OF SERVICE

By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Northern District of Texas.