UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN McCOLLUM, and SANDRA McCOLLUM, individually, and STEPHANIE KINGREY, individually and as independent administrator of the Estate of LARRY GENE McCOLLUM,<br>PLAINTIFFS<br><br>v.<br><br>BRAD LIVINGSTON, JEFF PRINGLE, RICHARD CLARK, KAREN TATE, SANDREA SANDERS, ROBERT EASON, the UNIVERSITY OF TEXAS MEDICAL BRANCH and the TEXAS DEPARTMENT OF CRIMINAL JUSTICE.<br>DEFENDANTS | §§§§§§§§§§§§§§§§§ | CIVIL ACTION NO.<br>4:14-cv-3253<br>JURY DEMAND |

**PLAINTIFFS' RESPONSE TO TDCJ & UTMB'S MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL OF ADA AND RA CLAIMS**

The Court should deny Defendants' motion to certify the Court's summary judgment rulings on Plaintiffs' Americans with Disabilities Act and Rehabilitation Act claims for interlocutory appeal. The Court denied summary judgment because the evidence raised disputed issues of material fact regarding well-settled law. Defendants have failed to show a "substantial ground for difference of opinion" concerning any of the Court's controlling legal analysis justifying an interlocutory appeal.

i

# Table of Contents

I. Standard of Review ................................................................................................................ 1

II. Argument and Authorities .................................................................................................. 1

    A. The Court Should Strike Defendants' Misattribution of an Irrelevant, Out-of-Court Statement of Counsel to Plaintiffs. .......................................................................................... 1

    B. The Issue of Defendants' Sovereign Immunity is Straightforward and Does Not Show that a Certified Appeal Could Materially Advance the Case. ............................................. 3

        1. Defendants Do Not Enjoy Sovereign Immunity from Plaintiffs' ADA Claims ............................. 3

        2. Any Appeal on Sovereign Immunity Grounds Would Not Include Rehabilitation Act Claims, so it Would Not Advance the Case. ................................................................................. 5

    C. Defendants' Miscellaneous Arguments Fail to Identify any Controlling Question of Law Subject to Substantial Difference of Opinion. .................................................................. 6

        1. TDCJ and UTMB are Vicariously Liable for ADA and RA Claims. ........................................ 6

        2. The Standard for Intentional Discrimination is Not a Controlling Question of Law in this Fact Pattern. ............................................................................................................................. 6

        3. The Ability to Climb On and Off a Top Bunk Qualifies as a Major Life Activity Under the Permissive ADAAA Standard. ......................................................................................... 8

        4. The "More Pain and Punishment" Formulation is a Restatement of Precedent and is Not the Subject of Substantial Disagreement. ........................................................................... 9

        5. Safe Housing in a Prison Qualifies as a Program or Service. ............................................... 11

III. Conclusion ......................................................................................................................... 13

## Cases

*A.G. v. Lower Merian School Dist.*, 542 Fed. Appx. 194  (3rd Cir. 2013) ............................................... 7

*Ball v. LeBlanc*, 792 F.3d 584 (5th Cir. 2015) ................................................................................... 9

*Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222 (10th Cir. 2009) ..................................................... 7

*Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448 (5th Cir. 2005) ................................. 3, 5, 12

*Borum v. Swisher Cty.*, 2015 WL 327508 (N.D. Tex. Jan. 26, 2015) ........................................................ 2

*Caterpillar Inc. v. Lewis*, 519 U.S. 61 (1996) ..................................................................................... 1

*Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567 (5th Cir. 2002) ............................................................ 6,7

*Duvall v. Co. of Kitsap*, 260 F.3d 1124 (9th Cir. 2001) ............................................................................. 7

*Estate of A.R. v. Grier*, No. 4:10-cv-00533 (S.D. Tex. Jan. 30, 2013) ..................................................... 13

*Estate of A.R. v. Muzyka*, 543 F. App'x 363 (5th Cir. 2013) .................................................................... 12

*Farmer v. Brennan*, 511 U.S. 825 (1994) ............................................................................................... 8

*Garner v. Wolfinbarger*, 433 F.2d 117 (5th Cir. 1970) ............................................................................ 1

*Hale v. King*, 642 F.3d (5th Cir. 2011) ................................................................................................... 7

*Hay v. Thaler*, 470 F. Appx 418 (5th Cir. 2012) ...................................................................................... 10

*Hinojosa v. Livingston*, 807 F.3d (5th Cir. 2015) .................................................................................... 8

*Hinojosa v. Livingston,* Civil Action No. 2:13-CV-319 (S.D. Tex. 2014) ................................................. 2, 8

*Liese v. Indian River Co. Hospital*, 701 F.3d 334 (11th Cir. 2012) ........................................................... 6, 7

*Loeffler v. Staten Island Univ. Hospital*, 582 F.3d 268 (2nd Cir. 2009) ..................................................... 7

*Martone v. Livingston*, No. 4:13-cv-03369 (S.D. Tex. 2014) .................................................................... 2

*Mason v. Stallings*, 82 F.3d 1007 (11th Cir. 1996) .................................................................................. 6

*McCoy v. Texas Dep't of Criminal Justice*, 2006 WL 2331055 (S.D. Tex. Aug. 9, 2006) ............ 10

*Meagley v. Little Rock*, 639 F.3d 384 (8th Cir. 2011) ............................................................................... 7

*Melton v. Dallas Area Rapid Transit*, 391 F.3d 669 (5th Cir. 2004) ...................................................... 12

*Miller v. Chapman*, 2014 WL 2949287 (M.D. La. June 30, 2014) ............................................................ 3

*Pace v. Bogalusa City Sch. Bd.*, 403 F.3d (5th Cir. 2005) ........................................................................ 5

*Pandazides v. Virginia Bd. of Ed.*, 13 F.3d 823, 830 (4th Cir. 1994) ........................................................ 8

*Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. (5th Cir 2015) ......................................................... 7

*R.K. v. Bd. of Ed. of Scott County, Ky.*, 637 Fed. Appx. 922, 925 (6th Cir. 2016) ................................... 7

*Tennessee v. Lane*, 541 U.S. 509, 518 (2004) ........................................................................................... 3

*Togonidze v. Livingston*, No. 6:14-cv-00093-JDL (E.D. Tex. 2014) ........................................................ 2

*Tuft v. Texas*, 410 F. App'x 770 (5th Cir. 2011) ...................................................................................... 11

*United States v. Georgia*, 546 U.S. 151 (2006) ............................................................................ 3, 4, 10, 11

*Webb v. Livingston*, No. 6:13-cv-00711-JDL (E.D. Tex. 2014) ............................................................... 2

*Wolfe v. Fla. Dep't of Corr.*, 2012 WL4052334 (M.D. Fla. Sept. 14, 2012) ............................................ 2

*Wright v. Tex. Dep't Crim. Justice*, 2013 WL 6578994 (N.D. Tex. Dec. 16, 2013) ................................ 2

**Statutes**

28 U.S.C. §1292 ........................................................................................................................................... 1

29 U.S.C. § 794 ......................................................................................................................................... 12

42 U.S.C. § 12101 ....................................................................................................................................... 4

42 U.S.C. § 12102 ....................................................................................................................................... 9

I.      STANDARD OF REVIEW

A district court may only certify an order for interlocutory appeal when that order (1) "involves a controlling question of law," (2) that question has "substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292.

"Section 1292(b) is a narrow exception" to the rule that appeals are only available after final judgment. *Garner v. Wolfinbarger*, 433 F.2d 117, 120 (5th Cir. 1970). It is "Congress' design to reserve interlocutory review for exceptional cases." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74, (1996) (internal quotation marks omitted).

II.     ARGUMENT AND AUTHORITIES

None of Defendants' disputes with the Court's summary judgment rulings regarding Plaintiffs' ADA and Rehabilitation Act claims justify an interlocutory appeal.

A.      **The Court Should Strike Defendants' Misattribution of an Irrelevant, Out-of-Court Statement of Counsel to Plaintiffs.**

As a preliminary matter, Defendants inappropriately attribute the out-of-court statements of Plaintiffs' counsel in other litigation to Plaintiffs themselves, including in their proposed question to be certified, and proceed to overstate those quotes' bearing on this issue. The Court should strike this misleading quotation and inappropriate attribution from the question before considering whether to certify it for interlocutory appeal. In another case, Plaintiffs' counsel argued after a federal jury in Amarillo, Texas returned a $1,000,000 plaintiffs' verdict on ADA claims in an inmate wrongful death lawsuit that the verdict justified an award of attorneys' fees.

First, Defendants cannot appropriately attribute the out-of-court statements of Plaintiffs' *counsel* in other litigation to Plaintiffs' themselves in this case. Counsel was representing a

1

different client, appearing before a different court, arguing a different issue, and simply was not speaking on behalf of Plaintiffs.

Regardless, the phrase "literally novel" is taken grossly out of context in Defendants' certified question and motion. While it still appears to be true that few wrongful death cases have been successfully tried to a jury verdict under the ADA, the novelty of the *result* hardly means that the *legal questions* are open to reasonable disagreement or otherwise require the extraordinary procedure of an interlocutory appeal prior to trial. As explained in Plaintiffs' response to Defendants' motions for summary judgment, and in this Court's order, Defendants are simply incorrect when they argue that the Fifth Circuit has never endorsed the "underlying legal theories" at issue in this case. Doc. 343, p. 3. In reality, the converse is true – numerous federal district courts in Texas and around the country have approved Plaintiffs' legal theories (and Defendants point to no courts disagreeing).[1]

---

[1] *Borum v. Swisher Co.*, 2015 WL 327508, No. 2:14-cv-000127-BB (N.D. Tex. Jan. 26, 2015) (Robinson, J.) (alcoholic prisoner denied accommodations) and, Doc. 158 (July 22, 2016) (Averitte, Mag. J., by consent of the parties); *Martone v. Livingston*, 2014 WL 3534696 (S.D. Tex. July 16, 2014) (Ellison, J.); *Togonidze v. Livingston*, No. 6:14-cv-00093-JDL, Doc. 52 (magistrate's April 9, 2014 recommendation) (E.D. Tex.) (Love, Mag. J.) and Doc. 56 (May 6, 2014 order adopting magistrate's recommendation) (Schneider, J.); *Webb v. Livingston*, No. 6:13-cv-00711-JDL, Doc. 98 (magistrate's report and recommendation) (E.D. Tex.) (Love, Mag. J.) and Doc. 125 (May 5, 2014 order adopting magistrate's recommendation) (Schneider, J.); *Hinojosa v. Livingston,* 994 F.Supp.2d 840 (S.D. Tex. 2014) (Gonzales Ramos, J.); *Wright v. Tex. Dep't Crim. Justice*, 2013 WL 6578994 (N.D. Tex. Dec. 16, 2013) (O'Connor, J.); *Wolfe v. Fla. Dep't of Corr.*, 2012 WL4052334, *4 (M.D. Fla. Sept. 14, 2012); *Miller v. Chapman*, 2014 WL 2949287, *3 (M.D. La. June 30, 2014); *Reeves v. LeBlanc*, 2014 WL 7150615, *4 (M.D. La. Dec. 15, 2014); *Hacker v. Cain*, 2016 WL 3167176, *13 (M.D. La. June 6, 2016); *Cleveland v. Gautreaux*, 198 F.Supp.3d 717 (M.D. La. 2016); *Anderson v. Showalter*, No. 1:CV-14-00330, 2015 WL 1285957, *12 (M.D. Pa. March 20, 2015); *Powell v. Wetzel*, 1:12-cv-2455, 2014 WL 2472048, *11 (M.D. Pa. Feb. 25, 2014) (Schwab, Mag. J.) (adopted at 2014 WL 2472088); *George v. La. Dep't of Public Safety and Corr.*, No. 3:14-00338, 2016 WL 3568109, *9 (M.D. La. June 23, 2016). See also *Brigham v. Tex. Dep't of Crim. Justice*, No. 1:15-CV-440, 2016 WL 5719698, *7 (E.D. Tex. Aug. 29, 2016) (Giblin, Mag. J.) (adopted at 2016 WL 5472977 by Clark, J.) (finding plaintiff's claim sufficiently alleged discrimination after being assigned to unsafe prison housing, but that inmate failed to allege a qualifying disability).

> B. **The Issue of Defendants' Sovereign Immunity is Straightforward and Does Not Show that a Certified Appeal Could Materially Advance the Case.**

Defendants have already appealed based on sovereign immunity. But resolution of the immunity issue alone does not justify certifying the entire order for interlocutory review for two reasons: First, the immunity issue is narrow and clear in this case, as the bulk of the Court's order addresses constitutional violations arising from the same conduct, foreclosing all the issues suggested by Defendants' motion. Second, even if there were any doubt whether the ADA abrogates TDCJ and UTMB's immunity, the Rehabilitation Act undisputedly does, so resolving the abrogation of Defendants' immunity from the ADA would not materially advance the case. *See Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005).

> 1. *Defendants Do Not Enjoy Sovereign Immunity from Plaintiffs' ADA Claims.*

Defendants' immunity from the ADA is abrogated due to the related constitutional constitutional violations. In passing the ADA, Congress abrogated states' immunity through the congressional power to enforce the Fourteenth Amendment. U.S. CONST. AMD. XIV, § 5; 42 U.S.C. § 12101(b)(4). States' immunity is dissolved when Congress passes "prophylactic legislation" to protect citizens from unconstitutional conduct. *See Tennessee v. Lane*, 541 U.S. 509, 518 (2004).

Defendants incorrectly argue that the Court's order was silent regarding sovereign immunity from Plaintiffs' ADA claims. On the contrary, at page 63 of its opinion, the Court specifically engages the issue, citing *United States v. Georgia*, 546 U.S. 151 (2006): "insofar as Title II creates a private cause of action against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.,* 546 U.S. at 159 (emphasis in original). Earlier in the order, the Court explains its analysis of numerous

3

constitutional violations, and then devotes another 18 pages to explaining why this same conduct by both Defendant agencies violated the ADA. Doc. 342, p. 63–81.

In *United States v. Georgia*, as in this case, the inmate alleged Eighth Amendment and ADA violations arising from the same course of conduct by the prison. 546 U.S. at 157. Justice Scalia, writing for unanimous the Supreme Court, explained that Georgia's immunity was abrogated if those Eighth Amendment claims were appropriately pleaded. *Id.*

Just as in *Georgia*, in this case Plaintiffs have brought Eighth Amendment claims arising from the same course of conduct as ADA claims, so no separate analysis of abrogation of sovereign immunity was needed. Defendants' sovereign immunity is clearly abrogated because the same record showing an ADA violation also shows Defendants' conduct violated McCollum's constitutional rights under the Eighth Amendment.[3] With respect to TDCJ, the Court explicitly found material fact issues regarding whether the TDCJ Defendants' conduct violated McCollum's Eighth Amendment rights. Doc. 342, pp. 14–60. With respect to UTMB, the Court similarly identified UTMB practices that the Court found raised fact issues as to the ADA violations. (Some are the same practices that, when TDCJ executives perpetrated them, the Court identified as violations of McCollum's Eighth Amendment rights. *See, e.g.*, Doc. 342, pp. 58–59 (denial of 24 hour medical care during a dangerous heat wave); 72-73 (assignment to non-air-conditioned housing)). The Court also identifies other discriminatory practices of UTMB and TDCJ that were the moving force behind constitutional violations, including the denial of air conditioning to inmates vulnerable to extreme heat like McCollum, the denial of an earlier intake

---

[3] Indeed, the Court's analysis also identifies disputes of material fact going to every element of a violation of McCollum's right to be free from disability discrimination under § 5 of the Fourteenth Amendment. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 447 (1985) ("the [disabled], like others, have and retain their substantive constitutional rights in addition to the right to be treated equally by the law").

physical exam, denial of cold drinking water, and inadequate heat-safety training. Doc. 342, pp. 71–75.

> 2. *Any Appeal on Sovereign Immunity Grounds Would Not Include Rehabilitation Act Claims, so it Would Not Advance the Case.*

Even a successful sovereign immunity interlocutory appeal of the ADA claims would not terminate the litigation, because there is no dispute the Rehabilitation Act completely abrogates Texas' immunity here. Unlike the ADA, the Rehabilitation Act does not operate through Congress' Fourteenth Amendment enforcement power – it relies on Congress' spending power. *Compare* U.S. CONST. AMD. XIV, § 5 *with* U.S. CONST. ART. I, § 8. Binding Fifth Circuit authority recognizes state agencies waive their immunity when they accept federal funds pursuant to the spending power. *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 287 (5th Cir. 2005) (en banc). There is no dispute TDCJ and UTMB accept federal funds.

As Plaintiffs' claims under the RA are analyzed identically to the ADA claims,[6] there is no reason to certify an interlocutory appeal in anticipation of the ADA immunity issue when the Rehabilitation Act claims clearly lack an immunity defense. *See Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005); *see also Pace*, 403 F.3d at 288–9.

---

[6] Once federal funding is established, the only significant distinction between the ADA and Rehabilitation Act is the acts' causation standards, which are not addressed anywhere in Defendants' motion. Causation under the Rehabilitation Act is appropriately identified as the subject of a material fact dispute on page 70 of the Court's order. And, moreover, in Rehabilitation Act cases where the plaintiff alleges he was denied a reasonable accommodation – like this one – the cause of the illegal discrimination is irrelevant as the injury still results from denying the accommodation. *See Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454-55 (5th Cir. 2005).

### C. Defendants' Miscellaneous Arguments Fail to Identify any Controlling Question of Law Subject to Substantial Difference of Opinion.

#### 1. TDCJ and UTMB are Vicariously Liable for ADA and RA Claims.

Defendants' vicarious liability argument is directly contrary to controlling Fifth Circuit precedent. The Fifth Circuit settled the question in *Delano-Pyle*, holding that the governmental employer is vicariously liable for the conduct of any employee:

> The ADA and RA impose liability upon certain employers for disability discrimination. The definition of "employer" under the ADA specifically encompasses any agent of an employer covered by the statute. 42 U.S.C. § 12111 (1995). … The Fourth, Seventh, Ninth, and Eleventh[7] circuits have all agreed that when a plaintiff asserts a cause of action against an employer-municipality, under either the ADA or the RA, the public entity is liable for the vicarious acts of *any* of its employees as specifically provided by the ADA.

*Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574–75 (5th Cir. 2002) (citations omitted) (emphasis in original).[8]

#### 2. The Standard for Intentional Discrimination is Not a Controlling Question of Law in this Fact Pattern.

Though the Fifth Circuit has left open the question of what test satisfies "intentional

---

[7] Notably, the Defendants now rely on an Eleventh Circuit decision, *Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, 349 (11th Cir. 2012), to allege a "substantial difference of opinion" exists. *Liese*, however, is a panel opinion in direct conflict with an earlier Eleventh Circuit panel in *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996), which held a plaintiff could reach an entity defendant through *respondeat superior* liability.

[8] Moreover, even if the vicarious liability issue was not conclusively resolved in the Fifth Circuit, in this case, the Court found material issues of fact exist as to the liability of TDCJ's highest ranking official, who even the outlying Eleventh Circuit panel would hold could create vicarious liability for the agency. *See Liese*, 701 F.3d at 349 (vicarious liability affixes when "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [organization's] behalf [and who] has actual knowledge of discrimination in the [organization's] programs and fails adequately to respond"). Notably, in *Liese*, the Eleventh Circuit determined a doctor's decision to deny accommodations to a deaf patient were sufficient to bind the hospital. *Id.* at 350-351. Thus, even if the Fifth Circuit reverses course and adopts the outlying Eleventh Circuit panel standard, it still would not terminate this litigation.

discrimination" to award compensatory damages under the ADA, even the most stringent test suggested by the Fifth Circuit precedent would be satisfied in this case, where the agencies certainly knew that inmates with McCollum's disabilities were placed at a substantial risk of serious harm by the dangerously high indoor temperatures and yet failed to protect them. In both *Delano-Pyle* and *Perez*, the Fifth Circuit held that it did not need to resolve the precise formulation of the standard, since the evidence at hand met even a heightened standard for intentional discrimination. *Delano-Pyle*, 302 F.3d at 575; *Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 184 (5th Cir 2015). The same is true here, as this Court ruled and explained in its opinion. Opinion, pp. 78-81. Therefore, the precise articulation of the standard for intentional discrimination is not a controlling legal question as Plaintiffs' evidence creates a factual dispute under either test and an interlocutory appeal would not accelerate the end of this litigation.[9]

Likewise, even though this question would not terminate the litigation, there is no "substantial difference of opinion" on the issue. Though the Fifth Circuit has not yet reached the question, every other circuit that has concludes "deliberate indifference" is the appropriate standard.[10] Plaintiffs' evidence plainly satisfies the "deliberate indifference" standard, because it

---

[9] Moreover, Defendants' unexplained, misleading string cite is not even pertinent to the standard for discrimination. *Hale v. King*, 642 F.3d 492, 500 (5th Cir. 2011) (affirming dismissal of an inmate's claims because he did not meet the pre-ADAAA definition of "qualified individual with a disability").

[10] *See, e.g., See, e.g., Loeffler v. Staten Island Univ. Hospital*, 582 F.3d 268, 275 (2nd Cir. 2009); *A.G. v. Lower Merian School Dist.*, 542 Fed. Appx. 194, 198 (3rd Cir. 2013); *Meagley v. Little Rock*, 639 F.3d 384 (8th Cir. 2011); *Duvall v. Co. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001); *Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222, 1228-29 (10th Cir. 2009); *Liese*, 701 F.3d at 345 (11th Cir. 2012). The Sixth Circuit has also assumed, without deciding, "deliberate indifference" is the correct standard. *R.K. v. Bd. of Ed. of Scott County, Ky.*, 637 Fed. Appx. 922, 925 (6th Cir. 2016). The Fourth Circuit, without ruling on the issue, has indicated mere "disparate treatment," a lesser standard, can justify an award of compensatory damages in Rehabilitation

is the same standard to prove an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

In addition, Defendants again frame the legal question incorrectly. They suggest a finding of intentional discrimination requires them to have specifically known their practices endangered McCollum in isolation, regardless of whether their practices endangered an entire class of inmates with disabilities. Motion, pp. 4-5. In the *Hinojosa* prison hyperthermia death case, the Fifth Circuit soundly rejected this argument in the Eighth Amendment context:

> Defendants argue that the complaint fails to plead deliberate indifference because it does not allege that they were aware of [the prisoner]'s specific medical history and needs. However, their lack of knowledge of [the prisoner]'s individual susceptibility to heat-related dangers cannot defeat an Eighth Amendment claim. The complaint alleges that Defendants were aware of the risk to recently transferred inmates with conditions and medications like [the prisoner]'s and yet took no action. Prison officials cannot escape liability in a conditions-of-confinement case like this one by arguing that, while they allegedly were aware of and consciously disregarded a substantial risk of serious harm to a discrete class of vulnerable inmates, they were not aware that the particular inmate involved in the case belonged to that class.

*Hinojosa v. Livingston*, 807 F.3d 657, 667 (5th Cir. 2015).

The same reasoning applies to the intentional discrimination element of an ADA claim. Defendants' argument, if accepted, would result in an absurdity. If TDCJ and UTMB refused to provide insulin for *all* diabetic inmates, they should not be protected from liability because they were unaware a *particular* inmate had diabetes.

### 3. The Ability to Climb On and Off a Top Bunk Qualifies as a Major Life Activity Under the Permissive ADAAA Standard.

Defendants complain of the Court's ruling that McCollum's obesity-related difficulties with climbing on and off his top bunk constituted a "major life activity." Motion, p. 6. Although they cite no authority – nor even make a specific argument – why this ruling could be a

---

Act cases. *Pandazides v. Virginia Bd. of Ed.*, 13 F.3d 823, 830 n. 9 (4th Cir. 1994).

8

"substantial ground for difference of opinion," they seem to argue tacitly that thermoregulation is the only relevant major life activity in this case, because the Fifth Circuit discussed thermoregulation as the relevant life activity in *Ball*.

But nothing about *Ball* implies that thermoregulation can be the ***only*** major life activity relevant to this case – it was simply the sole activity raised by *Ball* plaintiffs and discussed by the Court. *Ball v. LeBlanc*, 792 F.3d 584, 596-7 n. 11 (5th Cir. 2015) (assuming without deciding thermoregulation is a major life activity). Here, in addition to finding obvious impairment of McCollum's thermoregulation due to his heat stroke death, the Court cited testimony from Dr. Murray of UTMB that morbid obesity can impair a person's ability to climb in and out of a top bunk. Order, p. 70. This has obvious relevance to McCollum's heat risk, as it affected his ability to leave his bunk to drink water, shower, or take other steps to attempt to deal with the heat. (Indeed, there is evidence in the record this was the case. *See* P. Appx. 644.) In these circumstances, climbing on and off his bunk is precisely the sort of mobility-related daily life activity necessary to care for oneself that qualifies as a major life activity, particularly after the expanded definition in the ADAAA, which includes "caring for oneself," "performing manual tasks," and other mobility-related activities (like walking, lifting, standing, and bending) in a non-exhaustive list of possible life activities. Order, p. 65 (citing 42 U.S.C. §12102(1)(A)). Indeed, it is difficult to imagine a persuasive argument to the contrary, much less an argument that creates a "substantial difference of opinion."[11]

> 4. *The "More Pain and Punishment" Formulation is a Restatement of Precedent and is Not the Subject of Substantial Disagreement.*

Defendants next complain of this Court's ruling that a failure to provide accommodations

---

[11] Likewise, whether or not "climbing" can qualify as a major life activity would not terminate the litigation, as an inability to thermoregulate could also qualify as a major life activity.

9

in a prison amounts to forbidden discrimination when the absence of the accommodation causes more pain and punishment than for a non-disabled prisoner. Defendants argue that this Court's ruling is supported only by the opinion in *McCoy v. Texas Dep't of Criminal Justice*, 2006 WL 2331055, at *7 (S.D. Tex. Aug. 9, 2006). Motion, p. 5. This is incorrect. Like the *McCoy* Court, this Court found the "more pain and punishment" standard to be grounded in the Supreme Court's opinion in *United States v. Georgia*, 546 U.S. 151, 156, 126 S. Ct. 877, 880, 163 L. Ed. 2d 650 (2006), which this Court cited and quoted. Order, p. 76. Numerous other district courts agree. *See supra*, n. 1.

Nor do any of Defendants' cited authorities from the Fifth Circuit (mostly unpublished *pro se* prisoner cases) disparage (or even address) the "more pain and punishment" standard. *See* Motion, p. 5. For example, in *Hay*, the Court found that the *pro se* plaintiff's ADA and RA claims lacked merit because there was no evidence that his disabilities made it more difficult for him to obtain dentures from TDCJ, the relevant program or service. *Hay v. Thaler*, 470 F. App'x 411, 418 (5th Cir. 2012). The Court's discussion of pain actually came in the context of Plaintiff's Eighth Amendment claim, not his ADA claim, in considering whether his pain while eating without dentures amounted to a serious medical condition for Eighth Amendment purposes. *Id.* at 415. In fact, the Circuit determined the inmate did not demonstrate a material fact dispute existed because "he does not allege, much less explain, how his alleged disabilities made it more difficult for him to access the benefits of TDCJ's services … or gave him less meaningful access to those services." *Id.* at 418. Here, there is copious evidence McCollum's disabilities compounded the dangerously hot conditions in TDCJ's prison, caused his death, and thus denied him any access to TDCJ and UTMB's services.

Likewise, in *Tuft* the *pro se* prisoner asserted an ADA claim based on overcrowding in the showers. The Court nowhere addressed whether pain or punishment caused by a failure to provide a reasonable accommodation could amount to discrimination under the ADA. Instead, the Court granted summary judgment on the ADA claims because the inmate did not produce any evidence "the overcrowding had a greater effect in impairing his access to showers than it did for non-disabled prisoners." *Tuft v. Texas*, 410 F. App'x 770, 775 (5th Cir. 2011). While the dangerously hot conditions in TDCJ's prisons may threaten all inmates, there is no dispute that prisoners with McCollum's disabilities were at far greater risk. *See, e.g.*, Order at 72, 74, 76, *et seq*.

As the "more pain and punishment" standard is derived from a United States Supreme Court opinion (*U.S. v. Georgia*), Fifth Circuit precedent is not to the contrary, and numerous district courts apply this standard (with no disagreement), this issue presents no grounds for interlocutory appeal.

        5.      *Safe Housing in a Prison Qualifies as a Program or Service.*

Defendants finally complain of the Court's ruling that safe housing qualifies as the program or service from which McCollum was excluded, arguing that no authority justifies the ruling other than a single district court case. Motion, pp. 5-6.

First, Plaintiffs' claims may rest solely on the basis of Defendants' intentional discrimination against McCollum, even absent exclusion from a program or service. As the Fifth Circuit has held:

> To make a prima facie case of discrimination under the ADA, a plaintiff must demonstrate: (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, ***or is otherwise being discriminated against by the public entity***; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.

11

*Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004) (emphasis added).

The statutory language of the Rehabilitation Act also supports the Court's holding that safe housing qualifies as a program or service. Under the Act, a "program or activity" includes "all of the operations of ... a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b)(1)(A). And thus, if any part of a state agency receives federal funds, all operations of the agency are subject to the Rehabilitation Act. *See Bennett-Nelson,* 431 F.3d at 451-3. It is undisputed that TDCJ has responsibility for housing prisoners safely at the Hutchins Unit, and that the correctional officers who work in the housing areas are TDCJ employees. Therefore, the prisoner housing at the Hutchins Unit is part of the "operations" of TDCJ, and housing should be considered a program or service for purposes of Plaintiffs' claims.

This analysis applies to the ADA claims as well: "Because Section 504 closely tracks the language of the ADA, we analyze ADA and Section 504 claims together." *Estate of A.R. v. Muzyka*, 543 F. App'x 363, 364 (5th Cir. 2013).

Defendants claim that *Muzyaka* contradicts the Court's ruling on this question, without offering any explanation. This argument lacks merit. In *Muzyaka*, the Fifth Circuit did not address the question whether the relevant swimming activity qualified as a program, activity or service, as that was apparently undisputed. Instead, the dispute centered around the sufficiency of the evidence regarding intentional discrimination, and the Court held that plaintiffs had not offered sufficient evidence even to prove deliberate indifference. *Id.* at 365. (Indeed, the *Muzyka* plaintiff did not even argue the young deaf girl's drowning resulted from a failure to accommodate her seizure disorder, merely that the school failed to accommodate other deaf classmates who could not warn a teacher she had fallen in the pool. *Estate of A.R. v. Grier*, No.

4:10-cv-00533, slip op. at 18-19 (S.D. Tex. Jan. 30, 2013). There was simply no evidence she drowned because she was deaf. *Id*. at slip op. at 22). Thus, the case has no bearing on the issue whether safe housing in a prison may be considered a program or service for purposes of Rehabilitation Act and ADA claims.

## III.   CONCLUSION

Defendants' Motion does not raise grounds justifying an interlocutory appeal. This Court denied Defendant's motion for summary judgment with respect to Plaintiff's ADA and Rehabilitation Act claims based on disputed fact issues and settled controlling legal analysis. Defendants have failed to show a "substantial ground for difference of opinion" with respect to the relevant law.

Respectfully submitted,

EDWARDS LAW
The Haehnel Building
1101 East 11th Street
Austin, TX 78702
    Tel.   512-623-7727
    Fax.  512-623-7729

By:   /s/ Jeff Edwards
JEFF EDWARDS
State Bar No. 24014406
Lead Counsel
SCOTT MEDLOCK
State Bar No. 24044783
DAVID JAMES
State Bar No. 24092572

Michael Singley
THE SINGLEY LAW FIRM, PLLC
State Bar No. 00794642
4131 Spicewood Springs Rd.
Austin, Texas 78759
    Tel.   (512) 334-4302

13

      Fax. (512) 727-3365

Wallis Nader
Texas Bar No. 24092884
Southern District No. 2609150
TEXAS CIVIL RIGHTS PROJECT—
HOUSTON
2006 Wheeler Ave
Houston, TX 77004
    Tel. (832) 767-3650
    Fax. (832) 554-9981

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

 By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record on **March 6, 2017** through the Electronic Case File System of the Southern District of Texas.

/s/ Jeff Edwards
JEFF EDWARDS