UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN MCCOLLUM, *et al.*, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL NO. 4:14-CV-3253 |
| | § | |
| | § | |
| BRAD LIVINGSTON, *et al.*, | § | |
| *Defendants*. | § | |

**DEFENDANTS UNIVERSITY OF TEXAS MEDICAL BRANCH AND TEXAS DEPARTMENT OF CRIMINAL JUSTICE'S REPLY BRIEF REGARDING DEFENDANTS' OPPOSED MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL REGARDING PLAINTIFFS' ADA AND RA CLAIMS**

Defendants the University of Texas Medical Branch at Galveston (UTMB) and the Texas Department of Criminal Justice (TDCJ) file this joint reply to Plaintiffs' response to Defendants' motion seeking certification of interlocutory appeal under 28 U.S.C. § 1292(b) of the Court's denial of Defendants' motions for summary judgment regarding Plaintiffs' Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) claims. (D.E. 351) In support thereof, Defendants reply as follows:

**I.    Plaintiffs claim the Fifth Circuit has endorsed their theory of the case, but cite no Fifth Circuit case as support.**

Despite their claims to the contrary, the novelty of Plaintiffs' use of the ADA and RA as a liability statute is demonstrated by the complete lack of Fifth Circuit authority. Plaintiffs boldly state that "Defendants are simply incorrect when they argue that the Fifth Circuit has never endorsed the underlying legal theories at issue in this case. In reality, the converse is true." (See D.E. 351 at 6[1]) Yet Plaintiffs' string cite of cases following this argument contains *not one* case

---

[1] Docket Entry page citation will refer to the page number as assigned by the PACER system affixed to the top of the page.

from the Fifth Circuit. (See D.E. 351 at n.1)  Plaintiffs also incorrectly state that "Defendants point to no courts disagreeing." (See D.E. at 1)  This too, is false.  Defendants cited several Fifth Circuit cases which are in conflict, or at least inconsistent with, the ADA theories Plaintiffs espouse in this case. (See D.E. 343 at 2-8; See generally, D.E. 285 at 23-47 D.E. 288 at 112-129)

Despite counsel's protestations, the content of the fee petition filed in the Northern District is telling.  This is so regardless of whether the same counsel is the same counsel proceeding here.  Plaintiffs cite to no legal authority why the Court should not consider these statements, which were presumably true when made to the Northern District.  Nor were the statements cited by Defendants "grossly taken out of context" or merely refer to the novelty of "the result" of the trial as Plaintiffs attempt to argue. (See D.E. 6)  Even when viewed in full, Plaintiffs' counsel's remarks were cited accurately and in context as they were originally made:

**1) The Questions Presented by this Case were Novel and Difficult**

> Though the facts of the case were not overly complex, Plaintiffs' claims involved complex issues of constitutional and disability law. Developing Plaintiffs' theories required knowledge of a large body of Fifth Circuit and Supreme Court decisions stretching over several decades.
>
> Plaintiff's ADA wrongful death claim is believed to be the first such case successfully tried to a verdict. See Ex. 7, Declaration of Jim Harrington; Ex. 5, Declaration of Jeff Blackburn; Ex. 3, Declaration of Scott Medlock. Though the jury instruction on the Fourteenth Amendment claims ultimately presented to the jury is ground well-trod, the ADA wrongful death claims are literally novel. (D.E. 343-1 at 16)

While attorneys may, at times, take varying legal positions that conflict with one client over another, even if the attribution to Plaintiffs' current counsel is removed, the fact remains that a well-recognized civil rights attorney arguing identical theories acknowledged them to be novel.[2]

---

[2] Scott Medlock remains counsel to Plaintiffs, and is now associated with the Edwards Law firm.

**II.     The ADA and RA are not identical.**

Next, Plaintiffs claim that no appeal should proceed on the ADA claim because the existing Rehabilitation Act claims are identical and will proceed regardless of the resolution of the ADA issues.[3] (See D.E. 351 at 9)  The Fifth Circuit has held directly to the contrary; the ADA and the RA have different causation requirements. *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448 (5th Cir.2005) (citing *Soledad v. U.S. Dept. of Treasury*, 304 F.3d 500 (5th Cir.2002).

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States shall, *solely* by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. §794(a) (emphasis added).  By contrast, under Title II of the ADA, "discrimination need not be the sole reason" for the exclusion of or denial of benefits to the plaintiff.  *Soledad*, 304 F.3d at 503-04 (quoting *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 253 (5th Cir.1996)).  The distinction is not merely semantic.  If the plaintiff's disability was not the sole factor behind his exclusion from a program that receives federal benefits, the RA claim fails. *Id.*; *See also Shah v. Univ. of Texas Sw. Med. Sch.*, 54 F. Supp. 3d 681, 704 (N.D. Tex.2014) (dismissing RA claim where plaintiff claimed he was fired due to animus toward his "disability and ethnicity" because, by its terms, his claim failed to establish that his disability was the sole reason for his termination).

---

[3] Plaintiffs also devote a significant amount of briefing regarding whether the Court fully and appropriately defined the Constitutional violations as necessary under *United States v. Georgia*, 546 U.S. 151, 156, (2006) to overcome Defendants' Eleventh Amendment Immunity.  As this issue will be appealed as a matter of right, it is not an issue necessary for the Court to certify and will not be addressed futher here.

Here, the Plaintiffs, their counsel, and their experts have argued that *all* inmates, regardless of their disabilities, are at substantial risk of harm due to the temperatures inside un-air conditioned Texas prisons. As this is so, it cannot be argued that their exclusion from a program or service was based "solely" on any alleged disability. At a minimum, the removal of the ADA claims would change the causation requirement that would have to be proved to jury. Thus, Plaintiffs' argument that the existence of the RA claim negates the need to appeal the ADA claim is incorrect.

## III. The question of what conduct constitutes intentional discrimination is central to the resolution of the ADA claims.

Despite Plaintiffs' claim to the contrary, the question of what conduct satisfies the intentional discrimination requirement remains open in the Fifth Circuit and subject to dispute, particularly in light of the facts here.

The Fifth Circuit's recent opinion in *Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 380 (5th Cir. Nov. 23, 2016) stands in stark contrast to the liability standard advocated by Plaintiffs and adopted by the Court here. In the educational context, the Court held that under the ADA, intentional discrimination must include evidence of "malice, ill-will, or efforts ... to impede" and affirmed summary judgment against the plaintiff because none was shown. *Id.* The Fifth Circuit's recent formulation of the intentional discrimination standard is inconsistent with standard advocated by the Plaintiffs and adopted by the Court. (See D.E. 342 at 78-82 (holding that a state agency could be held liable where it had undisputedly taken steps to mitigate a risk, but was nonetheless guilty of intentionally discriminating against an inmate on the sole basis that it knew that inmates *like him* would be housed in their system and such inmates *might* be at some remote risk.)) Plaintiffs cite to no Fifth Circuit case law where intentional conduct was inferred on a theory of such remote knowledge.

Finally, Plaintiffs' example of the prison system denying insulin to all diabetics is entirely

inapposite. As an initial matter, such a claim would merely be a claim for failure to treat a disability, which is not an appropriate basis for an ADA claim. "The ADA prohibits discrimination *because of* disability, not *inadequate treatment for* disability." *Cheek v. Nueces County Tex.*, 2013 WL 4017132, at * 18 (S.D. Tex. Aug. 5, 2013); *Mora v. Chapa*, 2013 WL 4590458, at *3 (S.D. Tex. Aug. 27, 2013) (quoting *Simmons v. Navajo County*, 609 F.3d 1011, 1022 (9th Cir. 2010)). *See also*, *Davidson v. Texas Dept. of Criminal Justice*, 91 Fed. Appx. 963, 965 (5th Cir.2004) (rejecting an ADA claim regarding treatment for Hepatitis because the complained-of treatment decisions were not made *because of* any alleged disability). But even if this fact pattern could state an ADA claim, the facts in this case are entirely different. Here, TDCJ did undisputedly order and implement measures intended to protect inmates from the heat, which, even crediting all evidentiary disputes to the Plaintiffs, protected hundreds of thousands of inmates in years past. As such, the question of the evidentiary basis upon which an intentional discrimination claim could be founded is an open and undefined question, warranting certification.

**IV.     Clarifying the law regarding major life activities is necessary to evaluate knowledge and intent.**

Plaintiffs have simply misinterpreted the significance of the definition of the major life activity that warrants certification here. Defendants do not contend that climbing is not a major life activity within the meaning of the ADA, but that in the context of heat, a major life activity other than thermoregulation would have to directly impact one's ability to thermoregulate. *See Ball v. LeBlanc*, 792 F.3d 584, n.12 (5th Cir. 2015). Moreover, the significance is not limited to defining the activity, but also in terms of assessing the requisite knowledge on behalf of the defendants to establish any sort of intentional discrimination.

In the same vein, Plaintiffs misstate the holding of the *Ball* court. Plaintiffs incorrectly state that thermoregulation "was the sole activity raised by the *Ball* plaintiffs and discussed by the

Court." (D.E. 351 at 13)  This is false.  Plaintiff Ball also raised, and the Court addressed, other disabilities:

> Ball also argues that he is disabled because diabetes impairs his endocrine system and his sight. Although this might be true, that Ball's endocrine system and sight are impaired does not entitle him to relief from the heat. Only if Ball's diabetes limits his ability to thermoregulate, can Ball get the only relief he requested—an order requiring Louisiana to keep the prison at or below 88 degrees. As for that claim—that Ball's diabetes impairs thermoregulation—there is no evidence in the record. *Ball*, 792 F.3d at n.12

Defining the major life activity becomes crucial to the analysis when applying the requisite knowledge requirement under intentional discrimination.  This is so because even if the Court were to hold that the evidence suggests that McCollum told a low level officer that he was having trouble with his bunk assignment, there is no evidence that either TDCJ or UTMB were informed that this was causing him to not be able to eat or drink, or that he was becoming dehydrated or otherwise suffering a heat-related illness.  Had McCollum raised this issue to either entity, he would have received medical care and a bottom bunk restriction.  As such, the question of how to properly define the major life activity is relevant and in light of *Ball*, potentially dispositive on the issue of knowledge and intent.

V.  **Plaintiffs misread *United States v. Georgia*, which provides no support for the comparative more pain and punishment standard, which has not been sanctioned by the Fifth Circuit.**

Plaintiffs misstate the source and precedential effect of *United States v. Georgia*, 546 U.S. 151, 156 (2006) as relates to the "more pain and punishment" standard invented by the *McCoy* court. *McCoy v. Texas Dep't of Criminal Justice*, 2006 WL 2331055, at *7 (S.D. Tex. Aug. 9, 2006). As support for its comparative "more pain and punishment" standard, the *McCoy* court cited to a law review article, Emily Alexander, *The Americans With Disabilities Act and State Prisons:*

*A Question of Statutory Interpretation,* 66 Fordham L.Rev. 2233, 2283 (1998), yet the article itself cites to no caselaw that adopts such a standard.

The *McCoy* Court also, as Plaintiffs strenuously point out, cites to *United States v. Georgia*. Yet, nowhere in that case did the Supreme Court hold that an ADA claim could be stated merely by comparing the lives of non-disabled prisoners with disabled prisoners. In *United States v. Georgia*, liability under the ADA stems from the fact that by allegedly not housing a wheelchair-bound inmate in a cell not made for wheelchairs, he was not able to access programs and services like hygiene and medical care. *United States v. Georgia*, 546 U.S. at 156. As Plaintiffs' concede, the Fifth Circuit has not addressed the *McCoy* comparative standard. Of the Texas district courts to have adopted this view, most, if not all, have been in cases argued by Plaintiffs' counsel. As this issue would alter the judicial test to which the facts are applied either at summary judgment of before the jury, certification is warranted.

Finally, Plaintiffs fail to grasp the significance of *Estate of A.R. v. Muzyka*, 543 F. App'x 363, 364 (5th Cir. 2013) as it relates to definition of the program or service to which the Plaintiffs claim to have been deprived. Here, Defendants do not contend that "housing" is not a program or service of TDCJ or UTMB (to the extent UTMB is responsible for medical beds), just as there is no factual dispute that McCollum was not denied access to housing at the Hutchins Unit. Instead, Plaintiffs claim stems from an allegation that such housing was not safe. This theory mirrors the facts in *Muzyka* where the Fifth Circuit dismissed the ADA claim: though the plaintiffs there had adduced a potential negligence claim as to why the pool should or could have been safer, the child's death did not stem from exclusion from the pool, but rather her inclusion in it. *See id.* ("[C]ongress did not intend § 504 or ADA claims to create general tort liability for the government.") As such, there is Fifth Circuit precedent which contradicts the notion that "safe

housing" alone could appropriately be defined as the relevant program or service in an ADA claim, and certification is warranted.

## VI.  The Eleventh Circuit's vicarious liability standard is relevant under the facts here.

Plaintiffs' arguments regarding the Eleventh Circuit's approach to vicarious liability fail to grasp the significance of the courts' more reasoned approach. In *Liese*, the court upheld the finding of vicarious liability because the doctor in question had knowledge of the need for accommodation and had the ability to provide it. *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334 (11th Cir.2012); *but see Delano-Pyle*, 302 F.3d at 574-75 (placing no limits on vicarious liability of low level officers). Here, to the extent the Court rests its holding of intentional discrimination on the allegation that TDCJ knew McCollum was obese, not able to traverse up and down from his bunk, and thus unable to eat or drink water, there is no evidence that a TDCJ supervisor with authority to make a bunk change, or the UTMB medical department was ever alerted to McCollum's alleged difficulties and potential need for a bottom bunk. As such, the *Liese* analysis is relevant and would be dispositive here. Defendants make this argument to preserve the issue for appellate review, which, given the evident circuit split, is warranted prior to trial to define the requisite proof and to properly instruct the jury.

## CONCLUSION

Defendants UTMB and TDCJ move the Court to certify its ruling regarding Plaintiffs' ADA and RA claims for interlocutory appeal so that these issues may be raised and briefed before the Fifth Circuit along with the appeals as a matter of right regarding qualified immunity and the Eleventh Amendment.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

**BRANTLEY STAR**
Deputy First Assistant Attorney General

**JAMES E. DAVIS**
Deputy Attorney General for Civil Litigation

**LACEY E. MASE**
Assistant Attorney General
Chief, Law Enforcement Defense Division

**HAROLD J. LILLER**
Assistant Attorney General
State Bar No. 24029689
Southern District ID No. 351997
Harold.Liller@oag.texas.gov

/s/*Matthew J. Greer*
**MATTHEW J. GREER**
Assistant Attorney General
Texas Bar No. 24069825
Southern District No. 1171775
Matthew.Greer@texasattorneygeneral.gov

Office of the Attorney General of Texas
Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin TX  78711
(512) 463-2080/Fax (512) 936-2109

**ATTORNEYS FOR TDCJ DEFENDANTS**

/s/J. Lee Haney
**J/ LEE HANEY**
Attorney-in-Charge
Assistant Attorney General
Texas Bar No. 00784203
Federal I.D. No. 18544
Lee.haney@texasattorneygeneral.gov

**SHANNA ELIZABETH MOLINARE**
Assistant Attorney General
Texas Bar No. 24041506

Federal I.D. No. 38632

**JENNIFER DANIEL**
Assistant Attorney General
Texas Bar No. 24090063
Federal I.D. No. 2451063

**HEATHER RHEA**
Assistant Attorney General
Texas Bar No. 24085420
Federal I.D. No. 2399979

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080
(512) 936-2109 (Fax)

**GRAIG J. ALVAREZ**
State Bar No. 24001647
Federal I.D. No. 22596

**KARA STAUFFER**
State Bar No. 24056373
Federal I.D. No. 685342

**ALVAREZ STAUFFER BREMER PLLC**
815 Walker St., Ste. 1450
Houston, Texas 77002
(713) 351-0300
(713) 351-0320 (Fax)

**ATTORNEYS FOR DEFENDANT**
**THE UNIVERSITY OF TEXAS**
**MEDICAL BRANCH**

## NOTICE OF ELECTRONIC FILING

I, **MATTHEW J. GREER**, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing in accordance with the Electronic Case Files system of the Southern District of Texas, on this the 16th day of March, 2017.

>/s/*Matthew J. Greer*_____
**MATTHEW J. GREER**
Co-Counsel
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, **MATTHEW J. GREER**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing has been served on all parties in accordance with the Court's electronic filing system on the 16th day of March, 2017.

>/s/*Matthew J. Greer*_____
**MATTHEW J. GREER**
Co-Counsel
Assistant Attorney General