UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN MCCOLLUM, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-3253 |
| | § | |
| BRAD LIVINGSTON, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

Defendants the University of Texas Medical Branch at Galveston ("UTMB") and the Texas Department of Criminal Justice ("TDCJ") have filed a Motion for Certification of Interlocutory Appeal Regarding Plaintiffs' ADA and RA Claims. (Doc. No. 343.) After carefully considering the motion, response, reply, and the applicable law, the Court finds that Defendants' Motion should be denied. The reasons for this decision are explained below.

### I. BACKGROUND

This case arises under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"), and concerns the death of Larry McCollum while in TDCJ custody. Plaintiffs Stephen McCollum and Sandra McCollum, individually, and Stephanie McCollum, individually and as the independent administrator of the Estate of Larry Gene McCollum, allege that various TDCJ officials and employees promulgated and effectuated policies regarding the extreme heat in Hutchins State Jail, where McCollum was incarcerated, that violated the Eighth Amendment and led to McCollum's death from heat-related illness. Plaintiffs also claim that TDCJ and UTMB violated the ADA and the RA in failing to accommodate McCollum's disabilities.

In a Memorandum and Order issued on February 3, 2017 ("Order"), this Court denied

1

UTMB and TDCJ's motions for summary judgment with regard to Plaintiffs' ADA and RA claims.[1] The Court considered the relevant law and the extensive record, and found that Plaintiffs presented issues of fact as to each of the requirements for relief under the ADA and the RA: 1) that McCollum qualified as a disabled individual under the ADA; 2) that TDCJ and UTMB denied benefits or services, or discriminated against McCollum; 3) that this exclusion, denial of benefits, or discrimination was by reason of his disability and was intentional. *See Lightbourn v. County of El Paso, Tex.,* 118 F.3d 421, 428 (5th Cir.1997). UTMB and TDCJ have filed the pending motion for certification of interlocutory appeal, raising five questions that they request this Court to certify for appeal.[2] (Doc. No. 343 at 4-7.)

## II. LEGAL STANDARD

Interlocutory review is reserved for "exceptional" cases. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996). 28 U.S.C. § 1292(b) provides a narrow exception to the final judgment rule:

> Where a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance

---

[1] In the same Memorandum and Order, the Court granted summary judgment for Richard Clark, and denied summary judgment for Brad Livingston, Robert Eason, Jeff Pringle, Karen Tate, and Sandrea Sanders. Because the denial of summary judgment was based on a finding that these defendants were not entitled to qualified immunity, the decision was appealable as of right, and has been appealed. (Doc. No. 347.) UTMB and TDCJ have also appealed the Court's determination that their Eleventh Amendment immunity is waived for the ADA claims. (*Id.*) As such, the Court does not address the parties' arguments regarding this issue. (Doc. No. 352 at 3, "As [Defendants' Eleventh Amendment Immunity] has been appealed as a matter of right, it is not an issue necessary for the Court to certify and will not be addressed further here"); *see also Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 425 (5th Cir. 2010) (*citing* 16 Charles Alan Wright et al., Federal Practice and Procedure § 3929.1, at 400 (2d ed. 1996 & Supp.2010)) ("The manifest purpose of § 1292(b) is to support appeal from orders that cannot otherwise be reviewed by final judgment appeal or interlocutory appeal under some other provision of § 1292(b)).".

[2] Although Defendants state that "[a]t least six issues regarding the scope, applicability, and evidence necessary to state a claim exist in this case that warrant certification," the Defendants proceed to list only five questions for certification. (Doc. No. 343 at 4-7.)

2

the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge of the Court or Appeals or a judge thereof shall so order.

In sum, after issuing an otherwise nonappealable order, a district judge may certify the order for interlocutory appeal when 1) a controlling question of law is involved, 2) there is substantial ground for difference of opinion about the question of law, and 3) immediate appeal will materially advance the ultimate termination of the litigation. *Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007.) All three of these criteria must be met for an order to properly be certified for interlocutory appeal. *Clark-Dietz & Assoc.—Eng'rs v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1983).

"Section 1292(b) is not a vehicle to question the correctness of a district court's ruling or to obtain a second, more favorable opinion." *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 722 (N.D. Tex. 2006). The decision to certify an interlocutory appeal pursuant to Section 1292(b) is within the discretion of the trial court and unappealable. *In re Air Crash Disaster*, 821 F.2d 1147, 1167 (5th Cir. 1987) (*citing In re McClelland Eng'rs, Inc.* 742 F.2d 837, 839), *cert denied*, 469 U.S. 1229 (1985)).

## III. DISCUSSION

Defendants present five separate questions for the Court to certify. The Court will discuss each question in turn.

### A. What type of conduct satisfies the "intentional discrimination" standard for the ADA?

Defendants argue that "[w]hat type of conduct is necessary to satisfy the intentional discrimination standard under Fifth Circuit precedent" constitutes a controlling question of law

3

justifying appellate review prior to trial. (Doc. No. 343 at 5.) A plaintiff asserting an ADA claim must show that any exclusion, denial of benefits, or discrimination by the defendant was by reason of the plaintiff's disability, and was intentional. *See Lightbourn,* 118 F.3d at 428. Defendants note, as did the Court in its Order, that "what type of conduct satisfies the 'intentional discrimination' standard is not clear from Fifth Circuit precedent." (*Id.* at 4; *see also* Order at 78, "the Fifth Circuit has stated definitively that 'We did not define what we meant by intent in *Delano-Pyle*.'" (*citing Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 184 (5th Cir. 2015)). The Fifth Circuit has not yet decided whether deliberate indifference or something more, is necessary to show intentional discrimination.[3] While noting that this is an unsettled area of the law, this Court found, in its Order, that "Plaintiffs have presented ample evidence upon which a reasonable jury could infer intentional discrimination, regardless of the standard ultimately decided by the Fifth Circuit." (Order at 78-79.)

Defendants argue, however, that the evidence the Court relied on to find that a reasonable jury could infer intentional discrimination "rest[s] entirely on generalized knowledge of individuals in the prison system with conditions or medications associated with heat stress."

---

[3] Plaintiffs note, correctly, that every circuit that has reached the question of what standard to apply for "intentional discrimination" has concluded that "deliberate indifference" is the proper standard. *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009) ("The standard for intentional violations is "deliberate indifference to the strong likelihood [of] a violation"); *A.G. v. Lower Merion Sch. Dist.*, 542 F. App'x 194, 198 (3d Cir. 2013) ("We have held that the remedial goals of the Rehabilitation Act and the ADA, however, suggest that a standard of deliberate indifference, rather than discriminatory animus, may satisfy that showing"); *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001) ("We now determine that the deliberate indifference standard applies"); *Barber ex rel. Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222, 1228–29 (10th Cir. 2009) ("Intentional discrimination does not require a showing of personal ill will or animosity toward the disabled person; rather, 'intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights'"); *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 345 (11th Cir. 2012) ("We agree with the parties and hold that a plaintiff may demonstrate discriminatory intent through a showing of deliberate indifference").

(Doc. No. 343 at 4.) Defendants maintain that this type of evidence is distinguishable from the facts considered by the Fifth Circuit in *Delano-Pyle* and *Perez*—cases, relied on by this Court in its Order, where the Fifth Circuit found that the plaintiffs had made a sufficient showing of intentional discrimination. *Delano-Pyle v. Victoria County, Tex.,* 302 F.3d 567, 574 (5th Cir.2002); *Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180 (5th Cir. 2015).

"Appellate jurisdiction under § 1292(b) extends only to interlocutory orders that involve a controlling question of law." *Louisiana Patients' Comp. Fund Oversight Bd. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 585, 588 (5th Cir. 2005). As Judge Posner has noted, § 1292(b) refers to a "pure question of law rather than merely to an issue that might be free from a factual contest. The idea was that if a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case." *Ahrenholz*, 219 F.3d at 676-77.

In *Withhart v. Otto Candies, LLC*, the Fifth Circuit recognized the limited nature of appellate jurisdiction under § 1292(b). 431 F.3d 840 (5th Cir.2005). There, the Court ruled only upon whether the plaintiff could bring a negligence claim under maritime law, not whether the evidence presented by the plaintiff could prove liability. *Id.* at 842-43; *see also Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 425 (5th Cir. 2010) ("the district court decided a 'controlling question of law' . . . in the order certified for interlocutory appeal; it expressly did not decide the mixed question of law and fact concerning whether the defendants are actually liable . . . under the FLSA.")

Defendants' proposed question for certification does not ask the Fifth Circuit to decide a controlling question of law. It would not matter if the Fifth Circuit decided what standard should be used for intentional discrimination under the ADA, because this Court held that under

5

deliberate indifference *or something more*, Plaintiffs can meet their burden. Instead, the question posed by Defendants—whether the evidence presented by Plaintiffs, and relied upon by this Court, satisfies the intentional discrimination standard—is far from the "pure question of law" envisioned by Judge Posner, and would require the Fifth Circuit to delve into the immense record in this case. Because a district court should only certify a question of law that can be decided without regard to the factual record in a case, this question is not suitable for certification. Furthermore, if a jury were to conclude that Defendants intentionally discriminated against McCollum, Defendants could raise this issue on appeal from final judgment. *See Castellanos-Contreras*, 622 F.3d at 425 ("The manifest purpose of § 1292(b) is to support appeal from orders that cannot otherwise be reviewed by final judgment appeal.") Accordingly, this question is not suitable for interlocutory appeal.

### B. What is the appropriate standard by which ADA cases should be judged in the correctional context?

Defendants also seek to certify for appeal this Court's holding that a reasonable jury could find that Defendants discriminated against McCollum because their acts or omissions caused him to suffer more pain and punishment than non-disabled prisoners. (Doc. No. 343 at 5.) They argue that this theory has never been endorsed by the Fifth Circuit and is in conflict with established Fifth Circuit precedent. (*Id.*) Further, they argue that this theory "distorts the nature of the inquiry under the ADA and is an incorrect formulation of what is necessary to establish an ADA violation." (*Id.*) Even assuming that this is a controlling question of law, Defendants cannot meet the next two requirements for certification: that there is substantial ground for difference of opinion about the question of law, and that immediate appeal will materially advance the ultimate termination of the litigation.

Courts have found substantial ground for difference of opinion in cases where a trial court rules

> in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the Court of Appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.

*Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723–24 (N.D. Tex. 2006) (*citing* 4 Am.Jur.2d *Appellate Review* § 128 (2005). Here, Defendants are correct that the Fifth Circuit has never explicitly endorsed the idea that the ADA may be violated by a defendant's acts or omissions that cause more pain and punishment to a disabled person than to non-disabled persons. "But simply because a court is the first to rule on a question or counsel disagrees on applicable precedent does not qualify the issue as one over which there is substantial disagreement." *Id.* at 724. Indeed, this Court is not the first court to rule on the "more pain and punishment" theory—numerous district courts have used the standard, and Defendants have not directed the Court to any opinions rejecting it. *See McCoy v. Texas Dep't of Criminal Justice*, No. C.A.C 05 370, 2006 WL 2331055, at *7-8 (S.D. Tex. Aug. 9, 2006); *Martone v. Livingston*, No. 4:13-CV-3369, 2014 WL 3534696, at *16 (S.D. Tex. July 16, 2014); *Hinojosa v. Livingston*, 994 F. Supp. 2d 840, 843 (S.D. Tex. 2014); *Borum v. Swisher Cty.*, No. 2:14-CV-127-J, 2015 WL 327508, at *8 (N.D. Tex. Jan. 26, 2015).

Although Defendants aver that "this formulation of the test under the ADA is in conflict with established Fifth Circuit precedent," they do not describe what the conflict is, nor do they explain how any of the six Fifth Circuit opinions that they cite support this conclusion.[4] (Doc.

---

[4] Nonetheless, the Court has analyzed each opinion cited by Defendants, and concludes that none of the opinions conflict with the theory of liability adopted by the Court in this case. In *Hay v. Thaler*, 470 Fed. App'x. 411 at 418 (5th Cir. 2012), the Fifth Circuit affirmed the district court's

7

No. 343 at 5.) Indeed, one of the cases cited by Defendants seems to impliedly approve of the "more pain and punishment" theory. In *Tuft v. Texas*, 410 F. App'x 770 (5th Cir. 2011), the Fifth Circuit affirmed the lower court's grant of summary judgment for the defendants because the plaintiff presented no evidence that he was discriminated against in his use of prison showers by reason of his disability. *Id.* at 775. The court noted that, "[i]n addition, Tuft failed to allege the overcrowding had a greater effect in impairing his access to showers than it did for non-disabled prisoners." *Id.* Thus, the Fifth Circuit seems to imply that if the condition had a greater effect on him, because of his disability, than it did on non-disabled prisoners, it could constitute discrimination under the ADA. This is exactly the claim made by Plaintiffs and adopted by this Court in its Order. Thus, while the "more pain and punishment" theory may not have been explicitly endorsed by the Fifth Circuit, Defendants have failed to show that there is any disagreement, much less substantial disagreement, regarding its viability.

Additionally, an appeal on this question would not materially advance the ultimate termination of the litigation, as required by § 1292(b). Although the availability of review is not limited to those situations in which decision on an issue would result in a complete dismissal,

---

grant of summary judgment on the grounds that the plaintiff did not claim that the alleged discrimination "was by reason of his disabilities" or that "his alleged disabilities made it more difficult for him to access the benefits of TDCJ's services." Here, Plaintiffs claimed, and marshaled evidence supporting, both. In *Davidson v. Texas Dep't of Criminal Justice, Institutional Div.*, 91 F. App'x 963, 965 (5th Cir. 2004), the Fifth Circuit found that the plaintiff's ADA claim lacked merit "because he has not alleged or shown that he was adversely treated solely because of his handicap of mental illness." Again, Plaintiffs in this case claimed, and have produced evidence showing, just that. In *Hale v. King*, 642 F.3d 492, 500 (5th Cir. 2011), the Fifth Circuit found only that the plaintiff had "failed to allege that his conditions substantially limited him in his performance of a major life activity." The court did not reach the issue of discrimination under the ADA. Finally, in *Garrett v. Thaler*, 560 Fed. App'x. 375, 383 (5th Cir. 2014), the Fifth Circuit found that the plaintiff did not satisfy the second and third prongs of the ADA because the prison had made "reasonable accommodations to enable Garrett's safe use of the bathroom and shower facilities." Thus, none of the six cases cited by Defendants supports their contention that the "more pain and punishment" theory adopted by this Court is in conflict with existing Fifth Circuit caselaw.

"[t]he Fifth Circuit has held that certification is particularly inappropriate when a party has claims remaining for adjudication by the finder of fact." *Jane Does, v. Baylor University*, 2017 WL 1628994, at *2 (W.D. Tex. May 1, 2017) (*citing United States v. Bear Marine Servs., Inc.*, 696 F.2d 1117, 1120 (5th Cir. 1983); *Spurlin v. Gen. Motors Corp.*, 426 F.2d 294, 294–95 (5th Cir. 1970). In this case, Plaintiffs alleged, and the Court adopted, two separate theories of liability regarding the second prong of the ADA: the "more pain and punishment" theory, and the denial of safe housing theory. Thus, even if Defendants were to succeed on appeal regarding this question, the case would still proceed with regard to the safe housing theory. Although Defendants have also requested certification with regard to the safe housing theory, Defendants would have to win on both questions of law in order to advance the termination of the litigation.

Accordingly, the Court finds that Defendants have not shown substantial disagreement, and that certifying appeal with regard to this question would not contribute to the termination of litigation.

**C. Does safe housing qualify as a program or service under the ADA?**

Defendants also aver that "a question of controlling law exists with regard to whether or how one proves exclusion from a program of service within the meaning of the ADA." (Doc. No. 343 at 5.) They assert that the theory alleged by Plaintiffs and adopted by this Court—that a reasonably jury could find that the denial of safe housing in prison may constitute a denial of a service—"is inconsistent with the Fifth Circuit precedent, specifically its holding in *Rodriguez v. Muzyka*, 543 Fed. App'x. 363 (5th Cir. 2013)." (Doc. No. 343 at 6.) In *Rodriguez*, a nine-year-old deaf child attended a summer enrichment program for children with disabilities operated by the Houston Independent School District. *Rodriguez,* 543 Fed. App'x. at 364. During the program, the child experienced a seizure, fell into a shallow pool, and drowned. *Id*. The child's

9

mother sued under the ADA, alleging that her child's safe and meaningful access to the program was interrupted because of her disability. *Id.* But, in a *per curium* and unpublished opinion, the Fifth Circuit found that the evidence assessed by the plaintiff "at most only establishes negligence. There is no evidence presented that rises to the level of 'bad faith or gross misjudgment' or 'deliberate indifference' by the school district. There is no evidence of 'intentional discrimination' against [the child] in this school that was established to teach and serve disabled children." Thus, the Fifth Circuit did not hold, as Defendants claim it did, that plaintiffs in ADA cases must allege a defined and specific program. Instead, it held that the evidence presented by the plaintiff in *Rodriguez* did not rise to the level of intentional discrimination required by the ADA.

The Fifth Circuit also held that there was no evidence that the child was excluded from the program, but instead that her death resulted from her inclusion in the program. *Id.* In this case, however, Plaintiffs assert not that they were excluded from a voluntary program, but that they were denied the service of safe housing in prison. Plaintiffs produced significant evidence in support of this argument. The facts in the two cases are distinct, and the Fifth Circuit's holding that the plaintiff did not produce evidence showing that her child was excluded from the program has no bearing on the evidence produced by Plaintiffs in this case. For these reasons, the Court finds that *Rodriguez* is not in substantial disagreement with this Court's finding.

Additionally, an appeal on this question would not materially advance the ultimate termination of the litigation. As described in the previous section, Plaintiffs have alleged, and the Court has adopted, two separate theories of liability regarding the second prong of the ADA. Either theory, independently, suffices to meet the requirement of showing that Defendants denied or excluded McCollum from a program or service, or discriminated against him. Thus, a

successful appeal of this issue would not materially advance the termination of the litigation. Accordingly, the Court finds that this is not a proper question for certification.

### D. What is the relevant "major life activity" that McCollum was unable to perform?

Defendants assert that certification is appropriate "to define the relevant 'major life activity' which Plaintiffs claim McCollum was unable to perform." (Doc. No. 343 at 6.) Defendants concede that in *Ball v. Bell*, 792 F.3d 584, 594 (5th Cir. 2015), the Fifth Circuit defined the relevant activity as 'thermoregulation,' and that this Court adopted that view in its Order. (Doc. No. 343 at 6.) However, Defendants contest the Court's additional consideration of "the possibility that McCollum's inability to climb in and out of his bunk could serve as the relevant major life activity that was impaired." (Doc. No. 343 at 6.) Defendants do not cite to any authority limiting the number of relevant "major life activities" that a court, or jury, may consider. Thus, the Court sees no reason to certify its holding that McCollum's difficulty climbing in and out of his bunk could *also* constitute a major life activity impacted by McCollum's disability.

Additionally, Defendants write, "the Court did not address the fact that Plaintiffs' expert opined that McCollum also was suffering from an illness or infection—a transitory illness—that contributed to his distress." (*Id.*) That McCollum may have been suffering from a transitory illness does not mean that his disabilities did not have a significant impact on one or more of his major life activities. Indeed, this is precisely the kind of factual inquiry that is inappropriate for summary judgment, and that is also inappropriate for certification.

Furthermore, certification is inappropriate because, even if Defendants were to succeed in their appeal of this question, all of the claims would still go forward, under the theory that thermoregulation is a major life activity that was significantly impacted by McCollum's

11

disabilities. Thus, certification would not materially advance the termination of the litigation. For these reasons, the Court does not certify this question.

### E. To what extent is vicarious liability allowed under the ADA?

Finally, Defendants ask this Court to certify the issue of vicarious liability under the ADA: specifically, to clarify the extent and the limits of vicarious liability. But there is no lack of clarity on this issue in the Fifth Circuit. The Fifth Circuit has conclusively held that "when a plaintiff asserts a cause of action against an employer-municipality, under either the ADA or the RA, the public entity is liable for the vicarious acts of *any* of its employees as specifically provided by the ADA." *Delano-Pyle*, 302 F.3d at 574-75. The Court followed this precedent in its Order. Thus, Defendants cannot show substantial disagreement on the issue of vicarious liability, and the question is therefore inappropriate for interlocutory appeal.

### IV. CONCLUSION

For the aforementioned reasons, this Court **DENIES** UTMB and TDCJ's Motion for Certification of Interlocutory Appeal Regarding Plaintiffs' ADA and RA Claims.

**IT IS SO ORDERED**.

**SIGNED** in Houston, Texas, on this the 19th day of May, 2017.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE